SDNY US COURT DISTRICT COURT
300 QUARROPAS STREET
WHITE PLAINS, NEW YORK 10601-4150

RE: ROSEMARY HELEN ZIZIROS WALKER VS PURDUE PHARMA

DISTRICT COURT CASE #25CV9681

JUDGE SEAN H LANE HAS DENIED MY STAY DOC 8270 REQUEST I DID NOT KNOW I HAD TO MEET 4 REQUIREMENTS I WILL ADDRESS HERE NOW.

1 1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; YES THIS 'OPT-IN' IS A SACKLER CASH FOR AN IN PERPETUITY RELEASE TO AVOID FUTURE LITIGATION WHICH IS A BRIBE WHEN PURDUE CLAIMANTS APPROVED OR NOT HAVE NO SACKLER LAW SUIT.
2 2) whether the applicant will be irreparably injured absent a stay; YES I WILL BE AS THIS 'OPT IN' IS BRIBERY EVEN WORSE THAN 'NON CONSENUAL' RELEASE.
3 3) whether issuance of the stay will substantially injure other parties interested in the proceeding; NO IT WILL NOT IN FACT I HAVE SUGGESTED HOW TO RESOLVE THIS TO MARC TOBAK AT DAVIS POLK TO NO RESPONSE. IF SOMETHING IS NOT LEGAL HOW CAN A STAY INJURE OTHERS? PURDUE CLAIMANTS AND SACKLER LAW SUITS ARE TWO ENTIRELY DIFFERENT ISSUES.
4 4) where the public interest lies. LAW HAS TO MATTER & IT DOES TO ME A MEMBER OF THE PUBLIC.

A STAY NEEDS TO BE PUT IN PLACE STAT PLEASE.

PER MY *<u>STAY</u> & *APPEAL MOTIONS ANATIN TOLD ME TO MAKE TWO LIST 1. DOCUMENTS 2. ISSUES.

***APPELLANT'S DESIGNATION OF RECORD AND STATEMENT OF ISSUES ON APPEAL FROM BANKRUPTCY COURT.

LIST 1 - DOCUMENTS OR DOCKET NUMBERS

Supreme court #23-124 harrington vs purdue pharma lp et al
8270
8269
8264
8263
8261
8260
8259

8253 hearing transcript 11.14.RESTRICTED UNTIL 2.17.2026 **PROBLEMATIC
8252
8251
8250
8249
8248
8247
8246
8245
8242
8241
8240
8234
8231
8222
8202
8200
8198
8196
8195
8190
8188
8186
8177
8169
8152
8148
8146
8144
8143
8142
8138
8134
8128
8124
8115
8113
8109
8108
8099
8098
8094
8087
8086

8048
7970
7925
7898
7888
7885
7878
7871
7863
7858 barred again from amendment I on my birthday
7855
7854
7853
7846
7834
7832
7826
7825
7772
7771
7743
7742
7736
7723
7708
7694
7678
7661
7565
7494
7481
7385
7246
6965
8791
6694
6670
6532
6498
6471
6284
6257 *amendment I infringed
6135

LIST 2 - APPEAL ISSUES

**supreme court harrington issues for certiorari.

'Creditors that elect to grant the Third-Party Releases will receive additional
19-23649-shl Doc 8270 Filed 11/20/25 Entered 11/20/25 23:05:59 Main Document
Pg 22 of 64
23
distributions in exchange for their release.'

THIS CLEARLY EXPLAINS BY DAVIS POLK THIS NEW SACKLER CASH FOR IN PERPETUITY RELEASE TO AVOID FUTURE LITIGATION SCHEME IS EXACTLY THAT. CASH TO AVOID FUTURE LITIGATION BASED ON NO THING.

The new 'sackler family 'release' for cash scheme' in the new plan provision is straight up cash for release based on no thing at all. Why would valid purdue claimants be entitled to release the sackler family for anything if they are not too guilty of also 'milking scheme' yet unpunished to date and what is the punishment for 'milking scheme'?

What does the purdue settlement or voting for the plan have anything to do with getting the new 'sackler family 'release' for cash scheme' cash?

If forcing claimants to 'Opt in' to the new 'sackler family 'release for cash' scheme' PRIOR to purdue claimant knowing what the new 'sackler family 'release for cash' scheme' requirement is and if claimant meets the new 'sackler family 'release for cash' scheme' requirement prior to taking the new 'sackler family 'release for cash' scheme' fair?

