US SDNY DISTRICT COURT
300 QUARROPAS STREET
WHITE PLAINS, NEW YORK 10601-4150

RE: ROSEMARY HELEN ZIZIROS WALKER VS PURDUE PHARMA

DISTRICT COURT CASE #25CV9681

JUDGE RAMON,

HERE IS EVI EVI DANCE OF GOVERNMENT ALSO REQUESTING
TECH COMPANIES PAY THE DATA STORAGE & ELECTRIC BILLS AS
SHOULD PURDUE PHARMA COVER THE REPOSITORY EXPENSES
IN PERPETUITY PER MS WALKERS MOTION.



AS YOU CAN ALSO SEE THE QUALIFIED DISABLED AMERICAN PAUPER
MS WALKER HAS NEGATIVE USD'S IN HER BANK ACCOUNT.



MS WALKER ME OMG IT IS SO WEIRD HAVING TO TYPE IN THIRD
PERSON.....I ALSO AM PROVIDING THE CONFIRMATION EVIDENCE
PREVIOUSLY PROVIDED ABOUT THE OPT-IN REVOKATION &
JUDGE LANE REFUSING TO ANSWER MS WALKERS VERY
SPECIFIC QUESTION ON THE REQUIREMENTS TO GET THE
SACKLER OPT-IN BRIBE CASH SO THE SACKLERS GET AN IN
PERPETUITY RELEASE FROM FUTURE LITIGATION WHEN PURDUE
PHARMA BANKRUPTCY CLAIMANTS HAVE NO PENDING PETITION
OR CLAIM AGAINST THE SACKLERS.

THIS IS FROM THE 11.13.25 CONFIRMATION DAYS.

PAGE 45

MR HUEBNER: 'as counsel to Purdue Pharma, the Chapter 11 estate
9 fiduciary for all, we're still the lawyers for Purdue
10 Pharma.

PAGE 46

MR PRIES
22 As Your Honor has seen since that time, there have
23 been a number of claimants that have filed claims late and
24 have asked for permission to have their claims accepted
25 late. We did accept a number of them'

PAGE 48

MR PRIES

2 Based on the information that Mr. Gentle got at
3 the end of July, he was then -- he has then started -- first
4 of all, he is also being very forgiving in allowing people
5 to send in their supplemental claim forms late. That's also
6 -- we've seen a lot of correspondence about that as well.
7 But he is now going through those. And interestingly, as I
8 think he mentioned yesterday, you know, the number of
9 claimants that are able to meet the requirements of the TDP
10 is quite a number less than the full 140,000. And by
11 meeting the quote, unquote TDP, the main requirement here is
12 showing a proof of a Purdue prescription. That is kind of
13 the baseline to get into the TDP.

SO DOES JUDGE LANE OR EDGAR GENTLE MAKE DECISIONS ON ALLOWING 'PEOPLE' TO PROVIDE FORGIVE &  ACCEPT LATE CLAIMS IF THE PLAN DOESNOT….WAIT WHO EXACTLY IS IN CHARGE THE DEBTORS & THEIR LAWYERS?

SO WHAT EXACTLY IS 'KIND OF THE BASELINE' FOR PURDUE PI BANKRUPTCY CLAIMANTS TO GET THE SACKLER CASH BRIBE FOR AN IN PERPETUITY RELEASE SO THE SACKLERS AVOID FUTURE LITIGATION & WHERE EXACTLY ARE THESE WORDS IN THE CURRENT PLAN?

PAGE 50

10 MR. PREIS: But he is estimating that it is going
11 to be I would say roughly -- and please don't -- and it's
12 based on points, it's roughly -- call it $7,000 to $8,000
13 per person on the less than six months and around
14 approximately $16,0000 on the more than six months. That
15 though again is all subject to how many claimants meet the
16 requirements.

PAGE 51

9 extremely complicated. And obviously I haven't even touched
10 on what happens if you give a release, don't give a release,
11 et cetera,

PAGE 54
THE COURT

9 Today is about confirmation of the plan,

THAT WASNOT A FACTUAL STATEMENT BY COURT MADE ON 11.13.2025 WAS IT OTHERWISE MS WALKERS STAY WOULD HAVE BEEN ORDERED RIGHT.

7 when the Court was going to hear pro se claimant objections.
8 And that is now. Thursday, November 13th at 11:00 a.m. as
9 set forth in paragraph three of that notice.

8 What's been explained before is that the idea is
9 to get to confirmation, to know that we have a plan, that we
10 have a way to deal with claims, allowed claims and different
11 classes, before turning to the timeliness issue. One of the

12 reasons for that is to try to deal with these kinds of legal
13 issues as consistently as we can.
APPARENTLY DATES ARE NOT AN ISSUE TO THE COURT WHEN IN
FACT DATES ARE A VERY GIGANTIC ISSUE FOR MS WALKER & HER
PENDING OREGON PETITION AGAINST THE SACKLERS.


16 or two one-off situations where timeliness has been
17 requested for me to address. We've already had hearings on
18 those. One of them is I'm working on now. But for most
19 folks, that issue hasn't yet come to the fore if you filed
20 the claim after what is identified as the bar date. That
21 will be addressed. It's not an issue for today. I know
22 that can be frustrating to hear that. You have important
23 issues, but they're not the issues we're dealing with today.
24 But in bankruptcy we have to by necessity sequence issues,
25 particularly in a case as large as this one.

UM YES YES IT HAS & DOES CONTINUE TO PREVENT MS WALKERS
CASE FROM PROCEEDING AGAINST THE SACKLERS.

10 Again, nothing about today waives anybody's rights
11 as to their individual claim including issues about
12 timeliness of their claim.

PAGE 100 -

WHEN A JUDGE WRITES MS WALKER IS BARRED FROM
CONTACTING THE COURT ABOUT HER PETITION WHO HAS BOTH
MS WALKERS AMENDMENT I & ADA TITLE II DUE PROCESS AND
EQUAL PROTECTION RIGHTS NOT BEEN VIOLATED IS THE REAL
QUESTION AGAIN SEE DOC 6257 & 7858.

17 everybody else here. So you just cited the First Amendment,
18 but you didn't explain how in your view the First Amendment
19 was affected by any of this.

21 THE COURT: Well, maybe I can help on that. And
22 I'll make a comment and maybe somebody on the Debtors can
23 help. I think what you've heard most often is the effective
24 date. And that's when certain things are contemplated to
25 happen under the plan happens so that you take the steps
Page 101

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 that are contemplated by the plan. And so that's what's
2 generally used, the effective date. It has a very technical

BUT ALAS NO ONE CAN PROVIDE ANY DATE FOR THIS PLAN TO
ACTIVATE …..BECAUSE NO ONE HAS SET ANY OF THE VERY
IMPORTANT DEADLINES THAT DEBTORS & LAWYERS CONTINUE
TO CHANGE OR AMEND AS ONLY PURDUE PHARMA SEEMS TO
HAVE THESE RIGHTS.

