# <u>Exhibit B</u>

## Motion to Object to the Consolidation filed by Maria Ecke

December 30, 2025

Maria Ecke

Estate of David Jonathan Ecke

C/o Office of Maria Ecke

8 Glenbrook Drive

West Simsbury, CT 06092

sagitarianm2004@yahoo.com

Hon. Judge Roman

United States District Court for the

Southern District of New York

Federal Building and United States Courthouse

300 Quarropas Street, Room 218

White Plains, NY 10601-4150

prose@nysd.uscourts.gov

Re: In re Purdue Pharma L.P., Purdue Pharma Inc.,
Richard Sackler, Theresa Sachler, Kathe SacKler,
Jonathan Sackler, Mortimer D. A. Sackler,
Beverly Sackler, David Sackler, Ilene Sackler Lefcourt,
Frank Peter Boer, Paulo Costa, Cecil Pickett,
Ralph Schnyderman, Judith Lewent, John Stewart,
Mark Timney, State of Connecticut, State of Connecticut
Public Health Department, the Doctors, Distributors,
UCONN Medical Center, St. Francis Hospital

Chapter 11
Case No. 25-cv-10420(NSR)
(Jointly Administered)

Insurance Companies, Anthem Blue Cross,

and any other Hospitals or Medical Facilities

Debtors

# MOTION TO OBJECT TO THE CONSOLIDATION OF THE APPEALS OF PURDUE PHARMA L. P., PURDUE PHARMA INC., RICHARD SACKLER, THERESA SACKLER, KATHE SACKLER, JONATHAN SACKLER, MORTIMER D.A. SACKLER, BEVERLY SACKLER, DAVID SACKLER, ILENE SACKLER LEFCOURT, FRANK PETER BOER, PAULO COSTA, JUDITH LEWENT, JOHN STEWART, MARK TIMNEY, STATE OF CONNECTICUT, STATE OF CONNECTICUT PUBLIC HEALTH DEPARTMENT, THE DOCTORS, DISTRIBUTORS, UCONN MEDICAL CENTER, ST FRANCIS HOSPITAL, ANTHEM BLUE CROSS AND OTHER

Case 7:25-cv-01621-NSR Document 62 Filed 01/24/26 Page 34 of 78

# INSURANCE COMPANIES, AND ANY OTHER HOSPITALS OR MEDICAL PROVIDERS UNDER RULE 42B

I, Maria Ecke, and the Estate of David Jonathan Ecke, object to the consolidation of the appeals because neither the Sacklers nor their Affiliates have petitioned the Courts for bankruptcy protection. See Willam K. Harrington, United States Trustee, Region 2 v. Purdue Pharma et al 603 U.S.______(2024).

The death of my child represents an exceptional circumstance that has caused profound, enduring, and comprehensible physical and psychological harm. The loss was sudden and traumatic and occurred in connection with the use of OxyContin, Oxycodone, and Opana, potent prescription opioids whose risks are well documented and widely known. The circumstances surrounding David Jonathan Ecke's death, including its foreseeability, distinguish this matter from ordinary bereavement and significantly intensify the harm suffered.

OxyContin, Oxycodone, and Opana are medications associated with recognized and foreseeable risks, including serious injury and death when not adequately managed, monitored, or warned against. The dangers associated with opioid medications have been the subject of extensive medical guidance and public awareness. As a result, the risk of severe harm was foreseeable, and the consequences of exposure were neither remote nor unexpected. The knowledge that my child's death arose from a known and preventable risk has materially compounded the trauma and psychological injury I have suffered.

As a direct result of my child's death, I have experienced significant and persistent psychological injury, including ongoing emotional distress, anxiety, an intense fear of Doctors, divorce, and intrusive grief that has not resolved with time. These effects have substantially impaired my ability to function in daily life, disrupting sleep, concentration, emotional stability, and my capacity to maintain employment and personal relationships. The foreseeable nature of the risk involved has intensified these psychological effects, contributing to feelings of shock, helplessness, and unresolved trauma.

In addition to psychological injury, I have suffered physical harm arising from prolonged and severe stress following my child's death. This included chronic fatigue and other stress-related physical symptoms that were not present before the loss and that have persisted since. The interaction between sustained psychological trauma and physical decline has further aggravated the harm I have endured.

