# Exhibit F

**Statement / Proposed Order Regarding Briefing Schedule the Opposition Papers for Consolidation of Pending Appeals and Challenge to UCC's Conduct filed by Keith E. Redwood**

# [Proposed] Order Regarding Briefing Schedule" The Opposition Papers" for Consolidation of Pending Appeals and Challenge to UCC's Conduct

## Introduction

***This section presents a detailed argument opposing the Consolidation of Pending Appeals and highlights concerns regarding the actions and impartiality of the Unsecured Creditors Committee (UCC) and their counsel, Akin Gump. A consequential development in response to my Motion To Stay Appeal For Purposes of Mediation and Conditional Voluntary Dismissal (docket#8472 entered 1/2/2026) was the response from the Counsel to the Debtor, Attorney Benjamin Kaminetzsky of Davis Polk& Wardwell. The Debtor countervailing decision per docket# 8495 "Debtors' Limited Statement In Response to Keith Redwood's Motion To Stay Appeal entered on 1/9/2026 rendered a judicial directive to "Prosecute his pending appeal, not seek special treatment ....". The Debtors concurrent ruling on 1/9/2026 issued an adviso or judicial directive for a Second Circuit Review. The Debtors issued decree is for prosecution of my appeal at the Second Circuit*** . Per docket#8495>" ***Mr. Redwood appears to be dissatisfied with the treatment of his claim"S"(*noted plural) under the Confirmed Plan and lodged an Objection to Confirmation on that ground. This Court overruled that Objection on the Law and evidence presented at the Confirmation Hearing. See Modified Bench Ruling at 57. At this stage, the proper remedy for Mr. Redwood's continued dissatisfaction with the Plan's treatment of his claims is to PROSECUTE HIS PENDING APPEAL,NOT SEEK SPECIAL TREATMENT ELEVATING HIS CLAIMS ABOVE THOSE OF TENS OF THOUSANDS OF SIMILARILY-SITUATED CLAIMANTS.***

***An in depth analysis of the significance of the Debtors' endorsement of my appeal can be construed as validation of the merits and strenghth of my argument. As a Pro Se appellee I've relied on advanced AI legal analytics using Lexology , Harvard Law School Bankruptcy Roundtable and for guidance navigating the complexities and vicissitudes of the Purdue Pharma 5-year odyssey.***

## ***AI Lexology Analysis of the Redwood Appeal***

***AI Question Asks> In the Purdue Pharma bankruptcy chapter 11 confirmation of the new plan a a Pro Se appellee objection motion by Keith Redwood(Stay Motion docket#8472) requested a Stay for purposes of Settlement negoations a condtion of voluntary dismissal. The debtors' counsel,Atty Benjamin Kaminetzsky of Davis Polk Wardwell responded per docket#8495(Debtors Statement In Response to Keith Redwood Motion To Stay Appeal).Docket#8495 response is to Deny Keith Redwood's motion recomending Prosecution of his Economic Damage Claim to the jurisdiction of the Second Circuit. Then on 2/12/2026 Judge Lane delivers Bench Ruling Denying All Pro Se Appellees Stays as a condition of Consummation of the New Plan.The legal question facing Keith Redwood is will his Objection Motion related to Treatment and Classification of Economic Damage claims and Denial of Due Process be adjudicated by a Second Circuit Review panel under the jurisdiction of a Higher Court?***

***AI Response>***

***AI RESPONSE >Based on the court proceedings, it is unlikelythat Keith Redwood's objection motion will be adjudicated by a Second Circuit review panel before the plan takes effect.***

***Here are the critical details based on the recent developments in the Purdue Pharma bankruptcy case:***

- ***Denial of Stay (Feb 12, 2026): U.S. Bankruptcy Judge Sean H. Lane denied motions by multiple pro se appellees to stay the confirmation of the Chapter 11 plan. Judge Lane ruled that the appellants failed to show a likelihood of success in their appeal and that delaying the $7.4 billion settlement would be too costly to the over 100,000 creditors supporting the plan.***
- ***Procedural Path: Because the stay was denied, the plan moves toward consummation (execution) immediately. While appeals can technically proceed, they often become legally complex ("equitably moot") once a massive reorganization plan is implemented, making it difficult for an appellate court to reverse the actions already taken.***
- ***Debtors' Position: Debtors' counsel (Davis Polk & Wardwell) recommended that disputed claims, such as those raised regarding classification, be prosecuted through the appellate process. However, the denial of the stay means the plan moves forward without waiting for that review.***

