**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**PURDUE PHARMA L.P.**, *et al.*,<br><br>Debtors.[1] | **Case No. 25-cv-09681 (NSR)**<br>**Case No. 25-cv-10158 (NSR)**<br>**Case No. 25-cv-10282 (NSR)**<br>**Case No. 25-cv-10327 (NSR)**<br>**Case No. 25-cv-10420 (NSR)**<br>**Case No. 25-cv-10427 (NSR)**<br>**Case No. 25-cv-10433 (NSR)**<br>**Case No. 25-cv-10646 (NSR)**<br>**Case No. 26-cv-00045 (NSR)** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUBSTITUTION AND/OR INTERVENTION**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Purdue Products L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND ................................................................................................................... 2

     A.    The Confirmation Order and Plan............................................................... 2

     B.    The MDT's Interests In this Appeal ........................................................... 3

     C.    The Consolidated Appeals and Briefing Schedule .................................... 4

ARGUMENT ........................................................................................................................ 5

I.    THE MDT SHOULD BE SUBSTITUTED FOR THE AHC............................................ 5

     A.    Legal Standard ........................................................................................... 5

     B.    The MDT is a Successor to the Interests of the AHC and Should be Substituted in These Appeals.................................................................... 6

     C.    Substitution Promotes Judicial Efficiency and Would Simplify the Action........... 7

II.    IN THE ALTERNATIVE, THE MDT IS ENTITLED TO INTERVENE ........................ 8

     A.    The MDT Is Entitled to Intervene as of Right or by Permission Pursuant To Fed. R. Civ. P. 24(a) And/Or (b) ........................................................ 8

          i.    The Motion is Timely ................................................................. 9

          ii.    The MDT Has a Direct, Legally Protectable Interest Relating to the Subject of These Appeals.............................................. 10

          iii.    Vacatur or Modification of the Confirmation Order Would Impair the MDT's Interests ............................................... 10

          iv.    The Existing Appellees Do Not Adequately Represent the MDT's Distinct Interests ........................................................ 11

     B.    The MDT is Also Entitled to Intervene Under Bankruptcy Rule 8013(g) ........... 11

CONCLUSION..................................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AAIPharma, Litig. LLC v. Kremers Urb. Dev. Co.*,
  2012 WL 3117003 (S.D.N.Y. July 30, 2012) ........................................................................5, 6

*AAIPharma Inc. v. Kremers Urb. Dev. Co.*,
  2010 WL 11570154 (S.D.N.Y. Feb. 16, 2010 ..............................................................................7

*AngioDynamics, Inc. v. Biolitec, Inc.*,
  775 F.3d 550 (2d Cir. 2015)......................................................................................................5 n.4

*Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York*,
  2020 WL 5667181 (S.D.N.Y. Sept. 23, 2020)...................................................................8, 9, 10

*In re Chalasani*,
  92 F.3d 1300 (2d Cir. 1996).............................................................................................................5

*Cohen v. Empire Blue Cross & Blue Shield*,
  176 F.3d 35 (2d Cir. 1999)...........................................................................................................12

*Commack Self-Serv. Kosher Meats, Inc. v. Rubin*,
  170 F.R.D. 93 (E.D.N.Y. 1996).............................................................................................10, 11

*Grewal v. Cuneo*,
  2014 WL 2095166 (S.D.N.Y. May 20, 2014) ............................................................................9

*L'Oreal USA, Inc. v. Olaplex, Inc.*,
  844 F. App'x 308 (Fed. Cir. 2021) .............................................................................................7

*In re Living Hope Sw. Med. Servs., LLC*,
  2013 WL 6508241 (W.D. Ark. Dec. 12, 2013) ....................................................................5 n.4

*In re Lyondell Chem. Co.*,
  543 B.R. 400 (Bankr. S.D.N.Y. 2016)...................................................................................12 n.5

*Olin Corp. v. Lamorak Ins. Co.*,
  325 F.R.D. 85 (S.D.N.Y. 2018) .................................................................................................9

*Payne v. City of N.Y.* (*In re N.Y. City Policing During Summer 2020
  Demonstrations*),
  27 F.4th 792 (2nd Cir. 2022) ...................................................................................8, 9, 10, 11

*Pike Co., Inc. v. Universal Concrete Prods., Inc.*,
  284 F. Supp. 3d 376 (W.D.N.Y. 2018)......................................................................................9

