US SDNY DISTRICT COURT
300 QUARROPAS STREET
WHITE PLAINS, NEW YORK 10601-4150
RE: ROSEMARY HELEN ZIZIROS WALKER VS PURDUE
PHARMA 19-23649
2nd CIRCUIT CASE #26-1235
DISTRICT COURT CASE #25CV9681
MARION COUNTY OREGON CASE 23cv33935

MOTION FOR IMMEDIATE STAY & RELIEF

# The Bankruptcy Code Does Not Authorize Non-Debtor Bankruptcy Relief for the Sackler Family

## I. Congress Limited Chapter 11 Relief to Debtors

The Bankruptcy Code creates a comprehensive statutory framework governing the adjustment of the rights and obligations of a **debtor** and its creditors.

Congress repeatedly limited bankruptcy relief to entities that become debtors by filing a voluntary or involuntary bankruptcy petition.

See:

- 11 U.S.C. § 101 (definitions);
- 11 U.S.C. § 301 (voluntary cases commenced by the filing of a petition by a debtor);
- 11 U.S.C. § 541 (creation of the bankruptcy estate consisting of property of the debtor);
- 11 U.S.C. § 1123 (contents of a Chapter 11 plan);
- 11 U.S.C. § 1129 (confirmation requirements);
- 11 U.S.C. § 1141 (effects of confirmation);
- 11 U.S.C. § 524 (effect of discharge).

Every substantive protection afforded by Chapter 11 presupposes the existence of a debtor.

The Sackler family never filed bankruptcy petitions.

They never became debtors.

Therefore, they fall outside the class of persons to whom Congress extended bankruptcy discharge protections.

## II. The Bankruptcy Estate Belonged to Purdue—Not the Sacklers

Section 541 creates a bankruptcy estate consisting of the legal and equitable interests of the debtor.

11 U.S.C. § 541(a).

The Purdue bankruptcy estate consisted of Purdue property.

It did not consist of the independent assets of the Sackler family.

Likewise, independent tort claims owned by opioid victims against the Sacklers were not automatically transformed into estate property merely because Purdue also faced liability arising from similar conduct.

Accordingly, the Bankruptcy Court possessed jurisdiction to administer Purdue's estate—not to extinguish private causes of action belonging to third parties against non-debtors.

## III. Section 524 Limits the Effect of Bankruptcy Discharge

Section 524 establishes the legal effect of a bankruptcy discharge.

Most importantly, Congress expressly provided in § 524(e):

> "Except as provided in subsection (a)(3), discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."

11 U.S.C. § 524(e).

Although § 524(e) does not by itself resolve every question concerning third-party releases, it reflects Congress's deliberate decision that a debtor's discharge ordinarily does not eliminate the liability of other entities.

The Supreme Court relied on the overall statutory structure—including § 524(e)—in concluding that Congress did not authorize the nonconsensual third-party releases contained in the Purdue Plan.

## IV. Harrington Confirms That Bankruptcy Courts Possess Only Statutory Authority

In *Harrington v. Purdue Pharma L.P.*, the Supreme Court rejected confirmation of the Purdue Plan because the Bankruptcy Code contains no authorization permitting a bankruptcy court to extinguish direct claims against non-debtor third parties without the consent of affected claimants.

The Court emphasized that bankruptcy courts are courts of limited statutory jurisdiction.

They may exercise only those powers Congress has granted.

Neither equitable considerations nor the perceived desirability of a global settlement permits a bankruptcy court to create authority Congress withheld.

# V. The Master Shareholder Settlement Agreement Confirms That the Sacklers Were Not Debtors

The Master Shareholder Settlement Agreement expressly distinguishes:

- the Debtors;
- the Sackler Parties;
- the Purdue Master Disbursement Trust;
- PRA L.P.; and
- the Sackler Parties' Representative.

The Agreement acknowledges that the Debtors filed Chapter 11 petitions while separately identifying the Sackler Parties as independent contracting parties.

The Agreement further imposes independent contractual obligations upon the Sackler Parties, including:

- Settlement Payment obligations;
- representations and warranties;
- continuing covenants;
- enforcement provisions;
- breach remedies;
- payment schedules.

These provisions demonstrate that the Sacklers participated through contract—not through bankruptcy status.

# VI. Confirmation Cannot Create Powers Congress Withheld

Section 1129 authorizes confirmation only if the requirements of the Bankruptcy Code have been satisfied.

A confirmation order cannot enlarge statutory authority.

Likewise, § 1141 describes the legal consequences of confirmation with respect to the debtor and the debtor's estate.

Nothing within § 1141 authorizes bankruptcy courts to confer the functional equivalent of a bankruptcy discharge upon persons who never became debtors.

