SDNY US DISTRICT COURT
300 QUARROPAS STREET
WHITE PLAINS, NEW YORK 10601-4150

RE: ROSEMARY HELEN ZIZIROS WALKER VS PURDUE PHARMA

DISTRICT COURT CASE #25CV9681

RESPONSE TO MASTER DISBURSEMENT TRUST BRIEF

FIRST THE DISCLOSURE STATEMENT HOW WOULD I KNOW THIS TO BE A
FACTUAL STATEMENT WITHOUT SEEING DOCUMENTS TO THAT EFFECT.

MS WALKERS CASE NEVER SHOULD HAVE BEEN CONSOLIDATED AS MS
WALKERS ISSUES ARE NOT LIKE ANY OTHER APPEAL ISSUES.

SEE PROBLEMS ALREADY….

'On November 18, 2025, the Bankruptcy Court confirmed the chapter 11 Plan
for the Debtors, and on May 1, 2026 (the "Effective Date"), that Plan went effective.'

ALAS DAVIS POLKS EIL VONNEGUT DID NOT KEEP THEIR WORDS DURING
CONFIRMATION MOSTLY NOV 14, 2025. I BELIEVE IN LAW WHEN SOMEONE
ISNOT TRUTHFUL THEY ARE MOOT RIGHT.

'The legal concept that someone who lies on record cannot be trusted is known
as *falsus in uno, falsus in omnibus*, meaning "false in one thing, false in everything"'

THE COURT & DAVIS POLK CAN NOT BE TRUSTED FALSE IN ONE THING FALSE
IN EVERYTHING.



Page 58

THE COURT:  Yes.

MR. VONNEGUT:  And I see no reason that we can't address and resolve all of those prior to emergence.

THE COURT:  All right.  Thank you.  And I can't -- I don't -- I can't think of any other category.  Right?  I think those are the categories that we've been talking about.  We've been talking about timeliness consistently and then the other one, substantiation.  So I think we're talked



ALAS NO LATE CLAIMS WERE TREATED CONSISTENTLY AS THE MAY 20, 2026
HEARING READS….



MS. TOWNES:  So for the record, my name is Esther Townes from Davis Polk & Wardwell.  So there are currently 17 individuals who have motions that are on for today.  We are only objecting to the motions filed by four of them. The individuals whose motions we are not objecting to are Don Hardin, Wayne B. Anderson, Seung Han, Roy Howard Murry, Edward N. Whitman, Richard Paiva, Willard J. Hall, Travis N. Funke, Travis J. Stewart, British D. Moss, Eddie M. Vargas, Sr., Michael Walker, and Michael C. Stevens.  So those are the individuals whose motions we are not objecting to.

THE COURT:  All right.  And I know I heard at least two of those names out there.  Now, there are a lot of

THIS IS THE 9.17 MY BIRTHDAY 2025 LATE CLAIM HEARING DURING WHICH SOME LATE CLAIMANTS GOT TWO HEARINGS AND SOME WERE ALLOWED WHILE FOUR WERE NOT WRONGFULLY.



Re Doc. #7826 Letter To The Court Regarding Late Claim Motions / Request To File Late Claim Filed By Janice S. Lojko

Re Doc. #7840 Debtors' Omnibus (I) Objection To Late Claim Motions Filed By Travis Funke, Travis Stewart, And Janice Lojko, And (II) Response To Late Claim Motion File By British Moss

Status Re: Doc. #7756 Notice Of Hearing Regarding Motion For Acceptance Of Late Filing Of Unsecured Claim Filed By Justin Chabot And Jeremy Chabot

THE PLAN NEVER SHOULD HAVE BEEN CONFIRMED NOR GONE EFFECTIVE PRIOR TO ALL ISSUES BEING RESOLVED.

WHERE IS THE PLAN….MS WALKER HAS NEVER SEEN THE PLAN IN ONE PLACE. TWO THERE WERE TWO VOTES 9.30.25 ONE FOR THE PLAN SURE ALL THE LAWYERS & GOVERNMENT VOTED FOR THE PLAN & THERE WAS THE OPT IN OR NOT OPT IN NON DEBTOR RELEASE CHECK BOX.

THIS IS ONLY PAGE 2 OF THE MDT BRIEF & SO MANY ISSUES DISTRICT COURT….

'Fourth, the Plan does not include any non-consensual third-party releases; instead, creditors are given the choice of releasing (or not) their claims against the Sacklers.'

THE SACKLERS ARE NON DEBTORS IN THIS BANKRUPTCY. NO ONE BUT MS WALKER WHO HAS A LAW SUIT AGAINST THE SACKLERS IN OREGON HAS ANY THING TO RELEASE THE SACKLERS FOR MAKING THE RELEASE CASH NOT FAIR TO MS WALKER AND IF MS WALKER CONSENTED MS WALKER LOST HER RIGHT TO PURSUE HER PETITION IN OREGON WHICH ISNOT FAIR AND GIVING UP A MEANINGFUL RIGHT AS CONSENSUAL WITH THE CAVEAT YOUR CLAIM DOESNOT COUNT IF YOU DO NOT ACCEPT THE NON DEBTOR SACKLER CASH

YOU HAVE NO 'TICKET TO THE TRUST'.

