SDNY US DISTRICT COURT
300 QUARROPAS STREET
WHITE PLAINS, NEW YORK 10601-4150

RE: ROSEMARY HELEN ZIZIROS WALKER VS PURDUE PHARMA

DISTRICT COURT CASE #25CV9681

RESPONSE TO UCC BRIEF

ONE MS WALKER IS A QUALIFIED DISABLED PRO SE PAUPER WOMAN.

BEGGING TO BE READ & ACTION TAKEN THAT TO DATE HASNOT BEEN & TO BE SURE MS WALKERS RECORD READS CLEARLY IN MS WALKERS WORDS MY WORDS.

I CAN NOT RECITE LAWS BUT FOR HARRINGTON AND CONSTITUTIONAL & OTHER PROVIDED RIGHTS THAT HAVE BEEN NON EXISTENT FOR MS WALKER.  ALL I CAN DO IS USE THE WORDS ON RECORD THAT HAVE NOT BEEN KEPT TO AND LINE BY LINE RESPOND TO WHAT IS NOT FACTUAL & SHOW WHY.

I AM SO GLAD AKIN GUMP & ARIK BEGAN WITH WITH PURDUE PHARMA CONTINUE TO BE DELAYED MONETARY RECOVERIES TODAY 7.25.26 11:46 am AS I BEGIN TYPING THIS FROM THEIR BRIEF. WAIT I THOUGHT AKIN GUMP WAS THE CREDITOR COMMITTEE….ARIK PRIES HELD ZOOM PRIOR TO THE CONFIRMATION HEARING DAY PRO SE'S WERE 'ALLOWED' TO SPEAK WHILE NOT ONLY MS WALKER WAS INTERRUPTED ME FOR DARING TO READ AMENDMENT I….WRAP YOUR HEAD AROUND THAT.

BRIEF OF APPELLEE THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS OF PURDUE PHARMA L.P.

AKIN GUMP STRAUSS HAUER & FELD LLP

One Bryant Park

New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Counsel to the Official Committee of Unsecured
Creditors of Purdue Pharma L.P., et al.

SEE……page 100 11.13.25 OUTRAGEOUS IN THE UNITED STATES OF AMERICA TO BE SOMEHOW IN TROUBLE FOR READING THE LAW OF THIS LAND & YES EVEN MS

WALKERS RIGHTS PROVIDED IN THE BILL THAT MUST NOT BE A THEORY BUT RIGHTS MUST BE ENFORCED IN PRACTICE OR RIGHTS ARE MOOT.



FROM THE UCC BRIEF……

'Preliminary Statement

1. These appeals challenge a plan of reorganization (the "Plan")2 that provides finality and monetary recoveries for the Debtors' vast creditor body after more than six years of highly complex and uniquely difficult bankruptcy proceedings, including the reversal of the first confirmed plan. The Official Committee was an active participant throughout these proceedings, starting with its appointment by the Department of Justice in the second week of the chapter 11 cases as the sole statutory fiduciary for all unsecured creditors.'

'PROVIDES FINALITY' …NO FINALITY DOESNOT HAPPEN FOR 15 YEARS.

'PROVIDES FINALITY AND MONETARY RECOVERIES …' ALAS NOT FOR MS WALKER

'AFTER MORE THAN SIX YEARS OF HIGHLY COMPLEX AND UNIQUELY DIFFICULT BANKRUPTCY PROCEEDINGS, INCLUDING THE REVERSAL OF THE FIRST CONFIRMED PLAN' NOW WHY WAS THE PLAN REVERSED IS THE IMPORTANT QUESTION ASIDE FROM WHO IS RESPONSIBLE FOR WHY THE PLAN WAS REVERSED CAUSING THE DELAY FOR OVER SIX YEARS NOW & WHY SHOULD THOSE RESPONSIBLE FOR THE

FIRST WRONGFULLY CONFIRMED PLAN AS THIS PLAN WAS WRONGFULLY CONFIRMED BE PAID ALL FEES REQUESTED WHEN IT IS IN FACT DEBTORS UCC & THE MDT ALONG WITH THE AD HOC & ALL OTHERS INVOLVED IN THE WRITING & CONFIRMING OF THE PLANS IN ITSELF IS A CONFLICT AGAIN I THOUGHT AKIN WAS THE UCC NOT 'REPRESENTED' THE UCC SO WHO IS THE UCC THEN…..WHY DID ARIK HAVE ZOOMS WHY WAS ARIK HELPING NEGOTIATE MY CLAIM BEING TIMELY WITH EDGAR MARC KIP PURDUE PI TRUST THE DAYS BEFORE THE AFTER EFFECTIVE LATE CLAIM HEARING THEY ALL PROMISED WOULD HAPPEN PRIOR TO EMERGENCE NOT A WORD IN THE FRBP EXPLAINED TO MS WALKER WAS SAME AS EFFECTIVE.

'The Official Committee was an active participant throughout these proceedings, starting with its appointment by the Department of Justice in the second week of the chapter 11 cases as the sole statutory fiduciary for all unsecured creditors.'

THIS IS AN ADMISSION OF INCOMPETENT LAWYERING AND DENYING AMERICANS RIGHTS THE FIRST AND NOW ALAS AGAIN VIOLATING CONSENT AND HARRINGTON.

'serving as a representative for the creditor groups collectively where their interests were aligned,'

YET NOW ALAS THE UCC ARIK & AKIN ARE THE OPPOSITE OF BEING 'A REPRESENTATIVE FOR THE CREDITOR GROUPS'.

'helping to mediate among these groups where their interests diverged,'

HOW EXACTLY DID THE UCC HELP THE PRO SE LATE CLAIMS TO BE HEARD PER THE DEBTORS AND COURT PRIOR TO EMERGENCE OR EFFECTIVE EXACTLY…..TO ENSURE AS MANY CLAIMS WERE ACCEPTED AS POSSIBLE……I'D LIKE AN ANSWER TO & HOW COULD THE INTERESTS OF CREDITORS DIVERGE WITH WHO IS SUPPOSED TO REPRESENT UNSECURED CREDITORS.

2. The Official Committee leaves in large part to the Debtors themselves the task of explaining why confirmation of the Plan was appropriate under applicable law.

THIS IS AN OXYMORON THE UCC LEAVES THEIR ARGUMENTS TO DEBTORS WHO THE UCC IS IN OPPOSITION TO IF REPRESENTING VICTIMS OF THE DEBTORS.

'from the perspective of litigation claimants and other creditors as a whole, and in light of the failure of the first plan put forward in these cases,'

EXCUSE ME MS WALKER IS A LITIGATION CLAIMANT & AGAIN IT WAS AKIN GUMP DAVIS POLK THE AD HOC ET AL WHO PUT FORWARD THE FAILED FIRST PLAN NOT ANY PRO SE NOT ANY PURDUE PHARMA PI CLAIMANT.

AS WITH THE FAILED UNCONSTITUTIONAL FIRST PLAN WRITTEN BY THE DEBTORS UCC AND AD HOC ET AL COMMITTEES, THIS PLAN CHANGED BY MS WALKER MID CONFIRMATION BECAUSE CONSENT WAS IN FACT NEVER CONSENT & WHY THE PLAN NEVER EVER SHOULD HAVE BEEN CONFIRMED AND A STAY WHEN MS WALKER REQUESTED THE STAY NOT APPEAL ON RECORD WHILE YES MS WALKER APPEALED THE STAY SHOULD HAVE BEEN ISSUED BY IF NOT THE BANKRUPTCY BY THIS DISTRICT COURT WHO ALSO HAS FAILED MS WALKER A QUALIFIED DISABLED PRO SE PAUPER WOMAN WHO MUST HAVE THE SAME EQUAL RIGHTS & PROTECTIONS AS INCARCERATED PEOPLE WITH LIMITED RESOURCES.

MR PRIES 11.13.25 page 46-47

'We did accept a number of them right around 2020 and Page 46 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 into 2021. And then we stopped and we said, okay, we're 2 going to put all of these off until the end of the case 3 post-confirmation and then we'll start going through the 4 late claims.'

AGAIN THE ORIGINAL BAR DATE IN THE REVERSED PLAN WAS ALSO REVERSED AS MOOT & AGAIN THE RIGHTS OF AMERICANS WHO CONTINUE TO BE HARMED & DIE FROM PURDUE PHARMA AS THIS HAS GONE THROUGH YEARS OF LEGAL INCOMPETENCE MUST NOT BE INFRINGED TO PETITION FOR REDRESS WHICH IS TOTALLY UN AMERICAN.



THE COURT: I've got to enter an order.

MS. WALKER: Okay.

THE COURT: You are obviously free to appeal. That's perfectly fine. But that's not an issue to discuss on the record today. You're free to take whatever steps --

MS. WALKER: Well, the stay -- a stay is, so that everything is held right where it is when I applied for the appeal and the stay.

Veritext Legal Solutions
212-267-6868          www.veritext.com          516-608-2400

Page 11

THE COURT: Okay. Well again, I haven't made a ruling yet. So again, I can't give you legal advice, so

MS WALKER VERY SPECIFICALLY STATED THE STAY IS WHAT MS WALKER WAS MOTIONING RIGHT THEN….I UNDERSTOOD NOT APPEALING THE ORDER UNTIL AFTER CONFIRMATION I DID AGAIN. MS WALKER NEEDED A STAY…..AGAIN ESPECIALLY AFTER HEARING WHAT I HEARD 11.12, 13, & 14 2025 DURING THE CONFIRMATION DAY HEARINGS I HAD NEVER HEARD BEFORE ABOUT OPT IN OR NOT OPT IN & WHEN A CLAIM MET BEING A CLAIM MS WALKER DOES & EDGAR HAD REVIEWED MY CLAIM & EVIDENCE & I WAS ISSUED WRONGFULLY TIER 2 AGAIN SINCE MY DOCTOR OFFICE CHECKED THE BOX 'NO CHANGE IN MEDICATIONS'. IT IS A MIRACLE THESE DOCUMENTS ALL WERE NOT DESTROYED DURING THE ICE STORM & TREE THROUGH MY ROOF.

11.13.25 MR PREIS

'the main requirement here is 12 showing a proof of a Purdue prescription. That is kind of 13 the baseline to get into the TDP.'

HERE IS MS WALKERS PROOF….

CO_ _RVATIVE CARE SPECIALISTS MEDICAL GRC_ INC.
6815 Noble Ave., Suite 105, Van Nuys, CA 9140_

## PROGRESS REPORT

Date: 4/4/07

☐ B/P: 129/77    ☐ Pulse: 90    ☐ Temp: _____    ☐ Wt: _____

Chief Complaint: follow up & Rx fills

Medications, Supplements, etc. (INCLUDE MEDS FROM OTHER PRACTITIONERS)
Change/new medication since last visit:    ☐ YES (see pt. med. log)    ☑ NO    ☐ N/A
List effects/side effects

_____  _____  _____
_____  _____  _____
_____  _____  _____

_Grace Duran_
MA Signature

Interval history since last visit:    ☐ Visit to other practitioner    ☐ Procedure performed    ☐ N/A

_Pain has increased since last visit_
_Tab Oxycontin 20mg Q.d, not T.d_

**Interval VASPI Pain Scale**

1    2    3    4    5    6    7    (8)    9    10

PE:
| | | |
|---|---|---|
| Psychological Assessment: | ☑ No Change | ☐ Change: _____ |
| HEENT: | ☐ No Change | ☐ Change: _____ |
| Upper Back, Neck & Shoulders | ☐ No Change | ☐ Change: _____ |
| Lower Back & Buttocks: | ☐ No Change | ☐ Change: _____ |
| Upper Extremities: | ☐ No Change | ☐ Change: _____ |
| Lower Extremities: | ☐ No Change | ☐ Change: _____ |
| Other: | ☑ No Change | ☐ Change: _____ |

Assessment, Procedures & Plan: _Increase Oxycontin_
_Add Gabatin 300mg p.o. gd_

Patient Name:

_Walker, Rosemary_

_Physician/PA Signature_    PA-C



MY CLAIM STILL SHOWS ON KROLL AS MY CLAIM WAS TRANSMITTED 30 DAYS PRIOR TO EFFECTIVE PER THE PLAN.

3:08

PRIME CLERK IS NOW KROLL RE
ADMINISTRATION. ALL PRIME CLER
ADDRESSES ARE AUTOMATICAL



« ‹ Page 1

## Schedule

**Claim #**  634787

**Filed Date**  08/04/2025

**Creditor Name**  Name and addres

**Debtor Name**  Purdue Pharma L.

**Claim Value**  $100,000,000.00



NO ONE KEPT THEIR WORDS ON RECORD TO MS WALKER A LITIGATION CLAIMANT.

AGAIN LAWYERS SAY EVEN JUDGE LANE SAID 'I CAN'T GIVE LEGAL ADVISE' YET BOTH DEBTORS & CREDITORS COMMITTEE DID IN FACT RECOMMEND SO GAVE LEGAL ADVICE THAT WE OPT IN BY CHECKING THE BOX. THIS IS COERCION….SEE.

**Elect to Grant or Not Grant the Third-Party Releases:** You may, through your ballot or your participation in the applicable direct claims shareholder settlement (as described in the Disclosure Statement and the Plan), elect to grant or not to grant releases of any actual or potential claims that you have against Sackler family members, and certain other individuals and related entities, relating to Purdue Pharma L.P. and its affiliated debtors (i.e., the third-party releases). Electing to grant or to not grant the third-party releases is completely voluntary, but you may receive less compensation if you do not elect to grant such third-party releases. The Debtors and the Creditors' Committee recommend that you elect to grant the third-party releases.

NOTE 'THROUGH YOUR BALLOT…' 'SHAREHOLDER AGREEMENT…' THE SACKLERS STILL HAD NOT SIGNED THE DOCUMENTS PER THE AGREEMENT AND I AM NOT SURE THEY ARE SIGNED TODAY SINCE THE UCC ARIK, HAVE GONE RADIO SILENT.

WHERE DOES THE ABOVE PUBLISHED TO THE PURDUE PI SITE DOCUMENT READ THAT IF YOU DO NOT OPT IN YOU HAVE NO CLAIM AND HAVE TO WAIT 18 MONTHS DURING WHICH ANY ONE CAN OBJECT PROVIDING NO FINALITY AT ALL THE UCC STATED THE PLAN PROMISES ….AGAIN MS WALKER HAS A PENDING LAW SUIT IN OREGON 23CV33935 DAVIS POLK TYPED THE WRONG CASE NUMBER AND **CAPTION. WHY THE OPT IN NOT OPT IN BECAME SUPER IMPORTANT. ARIK CONVINCED ME I WOULD NEVER COLLECT FROM THE SACKLERS YET THEN ON RECORD EVERY ONE STATED THEY WERE NOT AFRAID TO SUE THE SACKLERS AND WOULD WIN SO WHY DIDN'T THEY……I DIGRESS WHAT DO PURDUE PHARMA PI CLAIMANTS HAVE TO RELEASE THE NON DEBTORS SACKLERS FOR……WHEN MS WALKER HAS A PENDING LAW SUIT EVEN WHILE OFF INJUNCTION ISNOT SINCE THE DEBTORS AND COURT DID NOT KEEP THEIR WORDS TO MS WALKER & HEAR MY LATE CLAIM UNTIL AFTER EFFECTIVE….AGAIN SO NOW WHAT WHEN MY CLAIM WASNOT DISALLOWED UNTIL AFTER EFFECTIVE AND PRIOR TO MY OPT IN NOT OPT IN CONSENT ISSUE BEING RESOLVED TOTALLY DENYING DELAYING MS WALKERS MEANINGFUL RIGHTS.

