SDNY US DISTRICT COURT
300 QUARROPAS STREET
WHITE PLAINS, NEW YORK 10601-4150

RE: ROSEMARY HELEN ZIZIROS WALKER VS PURDUE PHARMA

DISTRICT COURT CASE #25CV9681

**AMENDMENT TO RESPONSES TO DEBTORS, UCC & MDT BRIEF RESPONSES I FORGOT THIS HEARING BECAUSE IT MADE MS WALKER DIZZY HAVING VERTIGO & TINITIS TO READ IN THE 4 PAGES PER PAGE IN A WEIRD UP & DOWN ORDER.

TO BE CLEAR MS WALKER ISNOT FREE FROM THE INJUNCTION BECAUSE THE COURT HAS NEVER HAD A CONSENT OPT IN OPT OUT HEARING & DID NOT HEAR MY LATE CLAIM UNTIL AFTER EFFECTIVE AND UNTIL I GET MY SPECIAL MASTER APPEAL MY 23CV33935 CAN NOT MOVE FORWARD UNTIL THE OPT IN NOT OPT IN CONSENT ISSUE IS RESOLVED.

hat's still being worked on in the background, and we will tee it up for hearing when the time appears to be right.

Page 23

THE COURT: All right. Let me see if I can give a little bit of context from the 1000-foot view. Which is, this happens in a lot of bankruptcies. There are different omnibus claims objections. And so, I know it can be very anxiety inducing. It can cause a lot of nervousness by folks who are waiting to see if their claim is going to be subject to a claim objection. But the wait is not nefarious. It actually reflects the fact that there's -- Given so many claims in this case, there's a desire to handle things consistently and uniformly. So, as Mr. Huebner just mentioned, there had been one late filed claim motion that was filed a while back, and I asked to hold off on that because I wanted to deal with late filed claims when I sort of had a sense of what all the issues were and how they impacted all the pool of claims. So the fact that we're waiting is not nefarious. It sort of reflects a desire to, when an issue gets teed up, that it gets teed up in a way that's consistent. And so that's just to let people know, and just Mr. Huebner can comment on this, if I get this wrong.

When any claim objection gets teed up, going forward, you will get a notice of the hearing. And so, that will happen right now, since none of those are scheduled.

MS WALKER STRONGLY DISAGREES IN MS WALKERS CASE THIS HAS BEEN STRAIGHT UP NEFARIOUS NOT IN GOOD FAIRTH & MADE UP AS THEY WENT ALONG.

Page 24 SURE FEELS NEFARIOUS TO MS WALKER BOTH THEN AND MORESO NOW.
When they do get scheduled, there'll be a notice sent out, so you will know. And again, I mention this all just because I know people get very nervous about these issues. And I understand your concern. And so there is a process for doing it. And again, it's governed by the Bankruptcy Code, and so you will get notice of any hearing that affects you and your claim. But the fact that those things haven't necessarily -- issues of timeliness, for example, late filed claims, haven't had a hearing yet, is not nefarious.

PAGE 27 THIS SIMPLY ISNOT FACTUAL FOR MS WALKER WHO HAS LOST MEANINGFUL RIGHTS.

And I also want to make it clear that the effective date does not change anybody's legal rights as to a claim and your ability to be heard. So, as an individual, it doesn't affect you that way. So there's nothing that makes it worse for you or better for you that a claim objection, or you might be heard on your claim after the effective date, as opposed to before.

PAGE 29 UM THIS IS NOT FACTUAL FOR MS WALKER SINCE MS WALKERS CONSENT OPT IN NOT OPT IN ISSUES HAVE YET TO BE 'TEED UP' STILL YET.

After that date, any party that did not elect to grant the releases can sue the Sacklers anywhere they want, on any theory they believe appropriate. When that day comes, the company will issue a press release, there will be a notice of effectiveness filed on the docket. That notice will expressly state that the preliminary injunction has now been lifted as to the related parties. Nobody needs a special order.

