**U.S. District Court**
**Southern District of New York (White Plains)**
**CIVIL DOCKET FOR CASE #: 7:25-cv-10327-NSR**

| | |
|---|---|
| In Re: Purdue Pharma L.P. | Date Filed: 12/12/2025 |
| Assigned to: Judge Nelson Stephen Roman | Jury Demand: None |
| Related Case: 7:25-cv-09681-NSR | Nature of Suit: 422 Bankruptcy Appeal (801) |
| Case in other court: USBC-SDNY, 19-B-23649 (SHL) | Jurisdiction: Federal Question |
| Cause: 28:0158 Notice of Appeal re Bankruptcy Matter (BA | |

**In Re**

**Purdue Pharma L.P.**

**Debtor**

**Purdue Pharma L.P.**

## Request for Reconsideration of the Court's August 4, 2026 Termination Order

On August 4, 2026, in Case No. 7:25-cv-10327-NSR, the Court entered an order denying the motions filed at ECF Nos. 59 and 63. The order stated: "Both Motions are therefore DENIED. To the extent Appellant Redwood challenges the Bankruptcy Court's decision, those arguments will be resolved in the ordinary course of this appeal. The Clerk of Court is respectfully directed to (1) terminate the motion at ECF Nos. 59 and 63 ...."

The denial order further decrees:

*"The Motion for Judicial Liquidation and Allowance of Claim Pursuant to 11 U.S.C. § 502, however, seeks affirmative relief beyond the scope of this Court's appellate review, including an order liquidating his disputed claim in a specific amount, directing payment from particular assets established under the confirmed Chapter 11 Plan, exempting his claim from the Plan's distribution scheme, and otherwise imposing the proposed settlement terms set forth in the Motion.  (ECF No. 59.)* <span style="color:red">***Nor has Appellant Redwood identified any legal authority permitting the Court to grant such extraordinary relief.***</span>  *(Id.)  The Motion for Summary Judgment is likewise unavailing.  This Court is not conducting a trial or resolving factual disputes in the first instance.  Rather, it is reviewing the Bankruptcy Court's decision on the appellate record under the applicable standards of review. "*

I respectfully request that the Court extend Special Solicitous Review for Pro Se Litigants because Appellee is proceeding pro se, this Court must apply a well-recognized standard of leniency, construing Appellee's pleadings and arguments with "special solicitude." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474–75 (2d Cir. 2006). This requires the Court to interpret Appellee's submissions to raise the strongest arguments they suggest. Therefore, I request  judicial discretion in extending  special solicitude  as a pro se appellee and reconsider the termination of ECF Nos. 59 and 63. My request is based on the need to supplement the record with "legal authority" and material facts designated as "TABLE OF AUTHORITIES" that were omitted from the prior filing .The termination order cites lack of any "legal authority permitting the Court to grant such extraordinary relief".

## Basis for Reconsideration

In denying relief, the Court noted that the Motion for Judicial Liquidation and Allowance of Claim Pursuant to 11 U.S.C. § 502 sought affirmative relief beyond the scope of appellate review. The Court further observed that the motion requested liquidation of a disputed claim in a specific

amount, payment from particular assets established under the confirmed Chapter 11 Plan, exemption from the Plan's distribution scheme, and imposition of proposed settlement terms. The Court also stated that Appellant Redwood had not identified legal authority permitting such extraordinary relief.

As a pro se appellee, I used AI-assisted legal tools to prepare motions addressing the jurisdictional and procedural complexities of this appeal. However, the most recent filing at ECF No. 63 failed to include material that is directly relevant to 11 U.S.C. § 502 and Section 5.6 of the Chapter 11 Plan. In particular, the filing omitted key portions of the prescribed "Nine-Step Procedure for a Civil Court Judgment," including Step 8, the "Statement of the Case and Material Facts," and Step 9, the "Argument."

The omitted Step 8 also included a "TABLE OF  AUTHORITIES" identified as the legal authority that supports the requested relief. Because the TABLE OF AUTHORITY was NOT included, the Court did not have the benefit of the complete legal and factual framework supporting reconsideration.

## Relief Requested

I respectfully move the Court to accept and consider the attached "Argument" and "Statement of the Case and Material Facts" in extending pro se solicitude. On that basis, I request reconsideration of the termination decree as to ECF Nos. 59 and 63, because the prior filing did not include the Step 8 materials necessary to present the legal authority and material facts supporting the requested relief.

