US SDNY DISTRICT COURT
300 QUARROPAS STREET
WHITE PLAINS, NEW YORK 10601-4150

RE: ROSEMARY HELEN ZIZIROS WALKER VS PURDUE PHARMA

DISTRICT COURT CASE #25CV9681

MOTION FOR STAY & EVIDENCE

JUDGE RAMON,

YOU DO REALIZE MS WALKER IS A DISABLED AMERICAN PRO SE PAUPER WHO IS STILL RECOVERING FROM SURGERY CORRECT…..

WHEN I FIRST FILED MY APPEAL THERE WAS A 1.1.26 DEADLINE YOU CAN SEE YOU HAVE PACER ACCESS I JUST GOT HOPEFULLY MINUS ANY BILL IF IT GOES OVER $30 I HAVE REQUESTED THE WAIVER BUT ALAS…NO ONE HAS PROVIDED IT WHY I FILED MY BRIEF ON TIME YOU STATED YOU DON'T KNOW WHAT IT IS OR WHY MS WALKER OREGON CASE 23CV33935 WAS INCLUDED DAHHHH IT IS THE ENTIRE OPT IN NOT OPT IN ISSUES AS MS WALKER SUED BOTH PURDUE PHARMA AND THE SACKLER FAMILY STILL HELD UP BECAUSE NO ONE ISSUED A STAY WHEN FIRST REQUESTED ALMOST A YEAR AGO NOW SO TOO LATE MS WALKERS RIGHTS HAVE ALREADY BEEN IRREPARABLY IRREVOCABLY HARMED DUE TO CLEAR ERRORS BY ALL THE COURTS AT THIS POINT.

THE PLAN VIOLATES HARRINGTON CONSENT AS MY NEW MATRIX SHOWS.

LOOK AT PACER….I ORIGINALLY HAD JUDGE KARAS THERE WAS SUPPOSED TO BE A HEARING BACK IN MARCH 26 NOT THAT I CAN REMEMBER THEN I GOT A LETTER I PROVIDED STATING I HAD A NEW JUDGE ARUN. MS WALKER HAS NOT MADE ANY OF THIS UP.

FOR YOU TOO TO JUST POOH POOH MS WALKER AND MY RIGHTS DOESNOT LOOK GOOD FOR THE COURTS MS WALKER HAS HAD EVERY RIGHT TO BE CONFUSED MS WALKER IS A DISABLED PRO SE PAUPER JUDGE RAMON AND AMERICAN CITIZENS WITH AMERICAN CONSTITUTIONAL RIGHTS.

NO ONE WILL TAKE MS WALKERS RIGHTS OR MONEY I DO NOT HAVE WITHOUT MS WALKER ENSURING HER RIGHTS ARE REINSTATED & MS WALKER IS HEARD THAT SHOULD HAVE HAPPENED LONG AGO JUST AS A STAY SHOULD HAVE BEEN ISSUED WHEN MS WALKER FIRST REQUESTED THE STAY PRIOR TO THEN MID CONFIRMATION IN THE SDNY BANKRUPTCY COURT.

# MASTER WALKER REBUTTAL MATRIX

## Purdue Pharma — Post-Harrington Proceedings and Related Oregon Litigation

**Court-Ready Working Draft — Evidence-First Version**

**Purpose and use.** This matrix is organized for use across the Bankruptcy Court, U.S. District Court, Second Circuit, Oregon Supreme Court, and any later petition for certiorari. It separates (1) the contention to rebut, (2) exact record/email language where presently verified, (3) Ms. Walker's evidence-based response, and (4) the issue preserved. It does not treat an inference as a quotation. Where the present source set does not establish an exact quotation, the matrix says so rather than inventing one.

**Critical governing rule.** Harrington v. Purdue Pharma L.P., 603 U.S. 204 (2024), held that the Bankruptcy Code does not authorize a Chapter 11 release/injunction discharging claims against a nondebtor without the consent of affected claimants. The Supreme Court expressly did not decide what qualifies as a consensual release.

| # | Contention / Issue to Rebut | Exact Record / Email Evidence | Ms. Walker's Evidence-Based Rebuttal | Preserved Issue / Strength |
|---|---|---|---|---|
| 1 | Harrington is satisfied because the new Plan calls the Third-Party Releases consensual. | The Supreme Court did not "express a view on what qualifies as a consensual release," while holding that nondebtor claims cannot be discharged without affected-claimant consent. SOURCE: Harrington v. Purdue Pharma L.P., 603 U.S. 204, 226-27 (2024) | Walker's issue is whether individualized consent was actually established in operation. Harrington leaves the definition of consent open; the label "consensual" is not self-proving. | Core Harrington issue |
| 2 | PI claimants affirmatively opted in, so consent is unmistakable. | The ballot states it solicits "(i) vote on the Debtors' Plan of Reorganization and (ii) election with respect to the Third-Party Releases." It further states: "Electing to GRANT or to NOT GRANT the Third-Party Releases is completely voluntary, but your election will have the following consequences for your Claim and how much compensation you may be entitled to receive under the Plan." SOURCE: Doc. 7615, Non-NAS PI Ballot, pp. 269, 281-282 | The Plan materials themselves show consentmechanics were more complicated than a simple affirmative opt-in: the ballot also contained deemed-release language for an accepting voter who left the release boxes blank. Walker's actual election history must be adjudicated from her own ballots and later change. | Strong |
| 3 | Walker's provisional ballot ultimately didnot count. | MR. VONNEGUT: "So Ms. Walker has a late-filed claim. So when she voted on the plan, she voted on a provisional ballot because we don't yet | Walker voted; the Debtors themselves told the Court she voted provisionally. The later disallowance cannot rewrite the fact that the Plan required | Very strong |

