# ROSEMARY WALKER - PIONEER COMPARATOR REBUTTAL MATRIX

## Fed. R. Bankr. P. 9006(b)(1) - Excusable Neglect / Comparative Treatment of Pro Se Late Claims

**EVIDENCE-FIRST COURT WORKING DRAFT.** Prepared as a source matrix for Bankruptcy Court, District Court, Second Circuit, Oregon Supreme Court, and potential U.S. Supreme Court review. Exact record words are used where presently verified. Assertions, documentary evidence, PAT positions, and judicial findings are kept separate.

**Controlling analytical framework.** Pioneer requires an equitable determination taking account of all relevant circumstances, including prejudice, length of delay and impact, reason for delay (including control), and good faith. This matrix focuses on the record evidence relevant to those factors and on whether comparable pro se late claims were evaluated using a consistent totality methodology.

| # | Contention / Issue to Rebut | Exact Record / Documentary Evidence | Rosemary Walker Rebuttal / Pioneer Significance | Use |
|---|---|---|---|---|
| 1 | PAT reduced Walker's showing to disability and an Oregon lawsuit. | PAT Exhibit A: "Ms. Walker filed proofs of claim on August 25, 2025 and September 15, 2025. Her general assertions have been that she is an American with disabilities. She also references in other filings a lawsuit she filed against Sackler entities in Oregon that was enjoined." PAT: "Oppose (subject to supplemental briefing, if any)." | That shorthand did not capture Walker's later filed cumulative evidence. The appellate comparison must use the complete record, not the initial summary. | Reason / record completeness |
| 2 | Walker supplied no additional reasons after PAT requested supplemental briefing. | The later record states Walker filed supplemental briefing on May 5, 2026 and cited: "(1) an ice storm; (2) damage to her home; (3) fires; (4) the COVID-19 pandemic; (5) moving out of state; (6) intermittent lack of internet; (7) disability; and (8) inability to access certain social media platforms." | Walker did supplement. The question is whether PAT and the Court evaluated those circumstances cumulatively and under the same methodology used for favorable comparators. | Direct contradiction |
| 3 | Walker merely asserted a 2021 home emergency without documentation. | The Bankruptcy Court acknowledged an "insurance claim stating that a falling object caused a loss related to her residence on February 13, 2021." | The Court itself recognized documentary evidence of a dated residence-loss event during the COVID period. | Documentary / reason |
| 4 | The displacement-related hotel fire was unsupported. | Contemporaneous Salem Housing email, Feb. 24, 2021: "Oh my heavens...this is unbelievable. How can we help? I am willing to offer whatever support we can." The sender offered to "go to the hotel to retrieve your things" and referred to "the fire." | This third-party email corroborates that Walker was at a hotel and encountered another fire emergency while displaced. | Strong corroboration |
| 5 | The 2020-2021 events should be isolated rather than considered cumulatively. | Walker filed: "Time sure flies one global pandemic, then disaster after provided evidence disaster during disasters....while disabled with no resources at all." | Walker expressly presented cumulative impairment: COVID, wildfire/disaster conditions, ice-storm/tree damage, displacement, hotel fire, disability and resource limitations. Pioneer is a totality inquiry. | Core Pioneer theory |
| 6 | COVID mattered only for incarcerated comparators. | PAT wrote that "the COVID-19 pandemic further constrained resources available to incarcerated individuals during the General Bar Date noticing period" and that these circumstances "compounded the uniquely complex nature of these chapter 11 cases" and were "beyond the claimants' control such that they meet the standard for excusable neglect." | PAT itself used compounding circumstances. Incarceration is a factual distinction; it does not eliminate the need to assess Walker's COVID-era disability, disasters and resource limitations cumulatively. | Methodology comparator |
| 7 | Acts of God were not a basis for favorable late-claim treatment. | The Court summarized PAT's favorable reasons as including "acts of God-such as a tornado hitting their home or medical conditions-that prevented them from filing a proof of claim earlier." | Walker documented a residence-loss event and hotel fire and asserted wildfire/ice-storm disaster circumstances. The record should explain why comparable disaster evidence received different weight. | Major consistency issue |
| 8 | Disability was Walker's only excuse. | The Court itself recited Walker's disability, social-media restriction, interstate relocation, COVID, a "fire declared disaster in Salem Oregon," an "icenado after firenado," a "hotel fire while I was disabled & displaced," and "having no internet at times." | The Court's own recitation disproves any characterization that Walker relied only on disability. | Direct factual correction |
| 9 | Walker did not identify concrete resource loss. | Walker filed: "ms walker also had no resources, plus the last thing from ms walkers mind was thinking about anything but staying living judge lane and where my pussycat & i would be safe." Walker also wrote: "AT&T TURNED OFF MY PHONE MID FIRE DISASTER..." | These are Walker's exact assertions concerning access and capacity. Their weight may be disputed; they cannot be omitted from the reason-for-delay record. | Exact Walker record |
| 10 | Walker knowingly ignored a separate bankruptcy Proof-of-Claim requirement. | July 25, 2025 Walker email to Arik Preis: "do i have a claim number or is my case my claim?" | This contemporaneous question precisely documents Walker's uncertainty whether Marion County Case 23CV33935 itself constituted her claim. | Critical good-faith evidence |

