USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____________
DATE FILED: 8/19/2026

**MEMORANDUM ENDORSEMENT**
7:25-cv-09681-NSR
In Re: Purdue Pharma L.P.

*Pro se* Appellant Rosemary Helen Ziziros Walker has filed several motions and related submissions seeking, among other things, a stay, reconsideration of issues concerning her late-filed proof of claim and the Third-Party Releases, and further review and adjudication of matters arising from the confirmed Plan. (ECF Nos. 131–134.) The Court previously instructed Appellant Walker that it would not consider any further motions filed by her unless she first sought and obtained leave to file such motions. (ECF Nos. 104, 109, 116, 120, 124, 129.) She has not done so here.

In any event, Appellant Walker's filings largely repeat arguments and requests that have already been raised and resolved or concern issues properly addressed in connection with the merits of her pending bankruptcy appeal. (*See* ECF Nos. 55, 81, 83, 104, 107, 108, 117, 118, 119, 123.) The Court will not continue to devote its resources to repeatedly addressing requests that have already been resolved. To the extent Appellant Walker raises arguments relevant to the merits of her pending appeal, the Court will consider any properly preserved arguments in resolving that appeal.

The Clerk of Court is respectfully directed to (1) terminate the motions at ECF Nos. 131–134 and (2) mail a copy of this Endorsement to *pro se* Appellant Walker at the address listed on ECF, and to note service on the docket.

Dated: August 19, 2026
White Plains, NY

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

US SDNY DISTRICT COURT
300 QUARROPAS STREET
WHITE PLAINS, NEW YORK 10601-4150
RE: ROSEMARY HELEN ZIZIROS WALKER VS PURDUE PHARMA 19-23649
2nd CIRCUIT CASE #26-1235
DISTRICT COURT CASE #25CV9681
MARION COUNTY OREGON CASE 23cv33935

MOTIONS & OBJECTIONS FROM BANKRUPTCY COURT

JUDGE RAMON OR ARUN I STILL HAVE NO IDEA WHY I GOT THIS CHANGE OF JUDGE THAT AI REALIZED IS A DIFFERENT CASE NUMBER….I AM FILING THIS OBJECTION TO THE SDNY BANKRUPTCY COURT DOC 7439 WHILE STILL RECOVERING FROM SURGERY.

THIS IS MY OBJECTION.

first to remind this court ms walker is an American qualified disabled American woman pro se pauper who is still recovering from surgery on 7.20.26 NOT A LAWYER who THIS COURT HAS NOT KEPT ANY OF ITS HIS WORDS TO NOR ANSWERED MS WALKERS YES VERY IMPORTANT QUESTIONS.

MS WALKER WILL RECOUNT ONLY SO MUCH BACKGROUND AS NECESSARY SO ALL OF IT OR THE MOST IMPORTANT DAMNING PARTS FOR THIS COURT….. READY.

ms walker doesnot need to BEG for permission to AMENDMENT I I BEG YOUR PARDON JUDGE LANE NOR FOR MY ADA & OTHER PROVIDED RIGHTS NOR DO I NEED PERMISSION TO SUE THE SACKLER FAMILY MS WALKER DID SUE THE SACKLER FAMILY & PURDUE PHARMACEUTICALS LP IN 23CV33935 THIS COURT NEVER CARED DAVIS POLK GOT MY VERY IMPORTANT NUMBER WRONG THE LAWYERS HAVE NOW CUT & PASTED STILL WRONG IN NEW BRIEF FILED IN THE SDNY DISTRICT COURT BRIEFS NOT TO MENTION MY NOT BEING A LAWYER DIDN'T REALIZE THE CASE CAPTION WAS ALSO WRONG AGAIN SLOP LAWYERING ON ME FROM THE START.

I WILL AGAIN REQUEST YOU FILE & POST THE DOCUMENTS I HAVE UPLOADED THAT HAVE NOT BEEN POSTED TO KROLL THE PRESS NOW HAS SEEN JUDGE LANE.

AS THE COURT IS WELL AWARE MS WALKER JUST HAD SURGERY A FEW WEEKS AGO NOW. LOOK I DO NOT NEED TO RELITIGATE MY DISABILITY ALREADY LITIGATED AND PROTECTED BY HIPAA. MS WALKER INTENDS TO AMEND THE ADA SO THAT EVERY QUALIFIED DISABLED AMERICAN HAS THE SAME EQUAL PROTECTIONS OF LAW BOTH NON (QUESTIONABLE) & AMERICAN CRIMINALS ARE PROVIDED A LAWYER TO ENSURE ADA & TITLE RIGHTS THAT COURT RULES ARE IN FACT VIOLATING PAY THE $75 K + IF

RIGHTS ARE VIOLATED REPEATEDLY MS WALKERS HAVE BEEN & FOR EVERY TIME MS WALKER TYPED ‘ADA ACCOMMATION’ MS WALKER INTENDS TO COLLECT THE ADA VIOLATION FINES FROM THIS COURT & OTHER COURTS.

SO MS WALKER IS BEGGING FOR GRACE MS WALKER HAVING MEDICAL CONDITIONS THIS COURT OBVIOUSLY FAILS TO UNDERSTAND & INSTEAD OF COMPASSION THIS COURT HAS LITERALLY SHIT ALL OVER MS WALKER AND MS WALKERS RIGHTS.

MS WALKERS VOICE HAS EVERY RIGHT TO SOUND UPSET AND FURIOUS WITH THE COURTS. I AM. I HAVE HAD TO BITE MY TONGUE & FINGERS BLOODY KNOWING BETTER NOW THAT AS AN AMERICAN I AM NOT FREE AT ALL IF I REFUSE TO SUBMIT TO THIS COURT I WILL NOT JUDGE LANE NOR TO YOU JUST A MAN WHO ERRED BIGLY IN MS WALKER AND OTHERS 19-23649 CASE AND LIKE I REQUESTED EARLY AFTER DAVIS POLK JOINED MY 23CV3393 THEY TYPED AGAIN THE WRONG NUMBER FOR YOUR REMOVAL AND YOU SHOULD HAVE BEEN AND NOW YOU SHOULD BE FIRED FROM YOUR NEW JOB AND KNOW WHO SHOULD RUN THE COURT ME MS WALKER JUDGE LANE AS YOU HAVE VIOLATED COURT PROCEDURES BY MODIFYING THE CONFIRMED CONSUMMATED EMERGENCE EFFECTIVE PLAN WHICH AGAIN IS NO LONGER YOUR JOB YOUR JOB IS TO ENFORCE WHAT YOU JUDGE LANE CHOSE TO WRONGFULLY CONFIRM CONSUMMATE PERFECT EMERGE EFFECTIVE OK LET ME DO A HYPOTHETICAL YOU LET ME LOOK UP YOUR EXACT WORDS ‘HATE TO DO’ POSSIBLY YOU RUSHED THIS THROUGH DUE TO KNOWING YOU HAD BEEN GIVEN A PROMOTION.

IN THE DEBTORS NEW DISTRICT COURT BRIEF DEBTORS WRITE ON PAGE 26 IN VIOLATION OF FRBP 2015 (a) (3) DEBTORS WRITE THERE IS NO WAY TO TRACE $1.1 BILLION IN SACKLER CASH AS NOT ONE CENT HAS GONE TO ANYONE BUT PEOPLE WITH LAWYERS WHO SEEM TO HAVE A TOTALLY DIFFERENT SET OF RULES THAN OTHER PURDUE PI PATIENT VICTIMS.



§§ 5.4(c) 5.3(d)).) Roughly $910 million was also transferred to the MDT, (A.008180–81 (Plan § 5.6(b)–(c)), of which roughly $880 million was disbursed to the various creditor trusts for satisfaction of claims against the Estates, with the remaining cash funding operation of the MDT.[10] The roughly $880 million provided by the Debtors-Appellees was disbursed to the various creditor trusts together with approximately $1.1 billion in Sackler payments, and there is no practical way to trace current location of all dollars contributed by the Debtors-Appellees.

Ultimately, following the aforementioned transactions and PPLP's criminal sentencing, the Debtors-Appellees have no cash or other assets and no longer retain

[10] Further, an additional roughly $285 million has been distributed to finance a number of the Debtors-Appellees' financial obligations, including satisfaction of the DOJ forfeiture judgment, employment retention plan payments, and insurance obligations.

26

JUDGE LANE I ASKED YOU TO SPECIFY EACH OF A - GG FROM A HEARING YOU NEVER WENT MOTION BY MOTION BY MOTION AS YOU HAVE NOT IN THIS LAST DOCUMENT BANISHING MS WALKER FROM HER AMENDMENT I RIGHTS TO PETITION FOR REDRESS IN A CASE YES I VERY MUCH HAVE MONETARY ISSUE IN $8147-$16K+ DAHHH PLUS WHAT I COLLECT FROM THE SACKLER FAMILY NOW I HAVE ALL THIS EVIDENCE TO USE AGAINST THEM AS YOU SAY RIGHT FROM ALL THE HORSES MOUTHS.

JUDGE LANE WAS THERE EVER A PATIENT OMBUDSMAN?
IF SO WHY WHEN I REQUESTED THEY CONTACT ME DIDN'T THEY?
WAS ANY ONE REPRESENTING DISABLED AMERICANS & IF NOT WHY DISABLED AMERICANS SIMPLY DON'T COUNT AS A GROUP OF EVEN MORE EGREGIOUSLY HARMED GROUP OF AMERICANS THAT WHEN ADA RIGHTS ARE VIOLATED COME WITH ADDITIONAL CAN BE OVER $75K FINES.

YOU WRITE….JUDGE LANE.

**Ms. Walker has filed not less than 38 pleadings.2**

REMEMBER WHEN I READ AMENDMENT I ANYWHERE IN AMENDMENT I IS MS WALKERS RIGHT TO PETITION LIMITED WHEN MULTIPLE NO MANY LAW FIRMS ARE ALL

FILING DOCUMENTS 24/7 ALAS THE CLAIMANTS DO NOT HAVE THE SAME RIGHT TO IN REAL TIME HAVE OUR DOCUMENTS POSTED TO THE RECORD AS MS WALKER NEEDS PERMISSION TO AMENDMENT I THAT DOESNOT READ THAT UNLESS YOU CAN SHOW ME WHERE IN AMENDMENT I DOES MS WALKERS RIGHTS TO PETITION FOR REDRESS GET LIMITED…SHOW AMERICA PLEASE. MAYBE COURT SHOULD HAVE ACTED PRIOR TO AFTER EFFECTIVE LIKE THE BAR DATE PLAN DISCLOSURE VOTE OPT IN NOT OPT IN THE BALLOT THE NEW FIXED DEADLINE ALL MOOT DUE TO NO FAULT OF MS WALKER BUT CLEAR ERRORS OF THIS COURT.

THE COURT LISTS MANY OF MS WALKERS BEGGING TO BE HEARD PRIOR TO EFFECTIVE PRIOR & WELL BEFORE THE MARCH 1, 2026 DEADLINE BUT ALAS LEAVE OUT ALL MS WALKERS EARLIER REQUESTS INCLUDING MS WALKER FIRST REQUESTED A STAY 2.19.2025 TO PAUSE HALT STOP THE CASE UNTLE MY ISSUES WERE RESOLVED ALAS THE COURT DELAYED DELAYED DELAYED UNTIL YOU DELAYED MY RIGHTS AWAY ALONG WITH MY LIVING TIME I HAVE LEFT.
MORE INFURIATING YOU ALLOWED OTHER PURDUE PHARMA LATE CLAIMS THAT DID NOT VOTE DID NOT MEET THE PURDUE PI CLAIM FORM DEADLINE NO OPT IN OR NOT OPT IN AS THAT WAS THE SCHEME ALL ALONG TO DENY CLAIMS YET SOMEHOW THERE IS MORE CASH & TO SURE ALLOW CLAIMS THAT DO NOT QUALIFY TO BEGIN WITH NO SUBSTANTIATION I THINK IS THE WORD USED.

1.24.24 doc 6135 re: enforcing ada rights to court, clearly stated i sued purdue & the sacklers *i emailed both marion county & sdnyB because i was so confused not being a lawyer what was going on how would i have understood 19-23649 was a bankruptcy at that point.

It was so wrong for my ada & amendment I to email to be taken wrongfully

3.19.24 doc 6257 re: right to email format amendment taken wrongfully

4.1.24 doc 6284 re: ada rights & supreme court my not having any clue how courts orders go not being a lawyer

**2.19.25 doc 7246 re: ***FIRST STAY REQUEST request to remove judge my attempt at giggle seeking certiorari and none of the form form useless forms made sense nor applied to me

*7.21.25 doc 7678 re: **CHRISTINE AZZARRO **FIRST HEARING

8.5.25 doc 7723 re: 2nd PROOF OF CLAIM FORM FOUND ON COURT WEBSITE DATED 7.26.2025

8.21.25 doc 7771 re: BAD FAITH SANCTIONS

**8.21.25 doc 7772 re: **YES THEY GOT MY CLAIM FORM SANCTIONS i used 11 usc

9.8.25 doc 7825 re: ADA & TITLE RIGHTS INCLUDED IN FINES REQUESTS

9.12.25 doc 7846 re: PURDUE PI CLAIM WAS IN 7.28.25 FINES REQUEST

9,16,25 doc 7853 re: ADA RIGHTS AGAIN

9.16.25 doc 7855 re: ME ASKING THE COURT TO ANSWER ME IS MY CLAIM VALID OR NOT YES OR NO MY UNDERSTANDING BEING YES IT IS

9.17.25 doc 7858 re: 2nd TIME AMENDMENT I ADA TITLE RIGHTS VIOLATED BY COURT ON MY BIRTHDAY FOR DARING TO REQUEST TO DUE PRO PROCESS AND HEAR THE HEARING PRIOR TO KNOWING HOW TO DO IT ONLINE

9.18.25 doc 7863 re: ME SUPER UPSET FOR FOLLOWING DIRECTIONS & BEING PUNISHED ON MY BIRTHDAY

EXCUSE ME DEBTORS & THE NON DEBTOR SACKLER FAMILY I BEG THIS COURTS PARDON.

**‘inquiries related to the claim that she filed against the Debtors’**

MARION COUNTY SHERIFF'S OFFICE
NICK HUNTER, SHERIFF

MARION COUNTY CIRCUIT COURT-AMENDED

STATE OF OREGON ) Court Case/DA # : 23CV33935
County of Marion ) ss. CSP Case # :
) Sheriff's Case #: S23003059

**Sheriff's Return of Service**

I hereby certify that I served the within SUMMONS AND COMPLAINT,JUDGE ASSIGNMENT within the said State and County at 2:11 PM on the 19th day of September 2023, on the within named PURDUE PHARMACEUTICALS AND THE SACKLER FAMILY, by delivering a true copy to EDEN TITUS with CT CORPORATION SYSTEM, REGISTERED AGENT at 780 COMMERCIAL ST SE 100, SALEM in the State of Oregon

I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.