If purdue claimants did not file a petition in court against the sackler family then why would purdue claimants be entitled to the new 'sackler family 'release for cash' scheme'?

Is a valid purdue pharma claim the same as a valid new 'sackler family 'release for cash' scheme' claim?

Why?

The 'new sackler cash for an in perpetuity release to avoid future litigation scheme' is without value if claimant was never entitled to the 'new sackler cash for an in perpetuity release scheme'' cash making this new scheme: blackmail, quid pro quo for no thing *that is added fraud, a straight up bribe criminal? yes or no

This plan is even worse legally than a non consensual release. The 'new sackler cash for an in perpetuity release to avoid future litigation scheme' is criminal & a giant problem.

Amendment I infringed on twice see 6257 & 7858

‘Cramdown’ is NOT EVEN A WORD IN THE FEDERAL RULES OF BANKRUPTCY
see 8230 ‘the plan’ page 66 section 3.5

To receive purdue claim cash you must meet very minimal requirements. Tier 1 has no evidence get ZERO $. So tier 1 for sure has no claim against the sacklers to provide the ‘new sackler cash for an in perpetuity release to avoid future litigation scheme not to mention HOW MANY PURDUE PI CLAIMANTS HAVE A LAWSUIT AGAINST THE SACKLERS TO PROVIDE A ‘RELEASE FOR CASH’ SCHEME RELEASE?

Tier 2 can show some evidence of oxycontin prescribed, so how much cash is Tier 2 WITHOUT the ‘new sackler cash for an in perpetuity release to avoid future litigation scheme’?
Then Tier 3 has evidence of 180 days of being prescribed oxycontin so how much is the purdue claim portion if $16k was for both the purdue claim & the’ new sackler cash for an in perpetuity to avoid future litigation scheme’ for cash scheme’? AGAIN, HOW MANY PURDUE PI CLAIMANTS HAVE A LAWSUIT AGAINST THE SACKLERS TO PROVIDE A ‘RELEASE FOR CASH’ SCHEME RELEASE?

Is the requirement to get the ‘new sackler cash for an in perpetuity‘release to avoid future litigation scheme cash only to have a valid purdue claim no suit filed against the sackler family required?

Where exactly is the new ‘sackler cash for an in perpetuity release to avoid future litigation scheme’ $7.5 billion usd per US Federal rules of Bankruptcy Procedure rule 3020 RIGHT NOW?

How can claimant provide a new sackler cash for an in perpetuity release to avoid future litigation scheme release without knowing if eligible & that claimant has met new ‘sackler cash for an in perpetuity ‘release to avoid future litigation scheme’ requirements which are what exactly? If claimant ‘opts in’ to find out they did not get the new sackler cash for an in perpetuity to avoid future litigation release scheme cash, the release had no value claimant who gave ‘new sackler cash for an in perpetuity release to avoid future litigation’ for no thing.

Why should a trust be set aside for bar member cash for the sackler family when the injunction is lifted and lawsuits will proceed when the sackler family should require a public defender.

Was a Patient Ombudsperson or trust established per USFBP 2015.1? Yes or no

Has there been issues with USFBP Rule 2002 Notices?
*****On record hearing before confirmation

How is magically a purdue claimant entitled to the new sackler cash for an in perpetuity release to avoid future litigation scheme’ cash?

1004.1 of the USFBP doesnot provide for incompetent or qualified Disabled 'incompetent' creditors or claimants** violating equal protection rights.

Was a patient care ombudsman appointed per USFBP Rule 2007.2?

Rule 2015.1. Patient-Care Ombudsman ........................................................ 37?
Does Rule 2015.1. Patient-Care Ombudsman include posthumous legal patients yes or no?
(a) NOTICE OF THE REPORT. Unless the court orders otherwise, a patient-care ombudsman must give at least 14 days' notice before making a report under § 333(b)(2).
(1) Recipients of the Notice. The notice must be sent to the United States trustee, posted conspicuously at the health-care facility that is the report's subject, and served on:
• the debtor;
• the trustee;
• all patients;

What if 'health-care facility' is no longer in doctoring business?

What if a claimant was a medicare recipient so paid taxes for medicare so how is medicare getting medicare cash i paid for from taxes prior to disabilities not US claimants fair?

It was mentioned medicare would be deducted from purdue settlement amount why?
How is this too not a not her taxation on what is a tax paid already?

Is the government liable for approving purdue pharma sackler family oxycontin & the labeling allowing false claims, patients relied on by OUR GOVERNMENT, turns out was not trustworthy nor worthy of the trust of the US medicare & health care system?