NO NONE OF THIS WAS HELPFUL AT ALL AS MS WALKERS PRO-SE
TIME TO SPEAK WAS CONTINUOUSLY INTERRUPTED. FOR REAL
THE COURT SAID 'I THINK THE EFFECTIVE DATE MEANS' WAIT
JUDGE LANE DOESNOT UNDERSTAND THE IMPORTANCE OF THE
EFFECTIVE DATE TRIGGERS EVERY EVENT IN THE CONFIRMED
PLAN….AGAIN WHY MS WALKER IS REQUESTING JUDGE LANE BE
REMOVED FOR LEGAL INCOMPETENCE & MSCONDUCT.

9 can. I think effective date means that the things that are
10 contemplated by the plan have gone forward in terms of the
11 substantial steps to make the plan move forward. It doesn't
12 mean that everything is done in the case by any stretch of
13 the imagination. But I don't know if that's of any help,
14 but hopefully it is.

17 holdbacks. What is a holdback? Oh, everyone keeps
18 mentioning opt-in or opt-out. However, until -- they
19 brought up claims for this whole thing. And it's part of
20 the plan. So it kind of should be resolved. There's --
21 THE COURT: Well, it's very clear, ma'am -- and I
22 just finished explaining that. It's very clear that this
23 plan when it comes to your rights against the Sacklers is an
24 opt-in plan.
25 MS. WALKER: Right. But I can revoke. Because I
Page 102

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 opted in and approved the plan. But that doesn't mean that

2 that's going to stay that way if my claim is not approved.
3 Then I'm going to revoke my release of the Sacklers.
4 And then will we be punished? Because yesterday
5 they were mentioning two years -- like if you don't release,
6 then they can wait up to two years. And why would the
7 Sacklers get paid lawyers' fees for defending what lawsuits
8 will be done against them when -- if we revoke our release.
9 I mean, again, that just doesn't seem like it's really
10 written in, and it should be amended along with --
11 THE COURT: All right. So let me see if I can get
12 you information on one of those things.
13 MS. WALKER: Oh, was there a --
14 THE COURT: Ma'am, if I'm talking, you're not
15 talking.
16 MS. WALKER: Sorry.
17 THE COURT: All right. The ability to participate
18 remotely is a privilege. We are doing it in this case
19 because it makes sense. And it's very challenging. So I
20 don't mean to yell at anybody, but it's very, very hard to
21 do this remotely given the number of people on the line,
22 which is numbers -- I think yesterday it was over 170 or
23 whatever it was. It's a large number of people.
24 So I sense the question that might benefit from
25 clarification from somebody who is in a position to walk
Page 103

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 through this. What I understood Ms. Walker to be asking
2 just a minute ago was what happens with her release and her
3 release and her opt-in if her claim isn't allowed.
4 MS. WALKER: Right.
5 THE COURT: Yeah. So let me see if I can get
6 somebody here in the courtroom to answer that question.
7 We're all about trying to get information to people if we
8 can. And that seems to be a fair question.
9 MS. WALKER: And, Judge --
10 THE COURT: Hold on. Hold on. Ma'am, I'm going
11 to try to get --
12 MS. WALKER: Okay, sorry. Sorry.
13 THE COURT: You need to wait. Because I'm going
14 to try to get an answer to your question. But you've got to

15 hang with me for a minute.
16 MS. WALKER: Okay, sorry.
17 THE COURT: All right. No worries. No worries.
18 MR. HUEBNER: So, Your Honor, I will do my best to
19 answer on the fly and I'll look to Mr. Preis and others to
20 help where they can.
21 So Ms. Walker's situation is one of the few that
22 is relatively unique, although one should never modify the
23 word unique. She filed her claim late and is currently the
24 subject of an adjourned late claim objection. And so
25 possibility number one is that the Court rules that she
Page 104

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 doesn't have a cognizable claim at all because she missed
2 the bar date and it's being stricken as being late.
3 Possibility number two is that that motion is settled or
4 otherwise resolved in her favor and she is allowed to
5 proceed with the claim. She then has to go through the TDP
6 process we've described before, including, as Mr. Preis and
7 others have described, you know, proving really a base that
8 she at one point (indiscernible) took a Purdue product
9 because -- one thing that I think has confused many people
10 is that --
11 THE COURT: Somebody has got an open mic. Please
12 close it. Thank you.
13 MR. HUEBNER: One thing that has confused many
14 people over the years is that very often the phrase Oxy does
15 not refer to OxyContin. It refers to Oxycodone, which is
16 just a generic form of morphine, along with hydrocodone and
17 others and the like. And so a great many people actually
18 never took a product made by Purdue. And that's one of the
19 things that the TDP administrator will have to --
20 MS. WALKER: Yes, I --
21 THE COURT: Hold on. Ma'am, ma'am --
22 MS. WALKER: Sorry.
23 THE COURT: Again, when it's time for you to
24 speak, I will let you know.
25 MS. WALKER: Okay, thank you.

Page 105

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 THE COURT: I've got to have this orderly or it
2 doesn't work at all.
3 MS. WALKER: Okay. Sorry.
4 THE COURT: Okay. Let me finish getting the
5 explanation. So again, hang with me, please. I appreciate
6 your patience.
7 MS. WALKER: Okay.
8 MR. HUEBNER: But there is not a mechanic for
9 saying for how I will affirmatively choose to opt into the
10 releases on my ballot, I don't want to sue the Sacklers, I
11 want to get the enhanced distribution. But then if I don't
12 like the outcome with the TDP, I then get to withdraw my
13 opt-in in X months or a year and then have a different set
14 of rights. And so the election I think within the extended
15 window that has been provided does have to be made. And
16 it's irrevocable. You don't get sort of a do-over based on
17 what happens with the trust distribution procedures with
18 your claim with respect to, you know, revoking essentially
19 the affirmative opt-in that you previously gave on your
20 ballot to participate and be a releasing party.
21 Let me just check with Mr. Preis since I am
22 looking at the Court not sideways. Let the record reflect
23 that Mr. Preis, who knows more about this than I do, nodded
24 his head, which in this country means agreement.
25 THE COURT: Let me ask -- hold on one second,
Page 106