Taken together, the sudden loss of my child, the involvement of high-risk prescription medication, and the foreseeable nature of the harm establish exceptional circumstances. The resulting physical and psychological injuries are serious, ongoing, and directly connected to the events in question. These injuries have caused lasting impairment to my health, well-being, and the quality of life and constitute comprehensible harm within the context of this settlement application. Jury Demand.

**"<u>The Grieving Process of Opioid Overdose Bereaved Parts in Maryland</u>"** by Pamela Sterling states, "Relatively little is known about how to effectively assist parents following the death of a child. Burying a child is against the natural order of things, thus family bereavement after child-loss involves complexities not common to other forms of bereavement (Davies, 2004)." Page 9. "Research has shown that openly disclosing the nature of the death, regardless of stigma, is critical to the parental healing process (Feigelman, Feigelman, & Range, 2018)." Page. 10. Stigmatized deaths. Social context surrounding illicit drug use and drug-related deaths involves stigmatization by members of society (Wojtkowiak, Vanherf, & Schuhmann, 2018; Feigelman, Jordan, & McIntosh, 2012). Parents of substance abusers report experiencing stigma, regret, disrupted lives, loss of support, and loss of quality of life (Dion, 2014). Parents bereaved by a child's drug overdose sometimes misrepresent the cause of the death to other people, even family members, in order to protect their child's reputation and avoid social stigma (Feigelman, Jordan, & McIntosh, 2012). Blame is often directly and indirectly apportioned to the parents of the deceased child (Valentine, Bauld, & Walter, 2016). The impact of lack of sympathy in the form of blaming was found to increase mourners. distress, particularly their shame, humiliation, and self-blame (Feigelman, Jordan, & McIntosh, 2012). Parents' attempts to discuss their child's passing in a coherent, meaningful way is inhibited by negative myths and stereotypes associated with substance abusers, taking little account of the humanity of the adult child (Valentine, Bauld, & Walter, 2016). This presents a challenge for many parents. Page 10 Disenfranchised grief. Disenfranchised grief is defined as a particular type of grief that is not able to be openly acknowledged, socially validated, or publicly mourned (Doka, 2002)." Page 11. Is this why the Town of Simsbury didn't even take my dying son, who was still struggling to breathe, to the hospital? Additionally, when I reported the matter to the DEA in New Haven, the Simsbury Police Department informed the DEA that they were handling the issue. All this was orally told to me, but I still have notes from the conversations, and the DEA visited my ex-husband's home at a later date to discuss the issue. Jury Demand.

**"Substance-Death Bereavement Stressors**

Parents who lose children to drug-related deaths, experience a higher level of grief and mental health difficulties as compared on the same criteria to parents who lose children to accidents or long-term physical illness (Valentine, Jordan, Gorman, 2011). The death of an

offspring is described as one of the most traumatic forms of non-normative loss (Valentine, Jordan, Gorman, 2011; Handsley, 2001). When a death is sudden and unexpected, like an overdose, sources of family stress are innumerable. Stressors include parental guilt, strained family relationships, as well as difficulty interacting with social, local, and state resources. ( Feigelman, Jordan, & Gorman, 2011; Figley & McCubbin, 2016; Lloyd, Banerjee, & Jacobsen, 2014; McKinnon & Chonody, 2014; Valentine, Bauld, & Walter, 2016)." Page 12. Jury Demand.

"**CHAPTER IV: RESULTS** This case study explores the experience of parents whose children have passed away due to opioid overdose. The results discuss the mitigating factors of parental grieving and healing. Looking at the results holistically, the following six themes emerged: 1) the grieving process, 2) support vs. stigma, 3) experiences with state and local services, 4) parental guilt, shame, and unanswered questions, 5) coping mechanisms, and 6) post-mortem life changes." Page 21. "The grieving process for participants included 1) shock and denial, 2) sadness and depression, 3) anger, 4) triggers, 5) acceptance and meaning making, 6) support and stigma, 7) experiences with state and local services, 8) parental guilt, shame, and unanswered questions, 9) coping mechanisms, 10) maintaining connection, and 11) post-mortem life changes. These subthemes are explored below." Page 22. Sadness and depression. Parental sadness as described by research participants can be characterized by inability to complete daily tasks or activities, intense emotional and physical pain, lethargy, apathy, and even lack of will to live/consideration of suicide. Danielle stated, I wasn't sure if I wanted to live. I truly considered taking my life. I said [to my therapist], "Will I ever get over this pain? It's just, it's all consuming, every part of your body hurts because you're so sad."... I still have really bad days, after he died I told myself I would never not get out of bed, so I get out of bed every single day." Page 22 – 23. Jury Demand.