- ***Likelihood of Second Circuit Review: While Mr. Redwood has the right to appeal to the District Court and subsequently the Second Circuit, the lack of a stay makes it highly improbable that the Second Circuit will review the matter before the Plan's, as requested in the stay motions.***

***Consequently, while Keith Redwood can continue to pursue his appeal regarding the Treatment and Classification of Economic Damage claims and Denial of Due Process, the denial of the stay (docket #8472) by Judge Lane means the plan will be implemented, making a "Higher Court" review a post-consummation, rather than pre-consummation, process.***

***Purdue Pharma Judge Declines To Stay Chapter 11 Plan - Law360***

***Feb 12, 2026 — By Alex Wittenberg. Law360 (February 12, 2026, 5:43 PM EST) -- A New York bankruptcy judge on Thursday denied motions by personal injury claimants in the Purdue...***

***Law360***

## Likelihood of Appeal Success

The available evidence overwhelmingly suggests that my appeal stands a strong chance of success. The core argument centers on the breach of fiduciary responsibility by the UCC, whose negligent actions initially formed the main basis for my objection motion. There is also a significant legal argument regarding violations of the Harrington Ruling, particularly concerning the denial of due process rights detailed in the disclosure statement.

## Conduct of the UCC and Breach of Fiduciary Duty

The actions of the UCC, which will be clearly demonstrated, represent a deliberate effort to exclude my participation in the Ballot Vote. This conduct not only reflects a breach of fiduciary duties but also undermines the fair and equitable treatment of all creditor classes, including economic damage creditors. My profound dissatisfaction with the UCC's behavior underscores their failure to act in the best interests of all creditors, including Economic Damage creditors.

## Lack of Impartiality and Conflict of Interest

The UCC's prejudiced stance has compromised their ability to function as an impartial arbiter in the Consolidation of Pending Appeals (see Order Regarding Briefing Schedule #25-cv-10327). Consequently, I strongly oppose the participation of Akin Gump and the UCC in the Debtor-Appellees' consolidation request. Their demonstrated incompetence in representing my interests and clear conflict of interest disqualifies them from further involvement in this matter. . I consider myself exempt from participating in what I regard as a charade of "frivolous and vexatious" Appellees who Judge Lane rightly dismissed on 2/12/2026 docket# 8623.

## Recent Bench Ruling and Procedural Developments with the Debtors' Atty Benjamin Kaminetzsky(docket#8495)

On February 12, 2026, Judge Lane issued a bench ruling regarding the Motion for Stay Pending Appeal, which was largely procedural. During this ruling, all "frivolous and vexatious" pro se appellees were identified as subject to imminent dismissal of their Stay Motions. The named objectors included Ellen Isaacs, Amanda Morales, Maria Eckie, Mary Janotta, Rosemary Walker, Cornelius Bay, Pittman-Tillman, and Mr. Bass. The judge cited bankruptcy policy as grounds for dismissing their appeals, with the denial based on the absence of findings of fact and conclusions of law, thereby precluding further appeal actions. Importantly, neither my name nor my docket number was referenced during this ruling, and the hearing itself was primarily a formality. Most significantly on 1/9/2026, Counsel for the Debtor, Attorney Benjamin Kaminetzsky decreed: "***. At this stage, the proper remedy for Mr. Redwood's continued dissatisfaction with the Plan's treatment of his claims is to PROSECUTE HIS PENDING APPEAL,NOT SEEK SPECIAL TREATMENT ELEVATING HIS CLAIMS ABOVE THOSE OF TENS OF THOUSANDS OF SIMILARILY-SITUATED CLAIMANTS.***

### Upcoming Deadlines and Procedural Status

The next key date in this matter is March 10th. According to a court order received on December 24, I am required to serve, but not file, “Opposition Papers” to the counsel for the Appellants by March 10th. The civil order specifically states that appellants in the listed appeals are to serve their opposition papers by this deadline. As reflected in the January 9 Docket #8495, my objection has been remanded for review by the Second Circuit.

# Lexology Legal Defense Strategy: Second Circuit Appeal and Classification Issues

## Overview

This section presents a comprehensive legal strategy regarding the classification and treatment of economic damage claims in the Purdue Pharma bankruptcy proceedings, focusing on the ongoing appeal before the Second Circuit. It analyzes the actions of the Unsecured Creditors Committee (UCC), application of Supreme Court precedent, and the process for challenging claim classification under the latest Chapter 11 Plan.