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
    507 U.S. 380 (1993)................................................................................................12 n.5

*In re Purdue Pharma., L.P.*,
    Case No. 21-cv-7532 (CM) (S.D.N.Y. Oct. 14, 2021) ..............................................12

*S.E.C. v. Credit Bancorp, Ltd.*,
    2000 WL 1170136 (S.D.N.Y. Aug. 16, 2000)...........................................................9

*Sacerdote v. Cammack Larhette Advisors, LLC*,
    2026 WL 350842 (S.D.N.Y. Feb. 9, 2026)................................................................5

*Taberna Cap. Mgmt., LLC v. Jaggi*,
    2010 WL 1424002 (S.D.N.Y. Apr. 9, 2010)..............................................................5

**Other Authorities**

Fed. R. App. P. 43................................................................................................................1, 5

Fed. R. Bankr. P. 8013(g) .............................................................................................1, 11, 12

Fed. R. Bankr. P. 8023.1(b) ..............................................................................................1, 5

Fed. R. Bankr. P. 9006........................................................................................................12

Fed. R. Civ. P. 6(b) .............................................................................................................12

Fed. R. Civ. P. 24(a) .........................................................................................................1, 7

Fed. R. Civ. P. 24(b) .........................................................................................................1, 7

Fed. R. Civ. P. 25(c) ....................................................................................................1, 4, 5, 6

The Purdue Master Disbursement Trust (the "**MDT**"), which was established pursuant to the confirmed chapter 11 plan (the "**Plan**") [Bankr. Dkt. No. 8263][2] in the bankruptcy cases of Purdue Pharma L.P. and its debtor affiliates (the "**Debtors**"), by and through its trustees, hereby files this motion (the "**Motion**") pursuant to Rule 25(c), Rule 24(a) and Rule 24(b) of the Federal Rules of Civil Procedure, and/or Fed. R. Bankr. P. 8013(g), seeking to substitute the MDT for Appellee the Ad Hoc Group of Governmental and Other Contingent Litigation Claimants (the "**AHC**") and/or to intervene in the above-captioned appeals.

## PRELIMINARY STATEMENT

On November 18, 2025, the Bankruptcy Court confirmed the chapter 11 Plan for the Debtors, and on May 1, 2026 (the "**Effective Date**"), that Plan went effective.  The Plan created the MDT, a Delaware statutory trust that was established, among other things, to receive, hold, administer, and distribute substantial assets for the benefit of the Debtors' creditors.  On the Effective Date, various organized creditor groups, including the AHC, ceased to exist except for certain limited purposes.  The governmental entities and tribes that were formerly represented by the AHC are included among the primary beneficiaries of the MDT.  While the MDT recognizes that the Debtors (or the Plan Administration Trust (the "**PAT**"), which is *also* a successor to the Debtors) will continue to actively participate in the appeals, the interests of the MDT are distinct. Thus, to ensure that the proper parties are able to defend the confirmation of the Plan in these appeals, the MDT moves to be substituted for the AHC in these appeals, or, in the alternative, to intervene as an appellee.

---

[2] Capitalized terms used but not otherwise described herein shall have the meanings set forth in the Plan.

**BACKGROUND**

**A.  The Confirmation Order and Plan**

The Bankruptcy Court entered the Confirmation Order on November 18, 2025, confirming the Debtors' Plan.  The Plan provided for the establishment of the MDT and certain other trusts to carry out the terms of the Plan's many interlocking settlements. The MDT is critical to these implementation mechanics, as it is charged it with, among other things, holding, managing, investing, and distributing the so-called "**MDT Transferred Assets**" for the benefit of MDT beneficiaries, and with enforcing, pursuing, prosecuting, and settling MDT Causes of Action, MDT Insurance Rights, and MDT Shareholder Rights, including monitoring and enforcing the Shareholder Settlement Agreements and monitoring and enforcing the terms of the Plan and Confirmation Order.  *See* Plan Sections 5.6(a), 11(c).  The Plan went effective on May 1, 2026, and on the Effective Date, the MDT Transferred Assets were irrevocably transferred to and were vested in the MDT free and clear of all Claims, Interests, Liens, other encumbrances and liabilities of any kind.  *See* Plan Section 5.6(b).  Likewise on the Effective Date, the AHC's role and the roles of certain other organized creditor groups in the proceedings concluded, and, pursuant to the Plan, the MDT now serves as the relevant party to protect the interests of its beneficiaries, including those previously represented by the AHC.