The Confirmation Order approving the Master Shareholder Settlement Agreement therefore cannot create substantive authority absent from the Bankruptcy Code itself.

## VII. Bankruptcy Rule 9019 Does Not Expand Substantive Rights

The Confirmation Order also relies upon Bankruptcy Rule 9019 to approve settlements.

Rule 9019 is purely procedural.

It authorizes judicial approval of compromises involving the bankruptcy estate.

It does not authorize a bankruptcy court to extinguish independent state-law causes of action held by non-consenting persons against non-debtors where Congress has not authorized such relief.

Procedural rules cannot enlarge substantive rights.

See 28 U.S.C. § 2075 ("Such rules shall not abridge, enlarge, or modify any substantive right.").

Accordingly, Rule 9019 cannot supply authority that the Bankruptcy Code itself does not provide.

## VIII. The Bankruptcy Clause Does Not Permit Courts To Rewrite the Statute

Article I, Section 8, Clause 4 grants Congress—not the judiciary—the authority to establish "uniform Laws on the subject of Bankruptcies."

Congress exercised that authority by enacting the Bankruptcy Code.

When Congress limited bankruptcy discharge to debtors and omitted any authorization for nonconsensual releases protecting non-debtors, neither the Bankruptcy Court nor private

parties could expand that authority through plan provisions, settlement agreements, or equitable powers.

# IX. Constitutional Avoidance Supports the Supreme Court's Interpretation

The Supreme Court's interpretation also avoids serious constitutional questions.

Allowing non-debtors to obtain bankruptcy immunity while never becoming debtors would deprive claimants of vested causes of action without the statutory safeguards Congress imposed upon debtors.

Such an interpretation would implicate:

- the Fifth Amendment Due Process Clause;
- the First Amendment right to petition the Government for redress of grievances;
- Article III concerns regarding the adjudication of private rights; and
- the constitutional limits of Congress's Bankruptcy Clause authority.

The Supreme Court correctly interpreted the Bankruptcy Code to avoid these constitutional difficulties.

# X. Conclusion

The Bankruptcy Code provides a comprehensive system governing the reorganization and discharge of debtors.

The Sackler family never filed bankruptcy.

They never became debtors.

Their assets never became property of the bankruptcy estate under § 541.

Their obligations were assumed by private contract through the Master Shareholder Settlement Agreement, not by operation of the Bankruptcy Code.

Because Congress did not authorize bankruptcy courts to confer the functional equivalent of a Chapter 11 discharge upon non-debtors, the nonconsensual releases afforded to the Sackler family exceeded the statutory authority granted by the Bankruptcy Code, as confirmed by the Supreme Court in *Harrington v. Purdue Pharma L.P.*.

Accordingly, any provision purporting to permanently extinguish direct claims against the Sackler family absent the consent of affected claimants is beyond the authority conferred by the Bankruptcy Code and is unenforceable.

# Motion for Immediate Stay of Further Non-Debtor Release Implementation and Immediate Distribution of Allowed Claims

## I. Introduction

The Supreme Court's decision in *Harrington v. Purdue Pharma L.P.* established that the Bankruptcy Code does not authorize nonconsensual third-party releases protecting non-debtors.

Significant issues remain concerning:

- the scope of the non-debtor releases;
- the legal effect of claimant opt-in and opt-out elections;
- future claimants;
- post-petition claimants;
- constitutional due process;
- and the continuing validity of any provision purporting to extinguish direct claims against the Sackler family.

Until those issues are finally resolved, further implementation of disputed release provisions should be stayed.

At the same time, the Court should not delay compensation owed to claimants whose claims have already been allowed and whose right to payment does not depend upon the resolution of those remaining legal questions.

## II. Immediate Stay Is Necessary to Preserve the Rights of All Parties

Federal courts possess inherent authority to preserve the status quo while substantial legal questions remain pending.

Here, unresolved issues include:

- whether particular claimants knowingly and voluntarily opted into third-party releases;
- whether opt-in elections were constitutionally valid;
- whether non-participating claimants remain bound by portions of the Plan;
- whether future and post-petition claimants received constitutionally sufficient notice;
- whether additional proceedings are necessary following *Harrington*.

If implementation continues before these issues are resolved, claimants may suffer irreparable prejudice through the permanent loss of constitutional and statutory rights.

Accordingly, implementation of disputed release provisions should be stayed until the Court conducts an evidentiary hearing regarding the legal effect of claimant opt-in and opt-out elections and resolves all remaining constitutional and statutory issues.

## III. An Evidentiary Hearing Concerning Opt-In and Opt-Out Elections Is Required

The record demonstrates that claimant elections materially affect legal rights.

Those elections determine whether claimants purportedly consented to relinquish independent causes of action against non-debtor parties.

Consent must be knowing, voluntary, and informed.