Restraining Order [ECF No. 9231]; (17) Motion to Allow [ECF No. 9240]; (18) Motion for Immediate Hold [ECF No. 9241]; (19) Motion to Approve [ECF No. 9255]; (20) Motion for Immediate TRO Stay [ECF No. 9256]; (21) Motion [...] ons [ECF No. 9268]; (22) Motion to Approve [ECF No. 9269]; (2[...] tio[...] ppr[...] Immediate TRO [ECF No. 9273]; (24) Response to Doc 9359 & Motion for Sanctions [ECF No. 9368]; (25) Objection to Doc 9357 & Motion for Sanctions [ECF No. 9370]; (26) Response & Objection [ECF No. 9381]; (27) Response to Doc 9378 & Motions [ECF No. 9383]; (28) Amended Response to Doc 9378 & Motions [ECF No. 9384]; (29) Emergency Motion [ECF No. 9385]; (30) New Motions & Sanctions Request [ECF No. 9386]; (31) Ms. [...] Amanda Morales Motion [ECF No. 9394]; (32) Motions & Objections to Fees Requested [ECF No. [...]s & Stay Request [ECF No. 9396]; (34) Objection to Motion for Admission Pro Hac Vice [ECF [...]tion American Laws & Rights Must Matter [ECF No. 9403]; (36) Motion to Explain & [...]ECF No. 9415]; (37) Counter to Doc 9197 [ECF No. 9425]; (38) Motion pursuant to 9006(b)(1) [ECF No. 9426].

19-23649-shl    Doc 9439    Filed 07/10/26    Entered 07/10/26 12:55:43    Main Document
Pg 2 of 8

Ms. Walker's pleadings seek a wide variety of requested relief. These requests include: inquiries related to the claim that she filed against the Debtors in these cases; requests regarding her decision on whether or not to opt into the Sackler settlement that is part of these cases; requests to stay actions authorized by the confirmed plan of reorganization in these cases; requests seeking modifications of the confirmed plan of reorganization; and requests for relief unrelated to the Bankruptcy Code.

It is important to consider these requests in context. The Court has recently determined that Ms. Walker is not a claimant in these bankruptcy cases. *In re Purdue Pharma L.P.*, 2026 WL 1905691 (Bankr. S.D.N.Y. July 1, 2026). As explained in that decision, the Court has concluded that Ms. Walker's late filed claim is not permitted because it was filed years after the Bar Date and she does not satisfy the standard for excusable neglect. *Id.* Given that ruling, any further questions about the validity of her claim are moot. Moreover, any request by Ms. Walker to revoke her opt-in election to participate in the related Sackler settlement is similarly moot, because Ms. Walker does not have the right to participate in the Sackler settlement if she is not a claimant in these bankruptcy cases.[3] *See Purdue Pharma*, 675 B.R. at 666 (explaining that the third-party releases only apply to holders of claims who affirmatively consent to the releases). Well before the Court's recent ruling on the timeliness of her claim, the Court had previously addressed numerous requests for relief filed by Ms. Walker. *See e.g.*, Walker Confirmation Objections [ECF Nos. 7771, 7825, 7835, 7855]; *In re Purdue Pharma L.P.*, 675 B.R. at 673-74 (addressing Ms. Walker's confirmation objections); Order Denying Motions for Stays Pending Appeal [ECF No. 8727] (addressing Ms. Walker's motion for a stay pending appeal); Order

---

[3] As explained in the Court's decision on her late filed claim motion, Ms. Walker retains any rights that she has to sue the Sacklers, who are not debtors in these bankruptcy cases. *In re Purdue Pharma L.P.*, 2026 WL 1905691 (Bankr. S.D.N.Y. July 1, 2026) n.6 (noting that only claimants can participate in the Sackler settlement).

2

19-23649-s[...]    DOC 9439    Filed 07/10/26    Entered 07/10/26 12:55:[...]    Main Document

**restructuring.ra.kroll.com**

THE GALL TO USE THIS TERM….

'Fifth, the Plan contains many other salutary features (not all of
which can be listed here), including its delivery of all of the value of Purdue to the
creditors, its contribution to creditors of more than $6.5 billion from the Sacklers,
and its creation of a public document repository containing tens of millions of
documents detailing Purdue and the Sacklers' malfeasance.'

# malfeasance

/malˈfēzn(t)s/



**Malfeasance** is the intentional commission of a wrongful, unlawful, or dishonest act. It
typically involves someone in authority or an official abusing their power for improper
reasons, such as a politician accepting a bribe or a corporate director embezzling client
funds. [1, 2, 3, 4, 5]

'Nine pro se claimants have appealed, and to be sure, their
disappointment in certain Plan features is understandable. No creditor, including the
MDT, is here to defend Purdue or the Sacklers for their prior bad acts. But the
unfortunate reality is that the assets of Purdue and the Sacklers combined are
insufficient by many orders of magnitude to cover the enormous harm they have
Wrought.'

RIGHT NINE OF US DARED TO SPEAK & TYPE TRUTH TO POWER.

EXCUSE ME THE PLAN VIOLATES CONSENT & HARRINGTON & DEBTORS &
COURT LIED ON RECORD MS WALKERS LATE CLAIM & OPT IN NOT OPT IN
ISSUES WOULD BE HEARD PRIOR TO EMERGENCE NOT A WORD IN THE FRBP
OR EFFECTIVE.

'The Appellants articulate no legal nor factual basis for reversal of plan confirmation. '

SO GLAD THE MODIFIED BENCH RULING IS BROUGHT UP HERE…..