Restraining Order [ECF No. 9231]; (17) Motion to Allow [ECF No. 9240]; (18) Motion for Immediate Hold [ECF No. 9241]; (19) Motion to Approve [ECF No. 9255]; (20) Motion for Immediate TRO Stay [ECF No. 9256]; (21) Motion ~~~ ons [ECF No. 9268]; (22) Motion to Approve [ECF No. 9269]; (23) ~~~ tion ~~~ pp ~~~ Immediate TRO [ECF No. 9273]; (24) Response to Doc 9359 & Motion for Sanctions [ECF No. 9368]; (25) Objection to Doc 9357 & Motion for Sanctions [ECF No. 9370]; (26) Response & Objection [ECF No. 9381]; (27) Response to Doc 9378 & Motions [ECF No. 9383]; (28) Amended Response to Doc 9378 & Motions [ECF No. 9384]; (29) Emergency Motion [ECF No. 9385]; (30) New Motions & Sanctions Request [ECF No. 9386]; (31) Ms. ~~~ Amanda Morales Motion [ECF No. 9394]; (32) Motions & Objections to Fees Requested [ECF No. ~~~ s & Stay Request [ECF No. 9396]; (34) Objection to Motion for Admission Pro Hac Vice [ECF ~~~ tion American Laws & Rights Must Matter [ECF No. 9403]; (36) Motion to Explain & ~~~ ECF No. 9415]; (37) Counter to Doc 9197 [ECF No. 9425]; (38) Motion pursuant to 9006(b)(1) [ECF No. 9426].

19-23649-shl    Doc 9439    Filed 07/10/26    Entered 07/10/26 12:55:43    Main Document
Pg 2 of 8

Ms. Walker's pleadings seek a wide variety of requested relief. These requests include: inquiries related to the claim that she filed against the Debtors in these cases; requests regarding her decision on whether or not to opt into the Sackler settlement that is part of these cases; requests to stay actions authorized by the confirmed plan of reorganization in these cases; requests seeking modifications of the confirmed plan of reorganization; and requests for relief unrelated to the Bankruptcy Code.

It is important to consider these requests in context. The Court has recently determined that Ms. Walker is not a claimant in these bankruptcy cases. *In re Purdue Pharma L.P.*, 2026 WL 1905691 (Bankr. S.D.N.Y. July 1, 2026). As explained in that decision, the Court has concluded that Ms. Walker's late filed claim is not permitted because it was filed years after the Bar Date and she does not satisfy the standard for excusable neglect. *Id.* Given that ruling, any further questions about the validity of her claim are moot. Moreover, any request by Ms. Walker to revoke her opt-in election to participate in the related Sackler settlement is similarly moot, because Ms. Walker does not have the right to participate in the Sackler settlement if she is not a claimant in these bankruptcy cases.[3] *See Purdue Pharma*, 675 B.R. at 666 (explaining that the third-party releases only apply to holders of claims who affirmatively consent to the releases). Well before the Court's recent ruling on the timeliness of her claim, the Court had previously addressed numerous requests for relief filed by Ms. Walker. *See e.g.*, Walker Confirmation Objections [ECF Nos. 7771, 7825, 7835, 7855]; *In re Purdue Pharma L.P.*, 675 B.R. at 673-74 (addressing Ms. Walker's confirmation objections); Order Denying Motions for Stays Pending Appeal [ECF No. 8727] (addressing Ms. Walker's motion for a stay pending appeal); Order

---

[3]    As explained in the Court's decision on her late filed claim motion, Ms. Walker retains any rights that she has to sue the Sacklers, who are not debtors in these bankruptcy cases. *In re Purdue Pharma L.P.*, 2026 WL 1905691 (Bankr. S.D.N.Y. July 1, 2026) n.6 (noting that only claimants can participate in the Sackler settlement).

2

restructuring.ra.kroll.com

THERE IS NO CONSENT WHEN IF I CONSENT TO A PURDUE PHARMA SETTLEMENT I LOSE MY RIGHTS IN MY OREGON CIVIL CASE AGAINST THE NON DEBTORS SACKLERS JUDGE LANE MADE CLEAR …MS WALKER HAS THE RIGHT HE CAN NOT DENY OR AUTHORIZE MY AMENDMENT I RIGHT TO PETITION FOR REDRESS WHICH IN FACT WHAT THAT & THIS COURT HAS DONE.

BY ALLOWING LATE CLAIMS THAT NEVER VOTED OR OPTED IN OR NOT OPTED IN THERE IS ALSO NO CONSENT WHY THIS PLAN ALSO NEVER SHOULD HAVE BEEN CONFIRMED ….AS JUDGE LANE STATED …MS WALKER IS THE 'HANGING CHAD' THE COURT DEBTORS UCC AD HOC CONCOCTED THE NEW MARCH 1, 2026 FIXED DEADLINE TO CHANGE OUR OPT IN FOR THIS EXACT REASON THEN THAT DATE TOO LIKE THE MOOT ORIGINAL BAR DATE IN THE 'REVERSED' FIRST PLAN WHEN AMERICANS CONTINUED TO BE INJURED & DIE FROM PURDUE PHARMA BRAND DRUGS AS THIS CONTINUES TO BE LITIGATED NOW JUST UNDER A PUBLIC BENEFITS THAT IN NO WAY BENEFITS THE PUBLIC AS THERE IS NO LIMIT TO OXYCONTIN ONLY BEING PRESCRIBED IN A HOSPITAL OR HOSPICE OR PACKAGING THAT PEOPLE CAN NOT ACCESS THE OPIOID BEFORE THE APPROPRIATE TIME….THE ONLY DIFFERENCE IS NOW KNOA CAN KEEP VICTIMS ALIVE BY BRINGING THEM BACK TO LIFE AFTER THEY OVERDOSE SO VICTIMS CAN RE USE AND USE THE BRING BACK TO LIFE MEDICINE OVER AND OVER….THIS IS ANTI TRUST NO PUBLIC BENEFIT.



'the Debtors' ultimate emergence as a public benefit company.'

AGAIN NO THIS IS NO PUBLIC BENEFIT AT ALL & AGAIN WHO IS PAYING FOR FUTURE LIABILITY WHEN PURDUE IS WORTH HOW MUCH……

LOOK SAME DRUG….NEW CORPORATE NAME CHANGE & WHY IF A PUBLIC BENEFIT ARE NOT ALL PURDUE PHARMA VICTIMS NOW 'SHAREHOLDERS' TO COLLECT 'MONETARY RECOVERIES' PER THE FIRST LINE OF THIS PRELIMINARY STATEMENT.



THE DEBTORS COURT UCC HAVE FAILED TO RESPOND TO WHERE IS WHO IS THE PATIENT CARE OMBUDSMAN PER THE FRBP RULE 2015.1 ALAS NO RESPONSE FROM ANYONE SINCE MS WALKER IS A QUALIFIED DISABLED PRO SE PAUPER **PATIENT VICTIM.

11:47

IV                                    CONTE

ART II. OFFICERS AND ADMINISTRATIO
EXAMINATIONS; ELECTIONS AND APPO
COMPENSATION—Continued
   Rule 2007.2. Appointing a Patient-Care Oi
        Business Case ...........................
   Rule 2008. Notice to the Person Selected ;
   Rule 2009. Trustees for Jointly Administe
   Rule 2010. Blanket Bond; Proceedings on
   Rule 2011. Evidence That a Debtor Is a De
        Trustee Has Qualified ................
   Rule 2012. Substituting a Trustee in a Ch;
        Trustee in a Pending Proceeding
   Rule 2013. Keeping a Public Record of Coi
        to Examiners, Trustees, and Prof
   Rule 2014. Employing Professionals ........
   Rule 2015. Duty to Keep Records, Make R
   Rule 2015.1. Patient-Care Ombudsman ....
   Rule 2015.2. Transferring a Patient in a H
   Rule 2015.3. Reporting Financial Informa
        Chapter 11 Estate Holds a Substa
   Rule 2016. Compensation for Services Rei
   Rule 2017. Examining Transactions Betwe
        Attorney ....................................
   Rule 2018. Intervention by an Interested I
   Rule 2019. Disclosures by Groups, Commi
        Chapter 9 or 11 Case ...................
   Rule 2020. Reviewing an Act by a United ;
ART III. CLAIMS; PLANS; DISTRIBUTION
SECURITY HOLDERS
   Rule 3001. Proof of Claim ........................



        Debtor's Principal Residence .....
   Rule 3003. Chapter 9 or 11—Filing a Proof

AGAIN THERE IS NO SUCH WORD AS EMERGENCE IN THE FRBP THAT HAS CONFUSED MS WALKER NOT A LAWYER YET EVEN THOUGH I STATED HOW CONFUSING IT WAS TO USE TERMS OUTSIDE OF THE FOUR CORNERS AS JUDGE JUDY TAUGHT US ALL IS MOOT YET THE COURT DEBTORS UCC ET AL ALL CONTINUED THEIR BAD LEGAL BEHAVIORS WHICH IS HOW ALL OF ENDED UP HERE…NO ONE CALLED BULL ON REAL LAWYERS AND JUDGES WHO MODIFIED AMENDED CHANGED THE RULES AND PROCEDURES & GOT AWAY WITH VIOLATING LAWS UNTIL THEY DID NOT GET AWAY WITH IT ANY LONGER AND WILL NOT DENY CONSENT & VIOLATE HARRINGTON THIS TIME EITHER AS THE RECORDS READ FOR THEMSELVES.

11.13.25 page 101-102 ALAS THE COURT AND LAWYERS ALL CONTINUE TO USE TERMS NOT OFFICIALLY PART OF BANKRUPTCY RULES OR PROCEDURES TO CONFUSE MS WALKER.

'17 Then I could not find the word emergent, like, 18 anywhere in the bankruptcy code. What is emergent versus 19 discharge versus if -- you know, again, if money is going to 20 be going out over 15 years -- 21 THE COURT: Well, maybe I can help on that. And 22 I'll make a comment and maybe somebody on the Debtors can 23 help. I think what you've heard most often is the effective 24 date. And that's when certain things are contemplated to 25 happen under the plan happens so that you take the steps Page 101 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 that are contemplated by the plan. And so that's what's 2 generally used, the effective date. It has a very technical'

11.14.25

19 And then we've been using the term emergence. And 20 so the understanding is that to the extent that there are 21 any issues when talking about allowed claims -- and I think 22 what we're really talking about is conditionally allowed, 23 going to the trust, that is it the effective date or the 24 emergence date that is the date where that if somebody's 25 opt-in is final and your claim would be disallowed such that Page 97 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 you would be -- that your release would follow your claim. 2 MR. VONNEGUT: Yes. Sorry, Your Honor. The 3 effective date and the emergence date are functionally the 4 same date. 5 THE COURT: Functionally the same. 6 MR. VONNEGUT: Yeah. That's how we use those 7 terms. 8 THE COURT: All right. I just wanted to make 9 sure. Because again, Ms. Walker did correctly say it's a 10 colloquial term. 11 MR. VONNEGUT: Yes. 12 THE COURT: And I've heard it used on occasion to 13 mean it's the discharge, it's everything is done, money is 14 out. And this is an enormous case, so I just wanted to be 15 very clear on that.

11.14.25 EXACTLY RIGHT KUDOS TO MS WALKER

'the 25 issue of I have a late claim, I submitted a ballot in which Page 98 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 I indicated that I wanted to participate in the settlement 2 and therefore released the Sacklers, my claim is thereafter 3 barred as late, your ballot is voided. And so you do not 4 run that Catch-22 trap of I may well have a phenomenal 5 claim, I was just late, but now I can't sue anybody. So 6 again, with ==kudos to Ms. Walker, that was a very, very 7 reasonable question.=='

'19 And then we've been using the term emergence. And 20 so the understanding is that to the'

THIS IS FROM 11.12.25 page 41

'concerns raised by parties, 11 mistakes that were found, typos and the like, it's actually 12 our job to continue to bring the plan ever closer to 13 perfection and to resolve all the issues that we can and 14 that is essentially what we did.'

Page 42-43

Her second factual claim is that there are, "Enlarged indemnity and release provisions shielding the Page 42 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 Sackler family and other non-debtors." I don't understand the origin of this statement. I do not believe it to be accurate.

AGAIN JUDGE LANE CLEARLY STATES THE SACKLERS ARE NOT DEBTORS IN THE BANKRUPTCY THEREFORE CAN NOT GET ANY RELIEF IN THE FORM OF A RELEASE TO AVOID FUTURE LITIGATION THE COURT HAS STATED NO ONE IS GIVING UP ANY MEANINGFUL RIGHT AND WHY MS WALKER MOTIONED THE BANKRUPTCY COURT ORDER THAT ALL DISALLOWED PURDUE PHARMA CLAIMANTS HAVE STANDING IN EVERY COURT THROUGHOUT THIS STANDING SINCE IT IS THE FAULT OF THE COURT UCC DEBTORS ET AL COMMITTEES WHY THIS HAS TAKEN SO LONG THE STATUTE OF LIMITATIONS WOULD BE UP LUCKILY MS WALKER IS COVERED BY THE JUDGES WORDS IN DOC 9439 THAT SUMS UP THE PROBLEMS WITH THE PLAN AND CONSENT.

FROM DOC 9349 WRITTEN BY THE COURT SO JUDGE LANE…….

(:'EXPLAINING THAT THE THIRD PARTY RELEASES ONLY APPLY TO HOLDERS OF CLAIMS WHO AFFIRMITIVELY CONSENT TO THE RELEASES)

EXACTLY SO IF WE DID NOT OPT IN OUR CLAIM IS MOOT WHICH IS CONSENT WITH A PROVERBIAL GUN TO OUR HEADS TAKE THE NON DEBTOR SACKLER CASH BRIBE MS WALKER OR LOSE YOUR RIGHTS IN YOUR PENDING OREGON LAW SUIT AGAINST THE SACKLERS.  THAT IS NOT CONSENT NOT FAIR AND FORCED US TO PREMATURELY DECIDED YES TO GIVE UP A RIGHT PRIOR TO UNDERSTANDING THE RAMIFICATIONS…NOT ONLY MS WALKER HAD THIS CONCERN.

The MDT is to be managed by three trustees that are chosen by the settling states, who will be overseen by a seven-member advisory council selected by the settling states,'

SO THE GOVERNMENT WHO IS SUPPOSED TO REPRESENT MS WALKER IS IN FACT ONLY ACTING IN THEIR BEST INTEREST TO GET THEIR HANDS ON $7.4 BILLION USD NOT ABOUT THE ACTUAL PURDUE PHARMA PI PATIENT VICTIMS WHO HAVE HAD TO PROVIDE A DOCTOR PAPER WE WERE PRESCRIBED PURDUE PHARMA BRAND OPIOIDS OTHERS DID NOT HAVE TO PROVIDE AS ASK LLP CLIENTS ARE POSTING ON FACEBOOK IN THE PURDUE PHARMA CLAIMANTS GROUP THEY ACCESSED PHARMACY RECORDS SO DEA PRESCRIPTION PAD PRESCRIPTIONS WHICH IS HOW EVERY PURDUE PHARMA PATIENT VICTIMS SHOULD HAVE BEEN NOTIFIED DIRECTLY.