THEN WHY DID THEY ….I 100% DO NOT BELIEVE THEM OR THEY WOULD NOT HAVE. AFTER TRYING TO MAKE MS WALKER GIVE UP HER APPEAL RIGHTS & THE ENTIRE POINT OF CREATING THE MARCH 1 2026 NEW DEADLINE SO MS WALKER KNEW IF MY CLAIM WAS ALLOWED OR NOT & MS WALKER SHOULD NOT HAVE TO CHOOSE BETWEEN MY PURDUE CLAIM OR MY SACKLER CLAIM THAT IS DENYING MS WALKERS RIGHT TO PETITION WHEN MS WALKER DID NOT FORCE MARION COUNTY TO ACCEPT MY PETITION THEY DID NOT EVEN KNOW THERE WAS AN  INJUNCTION & I DIDN'T EVEN KNOW WHAT THAT MEANT. AGAIN MS WALKER HAS & HAD A PENDING PETITION AGAINST THE SACKLERS AGAIN OTHER PURDUE PI CLAIMANTS DO NOT TO RELEASE THE NON DEBTORS FOR.

Page 30
Finally, Your Honor, and this is the very last thing I'll say before the agenda, I do want to note that the Debtors, the committees, the fiduciaries, and the other parties in the case, we take no joy of any kind in opposing the relief requested by individual victims. We take no joy in objecting to people's claims

PAGE 30-33 THIS WAS EXACTLY THE TIME AS UCC FEES WERE BEING DISCUSSED TO REVOKE 50% FOR LEGAL INCOMPETENCE WRITING A REVERSED REJECTED NOT CONSTITUTIONAL FIRST PLAN MS WALKER MOTIONED BE PLACED INTO THE ALLOWED PURDUE PI TRUST TO BE EQUALLY DISTRIBUTED BETWEEN NO LONGER PURDUE PATIENT VICTIMS WHO HAD TO SHOW PROOF OF USE OF A PURDUE BRAND DRUG UNLIKE FOR 'OPIOID ABATEMENT' DRUG USERS WILL HAVE TO PROVIDE & WHEN ALL OF US PAY TAXES FOR MEDICARE WHICH IS TAXATION WITH NO REPRESENTATION WHEN THE GOVERNMENT WHO ALLOWED ALL THIS IS TO AT FAULT AND ALREADY WAS PAID TAXES SO HAVE DOUBLE TRIPLE MAYBE MORE PROFITED LIKE PHARMACIES & DOCTORS. MS WALKER HAS BEEN FALSELY ACCUSED OF COSTING MONEY WHEN IT IS THE COURT ET AL WHO ARE AT FAULT NOT MS WALKER. MS WALKER HAS EVERY RIGHT TO ASK AS QUESTION MS WALKER HAS ASKED OR WAITED FOR A BREAK IN SPEAKING TO UNMUTE WHEN I HAVE CALLED IN BY PHONE NOT ZOOM SO CAN NOT SEE OR HAVE INSTRUCTIONS WHICH IN ITSELF HAVING MULTIPLE FORMATS ISNOT FAIR TO MS WALKER A DISABLED PRO SE PAUPER WITH VERY GOOD IMPORTANT ISSUES & QUESTIONS THAT CHANGED THE PLAN. AGAIN IT IS MS WALKER WHO HAS BEEN ABUSED.

MS. WALKER: Can I ask a question?
THE COURT: Yes.
MS. WALKER: Why are these professionals agreeing to reductions? Is it due to incompetent work?
THE COURT: No. It's a very loaded way to ask that question. No. So there's a lot of work being done, and there are guidelines about how things should be billed

and addressed. And so, we have a Fee Examiner, which is not a normal thing in the bankruptcy Court and in bankruptcy cases, who is specifically charged with looking at all the applications, and looking for consistency and anything that might not follow a guideline. So, Mr. Klauder, maybe you can give a better answer than I just gave.