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

*Step 9 finalization*

*ARGUMENT*

**POINT I: THE EVIDENCE OF ACTIVE FIDUCIARY CONCEALMENT BY THE UCC TOLLS APPELLANT'S DILIGENCE AND DEFEATS EQUITABLE MOOTNESS**

**The Appellees cannot rely on the doctrine of equitable mootness or the May 1, 2026 plan consummation to shield themselves from appellate review. While federal courts routinely invoke equitable mootness to safeguard the finality of complex reorganizations, the Second Circuit has firmly established that it is an *equitable* doctrine—not a jurisdictional bar—and it cannot be weaponized to immunize fiduciary fraud or gross negligence. *In re Chateaugay Corp.*, 988 F.2d 322, 325 (2d Cir. 1993); *In re BGI Creditors' Liquidating Trust*, 7 F.4th 118, 122 (2d Cir. 2021).**

**The critical inquiry under the fourth factor of the Second Circuit's equitable mootness test is whether the appellant exercised required diligence in seeking a stay. *In re Chateaugay Corp.*, 988 F.2d at 326. In the instant case, Appellant's failure to secure a pre-consummation stay before the May 1 deadline is entirely excused because the Unsecured Creditors' Committee (UCC)—led by Lead Counsel Arik Preis of Akin Gump—actively blinded the Appellant and the Bankruptcy Court by suppressing material discovery artifacts.**

**The "smoking gun" internal UCC communication explicitly demonstrates a calculated, bad-faith intent by Lead Counsel Arik Preis to conceal independent, non-personal injury economic assessments regarding hybrid claims like Claim No. 57858. By deliberately hiding these valuations to accelerate plan confirmation, the UCC breached its absolute fiduciary duties to unsecured creditors.**

**Equity will not permit a fiduciary to intentionally conceal material evidence, rush a plan to consummation, and then assert that the victim was not diligent enough in blocking the plan's execution. Because this fraud effectively tolled Appellant's diligence, the fourth *Chateaugay* factor is satisfied.**

Furthermore, because Appellant seeks a discrete, localized modification—the enforcement of a negotiated $900,000.00 settlement—granting this relief does not require unraveling the overarching corporate dissolution or dismantling Knoa Pharma, LLC. The Restructuring Trust possesses billions in capital; a single, carved-out payout to remedy a documented fiduciary fraud is a minor financial adjustment that leaves the structural pillars of the confirmed plan completely intact.

POINT II: THE UNCONTRADICTED POST-PETITION INJURY TIMELINE SATISFIES THE ADMINISTRATIVE PRIORITY STANDARD UNDER THE READING DOCTRINE

Claim No. 57858 is legally entitled to administrative priority status because the underlying corporate wrongdoing occurred entirely within the post-petition operational window. Under the Supreme Court's landmark ruling in *Reading Co. v. Brown*, torts committed by a debtor-in-possession during the post-petition operation of its business are classified as actual, necessary costs of preserving the estate, granting them administrative expense priority under 11 U.S.C. § 503(b)(1)(A). *Reading Co. v. Brown*, 391 U.S. 471, 485 (1968).

The uncontradicted evidentiary artifacts submitted by Appellant establish a devastating factual timeline that squarely triggers the *Reading* doctrine. Purdue Pharma L.P. continuously engaged in the unlawful administration and deceptive marketing of OxyContin and oxycodone from the inception of its bankruptcy petition in September 2019 through the year 2024. This active corporate campaign directly resulted in the continuous exposure and ultimate wrongful death of Jane A. Redwood in 2024.

This injury does not constitute a mere "pre-petition echo" or a historical claim. The specific marketing conduct and administration that inflicted the $10,000,000.00 non-personal injury economic damage occurred *after* the bankruptcy filing date while the Debtors operated as debtors-in-possession.

Because the Debtors chose to maintain a deceptive operational infrastructure to generate post-petition revenue, the financial and

physical casualties of that infrastructure constitute an administrative cost of operating the business. Accordingly, the non-personal injury economic fraction of Claim No. 57858 satisfies § 503(b) and must be prioritized over general unsecured distribution channels.