| | | | | |
|---|---|---|---|---|
| | | know whether that late-filed claim will be allowed, whether the lateness of the filing will be excuse[d] or not." SOURCE: Confirmation Tr. p. 50 | and accepted her participation while claim status remained unresolved. | |
| 4 | Because Walker ultimately granted no Third-Party Release, no Harrington issue remains. | "Judge Lane ruled that your claim was not timely filed. As a result, you did not grant the Third-Party Releases, and did not give up any rights you may have against members of the Sackler family." SOURCE: Marc Tobak email, Aug. 2026, reproduced in Oregon filing | Present non-release status does not erase thepre-effective consent controversy. Walker's position is that the issue was raised, recognized, and left undecided until later disallowance was used to eliminate it. | Critical chronology |



| | | | | |
|---|---|---|---|---|
| 5 | Walker is presently free to sue the Sacklers, so her prior Plan objections have no significance. | "you are not bound by any release or injunction with respect to any party other than the debtors themselves. So you can sue any Sackler or other non debtor third party you want to." He added: "the elections you made on your two ballots no longer have any relevance because your claim was denied as untimely." SOURCE: Marshall Huebner email, Aug. 4, 2026, reproduced in Oregon filing | The relevant injury theory is the delay and non-adjudication of Walker's own Plan/claim/election issues before effectiveness and the continuing effect on her Oregon litigation. | Narrow present concession / preserve history |
| 6 | There was no coercion because release consideration was ordinary settlement consideration. | If a Class 10(b) claimant GRANTS the releases, the claim "will be considered 'Allowed'" and may receive "additional payment" and the "maximum possible distribution." If the claimant does NOT GRANT, the claim "will not be considered 'Allowed' and may be objected to," and the claimant "will NOT be entitled to additional payment." SOURCE: Doc. 7615, Non-NAS PI Ballot, pp. 281-282 | Walker's coercion argument is factual and contextual: Preis/Plan materials tied more favorable allowance/payment treatment to surrender of direct nondebtor rights. Whether that choice was knowing and voluntary must be evaluated with the unresolved claim status and later 18-month objection/payment consequences. | Major voluntariness issue |

| | | | | |
|---|---|---|---|---|
| 7 | Walker merely complains that releasing creditors receive more money. | If a Class 10(b) claimant GRANTS the releases, the claim "will be considered 'Allowed'" and may receive "additional payment" and the "maximum possible distribution." If the claimant does NOT GRANT, the claim "will not be considered 'Allowed' and may be objected to," and the claimant "will NOT be entitled to additional payment." SOURCE: Doc. 7615, Non-NAS PI Ballot, pp. 281-282 | False characterization. Walker's principal issue is not envy of a larger payment; it is whether Purdue claim treatment and timing were conditioned on surrendering direct claims against nondebtor Sacklers, and whether that was disclosed and consented to before the deadline. | Correct factual framing |
| 8 | Walker understood the vote and release were separate choices, ending the consent inquiry. | The ballot states it solicits "(i) vote on the Debtors' Plan of Reorganization and (ii) election with respect to the Third-Party Releases." It further states: "Electing to GRANT or to NOT GRANT the Third-Party Releases is completely voluntary, but your election will have the following consequences for your Claim and how much compensation you may be entitled to receive under the Plan." SOURCE: Doc. 7615, Non-NAS PI Ballot, pp. 269, 281-282 | Separate boxes do not answer whether Walker possessed the information necessary for informed consent. The Court itself identified the sequencing problem and the record later permitted election changes. | Material but not dispositive |
| 9 | Walker affirmatively consented and that ends the matter. | MR. HUEBNER: "We'll accept notices from someone saying hey, you know, now that I understand things better, I previously opted either in or not opted in, I would like to change that. So it's a last chance to change what we already did." SOURCE: Confirmation Tr. pp. 98-99 | Walker does not deny an initial opt-in. She relies on the exact record that elections could be changed and on her later election/change. The question is which election controlled before effectiveness and why it was not adjudicated. | Chronology essential |



| | | | | |
|---|---|---|---|---|
| 10 | The Court understood Walker's sequencing concern and confirmation nevertheless resolves it. | THE COURT: "I think it's worthwhile. It's an important issue. And so I just want it to be very clear." The Court added that Walker's question "spurred some very useful information on the record." MR. HUEBNER: "And a new fixed deadline." THE COURT: "And a new fixed | The Court's own words show the issue was important and generated a new fixed deadline. Confirmation does not establish that Walker's specific claim/election dispute was actually adjudicated. | Exceptional transcript evidence |