| | | | | |
|---|---|---|---|---|
| 11 | Walker already had a claim number and simply failed to use it. | Aug. 2, 2025 Preis email: "If you want your claim number, I have copied into this email the PI Trust and Kroll (the claims processor). Can one of you please provide Rosemary with her claim number?" | Preis's conduct corroborates that Walker was seeking a claim number from the entities responsible for claims processing. The later claim-number date should not be used as the date Walker first acted. | Third-party corroboration |
| 12 | Walker's belief that her Oregon lawsuit was her claim is only a later self-serving explanation. | Sept. 19, 2025 Debtors/UCC filing signed by Arik Preis: "The Debtors and the Creditors' Committee note that, in addition to believing that her 2023 lawsuit constituted a filing of a valid and timely proof of claim against the Debtors, Ms. Walker appears to have confused the" | The quoted clause independently acknowledges Walker's belief that her 2023 lawsuit constituted a valid and timely Proof of Claim. The unfinished remainder is not supplied or reconstructed. | Exceptional admission / reason |
| 13 | Walker first attempted bankruptcy claim filing in August or September 2025. | Walker's July 15, 2025 signed filing asked Judge Lane: "did you receive my claim form i mailed pretty early when i found it on your website judge." She also asked for "information or forms the court needs from me." | This is contemporaneous pre-August evidence that Walker reported an earlier mailed claim form and affirmatively sought guidance from the Court. | Critical diligence evidence |



| # | Contention / Issue to Rebut | Exact Record / Documentary Evidence | Rosemary Walker Rebuttal / Pioneer Significance | Use |
|---|---|---|---|---|
| 14 | The August 4 docket date establishes when Walker first completed Official Form 410. | Doc. 7723 was docketed Aug. 4, 2025, but the attached Official Form 410 bears Walker's handwritten signature/date "7-20-25" and the notation: "I COULD NOT GET MY ORIGINAL FORM BACK PREVIOUS CLAIM FORM." | The signed date and notation materially predate docketing. Docket-entry date must not be conflated with the date of Walker's attempt to complete/submit the replacement form. | Documentary chronology |
| 15 | There is no record basis for Walker's assertion that she had tried an earlier claim form. | July 15 filing: "did you receive my claim form i mailed pretty early when i found it on your website judge." July 20 replacement Form 410: "I COULD NOT GET MY ORIGINAL FORM BACK PREVIOUS CLAIM FORM." | Two contemporaneous filings independently preserve Walker's assertion of an earlier mailed form. Whether the first mailing reached the Court is separate from whether Walker attempted it in good faith. | Good faith / diligence |
| 16 | Walker did not act by the July 28, 2025 PI Trust deadline. | July 27 PI Trust email: "the deadline to file claims with the PI Trust is tomorrow, July 28th at 11:59 EST" and "For your convenience we have attached the claim form to this email." July 28, 2025, 8:45 AM PI Trust response: "Received." | Walker supplied the PI Trust form by the stated PI Trust deadline. This must be kept distinct from the separate bankruptcy Proof-of-Claim process. | Critical documentary correction |
| 17 | The July 28 PI Trust submission and later Kroll claim number are the same procedural event. | July 28 PI Trust: "Received." Aug. 2 Preis: "Can one of you please provide Rosemary with her claim number?" Doc. 7723 later displays Claim Number 634787. | The sequence demonstrates separate procedural steps. The record should identify when Claim No. 634787 was created/assigned/communicated and who was responsible for providing it. | Administrative chronology |
| 18 | Knowledge that Purdue litigation existed proves Walker understood bankruptcy claims procedure. | Walker filed: "did i understand any of that no...not even a little. I thought my claim was joined to the bankruptcy which it was." Debtors/UCC later acknowledged she believed her 2023 lawsuit constituted a valid and timely Proof of Claim. | Awareness of litigation is not identical to understanding the specialized requirement for a separate bankruptcy Proof of Claim. The Debtors/UCC's own filing corroborates the misunderstanding. | Strong knowledge distinction |
| 19 | Walker gave PAT no reason for delay. | At the May 20 hearing PAT counsel said the opposed movants "either did not provide a reason for their delay in filing the proof of claim, or the reasons that they provided were not unique." | As to Walker, the 'no reason' branch is contradicted by her supplemental filing and documentary evidence. If PAT relied on 'not unique,' that is not itself the Pioneer standard; the issue is the equitable totality of her circumstances. | Excellent hearing rebuttal |
| 20 | PAT used a totality approach uniformly. | PAT stated for favorable comparators that "given the totality of their circumstances" there was a sufficient basis to allow their proofs of claim as timely. | PAT expressly used totality language for favorable claimants. Walker's cumulative circumstances should be tested under the same methodology. | Central consistency issue |
| 21 | Walker received the same individualized medical review as Michael Walker and British Moss. | PAT stated that Messrs. Moss and Walker were referred for PI Claims Administrator evaluation because documents "appeared to substantiate their assertions of unique medical conditions"; the administrator recommended acceptance as timely and PAT agreed. | The record supports asking why Rosemary Walker's documented disability plus disaster evidence did not receive the same individualized referral/evaluation before PAT maintained opposition. | Major comparator |
| 22 | Technology/news limitations were irrelevant to favorable treatment. | PAT described Wayne Anderson as a disabled veteran who did not keep up with news and was not technologically savvy and, "given the totality of their circumstances," did not oppose. | PAT considered disability, access, timing and totality together for a favorable comparator. Walker's disability/access evidence should be assessed under the same equitable framework. | Strong comparator |
| 23 | A claimant who possessed a form but failed to return it could not receive favorable treatment. | PAT's comparator history states Kroll sent Travis Stewart a proof-of-claim form in May 2020, but he did not return it; PAT later withdrew the Debtors' prior objection. | If accurately matched to the final disposition, Stewart is a powerful comparator: possession of a form before the bar date did not automatically foreclose excusable-neglect relief. | Very strong comparator |