NICK HUNTER, SHERIFF
MARION COUNTY, Oregon

By CORY BREITBACH

COPY
Original Returned to Court

By /S/
Fee: $0.00

**requests regarding her decision on whether or not to opt into the Sackler settlement that is part of these cases; requests to stay actions authorized by the confirmed plan of reorganization in these cases; requests seeking modifications of the confirmed plan of reorganization; and requests for relief unrelated to the Bankruptcy Code.**

RIGHT SO RATHER THAN HEAR MS WALKER WHILE PURDUE PHARM 19-23649 WAS STILL A THING YOU TIMED OUT MS WALKER RIGHTS TO PETITION ON PURPOSE UNTIL AFTER CONFIRMATION CONSUMMATION PERFECTION EMERGENCE EFFECTIVE WHICH IS EXACTLY THE NOT FAIR YOU SPOKE ABOUT ON RECORD THIS COURT DID TO MS WALKER.

DURING THE NOVEMBER 14, 2025 MS WALKER WAS ALL UP IN YOUR BRAIN BECAUSE MS WALKER HAS BEEN RIGHT THE ENTIRE TIME THE BY SEPT 30, 2025 PREMATURE VOTE & OPT IN OR NOT OPT IN WAS NOT CONSENSUAL WHEN IT WAS MARSHALL HUEBNER WHO BOO HOOO WILL NOT TYPE BACK TO MS WALKER AFTER HARASSING ME 8.4.26 I DIDN'T EMAIL MARC TOBAC OR MARSHALL HUEBNER THEY EMAILED ME THEN LIKE THE COURT GOT ALL HISSY WHEN MS WALKER YES RESPONDS AND YES IN A SPIRAL IT IS SO INFURITATING PEOPLE TYPING NOW THE OPPOSITE OF WHAT THEY STATED ON RECORD ALL OF YOU WHEN MS WALKER HAD TO FIGURE OUT HOW TO ASK MY VERY IMPORTANT QUESTIONS AS FAST AS POSSIBLE TO ILLICIT A RESPONSE WHICH MS WALKER HAS BEEN SUCCESSFUL IN THROUGHOUT THE RECORD & SINCE DAVIS POLK JOINED MY OREGON PETITION TO 19-23649.

**the Court has concluded that Ms. Walker's late filed claim is not permitted because it was filed years after the Bar Date and she does not satisfy the standard for excusable neglect.**

THIS COURT HAS REFUSED TO ACKNOWLEDGE EVI EVI EVI DANCE THAT SHOWS OTHERWISE JUDGE LANE. REMEMBER WHEN I ASKED ON RECORD THAT ARIK REPEATED MY QUESTION WHO DECIDED IF A CLAIM IS VALID EDGAR OR YOU…..NO ONE CLEARLY ANSWERED ….I KNEW I HAVE EVIDENCE AND THE BAR DATE HAS BEEN MOOT AND SHOULD HAVE BEEN CHANGED WHEN HARRINGTON WASNOT DECIDED UNTIL 6.27.24 AND AMERICANS CONTINUED TO BE HARMED AND DIE JUDGE LANE UP UNTIL THE DAY BEFORE CONSUMMATION PERFECTION EMERGENCE EFFECTIVE 5.1.26 & A NEW NOTICE SHOULD HAVE GONE OUT WITH NEW DEADLINES & AGAIN WHOSE FAULT WAS IT THE US SUPREME COURT REVERSED REJECTED THE FIRST PLAN PRIOR TO MS WALKER EVEN HAVING HEARD ABOUT THE CASE I HAD NO CLUE WAS A BANKRUPTCY CASE NOR WHAT STATE RIGHT NOT MS WALKERS. MS WALKER DID NOT CAUSE THE 6 YEAR DELAY THE LAWYERS & COURT ALL DID TO BE VERY CLEAR OH AND THE NON DEBTOR SACKLERS STILL I IMAGINE BICKERING OVER ALL THEIR CASH NONE OF US ACTUAL PATIENT VICTIMS HAVE JUDGE LANE.

Mon, Mar 2,
1:17 PM

**purduepitrust**
**<purduepitrust@purduepitrust.com>**

to me, Edgar, Arik, Marc

Good afternoon Ms. Walker,

Please be advised that your deficiency letter does not state that you did not file a claim with the Purdue PI Trust.

As stated in your letter, your deficiencies are for Proof of Use and Proof of Claim.

The evidence that you provided to the Purdue PI Trust does indicate that you were prescribed a qualifying Purdue opioid. However, the evidence does not meet the requirements for a Tier 1 claim. The evidence provided does not demonstrate that you were prescribed a qualifying Purdue opioid for 6 months as required under the PI TDP for a Tier 1 claim. We note that the evidence meets the requirements for a Tier 2 claim.

As noted in your deficiency letter, you will need to provide the Trust with additional evidence that demonstrates prescribed Purdue opioid use. This letter is letting you know that we need additional evidence.

For the Proof of Claim deficiency, under the terms of the Court-approved PI TDP, claimants must have timely filed Proof of Claims in the Chapter 11 proceedings to be eligible for compensation under the PI TDP. Because timely filed Proof of Claims are required under the PI TDP, potential deficiencies can be related to the Proof of Claim number. Under the PI TDP, a Proof of Claim must have been timely filed before September 21, 2021.

The Trust is not asserting that no Proof of Claim was filed on your behalf in the bankruptcy proceedings. However, based on the data provided by Kroll, the Proof of Claim that you included on your Purdue PI Trust Claim Form was not timely filed by the September 21, 2021 deadline outlined above.

Best,

Purdue PI Trust




allowed. But that allowance is deemed to occur at emergence.

So if you grant the release, if you tick the box on your ballot, your claim is therefore deemed allowed --

THE COURT: So it's more like a provisional allowance than an actual allowance. All right.

MR. VONNEGUT: Correct. Correct. But again, it only occurs at emergence. So if your claim gets disallowed prior to emergence, you're not bound to the release, you're not treated as a claimant in the case.

**THE COURT: I totally agree, but I think it is 16 important for people to know that if you -- again, it sounds 17 like it's going to be an unlikely circumstance, and 18 hopefully it doesn't occur at all. But if somebody says I 19 checked and I wanted to get the Sackler money and I don't 20 get the Sackler money, the idea is then you would not have 21 been able to satisfy an exceedingly low bar to just show 22 that you took these drugs. Right? And that's why I think 23 it's reasonable and appropriate. That's why I think people 24 agreed to it when they were mediating to try to figure out 25 an appropriate way to handle this. Page 101 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 So I just think that's worth repeating because no 2 one is going to sit there and say, well, let's look at your 3 quantum of proof. Well, what are your dates and what did 4 your doctor say and what exactly what was your dosage? 5 That's -- we're not doing that kind of granular if you were 6 to sue Sacklers in state or federal court, call your first 7 witness, this is what you need to prove.**

MS WALKER FILED EVI EVI EVI DANCE IN MY ORIGINAL OREGON PETITION THEN PROVIDED IT TO THIS COURT & EDGAR WHO HASNOT TREATED MS WALKER EVEN CLOSE TO CONSISTENTLY IN FACT OPPOSITE WHEN MS WALKER PROVIDED THE JULY 28, 2025 PURDUE PHARMA PI CLAIM FORM VOTED & OPTED IN OR NOT BY 9.30.25 MS WALKER IN FACT DID GO THROUGH THE TDP AS MY CLAIM WAS TRANSMITTED TO OR

FROM KROLL WELL BEFORE 30 DAYS PRIOR TO EFFECTIVE PER THE MOOT PLAN THAT VIOLATES HARRINGTON PER MARC TOBACS EMAIL 8.4.26 SO DAVIS POLK & THIS COURT JUST TOOK CONSENT RIGHTS FROM INCARCERATED LATE CLAIMS WHO NEVER GOT A BALLOT VOTE OR OPT IN NOT OPT CHOICE PER THE PLAN & DISCLOSURE STATEMENT TO DATE MS WALKER HAS NEVER SEEN IN ONE PLACE THAT NULLIFIES THE ENTIRE VOTE PLAN DISCLOSURE STATEMENT CONSENT THAT VIOLATES HARRINGTON.

Tue, Aug 4, 3:41 PM
(4 days ago)

**Tobak, Marc J.**

to me, Marshall

Rosemary,

As you know, you were given special permission to submit a “provisional ballot” which would be counted if, and only if, the court ruled that your late claim would be deemed timely. Your late claim motion was denied, meaning that your provisional ballot did not count, and you are not bound to the Third-Party Releases.

Others whose late claim motions were granted, but did not submit a ballot, do have a claim against the debtors and are deemed **not** to have opted-in to the Third-Party Releases. The only claimants bound to the releases were those who filed a timely proof of claim, whose claim was not later disallowed, and who affirmatively opted-in to the releases.

Best,

Marc

**Marc J. Tobak**

**Davis Polk & Wardwell** LLP

+1 212 450 3073 office
+1 646 831 5116 mobile

NOTICE THE FREUDIAN SLIP TYPING AS MARC MEANT TO TYPE DO NOT SO DAVIS POLK JUST DEEMS CONSENT IS MOOT SUDDENLY AGAIN THAT VIOLATES HARRINGTON AND AGAIN MS WALKERS QUESTION REMAINS AM I OPTED IN OR NOT OPTED IN AND WHY SHOULD MS WALKER HAVE A PROVERBIAL GUN TO MY HEAD THAT TO GET MY TIER 2 I STILL ARGUE IS TIER 1 AS MY DOCTOR OFFICE LIKE THE CHECK BOX OPT IN OR NOT OPT IN CHECKED THE NO CHANGE IN MEDICATIONS BOX THAT TO GET MY NO LONGER PURDUE PHARMA DAMAGES I HAVE TO GIVE UP MY RIGHT IN OREGON NOW IN OREGON SUPREME COURT BY THE WAY CASE YEAH NO I DO NOT NOR DO I NEED ANYONES PERMISSION AND JUDGE LANE OK MAYBE NOW YOU WILL UNDERSTAND MS WALKERS FROM CONFIRMATION QUESTION YOU REFUSED TO HEAR….WHERE DOES IT READ IN THE PLAN WHAT QUALIFIES A PURDUE PHARMA PI CLAIMANT THEY HAVE ANY RIGHT TO PROVIDE THE NON DEBTOR SACKLER FAMILY AN IN PERPETUITY RELEASE TO AVOID FUTURE LITIGATION IN EXCHANGE FOR CASH WHEN NO PURDUE PHARMA PI AGAIN MS WALKER IS AWARE OF IN FACT SUED THE SACKLER FAMILY WAS MY QUESTION YOU REFUSED TO ANSWER ON RECORD….SO PLEASE…..

YOU AD NAUSEUM REPEATED NO ONE WAS GIVING UP A RIGHT TO SUE THE SACKLERS SO I MOTIONED YOU TO ISSUE AN ORDER PROVIDING STANDING TO EVERY REJECTED PURDUE PHARMA CLAIMANTS WHO WAS DISALLOWED IN EVERY COURT IN AMERICA SINCE THIS 19-23649 HAS BEEN DELAYED SO LONG DUE TO NO FAULT OF ANY PURDUE PHARMA PI PATIENT VICTIM JUDGE LANE BUT ALAS YOU ONLY GAVE MS WALKER PERMISSION MS WALKER NEVER NEEDED TO BEGIN WITH.



Purdue - Transcript of November 14, 2025 Hearing 4896-352...

MS. WALKER: I appreciate that.

THE COURT: And I appreciate Mr. Vonnegut's clarification. There's a deadline to make this decision. You've already done it because you filled out a ballot. But there is -- in your situation, the timeliness of your claim is going to be addressed before what is being referred to as emergence or the effective date. And that means if it is for some reason disallowed, you will not have given any

Veritext Legal Solutions
212-267-6868 www.veritext.com 516-608-2400

MS WALKER IN FACT DID OPT IN THEREFORE DOES HAVE A VALID CLAIM COURT.

**Ms. Walker to revoke her opt-in election to participate in the related Sackler settlement is similarly moot, because Ms. Walker does not have the right to participate in the Sackler settlement if she is not a claimant in these bankruptcy cases.3**
**See Purdue Pharma, 675 B.R. at 666 (explaining that the**
**third-party releases only apply to holders of claims who affirmatively consent to the releases).**

CO[illegible]RVATIVE CARE SPECIALISTS MEDICAL GR[illegible] INC.
6815 Noble Ave., Suite 105, Van Nuys, CA 9140[illegible]

## PROGRESS REPORT

Date: 4/4/07

☐ B/P: 129/77 ☑ Pulse: 90 ☐ Temp: ______ ☐ Wt: ______

**Chief Complaint:** follow up + Rx fills

**Medications, Supplements, etc.** (INCLUDE MEDS FROM OTHER PRACTITIONERS)
Change/new medication since last visit: ☐ YES (see pt. med. log) ☑ NO ☐ N/A
List effects/side effects

Grace Duran
MA Signature

**Interval history since last visit:** ☐ Visit to other practitioner ☐ Procedure performed ☐ N/A

Pain has increased since last visit
Taking Oxycontin - 20mg Q.i.d., not T.i.d.

**Interval VASPI Pain Scale**

1 2 3 4 5 6 7 (8) 9 10

**PE:**

| | | |
|---|---|---|
| Psychological Assessment: | ☑ No Change | ☐ Change: |
| HEENT: | ☑ No Change | ☐ Change: |
| Upper Back, Neck & Shoulders | ☑ No Change | ☐ Change: |
| Lower Back & Buttocks: | ☑ No Change | ☐ Change: |
| Upper Extremities: | ☑ No Change | ☐ Change: |
| Lower Extremities: | ☑ No Change | ☐ Change: |
| Other: | ☑ No Change | ☐ Change: |

**Assessment, Procedures & Plan:** Increase Oxycontin
Add Gabitril 30mg p.o. qd

*Patient Name:*
Walker, Rosemary

[signature] PA-C
Physician/PA Signature




AGAIN THE COURT ACKNOWLEDGES MS WALKERS CONSENT ISSUE REMAINS A PROBLEM AFTER EFFECTIVE THEN SIMPLY POOH POOHS MS WALKER AND HER RIGHTS ALL NOT BEFORE PER THE NOVEMBER 25 CONFIRMATION HEARINGS THAT INCLUDES NO THING ABOUT MS WALKERS RIGHTS AFTER CONFIRMATION CONSUMMATION PERFECTION EMERGENCE EFFECTIVE OF THE PLAN DONE LATE AFTER HOURS ON A FRIDAY NIGHT WITH NO WARNING OR NOTICE TO EXTINGUISH THE RIGHTS OF MS WALKER THE HANGING CHAD THE CATCH-22 BIG PAIN IN THE COURT ET AL’s BUTT.

× Purdue - Transcript of May 20, 2...

THE COURT: Okay. We're done. Thank you. So with that, I will consider all of the many, many, many written submissions that Ms. Walker has provided on this issue. I think the last time I issued an order as to Ms. Walker's submissions, there were some 34. I suspect there's somewhere in the 20s now, which is not frankly normal for these things. People usually get one or two cracks at an issue. But I'll consider them all for purposes of ruling on the late filed claim motion.

I will ask the folks from the plan administrator as you can see, there is still an issue about this opt-in, opt-out about Ms. Walker feels very strongly, was on my list to talk about, to say, when are we going to schedule a hearing on that issue? and so let me ask folks for their wisdom on that procedurally whether it's going to be handled at a later hearing. But probably frankly, sometime soon because it needs to be addressed.