How can any of US trust anything our government presents to US?

USFBP Rule 5005 D sec 107 reads 'same as a written paper' but no no it isnot,

7058 SEE 5003 Entering Judgement

7071 Enforcing Relief on Non Party

9005.1 **CONSTITUTIONAL CHALLENGE

7069 Injunctions ** super important to sackler petitions in court

7065

date filed?

Upload date?

Letter received date?

Entered date?

USPS post mark date?

Final decree date?

Effective date?

Execution date?

Discharge date?

Final judgement date?

Confirmation date? (of plan)?

Americans with Disabilities violations & Discrimination *request ADA fines

Title II & III violations

**Sanctions

How many bar members repeated how many emails there would be if each claimant emailed court or arik or kroll or purdue or edgar when are you all are being paid to in fact respond to our electronic communications & phone calls?

How do we have any due process at all and if akin gump or court or davis polk doesnot have enough employees to respond then they need to hire more employees right?

Is cash for the new sackler cash for an in perpetuity release to avoid future litigation scheme release a quid pro quo for no thing if not qualified so fraud, blackmail, extortion, straight up bribery or all?

Should most everything….be reciprocal?

If court & kroll did not 'blackline' or 'out' claimants private personal identifying data uploaded through the court dot gov website pro se upload tool that was then 'published'to the internet for billions world wide to see were privacy act & hipaa rights of claimants violated?
how does that private data get transferred from court to kroll?

‘Fearful that the litigation would eventually im-
pact them directly, the Sacklers initiated a “milking program,” with-
drawing from Purdue approximately $11 billion—roughly 75% of the
firm’s total assets—over the next decade.’

What exact crime is ‘milking program’ mentioned by judge (shl) during confirmation speech 11.18.2025 & in harrington?

If fearful of future litigation is it legal for the sackler family to offer the new sackler cash for an in perpetuity release to avoid future litigation scheme cash to just anyone in the purdue pi case which would be a bribe to avoid future litigation & possible prosecution right?

What is the procedure for the bankruptcy & or supreme court to report crimes to be prosecuted to the department of justice when crimes of ‘milking program’ have happened according to the highest court in the land?

What is the criminal code for ‘milking program’ so the doj can prosecute the sackler family as bankruptcy is not the right venue please?

In harrington admitted by judge shl on confirmation record did the supreme court invent a new crime that must be added to the criminal code ‘milking program’ the sacklers have not been punished for yet?

Oxycontin vs opioid?

Is Purdue Pharma a brand?

Is this confirmation plan document the new sackler cash for in perpetuity release to avoid future litigation scheme’ cash for release a ‘CRIME’ within a ‘BANKRUPTCY’ written by bar members?

Both the judge who on record confused maria ecke’s voice with my voice & used angry voice when i wished to speak as apparently ‘we all sound the same’ to bar members including judges ‘we all’ being not men.
We must declare all individuals are created equally finally replacing all men in the eyes of American law.

What is the total to date all law firms have been paid?

What is the total to date all government agencies have been paid?

There must be no sackler pile of lawyer cash to defend criminal nor civil law suits that is a benefit the sacklers in fact should require the ‘benefit’ of a public defender as the sackler family should have zero dollars not ‘the sackler family emergence with billions of dollars after purdue

bankruptcy & new sackler cash for an in perpetuity release to avoid future litigation & prosecution' CAN NOT BE A SENTENCE.

Who exactly at what law firm came up with the 'opt in' sackler cash for an in perpetuity release to avoid future litigation scheme aka bribery blackmail extortion quid pro quo for no thing, no requirement just cash for signature release?

Is the sackler 'opt in' new sackler cash for an in perpetuity release to avoid future litigation scheme' release aka bribery blackmail extortion quid pro quo for no thing in perpetuity?
Yes or no

Will purdue & the sackler family be paying the repository data storage & electric bills in perpetuity?
''The Plan also creates a public document repository that will make available materials for public review. See Plan § 5.13; DelConte Decl. 32. The repository will be accessible to the public online, will be hosted by an academic institution or library, and will include more than 13 million documents produced to litigants in these Chapter 11 cases, in addition to approximately 30 million documents collected during other Purdue legal matters and certain categories of documents currently subject to attorney-client privilege. See Plan § 5.13; DelConte Decl. 32. '
THIS IS NO THING BUT A GIANT DATA STORAGE BILL BILL BILL PURDUE & THE SACKLERS MUST PAY.