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 ma'am. Let me ask Mr. Preis if he has anything else that he
2 wants to add that would illuminate the situation for Ms.
3 Walker.
4 MR. PREIS: Ms. Walker has discussed this with me
5 before. There is a lot of misunderstanding about how the
6 plan works and what it means to give the release.
7 When you give the release, it opens up the
8 opportunity to participate in the settlement. It allows

9 your claim. Right? That's the way -- that's the bargain
10 that was made. It doesn't mean you get dollars. Right?
11 And that's the part that I know is very frustrating to
12 claimants. Because a claimant will say, wait, I don't
13 understand, I gave a release. What do you mean, now I find
14 out six, seven months from now I don't get anything? That's
15 actually the way the plan works across the board for all
16 claimants. No claimant knows when they give a release that
17 they are definitely, I guess other than -- there are certain
18 states, right? But that they're definitely --
19 MS. WALKER: Could I have --
20 THE COURT: Hold on, ma'am. Ma'am.
21 MS. WALKER: Sorry.
22 THE COURT: Please. Again, you have to be
23 patient. This is -- we've got a lot of people here. And
24 we'll never get through everything if we -- unless we hear
25 from one person at a time.

Page 107

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 MS. WALKER: Okay, sorry.
2 THE COURT: And again, I'm trying to get
3 information to answer your question.
4 MS. WALKER: Thank you.
5 THE COURT: So you've got to hang in there.
6 MS. WALKER: Thank you.
7 MR. PREIS: It works the same way for the
8 hospitals, for the TPPs, for whomever. All claimants have
9 to make their determination before they know for certain
10 whether they are going to get something. But giving the
11 release lets them participate in the settlement. It's also
12 -- the flip side is it's also important for the Sacklers so
13 they know how much money they're paying in the settlement.
14 Because if they don't get a release from someone, as you
15 know Mr. Vonnegut went through yesterday, they get to retain
16 money. Those are retained payments.
17 So that process, while I understand is perhaps
18 difficult, the predicate to all of it is there are people
19 who -- there are claimants, not people, who believe, okay,
20 if I file a proof of claim, likely it's valid. I'm going to

21 allow a claim. But that's not true. Right? That's not the
22 way it works. The bargain here was the allowance of the
23 claim is given in return for giving the release. I hope
24 that answers the question.
25 THE COURT: I was with you until the last thing
Page 108

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 you said, the allowance of the claim allows for the release.
2 MR. PREIS: Sorry. The flip. Sorry, sorry,
3 sorry.
4 THE COURT: Yeah, I think it's the flip. Which is
5 to say that what the plan sets up, there is an ability to --
6 in the plan the trustee might object to various claims after
7 going through the administrative process. It might end up
8 here for whatever reason and instead you're voting on the
9 plan as to what properly allowed claims are entitled to get
10 and whether the claimants want to share in this recovery,
11 but it doesn't guarantee that any individual claim is going
12 to get paid because they are subject to a potential
13 objection. All right. Thank you.
14 All right, Ms. Walker, again, I don't know that
15 that's the news you wanted, but I wanted to make --
16 MS. WALKER: Everybody filed a petition in court
17 against the Sackler family. So to say that this is why I
18 felt that claims could be resolved. And that's it, the end
19 of claims. No more late claims. They can't change the
20 dates and approve some late claims and not others, and why
21 it needs to be resolved, exactly for the reasons that the
22 lawyers are arguing, so that everybody knows how much money
23 is going into each thing, what they're classified as.
24 Again, not everybody sued the Sacklers and filed a
25 petition, a claim, against both Purdue and the Sacklers. So
Page 109

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 if my claim is not approved, I need to be able to revoke my
2 right to do the release and pursue my claim if you don't

3 rule that my claim is joined, you know, whatever. That I
4 don't understand. Again, I filed in 2023 as soon as I
5 heard. So, again, this is why I feel it needs to be
6 resolved. And, yes, I need to have the right to reserve --
7 to revoke my release if they don't approve my claim.
8 THE COURT: I understand your argument.
9 MS. WALKER: Okay.
10 THE COURT: And so let me ask you, anything else
11 that you wanted to address then?
12 MS. WALKER: Well, there's, yeah, so much. I
13 mean, when they say, oh, it's a work in progress, and some
14 of them, you know, aren't very material changes, and then
15 some of the things are very material, you know, well, we
16 need to see what the material changes are. I mean, and this
17 -- oh, when they said this morning about the Sacklers not
18 being able to have their name on stuff, that should be in
19 perpetuity, not this many years. It could be forever, that
20 their name is a stain in the history of the United States.
21 Okay. So --
22 THE COURT: All right. That's --
23 MS. WALKER: So then the ruling. What about us
24 being allowed to be part of the board of the new company?
25 THE COURT: What I'm hearing now is I'm hearing
Page 110

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 argument on plan confirmation, and I'm going to take
2 everybody's --
3 MS. WALKER: Yes.
4 THE COURT: -- everybody's arguments, and then I'm
5 going to hear from the other side, other sides who are here
6 in support of the plan, and then I'll make a decision and
7 I'll address objections in the course of making that
8 decision.
9 MS. WALKER: Okay, and I still just really have
10 issues, like, with discharge and what the difference is of
11 emergence, discharge. And as I understand bankruptcy, like,
12 nothing is discharged until everybody's paid. So if that
13 happens over 15 years, there should not technically be a
14 discharge or an emergence for the Sackler family or Purdue.
15 THE COURT: All right. Again, there's different

16 rules here for the Sacklers and for Purdue. Purdue is the
17 debtor, right?
18 MS. WALKER: Right.
19 THE COURT: And that's the party that we can have
20 a discussion about the bankruptcy discharge. But that
21 really has to do with the debtor. The Sacklers, the only
22 thing that is implicated here is not a bankruptcy discharge.
23 It's a release by virtue of the opt-in that we've already
24 discussed.
25 MS. WALKER: Which I think is unconstitutional and
Page 111

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 what the Supreme Court ruled on. I agree with the other pro
2 se claimants.
3 THE COURT: All right.
4 MS. WALKER: All right. Thanks, Judge.
5 THE COURT: Thank you very much, Ms. Walker, and
6 hopefully we got you some information in the course of
7 today.
8 MS. WALKER: Well, I would like it in an amendment
9 and so that we do have -- you know, claimants do have the
10 right to revoke release.
11 THE COURT: All right. All right.
12 MS. WALKER: Okay.
13 THE COURT: Thank you very much.