"**Partner.** Interviewees reported a wide range of experiences regarding partner support, some positive, some negative. Interviewees reported hearing statistics such as 50% of all parents who have a child die from an overdose get divorced or break up with their intimate partner." Page 28. Jury Demand.

"**Law enforcement**. On another front, parental experiences with law enforcement again range from positive to negative. Positive reports from parents included law enforcement being respectful and feeling like they were doing their job. Negative reports regarding law enforcement reported a lack of follow-up, a lack of communication of pertinent information, not pursuing the dealers of deadly synthetic opioids, and stigma within the police force related to overdose deaths." Page 33. Jury Demand.

"**Shift in empathy.** A common thematic element in terms of post-mortem changes is a shift in empathy for others, ranging from negative to positive. Danielle stated, I had no empathy [after he died] for my clients. First of all, I was lucky that I could retire. Second of all, I knew that

I could not be as good of a social worker. If you can't show any empathy, forget it, so I had to leave." Page 41.

"When looking at the angle of recovery and reorganization, it is important to consider Walsh and McGoldrick's (2004) research with posited that marital conflict, mental illness, and behavioral disorders were associated with parents' difficulty coping with grief." Page 43. Jury Demand.

Finally, there are other studies, "**Parental Mortality Following the Loss of a Child to a Drug Related Death"** by Solveig Glestad Christiansen1, Anne Reneflot2, Kim Stene-Larsen2, Lars Johan Hauge2 1 Department of Alcohol, Tobacco and Drugs, Norwegian Institute of Public Health, Oslo, Norway 2 Department of Mental Health and Suicide, Norwegian Institute of Public Health, Oslo, Norway." "Key Points: 1.) There have been a few studies on the potential health consequences of losing a child to a drug-related death. 2.) Drug-death bereaved parents have a higher mortality than the general population, as well as compared with parents bereaved by other causes of death 3.) There is a particularly high external cause mortality in the first few years following the loss. 4.) There should be targeted support to parents and other relatives bereaved by a drug-related death in order to reduce the risk of deaths from external causes." And, **"How Do Drug-Death Bereaved Parents Adjust to Life Without the Deceased?** A Qualitative Study by Kristen B. Titlestad, Margaret Strobe, and Kari Dyregrov, Omega-Journal of Death and Dying. And**, Sounds of silence. The "special grief" of drug death bereaved parents: a qualitative study,** Kristine Berg Titlestad, Sonja Mellingen, Margaret Stroebe & Kari Dyregrov, to mention Case studies. Jury Demand.

The State of Connecticut, the State of Connecticut Department of Public Health, the Doctors, the Hospitals, the Insurance companies did not inspect or look out for any red flags for the over-prescribing or suspicious dispensing of opioid medication. The insurance companies did not note that David Jonathan Ecke was getting his prescription one or two days early. My son, David Jonathan Ecke, had a mild cervical sprain for which Physical Therapy was prescribed by only one doctor, yet the Doctors prescribed opioids to an innocent, trusting, kind man, which made him a drug addict and ultimately killed him. Jury Demand.

I am asking the Court to separate my Case No. 25-cv-10420(NSR) from everyone else because my case is not identical and independent of the issues.

# RELIEF REQUESTED

# PLEA FOR DUE PROCESS, JURY DEMAND, AND DEMAND FOR THE PAYMENT OF $242,000,000.00, THE ESTATE OF DAVID JONATHAN ECKE, CLAIM NO. 628554, RICHARD ECKE, CLAIM NO. 22855, ANDREW ECKE CLAIM NO. 23016, PETER F. SOTTILE, CLAIM NO.16817, AND MARIA ECKE, CLAIM NO. 16810 IN FULL

Respectfully submitted,

/s/ Maria Ecke

Estate of David Jonathan Ecke

Cc: Marshall Huebner

Davis Polk & Wardwell LLP

marshallhuebner@davispolk.com