### 1. Procedural Posture and Key Bench Rulings

The preponderance of evidence supports the continuation of the my Appeal for Second Circuit review. The original objection centered on the UCC’s breach of fiduciary duty, which prompted a motion challenging the classification and treatment of my $10,000,000.00 Economic Damage claim. A potentially stronger argument emerges from alleged violations of the Supreme Court’s *Harrington* ruling, specifically regarding denial of my due process ballot initiative in accordance with provisions set forth in the Disclosure Statement.

The UCC’s derelict actions have disenfranchised (in fact barred) my to participation in the ballot vote, further support claims of a breach in fiduciary responsibilities, especially as they pertain to fair and equitable treatment of all creditor classes, including economic damage creditors which shall irrefutably be proven in the Second Circuit.

### 2. UCC’s Role and Conflict of Interest

The UCC’s apparent prejudiced stance undermines its credibility as an impartial arbiter in the consolidation of pending appeals. In accordance with the proposed order regarding the

Case 7:25-cv-09961-NSR Document 90-6 Filed 02/24/26 Page 7 of 11

briefing schedule, I strongly oppose Akin Gump's/UCC's participation in the Debtor-Appellees' consolidation request, citing demonstrated incompetence and a conflict of interest.

The bench ruling of 02/12/2026 regarding the motion for stay pending appeal was primarily procedural, identifying certain pro se objectors as frivolous and subject to imminent dismissal. However, the ruling did not mention my name or docket, suggesting the hearing was largely a formality in respect to the viability and merits of my appeal. The next critical deadline is March 10th, by which Opposition Papers are due, as directed in the December 24 court order and per Docket #8495, deferring my Objection to the Second Circuit.

## 3. Economic Damage Claims and UCC Classification Challenges

The 2025 Thirteenth Amended Joint Chapter 11 Plan and associated disclosure statements, shaped by the 2024 Supreme Court *Harrington* decision, establish a framework for voting that requires non-debtor release consent. Notable plan provisions relevant to economic damage claims and UCC classification challenges include:

- **Definition of "Other General Unsecured Claims" and "PI Claims":** The Plan and disclosure statement classify claims for voting. If an economic damage claim arises from a proprietary interest in a late spouse's PI claim, it may require alignment with the PI Trust, not with general unsecured claims.
- **Third-Party Releases (Harrington Compliance):** The 2025 Plan complies with *Harrington* by allowing creditors to opt in or out of third-party releases of the Sacklers. Ballot voting rights hinge on this opt-in mechanism, affecting standing in the Class 5A/5B structure.
- **Opt-In Mechanism as a Voting Right:** Under *Harrington*, creditors have the right to decide whether to release the Sacklers. If a claim is not classified, the plan's failure to recognize the claim can be argued as depriving the creditor of this core right.
- **The PI Trust Structure:** The Plan establishes a Personal Injury Trust to process claims, including those with economic components tied to opioid usage.

## 4. Steps for Pro Se Appellees

1. **Directly Review the "Summary of Claims Treatment":** Examine Kroll portal documents detailing the treatment of claims, as referenced in March 2025 filings.
2. **File an Objection/Motion for Reclassification:** Relying on the plan's emphasis on voluntary consent and inclusive treatment of injury-related claims, file a motion to

classify the claim based on the 2020 proof of claim, arguing that economic damages are derivative of PI claims.

3. **Use the "Solicitation Materials" for 2025:** Utilize voting instructions from the June 2025 disclosure statement and solicitation package.

***IMPORTANT:*** ***The 2025 Plan's reliance on voluntary consent for third-party releases means that if a claim is excluded from voting, there may be grounds to argue that such treatment is non-consensual under Harrington.***

## 5. Analysis of Appeal Impact and Legal Landscape

Any ongoing appeal, including those by individual objectors, can delay the full implementation of the Purdue Pharma plan. Historically, the principal delays were due to the legal battle over non-consensual third-party releases, resolved by the Supreme Court's 2024 ruling. While individual objections can cause procedural delay, their overall impact is limited unless they raise nationally significant legal questions.

***If the Second Circuit finds the bankruptcy court's decisions clearly erroneous, it may reverse and remand for reconsideration or plan modification. Objections regarding claim classification and due process, particularly in light of Harrington, are the centerpiece of my Objection to the Confirmation Order.***

## 6. Legal Limitations on potential "Causes of Actions' Against UCC/Akin Gump

Subject: Legal Strategies Recourse Akin Gump
To: Keith Redwood <kthredwood@gmail.com>

Based on the legal principles governing Chapter 11 bankruptcy and the specific context of the Purdue Pharma proceedings, the ability to sue the law firm representing the Official Committee of Unsecured Creditors (Akin Gump) for actions taken during the case is highly restricted.