Certain pro se claimants appealed the Confirmation Order.  On April 16, 2026, this Court consolidated eight pending appeals filed by pro se appellants that each challenged the Confirmation Order and seek, inter alia, vacatur of the Plan and Confirmation Order on various grounds.  Apr. 16, 2026 Opinion & Order [Dkt. No. 93].[3]  The AHC is an existing Appellee in the pending appeals (and is represented by the same counsel that now represent the MDT).

---

[3] This Motion incorporates by reference the facts and history set forth in Appellees Memorandum of Law in Support of Consolidation [Dkt. No. 89].

The consolidated appeals present overlapping legal and factual issues concerning the validity of the Plan and Confirmation Order. *See generally* Apr. 16, 2026 Opinion & Order [Dkt. No. 93].

### B. The MDT's Interests In this Appeal

The MDT was formed by Trust Agreement [Bankr. Dkt. No. 9127 at Exhibit D-1] dated April 13, 2026 among the Debtors, the MDT Trustees, and Wilmington Trust, N.A., as Delaware Resident Trustee, constituting a Delaware statutory trust established pursuant to the Plan and Confirmation Order. Trust Agreement at 1. The Confirmation Order expressly establishes and designates the MDT as a trust under applicable state law for the purposes described in the Plan and Plan Documents. Confirmation Order at 12. The MDT's interests in this appeal are two-fold: first, the MDT is a successor to certain of the Debtors' rights and interests under Plan, and, second, the MDT represents the interests of creditors whose interests were formerly represented by the AHC (among others), an Appellee in these appeals.

Pursuant to the Plan, on the Effective Date, the PAT was formed as a successor to the Debtors—certain of which are now liquidating—to, among other things, administer the winddown of the Debtors' estates. The MDT, on the other hand, succeeded to certain of the Debtors' rights and interests relating to various assets and causes of action. The MDT succeeding to these Debtor interests post-Effective Date was specifically negotiated by the AHC's constituents during the bankruptcy proceedings as part of the complex and intricately negotiated global settlement. For example, on the Effective Date, the MDT received an irrevocable transfer of the MDT Transferred Assets from the Debtors' estates free and clear of all claims, interests, liens, encumbrances, and liabilities. Plan Section 5.6(b). The MDT Transferred Assets include (among other items) the MDT Operating Reserve, MDT Causes of Action, MDT Insurance Rights, and MDT Shareholder Rights (all as defined in the Plan), all of which represent assets and rights formerly belonging to,

3

or arising under entitlements of, the Debtors and their Estates.  Plan Sections 5.6(a)(ii), 5.6(h), 5.6(i).  From and after the Effective Date, the MDT Trustees may cause the MDT to "initiate, prosecute, defend and resolve all legal actions and other proceedings related to any Asset, liability or responsibility" of the MDT.  Plan Section 5.6(l).  And the MDT may proceed "in the name of the Debtors or their Estates" if deemed necessary or appropriate.  *Id.*

In addition to serving as a successor to certain of the Debtors' rights and interests under the Plan and Confirmation Order, the MDT's interests in this appeal also arise from the interests of its primary beneficiaries: governmental entities including states, local governments, and tribes. *See, e.g.*, GESA 4.01(d) ("State Payment Schedules").  Those same beneficiaries were represented by the AHC, prior to the Effective Date.  Now that the Plan has gone effective, the AHC's role in the proceedings has concluded and the MDT now serves as the relevant party to protect the interests of those previously represented by the AHC.  *See* MDT Trust Agreement at 1.02, 3.01(c); Plan 5.6(a)(i)-(iii).

### C.  The Consolidated Appeals and Briefing Schedule

The Court consolidated these appeals on the grounds that they present overlapping legal and factual issues, and judicial economy and the efficient management of these proceedings supports their consolidated treatment.  Apr. 16, 2026 Opinion & Order [Dkt. No. 93].  Under the current merits briefing schedule, Appellants' opening briefs were due June 8, 2026, appellees' opposition briefs are due July 23, 2026, and Appellants' reply briefs are due August 24, 2026. Apr. 22, 2026 Opinion & Order [Dkt. No. 95].  This Motion does not seek any alteration of that schedule.