Because the validity and legal consequences of those elections remain disputed, due process requires that the Court determine:

- the total number of claimants who opted in;
- the total number who declined;
- how elections were solicited;
- whether adequate disclosures were provided;
- whether disabled, pro se, or unrepresented claimants received meaningful notice;
- and whether the elections satisfy constitutional standards for informed consent.

## IV. Allowed Claims Should Be Paid Immediately

The Effective Date occurred on May 1, 2026.

Upon the Effective Date, the restructuring transactions contemplated by the Plan became operative, and the Master Shareholder Settlement Agreement became effective.

The purpose of the Settlement Trust is to administer and distribute funds to eligible claimants.

Claimants whose claims have been fully reviewed, allowed, and approved have completed every procedural requirement imposed upon them.

Their entitlement to payment should not be delayed because unrelated legal questions remain concerning non-debtor releases or the rights of other categories of claimants.

Justice requires distinguishing between:

- disputes concerning releases; and
- payment of claims already finally allowed.

The former may require additional judicial proceedings.

The latter should proceed without unnecessary delay.

# V. Continued Delay Would Contradict the Purpose of the Confirmed Plan

The Confirmation Order approved the Master Shareholder Settlement Agreement and authorized implementation of the Plan.

The Effective Date has now occurred.

The operating debtor no longer exists in its pre-confirmation form.

The Settlement Trust exists for the purpose of making distributions and administering remaining obligations.

Absent a specific provision of the Plan requiring continued delay for particular claims, withholding payment from claimants whose claims have been finally allowed serves no bankruptcy purpose.

Many claimants have waited years for compensation while suffering continuing medical, financial, and personal hardship.

# VI. The Court May Preserve Both Interests

The Court need not choose between protecting constitutional rights and compensating victims.

Both objectives can be accomplished simultaneously.

The Court should:

1. Stay implementation of disputed non-debtor release provisions pending final resolution of all constitutional and statutory issues;
2. Conduct an evidentiary hearing concerning claimant opt-in and opt-out elections;
3. Preserve all rights of claimants whose constitutional or statutory claims remain unresolved;
4. Order immediate distribution of all undisputed, finally allowed claims in accordance with the confirmed Plan and the governing Trust documents; and
5. Require the Trust Administrator to file a public accounting identifying:
   - the number of approved claims;

- ○ the number of paid claims;
- ○ the amount remaining available for distribution;
- ○ the amount held in reserve;
- ○ and the legal basis for maintaining any remaining reserve.

# VII. Requested Relief

Accordingly, the undersigned respectfully requests that the Court:

A. Enter an immediate stay prohibiting further implementation of disputed non-debtor release provisions pending final adjudication of all remaining legal issues;

B. Schedule an evidentiary hearing concerning claimant opt-in and opt-out elections;

C. Preserve the rights of all future, post-petition, and non-consenting claimants;

D. Order the immediate payment of all finally allowed and undisputed claimant awards consistent with the Plan and applicable Trust documents; and

E. Grant such other and further relief as the Court deems just and proper.

MS WALKER AGAIN MOTIONS MS WALKER A QUALIFIED DISABLED PRO SE PAUPER AGAIN DEMANDS HER ADA & TITLE RIGHTS TO EMAIL & FOR A PRO BONO LAWYER IMMEDIATELY SO MS WALKERS CONSTITUTIONAL & OTHER PROVIDED RIGHTS ARE ENFORCED. COURTS CAN NOT CHANGE RULES COURT TO COURT WHEN SDNY BANKRUPTCY COURT & LAWYERS HAVE ALLOWED EMAIL SERVICE. THAT ISNOT EQUAL OR FAIR ESPECIALLY WHEN YOUR DOT GOV IS STILL BROKEN TODAY.

HERE IS A NOT HERE DENIAL BY A NOT HER LAWYER & MY OVERDRAWN BANK BALANCE. I HAVE NO MONEY FOR MAIL. HOW DOES THIS COURT EXPECT A DISABLED AMERICAN PRO SE PAUPER TO ENFORCE HER RIGHTS OR IS THIS COURT PROVING MS WALKERS POINT THAT PAUPERS HAVE NO RIGHTS IN AMERICA AT ALL BECAUSE WE CAN'T AFFORD THE BILLS…….YES OR NO.



IF WE THE PEOPLE CAN NOT AFFORD THE BILLS TO ENFORCE LAW & RIGHTS THE BILL OF RIGHTS IS A FRAUD.

rosemary helen ziziros walker          6.25.26                6:49 pm

CERT OF SERVICE i promise i email served mhurley@akingump.com , Kenneth.Eckstein@hsfkramer.com cshore@whitecase.com eneiger@askllp.com ahayes@capdale.com ben.kaminetzky@davispolk.com