'The Debtors were owned and 4 controlled by the members of the Sackler family (the "Sacklers"). In re Purdue Pharma, No. 19-23649 (SHL), (Bankr. S.D.N.Y. Nov. 20, 2025), Modified Bench Ruling (A.009019) ("MBR") at 10, 13.'

MS WALKER WAS ALL OVER THIS MODIFIED BENCH RULING………

'That is because the releases here are provided only on a consensual basis, with claimants being given the choice to provide the releases—to "opt in" using the terms of the bankruptcy world—and, by doing so, to obtain the additional value provided as part of the Sackler settlement. But no one is required to do so. Parties are free to preserve their right to sue the Sackler Parties, with such a right preserved unless the party takes the affirmative step of opting in to the release.'

'But as was explained at the confirmation hearing—and at Court proceedings leading up to the confirmation hearing—any issues involving individual claims will be addressed after confirmation consistent with the trust procedures set up in the Plan. See, e.g., Memorandum of Decision and Order Regarding Filings By Pro Se Claimant Amanda Morales [ECF No. 7941]; Memorandum Endorsed Order, dated Sept. 12, 2025 [ECF No. 7846] (adjourning issue of timeliness of claim of Rosemary Walker until after confirmation).

'3
 Even before the Court had provided its bench ruling or entered an order confirming the Plan, pro se party Rosemary Walker had sought a stay of confirmation of the Plan. See Walker Letter, entered on November 17, 2025 [ECF No. 8259]; Walker Letter, entered on November 18, 2025 [ECF No. 8261]; Walker Letter, entered on November 18, 2025 [ECF No. 8264]. On November 15, 2025, Ms. Walker also filed a notice of appeal. See Notice of Appeal [ECF No. 8248]. Under Rule 8007 of the Federal Rules of Bankruptcy Procedure, "a party must move first in the bankruptcy court" for "a stay of the bankruptcy court's judgment, order, or decree pending appeal[,]" or "an order suspending, modifying, restoring, or granting an injunction while an appeal is pending[.]" Fed. R. Bankr. P. 8007(a)(1)(A), (C). The Court considers four factors in determining whether to grant a motion to stay an order pending appeal: 1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; 2) whether the applicant will be irreparably injured absent a stay; 3) whether issuance of the stay will substantially injure other parties interested in the proceeding; and 4) where the public interest lies. Nken v. Holder, 556 U.S. 418, 434 (2009) (internal citations and quotations omitted). A court's determination of whether to grant a stay pending appeal is "an exercise of judicial discretion, and the propriety of its issue is

dependent upon the circumstances of the particular case." Id. at 433 (internal citations and quotations omitted). "The movant's burden is a heavy one[,]" with the movant required to "show satisfactory evidence on all four criteria." In re 473 W. End Realty Corp., 507 B.R. 496, 501 (Bankr. S.D.N.Y. 2014) (internal citations and quotations omitted). The Court finds that the requirements for a stay have not been met here. Ms. Walker does not address any of the four factors that the Court should consider in granting a motion to stay an order pending appeal. See Walker Letter at 6 [ECF No. 8264]. Instead, Ms. Walker raises various arguments against the Plan that have already been addressed in various forms throughout this ruling. See, e.g., id. at 6. Given the lack of merit in Ms. Walker's arguments and the harm that will be caused to claimants by a delay in these proceedings after six long years, the Court denies the request.

19-23649-shl Doc 8270 Filed 11/20/25 Entered 11/20/25 23:05:59 Main Document
Pg 63 of 64
64

MS WALKER IS WHO HAS BEEN HARMED BY THE COURTS DELAY.

These objecting parties raised several arguments in opposition to confirmation of the Twelfth Amended Plan, but the main challenge was to the legality of the non-consensual releases of claims held by non☐debtors against other non-debtors (also known as "Third-Party Releases") that were contained in the Twelfth Amended Plan. In September 2021, Judge Drain issued a bench ruling and a subsequent order confirming the Twelfth Amended Plan, which included approval of the non-consensual Third-Party Releases. See Findings of Fact, Conclusions of Law, and Order Confirming the Twelfth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors [ECF No. 3787] (the "Confirmation Order"); Dubel Decl. ¶¶ 48-49. The United States Trustee, eight States 19-23649-shl Doc 8270 Filed 11/20/25 Entered 11/20/25 23:05:59 Main Document
Pg 20 of 64
21
and the District of Columbia, certain Canadian municipalities and indigenous tribes, the City of Seattle, and certain individual claimants appealed the Confirmation Order to the United States District Court for the Southern District of New York, primarily on the grounds that the Bankruptcy Code does not authorize non-consensual Third-Party Releases. See Disclosure Statement for Thirteenth Amended. Joint Chapter 11 Plan of Reorganization at Art. I.B [ECF No. 7637] (the "Disclosure Statement"); Dubel Decl. ¶ 50. In December 2021, the District Court
vacated the Confirmation Order, holding that the Bankruptcy Code does not authorize non☐consensual Third-Party Releases. See In re Purdue Pharma, L.P., 635 B.R. 26 (S.D.N.Y. 2021); Dubel Decl. ¶ 50. The District Court rejected other challenges related to the Bankruptcy Court's subject matter jurisdiction to approve the release of claims against non-debtors and the Twelfth Amended Plan's classification and treatment of unsecured creditors. See In re Purdue, 635 B.R. at 83-89, 115-118. The Debtors and