'We've also preserved critically the settlement with the Department of Justice that was approved back in 2020, and that settlement will be implemented in connection Page 51 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 with emergence.'

EMERGENCE IS NOT A WORD & ANY SETTLEMENT IN 2020 WAS PREMATURE AND BEFORE HARRINGTON I ALSO ARGUE IS MOOT.

AGAIN THE SACKLERS ARE NOT DEBTORS THEREFORE CAN NOT GET A SETTLEMENT IN THE PURDUE PHARMA CHAPTER 11 THE SACKLERS ARE NOT A PARTY TO PER THE COURT.

apart from the Sackler settlement 5 that were, in many respects, more difficult than the Sackler 6 settlement that were built into our plan in 2021 and remain 7 central to it now.

SO page 58-59 11.12.25 transcripts….

'which is what you're eligible to receive even 5 if you do not give a third-party release; the second 6 component is your share of what we call the shareholder 7 direct settlement portion. It kind of is what it sounds 8 like; that is the portion of each creditor's distribution 9 that's available only if they grant the non-debtor releases. 10 Creditors that agree to give non-debtor releases, 11 which we define in the plan as settling creditors, they're 12 simple. Their claims are allowed, they're deemed allowed at 13 emergence,'

'Creditors that do want to 2 give non-debtor releases in exchange for enhanced larger 3 distributions under the plan can do so, and creditors that 4 prefer to preserve and potentially pursue any direct claims 5 they might have against non-debtors can do so as well. Each 6 creditor is entirely free to choose their own path and their 7 election on whether to give the releases or not is not 8 tethered to their vote on the plan in any way.'

RIGHT THERE WAS A VOTE FOR THE PLAN AND AN OPT IN OR NOT OPT IN BOX TO CHECK TWO ENTIRELY DIFFERENT THINGS.

Page 57 11.12.25

'For those two 10 classes, each of those creditors received ballots with an 11 opt-in box to check if they wanted to give the non-debtor 12 releases and only creditors that did check that box and 13 returned their ballot to Kroll are treated as releasing 14 parties under the plan.'

 HOW WAS THIS GOOD FAITH WHEN SO MUCH MONETARY RECOVERY WAS LEFT ON THE TABLE FROM THE VERY START AGAIN WHY 50% OF ALL REQUESTED FEES SHOULD BE REVOKED FOR LEGAL INCOMPETENCE AS THE PLAN WAS RIGHT 'REVERSED' PER THE UCC BRIEF.

3 Okay. Second, some very, very happy news. More 4 money is available to creditors under the settlement this 5 time than was last time. When we originally filed our first 6 plan, the Sacklers were required to pay approximately $4.325 7 billion over a span of five years. In 2022, that was 8 negotiated and revised to a range of $5.5 to $6 billion, 9 depending on IAC sale proceeds. And I should pause, Your 10 Honor. IAC stands for independent affiliated companies; 11 that's a term that we use for the Sacklers other businesses 12 that are not Purdue Pharma. 13 Under

the current plan, the Sacklers will pay up 14 to a total of $7 billion over 15 years; $500 million of 15 that, as was the case in 2022'





THE JUDGE IS WRONG HERE….

'15 THE COURT: I totally agree, but I think it is 16 important for people to know that if you -- again, it sounds 17 like it's going to be an unlikely circumstance, and 18 hopefully it doesn't occur at all. But if somebody says I 19 checked and I wanted to get the Sackler money and I don't 20 get the Sackler money, the idea is then you would not have 21 been able to satisfy an exceedingly low bar to just show 22 that you took these drugs. Right? And that's why I think 23 it's reasonable and appropriate.'

THIS IS EXACTLY WHAT HAPPENED…MS WALKER DID IN FACT CHECK THE BOX IN SEPTEMBER OF 2025 ONLY TO NOT BE HEARD ON MY LATE CLAIM ISSUE AND AFTER HEARING THE FIRST FEW DAYS AND THAT IF WE DID NOT OPT IN WE HAD NO ALLOWED CLAIM AND HAD TO WAIT 18 MONTHS AND SOMEONE I AM NOT SURE WHO WHEN PURDUE NO LONGER EXISTS WHO IN 18 MONTHS WOULD BE OBJECTING TO A CLAIM…… & HOW IS THIS CONSISTENT TREATMENT OF VALID CLAIMS WITH THE VERY 'LOW BAR' EVIDENCE MS WALKER PROVIDED….NOW THE ENTIRE NEW DEADLINE WAS MADE BECAUSE THE OPT IN NOT OPT IN BOX CHECK WAS PREMATURE AND NOT FAIR ESPECIALLY TO MS WALKER WHO HAD NOT HAD HER LATE CLAIM HEARD PRIOR TO

WELL TOO LATE AND AFTER THE COURT & DEBTORS ET AL DID NOT KEEP THEIR
CONFIRMATION RECORDS WORDS TO MS WALKER SPECIFICALLY COURT.





BACK TO THE BRIEF…..

'which has already gone effective'

RIGHT ON A FRIDAY NIGHT AFTER HOURS THE PLAN WENT EFFECTIVE WITH NO NOTICE AS DISCUSSED DURING CONFIRMATION…..& PRIOR TO THE COURT DEBTORS UCC ET AL KEEPING THEIR WORDS LATE CLAIMS & THE OPT IN OPT OUT ISSUE WOULD BE RESOLVED PRIOR TO EFFECTIVE….ALAS WORDS NOT KEPT.

AGAIN I DID SUE THE SACKLERS AND DO HAVE EVIDENCE & NO WILL NOT GIVE UP MY APPEAL RIGHTS OR RIGHT TO PURSUE MY PETITION AGAINST THE SACKLERS IN EXCHANGE FOR A FEW EXTRA BRIBE BUCKS FROM NON DEBTOR SACKLERS AGAIN I AM POSSIBLY THE ONLY PURDUE PHARMA PI CLAIMANT WITH SOMETHING TO RELEASE THE SACKLERS FOR WHO BY THE WAY HAVE ONLY EVER RESPONDED TO MS WALKER WISHING TO SETTLE ONCE BY MISTAKE…SOMEONE EMAILED ME BY ERROR….

11.14.26 page 102 THE COURT

So I just think that's worth repeating because no one is going to sit there and say, well, let's look at your quantum of proof. Well, what are your dates and what did your doctor say and what exactly what was your dosage? That's -- we're not doing that kind of granular if you were to sue Sacklers in state or federal court, call your first witness, this is what you need to prove.

I ARGUE THE AD HOC DID NOT REPRESENT ANY PURDUE PHARMA VICTIMS AND AGAIN CRIMINALS WHO LOOT THE CORPORATION MAY NOT SEEK OR GET A RELEASE TO AVOID FUTURE LITIGATION FOR CASH IN A CHAPTER 11 BANKRUPTCY THE SACKLERS ARE NOT A PARTY OR DEBTOR IN.

'10 Yes, the Sacklers looted the corporation. But 11 fraudulently conveying suits are damn hard to win, 12 especially old ones'

BRIEF page 3 (6) HERE AGAIN IS STATED THE DIFFERENCE BETWEEN DEBTORS AND NON DEBTOR SACKLERS WHO CAN NOT BUY A RELEASE FROM PURDUE PHARMA PI CLAIMANTS WHO HAVE NO LAW SUIT TO RELEASE THE SACKLERS FOR AND NO THE SACKLERS MAY NOT GET A RELEASE TO AVOID FUTURE LITIGATION FROM DISALLOWED CLAIMS IN PURDUE PHARMA THE COURT DEBTORS UCC AD HOC ET AL ALL STATED ON RECORD NO ONE WAS GIVING UP ANY RIGHTS….MEANINFUL OR OTHER WISE WHICH ISNOT FACTUAL.

'Over the years prior to bankruptcy, the Sacklers had withdrawn substantial amounts of cash from the Debtors, giving rise to enormous potential fraudulent transfer claims against all who received those funds, as well as claims for breach of fiduciary duty and other claims against those Sacklers and others who had served on the Debtors' boards or as officers.5'

A NOT HER QUESTION HOW ON EARTH CAN RICHARD SACKLER WHO THE RECORD READS THE DEBTORS IN FACT STATE FINANCIAL CRIMES THE SACKLERS DID AS DOES THE SUPREME COURT HARRINGTON DECISION AS 'MILKING PROGRAM' ABLE TO BE A FIDUCIARY IN THE CONNECTICUT PROBATE COURT A CLEAR CONFLICT FOR MS WALKER DAVIS POLK LISTS ON THEIR PAPER IS SUING BOTH LIVING AND ESTATES OF SACKLERS AND THOSE ESTATES BELONG TO THE BANKRUPTCY TRUSTS NOT THE SACKLER FAMILY SINCE THE CASES WERE MERGED JOINED CHANNELED WHATEVER.

THIS IS OUTRAGEOUS & WRONG NOT RIGHT ON EVERY LEVEL.

7. Ultimately, following extensive negotiations and rounds of mediation, the Official Committee and other parties in interest negotiated a settlement structure premised on then-permitted non-consensual third-party releases: i.e., a plan that would settle, by supermajority7 Vote, both the Debtors' Estate Claims against the Sacklers and any "direct" claims against the Sacklers held by creditors, insofar as such claims were tied to Purdue and its conduct.8

KEY WORDS 'THEN PERMITTED' I ARGUE NO WERE NEVER PERMITTED JUST ALLOWED BECAUSE NO ONE IN AUTHORITY STOPPED THE BAD FAITH PRACTICE OF VIOLATING RIGHTS THAT EVERY BANKRUPTCY ALL THESE FIRMS WERE A PARTY TO MUST BE REVIEWED FOR RIGHTS & FRBP RULE VIOLATIONS MS WALKER HAS REQUESTED.

'meant the continued possibility that the Sacklers could be forced to pay large judgments (or choose to incur large legal fees) in respect of those claims, jeopardizing their ability to pay their obligations to all claimants.'

FOR REAL WHO CARES ABOUT THE NON DEBTOR SACKLERS OR IF THE SACKLERS INCUR LARGE LEGAL FEES ….MS WALKER DOESNOT & NEITHER SHOULD THE CREDITORS COMMITTEE WORRY ABOUT NOT THE DEBTORS WHO ARE PURDUE PHARMA.

B. The Prior Plan

a plan was developed and put to a vote of the Debtors' creditors, to overwhelming approval.10

AGAIN THE PLAN VOTE WAS SURE APPROVED BY THE ENTIRE GOVERNMENT WHO WOULD PROFIT WITH $7.4 B USD THE PLAN VOTE ISNOT THE OPT IN NOT IN WHICH HAS STILL NOT BE HEARD LITIGATED OR DECIDED WHICH IS THE BIG GIANT HANGING CHAD CONSENT ISSUE.

THIS IS SUPER  PROBLEMATIC

'This structure was largely carried over into the current Plan.'

THE BRIEF

C. The Present Plan

'the prior plan never reached effectiveness. Although the Bankruptcy Court confirmed the prior plan on September 17, 2021, this confirmation order was vacated on December 16, 2021, reinstated by the Second Circuit on May 30, 2023 and finally rendered permanently inoperative by the Supreme Court on June 27, 2024.13'

AGAIN DUE TO UCC DEBTORS AD HOC NOT MS WALKER OR ANY PURDUE PHARMA PI VICTIM….WE DID NOT WRITE THE 'RENDERED PERMANENTLY INOPERATIVE BY THE SUPREME COURT 6.27.24' PLAN THAT THE BAR DATE WAS ALSO RENDERED REVERSED REJECTED ILLEGAL UNCONSTITUTIONAL AND THE NEW CHANGED MID CONFIRMATION PLAN STILL IS AS CONSENT IS VIOLATED.

AGAIN A BANKRUPTCY COURT MAY NOT DENY AMENDMENT I RIGHTS AS COURTS ARE HEARING CASES UP TO THE SUPREME COURT THAT TAKES FAR FAR TOO LONG & AS AMERICANS CONTINUED TO BE HARMED AND DIE COURT….THOSE AMERICANS CAN NOT BE DENIED THE AMENDMENT I RIGHT TO PETITION A COMPANY STILL OPERATING DURING ALL OF THIS STILL HARMING & KILLING AMERICANS.

MS WALKER FILED HER LAW SUIT IN 2023 PRIOR TO HARRINGTON BEING DECIDED WHICH AGAIN IF SOME LATE CLAIMS WERE ACCEPTED ALL AND MORE CLAIMS SHOULD HAVE BEEN ACCEPTED AND A NEW NOTICE AND BAR DATE ISSUED 6.27.24 WOULD HAVE BEEN FAIR SO NO AMERICANS RIGHT TO PETITION FOR REDRESS WAS INFRINGED.



**MARION COUNTY SHERIFF'S OFFICE**
NICK HUNTER, SHERIFF

MARION COUNTY CIRCUIT COURT-AMENDED

STATE OF OREGON                           )        Court Case/DA # : 23CV33935
County of Marion                          ) ss. CSP Case # :
                                          )        Sheriff's Case #:   S23003059

**Sheriff's Return of Service**

I hereby certify that I served the within SUMMONS AND COMPLAINT, JUDGE ASSIGNMENT within the said State and County at 2:11 PM on the 19th day of September 2023, on the within named PURDUE PHARMACEUTICALS AND THE SACKLER FAMILY, by delivering a true copy to EDEN TITUS with CT CORPORATION SYSTEM, REGISTERED AGENT at 780 COMMERCIAL ST SE 100, SALEM in the State of Oregon

I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.

NICK HUNTER, SHERIFF
MARION COUNTY, Oregon

By CORY BREITBACH

By ___/S/___     COPY
                 Original Returned to Court
Fee: $0.00

I CAN NOT BELIEVE I AM IN AMERICA.

'The Supreme Court's rationale was that the Bankruptcy Code does not authorize non-consensual releases of direct claims: i.e., that to the extent a plan contemplates a settlement of creditors' claims against a non-debtor third party, such settlement must rest on the consent of each affected creditor.14'

AGAIN IF WE DID NOT OPT IN IN SEPTEMBER 2025 OR DID PRIOR TO KNOWING WHETHER OR NOT OUR CLAIM WAS ACCEPTED YET PER THE PLAN WE PROVIDED THE PURDUE PI TRUST CLAIM FORM PRIOR TO THE 7.28,25 DEADLINE…



Mon, Jul 28, 2025, 8:40 AM

**purduepitrust <purduepitrust@purduepitru st.com>**

to me, Purdue, Arik, Paul

Good morning Ms. Walker,

Confirming the Purdue PI Trust receipt of your Non-NAS Claim submission.

Best,

Purdue PI Trust

THEN AFTER THIS CLAIM FORM I SPECIFICALLY ASKED ARIK FROM AKIN THE UCC WAS THERE ANYTHING ELSE MS WALKER HAD TO DO TO HAVE A VALID CLAIM & ARIKS RESPONSE WAS I HAD TO VOTE WHY MS WALKER INSISTED I BE ALLOWED TO VOTE TO VALIDATE MY CLAIM….WHICH I DID.



Mon, Aug 11,
2025, 10:44 AM

**Preis, Arik**
<apreis@akingump.com>

to me, Purdue,

Pharma, Purdue

Kroll Team:

Rosemary did not receive her voting package.  Can you please send to her?