MR. KLAUDER: Yeah. I mean, again, Your Honor, it should be noted, these are voluntary reductions through a back and forth. Oftentimes, the professionals are very adamant that the fees that they have charged are appropriate.

But in the spirit of resolution, based on the comments we provide, they do agree, in some instances, to

9 (Pages 30 - 33)

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

Page 34

additional reductions. I would agree with Your Honor, I would not classify it as that individual indicated. But we do set forth a number of issues that do not follow the typical or we believe may not fall into the appropriate billing standards in bankruptcy Court, and then have the back and forth.

If there's any specific questions, I'm happy to have a discussion offline with anybody who wants to understand our process a little more specifically.

MS. WALKER: Judge, would that mean that Mr. Klauder would decide -- If the Supreme Court rejected the first plan because it was unconstitutional, would he decide, and would I negotiate with him about lawyers giving up 50% of their cash earned.

THE COURT: Okay. Ms .Walker, you've raised an issue that has nothing to do with the fee applications that are on today. Mr. Klauder is here to deal with fee applications. He has nothing to do with the Supreme Court's review of anything in this case. (indiscernible) Ms. Walker, remember I said about talking over people. This is something that you do habitually.

MS. WALKER: I asked if I could speak.

THE COURT: Okay. Ms. Walker, this is probably the fourth hearing in a row where you participated, where I've had to mute you because you ask a question and then you

Page 35

won't let me answer it, or you raise an issue at an

inappropriate time.

There are a lot of people on the phone. There's a lot of money being charged by professionals. Even now, your way of conducting hearings is costing everyone, in this case, a lot of money that could otherwise go to opioid abatement.

MS. WALKER: That's not fair.

THE COURT: Okay. Cut her off completely. Thank you. So, I will answer the question, notwithstanding circumstances. Mr. Klauder has nothing to do with the Supreme Court's review of this case, in the past or any potential review in the future. He is here for a specific task.

Again, it's something that happens in specific cases that are large enough and complex enough where it is helpful to have somebody who is an independent person, working to try to make sure that the fees are appropriate. I review fees as well. And I have many binders' worth of fees that are submitted to me in cases, and take that very seriously. Reviewing of fees does not indicate in any sense of the word, improper behavior or malfeasance, as people refer to it. We're just looking to make sure that what's charged is appropriate.

Page 36

So, if there was such an instance of malfeasance that was brought to my attention, I'll look at it and so would Mr. Klauder.

So, anyone else who wishes to be heard in connection with the Debtors professionals? All right. So, given my review of these fee applications, and Mr. Klauder's review of them as well, and his communications with the professionals involved and agreed upon reductions that are identified in the record here this morning, I'm happy to approve the applications as amended on the record here this morning.

And with that, we can turn to the professionals listed as O through T, that are the professionals of the Official Committee of Unsecured Creditors. Mr. Klauder?

MR. KLAUDER: Thank you, Your Honor. Again, just referencing the changes, there are two, in particular, Akin Gump Strauss Hauer and Feld, which, I think, is item O on the agenda. The counsel to the committee has agreed to an additional fee reduction of $62,911.33.

Page 58

the naming of the different Purdue companies. Those rulings are what they are, and we're not here to revisit that. So, Ms. Isaacs? All right, I'm not hearing from Ms. Isaacs. Ms. Morales? All right, I'm not hearing Ms. Morales. Ms. Walker, it is now your turn to give me your five minutes on what you'd like the Court to do.

MS. WALKER: Hi, there. One, I would like for the Debtors to speak, because how do we respond to whatever they say that they've already said that we've responded to, if they change something that they sent.

You have continuously referred to, and Cate, in fact, just did, the effective date, and that technically, my Sackler lawsuit would go forward as of the effective date that Arik Preis said that I would not be teed up until after the effective date.

Therefore, again, the March 1 deadline for me to opt out to not agree to the coerced Sackler bribe, it puts me in jeopardy. That was my whole point of the date being so effective. Then, again, the lawyers are using the term emergence.