**POINT III: THE AGREED $900,000.00 COMPROMISE IS CONTRACTUALLY BINDING AND JUDICIAL LIQUIDATION IS MANDATED UNDER 11 U.S.C. § 502**

Summary judgment must be granted because the parties have already executed a contractually binding compromise agreement to liquidate the economic damage portion of Claim No. 57858, leaving no triable issue of fact. Pursuant to Section 5.6 of the Chapter 11 Plan and Federal Rule of Bankruptcy Procedure 9019, this Court possesses clear authority to judicially liquidate and allow claims based on a valid compromise settlement.

The record reflects that after the initiation of Civil Case No. 7:25-cv-10327-NSR, the Debtors' legal representatives at Davis Polk & Wardwell LLP formally affirmed the core economic merits of Redwood's damage claims. To avoid a prolonged remand and preserve judicial economy, I reduced the original compensatory settlement demand of $3,285,000.00 down to an indemnified compromise payout of $900,000.00 which represents Post-Petition economic harm.

This compromise forms a binding, enforceable contract. The agreement explicitly mandates a strict 14-calendar-day redress and compliance window for payment execution following a court directive or motion filing. Appellant has completely fulfilled his contractual obligations by remitting unassailable prescription history(2006 to 2024) from Dr. Silvia Knoploch confirming the post-petition injury metrics.

By failing to execute the wire transfer within the contractually binding grace period, the Appellees stand in clear breach. Because the material execution of the settlement agreement is undisputed, this Court must

enforce the contract, judicially liquidate the claim under 11 U.S.C. § 502, and command Trust Fiduciary Rachael Ringer to disburse the agreed $900,000.00 payment.

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

## Step 8 Statement of the Case

**STATEMENT OF THE CASE AND MATERIAL FACTS**

Appellant Keith E. Redwood provides this narrative Statement of the Case and Material Facts in support of his Motion for Summary Judgment under Docket No. 59:

**I. Nature of the Hybrid Claim and Underlying Injury**

This dispute arises out of the multi-billion-dollar Chapter 11 bankruptcy restructuring of Purdue Pharma L.P. under Case No. 19-23649-SHL in the United States Bankruptcy Court for the Southern District of New York. Within those proceedings, Claim No. 57858 was formally asserted on behalf of the Estate of Jane A. Redwood against the Debtors' corporate estate.

While designated under the Kroll Restructuring Administration schedules as a general unsecured creditor claim in the lump-sum amount of $20,000,000.00, Claim No. 57858 is factually and legally a "Hybrid Claim." It combines inseparable elements of traditional personal injury claims with independent, non-personal injury economic damage metrics.

The core operational injury underpinning this claim consists of the post-petition administration and deceptive marketing of OxyContin and oxycodone directly authorized by the Debtors between the years 2019 and 2024. This specific, unlawful marketing campaign directly impacted Jane A. Redwood through her local pain management provider, Dr. Silvia Knoploch, located in Norwalk, Connecticut. This continuous, post-petition corporate wrongdoing directly resulted in severe financial loss

and the ultimate wrongful death of Jane A. Redwood in 2024 due to OxyContin opioid usage.

## II. Fiduciary Misconduct and Active Concealment by the UCC

During the formulation and negotiation of the Eighteenth Amended Plan of Reorganization, the Unsecured Creditors' Committee (UCC)—led by Lead Counsel Arik Preis of Akin Gump Strauss Hauer & Feld LLP—owed an absolute fiduciary duty to all unsecured claimants, including the Appellant.

As demonstrated by recently uncovered internal UCC communications and discovery artifacts, the UCC and its professionals were in possession of independent valuations and clear breakdowns regarding the non-personal injury economic damage components of hybrid claims. Rather than presenting these metrics transparently to the Bankruptcy Court, Lead Counsel Arik Preis and the UCC deliberately chose to suppress and actively conceal this material data. This intentional omission ensured that hybrid claims were uniformly forced into generalized personal injury channels without discrete tracking or individual economic liquidation mechanisms.

Because the UCC actively hid this evidence to expedite plan confirmation, Appellant was systematically blocked from building the necessary evidentiary record to secure a formal stay prior to the plan's eventual consummation date.

## III. The Agreed Compromise and the Appellee's Breach

Following the filing of this Civil Appeal under Case No. 7:25-cv-10327-NSR before the Honorable Nelson S. Román, the framework for direct settlement negotiations was established pursuant to Section 5.6 of the Plan. The debtor's legal representatives, Attorney Benjamin Kaminetzsky Davis Polk & Wardwell LLP, subsequently affirmed the core economic merits of Redwood's damage claims for concurrent jurisdictional review(i.e. the "Jurisdictional Hook").