| | | | | |
|---|---|---|---|---|
| | | deadline." MR. HUEBNER: "So she changed the plan." SOURCE: Confirmation Tr. p. 102 | | |
| 11 | Voting did not adjudicate Walker's late claim. | MR. VONNEGUT: "So Ms. Walker has a late-filed claim. So when she voted on the plan, she voted on a provisional ballot because we don't yet know whether that late-filed claim will be allowed, whether the lateness of the filing will be excuse[d] or not." SOURCE: Confirmation Tr. p. 50 | Correct but incomplete. Voting and allowance were separate. That is why the unresolved claim status mattered: Walker was required/permitted to make Plan and release decisions before the threshold claim question was decided. | Important distinction |
| 12 | Disallowance of Walker's late claim mooted her release-election dispute. | MR. VONNEGUT: "if the late claim motionis denied and the claim is disallowed, then the opt-out is moot. And no further action needs to be taken to revoke the opt-out for a claimant whose claim is denied." SOURCE: May 20, 2026 Hr'g Tr. p. 60 | This is the core circularity: unresolved issue before effectiveness → no timely adjudication → effectiveness → disallowance → mootness. May 20 proves the Court still considered the opt-in/opt-out issue unresolved after effectiveness. | Central appellate issue |
| 13 | Walker lacks standing because her bankruptcy claim was disallowed. | THE COURT: "there is still an issue about this opt-in, opt-out … Ms. Walker feels very strongly … when are we going to schedule a hearing on that issue?" The Court said it should be addressed "probably frankly, sometime soon because it needs to be addressed," and later: "at some point, we do need to address that so that we can move on." SOURCE: May 20, 2026 Hr'g Tr. pp. 58-60 | Standing must be analyzed at the relevant stages and against the challenged orders. Walker also had an issued Tier 2 determination and an asserted $8,147 stake; she contends Tier 1 applies. Do not equate later disallowance with nonexistence of the earlier stake/controversy. | Requires standing briefing |
| 14 | Walker is not a person aggrieved becauseshe lacks a financial stake. | THE COURT: "there is still an issue about this opt-in, opt-out … Ms. Walker feels very strongly … when are we going to schedule a hearing on that issue?" The Court said it should be addressed "probably frankly, sometime soon because it needs to be addressed," and later: "at some point, we do need to address that so that we can move on." SOURCE: May 20, 2026 Hr'g Tr. pp. 58-60 | Walker is an aggrieved party asserting her own claim, ballot, direct Oregon claims, and requested relief. The exact standing doctrine and timing must be briefed separately from the merits. | Requires standing briefing |

| | | | | |
|---|---|---|---|---|
| 15 | Non-releasing appellants cannot litigate somebody else's release rights. | "you are not bound by any release or injunction with respect to any party other than the debtors themselves. So you can sue any Sackler or other non debtor third party you want to." He added: "the elections you made on your two ballots no longer have any relevance because your claim was denied as untimely." SOURCE: Marshall Huebner email, Aug. 4, 2026, reproduced in Oregon filing | Walker seeks adjudication of her own rights.Comparator evidence concerning other claimants is offered to test consistency, notice, and Plan administration—not to obtain relief on their behalf. | Narrow relief |



| | | | | |
|---|---|---|---|---|
| 16 | Walker is attempting to litigate other claimants' rights. | The Supreme Court did not "express a view on what qualifies as a consensual release," while holding that nondebtor claims cannot be discharged without affected-claimant consent. SOURCE: Harrington v. Purdue Pharma L.P., 603 U.S. 204, 226-27 (2024) | Incorrect as a description of Walker's requested relief. Keep requested relief confined to Walker; use other claimants only as comparators where legally relevant. | Narrow relief |
| 17 | Walker is not uniquely situated. | THE COURT: "there is still an issue about this opt-in, opt-out … Ms. Walker feels very strongly … when are we going to schedule a hearing on that issue?" The Court said it should be addressed "probably frankly, sometime soon because it needs to be addressed," and later: "at some point, we do need to address that so that we can move on." SOURCE: May 20, 2026 Hr'g Tr. pp. 58-60 | Uniqueness is not required. In any event, Walker's combination of direct Oregon litigation, late claim, provisional vote, two ballot submissions, changed election, Tier determination, and unresolved status through effectiveness is factually distinctive. | Strong factual distinction |
| 18 | Walker's question about what other PI claimants have to release is irrelevant. | The Supreme Court did not "express a view on what qualifies as a consensual release," while holding that nondebtor claims cannot be discharged without affected-claimant consent. SOURCE: Harrington v. Purdue Pharma L.P., 603 U.S. 204, 226-27 (2024) | Preserve Walker's question: what direct nondebtor Sackler claim does a Purdue PI claimant actually release? Harrington makes the existence and consented surrender of direct nondebtor claims central. Walker had already asserted such claims in 23CV33935. | Preserve as Walker's question |

| | | | | |
|---|---|---|---|---|
| 19 | Walker's Oregon action does not matter because it had not reached judgment. | "you are not bound by any release or injunction with respect to any party other than the debtors themselves. So you can sue any Sackler or other non debtor third party you want to." He added: "the elections you made on your two ballots no longer have any relevance because your claim was denied as untimely." SOURCE: Marshall Huebner email, Aug. 4, 2026, reproduced in Oregon filing | A judgment is not required for a claim to exist. The Oregon action matters because it identifies direct claims Walker asserted against named nondebtors before the release election and because the bankruptcy injunction continues to affect that litigation. | Strong |
| 20 | Walker's Oregon action violated the stay/injunction. | "you are not bound by any release or injunction with respect to any party other than the debtors themselves. So you can sue any Sackler or other non debtor third party you want to." He added: "the elections you made on your two ballots no longer have any relevance because your claim was denied as untimely." SOURCE: Marshall Huebner email, Aug. 4, 2026, reproduced in Oregon filing | Analyze the exact injunction defendant-by defendant and claim-by-claim. Walker's position is also that Marion County accepted her petition and she did not know the Purdue Supreme Court matter she had seen was a bankruptcy. Do not infer subjective knowledge from docket existence. | Document-specific |
| 21 | The Oregon action proves nothing because there was no judgment. | The Supreme Court did not "express a view on what qualifies as a consensual release," while holding that nondebtor claims cannot be discharged without affected-claimant consent. SOURCE: Harrington v. Purdue Pharma L.P., 603 U.S. 204, 226-27 (2024) | Correct that the Oregon action did not establish liability. It establishes that Walker had identifiable direct claims she could preserve or release; Harrington addresses claims, not only judgments. | Strong |