| | | | | |
|---|---|---|---|---|
| 24 | Late discovery of Purdue was an automatic bar. | PAT Exhibit A states Eddie Vargas filed Feb. 12, 2024 and said he became aware of Purdue through a Kroll response dated Mar. 15, 2024, received Apr. 2, 2024; PAT: "Do Not Oppose." | PAT accepted at least one claimant whose awareness arose years after the 2020 bar date. This bears on Walker's argument that she acted as she came to understand the separate claims process. | Strong notice comparator |
| 25 | Walker was one of many late claims PAT opposed, so her treatment was routine. | The Court stated PAT addressed seventeen pending pro se late-claim motions and objected "only to four," finding adequate justification for thirteen. | This statistic does not itself prove legal inconsistency, but it heightens the need for a record-based explanation of why Walker's documented combination fell outside the thirteen favorable cases. | Important context |
| 26 | Walker failed to preserve lack of prejudice. | Walker at May 20 hearing: "the PAT never demonstrated actual material prejudice from allowing Ms. Walker's late claim. Instead, it relied mostly entirely on attacking reasons for delay." | This is Walker's exact preserved prejudice argument. The record should identify actual prejudice evidence, if any, rather than presume prejudice from lateness. | Pioneer prejudice |
| 27 | Debtors/PAT were surprised by Walker's existence or participation. | Walker at May 20 hearing: "The Debtors, Davis Polk, PAT, and the Court were already actively litigating issues involving Ms. Walker. Ms. Walker filed objections, appeals, injunctions, responses, and participated in proceedings." | This is Walker's preserved position. It should be paired with dated docket entries when used to rebut surprise or administrative prejudice. | Prejudice / notice |
| 28 | Later filing activity proves Walker could have filed during the original 2020-2021 period. | Court: "Ms. Walker's disability has not prevented her from filing numerous pleadings in these cases or otherwise being actively involved." | Later episodic capacity does not by itself establish capacity during the earlier COVID/disaster/displacement period. The causation analysis must be temporally specific. | Important causation issue |
| 29 | The 2020-2021 disasters are irrelevant because Walker learned of Purdue later. | The Court treated the fact that some listed circumstances occurred before Walker learned about the bankruptcy as relevant to causation. | Separate the periods. The 2020-2021 evidence bears on original notice/bar-date circumstances; the later period concerns when Walker learned of Purdue, what she understood about 23CV33935, and her subsequent filing efforts. | Two-period analysis |
| 30 | Ricarte personally established Walker's knowledge and circumstances. | Doc. 9143 is submitted in the name of Maria Christina Ricarte, as Trustee of PAT. The presently identified May 20 record reflects argument by PAT counsel; no verified Ricarte testimony is presently cited here. | Do not overstate. The evidentiary question is what personal-knowledge evidence supported PAT's assertions about Walker's knowledge, understanding, capacity and reasons. Any cross-examination argument must be tied to an exact request/ruling. | Preserve carefully |
| 31 | Reciting Walker's circumstances proves they were weighed consistently with the thirteen favorable claimants. | The Court recited Walker's circumstances but rejected excusable neglect, while PAT expressly used "totality" and compounding-circumstances reasoning for favorable comparators. | Recitation and comparative application are different. The appellate question is whether materially similar factors were weighed under the same Pioneer methodology. | Core appellate issue |