MS. TOWNES: I don't see Vonnegut get back on, but we can certainly discuss that amongst ourselves if there are others at the team who are sort of more keyed into that





particular issue.

THE COURT: Okay. So one of the things, again, I said I took a look at the docket before I came out here, and certainly note that there are lots of various filings that people have. I think a lot of them, as I can tell, relate

Drive Share

**a party in interest applies to "anyone holding a direct financial stake in the outcome of the case."**

MS WALKER IS SO A PARTY OF INTEREST.

**Similarly, to the extent Ms. Walker seeks any modification of the Plan, such relief is moot as the Plan has gone effective or already is the subject of her appeal.**

YET THIS COURT AFTER EFFECTIVE IN VIOLATION OF COURTS OWN WORDS MODIFIED THE VOTED ON PER BALLOT PER PLAN & DISCLOSURE STATEMENT MODIFIED AFTER EFFECTIVE DOC 9406 DATED AFTER EFFECTIVE 6.30.26.

**c. To facilitate a uniform and fair early claim distribution process, the Claims Administrator and NAS Representative respectfully request that the Court modify and the Court hereby modifies Section 5 of Exhibit E to the NAS PI TDP by eliminating alternative "(a)" as a means to facilitate an early distribution, with only early distributions approved pursuant to the procedures set forth herein to be allowed. This will facilitate the uniform treatment of such early distribution requests.**
**Dated: June 30, 2026**
**White Plains, New York**
**/s/ Sean H. Lane**
**HONORABLE SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

SO THIS BANKRUPTCY COURT IN FACT VIOLATES ADA RIGHTS BY SIMPLY WHAT NOT PROVIDING FEDERAL ADA & TITLE II & III RIGHTS TO QUALIFIED DISABLED AMERICANS

**relief relating to requests regarding American with Disabilities Act accommodations,**

EXACTLY WHY I AM HAPPY YOU ACKNOWLEDGE MS WALKER HAS REQUESTED YES ADA VIOLATION FINES.

CORRECTION, NO NOT BY ZOOM BY DIALING IN BY PHONE WHEN ZOOM DID NOT WORK

**During the confirmation hearings in November 2025—**
**and at nearly every hearing in these cases since that time—the Court has been required to disconnect Ms. Walker from hearings where she was participating by Zoom**

AND YOU WRONGFULLY DID COURT.

**stating "I dare you to deny my claim"**

MS WALKER DID NOT EVEN GET NOTICE OF THIS DOCUMENT UNTIL

SO IS THIS COURT STATING THAT EVEN THOUGH MS WALKER PARTICIPATED IN THE TDP HAS EVIDENCE & ISSUED AN $8147 TIER 2 MS WALKER HAS NO RIGHT TO FURTHER PARTICIPATE TO AMENDMENT I AS THIS CASE THAT CONTINUES TO HEAR ALL OTHER ARGUMENTS BUT MS WALKERS OPT IN NOT OPT IN ISSUE AGAIN YOU STATED 5.30.2026 NEEDED TO BE HEARD AGAIN MOOTING THE 3.1.26 DEADLINE CREATED FOR MS WALKERS VERY UNIQUE CATCH 22 COURT.

SO PER HOWARD MS WALKER HAS THE RIGHT TO APPEAL WHICH MS WALKER DID YOU CAN NOT MOOT ANY RIGHTS THIS COURT HAS NOT YET MOOTED NOR BANISH MS WALKER FROM HER AMENDMENT I RIGHTS.

MS WALKER HAS REQUESTED OMNIBUS TRANSCRIPTS I DO NOT HAVE AND ANY TRANSCRIPT MS WALKER PARTICIPATED IN THAT HAS NOT BEEN EMAILED TO ME IF YOU CAN COMPEL AKIN DAVIS POLK PURDUE PI ET AL TO GET THOSE TO ME PLEASE.

IF THE COURT PERCEIVES MS WALKERS FRUSTRATION WITH ENFORCING HER RIGHTS AS ‘ABUSIVE’ GOOD. HOW WOULD YOU FEEL HAPPY ABOUT HAVING YOUR RIGHTS LITERALLY SHIT ON….I WILL REPEAT THE ONLY WAY MS WALKER CAN ACCURATELY & ADEQUATELY DESCRIBE HOW IT FEELS TO HAVE ONES AMERICANS RIGHT TAKEN LIKE THIS COURT TOOK A SHIT ON MY HEAD SO BIG THE SHIT COVERS MY ENTIRE BODY JUDGE LANE.

OH MS WALKER AGAIN OBJECTS TO DOC 9517 & 9516 ESPECIALLY THE AD HOC ….& ALL FEES REQUESTED BY ALL LAWYERS AND ANY FEES FROM PRIOR TO 6.27.24 WHEN HARRINGTON WAS DECIDED DUE TO LEGAL INCOMPETENCE THAT CAUSED DELAYS IN COMPENSATION FOR WHICH MS WALKER ALSO REQUESTS YET AGAIN DAMAGES FOR MS WALKERS RECORD AS JUSTICE DELAYED IS JUSTICE DENIED.

MS WALKER DEMANDS AGAIN HER TRUST ADMINISTRATION APPEAL PER HOWARD MS WALKER HAS REQUESTED & MY RIGHT HAVING BEEN ISSUED A TIER.

HAS YOUR TEENAGE SON READ THE 11.14.2025 TRANSCRIPT…….

I WILL END WITH THE COURT & MARSHALL HUEBNERS OWN WORDS…

MR. HUEBNER: We'll accept notices from someone 6 saying hey, you know, now that I understand things better, I 7 previously opted either in or not opted in, I would like to 8 change that.

**22 THE COURT: All right. Thank you. And again, I 23 appreciate it. I know we've been peeling the layers of this 24 back. I think it's worthwhile. It's an important issue. 25 And**

**so I just want it to be very clear. And I appreciate Page 102 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 the education. 2 And so Mr. Walker's question spurred some very 3 useful information on the record. 4 MR. HUEBNER: And a new fixed deadline. 5 THE COURT: And a new fixed deadline. 6 MR. HUEBNER: So she changed the plan.**

A GIANT PROBLEM FOR THE ENTIRE PLAN PROCESS ‘NOW THAT I UNDERSTAND THINGS BETTER’ EVERY SINGLE INCLUDING MS WALKER NO LONGER PURDUE PHARMA PATIENT PI VICTIM CLAIMANTS SHOULD HAVE UNDERSTOOD VERY CLEARLY PRIOR TO BALLOT VOTE & OPT IN NOT OPT IN BY 9.30.2026 NOT CLARIFIED & CHANGED THE PLAN WAS CHANGED IN 11.14.2025 AFTER THE VOTE & OPT IN NOT OPT IN ALL MOOT.

THERE WAS NO MEETING OF THE MINDS

rosemary helen ziziros walker 8.8.26 8:23 am




**CERT OF SERVICE since effective 5.1.26 there is no one to serve i have uploaded this document to the SDNY BANKRUPTCY COURT via the upload tool & the sdny district court is still not accessible or functioning.**

US SDNY DISTRICT COURT
300 QUARROPAS STREET
WHITE PLAINS, NEW YORK 10601-4150

RE: ROSEMARY HELEN ZIZIROS WALKER VS PURDUE PHARMA

DISTRICT COURT CASE #25CV9681

MOTION FOR STAY & EVIDENCE

JUDGE RAMON,

YOU DO REALIZE MS WALKER IS A DISABLED AMERICAN PRO SE PAUPER WHO IS STILL RECOVERING FROM SURGERY CORRECT…..

WHEN I FIRST FILED MY APPEAL THERE WAS A 1.1.26 DEADLINE YOU CAN SEE YOU HAVE PACER ACCESS I JUST GOT HOPEFULLY MINUS ANY BILL IF IT GOES OVER $30 I HAVE REQUESTED THE WAIVER BUT ALAS…NO ONE HAS PROVIDED IT WHY I FILED MY BRIEF ON TIME YOU STATED YOU DON'T KNOW WHAT IT IS OR WHY MS WALKER OREGON CASE 23CV33935 WAS INCLUDED DAHHHH IT IS THE ENTIRE OPT IN NOT OPT IN ISSUES AS MS WALKER SUED BOTH PURDUE PHARMA AND THE SACKLER FAMILY STILL HELD UP BECAUSE NO ONE ISSUED A STAY WHEN FIRST REQUESTED ALMOST A YEAR AGO NOW SO TOO LATE MS WALKERS RIGHTS HAVE ALREADY BEEN IRREPARABLY IRREVOCABLY HARMED DUE TO CLEAR ERRORS BY ALL THE COURTS AT THIS POINT.

THE PLAN VIOLATES HARRINGTON CONSENT AS MY NEW MATRIX SHOWS.

LOOK AT PACER….I ORIGINALLY HAD JUDGE KARAS THERE WAS SUPPOSED TO BE A HEARING BACK IN MARCH 26 NOT THAT I CAN REMEMBER THEN I GOT A LETTER I PROVIDED STATING I HAD A NEW JUDGE ARUN. MS WALKER HAS NOT MADE ANY OF THIS UP.

FOR YOU TOO TO JUST POOH POOH MS WALKER AND MY RIGHTS DOESNOT LOOK GOOD FOR THE COURTS MS WALKER HAS HAD EVERY RIGHT TO BE CONFUSED MS WALKER IS A DISABLED PRO SE PAUPER JUDGE RAMON AND AMERICAN CITIZENS WITH AMERICAN CONSTITUTIONAL RIGHTS.

NO ONE WILL TAKE MS WALKERS RIGHTS OR MONEY I DO NOT HAVE WITHOUT MS WALKER ENSURING HER RIGHTS ARE REINSTATED & MS WALKER IS HEARD THAT SHOULD HAVE HAPPENED LONG AGO JUST AS A STAY SHOULD HAVE BEEN ISSUED WHEN MS WALKER FIRST REQUESTED THE STAY PRIOR TO THEN MID CONFIRMATION IN THE SDNY BANKRUPTCY COURT.

# MASTER WALKER REBUTTAL MATRIX

## Purdue Pharma — Post-Harrington Proceedings and Related Oregon Litigation

### Court-Ready Working Draft — Evidence-First Version

**Purpose and use.** This matrix is organized for use across the Bankruptcy Court, U.S. District Court, Second Circuit, Oregon Supreme Court, and any later petition for certiorari. It separates (1) the contention to rebut, (2) exact record/email language where presently verified, (3) Ms. Walker's evidence-based response, and (4) the issue preserved. It does not treat an inference as a quotation. Where the present source set does not establish an exact quotation, the matrix says so rather than inventing one.

**Critical governing rule.** Harrington v. Purdue Pharma L.P., 603 U.S. 204 (2024), held that the Bankruptcy Code does not authorize a Chapter 11 release/injunction discharging claims against a nondebtor without the consent of affected claimants. The Supreme Court expressly did not decide what qualifies as a consensual release.

| # | Contention / Issue to Rebut | Exact Record / Email Evidence | Ms. Walker's Evidence-Based Rebuttal | Preserved Issue / Strength |
|---|---|---|---|---|
| 1 | Harrington is satisfied because the new Plan calls the Third-Party Releases consensual. | The Supreme Court did not "express a view on what qualifies as a consensual release," while holding that nondebtor claims cannot be discharged without affected-claimant consent. SOURCE: Harrington v. Purdue Pharma L.P., 603 U.S. 204, 226-27 (2024) | Walker's issue is whether individualized consent was actually established in operation. Harrington leaves the definition of consent open; the label "consensual" is not self-proving. | Core Harrington issue |
| 2 | PI claimants affirmatively opted in, so consent is unmistakable. | The ballot states it solicits "(i) vote on the Debtors' Plan of Reorganization and (ii) election with respect to the Third-Party Releases." It further states: "Electing to GRANT or to NOT GRANT the Third-Party Releases is completely voluntary, but your election will have the following consequences for your Claim and how much compensation you may be entitled to receive under the Plan." SOURCE: Doc. 7615, Non-NAS PI Ballot, pp. 269, 281-282 | The Plan materials themselves show consentmechanics were more complicated than a simple affirmative opt-in: the ballot also contained deemed-release language for an accepting voter who left the release boxes blank. Walker's actual election history must be adjudicated from her own ballots and later change. | Strong |
| 3 | Walker's provisional ballot ultimately didnot count. | MR. VONNEGUT: "So Ms. Walker has a late-filed claim. So when she voted on the plan, she voted on a provisional ballot because we don't yet | Walker voted; the Debtors themselves told the Court she voted provisionally. The later disallowance cannot rewrite the fact that the Plan required | Very strong |

| | | | | |
|---|---|---|---|---|
| | | know whether that late-filed claim will be allowed, whether the lateness of the filing will be excuse[d] or not." SOURCE: Confirmation Tr. p. 50 | and accepted her participation while claim status remained unresolved. | |
| 4 | Because Walker ultimately granted no Third-Party Release, no Harrington issue remains. | "Judge Lane ruled that your claim was not timely filed. As a result, you did not grant the Third-Party Releases, and did not give up any rights you may have against members of the Sackler family." SOURCE: Marc Tobak email, Aug. 2026, reproduced in Oregon filing | Present non-release status does not erase thepre-effective consent controversy. Walker's position is that the issue was raised, recognized, and left undecided until later disallowance was used to eliminate it. | Critical chronology |



| | | | | |
|---|---|---|---|---|
| 5 | Walker is presently free to sue the Sacklers, so her prior Plan objections have no significance. | "you are not bound by any release or injunction with respect to any party other than the debtors themselves. So you can sue any Sackler or other non debtor third party you want to." He added: "the elections you made on your two ballots no longer have any relevance because your claim was denied as untimely." SOURCE: Marshall Huebner email, Aug. 4, 2026, reproduced in Oregon filing | The relevant injury theory is the delay and non-adjudication of Walker's own Plan/claim/election issues before effectiveness and the continuing effect on her Oregon litigation. | Narrow present concession / preserve history |
| 6 | There was no coercion because release consideration was ordinary settlement consideration. | If a Class 10(b) claimant GRANTS the releases, the claim "will be considered 'Allowed'" and may receive "additional payment" and the "maximum possible distribution." If the claimant does NOT GRANT, the claim "will not be considered 'Allowed' and may be objected to," and the claimant "will NOT be entitled to additional payment." SOURCE: Doc. 7615, Non-NAS PI Ballot, pp. 281-282 | Walker's coercion argument is factual and contextual: Preis/Plan materials tied more favorable allowance/payment treatment to surrender of direct nondebtor rights. Whether that choice was knowing and voluntary must be evaluated with the unresolved claim status and later 18-month objection/payment consequences. | Major voluntariness issue |