If a purdue claimant provides a new sackler cash for an in perpetuity release to avoid future litigation scheme' release yet is a Tier 1 so does not meet the requirement what value did the new 'sackler family 'release' for cash scheme' release have but to the sackler family who got a release from future litigation for free?

USFBP Rule 3028 Chapter 9 or 11 -Accepting or Rejecting a Plan

Docket 8270 page 9 reads 'The wrongful use of opioid products—including their marketing and distribution—has resulted in a massive public health crisis in this country.'
THE SACKLERS & PURDUE WITH HELP FROM DAVIS POLK CONTINUE TO DEFAME & BLAME PATIENTS WHICH IS NOT 'WRONGFUL USE OF OPIOID PRODUCTS'
THIS IS ABOUT PURDUE PHARMA & THE SACKLER FAMILIES WRONGFUL & FALSE CLAIMS IN MARKETING & DISTRIBUTING THEIR OXYCONTIN OPIOID PRODUCTS THAT RESULTED IN A MASSIVE PUBLIC HEALTH CRISIS AROUND THE WORLD. PURDUE PHARMA & THE SACKLER FAMILY & THEIR LAWYERS & THE PEOPLE SUPPOSED TO REPRESENT ME CONTINUE TO BLAME PATIENTS. WHO UNLIKE DOCTORS HOSPITALS INSURANCE COMPANIES AND IN FACT WERE WHO WERE LIED TO BY BOTH PURDUE THE SACKLER FAMILY BUT MY OWN GOVERNMENT WHO THE LABELING ISSUES BUCK STOPS WITH. THIS 8270 SHOULD BE STRUCK FROM THE RECORD PER MY STAY / APPEAL REQUEST.

'including States, territories, local governments, hospitals, first responders and

Native American tribes' ***note no 'patients' listed.

'harmed by use of the debtors' products' so this meaning ONLY THOSE OF US HARMED BY USE OF THE DEBTORS PRODUCTS MEET THE REQUIREMENT does this include people who 'WRONGFULLY USED' or 'ILLEGALLY USED' to qualify as a 'claimant'?

Uhhhh during confirmation it was stated $7.5 billion usd so which is it and where is it?
'The Plan here delivers some $6.5 to $7 billion in value from the Debtors' former Shareholders'

'The Plan provides hundreds of millions of distributable dollars
for personal injury claimants. It also provides billions of dollars to States, municipalities, and
19-23649-shl Doc 8270 Filed 11/20/25 Entered 11/20/25 23:05:59 Main Document
Pg 10 of 64
11
other creditor groups for opioid abatement efforts.

So pi claimants get hundreds of millions while government who allowed purdue oxycontin to be released on the market for doctors to prescribe to patients get billions for not PURDUE PHARMA OXYCONTIN USE….PLEASE explain how this is fair or equal.

'Of particular importance, the releases in the Plan for the Sackler Parties (as defined below) who are providing funds to claimants is consistent with the Supreme Court's 2024 decision in these cases. That is because the releases here are provided only on a consensual basis, with claimants being given the choice to provide the releases—to "opt in" using the terms of the bankruptcy world—and, by doing so, to obtain the additional value provided as part of the Sackler settlement. But no one is required to do so. Parties are free to preserve their right to sue the Sackler Parties, with such a right preserved unless the party takes the affirmative step of opting in to the release.'

Again this is a sackler cash for an in perpetuity release davis polk seems to think by legally allowing a debtor not even a part of the bankruptcy to BUY a release from future litigation they have been trying to avoid since harrington. AGAIN WHY WOULD A PURDUE CLAIMANTS HAVE ANY RIGHT TO RELEASE THE SACKLERS FOR CASH WHEN THEY HAVE NOT FILED ANY CLAIM IN COURT AGAINST THE SACKLER FAMILY? CONSENSUAL DOESNOT EQUAL ELIGIBLE.

'Many of these suits also named as
19-23649-shl Doc 8270 Filed 11/20/25 Entered 11/20/25 23:05:59 Main Document
Pg 13 of 64
14
defendants certain parties that were related to Purdue, including numerous Sackler Parties'
RIGHT SO ONLY THESE PARTIES HAVE A RIGHT TO RELEASE THE SACKLERS IF PETITIONS ARE SETTLED.