NOW THIS IS 11.14.25 CONFIRMATION DAY

2 THE COURT: These things happen. So for this
3 particular issue of opt outs, remind me what there is that
4 would govern that. Just it's probably worth putting on the
5 record.
6 MR. VONNEGUT: Sure. So folks who did not opt in
7 to give the releases.
8 THE COURT: Right.
9 MR. VONNEGUT: If they change their minds and
10 decide that they would prefer the higher plan distribution
11 and they want to opt in, they can do so up to 30 days prior
12 to the effective date.
13 THE COURT: All right.

14 MR. VONNEGUT: And so again, if you are a third-
15 party payer, or a personal injury claimant, you'd do that by

16 ticking a box on your ballot and submitting it. And so the
17 procedures for doing that are laid out in our disclosure
18 statement.
19 And I'll just offer on the record, if anybody has
20 questions, they can reach out to Davis Polk, to me
21 personally, or to Mr. Price --
22 THE COURT: Right.
23 MR. VONNEGUT: -- for the creditors committee, and
24 we're happy to help. For folks --
25 THE COURT: So what if somebody had exercised
Page 41

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 that, filled it out, the effective date has not arrived --
2 MR. VONNEGUT: Yes.
3 THE COURT: -- and they have a change
4 (indiscernible)?
5 MR. VONNEGUT: And they would like to withdraw --
6 THE COURT: Yes.

16 MR. VONNEGUT: I've confirmed. So folks who did
17 not give the release and changed their mind and want to opt
18 in, they can send in the ballot.
19 THE COURT: Right.
20 MR. VONNEGUT: People who do give the release --
21 THE COURT: Right.
22 MR. VONNEGUT: -- there is not a mechanism for
23 them to then withdraw that release.
24 THE COURT: All right.
25 MR. VONNEGUT: So giving the release results in
Page 42

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 the claim being allowed, which means they get to go to the

2 relevant creditor trust. Have their claim processed under
3 the relevant trust distribution procedures, and get whatever
4 distribution those provide for.

6 THE COURT: So one thing you'd mentioned, that
7 people have up to the effective date. And there was a
8 discussion about the effective date. There are a lot of
9 things that go into the effective date.
10 So the question could be asked as how will people
11 know when the effective date is going to arrive?
12 MR. VONNEGUT: Yes.
13 THE COURT: So for purposes of deciding to opt in,
14 to opt out. And so what could you tell them on that front?

15 MR. VONNEGUT: Sure. Your Honor, the precise
16 timing of the effective date is pretty difficult to predict.
17 As Mr. Huebner mentioned yesterday, post confirmation, a
18 number of workstreams have to be completed before we can
19 emerge chiefly regulatory approval processes --
20 THE COURT: Right.
21 MR. VONNEGUT: -- for transfer of the business to
22 Noah. As well as sentencing under our settlement agreement
23 with the Department of Justice. Sitting here today, Your
24 Honor, assuming that things go well and the plan is
25 confirmed, we would roughly estimate emergence will occur
Page 44

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 around the end of March or beginning of April in 2026, but
2 we will file a notice on the docket.
3 THE COURT: All right. So the notice will work
4 how? Will it be that the effective date has occurred or
5 will it be in advance we anticipate the effective date? So
6 in other words, if somebody says I'm still here in February
7 --
8 MR. VONNEGUT: Yes.
9 THE COURT: And I am of two minds and I need --
10 like many things in life, it would be helpful to have a
11 deadline to let me know when I need to make my decision. So
12 those folks, where would they check? Will there be
13 something posted somewhere that will allow them to say, oh,

14 the effective date, that date is a work in progress for a
15 while, but at a certain point it will crystallize?
16 MR. HUEBNER: Your Honor, so all of us are wrong
17 and you are right. A date that is 30 days before a date
18 that is not knowable until it arrives is narrowly not
19 knowable. It's sort of like saying can the people in the
20 back hear me. Not knowable.
21 So we would propose -- I just had a ten-second
22 colloquy with Mr. Preis to just set it at March 1st, which
23 we think is probably a reasonable approximation and gives
24 people a few more months. But that way whether the
25 effective date is March 7th or April 3rd or whatever, it's a
Page 45

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 known date.
2 THE COURT: Right. I think that makes sense.
3 MS. WIGGINS: So assuming that that addresses the
4 Court's concerns, it's -- correct. Because otherwise you
5 said that you won't know whether you made the deadline or
6 not, and that doesn't really help any.
7 THE COURT: right. And so what I would say is you
8 could put that in the confirmation order.
9 MR. VONNEGUT: Yes.
10 THE COURT: And then appropriately notice it in
11 the way you get information out. And so maybe -- I'm trying
12 to figure out how to appropriately button that up. Because
13 the disclosure statement is the disclosure mechanism. But
14 this is an important detail. So what would you propose?
15 MR. HUEBNER: Your Honor, what we can do is --
16 this is obviously all a relatively new accommodation to get
17 people even more time than they had before. So it's an
18 enhancement of people's rights.
19 THE COURT: Right.
20 MR. HUEBNER: We can just put a notice on the
21 docket next week that says notice of final election date
22 that explains it, and then I think we are done.
23 THE COURT: Okay, great. And you'll put it in the
24 confirmation order as well.
25 MR. HUEBNER: Yeah.

Page 46

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 THE COURT: Fantastic. All right.
2 MR. VONNEGUT: Okay. So, Your Honor, that covers
3 the confirmation order. I had planned to address a couple
4 of the questions that were raised by pro se claimants about
5 exactly how claim allowance and release elections work if
6 that would be helpful.
7 THE COURT: Please.
8 MR. VONNEGUT: Because that did seem to generate a
9 fair bit of confusion yesterday. Okay.
10 So just to start with the basics. And I'll kind
11 of walk through this using a personal injury claim as an
12 example.
13 There are three ways under the plan that a
14 personal injury claim can become allowed. One is the
15 claimant grants the third-party release by opting in on
16 their ballot and sends that ballot in. The other is if the
17 claimant does not grant the release but then nobody objects
18 to the claim for 18 months after emergence, it automatically
19 becomes allowed at that time. Or if somebody does object to
20 the claim because the claimant didn't grant the release,
21 they can then litigate that objection. And if they prevail,
22 the claim would be allowed at that time.
23 However, allowance in this case means that what
24 the Claimant has is a right to go to the personal injury
25 trust and have their claim treated under those trust
Page 47

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 distribution procedures. So allowance doesn't necessarily
2 mean you are hereby guaranteed a certain amount of money, it
3 means that you have a ticket to go to the personal injury
4 trust and to have your claim processed pursuant to those
5 trust distribution procedures. And so it is possible after
6 the claim is allowed if the claimant goes to the personal
7 injury trust, and under the rules that govern that trust, if