**Legal Limitations on Suing Committee Counsel**

- **Derivative Fiduciary Duties:** While committee counsel acts for the Unsecured Creditor Committee, their fiduciary duty is generally to the *body* of unsecured creditors as a whole, rather than to any individual creditor, making it difficult for an individual creditor to establish a direct breach.
- **Bankruptcy Immunity/Protections:** Professionals employed in a bankruptcy case, including Akin Gump, are often protected by "quasi-judicial immunity" or "derivative immunity" for actions taken within the scope of their authority and approved by the court, particularly when acting on behalf of a court-appointed committee.
- **Exculpation Clauses:** Bankruptcy plans typically include exculpation provisions that protect professionals and committee members from liability for actions taken during the case, except for instances of willful misconduct or gross negligence.
- **Exclusive Jurisdiction:** Claims regarding the administration of the estate, including the classification of claims and the actions of professionals, are usually deemed to be under the exclusive jurisdiction of the bankruptcy court. A lawsuit for malpractice or negligence regarding the bankruptcy case generally must be brought within that proceeding, not in a separate, outside forum.

**Barred Economic Damage Claims and Due Process**

- **Bar Orders and Third-Party Releases:** Following the Supreme Court ruling in *Harrington v. Purdue Pharma L.P.*, the bankruptcy court cannot enforce nonconsensual third-party releases that bar direct claims against non-debtors (like the Sackler family) without the creditor's consent.
- **Procedural Remedies:** If a creditor believes they were improperly barred or that their claim was mishandled in violation of the disclosure statement, the proper remedy is to file an objection to the plan confirmation or a motion for reconsideration within the bankruptcy case, rather than a separate lawsuit against the committee's counsel.

Procedural remedies for mishandled or barred claims (e.g., due process violations) involve filing objections or motions within the bankruptcy case, not separate lawsuits.

## 7. Second Circuit Appeal Strategy

The appeal centers on two interrelated objections:

1. Treatment and classification of economic damage claims

2. Denial of due process regarding opt-in/opt-out provisions under *Harrington*

UCC's failure to classify economic damage claims has resulted in wrongful denial of Due Process. The court must determine if the "Pro Se Economic Damage Class of Creditors" complies with Harrington.

***My argument emphasizes that economic damage creditors should be included within the UCC's representative scope. Judge Lane's bench ruling, which categorized certain claims as "highly particularized" and not entitled to creditor rights unless in a group, is challenged as a mischaracterization. The existence of other similarly situated claims (e.g., Morales Economic Claim) supports the argument for a distinct subclass. Any willful misconduct or gross negligence by the UCC could potentially overcome immunity protections.***

## 8. Plan Provisions on Claim Classification and Reclassification

The Plan's Article I and IV clarify that claims and interests are classified for voting, confirmation, and distributions. Classification is based on the legal nature of the claim or interest. ***If a controversy arises about classification, the Bankruptcy Court, upon motion and notice, will resolve it at the confirmation hearing. Improperly classified claims may be reclassified without the need for resoliciting votes.***

The AI summary of the Plan (page 243 of 973) reinforces that only allowed, unsatisfied claims receive distributions, and no holder can receive more than their allowed claim.

## 9. Appealability and Standard of Review

- **Right to Appeal:** Parties can appeal final judgments, orders, or decrees, including claim objections.
- **Procedure:** Notice of appeal must be filed within 14 days, outlining reasons for appeal.
- **Standard of Review:** District courts review factual findings for clear error and legal conclusions de novo.
- **Grounds for Appeal:** ***Legal errors, such as misapplication of the Bankruptcy Code or due process violations, are critical.***

***The likelihood of success depends on showing a genuine legal basis for challenging classification and demonstrating that errors substantially***

***harmed the appellant's rights. Due process arguments are particularly strong in light of recent Supreme Court emphasis.***

## 10. Judicial Reasoning and the "Clearly Erroneous" Standard

***The court faces the challenge of addressing objections related to both classification and due process. The legal brief advocates for the creation of a "special circumstance" or convenience class, allowing the court to exercise its authority in classifying general unsecured claims. The argument contends that Judge Lane's reasoning is akin to sophistry and must withstand the "clearly erroneous" test.***

***Specificity and actuarial detail in economic damage claims (such as those calculating long-term care costs) are emphasized as factors supporting recognition of a distinctive subclass, rather than dismissing such claims as overly particularized or impractical.***

## 11. Conclusion and Monitoring

***A new, modified plan was approved in November 2025, making third-party releases mostly consensual. Ongoing pro se objections and appeals continue to delay final distributions. The outcome of the Second Circuit review will be pivotal for economic damage claimants seeking recognition and due process.***