4

**ARGUMENT**

**I.    THE MDT SHOULD BE SUBSTITUTED FOR THE AHC**

**A.  Legal Standard**

Fed. R. Civ. P. 25(c) provides that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."  "Substitution of a successor in interest . . . under Rule 25(c) is generally within the sound discretion of the trial court." *Taberna Cap. Mgmt., LLC v. Jaggi*, 2010 WL 1424002, at \*2 (S.D.N.Y. Apr. 9, 2010) (citing *Organic Cow, LLC v. Center for New Eng. Dairy Compact Research*, 335 F.3d 66, 71 (2d Cir. 2003)); *see also In re Chalasani*, 92 F.3d 1300, 1312 (2d Cir. 1996) ("[G]ranting substitution of one party in litigation for another under Rule 25(c) is a discretionary matter for the trial court.").  *Sacerdote v. Cammack Larhette Advisors, LLC*, 2026 WL 350842, at \*3e (S.D.N.Y. Feb. 9, 2026) (citation omitted) ("The primary consideration in deciding a motion pursuant to Rule 25(c) is whether substitution will expedite and simplify the action.").

"Generally, a successor in interest may be a person or entity who acquires the particular interest at stake in the litigation, such as a certain piece of property or a contractual right, or who acquires all the assets and liabilities of a party to the litigation." *Id.* at \*3 (S.D.N.Y. Feb. 9, 2026).  Post-confirmation plan entities that are vested with transferred assets and designated enforcement authority are paradigmatic transferees within the meaning of Fed. R. Civ. P. 25(c).[4]  *See*

---

[4] The same conclusion would follow under Fed. R. Bankr. P. 8023.1(b) and/or Fed. R. App. P.. 43.  *See, e.g.*, *In re Living Hope Sw. Med. Servs., LLC*, 2013 WL 6508241, at \*4 (W.D. Ark. Dec. 12, 2013) ("Because Pinewood has transferred its interest in the bankruptcy litigation to Naples, the Court finds that substitution is appropriate pursuant to Rule 25(c).  As this Court is acting as an appellate court in this matter, the Court recognizes that Federal Rule of Appellate Procedure 43 also  allows  for substitution of  parties on appeal.   Pinewood's motion to substitute will be granted, and Naples will be substituted as the appellant in this matter.")*.*  Under Fed. R. Bankr. P. 8023.1(b) and F.R.A.P. 43, substitution is available where a party is "unable to continue litigating." *AngioDynamics, Inc. v. Biolitec, Inc.*, 775 F.3d 550, 555 (2d Cir. 2015) (citation modified).  Where, as here, transferors or predecessors of the interest underlying the suit cannot continue the litigation, their transferees and/or successors may substituted for them in a litigation.  *See Id.* at 555 ("Biolitec FZ correctly points out that substitution under Rule 43(b) may be

*AAIPharma, Litig. LLC v. Kremers Urb. Dev. Co.*, 2012 WL 3117003, at *1 (S.D.N.Y. July 30, 2012) (explaining how Court granted motion to substitute where "[Debtor's] Chapter 11 Bankruptcy Plan Confirmation . . . required the Debtors . . . to transfer 'all of the right, title, and interest in the Designated Litigation' to Litigation LLC for the benefit of [Debtor's] unsecured creditors.").

### B. The MDT is a Successor to the Interests of the AHC and Should be Substituted in These Appeals

On the Effective Date, the Plan effected an irrevocable transfer of MDT Transferred Assets, including the MDT Causes of Action, MDT Insurance Rights, and MDT Shareholder Rights, from the Debtors to the MDT. These assets vested in the MDT free and clear, with the Debtors retaining no reversionary or further interest. The MDT Trustees are expressly authorized to defend proceedings related to MDT assets "in the name of the Debtors or their Estates," establishing that the MDT was contemplated as one of the parties, along with the Plan Administration Trust, that would be responsible for defending challenges to the Plan. Plan Section 5.6(l). The Confirmation Order's own terms grant the MDT the authority to assert transferred Retained Causes of Action "as fully as if the Chapter 11 Cases had not been commenced," confirming it is the proper enforcement vehicle post-Effective Date. Confirmation Order Section 10.15. Through these transfers, the MDT has become the entity "representing the interests of States, municipalities, and Tribes," previously represented by the AHC, at issue in these appeals. December 30, 2025 Mem. Endorsement [Dkt. No. 50 at 1]. As such, these transfers squarely satisfy the "transfer of interest" prerequisite of Fed. R. Civ. P. 25(c). *See AAIPharma Inc. v. Kremers Urb. Dev. Co.,* 2010 WL

---

permitted when "a transfer of interest in the . . . property involved in the suit has occurred."); *Id.*at 553 ("[w]e granted without explanation a party's unopposed motion to be substituted for its corporate predecessor-in-interest.") (citing *Name.Space, Inc. v. Network Sols., Inc.*, 202 F.3d 573, 578 n. 5 (2d Cir. 2000)).