certain other parties appealed the District Court decision to the United States Court of Appeals for the Second Circuit. See Dubel Decl. ¶ 51. This appeal precipitated a new round of mediation that led to changes in the Twelfth Amended Plan that resolved the appeal by the objecting States and the District of Columbia. See Disclosure Statement Art. I.B; Dubel Decl. ¶¶ 51-52. These changes included an additional $1.175 to $1.675 billion in contributions from the Sackler Parties and other Sackler-related entities, which brought their total contribution under the Twelfth Amended Plan to $5.5 to $6 billion. See Dubel Decl. ¶ 52. In May 2023, the Second Circuit reversed the District Court and affirmed the Confirmation Order. See generally n re Purdue Pharma L.P., 69 F.4th 45 (2d Cir. 2023); Dubel Decl. ¶ 54. The United States Supreme Court ultimately granted certiorari to consider the permissibility of nonconsensual Third-Party Releases. See Dubel Decl. ¶ 54. In June 2024, the 19-23649-shl Doc 8270 Filed 11/20/25 Entered 11/20/25 23:05:59 Main Document

Pg 21 of 64

22 Supreme Court reversed the decision of the Second Circuit in a 5 to 4 vote. Harrington v. Purdue Pharma L.P., 603 U.S. 204 (2024); see Dubel Decl. ¶ 56. In Harrington, the Supreme Court held that the Bankruptcy Code does not authorize a nonconsensual release and injunction of claims of a non-debtor against another non-debtor, as was provided by the Twelfth Amended Plan. See Dubel Decl. ¶ 56. The Supreme Court remanded the case for further proceedings consistent with its opinion. See Dubel Decl. ¶ 56.

UM YES WE DO

Specifically, the Third-Party Releases of direct creditor claims against the Sackler Parties and other non-debtor parties that are contained in the Plan will only bind those creditors that affirmatively elect to grant them. See Disclosure Statement Art. I.B; Plan § 1.1. Creditors that elect to grant the Third-Party Releases will receive additional 19-23649-shl Doc 8270 Filed 11/20/25 Entered 11/20/25 23:05:59 Main Document

Pg 22 of 64

23

distributions in exchange for their release. See Disclosure Statement Art. I.B. Those parties that do not elect to grant the Third-Party Releases will not have their direct claims against the Sackler Parties or other non-Debtors released or otherwise compromised. See Disclosure Statement Art.

I.B. Mr. Collura testified as to his own independent investigation into potential fraudulent transfer claims that might be recovered against the Sacklers. See Hr'g Tr. 153:8-15 (Nov. 12, 2025); Declaration of Richard A. Collura [ECF No. 8135]

I ARGUE NONE OF THIS IS FAIR NOR EQUITABLE

Protective Comm. for Indep. S'holders of TMT

Trailer Ferry v. Anderson, 390 U.S. 414, 424 (1968) (holding that in plan confirmation context, courts must "determine that a proposed compromise forming part of a reorganization plan is fair and equitable.")

UHHHHH THE ONLY DEBTORS ARE PURDUE PHARMA

(6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining.

DATES WERE **NOT MET PER THE AGREEMENT

(i) the Shareholder Settlement Agreement;

SO NOW WHAT SINCE BOTH COURT AND THE DEBTORS COUNCIL DID NOT KEEP THEIR WORDS ON RECORDS TO MS WALKER TO HEAR HER LATE CLAIM & OPT IN NOT OPT IN ISSUES THAT WERE VITAL TO MS WALKER SPECIFICALLY.

But those creditors that do not grant the Third-Party Releases will be able to pursue litigation of their direct claims against the Shareholder Released Parties (as defined in the Plan). See Disclosure Statement Art. I.B. Additionally, those creditors that do not grant the Third-Party Releases will only receive distributions upon the allowance of their claims, which may be subject to objections by the Debtors and other parties-in-interest in accordance with the Bankruptcy Code and the Plan. See Disclosure Statement Art. I.B. Debtors' counsel represented at the hearing on confirmation that those parties that grant the Third-Party Releases but subsequently have their proof of claim disallowed as untimely against the Debtors prior tthe Debtors' emergence from bankruptcy will retain their direct claims against the Sackler Parties because their ballot and election to grant the Third-Party Releases will essentially be null and void. See Hr'g Tr. 52:10-12 (Nov. 14, 2025) [ECF No. 8253] (Debtors' counsel stating that "if your claim gets disallowed prior to emergence, you're not bound to the release, you're not treated as a claimant in the case."). As the Sackler Parties' increased settlement contributions are occurring without the global Third-Party Releases of the Twelfth Amended Plan, the current Plan and related settlements provide that certain litigation costs and expenses incurred by the Sackler 19-23649-shl Doc 8270 Filed 11/20/25 Entered 11/20/25 23:05:59 Main DocumentPg 26 of 64 27 Parties related to creditor claims that do not participate in the Direct Claims Settlement will reduce the Sackler Parties' settlement payment obligations. See Disclosure Statement Art. I.B. The deadline for creditors to opt into the Third-Party Releases in the Plan had originally been tied to the occurrence of the Effective Date of the Plan, specifically 30 days prior to the Effective Date. At the confirmation hearing, there was a discussion about the difficulty of determining the Effective Date and a creditor's inability to ascertain when that date would occur. As a result, the Debtors stated on the record that they would change the deadline to opt into the Third-Party Releases to a date certain, specifically

March 1, 2026, and would send out a notice so that creditors would be aware of their deadline to opt in. See Hr'g Tr. 44:6-46:25 (Nov. 14, 2025). Upon the Effective Date of the Plan, Purdue Pharma will cease to exist and the Debtors' businesses will be transferred to a newly created company called Knoa Pharma LLC ("Knoa")

KNOW WHY THEY HAD TO ADD THE MARCH 1, 2026 DEADLINE BECAUSE THE OPT IN NOT OPT IN WASNOT FAIR COERCED AND PREMATURE.