Thanks,

Arik

**Arik Preis**

**Akin**

One Bryant Park **|** New York, NY 10036-6745 **|** USA **|** Direct: +1 212.872.7418

Fax: +1 212.872.1002 **|** apreis@akingump.com **|** akingump.com **|** Bio

& THIS IS WHERE THE TOTAL CONFUSION ABOUT CLAIM NUMBERS COMES IN THAT MS WALKER HAD TO ASK ARIK TO MAKE PURDUE OR KROLL OR WHOEVER GIVE ME A CLAIM NUMBER WELL AFTER MS WALKER PROVIDED BOTH A CLAIM FORM FROM THE COURT WEBSITE TWICE ONE THAT NEVER ARRIVED OR WAS LOST ONE JUST BEFORE I WAS EMAILED ABOUT THE JULY 28TH FORM & DEADLINE MS WALKER MET.

Aug 11, 2025,
11:52 AM

**Purdue Pharma Ballots**
**<purduepharmaballots@primecl**
**erk.com>**

to Arik, me, Purdue,
Purdue, Purdue, Purdue

Arik/Rosemary:

Can you please provide the claim number associated with this request?

Best,

Zach

---

**Zach Steinberg**

Senior Consultant, Solicitation, Kroll Restructuring Administration

T +1 212 983 2603 | M +1 973 349 6729

Tue, Sep 9, 2025,
5:03 PM

**Preis, Arik**
**<apreis@akingump.com>**

to me, Arik

Hi,

I believe we spoke a few weeks ago about voting.

As far as your voting package, I will put you in an email with Kroll to send you your voting package.

Arik

**Arik Preis**

**Akin**

Direct: +1 212.872.7418

Tue, Sep 9, 2025,
5:04 PM

**Preis, Arik**
**<apreis@akingump.com>**

to me, Purdue, Purdue,

Purdue, Purdue

Kroll,

Please provide the voting package/ballot to Miss Walker, who is copied here.

Thanks,

Arik

**Arik Preis**

**Akin**

One Bryant Park **|** New York, NY 10036-6745 **|** USA **|** Direct: +1 212.872.7418

Fax: +1 212.872.1002 **|** apreis@akingump.com **|** akingump.com **|** Bio

NO THING HAS BEEN GOOD FAITH AT ALL.

Wed, Sep 10, 2025,
5:20 AM

**Preis, Arik**
**<apreis@akingump.com>**

to me, Arik, Purdue

As we talked about a few weeks ago, the vote is less important than giving you the right to make a decision about whether to grant the release or not.  I believe there will be sufficient votes for the plan to be approved.

**Arik Preis**

**Akin**

Direct: +1 212.872.7418

RIGHT ALL THE LAWYERS & GOVERNMENT WAS WHO WOULD PROFIT FROM THE PLAN APPROVAL NOT MS WALKER OR PRO SE PURDUE PHARMA VICTIMS.

Fri, Sep 26, 2025,
7:54 AM

**Preis, Arik**
**<apreis@akingump.com>**

to me, Purdue, Paul,
Edgar, Marc, Purdue,
Mitchell, Katherine,
Jillian, Patrick, Erin,
Harris, Michael

To the extent you want the opportunity to receive a payout on your claim (to the extent your claim is valid and qualifies), in order to give yourself the best opportunity to do so you should also check the box to opt in to granting the release.  In other words, there are two boxes to check – first is voting for the plan, second is granting the release.  You do not have to grant the release (in other words, you can decide to retain the right to sue the Sacklers after Purdue emerges from chapter 11) but if you do not grant the release you will not have the opportunity (to the extent your claim is valid and qualifies) to receive any money under the settlement from your direct claims against the Sacklers, and you will need to prove your claim should  be Allowed (and then it will need to qualify under the TDP) in order to receive any money from Purdue.

Of course, and to be clear, by checking these boxes it does not mean that your claim is valid or was timely filed, as Mr. Tobak previously emailed you.

Thank you,

Arik

**Arik Preis**

Akin

Direct: +1 212.872.741

AGAIN MS WALKER WAS COERCED INTO PREMATURELY CHECKING THE BOX WITHOUT UNDERSTANDING THE RAMIFICATIONS UNTIL DAY I 11.12.2025 OF THE CONFIRMATION HEARINGS.

Fri, Sep 26, 2025,
8:31 AM

**Preis, Arik**
**<apreis@akingump.com>**

to me, Arik

I saw that email.  You should (if you want) reply all to that email and tell them you are also granting the release (if that is your decision).

**Arik Preis**

Akin

Direct: +1 212.872.7418

**From:** rosemary <bigrosemary@gmail.com>
**Sent:** Friday, September 26, 2025 11:01 AM
**To:** Preis, Arik <apreis@akingump.com>
**Subject:** Re: Purdue Pharma - Class 10(b) Provisional Solicitation Materials

Arik I can't open the voting attachment.

Again I even had my home care person baz and they couldn't open it either.

I emailed that I vote YES until someone sends it in a way I can open it.

r

Sat, Sep 27, 2025,
1:31 PM

**Purdue Pharma Ballots**
**<purduepharmaballots@primec**
**lerk.com>**

to me, Purdue, Arik,
Marc, Edgar, Paul,
Gabriel, Solicitation,
Joseph, Esther, Eli

Rosemary:

Receipt of your email is acknowledged.  Although you have not cast your ballot in the proper format, given your circumstances we are provisionally accepting it for now, pending the outcome of your motion to file a late claim.  If it is later determined that you were permitted to file a late claim, at that time we will ask you – for good housekeeping – to submit your ballot in the proper format, and will work with you to make sure it gets done correctly.  But for now, there is nothing more you need to do with regard to your ballot nor your decision to grant the third party release

**Alex Orchowski**

Director, Solicitation, Kroll Restructuring Administration

T +1 212 257 5837 | M +1 847 809 9512

Kroll Restructuring Administration LLC | www.kroll.com

THEN I FIGURED OUT HOW TO VOTE USING THE BALLOT.

Sun, Sep 28, 2025,
3:03 PM

**Purdue Pharma Ballots**
**<purduepharmaballots@prime**
**clerk.com>**

to me, Purdue, Arik,
Marc, Edgar, Paul,
Gabriel, Solicitation,
Joseph, Esther, Eli

Thank you Rosemary – confirming we received your electronic ballot submission.

Enjoy the rest of your weekend.

**Alex Orchowski**

Director, Solicitation, Kroll Restructuring Administration

T +1 212 257 5837 | M +1 847 809 9512

THEN AFTER THE NOVEMBER 2025 CONFIRMATION THAT NEVER SHOULD HAVE HAPPENED….MS WALKER IN DOC 8242, MS WALKER REQUESTS A HEARING WELL BEFORE 3.1.2026 IN DOC 8437 MS WALKER REQUESTS ACKNOWLEDGEMENT MS WALKER REVOKED HER OPT IN PRIOR TO MARCH 1st, 2026, DOC 8444 MS WALKER REQUESTS 50% OF FEES TO ALL LAWYERS & FIRMS BE REVOKED FOR LEGAL INCOMPENTENCE WRITING A 'REVERSED PLAN' AS I MOTIONED MANY TIMES ALAS MS WALKERS REQUESTS WERE NOT EVEN MENTIONED IN THE 7.22.26 FEE HEARING THAT MS WALKER DID SO OBJECT TO ALL FEE REQUESTS FROM ALL PARTIES INVOLVED IN WRITING THE REVERSED REJECTED ILLEGAL UNCONSTITUTIONAL PLAN.

Tue, Oct 28, 2025,
7:51 AM

**purduepitrust
<purduepitrust@purduepitrust.
com>**

to me, Edgar, Arik,

Marc, Paul

Good morning Ms. Walker,

Please be advised that the Purdue PI Trust is still processing claims at this time, and we are now moving into the deficiency notification period. We cannot confirm whether your claim is Qualified under the claims review procedures at this time.

If we need any additional information on your claim, you will receive mailed correspondence from the Purdue PI Trust.

Best,

Purdue PI Trust

EVERY ONE INCLUDING DEBTORS HAS BEEN VERY AWARE OF MS WALKER WHO MEETS PIONEER AND EXCUSABLE NEGLIGENCE.

Tue, Oct 28, 2025,
4:45 PM

**Preis, Arik**
**<apreis@akingump.com>**

to Purdue, Michael

Good evening,

Per my email to all of you, set forth below is the zoom information for our call on Wednesday. You can also just dial in if you would prefer not to do a zoom.  And as a reminder, this is just a call to discuss logistics about the hearing in mid-November.

Thanks,

Arik

# Join Zoom Meeting

Phone one-tap:  US: +19292056099,,82547079066#,,,,0#,,256027# or
+12133388477,,82547079066#,,,,0#,,256027#

Meeting URL:    https://akingump.zoom.us/j/82547079066?pwd=LkI3x
0ydz4qlCbINKCENkwF6qBVNGO.1

Meeting ID:     825 4707 9066

Password:       s0cU6.

## Join from a Room System

Meeting ID:     825 4707 9066

Passcode:       256027

SIP:            82547079066@zoomcrc.com

## Join by Telephone

For higher quality, dial a number based on your current location.

Dial:

US: +1 929 205 6099 or +1 213 338 8477 or (866) 322-0202 (Toll Free) or 888 788 0099 (Toll Free)
United Kingdom: +44 20 4592 7830 or +44 131 460 1196 or +44 800 208 8307 (Toll Free) or 0 800 260 5801 (Toll Free)
Germany: +49 695 050 2596 or 0 800 588 9791 (Toll Free)
Switzerland: +41 22 596 77 05 or +41 43 210 71 08 or 0 800 561 252 (Toll Free)
United Arab Emirates: 800 035 704 239 (Toll Free)
Hong Kong SAR: +852 5803 3731 or 800 906 780 (Toll Free)

China: 400 182 3168 (Toll Free)

Singapore: +65 3165 1065 or 800 852 6054 (Toll Free)

Meeting ID:    825 4707 9066

Password:    256027

International numbers

**From:** Preis, Arik <apreis@akingump.com>

**To:** Purdue Akin FR <PurdueAkinFR@akingump.com>

**Cc:** Atkinson, Michael (External) <matkinson@provincefirm.com>

**Subject:** Purdue - Information about Confirmation Hearing for Pro Se Claimants

Good afternoon,

As many of you know, we serve as counsel to the Official Committee of Unsecured Creditors.  In that capacity, we are sending this email to you as part of our efforts to organize that portion of Purdue's plan confirmation hearing in which the Court will hear objections to Purdue's Plan of Reorganization.  **Of course, it should go without saying that we are not trying to influence what you are going to be saying – we just want to make sure that the Pro Se plan objection portion of the Confirmation Hearing runs as smoothly as possible**.

We would like to schedule a zoom call among this group – and only this group – for **Wednesday October 29 at 1 pm EST**.   A phone number will also be provided in case you do not have zoom capabilities.

On this first organization call, we will discuss the following purely logistical issues:

1.  Potential dates for the confirmation hearing
2.  Potential times for the "Pro Se" portion of the confirmation hearing

3. Appearance during the confirmation hearing: in person vs. over zoom
4. What to expect as far as addressing the Court at the confirmation hearing:
1. Amount of time each of you will have
2. Relationship of what you say to the pleadings you have previously filed
5. Order of speaking among you (i.e. whether any people want to go first, or last, etc. or whether you want to follow a specific person, etc.).  Absent anyone specifically wanting to speak in a particular slot, we will assign people to random spots.
6. ADA issues that any of you would like to address
7. Responses by other parties to your arguments
8. Any other topics you would like to discuss regarding the plan confirmation hearing

Our sincere hope is to make your participation and argument at the confirmation hearing as easy as possible for you, so that you will be able to simply concentrate on what you are going to say, as opposed to any of the logistics.

If you cannot attend a zoom or call at that time, **that is perfectly ok and will not affect your rights at all**.  Please let me know if you cannot make it on Wednesday at 1 pm EST, and a phone number I can call you on directly, and I will call you to discuss the logistics topics above.

Thank you,

Arik

**Arik Preis**

**Akin**

One Bryant Park | New York, NY 10036-6745 | USA | Direct: +1 212.872.7418

Fax: +1 212.872.1002 | apreis@akingump.com | akingump.com | Bio



Tue, Nov 4, 2025,
8:57 AM

**Preis, Arik**
**<apreis@akingump.com>**

to Purdue, Michael

Dear Pro Se Claimants Who Are Objecting to the Plan:

1. As a reminder, we will be having our second **logistical** call today at 2 pm EST.  The zoom information is in my email below.
2. You are not required to join these calls; I am doing them to ensure that the portion of the confirmation hearing where you all will be afforded the opportunity to speak goes as smoothly as possible (logistically), and all you have to worry about is whatever you will be saying.
3. Last night various parties – the Debtors, the Creditors' Committee, the Personal Injury Ad Hoc Group, the Ad Hoc Group of Governmental Entities, the Multi-State Governmental Entities Group, and both sides of the Sackler Family – filed their pleadings in support of confirmation of the Plan.  These pleadings are attached for your reference (we are not required to send these to you; I am doing so to help you so that the documents are all in one place).
4. Also as a reminder, there is a pre-trial conference on Wednesday November 5 at 2 pm EST.  I have re-attached that information for you so you can register if you want.  You do not need to attend.
5. With regard to our call today at 2 pm EST, we will be going over logistics for the confirmation hearing, and then I will attempt to answer any questions any of you have. We will be budgeting 60 minutes for the call today.
6. Below are the logistics of the confirmation hearing:
1. Confirmation Hearing will commence Wednesday November 12 at 10 AM.
2. The Pro Se's will be given a block of time to address the Court with your objections to the Plan (not issues relating to your own individual claim).
3. That block will be Thursday November 13 in the morning.
4. Each Pro Se will likely be given 6-8 minutes.
5. You are not required to attend in person, but are more than welcome to do so.

6. The order you will speak in on Thursday November 13 will be set before the hearing; I have not heard from all of you about your preference.  If you do not have a preference, you will be ordered alphabetically.

Look forward to speaking with you at 2 pm EST.

Thank you,

Arik

**Arik Preis**

**Akin**

Direct: +1 212.872.7418

Fri, Nov 7, 2025,
10:22 AM

**Preis, Arik**
**<apreis@akingump.com>**

to Purdue, Michael

To the Pro Se Claimants Who Are Potential Objectors to the Plan:

1. On Tuesday, during our call, we discussed the fact that there would be a status conference with the Court on Wednesday to talk about the confirmation hearing schedule.
2. On Wednesday, we participated in the status conference and discussed with the Court all of the logistics we had discussed with you.
3. The Court generally agreed with everything that I had previewed with you on our zoom calls and via email, regarding logistics  of the confirmation hearing.
4. The Court also asked us to memorialize the logistics and file a notice on the docket setting forth these logistics.

5. We have submitted to the Court a draft notice and  hope that the notice will be filed on the docket later today.    We will send it to you when it is docketed.

6. The notice will state the things we have talked about with you.  It will also include the proposed order in which you will speak on Thursday November 13th.

7. In addition, we would note the following:

1. The Court is short-staffed.  Therefore, the judge cannot assure anyone that there will be staff there to help you walk to the Courtroom, if you attend in person.  For our part, I will help escort you to the extent I can. You are of course permitted to come with anyone you would like to help you walk around the Courthouse.

2. If you would like to cross-examine witnesses, you must appear in person.  The Judge was apologetic, but noted that the rules require cross examination in person.  If you would like to cross examine any witnesses, that portion of the confirmation hearing will occur on Wednesday.