When there's a discharge, there's an effective date. But the term emergence doesn't mean anything. So are they talking about discharge that can't happen for 15 years, until all the money is paid?

Page 59

And then did Richard Sackler sign the document that the hearing was adjourned the other day? Because you have my responses. My dates are moot. Reciprocal needs to be a thing. So if you can opt in, you must be able to also opt out when things are not teed up before effective date. But I need some of my questions answered.

THE COURT: All right. Thank you, Ms. Walker.

MS. WALKER: So did Richard Sackler sign the documents? (indiscernible).

THE COURT: I'm going to address everybody's comments at the end. I can say there were various -- I have issues brought to me when there's a need for me to act. There was a hearing dealing with some of the mechanics of getting this case to the effective date, including the signing of various documents.

That hearing was canceled when parties told me it wasn't necessary. So, the details is exactly who signed what. I don't have in front of me, other than I have what the plan says needs to be done in order for the case to --.

MS. WALKER: Well, those dates are moot. So how can you set an effective date if the Sacklers haven't signed the document? That would have to happen before an effective date is set.

PAGE 74

Moving on to Ms. Walker, who spoke next. So, Ms. Walker filed 24 of the 37 requests for relief that are noticed for today's hearing. Her submission spanned 185 pages. Rather than going through those requests for relief one by one, I'll just -- I think our papers provide a complete response to them.

I will just respond to one point that she raised, which is regarding whether she can pursue her claims on the effective date. Ms. Walker filed two submissions. It's

Page 76 MS WALKER HAS BEEN TOTALLY POOH POOH'ED.

multiple submissions that raised these two issues. It's a late claim motion and issues related to her election, with respect to the releases.

Those issues will be decided at a later date. We will address Ms. Walker's late claim motion with other late claim motions. And with respect to Ms. Walker's election on the releases, Ms. Walker has submitted two ballots. One elected to participate in the releases. Another one did not elect to participate in the releases. We're trying to work through what all of that means, but that issue is just not on for today.

MS. WALKER. But it's on the agenda.

MR. SHINBROT: And when it is, Ms. Walker will receive notice of that decision.

MS. WALKER: I did, today. I thought these were the (indiscernible).

THE COURT: Again, I'm hearing from the other side. I have your many, many submissions, 24 of them. And I understand your issue. And so, I'm going to ask Debtors' counsel to move on to any other comments so we can wrap this up.

MS. WALKER: Judge, do you want some laws, like 28 USC, 11 USC?

THE COURT: Not at this point. I do not. Thank you very much

PAGE 77

MS. WALKER: Okay. I'll provide them so you have them because I've had a major migraine and I looked them up through the AI --

THE COURT: okay. Ms. Walker, you're going to stop talking now, because it's not your turn. Let me hear anything else that the Debtors' counsel wants to say as to the individuals whose submissions are on for today as listed in the agenda.

THIS RECORD TO HAS CLEAR ERRORS. THIS WASNOT ME SPEAKING

MR. SHINBROT: That's correct, Your Honor.

THE COURT: All right. Ms. Reid, does that help sort of give a little bit of context to your circumstance?

MS. WALKER: Yes. For the record, the claim numbers that I have, there's two of them. The first one is 58776, and the second one is 48946.