To resolve the litigation under Docket No. 59, the framework of a compromise settlement agreement  was tendered  liquidate the non-personal economic damage portion of the claim pursuit to bankruptcy code 502. The settlement offer was  reduced from  the original compensatory damage demand from $3,285,000.00 down to a compromised, post-petition indemnified  amount of $900,000.00.

The explicit contractual terms of this executed compromise agreement mandate that upon a triggering directive or court filing, the Appellees and Trust Fiduciary Rachael Ringer must complete a strict 14-calendar-day redress and payment execution window. Appellant has submitted all uncontradicted  artifacts confirming post-petition  opioid prescription records during the after bankruptcy injury timeline. To date, the Appellees have failed to execute the wire transfer, breaching the contract and necessitating judicial intervention via summary judgment.

---

## TABLE OF CONTENTS

PRELIMINARY STATEMENT AND INTRODUCTORY TEXT ...................................................... 1

STATEMENT OF THE CASE AND MATERIAL FACTS ........................................................... 3

   I. Nature of the Hybrid Claim and Underlying Injury ................................................... 3

   II. Fiduciary Misconduct and Active Concealment by the UCC ................................. 4

   III. The Agreed Compromise and the Appellee's Breach .............................................. 5

LEGAL STANDARD OF REVIEW FOR SUMMARY JUDGMENT ............................................. 6

ARGUMENT ............................................................................................... 8

   POINT I: THE EVIDENCE OF ACTIVE FIDUCIARY CONCEALMENT BY THE UCC TOLLS APPELLANT'S DILIGENCE AND DEFEATS EQUITABLE MOOTNESS .............. 8

   POINT II: THE UNCONTRADICTED POST-PETITION INJURY TIMELINE SATISFIES THE ADMINISTRATIVE PRIORITY STANDARD UNDER THE READING DOCTRINE ...... 11

**POINT III: THE AGREED $900,000.00 COMPROMISE IS CONTRACTUALLY BINDING AND JUDICIAL LIQUIDATION IS MANDATED UNDER 11 U.S.C. § 502 ..................... 14**

**CONCLUSION AND PRAYER FOR RELIEF ....................................................................... 17**

---

## TABLE OF AUTHORITIES

**Federal Cases**

- *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)

- *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)

- *In re BGI Creditors' Liquidating Trust*, 7 F.4th 118 (2d Cir. 2021)

- *In re Chateaugay Corp.*, 988 F.2d 322 (2d Cir. 1993)

- *In re Purdue Pharma L.P.*, No. 7:25-cv-10327-NSR (S.D.N.Y.)

- *Johnson v. Killian*, 680 F.3d 234 (2d Cir. 2012)

- *Reading Co. v. Brown*, 391 U.S. 471 (1968)

- *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42 (2d Cir. 2015) [1]

**Federal Statutes and Legislative Materials**

- **11 U.S.C. § 502 (Allowance of Claims or Interests)**

- **11 U.S.C. § 503(b)(1)(A) (Administrative Expenses)**

- **11 U.S.C. § 1141(a) (Effect of Confirmation)**

**Federal Rules**

- **Federal Rule of Civil Procedure 56 (Summary Judgment)**

- **Federal Rule of Bankruptcy Procedure 7056 (Summary Judgment in Adversary Proceedings)**

- **Federal Rule of Bankruptcy Procedure 9019 (Compromise and Arbitration)**

**Local Court Rules**

- **S.D.N.Y. Local Civil Rule 6.1 (Motion Timelines)**

- **S.D.N.Y. Local Civil Rule 56.1 (Statements of Material Facts)**

- **S.D.N.Y. Local Civil Rule 56.2 (Notice to Pro Se Litigants)**

---

**Dated: August 5, 2026**

**Rocky Hill, CT**

**Respectfully submitted,**

**By: /s/ Keith E. Redwood**

**Keith E. Redwood**

*Appellant Pro Se / Plaintiff*

**Mailing Address: 51A Pratt Street Rocky Hill CT 06067**

**Phone Number# (860)997-9322**

**Email Address: kthredwood@gmail.co**