| | | | | |
|---|---|---|---|---|
| 22 | Walker's Oregon action was accurately identified in the bankruptcy materials. | "you are not bound by any release or injunction with respect to any party other than the debtors themselves. So you can sue any Sackler or other non debtor third party you want to." He added: "the elections you made on your two ballots no longer have any relevance because your claim was denied as untimely." SOURCE: Marshall Huebner email, Aug. 4, | The record must use the correct Marion County number 23CV33935 and correct caption. Repetition of 23CV3393 after correction is a concrete record-accuracy issue. | Concrete factual correction |

| | | | | |
|---|---|---|---|---|
| | | 2026, reproduced in Oregon filing | | |
| 23 | Walker's direct Sackler claims became irrelevant after bankruptcy-claim disallowance. | "Judge Lane ruled that your claim was not timely filed. As a result, you did not grant the Third-Party Releases, and did not give up any rights you may have against members of the Sackler family." SOURCE: Marc Tobak email, Aug. 2026, reproduced in Oregon filing | Disallowance of the Purdue bankruptcy claim did not extinguish Walker's asserted direct nondebtor claims. The two interests must remain analytically separate. | Strong |
| 24 | The March 1, 2026 election deadline did not apply to Walker. | MR. HUEBNER: "We'll accept notices from someone saying hey, you know, now that I understand things better, I previously opted either in or not opted in, I would like to change that. So it's a last chance to change what we already did." SOURCE: Confirmation Tr. pp. 98-99 | Do not treat March 1 as irrelevant. Huebner expressly said the date was a last chance for a person who had previously opted either way to change the election. The Court called the resulting issue important and Huebner said Walker changed the Plan. | Strong transcript issue |
| 25 | Walker's ballot elections now have no relevance. | "you are not bound by any release or injunction with respect to any party other than the debtors themselves. So you can sue any Sackler or other non debtor third party you want to." He added: "the elections you made on your two ballots no longer have any relevance because your claim was denied as untimely." SOURCE: Marshall Huebner email, Aug. 4, 2026, reproduced in Oregon filing | Presently the Debtors say the ballots have no relevance. Historically they plainly did: two submissions existed, the Court and counsel discussed Walker's ballot, and later Debtors proposed judicial recognition of the February ballot. | Very strong historical relevance |
| 26 | There was only one operative ballot/election. | MR. HUEBNER: "We'll accept notices from someone saying hey, you know, now that I understand things better, I previously opted either in or not opted in, I would like to change that. So it's a last chance to change what we already did." SOURCE: Confirmation Tr. pp. 98-99 | Walker has evidence of two electronic submissions tied to her ballot history. Any assertion that only one matters must identify the governing Plan/procedure and explain the later submission rather than erase it. | Documentary |

| | | | | |
|---|---|---|---|---|
| 27 | Walker never effectively changed her release election. | "The Debtors will ask Judge Lane to deem your late-filed claim to be timely." "The Debtors will ask Judge Lane to treat your February ballot as effective, meaning that you will be treated as a person who filed a timely claim and who did not opt-in." "The Debtors will agree that we will not object to your claim." In exchange, Walker would "withdraw [her] appeal of the Confirmation Order." SOURCE: Marc Tobak written proposal reproduced in Doc. 9415, p. 11 of 13 | Huebner's exact confirmation statement says a person could change a prior opt-in or non-opt-in. Debtors later proposed treating Walker's February ballot as effective and non-opt-in. That is powerful evidence that the change was legally meaningful enough to seek court recognition. | Very strong |
| 28 | Walker's claim had no substantive recognition. | The TDP identifies Tier 2 treatment where aclaim is substantiated but there is a deficiency in proof of "use of a Qualifying Opioid equal to or greater than six (6) months … to qualify for Tier 1." SOURCE: Non-NAS PI TDP, Doc. 7877, p. 939 of 1010 | Walker was issued Tier 2 by the PI Trust; she argues the longitudinal prescription evidence satisfies Tier 1. Timeliness of the bankruptcy Proof of Claim is a separate deficiency from substantive TDP evidence. | Document-supported |



| | | | | |
|---|---|---|---|---|
| 29 | Claim processing cannot overcome the Bar Date. | THE COURT: "the standard is exceedingly low. It is evidence that you took the drugs in question, period, full stop." SOURCE: Confirmation Tr. pp. 99-100 | Trust processing does not itself waive the Bar Date, but it matters to prejudice, reliance, consistency, and the fact that Walker's claim was substantively evaluated rather than nonexistent. | Moderate / equitable context |
| 30 | Walker received adequate process because she was eventually heard. | THE COURT: "there is still an issue about this opt-in, opt-out … Ms. Walker feels very strongly … when are we going to schedule a hearing on that issue?" The Court said it should be addressed "probably frankly, sometime soon because it needs to be addressed," and later: "at some point, we do need to address that so that we can move on." SOURCE: May 20, 2026 Hr'g Tr. pp. 58-60 | Due process concerns meaningful timing, not merely a later hearing. On May 20, after effectiveness, the Court itself said Walker's opt-in/opt-out issue still needed to be addressed. | Strong due-process timing |