| # | Contention / Issue to Rebut | Exact Record / Documentary Evidence | Rosemary Walker Rebuttal / Pioneer Significance | Use |
|---|---|---|---|---|
| 32 | Walker deliberately disregarded a known deadline. | Contemporaneous record sequence: July 15 asks whether the Court received the form she had mailed; July 20 signs replacement Form 410; July 25 asks "do i have a claim number or is my case my claim?"; July 28 PI Trust says "Received"; Aug. 2 Preis asks PI Trust/Kroll to provide the claim number; Sept. 19 Debtors/UCC acknowledge Walker believed her 2023 lawsuit constituted a valid and timely Proof of Claim. | This sequence is affirmative evidence of attempted compliance, confusion, inquiry and continued diligence. It is inconsistent with a simple narrative of deliberate disregard. | Strongest good-faith chronology |
| 33 | Walker's circumstances must be 'unique' to satisfy Pioneer. | PAT counsel used the phrase that reasons were "not unique." PAT elsewhere relied on "totality of their circumstances" and compounding circumstances. | Pioneer calls for an equitable totality analysis; the court-ready issue is not whether each circumstance was unique in isolation but whether Walker's combined circumstances, conduct, prejudice, delay and good faith satisfy the standard. | Legal-methodology issue |
| 34 | Overall Pioneer comparison supports denial without further explanation. | Record evidence includes: documented Feb. 13, 2021 residence loss; Feb. 24 hotel-fire corroboration; disability; COVID-era conditions; asserted resource interruptions; contemporaneous confusion about whether 23CV33935 was her claim; reported earlier mailed form; July 20 replacement Form 410; timely July 28 PI Trust receipt; Preis/Kroll claim-number assistance; Debtors/UCC acknowledgment of Walker's belief; and PAT non-opposition to thirteen of seventeen pro se late-claim motions. | Walker's strongest appellate formulation is cumulative and comparative: require the record to explain why this documented course of events failed Pioneer when PAT accepted other pro se late claims based on disaster, medical, access, COVID, confusion/late discovery, and totality considerations. | Central conclusion |

## CORE CHRONOLOGY FOR THE PIONEER GOOD-FAITH / REASON-FOR-DELAY ANALYSIS

- 2020-2021: Walker relies on COVID-era conditions, disability, Salem/Marion County fire-disaster circumstances, resource limitations, and later ice-storm/tree damage and displacement.
- Feb. 13, 2021: Court-recognized insurance evidence identifies a falling-object loss related to Walker's residence.
- Feb. 24, 2021: Salem Housing email corroborates a fire at the hotel during Walker's displacement and offers help retrieving her belongings.
- 2023: Walker files Marion County Case No. 23CV33935; Walker later believes that lawsuit constituted her claim in the Purdue proceeding.
- July 15, 2025: Walker signs a filing asking Judge Lane whether the Court received the claim form she had mailed and requesting information/forms needed.
- July 20, 2025: Walker signs a replacement Official Form 410 and notes she could not get her original/previous claim form back.
- July 25, 2025: Walker asks Preis: 'do i have a claim number or is my case my claim?'
- July 27, 2025: PI Trust sends its claim form and states the PI Trust deadline is July 28 at 11:59 EST.
- July 28, 2025: PI Trust replies to Walker: 'Received.'
- Aug. 2, 2025: Preis copies PI Trust and Kroll and asks: 'Can one of you please provide Rosemary with her claim number?'
- Aug. 4, 2025: Doc. 7723 is docketed and displays Claim Number 634787; this docket date is later than the July 20 handwritten Form 410 date.
- Sept. 19, 2025: Debtors/UCC filing acknowledges Walker believed 'her 2023 lawsuit constituted a filing of a valid and timely proof of claim against the Debtors.'
- May 20, 2026: Walker argues PAT never demonstrated actual material prejudice; PAT counsel characterizes opposed claimants as giving no reason or reasons that were 'not unique.'