| | | | | |
|---|---|---|---|---|
| 7 | Walker merely complains that releasing creditors receive more money. | If a Class 10(b) claimant GRANTS the releases, the claim "will be considered 'Allowed'" and may receive "additional payment" and the "maximum possible distribution." If the claimant does NOT GRANT, the claim "will not be considered 'Allowed' and may be objected to," and the claimant "will NOT be entitled to additional payment." SOURCE: Doc. 7615, Non-NAS PI Ballot, pp. 281-282 | False characterization. Walker's principal issue is not envy of a larger payment; it is whether Purdue claim treatment and timing were conditioned on surrendering direct claims against nondebtor Sacklers, and whether that was disclosed and consented to before the deadline. | Correct factual framing |
| 8 | Walker understood the vote and release were separate choices, ending the consent inquiry. | The ballot states it solicits "(i) vote on the Debtors' Plan of Reorganization and (ii) election with respect to the Third-Party Releases." It further states: "Electing to GRANT or to NOT GRANT the Third-Party Releases is completely voluntary, but your election will have the following consequences for your Claim and how much compensation you may be entitled to receive under the Plan." SOURCE: Doc. 7615, Non-NAS PI Ballot, pp. 269, 281-282 | Separate boxes do not answer whether Walker possessed the information necessary for informed consent. The Court itself identified the sequencing problem and the record later permitted election changes. | Material but not dispositive |
| 9 | Walker affirmatively consented and that ends the matter. | MR. HUEBNER: "We'll accept notices from someone saying hey, you know, now that I understand things better, I previously opted either in or not opted in, I would like to change that. So it's a last chance to change what we already did." SOURCE: Confirmation Tr. pp. 98-99 | Walker does not deny an initial opt-in. She relies on the exact record that elections could be changed and on her later election/change. The question is which election controlled before effectiveness and why it was not adjudicated. | Chronology essential |



| | | | | |
|---|---|---|---|---|
| 10 | The Court understood Walker's sequencing concern and confirmation nevertheless resolves it. | THE COURT: "I think it's worthwhile. It's an important issue. And so I just want it to be very clear." The Court added that Walker's question "spurred some very useful information on the record." MR. HUEBNER: "And a new fixed deadline." THE COURT: "And a new fixed | The Court's own words show the issue was important and generated a new fixed deadline. Confirmation does not establish that Walker's specific claim/election dispute was actually adjudicated. | Exceptional transcript evidence |

| | | | | |
|---|---|---|---|---|
| | | deadline." MR. HUEBNER: "So she changed the plan." SOURCE: Confirmation Tr. p. 102 | | |
| 11 | Voting did not adjudicate Walker's late claim. | MR. VONNEGUT: "So Ms. Walker has a late-filed claim. So when she voted on the plan, she voted on a provisional ballot because we don't yet know whether that late-filed claim will be allowed, whether the lateness of the filing will be excuse[d] or not." SOURCE: Confirmation Tr. p. 50 | Correct but incomplete. Voting and allowance were separate. That is why the unresolved claim status mattered: Walker was required/permitted to make Plan and release decisions before the threshold claim question was decided. | Important distinction |
| 12 | Disallowance of Walker's late claim mooted her release-election dispute. | MR. VONNEGUT: "if the late claim motionis denied and the claim is disallowed, then the opt-out is moot. And no further action needs to be taken to revoke the opt-out for a claimant whose claim is denied." SOURCE: May 20, 2026 Hr'g Tr. p. 60 | This is the core circularity: unresolved issue before effectiveness → no timely adjudication → effectiveness → disallowance → mootness. May 20 proves the Court still considered the opt-in/opt-out issue unresolved after effectiveness. | Central appellate issue |
| 13 | Walker lacks standing because her bankruptcy claim was disallowed. | THE COURT: "there is still an issue about this opt-in, opt-out … Ms. Walker feels very strongly … when are we going to schedule a hearing on that issue?" The Court said it should be addressed "probably frankly, sometime soon because it needs to be addressed," and later: "at some point, we do need to address that so that we can move on." SOURCE: May 20, 2026 Hr'g Tr. pp. 58-60 | Standing must be analyzed at the relevant stages and against the challenged orders. Walker also had an issued Tier 2 determination and an asserted $8,147 stake; she contends Tier 1 applies. Do not equate later disallowance with nonexistence of the earlier stake/controversy. | Requires standing briefing |
| 14 | Walker is not a person aggrieved becauseshe lacks a financial stake. | THE COURT: "there is still an issue about this opt-in, opt-out … Ms. Walker feels very strongly … when are we going to schedule a hearing on that issue?" The Court said it should be addressed "probably frankly, sometime soon because it needs to be addressed," and later: "at some point, we do need to address that so that we can move on." SOURCE: May 20, 2026 Hr'g Tr. pp. 58-60 | Walker is an aggrieved party asserting her own claim, ballot, direct Oregon claims, and requested relief. The exact standing doctrine and timing must be briefed separately from the merits. | Requires standing briefing |

| | | | | |
|---|---|---|---|---|
| 15 | Non-releasing appellants cannot litigate somebody else's release rights. | "you are not bound by any release or injunction with respect to any party other than the debtors themselves. So you can sue any Sackler or other non debtor third party you want to." He added: "the elections you made on your two ballots no longer have any relevance because your claim was denied as untimely." SOURCE: Marshall Huebner email, Aug. 4, 2026, reproduced in Oregon filing | Walker seeks adjudication of her own rights.Comparator evidence concerning other claimants is offered to test consistency, notice, and Plan administration—not to obtain relief on their behalf. | Narrow relief |



| | | | | |
|---|---|---|---|---|
| 16 | Walker is attempting to litigate other claimants' rights. | The Supreme Court did not "express a view on what qualifies as a consensual release," while holding that nondebtor claims cannot be discharged without affected-claimant consent. SOURCE: Harrington v. Purdue Pharma L.P., 603 U.S. 204, 226-27 (2024) | Incorrect as a description of Walker's requested relief. Keep requested relief confined to Walker; use other claimants only as comparators where legally relevant. | Narrow relief |
| 17 | Walker is not uniquely situated. | THE COURT: "there is still an issue about this opt-in, opt-out … Ms. Walker feels very strongly … when are we going to schedule a hearing on that issue?" The Court said it should be addressed "probably frankly, sometime soon because it needs to be addressed," and later: "at some point, we do need to address that so that we can move on." SOURCE: May 20, 2026 Hr'g Tr. pp. 58-60 | Uniqueness is not required. In any event, Walker's combination of direct Oregon litigation, late claim, provisional vote, two ballot submissions, changed election, Tier determination, and unresolved status through effectiveness is factually distinctive. | Strong factual distinction |
| 18 | Walker's question about what other PI claimants have to release is irrelevant. | The Supreme Court did not "express a view on what qualifies as a consensual release," while holding that nondebtor claims cannot be discharged without affected-claimant consent. SOURCE: Harrington v. Purdue Pharma L.P., 603 U.S. 204, 226-27 (2024) | Preserve Walker's question: what direct nondebtor Sackler claim does a Purdue PI claimant actually release? Harrington makes the existence and consented surrender of direct nondebtor claims central. Walker had already asserted such claims in 23CV33935. | Preserve as Walker's question |

| | | | | |
|---|---|---|---|---|
| 19 | Walker's Oregon action does not matter because it had not reached judgment. | "you are not bound by any release or injunction with respect to any party other than the debtors themselves. So you can sue any Sackler or other non debtor third party you want to." He added: "the elections you made on your two ballots no longer have any relevance because your claim was denied as untimely." SOURCE: Marshall Huebner email, Aug. 4, 2026, reproduced in Oregon filing | A judgment is not required for a claim to exist. The Oregon action matters because it identifies direct claims Walker asserted against named nondebtors before the release election and because the bankruptcy injunction continues to affect that litigation. | Strong |
| 20 | Walker's Oregon action violated the stay/injunction. | "you are not bound by any release or injunction with respect to any party other than the debtors themselves. So you can sue any Sackler or other non debtor third party you want to." He added: "the elections you made on your two ballots no longer have any relevance because your claim was denied as untimely." SOURCE: Marshall Huebner email, Aug. 4, 2026, reproduced in Oregon filing | Analyze the exact injunction defendant-by defendant and claim-by-claim. Walker's position is also that Marion County accepted her petition and she did not know the Purdue Supreme Court matter she had seen was a bankruptcy. Do not infer subjective knowledge from docket existence. | Document-specific |
| 21 | The Oregon action proves nothing because there was no judgment. | The Supreme Court did not "express a view on what qualifies as a consensual release," while holding that nondebtor claims cannot be discharged without affected-claimant consent. SOURCE: Harrington v. Purdue Pharma L.P., 603 U.S. 204, 226-27 (2024) | Correct that the Oregon action did not establish liability. It establishes that Walker had identifiable direct claims she could preserve or release; Harrington addresses claims, not only judgments. | Strong |



| | | | | |
|---|---|---|---|---|
| 22 | Walker's Oregon action was accurately identified in the bankruptcy materials. | "you are not bound by any release or injunction with respect to any party other than the debtors themselves. So you can sue any Sackler or other non debtor third party you want to." He added: "the elections you made on your two ballots no longer have any relevance because your claim was denied as untimely." SOURCE: Marshall Huebner email, Aug. 4, | The record must use the correct Marion County number 23CV33935 and correct caption. Repetition of 23CV3393 after correction is a concrete record-accuracy issue. | Concrete factual correction |

| | | | | |
|---|---|---|---|---|
| | | 2026, reproduced in Oregon filing | | |
| 23 | Walker's direct Sackler claims became irrelevant after bankruptcy-claim disallowance. | "Judge Lane ruled that your claim was not timely filed. As a result, you did not grant the Third-Party Releases, and did not give up any rights you may have against members of the Sackler family." SOURCE: Marc Tobak email, Aug. 2026, reproduced in Oregon filing | Disallowance of the Purdue bankruptcy claim did not extinguish Walker's asserted direct nondebtor claims. The two interests must remain analytically separate. | Strong |
| 24 | The March 1, 2026 election deadline did not apply to Walker. | MR. HUEBNER: "We'll accept notices from someone saying hey, you know, now that I understand things better, I previously opted either in or not opted in, I would like to change that. So it's a last chance to change what we already did." SOURCE: Confirmation Tr. pp. 98-99 | Do not treat March 1 as irrelevant. Huebner expressly said the date was a last chance for a person who had previously opted either way to change the election. The Court called the resulting issue important and Huebner said Walker changed the Plan. | Strong transcript issue |
| 25 | Walker's ballot elections now have no relevance. | "you are not bound by any release or injunction with respect to any party other than the debtors themselves. So you can sue any Sackler or other non debtor third party you want to." He added: "the elections you made on your two ballots no longer have any relevance because your claim was denied as untimely." SOURCE: Marshall Huebner email, Aug. 4, 2026, reproduced in Oregon filing | Presently the Debtors say the ballots have no relevance. Historically they plainly did: two submissions existed, the Court and counsel discussed Walker's ballot, and later Debtors proposed judicial recognition of the February ballot. | Very strong historical relevance |
| 26 | There was only one operative ballot/election. | MR. HUEBNER: "We'll accept notices from someone saying hey, you know, now that I understand things better, I previously opted either in or not opted in, I would like to change that. So it's a last chance to change what we already did." SOURCE: Confirmation Tr. pp. 98-99 | Walker has evidence of two electronic submissions tied to her ballot history. Any assertion that only one matters must identify the governing Plan/procedure and explain the later submission rather than erase it. | Documentary |

| | | | | |
|---|---|---|---|---|
| 27 | Walker never effectively changed her release election. | "The Debtors will ask Judge Lane to deem your late-filed claim to be timely." "The Debtors will ask Judge Lane to treat your February ballot as effective, meaning that you will be treated as a person who filed a timely claim and who did not opt-in." "The Debtors will agree that we will not object to your claim." In exchange, Walker would "withdraw [her] appeal of the Confirmation Order." SOURCE: Marc Tobak written proposal reproduced in Doc. 9415, p. 11 of 13 | Huebner's exact confirmation statement says a person could change a prior opt-in or non-opt-in. Debtors later proposed treating Walker's February ballot as effective and non-opt-in. That is powerful evidence that the change was legally meaningful enough to seek court recognition. | Very strong |
| 28 | Walker's claim had no substantive recognition. | The TDP identifies Tier 2 treatment where aclaim is substantiated but there is a deficiency in proof of "use of a Qualifying Opioid equal to or greater than six (6) months … to qualify for Tier 1." SOURCE: Non-NAS PI TDP, Doc. 7877, p. 939 of 1010 | Walker was issued Tier 2 by the PI Trust; she argues the longitudinal prescription evidence satisfies Tier 1. Timeliness of the bankruptcy Proof of Claim is a separate deficiency from substantive TDP evidence. | Document-supported |

Walker Master Rebuttal Matrix — Working Court Draft — Verify exact brief quotations and exhibit authentication before filing

| | | | | |
|---|---|---|---|---|
| 29 | Claim processing cannot overcome the Bar Date. | THE COURT: "the standard is exceedingly low. It is evidence that you took the drugs in question, period, full stop." SOURCE: Confirmation Tr. pp. 99-100 | Trust processing does not itself waive the Bar Date, but it matters to prejudice, reliance, consistency, and the fact that Walker's claim was substantively evaluated rather than nonexistent. | Moderate / equitable context |
| 30 | Walker received adequate process because she was eventually heard. | THE COURT: "there is still an issue about this opt-in, opt-out … Ms. Walker feels very strongly … when are we going to schedule a hearing on that issue?" The Court said it should be addressed "probably frankly, sometime soon because it needs to be addressed," and later: "at some point, we do need to address that so that we can move on." SOURCE: May 20, 2026 Hr'g Tr. pp. 58-60 | Due process concerns meaningful timing, not merely a later hearing. On May 20, after effectiveness, the Court itself said Walker's opt-in/opt-out issue still needed to be addressed. | Strong due-process timing |

| | | | | |
|---|---|---|---|---|
| 31 | Substantial consummation/effectiveness supports mootness and defeats review. | THE COURT: "there is still an issue about this opt-in, opt-out … Ms. Walker feels very strongly … when are we going to schedule a hearing on that issue?" The Court said it should be addressed "probably frankly, sometime soon because it needs to be addressed," and later: "at some point, we do need to address that so that we can move on." SOURCE: May 20, 2026 Hr'g Tr. pp. 58-60 | Walker repeatedly sought adjudication/stay relief before effectiveness. The passage of time she sought to prevent should not automatically become the basis for eliminating review. Relief can be narrowly tailored to Walker. | Strong if relief narrow |
| 32 | Relief for Walker would necessarily unravel the Plan and harm creditors. | "The Debtors will ask Judge Lane to deem your late-filed claim to be timely." "The Debtors will ask Judge Lane to treat your February ballot as effective, meaning that you will be treated as a person who filed a timely claim and who did not opt-in." "The Debtors will agree that we will not object to your claim." In exchange, Walker would "withdraw [her] appeal of the Confirmation Order." SOURCE: Marc Tobak written proposal reproduced in Doc. 9415, p. 11 of 13 | Walker is not asking to litigate other people's rights. Relief should be framed narrowly around Walker's claim, election, direct rights, and Oregon injunction consequences, reducing any asserted need to unwind unrelated Plan provisions. | Strategically important |
| 33 | Deemed allowance for releasing claimants was merely ordinary settlement treatment. | MR. VONNEGUT: "if you grant the release, your claim is deemed allowed. But that allowance is deemed to occur at emergence." THE COURT: "So it's more like a provisional allowance than an actual allowance." MR. VONNEGUT: "Correct. Correct." SOURCE: Confirmation Tr. p. 51 | The public confirmation record itself establishes deemed allowance as a Plan mechanism. That makes individualized consent especially material because release status affected claim treatment, not merely a separate Sackler payment. | Very strong materiality |
| 34 | Different treatment based on release status is consistent treatment/ordinary consideration. | If a Class 10(b) claimant GRANTS the releases, the claim "will be considered 'Allowed'" and may receive "additional payment" and the "maximum possible distribution." If the claimant does NOT GRANT, the claim "will not be considered 'Allowed' and may be objected to," and the claimant "will NOT be entitled to additional payment." SOURCE: Doc. 7615, | This is Walker's inconsistent-treatment challenge: otherwise qualifying Purdue PI claimants faced different allowance, objection, and payment timing based on whether they released nondebtor Sacklers. The Plan must supply the legal justification; the disparity should not be mislabeled as factual consistency. | Major consistency issue |