‘incentivized other creditors—who face the possibility of receiving nothing’ I CALL COERCION davis polk akin gump and judge lane all repeated. THE SAME THREAT NONE OF US WOULD COLLECT FROM THE SACKLER FAMILY WHY WE SHOULD AGREE TO THE RELEASE. ‘The UCC called Mr. Atkinson to speak to his investigation into the feasibility of recovering on claims against the Sacklers as well as to the benefits of the negotiated settlements in the Plan when compared with further litigation. See Hr’g Tr. 157:22-158:17 (Nov. 12, 2025); ‘

‘(ii) an agreement by the Debtors to abide by the Food & Drug Administration’s decision related to high dose opioids,’ RIGHT THE FDA IS LIABLE.

‘Sackler Parties, including a provision barring certain Sackler Parties from taking any action with respect to their property with the intent or material effect of frustrating any judgment that might be obtained against them, as well as commitments to provide material amounts of information and presentations on the value, location, and format of their assets. See UCC Stipulation ¶¶ 13, 17.’ WHAT PROPERTIES & WHY DO THE SACKLERS HAVE ANY?

‘Debtors produced approximately 100 million pages of documents to estate stakeholders on a wide variety of issues, including materials going to both estate claims and underlying opioid liability claims. ‘ THIS IS AGAIN WHY THE SACKLERS & PURDUE MUST BE ORDERED TO PAY THE DATA STORAGE & ELECTRIC BILLS FOR THE REPOSITORY OF DOCUMENTS NOT US.

‘the main challenge was to the legality of the non-consensual releases of claims held by non-debtors against other non-debtors (also known as “Third-Party Releases”) that were contained in the Twelfth Amended Plan’ SO THE BAR MEMBERS CONSPIRED TO CREATE A NEW SCHEME THE ‘SACKLER CASH FOR IN PERPETUITY RELEASE TO AVOID FUTURE LITIGATION OPT-IN’ USING THE PURDUE PI CLAIM CASH AS THE VEHICLE TO FORCE CLAIMANTS INTO A RELEASE WHEN ALL PURDUE CLAIMANTS DO QUALIFY FOR IS PURDUE PI SETTLEMENT CASH NOT SACKLER BRIBE CASH AS THEY HAVE NO ACTION PETITION OR CLAIM TO RELEASE.

‘Bankruptcy Code does not authorize non-consensual Third-Party Releases.’ BANKRUPTCY CODE ALSO DOES NOT AUTHORIZE THE CRIME OF BRIBERY AKA SACKLER CASH FOR AN IN PERPETUITY RELEASE TO AVOID FUTURE LITIGATION.

‘These changes included an additional $1.175 to $1.675 billion in contributions from the Sackler Parties and other Sackler-related entities, which brought their total contribution under the Twelfth Amended Plan to $5.5 to $6 billion’
HOT DAMN TO AVOID FUTURE LITIGATION THE SACKLER FAMILY HAVE COME UP FROM $1.75 BILLION USD TO $6 BILLION OF THE $11 BILLION PER THE SUPREME COURT HARRINGTON THE SACKLER FAMILY DID ‘MILKING PROGRAM’ AGAIN THAT NEEDS TO

BE DEFINED IN THE CRIMINAL CODE SO THE SACKLER FAMILY CAN BE PROSECUTED IN THE CORRECT VENUE.

‘Plan in a manner consistent with the Supreme Court’s Harrington ruling. See Dubel Decl. ¶¶ 57, 60. These new rounds of mediation included the Debtors, the UCC, the AHC, the MSGE Group, certain of the Sackler Parties, an Ad Hoc Group of Hospitals, the NAS Committee, an Ad Hoc Group of Individual Victims, the Third-Party Payor Group, the Public School District Claimants, the Ratepayer Mediation Participants, and one or more negotiating committee(s) of State Attorneys General as active participants.’ ALL COMPLICIT IN THE NEW SACKLER CASH FOR IN PERPETUITY RELEASE SCHEME.

(i) a settlement of the Debtors’
claims against certain former shareholders, officers and directors, including the Sackler Parties; and (ii) the aforementioned optional settlements by creditors of their direct claims against the Sackler Parties. HOW DOES A PURDUE PI CLAIMANT HAVE A DIRECT CLAIM AGAINST THE SACKLER PARTIES?