8 for instance they have no records regarding use of a Purdue
9 product, the trust distribution procedures could dictate
10 that they do not receive a recovery from that trust.
11 Let me just pause and ask if that generally made
12 sense.
13 THE COURT: That makes sense. I guess the
14 question is there was a discussion -- and I think it was in
15 either the Committee or the AHC's confirmation brief that
16 talked about the release being its own separate
17 consideration and valuable in the sense of freeing up assets
18 and doing a lot of other things.
19 MR. VONNEGUT: Yes.
20 THE COURT: And the way that was explained made
21 sense to me, right? Because you're talking about the
22 separate consideration for the release, what people are
23 getting out of it. But then yesterday we were talking about
24 the possibility that there may be a certain significant
25 percentage of claims that end up not being allowed. And I
Page 48

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 think Mr. Preis had thrown out 50 percent. I'm not --
2 obviously that's not knowable and I didn't take that as
3 fact. But I took it as a demonstration that it's not an
4 insignificant number, particularly given the timelines for
5 the opioid use involved in the personal injury claims. And
6 we did have one of the gentlemen yesterday who was on the
7 phone talk about, well, I don't have any records.
8 MR. VONNEGUT: Yes.
9 THE COURT: So the question then becomes whether
10 there's any concern about if there's a large percentage of
11 folks who have a claim that's allowed, but it's not really
12 allowed, but they've given up their right to sue the
13 Sacklers and ultimately they get nothing out of it.
14 MR. VONNEGUT: Yes.
15 THE COURT: And so what's the response to that? I
16 think that was made -- that point was made --
17 MR. VONNEGUT: Sure.
18 THE COURT: It took me awhile to understand why
19 Ms. Walker was so intent on the sequencing of things. And I
20 think that was ultimately her point. How do I know if I

21 want to give this up if I don't know if it actually gets me
22 anything?
23 MR. VONNEGUT: Yes, Your Honor.
24 THE COURT: So what's the thinking behind that?
25 MR. VONNEGUT: Sure. So Ms. Walker specifically
Page 49

1 is a very specific fact pattern. I'll walk through exactly
2 what --
3 THE COURT: Well, that's a late-filed claim,
4 right.
5 MR. VONNEGUT: Exactly, Your Honor.
6 THE COURT: But I don't know at the end of the day
7 it makes a difference. If you have a late-filed claim or if
8 you have a claim that is a challenge because there's not the
9 sufficient substantiation --
10 MR. VONNEGUT: Right. That's --
11 THE COURT: At the end of the day it's the same
12 problem for a claimant.
13 MR. VONNEGUT: That's exactly right.
14 THE COURT: The timing might be different, but
15 it's the same issue.
16 MR. VONNEGUT: Exactly right. So I'll walk
17 through how Ms. Walker's claim will be treated and then also
18 how your claim would be treated if it is disputed prior to
19 emergence.
20 THE COURT: Right.
21 MR. VONNEGUT: So Ms. Walker has a late-filed
22 claim. So when she voted on the plan, she voted on a
23 provisional ballot because we don't yet know whether that
24 late-filed claim will be allowed, whether the lateness of
25 the filing will be excuse or not.

Page 50

1 THE COURT: Right.

2 MR. VONNEGUT: And so with respect to Ms. Walker,
3 if she granted the release on her provisional ballot but
4 then her claim is disallowed because it was late-filed, she
5 will not be bound to that release anymore because the
6 provisional ballot will effectively just be torn up, thrown
7 in the garbage. She will be treated as though she does not
8 have a claim in the bankruptcy and therefore could not be
9 bound to the release.
10 THE COURT: All right.
11 MR. VONNEGUT: Now, the other population for whom
12 that might apply is folks who had timely-filed claims and
13 elected to grant the release on their ballot, sent that in.
14 But then they also have no supporting evidence. And so an
15 objection to their claim is filed prior to emergence based
16 on the grounds that they have no supporting evidence. If
17 their claims are disallowed prior to emergence, they would
18 be treated exactly the same way. So they don't have a claim
19 in the case. Therefore, their ballot would no longer be
20 binding upon them.
21 THE COURT: All right. So there won't be a
22 circumstance where someone says I gave up this release. I
23 thought I was getting something. I'm not getting anything,
24 but I am being held to the release.
25 MR. VONNEGUT: There is one fact pattern where
Page 51

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 that can happen. So let me be very precise, Your Honor. So
2 as I say, if you grant the release, your claim is deemed
3 allowed. But that allowance is deemed to occur at
4 emergence.
5 So if you grant the release, if you tick the box
6 on your ballot, your claim is therefore deemed allowed --
7 THE COURT: So it's more like a provisional
8 allowance than an actual allowance. All right.
9 MR. VONNEGUT: Correct. Correct. But again, it
10 only occurs at emergence. So if your claim gets disallowed
11 prior to emergence, you're not bound to the release, you're
12 not treated as a claimant in the case.
13 If you grant the release, your claim is deemed
14 allowed at emergence. You then go to the PI claims trust

15 for processing of your claim and it is possible that the
16 trust distribution procedures on the basis of your specific
17 claim then say you do not get a recovery from the personal
18 injury trust.
19 However, it's important to note the ballots that
20 everybody signed to opt into the releases, and those are on
21 file for PIs and I believe third-party payors as well, those
22 are on file at 7611 filed June 20th. And I just have the
23 language here.
24 So what it says is if you grant the release, such
25 holder's claim will be considered allowed and therefore such
Page 52

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 holder may be entitled to compensation at the value
2 established under the plan and the PI trust distribution
3 procedures through a streamlined and expedited process.
4 So effectively if you grant the release, your
5 consideration is the opportunity to have your claim treated
6 by the trust. It's not necessarily a guarantee that you
7 will receive a recovery.
8 THE COURT: All right. But I guess am I right in
9 saying that people don't really have a choice as to the
10 timing, right? I mean, whether something -- whether this
11 issue comes to the fore before emergence or the effective
12 date or not is not necessarily within their control.
13 MR. VONNEGUT: That's correct, Your Honor. So let
14 me elaborate just a little bit on what I mean by that.
15 So earlier this year, we had claims administrators
16 appointed for personal injury claims and third-party payors.
17 They gathered a tremendous amount of information from
18 everybody who had a filed claim to try to preemptively
19 determine which of those claims will be compensable and
20 which will not.
21 On the basis of that information-gathering
22 exercise, we and the Creditors' Committee will likely be
23 objecting to a number of unsubstantiated claims prior to
24 emergence. So if folks either did not respond at all to
25 that information-gathering process or they responded
Page 53