11570154, at *3 (S.D.N.Y. Feb. 16, 2010) (granting motion to substitute where entity seeking substitution was vested with litigation assets post emergence from Chapter 11 Bankruptcy); *See also L'Oreal USA, Inc. v. Olaplex, Inc.,* 844 F. App'x 308, 316 (Fed. Cir. 2021) (finding substitution warranted on appeal for successor in interest).

Thus, the MDT's participation as an Appellee is appropriate both in its role in protecting the interests represented by the AHC, and as a successor to certain of the Debtors' rights. Substituting the MDT for the AHC in these proceedings, as the natural successor to its interests in this manner, would therefore be a sound exercise of the Court's discretion.

## C. Substitution Promotes Judicial Efficiency and Would Simplify the Action

This Court consolidated these appeals precisely to promote judicial efficiency and to avoid duplicative proceedings. *See generally* Apr. 16, 2026 Opinion & Order [Dkt. No. 93]. For the same reasons, substituting the MDT for the AHC serves judicial economy and avoids procedural complications from having multiple other stakeholders (e.g. governmental entities) join the proceedings. Just as the AHC previously participated actively in all aspects of the bankruptcy and related appeals, the MDT represents, among other things, the interests of the AHC's constituents, and so expects to participate in these and any related proceedings to ensure the success of the Plan. Where, as here, a conveyance of rights "has already occurred" and a legal successor to a debtor has substantive claims that "track those" of the debtor and the interests of the AHC, "[s]ubstitution . . . would simplify the action." *AAIPharma Inc. v. Kremers Urb. Dev. Co.*, 2010 WL 11570154, at *4 (S.D.N.Y. Feb. 16, 2010). To be clear, the MDT does not seek any extension of existing deadlines, and is prepared to submit any necessary filings (in the effective stead of the AHC) on the timeline that has already been set by the Court.

7

## II.    IN THE ALTERNATIVE, THE MDT IS ENTITLED TO INTERVENE

### A.    The MDT Is Entitled to Intervene as of Right or by Permission Pursuant To Fed. R. Civ. P. 24(a) And/Or (b)

Under Fed. R. Civ. P. 24(a)(2), a court *must* permit intervention by any party who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

Under Fed. R. Civ. P. 24(b), a court *may* permit intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." *See also Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York*, 2020 WL 5667181, at *3 (S.D.N.Y. Sept. 23, 2020) (citation omitted) ("Permissive intervention is wholly discretionary with the trial court.").

The Second Circuit has instructed that, to prevail on a motion for intervention as of right, a movant must "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *Payne v. City of N.Y.* (*In re N.Y. City Policing During Summer 2020 Demonstrations*), 27 F.4th 792, 799 (2d Cir. 2022) (citation modified). "The timeliness requirement is flexible and the decision is one entrusted to the district judge's sound discretion . . . Factors to consider in determining timeliness include: (a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." *Floyd v. City of New York,* 770 F.3d 1051, 1058 (2d Cir. 2014).  A lack of adequate protection by other parties to the action requires "sufficient doubt about the adequacy of

representation[,]" which "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Payne*, 27 F.4th at 803 (citation modified).