**Elect to Grant or Not Grant the Third-Party Releases:** You may, through your ballot or your participation in the applicable direct claims shareholder settlement (as described in the Disclosure Statement and the Plan), elect to grant or not to grant releases of any actual or potential claims that you have against Sackler family members, and certain other individuals and related entities, relating to Purdue Pharma L.P. and its affiliated debtors (i.e., the third-party releases). **Electing to grant or to not grant the third-party releases is completely voluntary, but you may receive less compensation if you do not elect to grant such third-party releases. The Debtors and the Creditors' Committee recommend that you elect to grant the third-party releases.**

BACK TO THE MDT BRIEF....OPT IN NOT OPT IN IS STILL AT ISSUE TODAY 7.24.2026.

The United States Supreme Court ultimately granted certiorari to consider the permissibility of nonconsensual third-party releases. See Dubel Decl. ¶ 54. The Supreme Court reversed the decision of the Second Circuit in a 5 to 4 decision in Harrington v. Purdue Pharma L.P., 603 U.S. 204 (2024), and invalidated that element of the plan.

THIS IS A FALSE CLAIM.
ALLOWED LATE CLAIMANTS DID NOT VOTE NOR OPT IN NOR NOT OPT WHEN MS WALKER & MS LOJKO DID IN FACT VOTE WHICH ISNOT FAIR TO MS WALKER & LOJKO OR ANYONE WHO VOTED SO ALLOWED PURDUE PI LATE CLAIMS WHO DID NOT VOTE DID NOT CONSENT AS MS WALKERS CONSENT STATUS HAS YET TO BE DETERMINED.....REGARDLESS THIS VIOLATED CONSENT & HARRINGTON AND MOOTS THE ENTIRE VOTE & OPT IN OR NOT OPT IN IF IT NEVER MATTERED TO BEGIN WITH RIGHT.

The Plan also included extensively negotiated mechanisms for delivering fully consensual releases to those wishing to participate in the global settlement. Id. Articles VII, X.

BIG QUESTION DID THESE LATE CLAIMANTS VOTE FOR THE PLAN & TO OPT IN OR NOT OPT IN TO HAVE 'FULLY CONSENSUAL RELEASES' WHEN PURDUE PI CLAIMANTS HAVE NO LAW SUIT PENDING MS WALKER DOES TO RELEASE THE NON DEBTOR SACKLER.

THIS ISNOT CONSISTENT TREATMENT OF LATE CLAIMS...NOT EVEN CLOSE

FROM THE 5,20,26 AFTER EMERGENCE / EFFECTIVE LATE CLAIM HEARING

But I do keep track of everything that's filed and we'll do our best to get to it, but it may be that it's going to take a process over time. So today's the late filed claims motions that we have, 17 that were identified by counsel just now, and only four of which where we're going to have a hearing on it. So I did see Mr. Paiva on the line. He knows his late filed claim has been accepted. Nobody's going to argue that it won't be considered because it was late filed, and I think Mr. Funke was here as well. And I think there was at least one other person who fell into that bucket. So you know your claim is not going to be -- no one's going to argue that it's improperly late filed.

BACK TO THE BRIEF….page 9 it reads at bottom of the page….

'In that ruling, the Bankruptcy Court concluded that the Plan complied with the Supreme Court's decision in Harrington and overruled the objections of the pro se litigants.'

AGAIN THE SACKLERS ARE NON DEBTORS IN THIS BANKRUPTCY THEREFORE CAN NOT GET RELIEF IN ANY FORM.

the new Plan, to comply with Harrington, gave creditors the option to choose whether to exchange settlement of their claims against the Sacklers for enhanced recoveries. MBR at 41 ("[T]he releases here are consensual, occurring only where a party chooses to opt into a release in exchange for the value provided by the Sackler Parties.").

AGAIN DID THESE LATE *ALLOWED CLAIMANTS AFTER EFFECTIVE VOTE & OPT IN OR NOT OPT IN PRIOR TO THE 9.30.25 DEADLINE ALSO MOOT SINCE MS LOJKO WAS ALLOWED TO VOTE AFTER THE DEADLINE….

I HAVE JUST WRITTEN MR FUNKE IN THE INDIANA CORRECTIONAL FACILITY TO FIND OUT IF THEY VOTED & OPTED IN OR NOT OPTED IN I WILL WRITE THE OTHER ALLOWED LATE CLAIMS AFTER EFFECTIVE REGARDING DID THEY CONSENT YES OR NO I MOTION FOR TIME TO GET RESPONSES PLUS I HAVE NO STAMPS TO MAIL IT TODAY 7.24.26 AFTER MY SURGICAL PROCEDURE I DID ASK SOMEONE TO BRING ME ONE IF THEY HAD IT….