3. The Pro Se portion of the confirmation hearing will begin on Thursday morning at 11 am EST.

8. Finally, I would propose we have one final zoom session on Monday afternoon to discuss any questions you may have with regard to logistics or the confirmation hearing. I will suggest that we do that zoom session at 2 pm EST on Monday.


Please let us know if you have any questions.


Thanks,


**Arik Preis**

**Akin**

One Bryant Park | New York, NY 10036-6745 | USA | Direct: +1 212.872.7418

Fax: +1 212.872.1002 | apreis@akingump.com | akingump.com | Bio


**Arik Preis**

**Akin**

Direct: +1 212.872.7418

AGAIN IF WE CAN'T AFFORD THE BILLS TO ENFORCE OUR RIGHTS TO FLY TO NEW YORK OUR RIGHT TO CROSS WHEN MS WALKER IS A QUALIFIED DISABLED AMERICAN PRO SE PAUPER WOMAN IN ITSELF A DUE PROCESS VIOLATION.



Fri, Nov 7, 2025, 12:17 PM

**Edgar C. Gentle III**
**<egentle@gtandslaw.com>**

to me, purduepitrust,

Arik, Marc, Paul

The hearing on the Plan is next week. Thanks Ed

Sent from my iPhone



Fri, Nov 7, 2025, 12:17 PM

**Edgar C. Gentle III**
**<egentle@gtandslaw.com>**

to me, purduepitrust,

Arik, Marc, Paul

The hearing on the Plan is next week. Thanks Ed

Sent from my iPhone



**Edgar C. Gentle III**
**<egentle@gtandslaw.com>**

Fri, Nov 7, 2025,
12:28 PM

to me, purduepitrust,

Arik, Marc, Paul

We will by sending you a letter thanks Ed

Sent from my iPhone

PER 11.13.25 MR PREIS

SOMETIMES DATES ARE MOOT FOR SOME PEOPLE NOT MS WALKER….uh huh….

'2 Based on the information that Mr. Gentle got at 3 the end of July, he was then -- he has then started -- first 4 of all, he is also being very forgiving in allowing people 5 to send in their supplemental claim forms late.'

NOT CONSISTENT NOT EVEN CLOSE CONSISTENT TREATMENT.



**Preis, Arik**
**<apreis@akingump.com>**

Wed, Nov 12,
2025, 4:01 PM

to me

Emergence is when the plan actually becomes effective.

A "rider" is a term used to describe some additional paragraphs added to a document.  Like it "rides along" with the main document.

If someone doesn't give a release, Sacklers/others have two years to object to their claim against Purdue (18 months for PI).

Yes, as part of the deal, there is a resreve for Sackler defense costs/settlement costs for any party that doesn't agree to the deal.  (I am generalization).   If it doesn't get used, creditors get it back.

Yes, we believe Fraudulent transfers occurred 2008-2017

Look forward to your comments tomorrow.

**Arik Preis**

**Akin**

Direct: +1 212.872.7418

AGAIN THIS WAS NOT CLEAR AT ALL IN SEPTEMBER WHEN WE HAD TO VOTE & OPT IN OR NOT OPT IN.



**purduepitrust**
**<purduepitrust@purduepitrust.**
**com>**

Mon, Mar 2,
1:17 PM

to me, Edgar, Arik,

Marc

Good afternoon Ms. Walker,

Please be advised that your deficiency letter does not state that you did not file a claim with the Purdue PI Trust.

As stated in your letter, your deficiencies are for Proof of Use and Proof of Claim.

The evidence that you provided to the Purdue PI Trust does indicate that you were prescribed a qualifying Purdue opioid. However, the evidence does not meet the requirements for a Tier 1 claim. The evidence provided does not demonstrate that you were prescribed a qualifying Purdue opioid for 6 months as required under the PI TDP for a Tier 1 claim. We note that the evidence meets the requirements for a Tier 2 claim.

As noted in your deficiency letter, you will need to provide the Trust with additional evidence that demonstrates prescribed Purdue opioid use. This letter is letting you know that we need additional evidence.

For the Proof of Claim deficiency, under the terms of the Court-approved PI TDP, claimants must have timely filed Proof of Claims in the Chapter 11 proceedings to be eligible for compensation under the PI TDP. Because timely filed Proof of Claims are required under the PI TDP, potential deficiencies can be related to the Proof of Claim number. Under the PI TDP, a Proof of Claim must have been timely filed before September 21, 2021.

The Trust is not asserting that no Proof of Claim was filed on your behalf in the bankruptcy proceedings. However, based on the data provided by Kroll, the Proof of Claim that you included on your Purdue PI Trust Claim Form was not timely filed by the September 21, 2021 deadline outlined above.

Best,

Purdue PI Trust



Mon, Mar 2, 1:52 PM

**purduepitrust
<purduepitrust@purduepitrust.
com>**

to me

Good afternoon Ms. Walker,

Received.

Best,

Purdue PI Trust

---

**From:** rosemary <bigrosemary@gmail.com>

**Sent:** Monday, March 2, 2026 3:47 PM

**To:** purduepitrust <purduepitrust@purduepitrust.com>

**Subject:** Re: EDGAR YOU CAN'T OUTRIGHT LIE I HAVE EMAILED EVIDENCE

edgar these are all the reports that were not damaged during the tree through my roof from the same pain management doctor.

these all show proof from 2001-2007 of my being prescribed oxycontin.

these letters should be far more clear.

rosemary

catbelt.com

pussycatarian.com

factshowandtell.com

**rosemary**
**<bigrosemary@gmail.com>**

Fri, Feb 6,
11:24 AM

to Arik, purduepitrust,
Edgar, Paul, Marc,

Purdue

well no thanks to any of you i found the stupid number & ballot & in fact opted out.


r


catbelt.com

pussycatarian.com

factshowandtell.com



---------- Forwarded message ---------

From: <noreply.efiling@ra.kroll.com>

Date: Fri, Feb 6, 2026 at 11:20 AM

Subject: Purdue Pharma L.P. E-Ballot Confirmation Number: 2325-2-FXRCB-075191492

To: <bigrosemary@gmail.com>



We are in receipt of your Purdue Pharma L.P. E-Ballot submission.


Please be advised that the submission has been assigned the below Confirmation Number:

Purdue Pharma L.P. E-Ballot Confirmation Number:  2325-2-FXRCB-075191492

Please use this Confirmation Number for all correspondence associated with this submission.

Please review and ensure that you have been assigned a Confirmation Number for each of your submissions. If you have not yet received a Confirmation Number for one of your submissions, please notify Kroll Restructuring Administration immediately by emailing purduepharmainfo@ra.kroll.com.

Additionally, if you would like to make any changes to your submission, please resubmit your submission using the same Unique ID as the most recent submission will supersede the previous one.

Please note that as the claims, noticing and solicitation agent, Kroll Restructuring Administration receives and processes the information provided. The ultimate determination as to whether the submissions are accepted and valid lies with Debtors' counsel.

Originals are not required for this event.

Please let us know if you have any further questions by emailing purduepharmainfo@ra.kroll.com.

Sincerely,

Kroll Restructuring Administration

SO AGAIN IS MS WALKER OPTED IN OR NOT OPTED IN….
ARE LATE CLAIMS THAT WERE ACCEPTED AS TIMELY NOT CONSISTENT AT ALL WITH HOW MS WALKERS CLAIM OR MS WALKER HAS BEEN TREATED WILL THEY BE NON CONSENUALLY OPTED IN OR NON CONSENSUALLY BE OPTED OUT EITHER WAY THE PLAN THE AGREEMENT THE VOTE THE OPT IN OR NOT OPT IN IS ALL MOOT AND YES

NOT FAIR WHY THIS PLAN NEVER SHOULD HAVE BEEN CONFIRMED NOR ALLOWED TO GO EFFECTIVE.

'must rest on the consent of each affected creditor.14''

THIS HASNOT HAPPENED.

WAY TO MINIMIZE LEGAL INCOMPETENCE THAT WAS 'REVERSED' & CAUSED THE DELAY OF PURDUE PHARMA PI VICTIMS UCC GETTING MONITARILY RECOVERY AGAIN NOT MS WALKERS FAULT.

'10. Immediately following this setback,'

AGAIN NOT PURDUE THE DEBTOR BUT PAYMENTS FROM NOT PARTY TO THIS PURDUE BANKRUPTCY THE NON DEBTOR SACKLERS….

''This Plan, like the prior one, also rests on substantial payments from the Sacklers over a period of years'

AGAIN WHAT CLAIMS DO PURDUE PHARMA PI CLAIMANTS HAVE AGAINST THE NON DEBTOR SACKLERS IF THEY UNLIKE MS WALKER DO NOT HAVE A PENDING LAW SUIT AGAINST THE SACKLERS AND HOW IS THIS FAIR TO MS WALKER WHO IN FACT HAS A LAW SUIT TO PROVIDE THE SACKLERS A RELEASE FOR IN EXCHANGE FOR CASH….ALAS THE SACKLERS HAVE NOT SETTLED NOT FOR MS WALKERS NOT TRYING IS THE QUESTION.

'while maintaining the other elements of the prior plan to the extent possible, the settlement with the Sacklers was bifurcated into two settlements, with separate payments contemplated for the release of direct and estate claims.16'

SO YET AGAIN THERE IS NO CONSISTENT TREATMENT OF CLAIMS AT ALL.

'For the holder of an Allowed claim, the difference is only that—just as would be the case outside of bankruptcy—those who do not agree to settle their direct claims against the Sacklers do not receive the incremental consideration on offer for that settlement.21'

AGAIN THIS ISNOT CONSENT THIS IS A GUN TO OUR HEADS TO TAKE THE SACKLER CASH BRIBE SO THE NON DEBTOR SACKLERS AVOID FUTURE LITIGATION

& WHOOP HERE IT IS THIS IS EXACTLY WHAT THE COURT ET AL HAS CREATED BY NOT KEEPING THEIR PLAN AND RECORD WORDS.

'Indeed, "jackpot" judgments against some or all of the Sacklers on any non-settled claims could deplete the assets of the relevant portion of the Sackler family, wiping out

their ability to make such future payments, as could significant enough litigation costs.'

ALONG WITH A RACE FOR DISALLOWED PURDUE PHARMA CLAIMANTS TO THE COURTHOUSE TO SUE THE SACKLERS.

MS WALKER *STRONGLY DISAGREES WITH THE UCC'S STATEMENT.

'the Debtors and their creditors alike stood to benefit from the release of claims against the Sacklers.'

SO THE DEBTORS UCC ET AL TOTALLY EXCLUDED ALL QUALIFIED DISABLED PRO SE PAUPER WOMEN WITH EXCUSABLE NEGLIGENCE WHO ARE NOT ORGANIZED CREDITOR GROUPS.....

'the Debtors, with the support of the Official Committee and every other organized creditor group in these cases, agreed to a mechanism whereby the Debtors, the Sacklers and other parties supporting the Plan would waive their legal objections to any claim the holder of which released the Sacklers, with the settlement of the claims themselves—after which an objection by any party would be untimely—to be approved as part of confirmation.'

UH HUH....TOTALLY NOT FAIR AT ALL.

'The Plan extends this open offer to all litigants, automatically and immediately deeming such claims "Allowed" and entitling the holders of those claims to whatever value, if any, they were allotted under the applicable TDP based on the evidentiary support for the underlying injury. 23 Significantly, neither the Plan nor any other element of the integrated settlements disallows the claims of those who decline to grant the releases. Rather, such claims are treated—as they have been before and throughout the chapter 11 cases—as disputed and subject to the full scope of potential legal and factual objections and defenses.24 Furthermore, if no such objections are interposed within a set timespan (18 months for personal injury claims and two years for all others), the Plan provides that such non-settling claims, as well, will be deemed automatically Allowed.25'

AGAIN THIS WASNOT CLEARLY EXPLAINED IN SEPTEMBER WHY MS WALKER INSISTED ON A STAY HEARING NEW INFORMATION 11.12, 13, 14 & 18, 2025.

'15. This Plan, like the prior plan, received overwhelming creditor support, including acceptance by 99.6% of voting Non-NAS26 PI Claimants.27 On November 12, 2025, six years after the chapter 11 cases were commenced, the Plan went before the Bankruptcy Court for confirmation. Thereafter, on November 18, 2025, the Bankruptcy Court entered an order confirming the Plan, and the Plan went effective on May 1, 2026.28'

THAT NEVER SHOULD HAVE HAPPENED.

'(i) the release structure used in the Plan, including the deemed allowance of settling claims, is appropriate under applicable law and provides the best possible outcome for creditors; and'

SO DOES MS WALKER HAVE A 'SETTLED CLAIM' OR NOT....

I. The Third-Party Releases in the Plan Are Consensual and Appropriate.

NO THIS IS NOT FACTUAL NO MATTER HOW MANY TIMES LAWYERS & COURT REPEAT IT ....NO THEY ARE NOT CONSENSUAL NOR APPROPRIATE AND HAVE IN FACT TAKEN MEANINGFUL RIGHTS & NOW MONETARY RECOVERY FROM MS WALKER WHILE FURTHER DELAYING THE INJUNCTION RELEASE FOR WHAT 18 MORE MONTHS WHICH ISNOT FAIR TO MS WALKER.

'17. The Appellants, in their various filings, raise three different arguments against the third-party releases in the Plan. First, they make allegations, unsupported by the facts and contrary to the plain text of the Plan, that the releases are non-consensual in violation of the Supreme Court's Harrington holding. Second, they assert, without any legal support, that it is improper for'

WOW SO AKIN GUMP CLEARLY UNDERSTANDS MS WALKERS ISSUE THAT WHAT RIGHT DO PURDUE PHARMA PI CLAIMANTS HAVE TO RELEASE THE NON DEBTOR SACKLERS IN A PURDUE PHARMA CHAPTER 11 BANKRUPTCY WHEN ONLY MS WALKER TO MY KNOWLEDGE WITHIN THE PURDUE PHARMA PI CLAIMS HAS IN FACT A PENDING LAW SUIT AGAINST THE SACKLERS FOR AKIN TO WRITE 'WITHOUT LEGAL SUPPORT' IS NOT FACTUAL AS MS WALKERS OREGON LAW SUIT 23CV33935 WAS JOINED BY DEBTORS TO THE 19-23649 BANKRUPTCY.

'And third, one Appellant argues, without any legal or factual basis, that her claim is uniquely situated with respect to the Sacklers and therefore she alone should receive value.'

AGAIN NO NO THEY ARE NOT

'A. The Third-Party Releases Are Consensual.'

'the third-party releases in the Plan are consensual and, thus, entirely consistent with the Supreme Court's mandate. Specifically, the Plan provides that the releases are binding only on those personal injury claimants who opted in to grant them.29'

WELL MS WALKER CAN NOT TRUST ANY THING THE COURT SAYS OR TYPES AS THE CONFIRMATION RECORD READS.

'As the Bankruptcy Court noted,"a clearer form of consent [than opt-in releases] can hardly be imagined."30'

SURE HAD THE WORDS OF THE PLAN THE DISCLOSURE STATEMENT THE VOTE THE DEADLINES THE DEBTORS AND THE COURT BEEN KEPT AND HAD ALL LATE CLAIMS BEEN ACCEPTED THEN SENT THROUGH TO THE TRUST ADMINISTRATOR SO ALL CLAIMS WERE TREATED CONSISTENTLY ALAS THAT ISNOT WHAT HAPPENED.