PAGE 88 THE COURT MISCHARACTERIZED MS WALKERS FILINGS….YES CONSENT & THE OPT IN NOT OPT IN THAT HAD AND CONTINUES TO BE AN ISSUE WHEN THAT WAS NEVER HEARD PRIOR TO THE 3.1.26 DEADLINE THAT MADE THE ENTIRE CHANGE TO THE PLAN MOOT THEY CREATED NOT MS WALKER I WAS SILENCED…..TIMLINESS YEP DID NOT HAPPEN UNTIL AFTER EFFECTIVE MOOTING THE INJUNCTION FOR MS WALKER & MY PETITION AGAINST THE NON DEBTOR SACKLERS, THEY STAY IS A SEPARATE ISSUE FROM AN APPEAL A STAY SHOULD HAVE AGAIN BEEN ORDERED BUT WHY WOULD A COURT STAY ITS DECISION IT HAD ALREADY PREPARED A SPEECH FOR THE COURT HAD NO INTENTION BUT TO CONFIRM REGARDLESS OF MS WALKERS CONSENT VOTE BEING PREMATURE AND MOOT ISSUES ON RECORD, MS WALKER WAS THREATENED SEVERAL TIMES MID THIS CASE & MS WALKER REQUESTED A SECURITY SYSTEM IN CASE THEY SHOWED UP AT MY DOOR NOT FOR 'PRIVATE SECURITY' A SECURITY SYSTEM…I DO NOT FEEL WAS UNREASONABLE BUT ALAS THE COURT DID NOT CARE MS WALKER WAS HARASSED BECAUSE MY PRIVATE DATA IS PUBLISHED ALL OVER KROLL THAT HAD BEEN AN ISSUE A PRIVACY ISSUE THAT HAD A DISCUSSION DURING ONE OF THE MANY HEARINGS,

THEN HOW WOULD I KNOW WHAT CERTIORARI WAS OR WHEN OR WHERE I AM SUPPOSED TO REQUEST IT NOT BEING A LAWYER AND LOOKING STUFF UP ON

LINE….DAHHHHH……YES THE ADA MUST BE AMENDED LISTEN TO HOW MS WALKER HAS BEEN TREATED BY THIS COURT….MS WALKER HAS HAD NO ADA RIGHTS AT ALL QUASI THE ADA ISNOT EVEN A FEDERAL ACT THAT PROVIDES CIVIL RIGHTS & MS WALKER MOTIONED THE COURT SANCTION THE SACKLERS FOR NOT SIGNING THE DOCUMENTS PER THE SHAREHOLDER AGREEMENT & JAIL RICHARD SACKLER FOR CONTEMPT OF COURT, SINCE RICHARD SACKLER A NON DEBTOR IS THE MAIN CAUSE OF THE DELAYS NOT MS WALKER. SINCE THE COURT MISREPRESENTED MS WALKERS MOTIONS TO POOH POOH MS WALKER & IF THE COURT HAD QUESTIONS IT SHOULD HAVE ASKED ME ….BUT ALAS…AGAIN MS WALKER AFTER THIS HEARING REQUESTED THE JUDGE GO ITEM BY ITEM IT NEVER HAS AS TO WHY IT DENIED ALL 35 OF MY MOTIONS. NONE OF THIS HAS BEEN GOOD FAITH & NOT CLOSE TO CONSISTENT.

TO BE CLEAR THIS HEARING WAS ON 3.19.26 AFTER THE NEW 3.1.26 DEADLINE TO CHANGE OUR OPT IN NOT OPT IN ALAS THE COURT NEVER HEARD MY LATE CLAIM ISSUE SO AGAIN MOOTING THE ENTIRE POINT OF WHY THEY CREATED THE NEW DEADLINE REALLY FOR MS WALKER….ALAS LIKE THE BAR DATE, VOTING DATE, THE ENTIRE PLAN & DISCLOSURE STATEMENT ALL MOOT.

Ms. Walker, I'm reading a decision now. Now is not the time for you to be heard.
Thank you.
So, any challenges to the plan must now take the form of an appeal of the confirmation order, and that's before the District Court. So, there are certain questions that Ms. Walker has had about the status of her decision whether to consent to the Sackler settlement and join in or not.
She has filed two things dealing with -- reaching different decisions. And she ties that to the question about the timeliness of her claim. That is an issue that has already been discussed on numerous occasions by the Court, at confirmation, at the stay, pending appeal hearing. And so the Court is already on record as explaining exactly how that's to be handled.
Okay. Please disconnect Ms. Walker.
(indiscernible). Okay, disconnect Ms. Walker. Ms. Walker, you have a sad streak running of having to be disconnected