| | | | | |
|---|---|---|---|---|
| 31 | Substantial consummation/effectiveness supports mootness and defeats review. | THE COURT: "there is still an issue about this opt-in, opt-out … Ms. Walker feels very strongly … when are we going to schedule a hearing on that issue?" The Court said it should be addressed "probably frankly, sometime soon because it needs to be addressed," and later: "at some point, we do need to address that so that we can move on." SOURCE: May 20, 2026 Hr'g Tr. pp. 58-60 | Walker repeatedly sought adjudication/stay relief before effectiveness. The passage of time she sought to prevent should not automatically become the basis for eliminating review. Relief can be narrowly tailored to Walker. | Strong if relief narrow |
| 32 | Relief for Walker would necessarily unravel the Plan and harm creditors. | "The Debtors will ask Judge Lane to deem your late-filed claim to be timely." "The Debtors will ask Judge Lane to treat your February ballot as effective, meaning that you will be treated as a person who filed a timely claim and who did not opt-in." "The Debtors will agree that we will not object to your claim." In exchange, Walker would "withdraw [her] appeal of the Confirmation Order." SOURCE: Marc Tobak written proposal reproduced in Doc. 9415, p. 11 of 13 | Walker is not asking to litigate other people's rights. Relief should be framed narrowly around Walker's claim, election, direct rights, and Oregon injunction consequences, reducing any asserted need to unwind unrelated Plan provisions. | Strategically important |
| 33 | Deemed allowance for releasing claimants was merely ordinary settlement treatment. | MR. VONNEGUT: "if you grant the release, your claim is deemed allowed. But that allowance is deemed to occur at emergence." THE COURT: "So it's more like a provisional allowance than an actual allowance." MR. VONNEGUT: "Correct. Correct." SOURCE: Confirmation Tr. p. 51 | The public confirmation record itself establishes deemed allowance as a Plan mechanism. That makes individualized consent especially material because release status affected claim treatment, not merely a separate Sackler payment. | Very strong materiality |
| 34 | Different treatment based on release status is consistent treatment/ordinary consideration. | If a Class 10(b) claimant GRANTS the releases, the claim "will be considered 'Allowed'" and may receive "additional payment" and the "maximum possible distribution." If the claimant does NOT GRANT, the claim "will not be considered 'Allowed' and may be objected to," and the claimant "will NOT be entitled to additional payment." SOURCE: Doc. 7615, | This is Walker's inconsistent-treatment challenge: otherwise qualifying Purdue PI claimants faced different allowance, objection, and payment timing based on whether they released nondebtor Sacklers. The Plan must supply the legal justification; the disparity should not be mislabeled as factual consistency. | Major consistency issue |

| | | | | |
|---|---|---|---|---|
| | | Non-NAS PI Ballot, pp. 281-282 | | |



| | | | | |
|---|---|---|---|---|
| 35 | Non-releasing PI claimants still receive Purdue recovery eventually, so no meaningful disparity exists. | If a Class 10(b) claimant GRANTS the releases, the claim "will be considered 'Allowed'" and may receive "additional payment" and the "maximum possible distribution." If the claimant does NOT GRANT, the claim "will not be considered 'Allowed' and may be objected to," and the claimant "will NOT be entitled to additional payment." SOURCE: Doc. 7615, Non-NAS PI Ballot, pp. 281-282 | "Eventually" does not erase the disparity. Walker was told/Plan documents state non releasing claims could face objection and ordinary allowance while releasing claims received streamlined/deemed treatment. Timing and objection exposure are material. | Material disparity |
| 36 | Refusing the Sackler release merely meant foregoing consideration. | If a Class 10(b) claimant GRANTS the releases, the claim "will be considered 'Allowed'" and may receive "additional payment" and the "maximum possible distribution." If the claimant does NOT GRANT, the claim "will not be considered 'Allowed' and may be objected to," and the claimant "will NOT be entitled to additional payment." SOURCE: Doc. 7615, Non-NAS PI Ballot, pp. 281-282 | The exact Plan language shows more than forfeiture of a bonus: release status changed whether the Purdue claim was considered allowed, the proof/objection route, and maximum distribution. That is material to consent. | Excellent factual evidence |
| 37 | Walker knew when voting that her claim might be invalid. | MR. VONNEGUT: "So Ms. Walker has a late-filed claim. So when she voted on the plan, she voted on a provisional ballot because we don't yet know whether that late-filed claim will be allowed, whether the lateness of the filing will be excuse[d] or not." SOURCE: Confirmation Tr. p. 50 | Walker understood her status was unresolved; she did not understand that to mean her later rights could be mooted without a timely hearing. Her position is that after voting she believed her claim position was stronger, not finally allowed. | Use carefully |
| 38 | Walker should simply have waited for claim adjudication. | THE COURT: "there is still an issue about this opt-in, opt-out … Ms. Walker feels very strongly … when are we going to schedule a hearing on that issue?" The Court said it should be addressed "probably frankly, sometime soon | Walker had already been waiting since early2024 and repeatedly sought resolution. The Plan did not wait: confirmation/effectivenes s proceeded while the controlling claim/election issues remained unresolved. | Strong chronology |