| | | | | |
|---|---|---|---|---|
| | | Non-NAS PI Ballot, pp. 281-282 | | |



| | | | | |
|---|---|---|---|---|
| 35 | Non-releasing PI claimants still receive Purdue recovery eventually, so no meaningful disparity exists. | If a Class 10(b) claimant GRANTS the releases, the claim "will be considered 'Allowed'" and may receive "additional payment" and the "maximum possible distribution." If the claimant does NOT GRANT, the claim "will not be considered 'Allowed' and may be objected to," and the claimant "will NOT be entitled to additional payment." SOURCE: Doc. 7615, Non-NAS PI Ballot, pp. 281-282 | "Eventually" does not erase the disparity. Walker was told/Plan documents state non releasing claims could face objection and ordinary allowance while releasing claims received streamlined/deemed treatment. Timing and objection exposure are material. | Material disparity |
| 36 | Refusing the Sackler release merely meant foregoing consideration. | If a Class 10(b) claimant GRANTS the releases, the claim "will be considered 'Allowed'" and may receive "additional payment" and the "maximum possible distribution." If the claimant does NOT GRANT, the claim "will not be considered 'Allowed' and may be objected to," and the claimant "will NOT be entitled to additional payment." SOURCE: Doc. 7615, Non-NAS PI Ballot, pp. 281-282 | The exact Plan language shows more than forfeiture of a bonus: release status changed whether the Purdue claim was considered allowed, the proof/objection route, and maximum distribution. That is material to consent. | Excellent factual evidence |
| 37 | Walker knew when voting that her claim might be invalid. | MR. VONNEGUT: "So Ms. Walker has a late-filed claim. So when she voted on the plan, she voted on a provisional ballot because we don't yet know whether that late-filed claim will be allowed, whether the lateness of the filing will be excuse[d] or not." SOURCE: Confirmation Tr. p. 50 | Walker understood her status was unresolved; she did not understand that to mean her later rights could be mooted without a timely hearing. Her position is that after voting she believed her claim position was stronger, not finally allowed. | Use carefully |
| 38 | Walker should simply have waited for claim adjudication. | THE COURT: "there is still an issue about this opt-in, opt-out … Ms. Walker feels very strongly … when are we going to schedule a hearing on that issue?" The Court said it should be addressed "probably frankly, sometime soon | Walker had already been waiting since early2024 and repeatedly sought resolution. The Plan did not wait: confirmation/effectiveness proceeded while the controlling claim/election issues remained unresolved. | Strong chronology |

| | | | | |
|---|---|---|---|---|
| | | because it needs to be addressed," and later: "at some point, we do need to address that so that we can move on." SOURCE: May 20, 2026 Hr'g Tr. pp. 58-60 | | |
| 39 | Later disallowance cleanly resolves the consent issue retroactively. | MR. VONNEGUT: "if the late claim motionis denied and the claim is disallowed, then the opt-out is moot. And no further action needs to be taken to revoke the opt-out for a claimant whose claim is denied." SOURCE: May 20, 2026 Hr'g Tr. p. 60 | Later disallowance resolves present release status under Debtors' current theory; it does not retroactively adjudicate whether Walker received timely process or valid consent treatment before effectiveness. | Core distinction |
| 40 | Walker cannot show individualized injury. | THE COURT: "the standard is exceedingly low. It is evidence that you took the drugs in question, period, full stop." SOURCE: Confirmation Tr. pp. 99-100 | Walker's individualized injury is not limitedto present enforcement of a release. Her PI claim received Tier 2 treatment; she supplied prescription evidence; she had a financial stake and direct Oregon claims; she also alleges delay/non-adjudication and loss of meaningful review. | Strong factual correction |
| 41 | The Third-Party Release provisions do not presently apply to Walker, so she cannot challenge what occurred. | "Judge Lane ruled that your claim was not timely filed. As a result, you did not grant the Third-Party Releases, and did not give up any rights you may have against members of the Sackler family." SOURCE: Marc Tobak email, Aug. 2026, reproduced in Oregon filing | Current nonapplication does not erase an as applied historical challenge to the process used while Walker was treated as a provisional voting claimant and while her election had legal/economic consequences. | Critical as-applied theory |



| | | | | |
|---|---|---|---|---|
| 42 | Walker's volume of filings justified restricting her participation. | THE COURT: "there is still an issue about this opt-in, opt-out … Ms. Walker feels very strongly … when are we going to schedule a hearing on that issue?" The Court said it should be addressed "probably frankly, sometime soon because it needs to be addressed," and later: "at some point, we do need to address that so that we can move on." SOURCE: May 20, 2026 Hr'g Tr. pp. 58-60 | Count is not the constitutional test. Walker repeatedly petitioned for redress and sought hearings. Any filing restriction must be tested against the exact order, findings, notice, opportunity to respond, First Amendment petition right, and access-to courts law. | Constitutional/procedural |

| | | | | |
|---|---|---|---|---|
| 43 | All relevant Walker issues were already fully litigated/adjudicated. | THE COURT: “there is still an issue about this opt-in, opt-out … Ms. Walker feels very strongly … when are we going to schedule a hearing on that issue?” The Court said it should be addressed “probably frankly, sometime soon because it needs to be addressed,” and later: “at some point, we do need to address that so that we can move on.” SOURCE: May 20, 2026 Hr’g Tr. pp. 58-60 | Factually incorrect as to Walker’s specific issues. May 20 records the Court saying the opt-in/opt-out issue still needed a hearing. Walker contends her issues were mooted before merits adjudication, not fully litigated. | Critical factual contradiction |
| 44 | The release system was clear. | The ballot states it solicits “(i) vote on the Debtors’ Plan of Reorganization and (ii) election with respect to the Third-Party Releases.” It further states: “Electing to GRANT or to NOT GRANT the Third-Party Releases is completely voluntary, but your election will have the following consequences for your Claim and how much compensation you may be entitled to receive under the Plan.” SOURCE: Doc. 7615, Non-NAS PI Ballot, pp. 269, 281-282 | Do not use the unsourced shorthand “the release system was clear.” Quote the exact court/appellee statement and identify what was supposedly clear. The record itself shows post-deadline clarification, a new fixed deadline, and recognized election changes. | Replace shorthand with exact quote |
| 45 | Blank/no ballot treatment demonstrates voluntariness and resolves Walker’s consent issue. | The ballot states that a holder who votes to ACCEPT and checks neither release box “will be considered to GRANT the Third Party Releases as if such Holder had checked the first box below.” SOURCE: Doc. 7615, Non-NAS PI Ballot, p. 282 | Other creditors’ blank/no-ballot treatment cannot establish Walker’s individualized consent. Moreover, the ballot itself contains deemed-release language for an accepting voter who leaves both release boxes blank, which must be reconciled with any claim of purely affirmative consent. | Major consent mechanics issue |
| 46 | Walker cannot participate in the Sackler settlement because she is not a claimant. | The ballot states it solicits “(i) vote on the Debtors’ Plan of Reorganization and (ii) election with respect to the Third-Party Releases.” It further states: “Electing to GRANT or to NOT GRANT the Third-Party Releases is completely voluntary, but your election will have the following consequences for your Claim and how much compensation you may be entitled to receive | Walker is a Purdue PI claimant in the ordinary sense that she filed a PI claim and received substantive Tier treatment; the later disallowance concerned timeliness. More importantly, she was permitted to vote and make a release election before that status was finally adjudicated. | Very strong question |

| | | | | |
|---|---|---|---|---|
| | | under the Plan." SOURCE: Doc. 7615, Non-NAS PI Ballot, pp. 269, 281-282 | | |
| 47 | The provisional ballot protected Walker and therefore caused no prejudice. | MR. VONNEGUT: "So Ms. Walker has a late-filed claim. So when she voted on the plan, she voted on a provisional ballot because we don't yet know whether that late-filed claim will be allowed, whether the lateness of the filing will be excuse[d] or not." SOURCE: Confirmation Tr. p. 50 | Protective purpose does not answer prejudice from timing. The same provisional mechanism required/accepted consequential elections while the threshold claim issue remained unresolved through effectiveness. | Strong sequencing |



| | | | | |
|---|---|---|---|---|
| 48 | There was no reason Walker needed a claim ruling before emergence/effectiveness. | THE COURT: "I think it's worthwhile. It's an important issue. And so I just want it to be very clear." The Court added that Walker's question "spurred some very useful information on the record." MR. HUEBNER: "And a new fixed deadline." THE COURT: "And a new fixed deadline." MR. HUEBNER: "So she changed the plan." SOURCE: Confirmation Tr. p. 102 | There was an obvious reason: claim status determined what Walker was giving up, what she would receive, and whether the ballot/release would have legal effect. The Court itself articulated that sequencing concern. | Exceptional evidence |
| 49 | The Debtors could not obtain or propose deemed-timely treatment for Walker. | "The Debtors will ask Judge Lane to deem your late-filed claim to be timely." "The Debtors will ask Judge Lane to treat your February ballot as effective, meaning that you will be treated as a person who filed a timely claim and who did not opt-in." "The Debtors will agree that we will not object to your claim." In exchange, Walker would "withdraw [her] appeal of the Confirmation Order." SOURCE: Marc Tobak written proposal reproduced in Doc. 9415, p. 11 of 13 | The Debtors' own written proposal defeats acategorical impossibility claim: they proposed asking Judge Lane to deem the claim timely, treat the February ballot as effective/non-opt-in, and not object. This does not prove Judge Lane was compelled to approve it; it proves the mechanism was considered viable enough to offer. | Very strong; Rule 408 caveat |

| | | | | |
|---|---|---|---|---|
| 50 | Delayed treatment of non-releasing claims is consistent and nonproblematic. | If a Class 10(b) claimant GRANTS the releases, the claim "will be considered 'Allowed'" and may receive "additional payment" and the "maximum possible distribution." If the claimant does NOT GRANT, the claim "will not be considered 'Allowed' and may be objected to," and the claimant "will NOT be entitled to additional payment." SOURCE: Doc. 7615, Non-NAS PI Ballot, pp. 281-282 | This is not consistent treatment from Walker's perspective. A Purdue PI claimant with required TDP evidence who declines to release nondebtor Sacklers may face objection/delay while a releasing claimant receives streamlined/deemed treatment. That difference is the issue. | Major inconsistent-treatment issue |
| 51 | Walker had no Tier status/substantive PI evidence. | The TDP identifies Tier 2 treatment where aclaim is substantiated but there is a deficiency in proof of "use of a Qualifying Opioid equal to or greater than six (6) months … to qualify for Tier 1." SOURCE: Non-NAS PI TDP, Doc. 7877, p. 939 of 1010 | Factually incorrect. The Trust issued Tier 2; Walker argues Tier 1 based on multiple longitudinal medical records showing prescribed OxyContin and repeated "no change in medications" notations. The Tier dispute must be separated from Proof-of Claim timeliness. | Document-supported |
| 52 | Walker's consent controversy was hypothetical. | THE COURT: "I think it's worthwhile. It's an important issue. And so I just want it to be very clear." The Court added that Walker's question "spurred some very useful information on the record." MR. HUEBNER: "And a new fixed deadline." THE COURT: "And a new fixed deadline." MR. HUEBNER: "So she changed the plan." SOURCE: Confirmation Tr. p. 102 | Not hypothetical. Walker voted; made an election; changed/disputed it; the Court and counsel discussed it; a new deadline resulted; and on May 20 the Court still said the issue needed to be addressed. | Critical factual contradiction |
| 53 | The Effective Date moots Walker's dispute. | THE COURT: "there is still an issue about this opt-in, opt-out … Ms. Walker feels very strongly … when are we going to schedule a hearing on that issue?" The Court said it should be addressed "probably frankly, sometime soon because it needs to be addressed," and later: "at some point, we do need to address that so that we can move on." SOURCE: May 20, 2026 Hr'g Tr. pp. 58-60 | Effectiveness is part of the chronology, not an answer to it. Walker contends she was forced to wait while her repeated pre effective requests went unresolved, and then effectiveness/disallowanc e were used to moot the very issue she sought to have decided. | Core theory |

| | | | | |
|---|---|---|---|---|
| 54 | Walker's own delay caused the entire predicament. | MR. VONNEGUT: "So Ms. Walker has a late-filed claim. So when she voted on the plan, she voted on a provisional ballot because we don't yet know whether that late-filed claim will be allowed, whether the lateness of the filing will be excuse[d] or not." SOURCE: Confirmation Tr. p. 50 | Separate the late Proof-of-Claim question from later timely objections to solicitation, consent, ballot change, claim-adjudication timing, stays, and appeals. Court/debtor inaction after those requests is not Walker's fault merely because the original claim was late. | Essential distinction |
| 55 | Claim lateness eliminates any remaining due-process issue. | THE COURT: "there is still an issue about this opt-in, opt-out … Ms. Walker feels very strongly … when are we going to schedule a hearing on that issue?" The Court said it should be addressed "probably frankly, sometime soon because it needs to be addressed," and later: "at some point, we do need to address that so that we can move on." SOURCE: May 20, 2026 Hr'g Tr. pp. 58-60 | A later claim ruling does not answer whether Walker received meaningful process on a separate, preserved consent/election controversy. May 20 is direct evidence that the Court itself still regarded that issue as unresolved. | Strong due-process issue |
| 56 | Harrington did not define consent, so a formal checkbox necessarily resolves consent. | The Supreme Court did not "express a view on what qualifies as a consensual release," while holding that nondebtor claims cannot be discharged without affected-claimant consent. SOURCE: Harrington v. Purdue Pharma L.P., 603 U.S. 204, 226-27 (2024) | Correct that Harrington left the definition open; incorrect that this automatically validates the checkbox as applied. The Supreme Court expressly reserved what counts as consent. Walker's changing election and unresolved eligibility present that reserved question. | Excellent Supreme Court framing |
| 57 | Harrington preserved consensual releases; therefore the Plan's releases are valid as applied to Walker. | The Supreme Court did not "express a view on what qualifies as a consensual release," while holding that nondebtor claims cannot be discharged without affected-claimant consent. SOURCE: Harrington v. Purdue Pharma L.P., 603 U.S. 204, 226-27 (2024) | Walker agrees only with the narrow proposition that genuinely consensual releases were not prohibited. The disputed issue is whether valid individualized consent existed in the actual Plan operation, including deemed treatment, election changes, and claim-treatment consequences. | Central Harrington distinction |
| 58 | Plan proponents' creditor-wide objectivesanswer Walker's individual-consent objection. | The Supreme Court did not "express a view on what qualifies as a consensual release," while holding that nondebtor claims cannot be discharged without affected-claimant | Collective fiduciary objectives do not establish Walker's individual consent to surrender her own direct nondebtor claims. | Strong |