‘Under the terms of the settlements among the Debtors and the Sackler Parties, the Sackler Parties will pay up to $7 billion over fifteen years in settlement of both the Debtors’ claims
19-23649-shl Doc 8270 Filed 11/20/25 Entered 11/20/25 23:05:59 Main Document
Pg 23 of 64
24
against the Sackler Parties and direct claims against the Sackler Parties held by creditors that elect to settle those claims. See Disclosure Statement Art. I.B; DelConte Decl. 4. Up to $1.5 billion of that total is due on the Effective Date of the Plan. See Disclosure Statement Art. I.B. These payments exceed the amount of the Sackler Parties’ prior commitments set forth in the Twelfth Amended Plan. See Disclosure Statement Art. I.B. The primary consideration being granted to the Sackler Parties in exchange for these payments is the release and injunction provisions provided for under the Plan and in the various settlements. See Disclosure Statement Art. I.B.’

The Plan provides for the settlement of the Debtors’ claims against the Sackler Parties
and allocates the proceeds from the settlement among the Debtors’ creditors (the “Estate Claims
Settlement”). See Disclosure Statement Art. I.B. Consistent with the Supreme Court’s ruling in Harrington, the Plan also provides for the voluntary settlement of direct claims held by creditors (“Direct Claims Settlements”) against the Sackler Parties, who will provide cash distributions to public and private claimants that elect to participate in the Direct Claims Settlements and grant the Third-Pary Releases of their direct claims.

‘A claimant’s vote on the Plan is independent of whether they elect to grant the Third-Party Releases in exchange for an increased recovery.’ AGAIN THE NEW SACKLER CASH FOR IN PERP RELEASE TO AVOID FUTURE LITIGATION SCHEME.

‘a claims administrator will determine whether a personal injury claim is qualified and substantiated and is thereby eligible to receive a distribution from the trust on account of the Claim.’ EDGAR IS A PURDUE PI CLAIMANT HAS A QUALIFIED CLAIM HOW DOES THIS QUALIFY CLAIMANT AS HAVING A VALID PETITION AGAINST THE SACKLER FAMILY TO GET PAID MO MONEY?

‘The trust distribution procedures also set forth what forms and qualifying evidence holders of personal injury claims need to submit to be eligible to receive a distribution. See Gentle Decl. 16’ PURDUE & OR SACKLER ‘DISTRIBUTION’

‘These include, among other things, holding such a claim against one or more Debtors, providing proof that demonstrates use of a qualifying prescribed opioid prior to the petition date, having timely filed a claim against the Debtors, and having submitted the applicable personal injury claim form and HIPAA consent form.’

‘Additionally, a claim that is found by the administrator to be deficient will receive the opportunity to cure that deficiency.’ SO PURDUE CLAIMANTS CAN THEN SUE THE SACKLER FAMILY TO HAVE A VALID CLAIM TO RECEIVE THE NEW SACKLER CASH FOR IN PERP RELEASE TO AVOID FUTURE LITIGATION SCHEME’?

‘The claims administrator’s review of personal injury claims has been ongoing since the Summer of 2025 to expedite the process and prevent delay in distributions to those that qualify. See Gentle Decl. ¶¶ 26-27, 29, 32’ WHY CLAIMANTS MUST KNOW IF CLAIMS ARE VALID PRIOR TO PROVIDING ANY NEW SACKLER CASH FOR IN PERP RELEASE TO AVOID FUTURE LITIGATION SCHEME.

‘Those creditors that choose to grant the Third-Party Releases will receive pro-rata distributions from both the Estate Claims Settlement and the Direct Claims Settlements so long as they qualify under the applicable trust distribution procedures.’ WHAT DOES PRO RATA EVEN MEAN?

‘Creditors that do not grant the Third-Party Releases may only receive pro-rata distributions from the Estate Claims Settlement and other estate value (if they meet the applicable trust distribution procedures), but not from the Direct Claims Settlement. See Disclosure Statement Art. I.B. But those creditors that do not grant the Third-Party Releases will be able to pursue litigation of their direct claims against the Shareholder Released Parties (as defined in the Plan). See Disclosure Statement Art. I.B. Additionally, those creditors that do not grant the Third-Party Releases will only receive distributions upon the allowance of their claims, which may be subject to objections by the Debtors and other parties-in-interest in accordance with the Bankruptcy Code and the Plan. See Disclosure Statement Art. I.B. Debtors’ counsel represented at the hearing on confirmation that those parties that grant the Third-Party Releases but subsequently have their proof of claim disallowed as untimely against the Debtors prior to the Debtors’ emergence from bankruptcy will retain their direct claims against the Sackler Parties because their ballot and election to grant the Third-Party Releases will