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 effectively I have no records, I have no supporting
2 evidence, it's very likely that their claims will be
3 objected to prior to emergence.
4 And so I think the population that may go to the
5 trust and then ultimately not receive a recovery, it's
6 difficult to determine what the size of that population is,
7 but it's effectively people who responded to that
8 information-gathering process, but not necessarily with
9 enough evidence to determine either way whether their claims
10 should be objected to prior to emergence.
11 THE COURT: All right. But I guess it doesn't
12 matter whether the -- necessarily whether the issues teed up
13 before emergence, because it's going to be a question of
14 whether -- or it's decided before emergence.
15 MR. VONNEGUT: Correct, Your Honor.
16 THE COURT: All right. And it sounds like the
17 timing issues, whether a claim is timely filed or not, will
18 -- those will I think all be teed up before emergence,
19 right?
20 MR. VONNEGUT: That's right, Your Honor. Our goal
21 is to get all of these things decided as quickly as we can.
22 So we're cooperating with counsel to the Committee and Mr.
23 Gentle to try to get those objections on file as soon as we
24 can.
25 THE COURT: And if there's a circumstance where
Page 54

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 equities would suggest that you leave something open for an
2 individual claimant because it's been discussed but it
3 hasn't been decided, I suppose that could be addressed in
4 connection with that specific claim. In other words --
5 hypotheticals are awful things to do to people, but let me
6 try this. So if the emergence -- and we used March 1st as a
7 date without committing to it, but used it as a deadline.
8 But assuming it's somewhere in that neighborhood and we end
9 up having a hearing in February and we say, well, there's

10 still an issue, there needs further factual development on
11 this claim objection, and someone comes in and says, well I
12 don't -- if I don't succeed here, I really don't want to
13 grant the release to the Sacklers. Is that something to be
14 dealt with as a one-off by the court at the time to say we
15 should be able to address that issue for relief, or is that
16 going to be something that's precluded by the plan?
17 MR. VONNEGUT: Sure.
18 THE COURT: Because it's sort of the claims
19 allowance or disallowance process and how that exactly plays
20 in here. And I don't want to have an exception this follows
21 the rule, because you need to have the plan work
22 appropriately. So this may be something you want to chew
23 over and think about and get back to me.
24 MR. VONNEGUT: Sure.
25 THE COURT: I don't want to put you unduly on the
Page 55

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 spot. So I'm just trying to wrestle with that aspect of it
2 to try to figure things out.
3 MR. VONNEGUT: Great. So, Your Honor, I'll take a
4 crack at it and then I'll ask Mr. Preis and Mr. Shore and
5 anybody else if they disagree with me to chime in.
6 I think in that fact pattern it could just be
7 resolved on a on-off basis with each individual claimant. I
8 think the simplest way to do that, frankly, is if it looks
9 very likely that the claim will not be compensable and that
10 claimant wants to retain their claims against the Sacklers.
11 If they're not going to get money from the PI trust, they
12 could just withdraw the claim at that time, right? That
13 could be done on a stipulated basis.
14 If they want to maintain that dispute and keep
15 arguing about the validity of the claim, I think we'd have
16 to negotiate on a one-off basis how that is handled.
17 THE COURT: That's fair. And I realize the -- the
18 reason I ask about the timeliness is the timeliness actually
19 presents the most challenge, right? Because somebody might
20 have an untimely claim here for whatever reason, but somehow
21 a claim is perfectly timely against the Sacklers. And they
22 might have plenty of substantiation. So you can imagine

23 saying, well, that seems off.
24 MR. VONNEGUT: Yes.
25 THE COURT: On the other hand, if you are somebody
Page 56

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 going through the administrative process here established by
2 the trust and you don't have an ability to establish and
3 clear the very modest hurdle of substantiation here, while
4 you theoretically might have a claim, as a practical matter,
5 you really don't. You're not going to be able to go
6 forward. So I'm not so worried about that situation because
7 I don't think you're going to be in a position of making --
8 having somebody giving up a meaningful right or a right that
9 -- to say well, I have it here and this is unfair. If you
10 can't -- if you want to participate in the trust and you
11 just don't have the documents, you really are not going to
12 be able to participate in a claim against the Sacklers for
13 exactly the same reason. So that -- I get that. And that
14 sort of dovetails.
15 So the timeliness claims are the ones that are a
16 little different that way.
17 MR. VONNEGUT: Yes.
18 THE COURT: And so given that those are teed up to
19 be addressed before the effective date allows us to I think
20 handle that particular situation.
21 MR. VONNEGUT: I think that's exactly right, Your
22 Honor.
23 THE COURT: All right.
24 MR. VONNEGUT: Very much agreed that timeliness
25 objections are qualitatively different.

Page 57

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 THE COURT: Yes.
2 MR. VONNEGUT: And I see no reason that we can't
3 address and resolve all of those prior to emergence.

4 THE COURT: All right. Thank you. And I can't --
5 I don't -- I can't think of any other category. Right? I
6 think those are the categories that we've been talking
7 about. We've been talking about timeliness consistently and
8 then the other one, substantiation. So I think we're talked
9 about the two that -- if anyone is smart enough to identify
10 something we haven't talked about in terms of claim
11 objection types that should be addressed, you'll let me
12 know. But --
13 MR. VONNEGUT: No, Your Honor, I think that's
14 exactly right.
15 THE COURT: And so we will take a midmorning
16 break. And at midmorning break people can noodle about
17 this. That's why I was thinking we'll end up taking a
18 midmorning break, but you never quite know how things go.
19 So But I think I understand that, and I think the
20 fact that we're dealing with the timeliness objections up
21 front in a way that allows them to be addressed before the
22 effective date. And even if they're not, we can deal with
23 them as a one-off in terms of various issues. That's very
24 helpful to know.
25 MR. VONNEGUT: Thank you very much, Your Honor.
Page 58

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 Unless Your Honor has other questions, I have nothing
2 further on the plan other than just to flag that the two
3 plan issues that we are attempting to resolve as we speak,
4 as I mentioned earlier, the retained payment escrow. We are
5 hopeful that we'll have sign-off on that momentarily. And
6 then lastly, the operating injunction that is an attachment

7 to the confirmation order, we've been working on some last-
8 minute language changes and we are very hopeful that those

9 will be resolved very soon.
10 THE COURT: All right. Someone may have some
11 information for you.
12 MR. VONNEGUT: Yes. Sorry. Mr. Bane reminds me
13 as well we are also making some last adjustments to make
14 clear how retained causes of action against McKinsey are