Although the Second Circuit has instructed that in order to gain permissive intervention, a party must generally satisfy the four aforementioned factors, *Payne*, 27 F.4th at 799, "the principal guide in deciding whether to grant *permissive* intervention is whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties," *Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 87 (S.D.N.Y. 2018) (alteration and quotation marks omitted) (emphasis added) (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994)). As such, district courts in the Second Circuit have recognized that in the context of permissive intervention, the four factors should be considered "as a whole[,] rather than focusing narrowly on any one of the criteria," and that application of the factors is "flexible and discretionary." *Grewal v. Cuneo*, 2014 WL 2095166, at *3 (S.D.N.Y. May 20, 2014).

      i.    *The Motion is Timely*

Where as here a party seeks to intervene "at a very early stage in th[e] litigation," and "prior to any significant substantive motions[,]" such motions are generally considered timely. *Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York*, 2020 WL 5667181, at *4 (S.D.N.Y. Sept. 23, 2020). The MDT was formed in accordance with the terms of the Plan, which became effective on the Effective Date of May 1, 2026. *See also Pike Co., Inc. v. Universal Concrete Prods., Inc.*, 284 F. Supp. 3d 376, 394 (W.D.N.Y. 2018) (five-month period between filing and intervention was timely); *S.E.C. v. Credit Bancorp, Ltd.*, 2000 WL 1170136, at *2 (S.D.N.Y. Aug. 16, 2000) (same). Further, because the Action is "in its infancy," the Court will likely "not need[ ] to [substantially] extend any preexisting deadlines or reschedule any proceedings to accommodate . . . [the] [i]ntervenors[,]" nor will any party will be prejudiced by the MDT's entry

9

in the proceedings. *Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York*, 2020 WL 5667181, at *4 (S.D.N.Y. Sept. 23, 2020) (quoting *Yang v. Kellner*, 2020 WL 2115412, at *1 (S.D.N.Y. May 3, 2020)). To be sure, no extension of deadlines or adjustment to the existing schedule is required at all. This motion has been filed well in advance of the July 23, 2026 deadline for Appellee briefs, leaving ample time for the MDT (which is represented by the same counsel that previously represented the AHC) to participate in the merits briefing without disruption to the Court's schedule.

> ii.    *The MDT Has a Direct, Legally Protectable Interest Relating to the Subject of These Appeals*

The MDT is a key stakeholder in the post Effective Date administration of these proceedings. The MDT's purpose—which includes preserving and implementing the various settlements embodied in the Plan—could be directly affected by these proceedings, because the enforcement of the Confirmation Order is at issue in the appeals. This is therefore a quintessential example of an interest relating to the subject of the action that constitutes a "cognizable interest at stake in [the action]." *Payne*, 27 F.4th at 800.

> iii.    *Vacatur or Modification of the Confirmation Order Would Impair the MDT's Interests*

The appellants in these consolidated appeals seek, *inter alia*, vacatur of the Plan and Confirmation Order. *See* Apr. 16, 2026 Opinion & Order [Dkt. No. 93] at 4-5. Such relief would affect the MDT asset transfers and its enforcement authority. Because the MDT Transferred Assets vested in the MDT on the Effective Date and the Debtors retain no reversionary interest, the MDT itself would bear the consequences of any appellate ruling that disrupts or unwinds those transfers, which would constitute impairment of an interest. *See Commack Self-Serv. Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93, 101, 103 (E.D.N.Y. 1996) (finding that a proposed intervenor had a sufficient interest when "[a]ny decision by the court . . . w[ould] impact [the proposed

10

intervenor's] economic interests and business operations," and that other proposed intervenors "demonstrated sufficient legal interest based on . . . professional[ ] [and] economic . . . involvements").

iv.    *The Existing Appellees Do Not Adequately Represent the MDT's Distinct Interests*

Post-emergence, the Debtors are in the process of being wound down. The MDT's interests as the holder of vested transferred assets and the entity charged with enforcing specific rights under the Plan and Confirmation Order are thus currently unrepresented; nor are the interests of the AHC represented by any other appellees following the Effective Date. As such, the MDT cannot be adequately represented absent its participation in these appeals. This more than satisfies the "minimal" requirement that the MDT's interests not be adequately represented. *Payne*, 27 F.4th at 803.

**B.  The MDT is Also Entitled to Intervene Under Bankruptcy Rule 8013(g)**

Under Fed. R. Bankr. P. 8013(g)(2), a movant-intervenor must state:

> (A) The movant's interest;
> (B) The grounds for intervention;
> (C) Whether intervention was sought in the bankruptcy court;
> (D) Why intervention is being sought at this stage of the proceedings; and
> (E) Why participating as an amicus curiae—rather than intervening—would not be adequate.