THIS IS 5,20,26 THE LATE CLAIM HEARING AFTER EMERGENCE NOT A WORD IN THE FRBP / EFFECTIVE page 20-21

So for purposes of today, I think Mr. Vonnegut's 1,000% right that the main event is dealing with the requests to accept late filed claims that were made by a number of folks. And before we get into the other things to discuss, I was hoping to get a list of various requests to accept late filed claims where there's no dispute. And the plan administrator is going to ask the Court to -- is going to agree with the folks

who've made those requests to grant 17 those requests and accept those claims. 18 That way, the folks who are here for those claims, 19 who want to know the answer, and I know there are a couple 20 names that I heard that are exactly those folks, will know 21 the answer. And so they can stick around for the rest of 22 the hearing or not, but they know where they stand. 23 And so, Mr. Vonnegut, maybe that's as good a time 24 to do that. I know the plan administrator when filing 25 various documents recently sort of went through the list. Page 20 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 But I think for purposes of today's hearing, it's probably 2 useful to give the most up-to-date list of the individuals 3 whose claims will be accepted even though they may be 4 considered late filed.

DOC 8059 IS VERY CONFUSING & THE FLOOD GATES DID NOT OPEN.

DOC 9062…..

9. A review of the five Proof of Claims filed indicates that Mr.
Moss was able to file the Proofs of Claim and also included several pages of evidence with the Proof of Claim submissions.

14. Considering the totality of Mr. Moss's circumstances,
, the PI Claims Administrator does not object to Mr. Moss's untimely
filed Proofs of Claim being deemed by the Court as timely.

YES THIS DOES….

15. The PI Claims Administrator advises that even if Mr. Moss's untimely filed Proofs of Claim are deemed as timely, such claims will still be subject to the Non-NAS PI TDP and may not be entitled to payment from the PI Trust, subject to certain appeal rights set forth in the Non-NAS PI TDP.
16. The PI Claims Administrator does not believe that these limited circumstances will unfairly prejudice claimants who timely filed their Proofs of Claim in these Chapter 11 proceedings and whose claims are currently being evaluated under the terms of the applicable PI TDP.

HOW IS THIS CONSISTENT OR FAIR SO INCARCERATED PEOPLE WHO ARE OR ARE NOT QUALIFIED DISABLED AMERICAN WITH DISABILITIES RECEIVING SOCIAL SECURITY DISABILITY LIKE MS WALKER A PRO SE PAUPER WITH FAR MORE EXCUSABLE NEGLIGENCE PER PIONEER……

4
13. In his Late Claim Motion, Mr. Moss included documentation that demonstrates
.
14. Considering the totality of Mr. Moss's circumstances,
, the PI Claims Administrator does not object to Mr. Moss's untimely

filed Proofs of Claim being deemed by the Court as timely.

15. The PI Claims Administrator advises that even if Mr. Moss's untimely filed Proofs of Claim are deemed as timely, such claims will still be subject to the Non-NAS PI TDP and may not be entitled to payment from the PI Trust, subject to certain appeal rights set forth in the Non-NAS PI TDP.

16. The PI Claims Administrator does not believe that these limited circumstances will unfairly prejudice claimants who timely filed their Proofs of Claim in these Chapter 11 proceedings and whose claims are currently being evaluated under the terms of the applicable PI TDP. Here, Mr. Moss demonstrates:

a.

; and

b.

.

19-23649-shl Doc 9062 Filed 04/20/26 Entered 04/20/26 18:39:07 Main Document
Pg 4 of 5

5

Respectfully submitted this 20th day of April, 2026.

Edgar C. Gentle, III

PI Claims Administrator

19-23649-shl Doc 9062 Filed 04/20/26 Entered 04/20/26 18:39:07 Main Document

BACK TO THE BRIEF…..NO ONE EVER ANSWERED WHO IS PAYING FOR THE DATA STORAGE & ELECTRIC BILL FOR THE 100 MILLION PAGES OF REPOSITORY GUESS NOW KNOA SHOULD NOW PURDUE NO LONGER EXISTS BUT NOT WE THE PEOPLE.

The Plan also provides for a public document repository that will make more than 100 million pages of material available for public review. Plan Article 5.13.

SO THIS MONEY WOULD THAN GO TO PURDUE PHARMA PI VICIMS

page 11 at the bottom of the page of brief

'and exercising remedies granted to the MDT, as the secured party, with respect to collateral and the Sackler Parties' obligations, including in the event there are breaches of the underlying settlement documents during the 15-year term;'

HUH I DON'T EVEN GET THIS …..

'nterfacing with the Sacklers; enforcing the Plan (including the "Estate Releases") against Non- Participating Channeled Claims, and/or objecting to such claims; and administering the special operating reserve ("SOR"), a dedicated account established from Sackler

12

estate payments and replenished over time (capped at $800M over the life of the settlement) to fund qualifying Sackler litigation costs (e.g., legal defense, judgments and settlements).

I STRONGLY DISAGREE FOR ALL THE ABOVE REASONS.

ARGUMENT

I. THE PLAN WAS PROPERLY CONFIRMED BY THE
BANKRUPTCY COURT

THIS IS ILLEGAL THE SACKLES ARE NOT DEBTORS PER THE COURT.

ii. The Release of Claims Against the Sacklers Provides Unprecedented
Value to Creditors and is Vastly Superior to Litigation

EXCUSE ME MS WALKER HAS CONSISTENTLY MOTIONED FOR 50% OF ALL FEES REQUESTED BY ANY LAW FIRM LAWYER OR ANYONE INVOLVED IN THE WRITING OF THE REJECTED PLAN PER THE SUPREME COURT SO FROM 2019-JUNE 27, 2024 WHEN HARRINGTON WAS DECIDED OR ANNOUNCED FOR INCOMPETENT LEGAL THAT WASTED OVER FOUR YEARS PURDUE PI CLAIMANTS HAVE BEEN DELAYED IN GETTING COMPENSATED & THAT ISNOT MS WALKER NOR ANY PURDUE VICTIMS FAULT IT IS THE COURTS FAULT.