THIS ISNOT FACTUAL…

'In fact, only one of the Appellants, Mr. Redwood, has granted the releases,'

11.13.25

25 MS. WALKER: Right. But I can revoke. Because I Page 102 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 opted in and approved the plan. But that doesn't mean that 2 that's going to stay that way if my claim is not approved. 3 Then I'm going to revoke my release of the Sacklers. 4 And then will we be punished? Because yesterday 5 they were mentioning two years -- like if you don't release, 6 then they can wait up to two years. And why would the 7 Sacklers get paid lawyers' fees for defending what lawsuits 8 will be done against them when -- if we revoke our release. 9 I mean, again, that just doesn't seem like it's really 10 written in, and it should be amended along with -- 11 THE COURT: All right. So let me see if I can get 12 you information on one of those things.

ALAS THIS DOESNOT….SINCE THE OPT IN NOT OPT IN VERY IMPORTANT CONSENT ISSUE HAS NEVER BEEN ADJUDICATED…

'and—now that the preliminary injunction has terminated31—they are free to pursue those claims in whatever forum they may prefer. That fact alone should resolve any pending disputes on the releases.'

ALAS PER THE COURT TRANSCRIPTS RECORDS SHOW 5.20,26

8 THE COURT: So Ms. Walker, this is my last warning 9 to you. I'm asking you to address why the claim that you 10 filed in 2025 should be considered timely under applicable 11 law. You started out addressing that, but then somewhere 12 along the way, you started talking about something else. 13 MS. WALKER: I filed my claim in 2023. 14 THE COURT: I can't -- Ms. Walker, I can't -- 15 MS. WALKER: Well, that's what we have to speak 16 to. 17 THE COURT: Ms. Walker, you're screaming at -- 18 MS. WALKER: My claim was not filed in 2025. 19 THE COURT: Okay. I'm going to ask -- Ms. Walker, 20 I'm going to consider all your submissions. I'll give you 21 to the end of the day for anything else that you want to 22 submit. But frankly, I can't deal with you -- 23 MS. WALKER: I filed it -- 24 THE COURT: -- screaming at me, and wasting 25 people's time talking about things that are not on for Page 58 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 today. And this has been a persistent problem. I'm sorry 2 that you feel this strongly about things that you can't stay 3 on point and that you're screaming at me, but that's 4 unacceptable behavior. So again, -- 5 MS. WALKER: I am -- 6 THE COURT: Okay. We're done. Thank you. So 7 with that, I will consider all of the many, many,

many written submissions that Ms. Walker has provided on this issue. I think the last time I issued an order as to Ms. Walker's submissions, there were some 34. I suspect there's somewhere in the 20s now, which is not frankly normal for these things. People usually get one or two cracks at an issue. But I'll consider them all for purposes of ruling on the late filed claim motion. I will ask the folks from the plan administrator as you can see, there is still an issue about this opt-in, opt-out about Ms. Walker feels very strongly, was on my list to talk about, to say, when are we going to schedule a hearing on that issue? and so let me ask folks for their wisdom on that procedurally whether it's going to be handled at a later hearing. But probably frankly, sometime soon because it needs to be addressed.

MS WALKERS VERY IMPORTANT OPT IN NOT OPT IN ISSUE THAT CHANGED THE PLAN MID CONFIRMATION NEVER HAS HAPPENED TO DATE OF MS WALKER TYPING THIS DOCUMENT 7.25.26 NOW 6:46 PM PER THE COURT WHO STILL ACKNOWLEDGES MS WALKERS VERY IMPORTANT ISSUES HAVE YET TO BE HEARD.

MS WALKERS LAW SUIT CAN NOT PROCEED UNTIL THE OPT IN NOT OPT IN CONSENT ISSUE IS RESOLVED. WHY MS WALKERS RIGHTS CONTINUE TO BE INFRINGED AND DELAYED DUE TO THE COURTS THE THE POWERS THAT BE NOT KEEPING THEIR NOR THE PLAN WORDS.

IT IS IN FACT THE COURT DEBTORS UCC AND MDT WHO IN FACT ARE CONFLATING….

'conflate their arguments about consent with arguments about purported coercion. Appellants allege, in short, that the consent to the releases provided by other claimants is void because other claimants received consideration for settling their direct claims against the Sacklers. But Harrington requires that a release must be consensual, that is, freely chosen. It does not require that a release be gratuitous, or given without consideration, which would be at odds with the most basic principles of contract law.'

SO THIS ISNOT CONSISTENT TREATMENT OF THE EXACT SAME LATE CLAIM FACT PATTERN IF SOME LATE CLAIMS ALLOWED NEVER VOTED NEVER OPTED IN OR NOT PRIOR TO THE 9.30.25 DEADLINE WHEN MS WALKER DID VOTE DID OPT IN YET DID NOT UNDERSTAND THE RAMIFICATIONS EVEN UP UNTIL DAYS PRIOR TO THE AFTER EFFECTIVE 5.20.26 LATE CLAIM HEARING THAT MS WALKER WAS ATTEMPTING TO GET HER LATE CLAIM TIMELY….AGAIN AFTER NOT WANTING TO GIVE UP MY RIGHTS TO APPEAL…..THE FIRST TIME MARC TOBAK SUGGESTED HE COULD ACCEPT MY CLAIM AS TIMELY DURING A PHONE CALL AFTER MS WALKER FILED AN APPEAL.



Tue, May 19,
3:51 PM

**Preis, Arik**
**<apreis@akingump.com>**

to me, Marc, Eli,
marshall.huebner@d
avispolk.com, James,

Arik, Edgar, Kip

FRE 408

Confidential

Rosemary,

I have copied into this email Ed Gentle and Kip Harbison, from the PI Trust.

In response to your emails of this afternoon, I want to make sure that we are all talking about the same exact thing, and that you understand what can and cannot be delivered.  At the end, you should let everyone know if you are wiling to accept the terms, as it is important to everyone that you understand exactly the proposal.   Alternatively, if you want more time and would like to adjourn the hearing on your motion until the next omnibus hearing, the Debtors can agree to that too.

So, to recap, here is the Debtors' proposal:

**What the Debtors would agree to do:**

1. The Debtors will ask Judge Lane to deem your late-filed claim to be timely.
2. The Debtors will ask Judge Lane to treat your February ballot as effective, meaning that you will be treated as a person who filed a timely claim and who did **not** opt-in.

3. The Debtors will agree that you have demonstrated a claim entitled to treatment as the Trust Administrator has preliminarily determined based on the evidence you have submitted. I understand that to be Tier 2 at present.
4. The Debtors will agree that we will not object to your claim.

**What you would agree to do:**

1. You will withdraw your appeal of the Confirmation Order.
2. You will agree not to seek additional relief of the kind sought in the motions heard on March 19, or any other relief at all relating to the bankruptcy cases.

IMPORTANTLY, because you are NOT agreeing to give the Sacklers a release, the Sacklers/others who have standing (other than the Debtors) will be able to object to your claim against Purdue for a period of I believe 12 months. You will therefore not be receiving any money until that time period passes. If that time period passes and no one objects to your claim against Purdue, you will receive a significant portion of your Tier 2 money, but not all of it. The reason you will not receive all of it is because you are not giving the Sacklers a release. Of course, you are and have been free to sue the Sacklers since the Effective Date because you did not give the release.

ALSO IMPORTANTLY, Ed and Kip need to confirm you are a Tier 2 claimant (which they can do by reply all to this email).

ALSO IMPORTANTLY, if you want to give the Sacklers a release, please reply all to this email so that the Debtors can evaluate and determine if it is possible to discuss with the Sacklers. The original offer was made to you prior to the Effective Date because prior to the Effective Date the Sacklers had not yet reserved money based on how many releases they were getting/not getting, and no discussion with the Sacklers was necessary.

FINALLY AND IMPORTANTLY, this email is confidential and being provided as a proposed settlement communication.

IF YOU WOULD LIKE TO THINK ABOUT ALL OF THIS AND/OR DISCUSS IT, and want more time than just tomorrow, the Debtors can adjourn the hearing on your motion until the next omnibus hearing and I or others can speak to you about it.

If you would like to discuss any part of this, I suggest you speak to either Marc or Ed.  I am just trying to facilitate here but ultimately have no authority to agree to anything.

If I have any of the above wrong, I would ask that the Debtors or Ed or Kip respond and correct my email.

Thanks,

Arik

**Arik Preis**

**Akin**

Direct: +1 212.872.7418

This email message was sent from Akin Gump Strauss Hauer & Feld LLP. The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message



Fri, Mar 20,
3:11 PM

**Tobak, Marc J.**
**<marc.tobak@davispolk.com>**

to me

Rosemary,

As I wrote earlier, I have been discussing your suggestion to resolve these issues.

If it is possible to end the expense to the estate—and the burden on you—of continuing to litigate your appeal in the district court and your other pleadings in the bankruptcy court, we very much would like to do so.  But we can only do so in a way that is fair to everyone concerned—you, the Debtors, and the many thousands of other creditors.

Here is the proposal I can offer to you on behalf of the Debtors, which should resolve all disputes between you and the Debtors:

**What the Debtors would agree to do:**

1. The Debtors will ask Judge Lane to deem your late-filed claim to be timely.
2. The Debtors will ask Judge Lane to treat your February ballot as effective, meaning that you will be treated as a person who filed a timely claim and who did **not** opt-in.
3. The Debtors will agree that you have demonstrated a claim entitled to treatment as the Trust Administrator has preliminarily determined based on the evidence you have submitted.  I understand that to be Tier 2 at present.
4. The Debtors will agree that we will not object to your claim.

**What you would agree to do:**

1. You will withdraw your appeal of the Confirmation Order.
2. You will agree not to seek additional relief of the kind sought in the motions heard on March 19, or any other relief at all relating to the bankruptcy cases.

To avoid any doubt, this email is not itself an agreement and is not binding on anyone.   If you would be willing to agree to a resolution on these terms, please let me know and I will draft an appropriate stipulation for eventual submission to the Court.  Once filed, Judge Lane would consider the stipulation, and decide whether to "so order" it, i.e., to make it binding on both the Debtors and you, and to grant you the relief we request relating to your claim and ballot.

 I look forward to your response, and wish you a good weekend.

Marc

**Marc J. Tobak**

**Davis Polk & Wardwell** LLP

+1 212 450 3073 office

+1 646 831 5116 mobile

marc.tobak@davispolk.com

**From:** rosemary <bigrosemary@gmail.com>

**Sent:** Thursday, March 19, 2026 2:48 PM

**To:** Tobak, Marc J. <marc.tobak@davispolk.com>

**Subject:** Re: marc…..

huebner said davis polk takes no joy in rejecting claims so don't ….right.

can we get this resolved today please


r



catbelt.com

pussycatarian.com

factshowandtell.com


On Thu, Mar 19, 2026 at 10:26 AM rosemary <bigrosemary@gmail.com> wrote:

ok anytime marc …..
my claim must be accepted.


so some parts of the plan like section 33 those dates get mooted mooted mooted but alas all other plan parts are held to strictly but for the sacklers ……that ISNOT fair.

my opt out was not even heard today so what was the point of the hearing when my issues were literally ignored.

ACCEPT MY CLAIM.

today would be great …..

I will file a not her waiver estopple as yes my rights are being infringed.

I want to KNOW I am getting my purdue settlement STAT.

r

catbelt.com

pussycatarian.com

factshowandtell.com

On Tue, Mar 10, 2026 at 9:33 AM Tobak, Marc J. <marc.tobak@davispolk.com> wrote:

Rosemary,

I am writing to confirm that I received your email.  As you know there are many parties to the case with whom I need to speak before getting back to you. But I will try to get back to you as quickly as I can.

Thank you,
Marc

**Marc J. Tobak**

**Davis Polk & Wardwell** LLP

+1 212 450 3073 office
+1 646 831 5116 mobile

marc.tobak@davispolk.com

**From:** rosemary <bigrosemary@gmail.com>
**Sent:** Monday, March 9, 2026 8:25 PM

**To:** Tobak, Marc J. <marc.tobak@davispolk.com>
**Subject:** marc…..


hi marc…..


look why don't we agree my valid hardship late claim is timely & valid & sure I'll drop ALL my purdue issues ….obviously I just got the email listed in 8890 so you don't have to type stuff and I don't have to respond I will be requesting more time to respond to whatever you type because 7 days isnot enough nor can I do a cd rom or whatever bs you wrote.

I AM SICK OF THIS I HAVE ARTHRITIS NERVE DAMAGE CARPAL & TENDONITIS IN MY HANDS THIS TYPING IS KILLING ME.

I just want my perfectly valid hardships to why I filed late to be accepted again on record arik & your firm stated you accepted some Kate claims plus again what about people right now dying & damaged by Purdue pharma brand drugs they simply have no rights at all that violates amendment I to petition for damages & death redress then when if this thing EVER goes effective Purdue will not exist so those victims simply have no rights at all……HOW ON EARTH IS THAT FAIR MARC….right itsnot.

i email the sacklers lawyers everyday to settle ….look I will fight with everything I have in me …my Supreme Court papers are sitting here I DO NOT HAVE THE MAIL MONEY TO MAIL THAT WILL COST ME A SMALL FORTUNE & it can not be a thing in America if we can't afford the bills to enforce our rights I HAVE NO RIGHTS.


let me know please.


r

catbelt.com

pussycatarian.com

factshowandtell.com

WAS EVERY PRO SE LATE CLAIMANT GIVEN THE SAME OFFER TO HAVE THEIR CLAIMS DEEMED TIMELY IN EXCHANGE FOR GIVING UP OF RIGHTS…IS THE YES OR NO QUESTION TO WERE ALL CLAIMS TREATED CONSISTENTLY MS WALKER HAS PROVEN NO NO THEY HAVE NOT BEEN.

EXACTLY RIGHT AKIN GUMP UCC…A GRATUITOUS RELEASE TO THOSE LATE ACCEPTED CLAIMS TO CLAIMANTS WHO NEVER PROVIDED THE PURDUE PI CLAIM FORM BY 7.28.25 WHO DID NOT GET A BALLOT TO VOTE ON THE PLAN OR TO OPT IN OR NOT OPT IN WILL BE NON CONSENSUAL CLAIMS THEREFORE THEY HAVE NO CONSENT AND THEREFORE PER THE RECORD THOSE LATE CLAIMANTS HAVE NO 'TICKET' THE TO TRUST PROCESS THEREFORE VIOLATING HARRINGTON CONSENT VOTING OPTING IN OR NOT THE PLAN  DISCLOSURE STATEMENT & AGREEMENTS.

'It does not require that a release be gratuitous, or given without consideration, which would be at odds with the most basic principles of contract law.'

I CAN NOT BELIEVE I AM IN AMERICA.

B. The Deemed Allowance of Settling Claims Is an Appropriate Exercise of the Debtors' Discretion.

'To avoid this doomsday scenario, and to recognize the benefit conferred directly on the Debtors' estates and creditors by each claimant that agreed to participate in the third-party release, the Plan included an open offer: the Debtors and the other parties supporting the Plan would agree not to prosecute any potential objections to the claims of Settling Claimants, and would treat the confirmation hearing as a hearing on the settlement of the claims themselves.34'

HUH NOW THE DEBTORS ET AL SUPPORTING THE PLAN WOULD AGREE NOT TO PROSECUTE SETTLING CLAIMANTS…WHY WOULD PURDUE PHARMA VICTIMS BE PROSECUTED FOR CHRISTS SAKE AKIN GUMP….AND MS WALKERS CLAIMS WERE NEVER SETTLED DURING CONFIRMATION IN FACT THE CONFIRMATION HAD TO CREATE A NEW FIXED DEADLINE BECAUSE THE PLAN WASNOT FAIR.