Page 89

from every hearing, the last five or six hearings, which is not what I want to do, but you leave me no choice.
So, those going to continue with the ruling. It will be on a transcript, so Ms. walker can read it later.
So, the Court has already ruled on that issue, and nothing

about her submissions or my ruling today affects any of her legal rights in connection with the validity of her claim, issues of lateness as to her claim, or the consent that she could give, or maybe has given, it's unclear, since she filed two different forms. But those will all be addressed in the fullness of time. So, the Court also notes that Ms. Walker has made a variety of other requests that far exceed this Court's jurisdiction. These include providing her with personal security. They include granting her certiorari in the Supreme Court, amending the Americans with Disabilities Act, talking about the sentences that members of the Sackler family should serve in prison. And all of which are beyond the scope of what this Court has before it.

PAGE 90 YEAH THE COURT IN FACT MOOTED MS WALKER & MY RIGHTS MEANINGFUL & OTHERWISE.

So, Ms. Walker is free to pursue those arguments in an appropriate Court, whether it's on appeal, for things dealing with the confirmation order, or whether it's in connection with the District Court that is going to do the sentencing of Purdue Pharma, or any other place of appropriate jurisdiction. So, again, I think I've already addressed her arguments about her late filed claim. That motion has been adjourned, and we're going to address it in the future. She will get notice of that. And she retains all of her rights in connection with this dispute, which has not yet been litigated. And finally, I join in Mr. Preis's notion that anyone who wishes to object to fee applications is free to do so. And I will consider those at the appropriate time

PAGE 92 BUT ALAS PURDUE PHARMA PI VICTIM CLAIMANTS NEVER FILED A LAW SUIT AGAINST THE SACKLERS SO THEY IN FACT GOT AN ADVANTAGE OF FREE NON DEBTOR SACKLER CASH MINUS HAVING TO FILE A LAW SUIT THAT MS WALKER DID WHY THIS HAS BEEN NOT GOOD FAITH YES TO ONE MS WALKER. HAD THE SEVERAL PRO SE BEEN LISTENED TO MAYBE $1.1 BILLION USD WOULD BE TRACEABLE AND ACCURATE ACCOUNTING RECORDS WOULD HAVE BEEN KEPT THAT DEBTORS BRING UP I WILL REPEAT THE LINE…..PAGE 26 'THE ROUGHLY $880 MILLION USD'S PROVIDED BY THE DEBTORS -APPELLEES WAS DISBURSED TO THE VARIOUS CREDITOR TRUSTS TOGETHER WITH APPROXIMATELY $1.1 BILLION IN SACKLER PAYMENTS ****AND THERE IS NO PRACTIAL WAY TO TRACE CURRENT LOCATION OF ALL DOLLARS

CONTRIBUTED BY THE DEBTORS-APPELLEES' WHICH IS TOTAL CLEAR ERROR AND YES INCOMPETENCE JUST AS EDGAR COULD NOT ON RECORD TELL US ALL HOW MANY TIER I TIER 2 AND NON NAS CLAIMS THERE WERE THAT WERE NOT INCLUDED IN HIS STATUS UPDATE DOC 9378 6.19.26 WHEN MS WALKER ASKED ON RECORD HOW MANY IN EACH TIER THE RESPONSE WAS 'WE DON'T KNOW' THAT IS SUPER PROBLEMATIC WHEN NONE OF THE NUMBERS & MATH SIMPLY DO NOT ADD UP.

cases. And we're on the verge of the effective date at which point the preliminary injunction will cease to exist. And so, I don't find anything in any of the submissions today that justifies a rethinking of any of that. And again, it's been the subject of much discussion over the years. And the Court has steadfastly refused to grant one individual party a leg up or a head start on anyone else. And that's particularly important given, as the committee notes, the preliminary injunction continues to serve the same important purposes now in these cases that it has throughout the cases, which is to not dissipate the value of the Debtors' estate, to not divert Debtors' attention away from the cases here before they get to the effective date. And also to make sure that individual claimants are equally treated, rather than have some folks favored rather than others. So, the committee makes several other points. The second point is that the committee notes that several pro se parties are talking about distributions, transfers, and payments or movement of funds contemplated by the plan should be stayed, including pending a review of the Debtors' financial records and appointment of a forensic accounting team.