| | | | | |
|---|---|---|---|---|
| | | because it needs to be addressed," and later: "at some point, we do need to address that so that we can move on." SOURCE: May 20, 2026 Hr'g Tr. pp. 58-60 | | |
| 39 | Later disallowance cleanly resolves the consent issue retroactively. | MR. VONNEGUT: "if the late claim motionis denied and the claim is disallowed, then the opt-out is moot. And no further action needs to be taken to revoke the opt-out for a claimant whose claim is denied." SOURCE: May 20, 2026 Hr'g Tr. p. 60 | Later disallowance resolves present release status under Debtors' current theory; it does not retroactively adjudicate whether Walker received timely process or valid consent treatment before effectiveness. | Core distinction |
| 40 | Walker cannot show individualized injury. | THE COURT: "the standard is exceedingly low. It is evidence that you took the drugs in question, period, full stop." SOURCE: Confirmation Tr. pp. 99-100 | Walker's individualized injury is not limitedto present enforcement of a release. Her PI claim received Tier 2 treatment; she supplied prescription evidence; she had a financial stake and direct Oregon claims; she also alleges delay/non-adjudication and loss of meaningful review. | Strong factual correction |
| 41 | The Third-Party Release provisions do not presently apply to Walker, so she cannot challenge what occurred. | "Judge Lane ruled that your claim was not timely filed. As a result, you did not grant the Third-Party Releases, and did not give up any rights you may have against members of the Sackler family." SOURCE: Marc Tobak email, Aug. 2026, reproduced in Oregon filing | Current nonapplication does not erase an as applied historical challenge to the process used while Walker was treated as a provisional voting claimant and while her election had legal/economic consequences. | Critical as-applied theory |



| | | | | |
|---|---|---|---|---|
| 42 | Walker's volume of filings justified restricting her participation. | THE COURT: "there is still an issue about this opt-in, opt-out … Ms. Walker feels very strongly … when are we going to schedule a hearing on that issue?" The Court said it should be addressed "probably frankly, sometime soon because it needs to be addressed," and later: "at some point, we do need to address that so that we can move on." SOURCE: May 20, 2026 Hr'g Tr. pp. 58-60 | Count is not the constitutional test. Walker repeatedly petitioned for redress and sought hearings. Any filing restriction must be tested against the exact order, findings, notice, opportunity to respond, First Amendment petition right, and access-to courts law. | Constitutional/procedural |

| | | | | |
|---|---|---|---|---|
| 43 | All relevant Walker issues were already fully litigated/adjudicated. | THE COURT: "there is still an issue about this opt-in, opt-out … Ms. Walker feels very strongly … when are we going to schedule a hearing on that issue?" The Court said it should be addressed "probably frankly, sometime soon because it needs to be addressed," and later: "at some point, we do need to address that so that we can move on." SOURCE: May 20, 2026 Hr'g Tr. pp. 58-60 | Factually incorrect as to Walker's specific issues. May 20 records the Court saying the opt-in/opt-out issue still needed a hearing. Walker contends her issues were mooted before merits adjudication, not fully litigated. | Critical factual contradiction |
| 44 | The release system was clear. | The ballot states it solicits "(i) vote on the Debtors' Plan of Reorganization and (ii) election with respect to the Third-Party Releases." It further states: "Electing to GRANT or to NOT GRANT the Third-Party Releases is completely voluntary, but your election will have the following consequences for your Claim and how much compensation you may be entitled to receive under the Plan." SOURCE: Doc. 7615, Non-NAS PI Ballot, pp. 269, 281-282 | Do not use the unsourced shorthand "the release system was clear." Quote the exact court/appellee statement and identify what was supposedly clear. The record itself shows post-deadline clarification, a new fixed deadline, and recognized election changes. | Replace shorthand with exact quote |
| 45 | Blank/no ballot treatment demonstrates voluntariness and resolves Walker's consent issue. | The ballot states that a holder who votes to ACCEPT and checks neither release box "will be considered to GRANT the Third Party Releases as if such Holder had checked the first box below." SOURCE: Doc. 7615, Non-NAS PI Ballot, p. 282 | Other creditors' blank/no-ballot treatment cannot establish Walker's individualized consent. Moreover, the ballot itself contains deemed-release language for an accepting voter who leaves both release boxes blank, which must be reconciled with any claim of purely affirmative consent. | Major consent mechanics issue |
| 46 | Walker cannot participate in the Sackler settlement because she is not a claimant. | The ballot states it solicits "(i) vote on the Debtors' Plan of Reorganization and (ii) election with respect to the Third-Party Releases." It further states: "Electing to GRANT or to NOT GRANT the Third-Party Releases is completely voluntary, but your election will have the following consequences for your Claim and how much compensation you may be entitled to receive | Walker is a Purdue PI claimant in the ordinary sense that she filed a PI claim and received substantive Tier treatment; the later disallowance concerned timeliness. More importantly, she was permitted to vote and make a release election before that status was finally adjudicated. | Very strong question |

| | | | | |
|---|---|---|---|---|
| | | under the Plan." SOURCE: Doc. 7615, Non-NAS PI Ballot, pp. 269, 281-282 | | |
| 47 | The provisional ballot protected Walker and therefore caused no prejudice. | MR. VONNEGUT: "So Ms. Walker has a late-filed claim. So when she voted on the plan, she voted on a provisional ballot because we don't yet know whether that late-filed claim will be allowed, whether the lateness of the filing will be excuse[d] or not." SOURCE: Confirmation Tr. p. 50 | Protective purpose does not answer prejudice from timing. The same provisional mechanism required/accepted consequential elections while the threshold claim issue remained unresolved through effectiveness. | Strong sequencing |