| | | | | |
|---|---|---|---|---|
| | | consent. SOURCE: Harrington v. Purdue Pharma L.P., 603 U.S. 204, 226-27 (2024) | | |
| 59 | The "peace premium" and global settlement justify the release structure regardless of Walker's individual dispute. | If a Class 10(b) claimant GRANTS the releases, the claim "will be considered 'Allowed'" and may receive "additional payment" and the "maximum possible distribution." If the claimant does NOT GRANT, the claim "will not be considered 'Allowed' and may be objected to," and the claimant "will NOT be entitled to additional payment." SOURCE: Doc. 7615, Non-NAS PI Ballot, pp. 281-282 | Economic value explains why proponents wanted releases; it cannot substitute for the affected claimant's consent required by Harrington. | Strong |
| 60 | Overwhelming creditor approval—including reliance on prior-plan approval —validates the release structure. | The Supreme Court did not "express a view on what qualifies as a consensual release," while holding that nondebtor claims cannot be discharged without affected-claimant consent. SOURCE: Harrington v. Purdue Pharma L.P., 603 U.S. 204, 226-27 (2024) | Prior-plan approval is not proof of post Harrington individualized consent. The prior nonconsensual release structure was reversed by the Supreme Court. Aggregate approval also does not establish pro se PI claimant consent or Walker's individual consent. | Strong |
| 61 | Purdue-specific proof for individual PI compensation versus broad opioid abatement use is consistent treatment. | Non-NAS PI TDP requires proof tied to a "Qualifying Opioid" and distinguishes Tier 1 based on proof of at least six months' use. The Plan separately funds broader opioid abatement purposes. SOURCE: Doc. 7877, Non-NAS PI TDP; Plan/Disclosure materials. | Walker preserves a Plan-consistency challenge: this is the Purdue Pharma bankruptcy. She was required to supply Purdue/qualifying-opioid proof for individual PI compensation, while substantial bankruptcy value is directed to generalized opioid abatement whose ultimate beneficiaries are not shown in the present record to face the same Purdue specific proof requirement. This is not automatically unconstitutional; the Plan must be tested for the legal basis and classification/treatment justification. | New major Plan-allocation / consistency issue |

## Primary Source Index

🎬 Confirmation hearing transcripts, Nov. 12-14 and Nov. 18, 2025 (including pp. 50-51, 98-102 passages quoted above).
🎬 May 20, 2026 hearing transcript, pp. 58-60.
🎬 Doc. 7615 (June 20, 2025) — solicitation procedures and PI ballots.
🎬 Doc. 7877 (Sept. 19, 2025) — Non-NAS PI Trust Distribution Procedures.
🎬 Doc. 9415 — filing reproducing Marc Tobak's written settlement proposal.
🎬 Aug. 4, 2026 Marshall Huebner email and Aug. 2026 Marc Tobak email as reproduced in Walker's Oregon filing.
🎬 Harrington v. Purdue Pharma L.P., 603 U.S. 204 (2024).
🎬 Walker's Kroll ballot confirmations (Sept. 2025 and Feb. 2026), PI Trust Tier correspondence, Arik Preis emails, and medical exhibits — to be attached/indexed as exhibits in the final filing set.

Walker Master Rebuttal Matrix — Working Court Draft — Verify exact brief quotations and exhibit authentication before filing **YOU HAVE THE EVIDENCE




**THE DISTRICT COURT WEBSITE IS STILL NOT FUNCTIONING THAT ISNOT ACCESSIBILITY**

**rosemary helen ziziros walker 8.14.26 11:54am**

CERT OF SERVICE technically purdue no longer exists but i emailed davis polk

# PIONEER - ALL 17 PRO SE LATE-CLAIM COMPARISON MATRIX

**Purdue Pharma - Rule 9006(b)(1) Excusable Neglect - 13 Granted / 4 Denied**

**Purpose.** This rewrites the original comparator matrix across all seventeen late-claim movants. The claimant circumstances and PAT positions are drawn from PAT Exhibit A (Doc. 9143); the Court later stated PAT objected only to four and that the other thirteen had, in PAT's view, adequate justification. The comparison column identifies the significance to Rosemary Walker without treating argument as evidence.

| # | Claimant | Record circumstances asserted | Extraordinary / access circumstance | PAT May 2026 | Court result | Comparison significance for Rosemary Walker |
|---|---|---|---|---|---|---|
| 1 | **Don W. Hardin** | Proof filed Sept. 23, 2021. Said the drug caused actions/inactions. At hearing said that after 9/11 he stopped following news/newspapers and was not up to date until someone asked him about Purdue; then he started paperwork. | No incarceration or formal disability identified in PAT chart; lack of awareness / disengagement from news. | **Do Not Oppose** | **GRANTED** | PAT ultimately accepted a relatively general lack-of-awareness explanation. Compare with Walker's documented confusion, disability, disasters, and later filing efforts. |
| 2 | **Wayne B. Anderson** | Proof filed July 18, 2022. 75-year-old disabled veteran; said he probably heard of the bankruptcy but did not watch news, did not know his options, had no media, and was 'not a computer guy.' | Disability + limited media/technology + lack of understanding. | **Do Not Oppose** | **GRANTED** | Strong disability/access comparator. PAT used totality for Anderson; Walker argues the same totality method should apply to her disability, access limits and confusion. |
| 3 | **Seung Han** | Proof filed May 31, 2022. Said the pandemic made the bar date impossible because he had no law-library, internet or visitation access during incarceration. | Incarceration + COVID + lack of legal/internet resources. | **Do Not Oppose** | **GRANTED** | Strong COVID/access comparator. PAT expressly treated pandemic restrictions as compounding circumstances beyond the claimant's control. |
| 4 | **Roy Howard Murry** | Proof filed Nov. 15, 2021. Said he did not learn of the chapter 11 case until Oct. 19, 2021 and immediately requested forms; quarantine lockdowns caused little phone/legal-material access. | Incarceration + COVID lockdown + late notice + prompt action after learning. | **Do Not Oppose** | **GRANTED** | Strong prompt-action comparator. Walker similarly relies on what she understood and what she did once she learned a separate claim process was required. |
| 5 | **Edward N. Whitman** | Proof filed Mar. 31, 2022. Said incarceration through the pandemic left no law-library access, visitation, or resources; filed around release from incarceration. | Incarceration + COVID + resource deprivation. | **Do Not Oppose** | **GRANTED** | Shows external resource limitations were credited. Walker presented no-resources/phone/internet evidence plus disasters and disability. |
| 6 | **Richard Paiva** | Proofs filed Dec. 19, 2022 and June 12, 2023. Said he had been incarcerated 13 years and had no notice until another inmate told him. | Long incarceration + lack of notice. | **Do Not Oppose** | **GRANTED** | Strong notice comparator. PAT accepted late discovery years after the bar date. |
| 7 | **Willard J. Hall** | Motion Sept. 5, 2023; proof of claim filed Mar. 26, 2026. Said he asked for 'late filing forgiveness' but had not heard from Court and did not know his claim number. | No disability/incarceration identified in PAT chart; uncertainty about late filing and claim number. | **Do Not Oppose; encouraged supplemental briefing** | **GRANTED** | Major timing comparator: formal proof was filed in 2026, later than Walker's 2025 filings. Also relevant to Walker's own documented uncertainty about her claim number. |
| 8 | **Travis Funke** | Never submitted a proof of claim as of PAT's May 2026 filing. Said he only recently found Purdue through Boy Scouts bankruptcy material mentioning the Supreme Court ruling, then researched it. | Recent discovery / ignorance of proceeding; no special disability identified in PAT chart. | **Do Not Oppose (Debtors had objected)** | **GRANTED** | Very strong late-discovery comparator. PAT did not oppose even though no proof of claim had been submitted. |
| 9 | **Travis J. Stewart** | Never submitted a proof of claim. Kroll mailed him a form in May 2020 after he requested it, but he apparently never mailed it back. Said incarceration, lack of notice, and belief a law firm had entered him as claimant contributed. | Incarceration + confusion + communication failure; actual pre-bar-date form apparently received but not returned. | **Do Not Oppose (Debtors had objected)** | **GRANTED** | One of the strongest comparators. Receipt of a claim form before the bar date and failure to return it did not ultimately prevent relief. |

## ALL 17 LATE-CLAIM COMPARATORS - CONTINUED

| # | Claimant | Record circumstances asserted | Extraordinary / access circumstance | PAT May 2026 | Court result | Comparison significance for Rosemary Walker |
|---|---|---|---|---|---|---|
| **10** | **British D. Moss** | Eleven proofs between Nov. 2021 and Sept. 2025. Said serious medical condition prevented timely filing; also stated 4,788 days in solitary confinement. Some forms attached as purported proof of timely filing had not previously been submitted to Kroll. | Serious medical condition + incarceration + prolonged solitary confinement. | **Do Not Oppose after PI Claims Administrator review** | **GRANTED** | Strong medical comparator. PAT obtained individualized PI Claims Administrator review before changing/confirming its position. |
| **11** | **Eddie M. Vargas, Sr.** | Proof filed Feb. 12, 2024. Incarcerated; said no notice, learned of Endo in 2023 and Purdue through Kroll correspondence received Apr. 2, 2024; then requested a form and filed. Contacted 30+ bankruptcy lawyers without success. | Incarceration + late notice + pro se inability to obtain counsel. | **Do Not Oppose** | **GRANTED** | Strong late-notice/pro se comparator. PAT credited action after later discovery. |
| **12** | **Michael Walker** | Proof filed Aug. 14, 2025. Legally blind, incarcerated more than a decade, significant medical conditions, supporting documentation. | Legal blindness + significant medical conditions + incarceration. | **Do Not Oppose after PI Claims Administrator review** | **GRANTED** | Strongest disability-review comparator. PAT referred his documented medical circumstances for individualized review. |
| **13** | **Michael C. Stevens** | Proof filed July 13, 2023. Confusion because he also filed claims in Endo bankruptcy; incarcerated with limited access to mail, phones and electronic resources. | Incarceration + confusion with another opioid bankruptcy + communication limits. | **Do Not Oppose** | **GRANTED** | Strong confusion comparator. PAT accepted confusion involving another proceeding when combined with access restrictions. |
| **14** | **Janice S. Lojko** | Kroll treated her July 2025 letter as a proof of claim although no official form was used. Said she tried electronic filing when aware she could; cited 2017 fires, COVID, husband's death, family burdens, financial hardship and stress. | Natural disaster + COVID + bereavement/family hardship, much occurring before bankruptcy/bar date. | **Oppose** | **DENIED** | Useful control comparator. Hardship alone was not enough where Court found inadequate causal connection to the missed bar date. |
| **15** | **Rosemary Walker** | PAT initially summarized proofs as Aug. 25 and Sept. 15, 2025 and her 'general assertions' as disability plus Oregon Sackler litigation. Supplemental record added COVID, Salem/Marion County fires, Feb. 2021 residence loss, displacement/hotel fire, internet/resource issues, and confusion whether 23CV33935 was her claim. Separate record shows July 2025 filing efforts and PI Trust receipt. | Disability + natural disasters + property loss/displacement + resource/access limitations + documented confusion + repeated attempts to determine/file claim. | **Oppose** | **DENIED** | Central comparator. Unlike a mere ignorance case, Walker's record combines categories PAT credited elsewhere: disability, disasters, access limits, confusion, late understanding, and subsequent diligence. |
| **16** | **Sally Ann Cates** | Four proofs Sept. 15-16, 2025. Discussed brother's opioid death and merits but PAT said she otherwise did not identify a reason for delay. | Underlying injury, but no lateness justification identified in PAT chart. | **Oppose** | **DENIED** | Control comparator. Merits of an opioid claim alone do not establish excusable neglect; Walker's showing is materially different because she supplied reasons for delay. |
| **17** | **Jacqueline Torres Herrera** | No proof of claim. Said she was unaware of original claim deadlines and only recently learned of Plan and voting process. | No special circumstance identified beyond lack of awareness. | **Oppose** | **DENIED** | Control comparator for bare ignorance. Walker's record contains additional disability, disaster, access, confusion and diligence evidence. |

## PIONEER FACTOR - GROUP COMPARISON

| Pioneer factor | Walker / denied-group treatment | Comparator issue |
|---|---|---|
| Prejudice | The Court grouped the four denied movants together in its prejudice analysis. | Thirteen other late claims were granted. The comparison question is what evidence showed that admitting Walker's single claim created materially different prejudice after those thirteen grants. |
| Length of delay / impact | Walker was years beyond the 2020 bar date. | Successful claims were also filed years late: 2021, 2022, 2023, 2024, 2025, and Hall's proof in March 2026. Length therefore cannot alone distinguish Walker. |
| Reason for delay / control | This was the principal dividing factor for the denied group. | The granted group included COVID restrictions, no internet/law library, medical disability, no media/computer skill, late discovery, confusion with another proceeding, and even failure to return a form mailed before the bar date. |
| Good faith | The prior comparison record notes the Court found no reason to believe Walker acted in bad faith. | Good faith therefore does not materially separate Walker from the successful comparators; her July 2025 claim-form inquiries and efforts further bear on diligence/good faith. |

## KEY RECORD DISTINCTIONS

• The Court stated there were seventeen pending pro se late-claim motions; PAT objected only to four and considered thirteen adequately justified.

• The four opposed/denied claimants were Janice Lojko, Rosemary Walker, Sally Ann Cates, and Jacqueline Torres Herrera.

• The thirteen successful comparators were Hardin, Anderson, Han, Murry, Whitman, Paiva, Hall, Funke, Stewart, British Moss, Vargas, Michael Walker, and Stevens.

• PAT's favorable categories included incarceration/resource restrictions, COVID compounding effects, medical conditions, acts of God, lack of media access, late discovery, and individualized PI Claims Administrator review.

• Rosemary Walker's comparison must use her full supplemented record rather than PAT's initial shorthand. The central question is whether the same totality methodology was applied to materially similar categories of hardship, confusion, access limitation and diligence.

## SOURCE DISCIPLINE

Primary source: PAT Exhibit A, Doc. 9143, pp. 18-24, listing all seventeen claimants, their assertions, Debtors' initial positions, and PAT's May 2026 positions. The July 1, 2026 decision states PAT objected only to four and describes the categories PAT considered adequate for the other thirteen. This matrix uses 'Granted'/'Denied' as the ultimate disposition reflected in the previously assembled comparison record; any filed appellate brief should cite the specific grant/denial orders for each claimant.