essentially be null and void. See Hr'g Tr. 52:10-12 (Nov. 14, 2025) [ECF No. 8253] (Debtors' counsel stating that "if your claim gets disallowed prior to emergence, you're not bound to the release, you're not treated as a claimant in the case."). As the Sackler Parties' increased settlement contributions are
occurring without the global Third-Party Releases of the Twelfth Amended Plan, the current Plan and related settlements provide that certain litigation costs and expenses incurred by the Sackler
19-23649-shl Doc 8270 Filed 11/20/25 Entered 11/20/25 23:05:59 Main Document
Pg 26 of 64
27
Parties related to creditor claims that do not participate in the Direct Claims Settlement will reduce the Sackler Parties' settlement payment obligations. See Disclosure Statement Art. I.B.
WHAT IS THE EFFECTIVE DATE?

'the current Plan and related settlements provide that certain litigation costs and expenses incurred by the Sackler
19-23649-shl Doc 8270 Filed 11/20/25 Entered 11/20/25 23:05:59 Main Document
Pg 26 of 64
27 Parties related to creditor claims that do not participate in the Direct Claims Settlement will reduce the Sackler Parties' settlement payment obligations.' SO THE SACKLER FAMILY IS GETTING THE BONUS OF BAR MEMBER CASH TO DEFEND THEIR FUTURE LITIGATION. YEAH NO WAY.

'At the confirmation hearing, there was a discussion about the difficulty of
determining the Effective Date and a creditor's inability to ascertain when that date would occur. As a result, the Debtors stated on the record that they would change the deadline to opt into the Third-Party Releases to a date certain, specifically March 1, 2026, and would send out a notice so that creditors would be aware of their deadline to opt in. See Hr'g Tr. 44:6-46:25 (Nov. 14, 2025).' THIS DID NOT RESOLVE THE ISSUE AT ALL.

29
Purdue Pharma L.P., et al.
Exhibit A - Final Tabulation
Plan
Class Plan Class
Description
Number
Accepting Number
Rejecting Amount
Accepting Amount
Rejecting Class
Voting
Result% % % %

3
Federal
Government
Unsecured
Claims
No valid Ballot submitted by a holder entitled to vote in the class
Deemed
to
Accept1
4
Non-Federal
Domestic
Governmental
Claims
3,351 8 $3,351.00 $8.00 Accept
99.76% 0.24% 99.76% 0.24%
5 Tribe Claims
59 10 $59.00 $10.00 Accept
85.51% 14.49% 85.51% 14.49%
6 Public School
Claims
173 1 $173.00 $1.00 Accept
99.43% 0.57% 99.43% 0.57%
7
Healthcare
Provider Claims
604 1 $604.00 $1.00 Accept
99.83% 0.17% 99.83% 0.17%
8 Third-Party Payor
Claims
19,410 1 $19,410.00 $1.00 Accept
99.99% 0.01% 99.99% 0.01%
9 ER Physician
Claims
1 0 $1.00 $0.00 Accept
100% 0% 100% 0%
10(a) NAS PI Claims
3,337 4 $3,337.00 $4.00 Accept
99.88% 0.12% 99.88% 0.12%
10(b) Non-NAS PI
Claims
54,599 222 $54,599.00 $222.00 Accept
99.60% 0.40% 99.60% 0.40%
11(c)

Other General
Unsecured
Claims
95 2 $8,400,087.11 $751.00 Accept
97.94% 2.06% 99.99% 0.01%
1 It is Kroll's understanding that Section 3.3 of the Plan provides: "With respect to each Debtor, if a Class
contains Claims eligible to vote and no Holder of Claims eligible to vote in such Class votes to accept or reject
this Plan by the Voting Deadline, this Plan shall be presumed accepted by the Holders of Claims in such Class." NOTE NO PATIENT CLASS LISTED.

'He testified to the success of opioid remediation efforts in
Arkansas as a demonstration of the value provided by opioid abatement funds.'
'OPIOID' OR 'PURDUE OXYCONTIN ABATEMENT' WHICH IS WHAT THIS CASE IS ABOUT PURDUE OXYCONTIN NOT GENERAL 'OPIOIDS'

'Mr. Gentle was offered as a witness by the Ad Hoc Committee of
Personal Injury Claimants to explain the differences in recovery between claimants who do or do not chose to opt-in to release the Sacklers, as well as the specifics of how claims will be reviewed by the Personal Injury Trust. See Hr'g Tr. 155:22-156:6 (Nov. 12, 2025); Declaration of Edgar C. Gentle III, Esq. in Support of the Ad Hoc Group of Individual Victims' Statement in Support of Confirmation of the Debtors' Joint Chapter 11 Plan of Reorganization and Limited Reply to Certain Plan Objections [ECF No. 8154]' AGAIN NEW SACKLER CASH FOR IN PERP RELEASE TO AVOID FUTURE LITIGATION SCHEME' EVEN WITH NO CLAIM AGAINST THE SACKLERS THE PURDUE PI CLAIMANTS CAN NOW JUST 'OPT-IN' FOR MO MONEY?