15 treated, to make sure that those go to the right place under
16 the plan. So we would include those in our next filing of
17 the plan as well.
18 THE COURT: All right. So the other possible way
19 to deal with that rather than file an amended plan is to
20 deal with it in the confirmation order.
21 MR. VONNEGUT: Yes.
22 THE COURT: And maybe that's cleaner. I'll leave
23 it to you to consider at a break just because certainly I
24 know another -- every time you issue another plan, you know
25 how you get a lot of emails and phone calls. And if may
Page 59

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 just be easier to deal with those one-off issues in the
2 confirmation order. And I'm perfectly happy if you want to
3 do that.
4 MR. VONNEGUT: That is an excellent suggestion,
5 Your Honor.
6 THE COURT: Also cost-wise -- well, for a lot of
7 reasons.
8 MR. VONNEGUT: Yes.
9 THE COURT: But I'll throw that out there. If
10 that makes sense, happy to do that.
11 MR. VONNEGUT: Thank you, Your Honor.
12 MS. WALKER: Can I say one thing?
13 THE COURT: Ms. Walker, not quite yet. I'm going
14 to circle the room here for folks and then I'm going to hear
15 from you. I'm happy to hear from you in just one minute
16 against the challenge of appearing virtually.
17 MS. WALKER: Thank you.
18 THE COURT: Not a problem. Not anybody's fault.
19 It's just the way technology works. And we all love it and
20 embrace it until it drives us crazy. So that's pretty much
21 the theme.
22 Anything else, Mr. Vonnegut?
23 MR. VONNEGUT: Nothing further from me, Your
24 Honor. I would turn the podium over to my partner, Mr.
25 Huebner.

Page 60

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 THE COURT: All right. So before we start the
2 closings, let me ask if there's anything else in the nature
3 of sort of cleanup, hanging chads, before we get to
4 closings. And then I'll turn to the folks on the phone and
5 ask the same question. I don't see anybody here in the
6 courtroom asking -- raising any issues that need to be
7 addressed.
8 So, Ms. Walker, you had a question?
9 MS. WALKER: I just want to say for the record
10 from yesterday, there's no such thing as emergence in the
11 Bankruptcy Code. We used the correct --
12 THE COURT: I know, but I heard that argument
13 yesterday. I understand. I think what we're trying to do
14 is get you practical answers to some of your concerns. So I
15 think what -- here what I think is most relevant to your
16 question, which is a very legitimate question. I thought
17 long and hard about it yesterday.
18 MS. WALKER: I appreciate that.
19 THE COURT: And I appreciate Mr. Vonnegut's
20 clarification. There's a deadline to make this decision.
21 You've already done it because you filled out a ballot. But
22 there is -- in your situation, the timeliness of your claim
23 is going to be addressed before what is being referred to as
24 emergence or the effective date. And that means if it is
25 for some reason disallowed, you will not have given any
Page 61

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 release. And if it is allowed, then the release and your
2 compensation will track. Okay?
3 MS. WALKER: Okay.
4 THE COURT: Does that help to clarify things?
5 MS. WALKER: Yes. I just felt like the sentence,
6 the Sacklers emergence from their fraudulent wires and
7 milking schemes with a new company are, like, Scott free. I
8 just don't like the word. (indiscernible). That's all.

9 THE COURT: Yeah, well, I know. It's a word
10 that's used as a synonym for other words. You've heard
11 emergence, effective date.
12 MS. WALKER: Well, it complicates it for people
13 who don't understand bankruptcy law. And we're trying to
14 read things, and that word is not -- words like --
15 THE COURT: I understand that.
16 MS. WALKER: Okay. I appreciate it.
17 THE COURT: I will tell you the shocking news that
18 I hear a lot of lingo that's not in the Bankruptcy Code.
19 MS. WALKER: I know.
20 THE COURT: The Bankruptcy Code has been around
21 for a little while. So I get it. The important thing is
22 that you know what it means for you and how it affects your
23 circumstance. And that's what I wanted to make sure we had
24 clarity on.
25 MS. WALKER: No, I appreciate it. And I don't
Page 62

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 think that all of the -- because it came up several times, I
2 don't think that everybody understood what the release
3 actually meant and --
4 THE COURT: All right. But, Ms. Walker, we are
5 segueing back into argument from yesterday.
6 MS. WALKER: I appreciate your time in looking and
7 bringing up my issue. Thank you very much.
8 THE COURT: Absolutely. Happy to do it. Happy to
9 do it.

16 MR. HUEBNER: Your Honor, two quick things. One,
17 I want to apologize. I clearly did a bad job trying to
18 explain this yesterday, because that was the conversation
19 that I was trying to help you with about substantial
20 consummation, which is actually the technical term in 1101
21 and 1127, which are in fact the same thing as the emergence
22 date and the effective date.
23 But one thing I want to be super clear about --
24 and Mr. Vonnegut will definitely keep me honest here -- the
25 issue of I have a late claim, I submitted a ballot in which
Page 98

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 I indicated that I wanted to participate in the settlement
2 and therefore released the Sacklers, my claim is thereafter
3 barred as late, your ballot is voided. And so you do not
4 run that Catch-22 trap of I may well have a phenomenal
5 claim, I was just late, but now I can't sue anybody. So
6 again, with kudos to Ms. Walker, that was a very, very
7 reasonable question. And a bunch of us had -- others,
8 because other people knew the answer -- had to go look at it
9 to triple check. That obviously is different than what Your
10 Honor talked about, which is to the extent that somebody
11 elects to participate and ultimately in the TDP they are
12 found not to have a meritorious claim, there they are not
13 allowed to say, well then wait, now I want to go back. And
14 as Your Honor pointed out and we certainly agree, one of the
15 reasons everyone agreed to it is if your claim isn't even
16 meritorious against the company among many other things, the
17 notion that you nonetheless have a valid claim against the
18 company's officers, directors or owners is an extremely
19 attenuated proposition to say the least. And at the end of
20 the day what people opted for was the opportunity to have a
21 higher distribution should their claim be allowed. But if
22 their claim is not allowed on the merits because they can't
23 prove it up, then the consequences are what they are.
24 And so the March 1 date finally is not sort of
25 like a global new election date, it's if anybody wants to
Page 99

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 make the determination to change the election on their
2 ballot they already made. There's not going to be some new
3 solicitation.
4 THE COURT: Right.
5 MR. HUEBNER: We'll accept notices from someone
6 saying hey, you know, now that I understand things better, I
7 previously opted either in or not opted in, I would like to
8 change that. So it's a last chance to change what we