For largely the same reasons that the MDT is entitled to intervene under Fed. R. Civ. P. 24, it is also entitled to intervene under Fed. R. Bankr. P. 8013(g). The MDT's interest and grounds for intervention are set forth in sections II(A)(ii)-(iii). Briefly restated, the transfer of assets to the MDT and the explicit preservation of the MDT's rights under the Channeling Injunction create interests belonging to the proposed intervenor, which would be impaired by vacatur or modification of the Confirmation Order. The MDT did not intervene in the bankruptcy court because such intervention was unnecessary and impossible: it did not exist at the time the appeals

11

were filed; it did not succeed to certain of the rights and interests of the Debtor until the Plan Effective Date; and it was not vested with representing the interests of its beneficiaries, including the constituencies represented by the AHC, until the Plan Effective Date.  The reason why the intervention is being sought at this stage of the proceedings—again, that the MDT is a newly created entity and that its interests would be jeopardized by vacatur or modification—is also set forth in sections II(A)(iii)-(iv), above.  Participating as an amicus curiae would not be adequate because the MDT holds interests and claims that render it a real party in interest.  *See Cohen v. Empire Blue Cross & Blue Shield*, 176 F.3d 35, 41 (2d Cir. 1999) ("An amicus curiae is not a party.").  Essentially these exact arguments, when made by creditor groups, were previously found sufficient to merit intervention in an earlier appeal in related litigation.  *See generally* Order on The Pending Motions to Intervene by The Ad Hoc Committee of NAS Children, The Multi-State Government Entities Group, And the Ad Hoc Group of Individual Victims of Purude Pharma L.P. et al, *In re Purdue Pharma., L.P.*, Case No. 21-cv-7532 (CM) [Dkt. No. 60] (S.D.N.Y. Oct. 14, 2021).[5]

Accordingly, the MDT should be permitted to intervene in this action whether as of right or by permission.

---

[5] Fed. R. Bankr. P. 8013(g) also requires that a motion to intervene be filed within 30 days after the appeal is docketed. Pursuant to Fed. R. Bankr. P. 9006 or Fed. R. Civ. P. 6(b),  "the time to take action . . . can be extended," under the standards articulated by *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993). *In re Lyondell Chem. Co.*, 543 B.R. 400, 409 (Bankr. S.D.N.Y. 2016).  Courts consider "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395. "[T]he  . . . reason for delay is the predominant factor." *In re Lyondell Chem. Co.*, 543 B.R. 400, 411 (Bankr. S.D.N.Y. 2016) (internal citations and quotations omitted).  As set forth above, there is no prejudice to the appellants because there will be no change to the schedule of the proceedings.  The MDT did not exist as of 30 days after the appeal was docketed and should thus be permitted to intervene now that the MDT has been formed. *See In re Lyondell,* 543 B.R. at 412.

12

13

**CONCLUSION**

For the reasons set forth above, the MDT respectfully requests that its motion to substitute and/or intervene be granted.

Dated: June 10, 2026                    Respectfully submitted


                                        /s/ *Rachael Ringer*
                                        Kenneth H. Eckstein
                                        Rachael Ringer
                                        David E. Blabey Jr.
                                        HERBERT SMITH FREEHILLS KRAMER (US) LLP
                                        1177 Avenue of the Americas
                                        New York, NY 10036
                                        Telephone: (212) 715-9100
                                        Email: Kenneth.Eckstein@hsfkramer.com
                                                Rachael.Ringer@hsfkramer.com
                                                David.Blabey@hsfkramer.com


                                        *Attorneys for the Purdue Master Disbursement Trust*

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.1(c), I hereby certify that the preceding Memorandum of Law in Support of Motion for Substitution and/or Intervention (the "Memo"), exclusive of the caption and signature block, contains 4,086 words, and therefore complies with the 8,750 word limitation that is applicable to opening memoranda of law.  In determining the Memo's compliance, I relied on the word count of the word processing system that was used to prepare the Memo.

Dated: June 10, 2026                    Respectfully submitted


                                        /s/ *Rachael Ringer*
                                        Kenneth H. Eckstein
                                        Rachael Ringer
                                        David E. Blabey Jr.
                                        HERBERT SMITH FREEHILLS KRAMER (US) LLP
                                        1177 Avenue of the Americas
                                        New York, NY 10036
                                        Telephone: (212) 715-9100
                                        Email: Kenneth.Eckstein@hsfkramer.com
                                               Rachael.Ringer@hsfkramer.com
                                               David.Blabey@hsfkramer.com


                                        *Attorneys for the Purdue Master Disbursement Trust*