MS WALKER IS A QUALIFIED DISABLED PRO SE PAUPER WOMAN NOT HIGHLY COMPETENT COUNSEL MS WALKER HAS BEEN REQUESTING & HAS SEARCHED HIGH & LOW FOR…ALAS THERE IS NO PRO BONO OR ANY COUNSEL FOR DISABLED PAUPER WOMEN.

'with sophisticated and highly competent counsel'

Page 16 SURE BILLABLE HOURS FOR THE LAWYERS

'These negotiations took years and tens of thousands of hours to conclude.'

THIS IS VERY CONFUSING A VOTE FOR THE PLAN OR A SEPARATE OPT IN RELEASE WAS WRITTEN FOR THE GOVERNMENT…

Following an

17

'opt-in process by which States and territories were given the chance to evaluate the settlement and Plan, every single eligible State and territory elected to move forward with the global settlement. The voting results display a staggering level of support for the Plan and its related settlements.'

THIS IS ABSURD IT IS MS WALKERS ENTIRE ARGUMENT THAT I HAVE A PENDING LAW SUIT AGAINST THE SACKLERS OTHERS DO NOT WHO NEVER RESPONDED ONLY MARC TOBAC FROM DAVIS POLK SPECIFICALLY FOR THE DEBTORS PURDUE PHARMA PER MARC EMAIL BELOW.

'The Bankruptcy Court also held that "All of the settlements satisfy the first two Iridium factors," and that Bankruptcy Code Section 1123(b)(3)(A) was satisfied because, "absent the releases by the Debtors, the Sackler Parties would not contribute the billions in value to the Debtors and their creditors, and the estates would be forced to pursue the Sackler Parties in uncertain litigation that would likely take years before realizing any recovery." MBR at 39, 45-46. Again, nothing in the Appellants' filings provides reason to disturb this finding.'

NOTE THE DATE OF MARC EMAIL TO MS WALKER 10,22,2023 WELL BEFORE HARRINGTON WAS DECIDED 6.27.24 MOOTING THE ORIGINAL PLAN BAR DATE.

Sun, Oct 22, 2023,
2:12 PM

**Tobak, Marc J.**
**<marc.tobak@davispolk**
**.com>**

to me

Ms. Walker,

I represent only Purdue Pharma and its affiliated debtors in their bankruptcy cases.  I do not represent Purdue in any other case, and do not represent any of the Sacklers.

Best,

Marc

**Marc J. Tobak**

**Davis Polk & Wardwell** LLP

+1 212 450 3073 office
+1 646 831 5116 mobile

marc.tobak@davispolk.com

THIS IS SO PRESUMPTUOUS

'That is, absent the Plan, the UCC or another estate representative could bring claims for

(among other things) fraudulent transfer, breach of fiduciary duty, and unjust

enrichment. But each of those claims faced potentially substantial hurdles from

statutes of limitations, the need to demonstrate insolvency, and factual and legal

concerns about showing lack of reasonably equivalent value received in exchange

for the particular transfers alleged to be fraudulent and unjust. Id.; Original

Confirmation Op. at 89–95. In addition, any actual litigation of these claims to

judgment and collection would have taken years—further delaying compensation to

19

the many victims who have in some cases already waited more than a decade for

Compensation.'

HARRINGTON WASNOT DECIDED UNTIL 6.27.24 MS WALKER HAS DOCUMENTATION &
FILED AGAINST THE SACKLERS & PURDUE WHEN DAVIS POLK JOINED HER LAW SUIT
TO THE BANKRUPTCY THE SACKLER PART OF MY LAW SUIT HAS BEEN ON HOLD VIA
INJUNCTION STILL NOT LIFTED AS THE OPT IN NOT OPT IN CONSENT AND LOSS OF
MEANINGFUL RIGHTS HEARINGS NEVER HAPPENED BEFORE OR AFTER EFFECTIVE.

IT HAS BEEN THE COURT WHO IN FACT DELAYED JUSTICE & LAWYERS WITH INCOMPETENT LAWYERING REJECTED BY THE SUPREME COURT WHO WROTE THE SACKLERS DID 'MILKING PROGRAM' THE SACKLERS CAN NOT GET A BANKRUPTCY RELEASE TO AVOID FUTURE LITIGATION THAT VIOLATES MS WALKERS RIGHT TO PETITION FOR REDRESS BANKRUPTCY COURT HAS NO RIGHT NOR POWER TO DO.

Brief page 20

'The Appellants appear to argue that the processes by which funds will flow to creditors, including personal injury claimants, are objectionable. But the Plan' means of implementation are far more than "adequate."

IF SO 'FAR MORE THAN ADEQUATE' WHY WAS THERE SO MUCH DISCUSSION ABOUT MS WALKER & THE OPT IN NOT OPT IN DURING THE NOV 14, 2025 CONFIRMATION HEARING DAYS & A NEW FIXED DEADLINE AND CHANGED PLAN RIGHT…

WHAT THE SCOPE OF THAT HARM CAUSED BY PURDUE AND THE NOT DEBTOR SACKLERS WHAT…..SHOULD COME WITH THE ULTIMATE PUNISHMENT WOULD BE VICTIMS ANSWERS.