We have the date of 15 March 1st for people to submit the opt-outs.

Oh, everyone keeps mentioning opt-in or opt-out. However, until -- they brought up claims for this whole thing. And it's part of the plan. So it kind of should be resolved. There's --

THE COURT: Well, it's very clear, ma'am -- and I just finished explaining that. It's very clear that this plan when it comes to your rights against the Sacklers is an opt-in plan.

MS. WALKER: Right. But I can revoke. Because I

Page 102

Veritext Legal Solutions 212-267-6868

www.veritext.com 516-608-2400

opted in and approved the plan. But that doesn't mean that that's going to stay that way if my claim is not approved. Then I'm going to revoke my release of the Sacklers. And then will we be punished? Because yesterday they were mentioning two years -- like if you don't release, then they can wait up to two years. And why would the Sacklers get paid lawyers' fees for defending what lawsuits will be done against them when -- if we revoke our release. I mean, again, that just doesn't seem like it's really written in, and it should be amended along with --

THE COURT: All right. So let me see if I can get you information on one of those things.

MS. WALKER: Oh, was there a --

THE COURT: Ma'am, if I'm talking, you're not talking.

MS. WALKER: Sorry.

THE COURT: All right.

The ability to participate 18 remotely is a privilege. We are doing it in this case 19 because it makes sense. And it's very challenging. So I 20 don't mean to yell at anybody, but it's very, very hard to 21 do this remotely given the number of people on the line, 22 which is numbers -- I think yesterday it was over 170 or 23 whatever it was. It's a large number of people. 24 So I sense the question that might benefit from 25 clarification from somebody who is in a position to walk Page 103 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 through this. What I understood Ms. Walker to be asking 2 just a minute ago was what happens with her release and her 3 release and her opt-in if her claim isn't allowed. 4 MS. WALKER: Right.'

'18 MR. HUEBNER: So, Your Honor, I will do my best to 19 answer on the fly and I'll look to Mr. Preis and others to 20 help where they can. 21 So Ms. Walker's situation is one of the few that 22 is relatively unique, although one should never modify the 23 word unique. She filed her claim late and is currently the 24 subject of an adjourned late claim objection. And so 25 possibility number one is that the Court rules that she Page 104 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 doesn't have a cognizable claim at all because she missed 2 the bar date and it's being stricken as being late. 3 Possibility number two is that that motion is settled or 4 otherwise resolved in her favor and she is allowed to 5 proceed with the claim. She then has to go through the TDP 6 process we've described before, including, as Mr. Preis and 7 others have described, you know, proving really a base that 8 she at one point (indiscernible) took a Purdue product 9 because -- one thing that I think has confused many people 10 is that –'

NO MS WALKER WASNOT CONFUSED MR HUEBNER WAS CHANGING THE SUBJECT…

'13 MR. HUEBNER: One thing that has confused many 14 people over the years is that very often the phrase Oxy does 15 not refer to OxyContin. It refers to Oxycodone, which is 16 just a generic form of morphine, along with hydrocodone and 17 others and the like. And so a great many people actually 18 never took a product made by Purdue. And that's one of the 19 things that the TDP administrator will have to –'

RIGHT WHY THIS ISNOT FAIR NOR CONSENSUAL…

8 MR. HUEBNER: But there is not a mechanic for 9 saying for how I will affirmatively choose to opt into the 10 releases on my ballot, I don't want to sue the Sacklers, I 11 want to get the enhanced distribution. But then if I don't 12 like the outcome with the TDP, I then get to withdraw my 13 opt-in in X months or a year and then have a different set 14 of rights. And so the election I think within the extended 15 window that has been provided does have to be made. And 16 it's irrevocable. You don't get sort of a do-over based on 17 what happens with the trust distribution procedures with 18 your claim with respect to, you know, revoking essentially 19 the affirmative opt-in that you previously gave on your 20 ballot to participate and be a releasing party. 21 Let me just check with Mr. Preis since I am 22 looking at the Court not sideways. Let the record reflect 23 that Mr. Preis, who knows more about this than I do, nodded 24 his head, which in this country means agreement. 25 THE COURT: Let me ask -- hold on one second, Page 106

Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 ma'am. Let me ask Mr. Preis if he has anything else that he 2 wants to add that would illuminate the situation for Ms. 3 Walker. 4 MR. PREIS: Ms. Walker has discussed this with me 5 before. There is a lot of misunderstanding about how the 6 plan works and what it means to give the release. 7 When you give the release, it opens up the 8 opportunity to participate in the settlement. It allows 9 your claim. Right? That's the way -- that's the bargain 10 that was made. It doesn't mean you get dollars. Right? 11 And that's the part that I know is very frustrating to 12 claimants. Because a claimant will say, wait, I don't 13 understand, I gave a release. What do you mean, now I find 14 out six, seven months from now I don't get anything? That's 15 actually the way the plan works across the board for all 16 claimants. No claimant knows when they give a release that 17 they are definitely, I guess other than -- there are certain 18 states, right? But that they're definitely –

SO IT WAS STATED THE TRUST POOL IS THE TRUST POOL YET THAT ALSO ISNOT FACTUAL IF THE SACKLERS RETAIN CASH.

'But giving the 11 release lets them participate in the settlement.'
AGAIN MR PREIS CLEARLY STATES THE PROBLEM WITH RELEASE NOT BEING CONSENSUAL WHEN NONE OF US WERE INVOLVED IN MAKING THIS 'BARGAIN' THAT IS NO BARGAIN FOR MS WALKER.

'The bargain here was the allowance of the 23 claim is given in return for giving the release.'

EVEN THE COURT WAS LIKE WHAT….AS MS WALKER WAS.

'25 THE COURT: I was with you until the last thing Page 108 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 you said, the allowance of the claim allows for the release'

9 MS. WALKER: Okay, and I still just really have 10 issues, like, with discharge and what the difference is of 11 emergence, discharge. And as I understand bankruptcy, like, 12 nothing is discharged until everybody's paid. So if that 13 happens over 15 years, there should not technically be a 14 discharge or an emergence for the Sackler family or Purdue. 15 THE COURT: All right. Again, there's different 16 rules here for the Sacklers and for Purdue. Purdue is the 17 debtor, right? 18 MS. WALKER: Right. 19 THE COURT: And that's the party that we can have 20 a discussion about the bankruptcy discharge. But that 21 really has to do with the debtor. The Sacklers, the only 22 thing that is implicated here is not a bankruptcy discharge. 23 It's a release by virtue of the opt-in that we've already 24 discussed. 25 MS. WALKER: Which I think is unconstitutional and Page 111 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 what the Supreme Court ruled on. I agree with the other pro 2 se claimants. 3 THE COURT: All right. 4 MS. WALKER: All right. Thanks, Judge.

MS. WALKER: Well, I would like it in an amendment and so that we do have -- you know, claimants do have the right to revoke release. THE COURT: All right. All right. MS. WALKER: Okay.

AGAIN MS WALKER WAS IN THE HEAD OF THE COURT THROUGHOUT THE ENTIRE CONFIRMATION THAT NEVER SHOULD HAVE HAPPENED A STAY SHOULD HAVE BEEN ISSUED TO HALT THIS PLAN BEFORE THE COURT AND LAWYERS COULD CRAMDOWN THIS PLAN DOWN OUR THROATS…..MS WALKER HAD ADDED TO THE URBAN DICTIONARY SINCE IT ISNOT A WORD IN THE FRBP.



THIS STATEMENT IS ENTIRELY NOT FACTUAL MS WALKER REQUESTED A STAY 11.18.25 MID CONFIRMATION…EXCUSE ME.

21. This settlement, embodied in the "deemed allowance" provisions of the Plan, was put before the Bankruptcy Court and all parties in interest at confirmation and was approved as a settlement of these potential objections. No party, including the Appellants, objected to the allowance of any claim under this provision as an unreasonable settlement with respect to such

claims.35 Instead, the Appellants objected to their not receiving the same consideration as Settling Claimants, notwithstanding their presumably considered decisions not to provide their fellow creditors with the same benefit.

THIS STATEMENT IS ABSURD BASED ON NOVEMBER OF 2025 WHEN OUTSTANDING LATE OR CLAIM ISSUES WERE NOT YET RESOLVED AND CONTINUE TO NOT BE RESOLVED.

IT IS AKIN GUMP THE UCC WHOSE LOGIC IS LEGALLY FLAWED…

'The Appellants continue this logically and legally flawed approach before this Court, asserting that they should be provided with the same benefits as those who agreed to settle, despite not giving up the same rights.36'

THAT IF PURDUE PHARMA PI CLAIMANTS ALL HAVE EVI EVI EVI DANCE AS MS WALKER DOES YET SOME OPTED IN AND OTHERS DID NOT THEN THE PURDUE CLAIMS ARE NOT TREATED THE SAME DUE TO THE ACCEPTANCE OR NOT OF THE NON DEBTOR SACKLER CASH BRIBE FOR AN IN PERPETUITY RELEASE SO THE SACKLERS AVOID FUTURE LITIGATION WHEN PURDUE PHARMA PI CLAIMANTS TO MS WALKERS KNOWLEDGE HAVE NO LAW SUIT AGAINST THE SACKLERS THAT MS WALKER IN FACT DOES AND SHOULD NOT BE FORCED TO GIVE UP MY AMENDMENT I RIGHT TO PETITION FOR REDRESS AGAINST THE NON DEBTOR SACKLERS THAT IS WHAT ISNOT FAIR & WHY THE PREMATURE OPT IN OR NOT OPT IN WAS NOT FAIR EQUAL JUST OR CONSENSUAL IT WAS AN OPT IN WITH A PROVERBIAL GUN AT OUR HEADS WHICH ISNOT CONSENSUAL NOT EVEN CLOSE.

'The Appellants continue this logically and legally flawed approach before this Court, asserting that they should be provided with the same benefits as those who agreed to settle, despite not giving up the same rights.36'

WHY?

'(ii) the opportunity to settle their claims against the Sacklers in exchange for additional value.'

RIGHT SO IN EXCHANGE FOR NON DEBTOR SACKLER CASH FOR NO THING THE PURDUE PI CLAIMANTS DID NOT HAVE TO FILE A LAW SUIT LIKE MS WALKER DID YET ARE GETTING ADDED BENEFIT DOLLARS WHEN THEY HAVE NO THING TO RELEASE THE SACKLERS FOR MS WALKER IN FACT DOES. THIS IS EXHAUSTING HAVING TO REPEAT MYSELF OVER & OVER & OVER & OVER YET CONTINUE TO BE UN HEARD AND MY RIGHTS STOMPED ON AND THE WORDS OF COURT DEBTORS UCC ET AL ON RECORD BEING BROKEN AS HAS THE PLAN BEEN.

'Plan may put the non-releasing Appellants in the same position, albeit on a delayed timeline: they

have declined the invitation to settle with the Sacklers, but if no objections are raised to their claims within 18 months after the Effective Date, their claims as well will be deemed Allowed and they will be entitled to whatever estate value the applicable TDP would have assigned their claim had they settled before confirmation.'

AND WHOOP HERE IT IS AGAIN STRAIGHT FROM THE UCC HORSES AKIN GUMP FINGERS MOUTHS AGAIN….THE PLAN IN FACT DOES TREAT PURDUE PI CLAIMS NOT CONSISTENTLY….FORCING PERFECTLY VALID PURDUE PI CLAIMS WHO DID NOT TAKE THE NON DEBTOR SACKLER CASH BRIBE TO WAIT EVEN LONGER AFTER THE FIRST REVERSED REJECTED ILLEGAL INCOMPETENT LAWYERING FROM PLAN I THE SUPREME COURT DEEMED UNCONSTITUTIONAL.

REALLY ARIK AND AKIN YOU ARE IN FACT WRONG WRONG WRONG….

C. Ms. Walker Is Not Uniquely Situated with Respect to Her Direct Claims.
26. One Appellant, Rosemary Walker, appears to argue that she, alone, among the tens of thousands of individuals who filed proofs of claim against the Debtors, has a valid claim against the Sacklers. Starting from this premise, she treats the other claimants as interlopers, giving up claims that they never possessed in exchange for additional value that should belong to her alone. There is no basis for the distinction Ms. Walker claims. 27. As an initial matter, Ms. Walker's view of her own status appears premised on the fact that, rather than filing a timely proof of claim against the Debtors as required by the Bankruptcy Code, she commenced state court litigation against the Sacklers and the Debtors in 2023.39 This litigation was commenced in violation of the automatic stay imposed by Bankruptcy Code section 362 and the Bankruptcy Court's preliminary injunction, and could have been treated as void ab initio.

40 Instead, it—like the hundreds of other lawsuits pending against the Debtors

39 Walker v. Purdue Pharmaceuticals L.P., et al., Case No. 23-CV-3393 (Or. Cir. Ct., Marion Cnty.) She is not unique even in this respect; various litigants commenced improper litigation in violation of the automatic stay and the Preliminary Injunction during the past seven years and had such litigation stayed. 40 See In re Heating Oil Partners, 422 F. App'x 15, 18 (2d Cir. 2011) (litigation against a debtor that proceeded in violation of the automatic stay was void).15 and the Sacklers—was stayed. Nevertheless, Ms. Walker appears to argue41 that the pendency of her lawsuit, which she commenced in direct violation of federal law and a court order, elevates her claims against Sacklers over others. On the issue of factual support for this allegation, it suffices to note that Ms. Walker has never obtained a judgment in her favor against the Sacklers or the Debtors, rendering her situation in this respect precisely the same as that of any other claimant.42 28. But in a more fundamental sense, there is no set of facts that could support Ms. Walker's objection on these grounds because she appeals to a version of the law that does not—and cannot—exist. Again, while the Plan is complex and contains numerous interdependent components, the settlement of direct claims is a straightforward consensual exchange of a release for value. If courts were required to find that a plaintiff had a valid claim before signing off on a settlement, it would vitiate the entire notion of compromise. Ms. Walker's

claims are not uniquely valuable, and her frequently offensive attacks on her fellow claimants are baseless from a legal perspective. Her special pleading notwithstanding, her arguments should be discarded and the confirmation order affirmed.

MS WALKER HAS PROVIDED EVI EVI EVI DANCE WHY AKIN GUMP THE UCC IS TOTALLY WRONG HERE. NOTE IN MS WALKER CASE NUMBER AND CAPTION CONTINUE TO BE WRONG SINCE DAVIS POLK NEVER CORRECTED MY PETITION NUMBER THAT CONTAINS MS WALKERS CLAIMS WHICH IS 23CV33935 THAT CHRISTINE AZZARO CONTACTED PAUL SCHWARTZBERG TO CORRECT WHO TYPED IT WAS NOT HIS DOCUMENT IS WAS DAVIS POLK WHO NEEDS TO CORRECT IT ALAS NO ONE EVER HAS WHY MS WALKER REQUESTED EVERY SINGLE CASE BE REVIEWED FOR SLOP ERRORS ALAS THAT ALSO NEVER HAPPENED WHY MS WALKER HAS TO REPEAT ASK OVER AND OVER AND OVER AND OVER…..WHICH IS BEYOND NOT FAIR.