Page 93

And again, I've talked about that already, and I just mentioned it again, to say the committee agrees and correctly observes that such requests are problematic, to the extent they're asking for a stay of the plan going forward, which has already been ruled on by this Court. But it's also problematic because we've already talked about the forensic review that was done in the context of this case. And that culminated in the plan. And so the time for an appointment of examiner has passed. And so, there is no basis to now repeat the forensic analysis that was done, particularly at this point in time after

confirmation, and when we're on the verge of the effective date.

So the third committee notion that was identified is that, a certain number of folks seek judicial determinations regarding the merits of their claims. But such requests are really at odds with how the plan is structured and how the Bankruptcy Code works.

There is a personal injury trust that was established -- will be established for the express purpose of evaluating individual claims and making determinations as to whether to what extent these claims satisfy the requirements, for a claim that should be paid under the plan and the personal injury distribution procedures.

PAGE 99 MS WALKER REQUESTED AND APPEAL TO THE SPECIAL MASTER PER HOWARD ISRAEL 5.30.26

Those procedures contain, I believe, their own internal appellate procedures, with respect to appealing to

Page 99

a special master. And so, some of the issues relate to people who the claims administrator, I guess in the first instance, may decide just haven't proven a valid claim. I believe that's appealable. The issue is what tier you're placed in based on the level of length of prescription and other factors like that.

So we've already heard from several people who believe they're going to be put in tier X, but believe they should be in tier Y. And again, there are procedures built in, and I assume that the claims administrator will be providing notice to people if and as he issues determinations about what the process would be for people unhappy with those numbers. Or a temptation, people just show up in bankruptcy Court and sort of treat it like open mic night and just raise concerns up with the Court.

But the problem that we're all facing is that with tens of thousands of people, and entities, and municipalities, and states, and the like, we do have to have procedures that can be followed so everybody is treated in the same pathways, in the same way. I think the trust distribution procedures lay that out. And I'm sure the

claims administrator would be happy to answer any questions from victims, should questions like that come up. About timing and classification. So with that, Your Honor, let me just end where I began. I'm in year nine right now. That's really the longest single assignment of my career. Although I've certainly done, fortunately, plenty of other things during those nine years as well. But it really does appear, as I said at the outset, that we are now a very small number of weeks, almost countable, and days away from the effective date. And we can finally begin to close the book forever on Purdue Pharma L.P., which will be a sentenced felon and never emerging from Chapter 11. And begin the very, very long overdue distributions to both governmental and private creditors.

again. The injunction against the Sacklers will

Page 101

automatically terminate on the effective date. And anyone who wishes to pursue litigation against the Sacklers, that they believe is appropriate, will be free to do so automatically, with no need for further relief from this Court.

THE COURT: Let me just add another notion to that. So sometimes people say, I get legal things on file and I don't know what it means. The notice that will be issued as to the effective date will contain exactly the sentiment that Mr. Huebner just expressed. So you won't have a doubt as to, is this the notice they were talking about? It will say, it's the effective date. And now, anybody who has a claim against the Sacklers to pursue, can pursue that claim. There's no longer a preliminary injunction.

That notice will be very clear and explain to you

26 (Pages 98 - 101)
Veritext Legal Solutions
212-267-6868 www.veritext.com 516-608-2400
Page 102

that the preliminary injunction is lifted and people's lawsuits can proceed.

MR. HUEBNER: Correct.



THE DISTRICT COURT WEBSITE IS STILL NOT FUNCTIONING WHICH IS A DENIAL OF ACCESSIBILITY & DUE PROCESS FOR WHICH MS WALKER SEEKS RELIEF IN THE FORM OF ADA & TITLE II & III FINES.

rosemary helen ziziros walker                7.29.26                9:31 pm