| | | | | |
|---|---|---|---|---|
| 48 | There was no reason Walker needed a claim ruling before emergence/effectiveness. | THE COURT: "I think it's worthwhile. It's an important issue. And so I just want it to be very clear." The Court added that Walker's question "spurred some very useful information on the record." MR. HUEBNER: "And a new fixed deadline." THE COURT: "And a new fixed deadline." MR. HUEBNER: "So she changed the plan." SOURCE: Confirmation Tr. p. 102 | There was an obvious reason: claim status determined what Walker was giving up, what she would receive, and whether the ballot/release would have legal effect. The Court itself articulated that sequencing concern. | Exceptional evidence |
| 49 | The Debtors could not obtain or propose deemed-timely treatment for Walker. | "The Debtors will ask Judge Lane to deem your late-filed claim to be timely." "The Debtors will ask Judge Lane to treat your February ballot as effective, meaning that you will be treated as a person who filed a timely claim and who did not opt-in." "The Debtors will agree that we will not object to your claim." In exchange, Walker would "withdraw [her] appeal of the Confirmation Order." SOURCE: Marc Tobak written proposal reproduced in Doc. 9415, p. 11 of 13 | The Debtors' own written proposal defeats acategorical impossibility claim: they proposed asking Judge Lane to deem the claim timely, treat the February ballot as effective/non-opt-in, and not object. This does not prove Judge Lane was compelled to approve it; it proves the mechanism was considered viable enough to offer. | Very strong; Rule 408 caveat |

| | | | | |
|---|---|---|---|---|
| 50 | Delayed treatment of non-releasing claims is consistent and nonproblematic. | If a Class 10(b) claimant GRANTS the releases, the claim "will be considered 'Allowed'" and may receive "additional payment" and the "maximum possible distribution." If the claimant does NOT GRANT, the claim "will not be considered 'Allowed' and may be objected to," and the claimant "will NOT be entitled to additional payment." SOURCE: Doc. 7615, Non-NAS PI Ballot, pp. 281-282 | This is not consistent treatment from Walker's perspective. A Purdue PI claimant with required TDP evidence who declines to release nondebtor Sacklers may face objection/delay while a releasing claimant receives streamlined/deemed treatment. That difference is the issue. | Major inconsistent-treatment issue |
| 51 | Walker had no Tier status/substantive PI evidence. | The TDP identifies Tier 2 treatment where aclaim is substantiated but there is a deficiency in proof of "use of a Qualifying Opioid equal to or greater than six (6) months … to qualify for Tier 1." SOURCE: Non-NAS PI TDP, Doc. 7877, p. 939 of 1010 | Factually incorrect. The Trust issued Tier 2; Walker argues Tier 1 based on multiple longitudinal medical records showing prescribed OxyContin and repeated "no change in medications" notations. The Tier dispute must be separated from Proof-of Claim timeliness. | Document-supported |
| 52 | Walker's consent controversy was hypothetical. | THE COURT: "I think it's worthwhile. It's an important issue. And so I just want it to be very clear." The Court added that Walker's question "spurred some very useful information on the record." MR. HUEBNER: "And a new fixed deadline." THE COURT: "And a new fixed deadline." MR. HUEBNER: "So she changed the plan." SOURCE: Confirmation Tr. p. 102 | Not hypothetical. Walker voted; made an election; changed/disputed it; the Court and counsel discussed it; a new deadline resulted; and on May 20 the Court still said the issue needed to be addressed. | Critical factual contradiction |
| 53 | The Effective Date moots Walker's dispute. | THE COURT: "there is still an issue about this opt-in, opt-out … Ms. Walker feels very strongly … when are we going to schedule a hearing on that issue?" The Court said it should be addressed "probably frankly, sometime soon because it needs to be addressed," and later: "at some point, we do need to address that so that we can move on." SOURCE: May 20, 2026 Hr'g Tr. pp. 58-60 | Effectiveness is part of the chronology, not an answer to it. Walker contends she was forced to wait while her repeated pre effective requests went unresolved, and then effectiveness/disallowance were used to moot the very issue she sought to have decided. | Core theory |