# ROSEMARY WALKER - PIONEER COMPARATOR REBUTTAL MATRIX

## Fed. R. Bankr. P. 9006(b)(1) - Excusable Neglect / Comparative Treatment of Pro Se Late Claims

**EVIDENCE-FIRST COURT WORKING DRAFT.** Prepared as a source matrix for Bankruptcy Court, District Court, Second Circuit, Oregon Supreme Court, and potential U.S. Supreme Court review. Exact record words are used where presently verified. Assertions, documentary evidence, PAT positions, and judicial findings are kept separate.

**Controlling analytical framework.** Pioneer requires an equitable determination taking account of all relevant circumstances, including prejudice, length of delay and impact, reason for delay (including control), and good faith. This matrix focuses on the record evidence relevant to those factors and on whether comparable pro se late claims were evaluated using a consistent totality methodology.

| # | Contention / Issue to Rebut | Exact Record / Documentary Evidence | Rosemary Walker Rebuttal / Pioneer Significance | Use |
|---|---|---|---|---|
| 1 | PAT reduced Walker's showing to disability and an Oregon lawsuit. | PAT Exhibit A: "Ms. Walker filed proofs of claim on August 25, 2025 and September 15, 2025. Her general assertions have been that she is an American with disabilities. She also references in other filings a lawsuit she filed against Sackler entities in Oregon that was enjoined." PAT: "Oppose (subject to supplemental briefing, if any)." | That shorthand did not capture Walker's later filed cumulative evidence. The appellate comparison must use the complete record, not the initial summary. | Reason / record completeness |
| 2 | Walker supplied no additional reasons after PAT requested supplemental briefing. | The later record states Walker filed supplemental briefing on May 5, 2026 and cited: "(1) an ice storm; (2) damage to her home; (3) fires; (4) the COVID-19 pandemic; (5) moving out of state; (6) intermittent lack of internet; (7) disability; and (8) inability to access certain social media platforms." | Walker did supplement. The question is whether PAT and the Court evaluated those circumstances cumulatively and under the same methodology used for favorable comparators. | Direct contradiction |
| 3 | Walker merely asserted a 2021 home emergency without documentation. | The Bankruptcy Court acknowledged an "insurance claim stating that a falling object caused a loss related to her residence on February 13, 2021." | The Court itself recognized documentary evidence of a dated residence-loss event during the COVID period. | Documentary / reason |
| 4 | The displacement-related hotel fire was unsupported. | Contemporaneous Salem Housing email, Feb. 24, 2021: "Oh my heavens...this is unbelievable. How can we help? I am willing to offer whatever support we can." The sender offered to "go to the hotel to retrieve your things" and referred to "the fire." | This third-party email corroborates that Walker was at a hotel and encountered another fire emergency while displaced. | Strong corroboration |
| 5 | The 2020-2021 events should be isolated rather than considered cumulatively. | Walker filed: "Time sure flies one global pandemic, then disaster after provided evidence disaster during disasters....while disabled with no resources at all." | Walker expressly presented cumulative impairment: COVID, wildfire/disaster conditions, ice-storm/tree damage, displacement, hotel fire, disability and resource limitations. Pioneer is a totality inquiry. | Core Pioneer theory |
| 6 | COVID mattered only for incarcerated comparators. | PAT wrote that "the COVID-19 pandemic further constrained resources available to incarcerated individuals during the General Bar Date noticing period" and that these circumstances "compounded the uniquely complex nature of these chapter 11 cases" and were "beyond the claimants' control such that they meet the standard for excusable neglect." | PAT itself used compounding circumstances. Incarceration is a factual distinction; it does not eliminate the need to assess Walker's COVID-era disability, disasters and resource limitations cumulatively. | Methodology comparator |
| 7 | Acts of God were not a basis for favorable late-claim treatment. | The Court summarized PAT's favorable reasons as including "acts of God-such as a tornado hitting their home or medical conditions-that prevented them from filing a proof of claim earlier." | Walker documented a residence-loss event and hotel fire and asserted wildfire/ice-storm disaster circumstances. The record should explain why comparable disaster evidence received different weight. | Major consistency issue |
| 8 | Disability was Walker's only excuse. | The Court itself recited Walker's disability, social-media restriction, interstate relocation, COVID, a "fire declared disaster in Salem Oregon," an "icenado after firenado," a "hotel fire while I was disabled & displaced," and "having no internet at times." | The Court's own recitation disproves any characterization that Walker relied only on disability. | Direct factual correction |
| 9 | Walker did not identify concrete resource loss. | Walker filed: "ms walker also had no resources, plus the last thing from ms walkers mind was thinking about anything but staying living judge lane and where my pussycat & i would be safe." Walker also wrote: "AT&T TURNED OFF MY PHONE MID FIRE DISASTER..." | These are Walker's exact assertions concerning access and capacity. Their weight may be disputed; they cannot be omitted from the reason-for-delay record. | Exact Walker record |
| 10 | Walker knowingly ignored a separate bankruptcy Proof-of-Claim requirement. | July 25, 2025 Walker email to Arik Preis: "do i have a claim number or is my case my claim?" | This contemporaneous question precisely documents Walker's uncertainty whether Marion County Case 23CV33935 itself constituted her claim. | Critical good-faith evidence |

| # | Contention / Issue to Rebut | Exact Record / Documentary Evidence | Rosemary Walker Rebuttal / Pioneer Significance | Use |
|---|---|---|---|---|
| 11 | Walker already had a claim number and simply failed to use it. | Aug. 2, 2025 Preis email: "If you want your claim number, I have copied into this email the PI Trust and Kroll (the claims processor). Can one of you please provide Rosemary with her claim number?" | Preis's conduct corroborates that Walker was seeking a claim number from the entities responsible for claims processing. The later claim-number date should not be used as the date Walker first acted. | Third-party corroboration |
| 12 | Walker's belief that her Oregon lawsuit was her claim is only a later self-serving explanation. | Sept. 19, 2025 Debtors/UCC filing signed by Arik Preis: "The Debtors and the Creditors' Committee note that, in addition to believing that her 2023 lawsuit constituted a filing of a valid and timely proof of claim against the Debtors, Ms. Walker appears to have confused the" | The quoted clause independently acknowledges Walker's belief that her 2023 lawsuit constituted a valid and timely Proof of Claim. The unfinished remainder is not supplied or reconstructed. | Exceptional admission / reason |
| 13 | Walker first attempted bankruptcy claim filing in August or September 2025. | Walker's July 15, 2025 signed filing asked Judge Lane: "did you receive my claim form i mailed pretty early when i found it on your website judge." She also asked for "information or forms the court needs from me." | This is contemporaneous pre-August evidence that Walker reported an earlier mailed claim form and affirmatively sought guidance from the Court. | Critical diligence evidence |

Rosemary Walker - Pioneer Comparator Rebuttal Matrix - Evidence-First Working Draft - Page 1

| # | Contention / Issue to Rebut | Exact Record / Documentary Evidence | Rosemary Walker Rebuttal / Pioneer Significance | Use |
|---|---|---|---|---|
| 14 | The August 4 docket date establishes when Walker first completed Official Form 410. | Doc. 7723 was docketed Aug. 4, 2025, but the attached Official Form 410 bears Walker's handwritten signature/date "7-20-25" and the notation: "I COULD NOT GET MY ORIGINAL FORM BACK PREVIOUS CLAIM FORM." | The signed date and notation materially predate docketing. Docket-entry date must not be conflated with the date of Walker's attempt to complete/submit the replacement form. | Documentary chronology |
| 15 | There is no record basis for Walker's assertion that she had tried an earlier claim form. | July 15 filing: "did you receive my claim form i mailed pretty early when i found it on your website judge." July 20 replacement Form 410: "I COULD NOT GET MY ORIGINAL FORM BACK PREVIOUS CLAIM FORM." | Two contemporaneous filings independently preserve Walker's assertion of an earlier mailed form. Whether the first mailing reached the Court is separate from whether Walker attempted it in good faith. | Good faith / diligence |
| 16 | Walker did not act by the July 28, 2025 PI Trust deadline. | July 27 PI Trust email: "the deadline to file claims with the PI Trust is tomorrow, July 28th at 11:59 EST" and "For your convenience we have attached the claim form to this email." July 28, 2025, 8:45 AM PI Trust response: "Received." | Walker supplied the PI Trust form by the stated PI Trust deadline. This must be kept distinct from the separate bankruptcy Proof-of-Claim process. | Critical documentary correction |
| 17 | The July 28 PI Trust submission and later Kroll claim number are the same procedural event. | July 28 PI Trust: "Received." Aug. 2 Preis: "Can one of you please provide Rosemary with her claim number?" Doc. 7723 later displays Claim Number 634787. | The sequence demonstrates separate procedural steps. The record should identify when Claim No. 634787 was created/assigned/communicated and who was responsible for providing it. | Administrative chronology |
| 18 | Knowledge that Purdue litigation existed proves Walker understood bankruptcy claims procedure. | Walker filed: "did i understand any of that no...not even a little. I thought my claim was joined to the bankruptcy which it was." Debtors/UCC later acknowledged she believed her 2023 lawsuit constituted a valid and timely Proof of Claim. | Awareness of litigation is not identical to understanding the specialized requirement for a separate bankruptcy Proof of Claim. The Debtors/UCC's own filing corroborates the misunderstanding. | Strong knowledge distinction |
| 19 | Walker gave PAT no reason for delay. | At the May 20 hearing PAT counsel said the opposed movants "either did not provide a reason for their delay in filing the proof of claim, or the reasons that they provided were not unique." | As to Walker, the 'no reason' branch is contradicted by her supplemental filing and documentary evidence. If PAT relied on 'not unique,' that is not itself the Pioneer standard; the issue is the equitable totality of her circumstances. | Excellent hearing rebuttal |
| 20 | PAT used a totality approach uniformly. | PAT stated for favorable comparators that "given the totality of their circumstances" there was a sufficient basis to allow their proofs of claim as timely. | PAT expressly used totality language for favorable claimants. Walker's cumulative circumstances should be tested under the same methodology. | Central consistency issue |
| 21 | Walker received the same individualized medical review as Michael Walker and British Moss. | PAT stated that Messrs. Moss and Walker were referred for PI Claims Administrator evaluation because documents "appeared to substantiate their assertions of unique medical conditions"; the administrator recommended acceptance as timely and PAT agreed. | The record supports asking why Rosemary Walker's documented disability plus disaster evidence did not receive the same individualized referral/evaluation before PAT maintained opposition. | Major comparator |
| 22 | Technology/news limitations were irrelevant to favorable treatment. | PAT described Wayne Anderson as a disabled veteran who did not keep up with news and was not technologically savvy and, "given the totality of their circumstances," did not oppose. | PAT considered disability, access, timing and totality together for a favorable comparator. Walker's disability/access evidence should be assessed under the same equitable framework. | Strong comparator |
| 23 | A claimant who possessed a form but failed to return it could not receive favorable treatment. | PAT's comparator history states Kroll sent Travis Stewart a proof-of-claim form in May 2020, but he did not return it; PAT later withdrew the Debtors' prior objection. | If accurately matched to the final disposition, Stewart is a powerful comparator: possession of a form before the bar date did not automatically foreclose excusable-neglect relief. | Very strong comparator |

| | | | | |
|---|---|---|---|---|
| 24 | Late discovery of Purdue was an automatic bar. | PAT Exhibit A states Eddie Vargas filed Feb. 12, 2024 and said he became aware of Purdue through a Kroll response dated Mar. 15, 2024, received Apr. 2, 2024; PAT: "Do Not Oppose." | PAT accepted at least one claimant whose awareness arose years after the 2020 bar date. This bears on Walker's argument that she acted as she came to understand the separate claims process. | Strong notice comparator |
| 25 | Walker was one of many late claims PAT opposed, so her treatment was routine. | The Court stated PAT addressed seventeen pending pro se late-claim motions and objected "only to four," finding adequate justification for thirteen. | This statistic does not itself prove legal inconsistency, but it heightens the need for a record-based explanation of why Walker's documented combination fell outside the thirteen favorable cases. | Important context |
| 26 | Walker failed to preserve lack of prejudice. | Walker at May 20 hearing: "the PAT never demonstrated actual material prejudice from allowing Ms. Walker's late claim. Instead, it relied mostly entirely on attacking reasons for delay." | This is Walker's exact preserved prejudice argument. The record should identify actual prejudice evidence, if any, rather than presume prejudice from lateness. | Pioneer prejudice |
| 27 | Debtors/PAT were surprised by Walker's existence or participation. | Walker at May 20 hearing: "The Debtors, Davis Polk, PAT, and the Court were already actively litigating issues involving Ms. Walker. Ms. Walker filed objections, appeals, injunctions, responses, and participated in proceedings." | This is Walker's preserved position. It should be paired with dated docket entries when used to rebut surprise or administrative prejudice. | Prejudice / notice |
| 28 | Later filing activity proves Walker could have filed during the original 2020-2021 period. | Court: "Ms. Walker's disability has not prevented her from filing numerous pleadings in these cases or otherwise being actively involved." | Later episodic capacity does not by itself establish capacity during the earlier COVID/disaster/displacement period. The causation analysis must be temporally specific. | Important causation issue |
| 29 | The 2020-2021 disasters are irrelevant because Walker learned of Purdue later. | The Court treated the fact that some listed circumstances occurred before Walker learned about the bankruptcy as relevant to causation. | Separate the periods. The 2020-2021 evidence bears on original notice/bar-date circumstances; the later period concerns when Walker learned of Purdue, what she understood about 23CV33935, and her subsequent filing efforts. | Two-period analysis |
| 30 | Ricarte personally established Walker's knowledge and circumstances. | Doc. 9143 is submitted in the name of Maria Christina Ricarte, as Trustee of PAT. The presently identified May 20 record reflects argument by PAT counsel; no verified Ricarte testimony is presently cited here. | Do not overstate. The evidentiary question is what personal-knowledge evidence supported PAT's assertions about Walker's knowledge, understanding, capacity and reasons. Any cross-examination argument must be tied to an exact request/ruling. | Preserve carefully |
| 31 | Reciting Walker's circumstances proves they were weighed consistently with the thirteen favorable claimants. | The Court recited Walker's circumstances but rejected excusable neglect, while PAT expressly used "totality" and compounding-circumstances reasoning for favorable comparators. | Recitation and comparative application are different. The appellate question is whether materially similar factors were weighed under the same Pioneer methodology. | Core appellate issue |



| # | Contention / Issue to Rebut | Exact Record / Documentary Evidence | Rosemary Walker Rebuttal / Pioneer Significance | Use |
|---|---|---|---|---|
| 32 | Walker deliberately disregarded a known deadline. | Contemporaneous record sequence: July 15 asks whether the Court received the form she had mailed; July 20 signs replacement Form 410; July 25 asks "do i have a claim number or is my case my claim?"; July 28 PI Trust says "Received"; Aug. 2 Preis asks PI Trust/Kroll to provide the claim number; Sept. 19 Debtors/UCC acknowledge Walker believed her 2023 lawsuit constituted a valid and timely Proof of Claim. | This sequence is affirmative evidence of attempted compliance, confusion, inquiry and continued diligence. It is inconsistent with a simple narrative of deliberate disregard. | Strongest good-faith chronology |
| 33 | Walker's circumstances must be 'unique' to satisfy Pioneer. | PAT counsel used the phrase that reasons were "not unique." PAT elsewhere relied on "totality of their circumstances" and compounding circumstances. | Pioneer calls for an equitable totality analysis; the court-ready issue is not whether each circumstance was unique in isolation but whether Walker's combined circumstances, conduct, prejudice, delay and good faith satisfy the standard. | Legal-methodology issue |
| 34 | Overall Pioneer comparison supports denial without further explanation. | Record evidence includes: documented Feb. 13, 2021 residence loss; Feb. 24 hotel-fire corroboration; disability; COVID-era conditions; asserted resource interruptions; contemporaneous confusion about whether 23CV33935 was her claim; reported earlier mailed form; July 20 replacement Form 410; timely July 28 PI Trust receipt; Preis/Kroll claim-number assistance; Debtors/UCC acknowledgment of Walker's belief; and PAT non-opposition to thirteen of seventeen pro se late-claim motions. | Walker's strongest appellate formulation is cumulative and comparative: require the record to explain why this documented course of events failed Pioneer when PAT accepted other pro se late claims based on disaster, medical, access, COVID, confusion/late discovery, and totality considerations. | Central conclusion |

## CORE CHRONOLOGY FOR THE PIONEER GOOD-FAITH / REASON-FOR-DELAY ANALYSIS

• 2020-2021: Walker relies on COVID-era conditions, disability, Salem/Marion County fire-disaster circumstances, resource limitations, and later ice-storm/tree damage and displacement.