'estimated opioid claim
19-23649-shl Doc 8270 Filed 11/20/25 Entered 11/20/25 23:05:59 Main Document
Pg 32 of 64 33 liability lies between $4.54.125 billion and $8.834 trillion dollars. See Hr'g Tr. 159:24-160:8 (Nov. 12, 2025); '
WOW SO THE SACKLER FAMILY IS SUPER FUCKED IF THEY CAN NOT PAY CASH TO AVOID FUTURE LITIGATION RIGHT USING THE NEW SACKLER CASH FOR IN PERP RELEASE TO AVOID FUTURE LITIGATION SCHEME RIGHT.

'(1) the value of the Sackler Parties' assets, (2) the difficulty in reaching those
assets, and (3) the likelihood of success in reaching those assets to satisfy any judgment. These
witnesses testified that the Sacklers were contributing substantially all their assets to the Master Trust. Specifically, Mr. Martin was called by both sides of the Sackler family to testify and identify pre-petition assets, estimating assets of some $3.5526 billion from Side A and $5.0405 Billion from Side B. See Hr'g Tr. 160:21-161:6 (Nov. 12, 2025); Declaration of Timothy J. Martin [ECF No. 8142]; Declaration of Timothy J. Martin [ECF No. 8160]. Ms. Chakraborty testified about the Debtor's solvency during the years leading up the "wave of litigation" in

2017. See Hr'g Tr. 163:7-9 (Nov. 12, 2025); Declaration of Maureen Chakraborty, Ph.D. [ECF No. 8143]. There was also testimony about the difficulty in reaching the assets of the Sackler Parties, with Mr. White testifying about the complex nature of the trusts that contain the assets of
Side A of the Sackler family, and the challenges of reaching those assets in litigation as opposed
to settlement. See Hr'g Tr. 162:5-19 (Nov. 12, 2025); Declaration of Jonathan Greville White [ECF No. 8145]. Similarly, Mr. Cushing testified that the Side A trusts, principally located in the Bailiwick of Jersey, might be found by the Jersey Royal Court to be unreachable by creditors.
19-23649-shl Doc 8270 Filed 11/20/25 Entered 11/20/25 23:05:59 Main Document
Pg 33 of 64
34
See Expert Report of Michael Cushing [ECF No. 8157]. Other witnesses explained the defenses that the Sacklers could raise against litigation seeking to recover transferred assets. For example,
Ms. Blouin's testified that $4.559 billion in tax distributions made by the Debtors to the Sacklers were made for reasonable value. See Hr'g Tr. 163:9-15 (Nov. 12, 2025); Declaration of Jennifer Blouin [ECF No. 8146].' BAR MEMBERS JUDGES & COMMITTEES REALLY WANT US TO BELIEVE THIS.

the Sacklers could successfully argue that their participation on the
Debtor's Board of Directors was consistent with customary norms of corporate practices, insulating them from personal liability in that capacity. See Hr'g Tr. 163:16-22 (Nov. 12, 2025) THEN WHY THEIR NEW SACKLER CASH FOR IN PERP RELEASE TO AVOID FUTURE LITIGATION SCHEME?

I RESERVE THE RIGHT TO ADD TO THESE LISTS WITHIN MY 14 DAYS TO STAY / APPEAL.

*NEW ISSUE: THIS PLAN DOESNOT ADDRESS *FUTURE MEDICAL FOR ALL VALID CLAIMANTS WHO HAVE BEEN INJURED MEDICALLY BY PURDUE PHARMA & THE SACKLER FAMILY FELONY MISBRANDING OXYCONTIN PER HARRINGTON.

ROSEMARY HELEN ZIZIROS WALKER
1111 WALLER STREET SE SALEM OREGON 97302 bigrosemary@gmail.com 503-990-1172

CERT OF SERVICE I PROMISE I EMAILED MARC T, ARIK P, EDGAR G, PAUL S & UPLOADED AND MAILED A COPY TO THE COURT