9 already did. It's not a whole new process for giving people
10 a new election deadline.
11 THE COURT: All right. And I think it's important
12 to point out when talking about meritorious claim, people
13 who are not bankruptcy, people think meritorious, think
14 trial, think evidence, ultimate conclusion. That's not what
15 that term means here. There's a standard set forth in the
16 plan that is purposefully low so as to avoid having
17 extensive time and money spent.
18 So the idea here is to satisfy the "meritorious
19 claim" standard, the standard is exceedingly low. It is
20 evidence that you took the drugs in question, period, full
21 stop. There's other information that could be helpful in
22 terms of figuring out exactly how your claim should be
23 treated, but that is what if you check the opt-out you want
24 to receive -- I'm sorry, the opt-in and you want to receive
25 the recovery from the Sacklers and you have a meritorious
Page 100

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 claim, if you could show you took the drugs, you will have a
2 meritorious claim. That's the way it's defined.
3 MR. HUEBNER: And Your Honor, to be -- just as a
4 harkening back just for a moment -- I guess I'll stand out
5 of respect. I apologize.
6 When I said in my remarks 23 or so minutes ago,
7 there were various other things for which the PIs
8 negotiated. You know, things like that, which is a low
9 standard of proof, as I think one of the folks said in the
10 last couple of days, this is painful, but it's also
11 necessary because there is an obligation to ensure that
12 people actually have claims against this company are the
13 ones who get distributions because otherwise they're taking
14 from other claimants.
15 THE COURT: I totally agree, but I think it is
16 important for people to know that if you -- again, it sounds
17 like it's going to be an unlikely circumstance, and
18 hopefully it doesn't occur at all. But if somebody says I
19 checked and I wanted to get the Sackler money and I don't
20 get the Sackler money, the idea is then you would not have
21 been able to satisfy an exceedingly low bar to just show

22 that you took these drugs. Right? And that's why I think
23 it's reasonable and appropriate. That's why I think people
24 agreed to it when they were mediating to try to figure out
25 an appropriate way to handle this.

Page 101

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 So I just think that's worth repeating because no
2 one is going to sit there and say, well, let's look at your
3 quantum of proof. Well, what are your dates and what did
4 your doctor say and what exactly what was your dosage?
5 That's -- we're not doing that kind of granular if you were
6 to sue Sacklers in state or federal court, call your first
7 witness, this is what you need to prove.
8 MR. HUEBNER: Correct.
9 THE COURT: It's markedly different than that.
10 MR. HUEBNER: And Your Honor, equally importantly,
11 this was certainly not a provision that was a debtor-focused
12 thing. Because it's not like the Debtors, god forbid, get
13 back the money if somebody's claim is stricken. The PI pool
14 is the PI pool.
15 THE COURT: Right.
16 MR. HUEBNER: And that money is available and that
17 category of victims will get all of it as set forth with the
18 complexities of the plan.
19 THE COURT: One way or the other. Yeah, that's
20 correct.
21 MR. HUEBNER: Exactly.
22 THE COURT: All right. Thank you. And again, I
23 appreciate it. I know we've been peeling the layers of this
24 back. I think it's worthwhile. It's an important issue.
25 And so I just want it to be very clear. And I appreciate
Page 102

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

1 the education.
2 And so Mr. Walker's question spurred some very

3 useful information on the record.
4 MR. HUEBNER: And a new fixed deadline.
5 THE COURT: And a new fixed deadline.
6 MR. HUEBNER: So she changed the plan. I think
7 Mr. Eckstein from Kramer Levin is up next, Your Honor.

AGAIN WHILE MS WALKERS ISSUES ABOUT THE PLAN WERE
DISCUSSED MS WALKERS ISSUES WERE IN NO WAY RESOLVED
WHY THIS PLAN NEVER SHOULD HAVE BEEN CONFIRMED AND MS
WALKERS RIGHTS HAVE IN FACT BEEN REPEATEDLY INFRINGED,
ALL ON RECORD.

MS WALKER OBVIOUSLY FEELS SHE HAS TO CONTINUOUSLY
REPEAT HERSELF JUST AS THE BAR MEMBER STATED LAWYERS
DO ON RECORD DURING CONFIRMATION.

THIS PLAN IS MOOT. A STAY MUST BE ORDERED TO PREVENT ANY
FURTHER MSCONDUCT BY THE COURT. STAT.

MS WALKER CHANGING JUST ONE PART OF THE PLAN DURING
CONFIRMATION IS MS WALKERS EVI EVI DANCE OF WHY MS
WALKERS ADDITIONAL MOTION FOR 25% MORE SINCE
HARRINGTON MUST ALSO BE ORDERED FOR REAL LAWYERS
SLOP & INCOMPETENCE AS IT MS WALKER WHO IS ENFORCING
BANKRUPTCY LAW & ENSURING THE PLAN IS LEGAL FAIR &
CONSISTENT.

AGAIN MS WALKER IS MOTIONING FOR A WRIT OF CERTIORARI MS
WALKER NOT BEING A LAWYER IS TECHNICALLY DENIED ACCESS
FROM PETITIONING THE SUPREME COURT AS THIS COURT HAS
ALSO DENIED MS WALKER EQUAL PROTECTION & ADA RIGHTS TO
LEGAL REPRESENTATION.

AGAIN IT CAN NOT BE A THING AMERICA THAT IF WE THE PEOPLE
CAN'T AFFORD THE BILLS TO ENFORCE OUR RIGHTS THAT WE
SIMPLY HAVE NO RIGHTS JUDGE OR THAT BOTH NON & AMERICAN
CRIMINALS HAVE RIGHTS THE REST OF US NON CRIMINALS DO
NOT. HOW CAN AMERICAN CLAIM EQUAL PROTECTION WHEN
AMERICA ONLY PROVIDES FREE LAWYERS TO LAW VIOLATORS
NOT THOSE OF US ENFORCING OUR RIGHTS & LAWS AGAIN MS
WALKER CALLS BULL SHIT.

MS WALKERS ARTHRITIS IS AGAIN CAUSING MS WALKERS HANDS
TO NO LONGER FUNCTION FROM THE MOST SEVERE PAIN, SO MS

WALKER IS DAH DAH DAH DAH DONE & WHY QUALIFIED PAUPER
DISABLED AMERICANS MUST BE PROVIDED LEGAL
REPRESENTATION.

KNOW WHAT I AM AGAIN REQUESTING AN EMERGENCY HEARING
PRIOR TO THE MARCH 1ST DEADLINE CREATED BY THE COURT &
DEBTORS LAWYERS AS AGAIN MS WALKER NEEDS HER PETITION
AGAINST THE SACKLERS TO PROCEED ASIDE FROM THE RULING
ON MS WALKERS PURDUE CLAIM.

MS WALKER HAS BEEN DELAYED YEARS ENOUGH ALREADY.

ROSEMARY HELEN ZIZIROS WALKER 1.18.2026 3:52PM