'The scope of that harm caused by Purdue and the Sacklers'

BRIEF page 21 WHAT A CROCK

'Plan Administrator Trust.'

PER THE PLAN ADMINISTRATOR STATUS REPORT DOC 9378 6.18.2026 BELOW

'Introduction

The Purdue Personal Injury Trust (the "Purdue PI Trust" or the "Trust") was established pursuant to the Eighteenth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors (the "Plan"). The Plan became effective on May 1, 2026 (the ("Effective Date'). The Purdue PI Trust was funded with the initial distribution on the same day and has since been fully funded. '

THE TRUST HAS BEEN FULLY FUNDED SO WHY UPON EFFECTIVE DID CASH NOT GET DISTRIBUTED & WILL NOT UNTIL AFTER A LETTER IN THE FOURTH QUARTER….NOT GOOD FAITH I ARGUE PLUS MS WALKER ASKED A VERY IMPORTANT QUESTION HOW MANY OF EACH TIER CLAIMS ARE THERE TO WHICH THE RESPONSE WAS HOWARD & EDGAR DID NOT KNOW.

MS WALKER HAS A VALID CLAIM MS WALKER ARGUES HAVING COMMUNICATED WITH EDGAR WHO HAD SENT OUT 'DEFICIENCY' LETTERS YET MS WALKER WAS ASSURED THEY HAD MY TIER 2 EVIDENCE MS WALKER ARGUES IS THE HIGHEST SINCE MY DOCTOR OFFICE CHECKED A BOX 'NO CHANGE IN MEDICATIONS' FOR YEARS AS WAS THE OPT IN OR NOT OPT IN A CHECKED BOX.

MS WALKER STRONGLY DISAGREES

II. THE APPEALS SHOULD BE DISMISSED AS EQUITABLY MOOT

THIS IS ENTIRELY THE PROBLEM WITH NOT THE BANKRUPTCY COURT NOT THIS DISTRICT COURT AND NOT THE 2ND CIRCUIT APPEAL COURT NOT ORDERING A STAY BACK IN NOVEMBER OF 2025.

'many distributions have already been made under the Plan and cannot be unwound. Moreover, 100% of Purdue's assets have been transferred to Knoa and Purdue has been criminally sentenced.'

UM NOT FOR THE SUPREME COURT 'MILKING PROGRAM' THE SACKLERS HAVE NOT BEEN CRIMINALLY PROSECUTED FOR….YET.

CRIMINAL SENTENCING TOO LIKE THE OPT IN WAS THE DOJ MAKING A PREMATURE SWEET DEAL THAT INCLUDED NO SACKLER FAMILY MEMBERS AT ALL WHEN REPEATEDLY EVEN IN THIS BRIEF FROM THE MDT THE CRIMES OF THE SACKLERS ARE MENTIONED WHO ARE NOT DEBTORS THEREFORE MAY NOT GET ANY RELIEF IN THE FORM OF A RELEASE SO THE NON DEBTOR SACKLER FAMILY AVOID FUTURE LITIGATION THIS PLAN ENSURED HAPPENS THIS ENTIRE BANKRUPTCY FROM THE START HAS BEEN A MESS ALL DUE TO THE LAW FIRMS, DEBTORS, COMMITTEES, GOVERNMENT & COURT NOT ANY OF US PRO SE'S ENSURING THAT WORDS ARE KEPT RULES OF LAWS MATTER & RIGHTS ARE ENFORCED.

Page 95 11.14.25

'3 No party is buying immunity in these proceedings 4 and no party is buying their own form of justice. Rather, 5 this is a settlement of civil litigation.'

THIS IS HOWEVER NOT A CIVIL LITIGATION LIKE MS WALKER LAW SUIT AGAINST THE SACKLERS 23CV33935 BUT THIS IS THE PURDUE PHARMA CHAPTER 11 BANKRUPTCY DAVIS POLK MADE CLEAR THEY COULD NOT SETTLE BOTH MY CIVIL SACKLER CLAIM & PURDUE PI CLAIM SO THIS ISNOT KOSHER AT ALL ON THE SAME BASIS.

'Purdue's stakeholders, which has repeatedly been delayed to this point.'

RIGHT PURDUE NOT THE NON DEBTOR SACKLERS AND REPEATEDLY DELAYED BY THE LAW FIRMS DEBTORS COMMITTEES AND COURT THAT TO BE CLEAR WHO WROTE THE REJECTED INCOMPETENT LEGAL NOT MS WALKER OR ANY OF THE PRO SE'S NOR DID MS WALKER NOT KEEP HER WORDS AS DAVIS POLK & THE COURT DID MAKING THEM falsus in uno, falsus in omnibus, , which means "false in one thing, false in everything."

MS WALKERS STAY & APPEAL MUST BE GRANTED TO ENSURE RESTORATION OF MEANINGFUL LOST RIGHTS.

Back to the court 11.14.2025…..



rosemary helen ziziros walker                    7.24.26                    2:55pm

THE COURT WEBSITE IS STILL NOT ACCESSIBLE WHICH ISNOT DUE EQUAL FAIR NOR CONSISTENT ACCESS TO DISABLED PRO SE PAUPER WOMEN.