A 'COMPROMISE MS WALKER HAD NO PART OF THAT FORCES GIVING UP OF A RIGHT ISNOT A COMPROMISE MS WALKER IS WILLING TO MAKE NOR ACCEPT.

AGAIN THAT ISNOT THE CORRECT CASE # OR CAPTION AS MS WALKER HAS PROVIDED THE SERVICE FOR HER OREGON LAW SUIT AGAINST BOTH THE SACKLERS & PURDUE.

MS WALKER CAN NOT BE HELD RESPONSIBLE FOR MORE INCOMPETENT LEGAL FROM THE MARION COUNTY CIRCUIT COURT WHO HAS BEEN CLUELESS AND YES EVENTUALLY WHEN MS WALKER INFORMED HER WHAT I HAVE BEEN TOLD IN FACT DID PLACE THE CASE ON INJUNCTION. AGAIN MS WALKER ISNOT AT FAULT HERE YET CONTINUES TO BE PUNISHED AND DELAYED UNTIL THIS CONSENT & OPT IN NOT OPT IN ISSUE IS RESOLVED.

'39 Walker v. Purdue Pharmaceuticals L.P., et al., Case No. 23-CV-3393 (Or. Cir. Ct., Marion Cnty.) She is not unique even in this respect; various litigants commenced improper litigation in violation of the automatic stay and the Preliminary Injunction during the past seven years and had such litigation stayed.'

BECAUSE YES UNLIKE THE OTHER PURDUE PHARMA PI CLAIMANTS WHO DID NOT GO SCHLEP TO COURT BEING DISABLED WHEN MS WALKER HEARD ABOUT PURDUE BEING IN SUPREME COURT GO FILE A CLAIM AGAINST BOTH PURDUE & THE SACKLERS THEREFORE AGAIN DO NOT HAVE A PENDING LAW SUIT TO RELEASE THE NON DEBTOR SACKLERS AND AGAIN MS WALKER SHOULD NOT HAVE TO GIVE UP RIGHTS APPEAL OR OTHERWISE. THAT VIOLATES MY RIGHTS.

OBVIOUSLY MS WALKER SINCE EFFECTIVE YES HAS ATTEMPTED A DEFAULT JUDGEMENT SINCE THE SACKLERS NEVER RESPONDED ONLY MARC TOBAK FROM DAVIS POLK MAKING IT VERY CLEAR DAVIS POLK REPRESENTS ONLY PURDUE PHARMS SEE….

& WHO ALSO WROTE MS WALKER BEING A DISABLED PRO SE PAUPER DID NOT HAVE TO MAIL MAIL SOMETHING IMPOSSIBLE FOR A PAUPER TO DO WHY MS WALKER REQUESTED A PRO BONO LAWYER THIS COURT WRONGFULLY DENIED WHICH WOULD MAKE NO DIFFERENCE AS PRO BONO LAWYERS ARE UNICORNS AND EVEN AN ORDER WOULD NOT GUARANTEE THE SAME EQUAL PROTECTION BOTH NON & AMERICAN CRIMINALS ARE PROVIDED LEGAL REPRESENTATION AS ALAS MS WALKER ISNOT A CONVICTED FELON.



Sun, Oct 22, 2023, 2:12 PM

**Tobak, Marc J.**
**<marc.tobak@davispolk.com**
**>**

to me

Ms. Walker,

I represent only Purdue Pharma and its affiliated debtors in their bankruptcy cases.  I do not represent Purdue in any other case, and do not represent any of the Sacklers.

Best,

Marc

**Marc J. Tobak**

**Davis Polk & Wardwell** LLP

+1 212 450 3073 office
+1 646 831 5116 mobile

marc.tobak@davispolk.com

Tue, Oct 17, 2023,
6:59 AM

**Tobak, Marc J.**
<marc.tobak@davispolk.com>

to me, Erwin,
GUTRIDGE,
MAR-ADA@ojd.state.
or.us, NYSBdb_SHL,
Terry,
constituentservices,
evening@cbsnews.co
m

Dear Ms. Walker,

Thank you.  There is no need to send me a paper copy; a complete emailed copy of your filing is sufficient.

Regards,

Marc

**Marc J. Tobak**

**Davis Polk & Wardwell** LLP

+1 212 450 3073 office

marc.tobak@davispolk.co

THIS IS A SUPER PROBLEMATIC STATEMENT FROM AKIN GUMP UCC & NO MS WALKER SHOULD NOT BE AGAIN DISCARDED. EVEN MS WALKER AS AN AMERICAN CITIZEN IS ENDOWED WITH UNALIENABLE RIGHTS THAT NO ONE NO COURT CAN TAKE FROM ANY OF US THE RIGHT TO PETITION FOR REDRESS & TO DUE PROCESS & EQUAL PROTECTION OF LAWS.

'If courts were required to find that a plaintiff had a valid claim before signing off on a settlement, <mark>it would vitiate the entire notion of compromise</mark>. Ms. Walker's claims are not uniquely valuable, and her frequently offensive attacks on her fellow claimants are baseless from a legal perspective. Her special pleading notwithstanding, her arguments should be discarded and the confirmation order affirmed.'

UM THIS IS NOT FACTUAL…

'equitably moot because the Plan has been substantially consummated.'



Tue, Apr 28, 11:02 AM

**Preis, Arik**
**<apreis@akingump.com>**

to me, Arik

Consummated is synonymous with going effective.

Arik

**Arik Preis**

**Akin**

Direct: +1 212.872.7418

In law, "consummate" (or consummation) means the final completion, fulfillment, or finishing of an act, process, or legal obligation. It most commonly applies to the completion of contracts, marriages, or specific property rights. [1, 2, 3, 4]

## Key Legal Contexts

- **Contracts:** The point when all terms are fulfilled and parties become fully legally bound, which goes beyond just signing the paperwork

# consummate

2 of 2

## verb

con·sum·mate ˈkän(t)-sə-ˌmāt

**consummated; consummating**
*transitive verb*

### 1

**:** to make (marital union) complete by sexual intercourse

*consummate* a marriage

### 2

**a**

**:** **finish**, **complete**

The deal, which the parties hope to *consummate* early next year, is expected to result in a combined organization with … 650 employees and nearly $4 billion in total assets.

Lucas High

**b**

**:** to make perfect

THIS PLAN ISNOT WHEN THE COURT MODIFIED THE PLAN AFTER EFFECTIVE….SEE DOC 9406 THAT THE COURT MODIFIED WHAT WAS 'CONSUMMATED' AS 'PERFECT'. THE COURT AT EFFECTIVE IS SUPPOSED TO ENFORCE NOT MODIFY AMEND CHANGE WHAT HAS BEEN BOTH CONFIRMED AND EFFECTIVE.



MOOTING EFFECTIVE AND THE ENTIRE PLAN & THE WORD ON RECORD BY THE COURT MS WALKERS LATE CLAIM & OPT IN NOT OPT IN CONSENT ISSUES WOULD BE HEARD AND RESOLVED PRIOR TO EFFECTIVE THAT NEVER HAPPENED.

AGAIN SO ONCE INCORRECT DATA IS PROVIDED ON RECORD AKIN GUMP UCC DEBTORS THE PURDUE PI TRUST ALL JUST CONTINUE TO REPEAT FALSE WRONG INFORMATION WHEN ARIK KNOWS MS WALKER FILED THE JULY 28TH CLAIM FORM…& ARIK WAS WHO HAD TO REQUEST KROLL FINALLY ISSUE MS WALKERS CLAIM NUMBER ARIK FROM AKIN WROTE THAT MS WALKER I WAS CONFUSED…

MS WALKER ISNOT EQUITABLY MOOT PER THE CONFIRMATION RECORDS WORDS FROM THE COURT ET AL MS WALKERS LATE CLAIM HEARING WOULD BE PRIOR TO EFFECTIVE & EVEN AFTER EFFECTIVE THAT THE OPT IN NOT OPT IN CONSENT ISSUE

MAY 20, 2026 THE COURT

'15 I will ask the folks from the plan administrator 16 as you can see, there is still an issue about this opt-in, 17 opt-out about Ms. Walker feels very strongly, was on my list 18 to talk about, to say, when are we going to schedule a 19 hearing on that issue? and so let me ask folks for their 20 wisdom on that procedurally whether it's going to be handled 21 at a later hearing. But probably frankly, sometime soon 22 because it needs to be addressed.'

THE COURT CONTINUED

'5 And I do think at some near-term future hearing 6 that we will include any issues about -- I think Ms. 7 Walker's issue about that her opt-out is sort of unique 8 among the many, many claimants here. I don't know if 9 there's anybody else who's had that particular issue of 10 going back and forth on her views about whether to opt-in or 11 opt-out.'

MS WALKER ISNOT EQUITABLY MOOT I BEG AKIN GUMPS PARDON THE PLAN IS WHAT IS EQUITABLY MOOT.

MAYBE AKIN GUMP DEBTORS MDT THE COURT SHOULD HAVE RESOLVED ALL OUTSTANDING ISSUES PRIOR TO EFFECTIVE KEEPING THEIR ON RECORD WORDS THEN NONE OF US WOULD BE HERE RIGHT NOW. EVERYONE SURVIVED REVERSAL OF THE FIRST PLAN AS EVERYONE WILL SURVIVE AND FIGURE OUT HOW TO RESOLVE THE SAME ISSUES BECAUSE NO ONE STUCK TO THE WORDS OF THE PLAN NOR THEIR OWN WORDS ON RECORD WHICH ISNOT AT ALL MS WALKERS FAULT WHO HAS ONLY TRIED CONTINUOUSLY TO BE HEARD AND HER WORDS ACTED ON & HER RIGHTS ENFORCED ALAS ….HASNOT HAPPENED.

MS WALKER TOTALLY & STRONGLY DISAGREES WITH THIS STATEMENT.

'The merits of these appeals are not complex or difficult, and a single ruling addressing all possible bases limits the number of further appeals that may be taken as of right (and the further depletion of value that otherwise could be used in abating the opioid crisis defending against such appeals). In short, the inevitable appeals from this Court's decision to the Second Circuit should be the long-delayed final word on the matter.'

THE GALL TO EVEN STATE 'ABATING THE OPIOID CRISIS' WHEN THE SAME EXACT DRUG IS STILL BEING PRESCRIBED & AS PURDUE PHARMA PI CLAIMANT VICTIMS GET ZERO FUTURE HEALTHCARE NO COUNSELLING NO REHAB TREATMENT NO MEDICAL AT ALL AS JUST ANY OLD OPIOID NOT PURDUE PHARMA BRAND SPECIFIC WILL GET 'ABATEMENT' WITHOUT PROVIDING ANY PROOF AT ALL THEY WERE A VICTIM & PRESCRIBED A PURDUE PHARMA BRAND NOW KNOA OPIOID THAT ALL OF US IN THIS BANKRUPTCY HAVE HAD TO PROVIDE ALSO NOT FAIR EQUAL CONSISTENT OR JUST.

WAIT IS AKIN GUMP ATTEMPTING TO STOP 2nd CIRCUIT APPEALS HERE…AGAIN WRONG AGAIN.

THESE CASES CAN NOT END DUE TO THE ACTIONS OR NON ACTIONS OF THE DEBTORS THE UCC THE AD HOC THE MDT AND THE OF THE COURT WHO DID NOT KEEP THEIR WORDS.

'36. In the interest of finally letting these cases end, the Official Committee respectfully asks this Court to affirm the Confirmation Order on the merits and, in the alternative, hold that the appeals should be dismissed.'

THE FACT PAYMENTS WILL BE MADE OVER 15 YEARS ENSURES THESE CASES WILL NEVER END AND BY DISALLOWING SO MANY CLAIMS THE COURT ET AL HAVE MADE SURE PER HOWARD ISRAEL EDGARS NEW LAWYER OH HOW IS IT NOT A CONFLICT EDGAR HAS BEEN IN CHARGE OF SEVERAL TRUSTS…NO WONDER EDGAR COULD NOT PROVIDE EXACTLY HOW MANY TIER I TIER 2 & NAS CLAIMS THERE WERE ON RECORD NOT PROVIDED IN THE STATUS REPORT DOC 9378 6.19.26 WHEN MS WALKER ASKED THE ANSWER WAS THEY 'DON'T KNOW' WHEN EVERY ACCEPTED REVIEWED CLAIM CASH SHOULD HAVE BEEN READY UPON EFFECTIVE TO HIT SEND AND EVERYONE PAID AT THE SAME TIME. THAT IS HOW A COMPETENT OFFICE WITH A COMPETENT DATA BASE SYSTEM WOULD HAVE WORKED AFTER ALL THESE YEARS. THIS HAS BEEN TOTAL LEGAL SLOP FROM THE FIRST REVERSED REJECTED UNCONSTITUTIONAL PLAN THAT STILL IS & AGAIN MUST BE STAYED UNTIL AGAIN HEARD BY THE SUPREME COURT FOR IN FACT NO MATTER HOW MANY TIMES LAWYERS REPEAT THE SAME BS MS WALKER HAS BEEN ACCUSED OF HAVING TO REPEAT HERSELF OVER & OVER & OVER LAWYERS DO ALL THE TIME APPARENTLY MS WALKER IS NOT AFFORDED THE SAME RIGHT TO AMENDMENT I.

THERE WOULD HAVE BEEN NO NEED TO HAVE 'CHANGED THE PLAN' IF THE PLAN WAS CONSENSUAL & DID NOT VIOLATE HARRINGTON RIGHT.

11.14.25 page 102-103

'22 THE COURT: All right. Thank you. And again, I 23 appreciate it. I know we've been peeling the layers of this 24 back. I think it's worthwhile. It's an important issue. 25 And so I just want it to be very clear. And I appreciate Page 102 Veritext Legal Solutions 212-267-6868

www.veritext.com 516-608-2400 1 the education. 2 And so Mr. Walker's question spurred some very 3 useful information on the record. 4 MR. HUEBNER: And a new fixed deadline. 5 THE COURT: And a new fixed deadline. 6 MR. HUEBNER: So she changed the plan.'

MS WALKER RESTS HER CASE AGAIN AGAIN AGAIN AGAIN AGAIN.

MS WALKER HAS HEARD FROM THE BANKRUPTCY COURT I HAVE APPARENTLY BEEN BANISHED FROM AMENDMENT I WHICH IS UNCONSTITUTIONAL AND APPARENTLY LIKE THE BANKRUPTCY COURT WHO HAS NOT DOCKETED HER LAST TWO UPLOADS AFTER REQUESTING PERMISSION MS WALKER A QUALIFIED DISABLED PRO SE PAUPER WOMAN MUST BEG PERMISSION TO ENFORCE HER RIGHTS WHICH IS OUTRAGEOUS. SO THE BILL OF RIGHTS IS IN FACT A FRAUD IF WE THE QUALIFIED DISABLED AMERICAN PAUPER WOMEN CAN NOT AFFORD THE BILLS TO ENFORCE OUR RIGHTS…..THAT SIMPLY CAN NOT BE A THING IN AMERICA.

MS WALKER MUST BE PERMITTED TO PETITION FOR REDRESS.

UHHHH THE COURT DOT GOV WEBSITE IS STILL NOT FUNCTIONING WHICH ISNOT ACCESSIBLE NOR DUE PROCESS SDNY DISTRICT COURT & AN ADA & TITLE RIGHTS VIOLATIONS.



rosemary helen ziziros walker          7.25.26          9:15 pm