| | | | | |
|---|---|---|---|---|
| 54 | Walker's own delay caused the entire predicament. | MR. VONNEGUT: "So Ms. Walker has a late-filed claim. So when she voted on the plan, she voted on a provisional ballot because we don't yet know whether that late-filed claim will be allowed, whether the lateness of the filing will be excuse[d] or not." SOURCE: Confirmation Tr. p. 50 | Separate the late Proof-of-Claim question from later timely objections to solicitation, consent, ballot change, claim-adjudication timing, stays, and appeals. Court/debtor inaction after those requests is not Walker's fault merely because the original claim was late. | Essential distinction |
| 55 | Claim lateness eliminates any remaining due-process issue. | THE COURT: "there is still an issue about this opt-in, opt-out … Ms. Walker feels very strongly … when are we going to schedule a hearing on that issue?" The Court said it should be addressed "probably frankly, sometime soon because it needs to be addressed," and later: "at some point, we do need to address that so that we can move on." SOURCE: May 20, 2026 Hr'g Tr. pp. 58-60 | A later claim ruling does not answer whether Walker received meaningful process on a separate, preserved consent/election controversy. May 20 is direct evidence that the Court itself still regarded that issue as unresolved. | Strong due-process issue |
| 56 | Harrington did not define consent, so a formal checkbox necessarily resolves consent. | The Supreme Court did not "express a view on what qualifies as a consensual release," while holding that nondebtor claims cannot be discharged without affected-claimant consent. SOURCE: Harrington v. Purdue Pharma L.P., 603 U.S. 204, 226-27 (2024) | Correct that Harrington left the definition open; incorrect that this automatically validates the checkbox as applied. The Supreme Court expressly reserved what counts as consent. Walker's changing election and unresolved eligibility present that reserved question. | Excellent Supreme Court framing |
| 57 | Harrington preserved consensual releases; therefore the Plan's releases are valid as applied to Walker. | The Supreme Court did not "express a view on what qualifies as a consensual release," while holding that nondebtor claims cannot be discharged without affected-claimant consent. SOURCE: Harrington v. Purdue Pharma L.P., 603 U.S. 204, 226-27 (2024) | Walker agrees only with the narrow proposition that genuinely consensual releases were not prohibited. The disputed issue is whether valid individualized consent existed in the actual Plan operation, including deemed treatment, election changes, and claim-treatment consequences. | Central Harrington distinction |
| 58 | Plan proponents' creditor-wide objectivesanswer Walker's individual-consent objection. | The Supreme Court did not "express a view on what qualifies as a consensual release," while holding that nondebtor claims cannot be discharged without affected-claimant | Collective fiduciary objectives do not establish Walker's individual consent to surrender her own direct nondebtor claims. | Strong |

| | | | | |
|---|---|---|---|---|
| | | consent. SOURCE: Harrington v. Purdue Pharma L.P., 603 U.S. 204, 226-27 (2024) | | |
| 59 | The "peace premium" and global settlement justify the release structure regardless of Walker's individual dispute. | If a Class 10(b) claimant GRANTS the releases, the claim "will be considered 'Allowed'" and may receive "additional payment" and the "maximum possible distribution." If the claimant does NOT GRANT, the claim "will not be considered 'Allowed' and may be objected to," and the claimant "will NOT be entitled to additional payment." SOURCE: Doc. 7615, Non-NAS PI Ballot, pp. 281-282 | Economic value explains why proponents wanted releases; it cannot substitute for the affected claimant's consent required by Harrington. | Strong |
| 60 | Overwhelming creditor approval—including reliance on prior-plan approval —validates the release structure. | The Supreme Court did not "express a view on what qualifies as a consensual release," while holding that nondebtor claims cannot be discharged without affected-claimant consent. SOURCE: Harrington v. Purdue Pharma L.P., 603 U.S. 204, 226-27 (2024) | Prior-plan approval is not proof of post Harrington individualized consent. The prior nonconsensual release structure was reversed by the Supreme Court. Aggregate approval also does not establish pro se PI claimant consent or Walker's individual consent. | Strong |
| 61 | Purdue-specific proof for individual PI compensation versus broad opioid abatement use is consistent treatment. | Non-NAS PI TDP requires proof tied to a "Qualifying Opioid" and distinguishes Tier 1 based on proof of at least six months' use. | Walker preserves a Plan-consistency challenge: this is the Purdue Pharma bankruptcy. She was required to supply | New major Plan-allocation / consistency issue |



| | | | | |
|---|---|---|---|---|
| | | The Plan separately funds broader opioid abatement purposes. SOURCE: Doc. 7877, Non-NAS PI TDP; Plan/Disclosure materials. | Purdue/qualifying-opioid proof for individual PI compensation, while substantial bankruptcy value is directed to generalized opioid abatement whose ultimate beneficiaries are not shown in the present record to face the same Purdue specific proof requirement. This is not automatically unconstitutional; the Plan must be tested for the legal basis and classification/treatment justification. | |

## Primary Source Index

🎬 Confirmation hearing transcripts, Nov. 12-14 and Nov. 18, 2025 (including pp. 50-51, 98-102 passages quoted above).
🎬 May 20, 2026 hearing transcript, pp. 58-60.
🎬 Doc. 7615 (June 20, 2025) — solicitation procedures and PI ballots.
🎬 Doc. 7877 (Sept. 19, 2025) — Non-NAS PI Trust Distribution Procedures.
🎬 Doc. 9415 — filing reproducing Marc Tobak's written settlement proposal.
🎬 Aug. 4, 2026 Marshall Huebner email and Aug. 2026 Marc Tobak email as reproduced in Walker's Oregon filing.
🎬 Harrington v. Purdue Pharma L.P., 603 U.S. 204 (2024).
🎬 Walker's Kroll ballot confirmations (Sept. 2025 and Feb. 2026), PI Trust Tier correspondence, Arik Preis emails, and medical exhibits — to be attached/indexed as exhibits in the final filing set.

Walker Master Rebuttal Matrix — Working Court Draft — Verify exact brief quotations and exhibit authentication before filing **YOU HAVE THE EVIDENCE




**THE DISTRICT COURT WEBSITE IS STILL NOT FUNCTIONING THAT ISNOT ACCESSIBILITY**

**rosemary helen ziziros walker 8.14.26 11:54am**

CERT OF SERVICE technically purdue no longer exists but i emailed davis polk