• Feb. 13, 2021: Court-recognized insurance evidence identifies a falling-object loss related to Walker's residence.

• Feb. 24, 2021: Salem Housing email corroborates a fire at the hotel during Walker's displacement and offers help retrieving her belongings.

• 2023: Walker files Marion County Case No. 23CV33935; Walker later believes that lawsuit constituted her claim in the Purdue proceeding.

• July 15, 2025: Walker signs a filing asking Judge Lane whether the Court received the claim form she had mailed and requesting information/forms needed.

• July 20, 2025: Walker signs a replacement Official Form 410 and notes she could not get her original/previous claim form back.

• July 25, 2025: Walker asks Preis: 'do i have a claim number or is my case my claim?'

• July 27, 2025: PI Trust sends its claim form and states the PI Trust deadline is July 28 at 11:59 EST.

• July 28, 2025: PI Trust replies to Walker: 'Received.'

• Aug. 2, 2025: Preis copies PI Trust and Kroll and asks: 'Can one of you please provide Rosemary with her claim number?'

• Aug. 4, 2025: Doc. 7723 is docketed and displays Claim Number 634787; this docket date is later than the July 20 handwritten Form 410 date.

• Sept. 19, 2025: Debtors/UCC filing acknowledges Walker believed 'her 2023 lawsuit constituted a filing of a valid and timely proof of claim against the Debtors.'

• May 20, 2026: Walker argues PAT never demonstrated actual material prejudice; PAT counsel characterizes opposed claimants as giving no reason or reasons that were 'not unique.'

US SDNY DISTRICT COURT
300 QUARROPAS STREET
WHITE PLAINS, NEW YORK 10601-4150

RE: ROSEMARY HELEN ZIZIROS WALKER VS PURDUE PHARMA

DISTRICT COURT CASE #25CV9681

MOTION FOR STAY & EVIDENCE

JUDGE RAMON,

PLEASE FIND MS WALKERS PIONEER COMPARATOR REBUTTAL MATRIX & PIONEER ALL 17 PRO SE LATE-CLAIM COMPARISON MATRIX.

rosemary helen ziziros walker 8.14.26 4:04pm

CERT OF SERVICE honestly i can not even keep track who or not to email service to so i have emailed davis polk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROSEMARY WALKER, Appellant, Pro Se,
v.
PURDUE PHARMA L.P., et al., Appellees.
Case No. 25-CV-9681

**ROSEMARY WALKER'S CONSOLIDATED REQUEST FOR RECORD-BASED REVIEW, ACCOUNTING, AND ADJUDICATION OF UNRESOLVED PLAN ISSUES**

Purpose. This filing consolidates Walker's principal unresolved record issues and distinguishes established record facts from matters that still require production or adjudication. It does not convert an unanswered question into an established fact.

**I. IMMEDIATE ACCOUNTING OF PLAN FUNDS IS REQUIRED**

"The roughly $880 million provided by the Debtors-Appellees was disbursed to the various creditor trusts together with approximately $1.1 billion in Sackler payments, and there is no practical way to trace current location of all dollars contributed by the Debtors-Appellees."

Walker requests a transaction-level accounting of the approximately $1.1 billion in Sackler payments and the approximately $880 million in Debtor funds: source, recipient, transfer date, account or trust, present balance, distributions, reserves, administrative charges, and supporting records. Rule 2004 permits examination concerning property, financial condition, estate administration, and chapter 11 plan-funding matters. Rule 2004(c), through Rule 9016, permits compelled production. Rule 2015(a)(2) requires records of receipts and disposition of money and property received. Where procedurally applicable, Rule 9014 and Part VII discovery procedures provide additional mechanisms.

The assertion that there is no practical way to trace the money is itself a reason for immediate record-based review, not a substitute for accounting.

**II. TIER 1, TIER 2, AND NAS COUNTS AND DOLLAR RECONCILIATION REMAIN MATERIAL**

"Qualified and Allowed Non-NAS PI Tier 1 Claims $16,294"
"Qualified and Allowed Non-NAS PI Tier 2 Claims $8,147"
"Qualified and Allowed NAS PI Claims $25,653"
"A second payment may be made once all contingencies are resolved. The availability and amount of any second payment will be determined by the Trustee based on the number of Qualified and Allowed Claims, the resolution of

all outstanding contingencies, and the remaining Trust Assets available for distribution after satisfaction of all administrative obligations.” The published dollar amounts do not answer the number of Qualified and Allowed Tier 1, Tier 2, and NAS claims. Walker requests the actual counts, aggregate dollars attributable to each category, amounts paid, amounts reserved, remaining Trust assets, and the reconciliation controlling any second payment. Walker also requests that the exact transcript exchange with Edgar C. Gentle concerning how many Tier 1, Tier 2, and NAS claims existed be placed before the reviewing court. Walker recalls Mr. Gentle responding, "I don't know." That quotation should be used only with the exact transcript page and lines once verified; the underlying numerical question
must nevertheless be answered.

**III. PURDUE-SPECIFIC PI PROOF AND THE DISTRIBUTION STRUCTURE REQUIRE REVIEW**

“the main requirement here is showing a proof of a Purdue prescription. That is kind of the baseline to get into the TDP.” Walker requests review of the disparate structure under which Purdue PI claimants were required to establish Purdue-specific prescription exposure and medical evidence while the Plan separately directs billions of dollars to 25-CV-9681 -
broader opioid victim and abatement purposes. The question is not whether broader opioid harms exist; it is whether a Purdue Pharma bankruptcy may impose Purdue-specific causation and prescription proof on Purdue PI victims while distributing materially larger Plan value through categories that are not limited by the same Purdue-brand proof requirement.
Walker further preserves the health-care-business / patient-protection issue and requests adjudication of whether the checked-box designation of "None of the above" adequately resolved that statutory question where Purdue PI claimants were treated as patients for purposes of medical evidence and HIPAA authorization.

**IV. A CHECKED BOX IS NOT THE ENTIRE CONSENT RECORD**

“We'll accept notices from someone saying hey, you know, now that I understand things better, I previously opted either in or not opted in, I would like to change that. So it's a last chance to change what we already did.” “And a new fixed deadline.” The confirmation record itself recognized that a claimant could later understand the election differently and change it.
Walker therefore requests review of whether an opt-in or non-opt-in checkmark, standing alone, constituted informed affirmative consent where the Plan parties and Court later established a new March 1, 2026 deadline for changing the prior election.
Walker's medical-record comparison illustrates the evidentiary problem: a checked "NO CHANGE IN MEDICATIONS" box does not erase the underlying medication history or require the physician to rewrite "OxyContin" on every visit. Likewise, a release-election checkmark cannot be isolated from the notices, explanations, later understanding, attempts to change the election, and unresolved claim status.

**V. DUE PROCESS AND THE FIRST AMENDMENT RIGHT TO PETITION CANNOT BE NULLIFIED BY PROCEDURAL SEQUENCING**

"How do I know if I want to give this up if I don't know if it actually gets me anything?"
Walker preserves the contention that her late-claim, release-election, distribution, and implementation objections were not finally adjudicated before operative Plan consequences were imposed. The reviewing court should determine whether Walker received notice and a meaningful opportunity to be heard before rights and financial interests were affected, and whether later reliance on effectiveness, mootness, or procedural posture improperly prevented adjudication of issues Walker had already presented.
Walker invokes the First Amendment right "to petition the Government for a redress of grievances." Walker does not claim a constitutional right to prevail. She requests review of whether properly presented objections and motions were actually adjudicated rather than rendered practically unreviewable by the sequence of confirmation, effectiveness, and later mootness arguments.

**VI. WALKER REPEATEDLY WARNED BEFORE CONFIRMATION AND EFFECTIVENESS THAT THE RICHARD SACKLER SETTLEMENT DOCUMENTATION WAS NOT COMPLETE**

This issue is not limited to a May 20, 2026 filing. Walker raised the Richard Sackler documentation problem during the confirmation proceedings and continued asking whether the required documents had actually been signed before the Plan became effective.
"Have these things been resolved or not?" "Well, that's the subject of ongoing discussions, and I expect to get an update on that in the very near future." "So prior to confirmation?"
The Debtors then described negotiations with Richard Sackler and his counsel concerning the path from the existing state of affairs to "full completion of all remaining credit support and collateral documents" underlying the master settlement agreement and Sackler settlement. The Debtors further described a commitment by Dr. Sackler "to complete and execute the remaining documentation for the settlement," a timeline for completion, Court supervision, and an enforcement mechanism. Those words describe future completion and execution, not already completed execution. "Ms. Walker had it right in the sense of saying you want as many uncertainties to be addressed as possible." 25-CV-9681 - Walker continued raising the same question in a later hearing: "And then did Richard Sackler sign the document that the hearing was adjourned the other day?" "So did Richard Sackler sign the documents?"
The Court stated that a hearing concerning mechanics of reaching the Effective Date, "including the signing of various documents," had been canceled after the parties said it was unnecessary. On the critical factual question of "exactly who signed what," the Court stated:
"I don't have in front of me, other than I have what the plan says needs to be done in order for the case to --." Walker immediately tied that unanswered execution question to effectiveness: "So how can you set an effective date if the Sacklers haven't signed the document? That would have to happen before an effective date is set." The May 1 record itself continued to describe incomplete implementation: Richard Sackler had not received Wells Fargo confirmation of a transfer and would provide evidence "promptly upon receipt"; another Confession of Judgment had been executed with the wrong name on the signature line and "will be re-executed and delivered as soon as possible." On May 20 Walker again stated the basis of her confirmation objection:

"WHY DID MS WALKER OBJECT TO THE CONFIRMATION JUDGE LANE? RIGHT RICHARD SACKLER & LIN GAO HAD STILL NOT SIGNED THE DOCUMENTS THAT INVOLVE CASH AS I UNDERSTAND."
The reviewing issue is therefore whether confirmation and effectiveness could properly proceed while material credit-support, collateral, signature, transfer, re-execution, or other Sackler-settlement implementation requirement remained incomplete, subject to future performance, or unverified - after Walker repeatedly raised the precise problem.
A commitment to execute remaining documents later is not the same factual event as execution. Walker requests a document-by-document completion accounting identifying each required Richard Sackler or Lin Gao instrument, required signatory, execution date, delivery date, transfer confirmation, cure or re-execution, and docket evidence establishing satisfaction of the applicable Plan and Confirmation Order requirements before effectiveness or identifying any item completed afterward.

**VII. THE UCC'S CONTINUING REPRESENTATIVE ROLE REQUIRES REVIEW**

"The Official Committee has been the point of contact for individuals reaching out about the status of their claims for the past half-decade" "the Official Committee would be remiss in its duties not to mention it." The Official Committee continued appearing after the Effective Date through counsel as the Official Committee of Unsecured Creditors. Section 1103(c) authorizes a committee to investigate, participate in plan matters, advise those represented, and perform services in the interest of those represented. Walker does not contend that UCC counsel is her personal attorney. She requests review of whether the Committee's continuing conduct fulfilled its representative obligations to unsecured creditors as a group, including Purdue PI creditors, while taking positions concerning claims, releases, distributions, appeals, and implementation of the Plan.

**VIII. REQUESTED RELIEF**

Walker requests the reviewing court grant relief within its jurisdiction sufficient to obtain and adjudicate the unresolved record issues, including remand, supplementation of the record, direction for findings, or other procedurally proper relief.

Specifically, Walker requests determinations concerning: (1) the complete accounting of approximately $1.1 billion in Sackler payments and approximately $880 million in Debtor funds; (2) the actual Tier 1, Tier 2, and NAS claim counts and category-by-category dollar reconciliation; (3) the Purdue-specific PI proof and health-care-business patient-protection issues; (4) whether a release-election checkmark established informed affirmative consent in the complete record; (5) whether Walker received a meaningful opportunity to obtain adjudication of her preserved objections before Plan consequences and later mootness arguments intervened; (6) whether confirmation and 25-CV-9681 - effectiveness proceeded while material Richard Sackler / Lin Gao settlement documents, signatures, transfers, cures, or confirmations remained incomplete or unverified, and exactly when each was completed; and (7) whether the UCC's

continuing conduct satisfied its statutory representative role toward unsecured creditors as a group. Walker further requests that no unresolved factual issue be treated as established against her merely because the Plan became effective before the issue was adjudicated.

**CORE PROCEDURAL AUTHORITIES**

Fed. R. Bankr. P. 2004: Examination concerning property, financial condition, estate administration, and chapter 11 plan-funding matters; Rule 2004(c) provides for compelled attendance and production through
Rule 9016. Fed. R. Bankr. P. 2015(a)(2): Records concerning receipts and disposition of money and property received.
Fed. R. Bankr. P. 9016: Makes Civil Rule 45 applicable in bankruptcy cases for subpoenas.
Fed. R. Bankr. P. 9014 and applicable Part VII rules: Procedures for contested matters and discovery where applicable.
11 U.S.C. § 1103(c): Functions of an official committee, including investigation, participation in plan matters, advising those represented, and other services in the interest of those represented.
Constitutional issues preserved: Due process and the First Amendment right to petition. Walker seeks adjudication and meaningful access to review, not a guaranteed favorable outcome.
Appellate limitation. The District Court and Court of Appeals are asked to exercise their own appellate authority. Walker does not characterize either appellate court as conducting an original Rule 2004 examination; she requests remand, supplementation, findings,
production, or other relief within the reviewing court's jurisdiction sufficient to permit adjudication of the preserved issues.

The court website is still not accessable to disabled pro se pauper women.




rosemary helen ziziros walker 8.16.26 2:50pm
CERT OF SERVICE i promise i emailed davis polk akin & mdt