# <u>Exhibit A</u>

**Laurie Danielle Pitts-Tillman's Appellant's Opening Brief and Special Appendix**

Laurie Danielle: Pitts-Tillman
Pro Se Appellant / Sui Juris
Appearing specially
c/o 5116 Georgia Highway 99
Brunswick, Georgia [31525]

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LAURIE DANIELLE: PITTS-TILLMAN,<br><br>Pro Se Appellant,<br><br>v.<br><br>PURDUE PHARMA L.P., et al.,<br><br>Debtors-Appellees. | CONSOLIDATED CASE NO.<br>2025-90681 (NSR) |

**On Appeal from the United States Bankruptcy Court for the Southern District of New York**
**Bankruptcy Case No. 19-23649 (SHL)**

## APPELLANT'S OPENING BRIEF AND SPECIAL APPENDIX

# TABLE OF CONTENTS


Table Of Authorities 3

Standard Of Review 3

Jurisdictional Statement & Jurisdictional Challenge 4

Statement Of Issues Presented For Review 5

Statement Of The Case 6

Summary Of Argument 8

Fully Developed Legal Argument 14

POINT I: The Mandate of Pro Se Liberal Construction (Fed. R. Civ. P. 8; Haines v. Kerner). . . . . . 14

POINT II: Plain Language Canons of Statutory Construction (Connecticut Nat. Bank v. . . . . . . . . 15

POINT III: Article I Bankruptcy Court Structural Defects and Core Adjudicatory . . . . . . . . . . . 15

POINT IV: Encroachment Upon the United States Supreme Court's Exclusive Original . . . . . . . . 16

POINT V: Reversible Error in Approving a Chapter 11 Plan Dependent on Artificially . . . . . . . . 16

POINT VI: Abuse of Discretion and Legal Error Under the Pro Tanto One-Satisfaction . . . . . . . . 17

POINT VII: Structural Due Process Deficiencies and Fifth Amendment Takings Violations . . . . . 19

POINT VIII: Equitable Invalidation of Extraordinary Professional Compensation Absent a . . . . 20

Conclusion And Relief Sought 22

Special Appendix 23

SECTION I: INDEX OF RELEVANT LOWER COURT DOCKET ENTRIES . . . . . . . . . . . . . . . . . . 23

Motion To Proceed On The Original Record 25

Certificate Of Compliance 25

Certificate Of Service 25

## TABLE OF AUTHORITIES

1. United States Supreme Court Cases

Armstrong v. United States, 364 U.S. 40 (1960) Carcieri v. Salazar, 555 U.S. 379 (2009) Connecticut Nat. Bank v. Germain, 503 U.S. 249 (1992)

Erickson v. Pardus, 551 U.S. 89 (2007) Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989) Haines v. Kerner, 404 U.S. 519 (1972). Harrington v. Purdue Pharma L.P. 603 U.S. 204 (2024) Manufacturer's Finance Co. v. McKey, 294 U.S. 442 (1935) Marbury v. Madison, 5 U.S. 137 (1803) Mathews v. Eldridge, 424 U.S. 319 (1976) Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950) Pepper v. Litton, 308 U.S. 295 (1939) Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998) Stern v. Marshall, 564 U.S. 462 (2011) Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321 (1971)

2. United States Courts of Appeals Cases

Burgos v. Hopkins, 14 F.3d 787 (2d Cir. 1994) page 13656) In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833 (3d Cir. 1994) SEC v. Research Automation Corp., 585 F.2d 31 (2d Cir. 1978) Singer v. Olympia Brewing Co., 878 F.2d 596 (2d Cir. 1989) Tronox Inc. v. Kerr-McGee Corp. (In re Tronox Inc.), 855 F.3d 84 (2d Cir. 2017) 3. Constitutional Provisions United States Constitution, Article I United States Constitution, Article III, Section 1 United States Constitution, Article III, Section 2, Clause 2

United States Constitution, Fifth Amendment United States Constitution, Seventh Amendment 4. Federal Statutes (United States Code) Title 11, U.S.C. § 330 Title 11, U.S.C. § 1129(a)(7) Title 15, U.S.C. § 1692g Title 28, U.S.C. § 157 & 157(b) (5) Title 28, U.S.C. § 158(d) Title 42, U.S.C. § 1981 5. Federal Rules Federal Rule of Appellate Procedure 30(a)(1)(A), Federal Rules of Bankruptcy Procedure Federal Rule of Civil Procedure 8 Federal Rule of Civil Procedure 8(e) Federal Rule of Evidence 201/ 201(c) & 201(d) Pro tanto one satisfaction rule

## STANDARD OF REVIEW

Point I - Pro Se Liberal Construction Whether the Bankruptcy Court and District Court properly construed Appellant's pro se filings presents a question of law reviewed de novo. See Haines v. Kerner. Point II - Statutory Interpretation and Plain Language Construction Questions of statutory interpretation are reviewed de novo. See Connecticut National Bank v. Germain.

Point III - Article III Authority, Subject-Matter Jurisdiction, and Constitutional Power Questions concerning constitutional authority, subject-matter jurisdiction, and interpretation of 28 U.S.C. § 157 are reviewed de novo. See Stern v. Marshall. Point IV - Article III, Section 2 Jurisdictional Challenge Questions concerning constitutional interpretation and jurisdiction are reviewed de novo. Point V - Chapter 7 Best Interests Test and Plan Confirmation Legal conclusions regarding plan confirmation are reviewed de novo; factual findings are reviewed for clear error; ultimate confirmation determinations are reviewed for abuse of discretion.

Point VI - Judicial Notice, Claim Offsets, and Double Recovery Issues The denial or application of judicial notice under Federal Rule of Evidence 201 is reviewed for abuse of discretion, while underlying legal questions are reviewed de novo. Point VII - Due Process, Notice, and Constitutional Takings Constitutional due process and Fifth Amendment issues are reviewed de novo. Point VIII - Professional Fees, Accounting, and Estate Administration Awards of professional compensation under 11 U.S.C. § 330 are reviewed for abuse of discretion, while legal interpretations of the Bankruptcy Code are reviewed de novo.

## JURISDICTIONAL STATEMENT & JURISDICTIONAL CHALLENGE

Appellant explicitly challenges the subject-matter jurisdiction, territorial jurisdiction, statutory authority, and constitutional power of the lower tribunal. Appellant asserts that the Bankruptcy Court exceeded its lawful authority under both statutory and constitutional frameworks by confirming a plan that permanently alters, channels, and extinguishes private common-law rights without proper Article III adjudication. While this Court possesses appellate jurisdiction to review final orders pursuant to 28 U.S.C. § 158(d), Appellant maintains that the underlying order is void ab initio due to fundamental jurisdictional overreach by an Article I/non-Article III adjudicator.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the Bankruptcy Court exceeded its statutory authority by confirming a plan containing non-consensual third-party releases and channeling injunctions affecting Appellant's private personal injury claims without Appellant's voluntary consent. 2. Whether the Bankruptcy Court violated Article III of the United States Constitution and 28 U.S.C. § 157(b)(5) by permanently channeling and altering Appellant's private common-law personal injury claims through an Article I tribunal without Article III adjudication. 3. Whether the Plan violated Appellant's Seventh Amendment right to a jury trial by forcing private tort claims into a mandatory administrative trust structure that eliminated access to a jury determination of liability and damages. 4. Whether the Bankruptcy Court erred in confirming the Plan despite Appellant's repeated objections that the Plan utilized artificially skewed voting structures that diluted the voting power and participation rights of individual personal injury claimants. 5. Whether the Plan failed to satisfy the "best interests of creditors" requirement under 11 U.S.C. § 1129(a)(7) by failing to demonstrate that dissenting personal injury claimants would receive at least as much as they would under a Chapter 7 liquidation. 6. Whether governmental entities were improperly permitted to vote and participate in distributions without demonstrating that their claims reflected actual, uncompensated losses rather than duplicative recoveries previously satisfied through settlements, grants, insurance reimbursements, or other funding sources. 7. Whether the Bankruptcy Court erred by permitting duplicative recoveries and unjust enrichment contrary to principles prohibiting double recovery and requiring equitable treatment of similarly situated claimants. 8. Whether the Bankruptcy Court violated Appellant's procedural due process rights under the Fifth Amendment by failing to provide meaningful notice and a meaningful opportunity to be heard regarding the constitutional and practical consequences of confirmation. 9. Whether requiring in-person participation in New York as a practical prerequisite to cross-examination deprived Appellant, an indigent pro se litigant residing in Georgia, of a meaningful opportunity to challenge evidence and participate in proceedings affecting substantial rights. ( I was informed it could not be done via Zoom meeting until the day of Stay Hearing)

10. Whether the failure to provide a verified accounting despite Appellant's repeated demands deprived Appellant of the ability to evaluate claim validity, governmental offsets, trust distributions, professional fees, and the overall fairness of the Plan. 11. Whether fiduciary obligations of transparency, impartiality, and preservation of estate assets were breached through the failure to provide adequate accounting, claim validation, and disclosure regarding distributions and professional compensation. 12. Whether the Plan affects an unconstitutional taking of Appellant's protected property interests by forcing private claims into a mandatory trust structure while depriving Appellant of traditional Article III adjudication and jury trial protections. 13. Whether the Bankruptcy Court violated constitutional separation of powers principles by exercising authority reserved to

Article III courts in adjudicating and permanently altering private rights traditionally resolved through common-law proceedings. 14. Whether extraordinary professional compensation approved under 11 U.S.C. § 330 was improper in the absence of a complete and verified accounting sufficient to demonstrate that such fees were reasonable, necessary, and equitable. 15. Whether prolonged delays in compensation, without adequate accounting regarding interest, investment earnings, or preservation of value, inequitably diminished the recoveries of individual personal injury claimants.

## STATEMENT OF THE CASE

This appeal arises from the Chapter 11 bankruptcy proceedings of Purdue Pharma L.P., et al., pending before the United States Bankruptcy Court for the Southern District of New York under Case No. 19-23649 (SHL). Appellant, proceeding pro se/ sui juris consistently, systematically, and vocally objected to the plan's core structural mechanics, lack of transparency, treatment of personal injury claimants, refusal to produce accounting, allocation disparities, skewed voting design, departure from the protections afforded under Chapter 7 liquidation principles, and non- consensual third-party release provisions across every stage of both the lower tribunal and this Court. On November 13, 2025, Appellant appeared by Zoom during the confirmation proceedings and orally presented objections directed toward the structure and fairness of the Plan itself. Appellant did not testify regarding the personal injuries or damages she sustained. Rather, Appellant objected that the Plan was fundamentally skewed from its inception because it permitted overlapping recoveries, unjust enrichment, duplicative compensation by governmental and institutional entities while diluting the rights and recoveries of individual personal injury

claimants, as well as due process violations, skewed voting, unlawful takings, third-party releases that have never been approved by Congress, as well as failure to provide accounting to prove it complies with "The best interests of the creditors test." Appellant specifically challenged the Plan's reliance on heavily weighted voting structures that effectively prevented individual victims from exercising any influence over the confirmation process. Appellant further argued that the Plan failed to provide adequate Chapter 7 liquidation comparisons demonstrating Compliance with 11 U.S.C. § 1129(a)(7), and objected to the use of an Article I tribunal to permanently alter private common-law rights traditionally adjudicated in Article III courts. * See transcript for hearing 11/13/2025 Appellant repeatedly demanded a verified accounting concerning trust allocations, governmental recoveries, offsets, professional fees, claim validation, and the basis for claimant distributions. Despite these repeated requests before voting, confirmation, and implementation of the Plan, no complete accounting was provided. The absence of such information prevented Appellant from meaningfully evaluating whether the Plan satisfied applicable bankruptcy requirements, whether governmental claims reflected actual uncompensated losses, and whether distributions were being allocated equitably among claimants. Although opportunities for cross-examination

were discussed during the proceedings, Appellant was informed that meaningful cross-examination would require physical attendance in New York. As an indigent pro se litigant residing in Georgia, Appellant lacked the financial ability to travel to New York. Consequently, any opportunity to challenge testimony through cross-examination existed only the day of stay hearing ( found out same day) and was not realistically accessible to Appellant. Despite Appellant's preserved objections regarding constitutional concerns, statutory deficiencies, lack of accounting, inequitable treatment of individual claimants, duplicative governmental recoveries, and failures to account for prior settlements and offsets, the Plan was confirmed and implementation proceeded. Appellant timely pursued appellate review and continued to seek relief through objections, stay proceedings, and motions for reconsideration in an effort to preserve her constitutional and statutory rights. Pursuant to Federal Rule of Evidence 201(c)(2) and (d), Appellant hereby requests and invokes mandatory judicial notice of the following adjudicative facts, court dockets, files, and transcript contents. As formal, verified records of the United States Courts, these entries are not subject to reasonable dispute, and this Court is required to recognize this sequential procedural foundation-including severe due process and structural communication deprivations-as the basis of this appeal:

I. Foundational Bankruptcy Court Phase & Verbal Record Preservation 1 Bankruptcy Court Docket No. 8186: Filed on November 5, 2025, Appellant formally entered onto the record her Motion for Leave to File out of Time and Vacate Plan Confirmation, establishing her foundational challenge to the restructuring scheme. 2 November 13, 2025, November 18, 2025 & November 20, 2025 Confirmation Hearing Transcripts: As certified by the District Court at ECF No. 52, Appellant appeared in open court at the confirmation hearings. The official transcripts preserve Appellant's active verbal participation, where claimant was interrupted by Judge and told my claims would not be affected against the Sacklers. He did inform me I would have my claim channeled and capped for the Purdue Claim as well as the long list of associated companies, and be giving up my rights to a trial by jury in an Article III court. 3 Bankruptcy Court Docket No. 8263 & 8270: Confirmation Entered on November 18, 2025, of a different version of plan than voted on, and then on November 20, 2025 the Bankruptcy Court issued its Modified Bench Ruling Granting Confirmation of the Eighteenth Amended Joint Chapter 11 Plan of Reorganization alongside its Order Setting Deadlines (collectively, the "Confirmation Order"). 4 Denial of Speech and Stay Hearing Transcripts: Following the entry of the Confirmation Order, a hearing was held in the Bankruptcy Court regarding stay applications. The structural record and underlying hearing transcripts reveal a fatal procedural deprivation: despite being invited to speak at hearing by signing up , the judge refused to let anyone speak after he made the ruling denying the stay motions. The end result is he cut off an unrepresented litigant's right to clarify the record or proffer oral arguments, in direct violation of basic due process. 5 Bankruptcy Court Docket No. 8339 & 8344: Filed on December 3, 2025, Appellant initiated the appellate process by filing her timely Notice of

Appeal alongside her primary Designation of Contents and Statement of Issues. 6 Bankruptcy Court Docket No. 8429: Filed on December 18, 2025, Appellant augmented the lower court record by filing a Supplemental Designation of Contents. II. Pre-Consolidation District Court Phase & Appellate Due Process Failures Following the transmission of the record to the United States District Court for the Southern District of New York under assignment to the Honorable Nelson Stephen Roman:

1 District Court ECF No. 1 & 15: Appellant's appeal was docketed on December 16, 2025, and Designation of Bankruptcy Record on Appeal on December 23, 2025. 2 District Court ECF No. 40: On February 24, 2026, Emergency Motion for Stay Pending Appeal was docketed. 3 District Court ECF No. 43 & 44 (The Rushed Judgment Violation): On March 11, 2026, Debtors Purdue Pharma L.P. filed a Letter Response in opposition to Appellant's Emergency Stay. They would not speak on the merits of my claim. On March 13, 2026-a mere 48 hours later-Judge Roman entered an Order denying Appellant's Motion for Stay (ECF No. 44). The District Court entered this final, binding judgment before giving the pro se Appellant an equitable opportunity to file a Reply Brief countering the Debtors' response, structurally suppressing Appellant's right to the final word on her own emergency application. 4 District Court ECF No. 49: On March 31, 2026, Appellant immediately moved for a Motion for Reconsideration of the Order Denying the Stay Pending Appeal, explicitly challenging the court's failure to allow a full, uninhibited adversarial briefing cycle. 5 District Court ECF No. 50 & 52 (Transcript Integration Order): On April 2, 2026, Judge Roman granted Appellant's motion in part for transcripts to be provided by other parties to the case. Pursuant to 28 U.S.C. § 753(f), the court ordered the public production of the lower court transcripts for November 18, 2025, November 20, 2025, and February 12, 2026, formally cementing Appellant's verbal record objections into the mandatory review material of this Court. 6 District Court ECF No. 58: On May 11, 2026, Judge Roman issued a Memorandum Endorsement denying the motion for reconsideration. While the court relied heavily on the restrictive standards of Shrader v. CSX Transp., Inc., Appellant maintains that the underlying stay denial remains structurally compromised by the initial failure to permit a reply brief. III. Consolidation Phase 1 District Court ECF No. 54: On April 16, 2026, Judge Roman issued an Opinion & Order standardizing all overlapping regional appeals under Consolidated Case No. 2025-90681 (NSR). Despite Appellant's exhaustive, documented verbal objections at the confirmation hearings, her preserved record arguments, and her relentless pursuit of a stay, asset distributions have proceeded. This ongoing implementation is structurally crippled not only by a complete lack of a verified financial accounting and pro tanto state offsets, but by a systemic pattern across both lower tribunals of silencing Appellant and cutting off her procedural right to be fully heard.

## SUMMARY OF ARGUMENT

Assignment of Error

**ASSIGNMENT OF ERROR NO. 1**

The Bankruptcy Court committed reversible error by confirming the Plan despite the absence of competent evidence demonstrating that governmental claims reflected actual uncompensated losses rather than amounts previously recovered through settlements, grants, insurance reimbursements, Medicaid funding, abatement funds, or other sources. There is no evidence in the record establishing that such offsets were calculated, verified, or applied before those claims were permitted to vote upon and participate in Plan distributions.

**ASSIGNMENT OF ERROR NO. 2**

The Bankruptcy Court committed reversible error by confirming the Plan despite the absence of evidence demonstrating that dissenting personal injury claimants would receive at least as much under the Plan as they would receive under a Chapter 7 liquidation as required by 11 U.S.C. § 1129(a)(7). There is no evidence in the record establishing a complete and transparent comparison of recoveries available to individual personal injury claimants under Chapter 7 versus the confirmed Plan.

**ASSIGNMENT OF ERROR NO. 3**

The Bankruptcy Court committed reversible error by approving distributions and claim treatment procedures despite the absence of a complete accounting. There is no evidence in the record establishing the total amount of prior governmental recoveries, applicable offsets, trust allocations, reimbursement claims, or the methodology used to determine whether distributions would be equitable among similarly situated claimants.

**ASSIGNMENT OF ERROR NO. 4**

The Bankruptcy Court committed reversible error by confirming a Plan that materially affected Appellant's personal injury rights despite the absence of evidence that Appellant knowingly and voluntarily consented to waive constitutional protections, including Article III adjudication, Seventh Amendment jury trial rights, or the treatment imposed by the confirmed Plan.

**ASSIGNMENT OF ERROR NO. 5**

The Bankruptcy Court committed reversible error by permitting governmental and institutional entities to participate in voting and distributions despite the absence of evidence establishing that their claims represented direct, particularized, and presently uncompensated injuries rather than derivative, duplicative, reimbursed, or previously compensated claims.

**ASSIGNMENT OF ERROR NO. 6**

The Bankruptcy Court committed reversible error by confirming the Plan despite the absence of evidence that individual personal injury claimants were afforded meaningful participation in negotiations affecting their claims. The record contains no evidence demonstrating that Appellant or similarly situated personal injury victims were included in negotiations that materially affected their rights, recoveries, and claim treatment.

**ASSIGNMENT OF ERROR NO. 7**

The Bankruptcy Court committed reversible error by confirming the Plan despite the absence of evidence that claimants voted upon the same material terms ultimately implemented and confirmed. There is no evidence demonstrating that claimants were provided adequate notice and opportunity to evaluate any material modifications affecting their rights before confirmation.

**ASSIGNMENT OF ERROR NO. 8**

The Bankruptcy Court committed reversible error by approving extraordinary professional fees and administrative expenses despite the absence of evidence demonstrating that such fees were reasonable, necessary, and equitable in light of the lack of a verified accounting, unresolved offset issues, and disputes regarding jurisdiction, skewed voting, claim validation(overlapping and duplicative claims) and distributions.

**ASSIGNMENT OF ERROR NO. 9**

The Bankruptcy Court committed reversible error by approving and implementing a Plan containing third-party releases and channeling provisions despite the absence of evidence demonstrating that Appellant knowingly and voluntarily consented to give up the right to a trial by jury and protections of Article III court in regards to Purdue Pharma L.P. et al, or alteration of direct personal injury claims against non-debtor parties.

**ASSIGNMENT OF ERROR NO. 10**

The Bankruptcy Court committed reversible error by confirming the Plan despite the absence of authorization from Congress or the Bankruptcy Code in regards to personal- Injury/ wrongful death claims.

**ASSIGNMENT OF ERROR NO. 11**

The Bankruptcy Court committed reversible error by permitting corporate entities, insurers, reimbursement claimants, and other institutional parties to participate in distributions despite the absence of evidence establishing that such entities suffered direct, uncompensated injuries comparable to those suffered by individual personal injury victims.

**ASSIGNMENT OF ERROR NO. 12**

The Bankruptcy Court committed reversible error by approving distributions to entities seeking reimbursement, contribution, indemnity, insurance-related recovery, or other derivative claims despite the absence of evidence establishing that direct personal injury claimants had first been fully compensated for their underlying injuries and losses.

**ASSIGNMENT OF ERROR NO. 13**

The Bankruptcy Court committed reversible error by permitting claims based upon reimbursement, subrogation, contribution, indemnity, insurance obligations, or other derivative theories without requiring evidence of the actual uncompensated amount remaining after premiums, settlements, recoveries, reimbursements, offsets, and other compensation were taken into account.

**ASSIGNMENT OF ERROR NO. 14**

The Bankruptcy Court committed reversible error by confirming the Plan despite the absence of evidence demonstrating that distributions to governmental entities, insurers, pharmacy chains, healthcare systems, or other institutional claimants would not result in duplicative recovery, unjust enrichment, or the dilution of recoveries otherwise available to uncompensated personal injury victims.

**ASSIGNMENT OF ERROR NO. 15**

The Bankruptcy Court committed reversible error by confirming a Plan that diverted substantial value to governmental, institutional, and corporate claimants despite the absence of evidence demonstrating that direct personal injury victims would receive fair, equitable, and substantially similar treatment in comparison to those entities. Also:

Not taking into account the over $50 billion dollars in other opioid related settlements, tax dollars that paid for all this long ago, insurance reimbursement payments, federal grants, non-profit contributions, etc. I as one of the people have to ask at what point will you finally be satisfied? Only after it is all gone? When will you provide a full accounting? When is this considered a breach of fiduciary duty? I contacted the trust and was told they could not discuss my claim with me. I had to have a lawyer contact them. I explained I am proceeding pro se. They again said I had to have a lawyer call them. It is my claim not a lawyer's. How can I be denied access to claim value yet be told I received due process? How can someone who indirectly benefits from the same case be allowed to effectively adjudicate it? This is the biggest conflict of interests I have ever seen with a trust me bro attitude. The very people whose pain and suffering on which this case is even built on can not even cover funeral expenses/ headstones for loved ones. The question overall is how much does the government think a ruined life/ loss of a loved one is worth? Roughly $8,000.00 (Can not be sure since I still have not been told six years later.) At

no point have I been given a true estimate of claim value. Yet the government knew from the start. Under Kroll website claims and schedules link, I have seen claims by Cities, counties, states, municipalities, towns, common wealths, hospitals, sheriffs, schools, universities, board of educations, public school districts, public health systems, public affairs, public risk funds, trust funds, board of commissioners, physicians, pharmacies, unions, even the Queen and the Sacklers themselves. Mine must be a secret since it is not listed. This is the reason full accounting must be provided. My claim belongs only to me. No one else. Section : Legal Argument 1. The Court's Characterization of the Channeling Injunction Was Deceptive and a Total Deprivation of Constitutional Property Rights During the confirmation hearings, the Appellant, Laurie Danielle: Pitts-Tillman, appearing pro se, sought to protect her fundamental rights regarding her personal injury claims. In response to concerns raised regarding the stripping away of individual rights, the Court and Debtors' counsel repeatedly asserted a legal fiction: that the plan did not include non-consensual third-party releases, however, did not explain that my claim against Purdue would be channeled into a trust, amount capped, and I would have no right to an Article III court with a right to trial by jury despite NOT consenting to releases. . The very thing that Harrington v Purdue Pharma L.P. Found was unlawful. This characterization is fundamentally misleading and constitutes a violation of due process. A "claim" in a court of law is not merely a right to request an administrative payout; it is a vested property right (a chose-in-action) to hale tortfeasors into an independent forum, compel discovery, and seek full, uncapped compensatory and punitive damages.

By forcibly "channeling" Appellant’s claim into a trust, the Court did not "preserve" it-the Court fundamentally mutated and extinguished its essential legal character. To assure a claimant there is no non- consensual releases while stripping my claim of rights to its venue, its unrestricted value, and its constitutional teeth is a violation of the requirement for fair, transparent notice and procedural due process. 2. Forced Channeling of Personal Injury Claims Violates Article III and the Seventh Amendment. The Bankruptcy Court is an Article I administrative court. Under long-standing Supreme Court precedent, including Stern v. Marshall, 564 U.S. 462 (2011), an Article I judge lacks the constitutional authority to enter a final judgment on private, state-law tort claims without the express and voluntary consent of the parties. Appellant never consented to the jurisdiction of a bankruptcy trust to adjudicate the value of her personal injuries. Furthermore, the Seventh Amendment explicitly guarantees the right to a trial by jury in suits at common law. By implementing a mandatory channeling injunction that forces Appellant's claims into an administrative coupon-processing system with predetermined caps and point tiers, the Bankruptcy Court accomplished through corporate reorganization what it could never do through standard civil procedure: it permanently stripped Appellant of her right to an Article III judge and a trial by a jury of her peers. 3. Conclusion Because the Appellant did not voluntarily consent to give up her constitutional rights, and because the Court used fundamentally misleading assurances regarding the preservation of her claims to dismiss her

objections, the Confirmation Order must be reversed as to its application of non-consensual channeling against the Appellant.

The judgment of the lower court cannot stand. First, under the mandates of Haines v. Kerner and Federal Rule of Civil Procedure 8, this Court must interpret Appellant's pleadings with systemic leniency, focusing on the clear objections to injuries asserted rather than technical form. Second, well-established canons of statutory interpretation require that the governing provisions of the Bankruptcy Code and related civil rights statutes be read in their plain, unvarnished English language, completely independent of the administrative jargon utilized by corporate debtors to mask the wholesale stripping of individual tort claims.

Substantively, the lower court's confirmation order is an exercise in structural overreach. Under Article III of the Constitution and the binding precedent of Stern v. Marshall, an Article I bankruptcy tribunal lacks subject-matter jurisdiction to adjudicate, value, or permanently extinguish private common-law personal injury claims. This constitutional defect is exacerbated because multiple sovereign States are direct, adversarial parties in interest to this restructuring, a procedural arrangement that directly triggers the exclusive original jurisdiction of the United States Supreme Court under Article III, Section 2, Clause 2. Furthermore, the lower court committed a fatal statutory error under 11 U.S.C. § 1129(a)(7) by deploying heavily skewed voting blocks to force a Chapter 11 plan that deprives private claimants of the strict distribution guarantees required by a Chapter 7 liquidation. In doing so, the lower court permitted governmental and corporate actors to engage in flagrant "double- dipping" and corporate self-reimbursement, completely ignoring the pro tanto one-satisfaction rule and failing to take required judicial notice under Federal Rule of Evidence 201 of billions of dollars already recovered by these states in parallel public settlements. Finally, the plan's notification mechanisms completely failed the procedural due process standards of Mullane v. Central Hanover, executing an unconstitutional taking of individual property rights under the Fifth Amendment while simultaneously authorizing extraordinary professional fees under 11 U.S.C. § 330 without ever producing a verified financial accounting. This Court must reverse.

## FULLY DEVELOPED LEGAL ARGUMENT

**POINT I: The Mandate of Pro Se Liberal Construction (Fed. R. Civ. P. 8; Haines v. Kerner).**

It is a foundational tenet of federal jurisprudence that the pleadings of a pro se litigant must be held to less stringent standards than formal pleadings drafted by licensed attorneys. Haines v. Kerner, 404 U.S. 519, 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007). Under Federal Rule of Civil Procedure 8(e), "[p]leadings must be construed so as to do justice." For an unrepresented party, this requires the court to interpret the filings liberally to raise the absolute strongest arguments they suggest. Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). This standard is not an administrative courtesy; it is a structural mechanism designed to protect an individual's constitutional access to the courts. In the context of a massive corporate bankruptcy dominated by highly funded institutional adversaries, the pro se liberal construction rule applies with maximum force. Appellant's consistent filings, letters, and objections-including the document "Puttingdebtorscounselonnotice.pdf-clearly articulate core

injuries, systemic notice failures, and explicit challenges to the court's subject-matter jurisdiction. This Court is required by law to look past any technical drafting imperfections, bypass any hyper-technical procedural defaults, and adjudicate the substantive legal and constitutional arguments presented by Appellant.

**POINT II: Plain Language Canons of Statutory Construction (Connecticut Nat. Bank v.**

Germain). The Supreme Court has repeatedly affirmed that the first and most dominant step in statutory interpretation is to examine the plain language of the text. Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253-54 (1992) ("cardinal canon that a legislature says in a statute what it means and means in a statute what it says there"). When the plain meaning of a statute is unambiguous, judicial inquiry must end, and the sole function of the courts is to enforce the law according to its terms. Carcieri v. Salazar, 555 U.S. 379, 387 (2009). Complex corporate restructuring schemes and administrative legal jargon cannot be weaponized to override, muddy, or diminish clear statutory mandates. Appellant invokes the plain language construction rules regarding the absolute right to have debts verified, claims independently validated, and equal protection enforced under 15 U.S.C. § 1692g, 42 U.S.C. § 1981, and 11 U.S.C. § 330. The text of these statutory provisions contains no exception allowing a bankruptcy court to bypass standard verification or to utilize non- consensual "channeling injunctions" to permanently extinguish a private citizen's statutory and tort protections. Because the clear text of the United States Constitution and the Bankruptcy Code does not contain any phrase granting an Article I administrative tribunal the authority to strip away individual common-law property claims without explicit consent, the lower court's broad, textually unsupportable interpretation of its own confirmation powers constitutes a direct violation of law. (Issue 2&9)

**POINT III: Article I Bankruptcy Court Structural Defects and Core Adjudicatory**

Jurisdictional Limitations (U.S. Const. art. III, § 1; Stern v. Marshall; 28 U.S.C. § 157). The judicial power of the United States is strictly vested by the Constitution exclusively in courts established under Article III. U.S. Const. art. III, § 1. While Congress has the statutory power to create specialized Article I tribunals to oversee administrative routines under the bankruptcy power, it cannot constitutionally withdraw from Article III judicial cognizance matters that are, by their historical nature, the subject of a suit at common law. Stern v. Marshall, 564 U.S. 462, 484 (2011). Under 28 U.S.C. § 157(b)(5), Congress explicitly mandated that "personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose." The lower court's confirmation order represents a complete collapse of this constitutional and statutory boundary. A private common-law personal injury claim is a quintessential private right

belonging to an individual, carrying an absolute right to a jury trial under the Seventh Amendment. Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 56 (1989). The bankruptcy court exceeded its subject-matter jurisdiction by forcing Appellant's individual common-law claims into a mandatory administrative trust structure that liquidates and permanently extinguishes those claims without Article III oversight

or a jury trial. Subject-matter jurisdiction is an inflexible, non-waivable requirement. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause"). Because the Article I tribunal lacked the structural constitutional power to enter final orders permanently releasing and extinguishing these independent, non-debtor third-party claims, its confirmation order is void ab initio. This non-consensual third-party release structure directly violates the limits subsequently affirmed by the Supreme Court in Harrington v. Purdue Pharma L.P. 603 U.S. 204 (2024).(Issue 1,4,10)

**POINT IV: Encroachment Upon the United States Supreme Court's Exclusive Original**

Jurisdiction Over State-Party Controversies (U.S. Const. art. III, § 2, cl. 2). The allocation of judicial authority over sovereign states is fixed immutably within the constitutional text. Under Article III, Section 2, Clause 2 of the United States Constitution, the jurisdictional boundaries for litigation involving a state are explicitly delineated: “In all Cases affecting Ambassadors, other public Ministers and Consuls, and those in which a State shall be Party, the supreme Court shall have original Jurisdiction.” It is a basic constitutional rule that Congress cannot expand, contract, or reallocate the original jurisdiction of the United States Supreme Court to an inferior court or an administrative tribunal. Marbury v. Madison, 5 U.S. 137, 174 (1803). In this restructuring proceeding, multiple sovereign States are not merely ancillary or passive participants; they are primary, aggressive party-litigants actively controlling the allocation, voting pools, and distribution mechanisms of the bankruptcy estate. Because these various States have entered the arena as central adversarial parties in interest whose distinct claims are being compromised, released, and structurally prioritized, the entire proceeding falls within the plain language of a case "in which a State shall be Party." By assuming final adjudicatory control over a plan that fundamentally rewrites, dictates, and bars claims directly involving sovereign States, an inferior, non-Article III Article I bankruptcy court impermissibly encroaches upon a jurisdictional sphere constitutionally reserved exclusively for the Supreme Court. The lower court was utterly without jurisdiction to enter a final order binding these state-party interests at the expense of individual citizens.

**POINT V: Reversible Error in Approving a Chapter 11 Plan Dependent on Artificially**

Skewed Voting Blocks to Bypass Mandatory Chapter 7 Liquidation Protections (11 U.S.C. § 1129(a)(7)).

Under the statutory design of the Bankruptcy Code, a Chapter 11 reorganization plan cannot be crammed down or confirmed over individual dissent unless it meets the absolute protections of the "best interests of creditors" test. Pursuant to 11 U.S.C. § 1129(a)(7)(A)(ii), the plan requires that each dissenting holder of a claim receive or retain under the plan property of a value that is not less than the amount that

such holder would receive or retain if the debtor were liquidated under Chapter 7 of the Code on the effective date. The lower court violated this statutory command by confirming a plan dependent on heavily manipulated, skewed voting blocks. By artificially grouping uncompensated individual personal injury tort victims into massive, omnibus classes alongside institutional, corporate, and governmental entities, the plan proponents manufactured a deceptive, aggregate "consent" that completely diluted the franchise of individual private claimants. This engineered voting block allowed the debtor and its corporate insiders to completely bypass the strict mandatory distribution guarantees and absolute priority rule of a Chapter 7 liquidation. Had this case been properly evaluated or converted under Chapter 7, all corporate operations would have ceased, ongoing corporate self-reimbursements would have been statutorily barred, and a neutral, independent trustee would have been legally mandated to execute a completely transparent distribution of hard assets. By utilizing a skewed voting scheme to force individual personal injury claimants into an unequal administrative trust, the lower court committed a fatal statutory and reversible error under § 1129(a)(7). (Issue 3,12,13)

**POINT VI: Abuse of Discretion and Legal Error Under the Pro Tanto One-Satisfaction**

Rule and Judicial Notice of Overlapping Public Mass Tort Recoveries (Fed. R. Evid. 201). It is a bedrock rule of federal common law, equity, and tort jurisprudence that a claimant is entitled to only a single satisfaction for a single injury. Under the One-Satisfaction Rule and the doctrine of Pro Tanto Offset, when a plaintiff receives a financial recovery or settlement from one joint tortfeasor or public fund, any non-settling defendant or parallel estate is entitled to an immediate credit and dollar-for-dollar reduction of that settlement amount to prevent a double recovery windfall. Singer v. Olympia Brewing Co., 878 F.2d 596, 600 (2d Cir. 1989); Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 348 (1971). Furthermore, under Federal Rule of Evidence 201(c)(2) and 201(d), a court must take judicial notice of adjudicative facts if requested by a party and supplied with the necessary information, including public records, state consent decrees, and formal settlement structures filed in parallel jurisdictions. See SEC v. Research Automation Corp., 585 F.2d 31, 34 n.4 (2d Cir. 1978). In Tronox Inc. v. Kerr-McGee Corp. (In re Tronox Inc.), 855 F.3d 84, 100, 103-06 (2d Cir. 2017), the Second Circuit recognized the distinction between estate-wide derivative claims and direct, particularized creditor injuries. Tronox supports Appellant’s position that direct personal injury claims are not merely estate property to be diluted by institutional voting power, and that

bankruptcy cannot be used to let some creditors leap ahead of others without a lawful accounting and equitable distribution framework. As formally identified in Appellant’s Statement of Issues, the lower court committed a profound abuse of discretion by confirming a plan that actively facilitates and permits systemic "double- dipping" and unjust enrichment by government entities, institutional

actors, and Medicaid. These exact governmental entities have already recovered billions of dollars through independent, nationwide public opioid settlements and state-level regulatory consent decrees for the exact same societal abatement costs and harms they are claiming as creditors here. The lower court completely ignored the pro tanto one-satisfaction rule by allowing these government-related entities to vote and participate in plan confirmation without subtracting or offsetting these massive prior cash payments, handing them an unconstitutional, highly coercive, and undue influence over the entire distribution process. Worse yet, the plan permits the very same corporations and institutional actors that were previously sued to dip into this limited bankruptcy estate to reimburse themselves. Bankruptcy courts are inherently courts of equity. Pepper v. Litton, 308 U.S. 295, 304 (1939). Equity explicitly commands that those who have already been made whole cannot step in front of uncompensated, physically injured human beings. Diverting money from a limited pool to fund corporate self-reimbursement and double-paying sovereign states while strictly capping, diminishing, and excluding individual private human victims operates as a systemic fraud upon the court. (Issue 5,6,11) Congress did not grant the Bankruptcy Court authority to finally adjudicate, extinguish, channel, value, or permanently alter Appellant's private personal injury claims; Congress expressly provided the opposite by stating that "personal injury tort and wrongful death claims shall be tried in the district court." 28 U.S.C. § 157(b)(5). The Government derives its authority from the people, not the other way around, and "We the People" did not create the government so that public entities could stand ahead of directly injured victims in a limited compensation fund while those victims remain unpaid. Appellant and other personal injury victims suffered the actual underlying injuries and extreme financial losses, including jobs, medical expenses, treatment costs, lost income, vehicles, homes, payments to lawyers due to loss of custodial rights, probation and or parole fees, bail bonds, funeral expenses, pain of detox, suffering , and years of diminished life (loss of memory) , and economic harm. Governmental entities, by contrast, have already been funded through taxes and, in many instances, through prior opioid settlements (58 billion dollars and counting), grants, Medicaid funding, insurance reimbursements, abatement funds, or other public revenue sources. The Supreme Court has held that governmental reimbursement rights are limited and that "[t]he anti-lien provision protects the remainder of the settlement." Ahlborn, 547 U.S. at 284. Federal law also preempts governmental recovery schemes that expand recovery beyond lawful limits. Wos, 568 U.S. at 636. The Second Circuit

recognizes that "[t]he critical inquiry is whether the claim alleged a particularized injury." Tronox, 855 F.3d at 103. Appellant's injury is direct, personal, and particularized; governmental reimbursement, abatement, or derivative claims are not the same injury and should not be allowed to consume funds owed to victims. Likewise, mass-tort trust treatment must provide reasonable assurance that similar claims will be valued and paid in substantially the same manner. Dow Corning, 280 F.3d at 658. Equity requires the Bankruptcy Court to ensure that "injustice or unfairness is not done in administration of the bankrupt

estate.” Pepper, 308 U.S. at 308. The Fifth Amendment also bars government from “forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.” Armstrong, 364 U.S. at 49. Accordingly, direct personal injury victims must be made whole before governmental, reimbursement, derivative, duplicative, or institutional claimants are permitted to recover from the same limited fund, and any such claimant must first prove actual uncompensated loss and account for all prior settlements, tax-funded reimbursements, grants, insurance proceeds, Medicaid recoveries, offsets, and other compensation before diminishing victim recoveries.

**POINT VII: Structural Due Process Deficiencies and Fifth Amendment Takings Violations**

(Mullane v. Central Hanover; Armstrong v. United States). The Bankruptcy Court committed an independent constitutional error when the judge invited us to participate in court the day he ruled on our stay motions, yet denied us the opportunity to speak after denying everyone's motion for a stay. The District Court committed an independent procedural error by "racing to judgment" on my emergency stay motion (ECF No. 44) without allowing sufficient time to respond to the Debtors' opposition papers. The procedural safeguards of the United States Constitution strictly prohibit the administrative extinguishment of private property rights without proper notice and a meaningful opportunity to be heard. U.S. Const. amend. V. Procedural due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Due process is an inflexible constitutional bar, not an administrative inconvenience to be balanced away for corporate or judicial expediency. Mathews v. Eldridge, 424 U.S. 319, 333 (1976). The mass publication and digital notice mechanisms deployed by the debtor below completely failed to meet this constitutional standard. The generic notification forms failed to explicitly,

clearly, and transparently apprise individual personal injury claimants of the extraordinary legal and constitutional trade-offs hidden within the plan-specifically, the permanent non-consensual forfeiture of their Article III court access, the complete destruction of their Seventh Amendment jury trial rights, the imposition of severe arbitrary valuation caps, and the total lack of an independent financial audit. Furthermore, by channeling individual private claims into a subordinate trust while allowing public and governmental claims to absorb the vast majority of the estate's resources to fund general state abatement programs, the plan executes an unconstitutional taking under the Fifth Amendment. “The government cannot force private individual tort victims alone to bear public societal remediation burdens which, in all fairness and justice, should be borne by the public as a whole.” Armstrong v. United States, 364 U.S. 40, 49 (1960). (Issue 3,12,13) Additional Due Process, Notice, and Participation Deficiencies Appellant previously informed the Bankruptcy Court of the existence of attorney-client

communications relevant to the issues raised herein. Although Appellant did not publicly disclose those communications due to concerns regarding attorney-client confidentiality, Appellant expressly placed the Court on notice of their existence and remained willing to provide them if requested by the Court through appropriate procedures. No such request was made. Importantly, those communications demonstrate that Appellant was not involved in negotiations affecting Appellant's own personal injury claim and constitutional rights. Rather, Appellant was informed that other parties had negotiated the terms governing claim treatment and distributions. Appellant was therefore excluded from meaningful participation in decisions directly affecting Appellant's property interests, recovery rights, and litigation options. The inability of direct personal injury victims to participate in negotiations materially affecting their claims, while governmental entities, committees, and other stakeholders negotiated those terms, raises substantial concerns regarding fundamental fairness, meaningful participation, and whether Appellant was afforded an adequate opportunity to protect and advocate for her own interests throughout the proceedings. Appellant timely alerted the Bankruptcy Court to the existence of this evidence and should not be penalized for attempting to preserve the confidentiality of privileged communications while simultaneously seeking to ensure that the existence of such evidence was reflected in the record.

**POINT VIII: Equitable Invalidation of Extraordinary Professional Compensation Absent a**

Verified Accounting and Claim Validation Framework (11 U.S.C. § 330).

The statutory framework governing bankruptcy administration imposes an unyielding, independent fiduciary duty upon the judiciary to police the bankruptcy estate and strictly audit professional fees. Under 11 U.S.C. § 330(a)(1), a court may award professional compensation only if it constitutes "reasonable compensation for actual, necessary Services" and "actual, necessary expenses." This independent duty to examine fee applications exists to protect the estate from dilution and must be exercised by the court regardless of whether a formal objection is lodged by an active party. In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 841 (3d Cir. 1994). The lower court fundamentally violated these equitable and statutory principles. It is a maxim of equity that "he who seeks equity must do equity" and must come to the court with "clean hands." Manufacturer's Finance Co. v. McKey, 294 U.S. 442, 449 (1935). The lower court committed an extreme equitable error by authorizing the distribution of hundreds of millions of dollars in extraordinary professional fees to lawyers, trustees, and advisors while simultaneously permitting the estate to completely refuse to provide an open, transparent financial accounting or verify the core validity of individual claims. Equity is utterly subverted when professional actors derive massive, unprecedented financial windfalls from an administrative plan that is structurally crippled by unresolved conflicts of interest, discriminatory treatment, and active violations of the separation of powers. No professional compensation can be deemed "necessary" or "reasonable" under § 330 when it is

paid to implement a plan that structurally bars private individual claimants from meaningful participation and input. (Issue 2,7,8,9)

Reservation of Rights Regarding Record Integrity, Leave to Supplement, and Request for Oral Argument Appellant respectfully reserves all rights and expressly objects to any alteration, omission, modification, or exclusion of any portion of the record, filings, exhibits, attachments, transcripts, or other documents submitted in connection with this appeal. Appellant states that concerns regarding the integrity and completeness of electronically maintained records are not speculative, as Appellant has previously encountered instances in which documents appeared incomplete, altered, omitted, or otherwise inconsistent with materials originally presented.. Accordingly, Appellant does not waive any objection concerning the accuracy or completeness of the appellate record and reserves the right to challenge any discrepancy discovered during the pendency of this matter.

Given these concerns, Appellant respectfully requests that the Court ensure the preservation of the complete and unaltered record and further requests certified copies of all filings, submissions, orders, docket entries, transcripts, and materials relied upon by the Court in adjudicating this appeal, so that Appellant may verify the accuracy and completeness of the record. Appellant further notes concern regarding the procedural handling of filings prior to judicial consideration and respectfully requests that no adverse inference be drawn from any omission, alteration, or discrepancy not attributable to Appellant. Should Appellant identify any portion of the record that has been omitted, modified, removed, or inaccurately reflected, Appellant requests leave of Court to supplement the record and/or submit additional briefing addressing such matters. Appellant expressly reserves the right to file supplemental briefing concerning any newly discovered evidence, omissions from the record, jurisdictional defects, due process concerns, or other matters necessary to ensure a complete and fair adjudication of this appeal. Additionally, Appellant respectfully requests that, following the completion of briefing and prior to disposition of this appeal, the Court schedule oral argument pursuant to the applicable rules. Oral argument would materially assist the Court in resolving the substantial constitutional, jurisdictional, procedural, and factual issues presented, including matters affecting the integrity of the appellate record and Appellant's due process rights. Nothing contained herein shall be construed as a waiver of any right, remedy, objection, claim, defense, jurisdictional challenge, or issue preserved for appellate review. Appellant expressly reserves the right to amend, supplement, or otherwise modify arguments as justice requires and as permitted by the Federal Rules of Appellate Procedure, the Federal Rules of Bankruptcy Procedure, and any applicable orders of this Court.

Reservation of Rights Concerning Mail Delays and Irregularities Affecting Due Process Appellant further notes significant concerns regarding irregularities and substantial delays in the receipt of mail relevant to this proceeding, which have adversely impacted Appellant's ability to timely review, respond to, and address matters affecting this appeal. By way of example, Appellant recently received

correspondence that was postmarked and mailed on or about April 20, yet was not delivered until approximately six weeks later. Additionally, Appellant has experienced delays in receiving other correspondence related to these proceedings, including materials associated with Ms. Walker, as well as additional letters and notices that arrived substantially later than reasonably expected. Also I have had two different U.S.Trustee offices addressed I found through proceedings both came back as unable to forward/ undeliverable.

These recurring delays raise concerns regarding the reliability and timeliness of mail delivery involving matters pertinent to this litigation. Appellant cannot determine whether such delays are attributable to ordinary postal issues or other factors outside Appellant's control. Nevertheless, the effect of these delays has been to impair Appellant's ability to adequately protect and exercise legal rights, monitor deadlines, and ensure full participation in these proceedings.

Accordingly, Appellant respectfully requests that the Court take judicial notice of Appellant's documented concerns regarding delayed receipt of mail/ altered documents online etc. and consider these circumstances when evaluating issues relating to timeliness, notice, supplementation of the record, requests for extensions when necessary, and the preservation of Appellant's due process rights. Appellant further requests that, to the extent practicable, the Court permit electronic Service, provide certified copies upon request, and allow Appellant an opportunity to address any prejudice resulting from delayed receipt of correspondence. Appellant expressly reserves all rights to supplement the record with additional evidence of delayed or misdirected mail should such evidence become available during the pendency of this appeal. Nothing herein shall be construed as a waiver of any right, objection, or remedy available to Appellant under applicable law.

## CONCLUSION AND RELIEF SOUGHT

For the reasons stated above, Appellant respectfully requests that this Court: 1 Enforce the mandatory standards of liberal construction to Appellant's filings under Haines v. Kerner and Fed. R. Civ. P. 8, interpreting them to raise the strongest possible constitutional arguments; 2 Enforce a plain language interpretation of the governing constitutional text and statutory protections under Connecticut Nat. Bank v. Germain, completely rejecting ambiguous administrative terminology used to mask the extinguishment of private rights; 3 Rule that the lower court completely lacked constitutional subject-matter jurisdiction under Article III and Stern v. Marshall to enter final orders permanently releasing and extinguishing private common-law personal injury claims via non-consensual third-party releases;

4 Rule that the lower court lacked the constitutional authority to override the United States Supreme Court's exclusive original jurisdiction over state-party controversies under Article III, Section 2, Clause 2; 5 REVERSE and VACATE the lower court's plan confirmation and implementation orders as applied to private common-law personal injury claims; and 6 REMAND this matter to the lower court

with a strict mandate to immediate stay all asset distributions and enter an order converting this case to a Chapter 7 liquidation, or in the alternative, staying all actions until a full, transparent, and verified financial accounting of all overlapping governmental recoveries, pro tanto offsets, corporate self-reimbursements, and trust allocations is delivered to this Court. Please take notice I am not acting as a Trustee or Surety for any related Trust accounts, decedent estates, or any of the like. I am the grantor and beneficiary of my estate. I request agai; for full accounting. Breach of fiduciary duty if refused. See attached fee schedule default notice.

Appellant Laurie Danielle: Pitts-Tillman, proceeding pro se and sui juris, explicitly reserves all rights to amend, modify, clarify, or supplement this Opening Brief, the underlying record designations, and the issues presented for review. This reservation is strictly necessitated by the ongoing, fluid nature of the consolidated appellate proceedings, the lack of a verified financial accounting from the Debtors-Appellees, and the persistent procedural failures of the lower tribunals. Because the Bankruptcy Court and District Court rushed to judgment and summarily restricted Appellant's ability to fully argue her positions, obtain complete transcripts at government expense, or file crucial reply briefs in a standard adversarial timeline, the record before this Court remains structurally incomplete due to no fault of the Appellant. Accordingly, Appellant reserves the right to seek formal leave of this Court pursuant to the Federal Rules of Appellate Procedure to submit supplemental briefing, authorities, or evidentiary record contents as they become accessible or as the interests of fundamental due process and substantial justice require.

Respectfully presented,

Dated: June 5, 2026

/s/ Laurie Danielle: Pitts-Tillman

All rights reserved

Laurie Danielle :Pitts-Tillman

Pro Se / Sui Juris

c/o 5116 Georgia Highway 99

Brunswick, Georgia [31525]

## SPECIAL APPENDIX

### SECTION I: INDEX OF RELEVANT LOWER COURT DOCKET ENTRIES

Pursuant to Federal Rule of Appellate Procedure 30(a)(1)(A), Appellant provides the following chronological list of the essential docket entries from the lower tribunals relevant to the issues raised in this appeal:

**A. United States Bankruptcy Court for the Southern District of New York (Case No. 19-**

23649) Docket No. 8186 (Filed 11/05/2025): Appellant's Motion for Leave to File Out of Time and Vacate Plan Confirmation. Hearing Transcripts (11/13/2025, 11/18/2025 & 11/20/2025): Official transcripts of the Confirmation Hearings preserving Appellant's oral arguments and getting cut off being told my claim would not be affected.(11/13/2025) Docket No. 8263 & 8270 (Entered 11/20/2025): Modified Bench Ruling Granting Confirmation of the Eighteenth Amended Joint Chapter 11 Plan of Reorganization and Order Setting Deadlines (The Confirmation Order). Hearing Transcript 02/04/2026(Post-Confirmation Stay Hearing): Official transcript preserving the Bankruptcy Court's summary denial of verbal argument to Appellant. Docket No. 8339 & 8344 (Filed 12/03/2025): Appellant's Notice of Appeal, Designation of Contents, and Statement of Issues. Docket. 8429 (Filed 12/18/2025): Appellant's Supplemental Designation of Contents.

**B. United States District Court for the Southern District of New York case no. 2025-10433**

(Consolidated Case No. 2025-90681) ECF No. 1 & 15 (Filed 12/16/2025 & 12/23/2025): Docketing of Appeal and Filing of Designation of Bankruptcy Record on Appeal. ECF No. (Filed 02/24/2026): Appellant's Emergency Motion for Stay Pending Appeal.

ECF No. 43 (Filed 03/11/2026): Debtors Purdue Pharma L.P.'s Letter Response in Opposition to Appellant's Emergency Stay. ECF No. 44 (Entered 03/13/2026): Order Denying Appellant's Motion for Stay (The Rushed Judgment Violation entered within 48 hours prior to a Reply Brief). ECF No. 49 (Filed 03/31/2026): Appellant's Motion for Reconsideration of the Order Denying the Stay Pending Appeal. ECF No. 50 & 52 (Entered 04/02/2026): Order Granting Transcripts at Government Expense under 28 U.S.C. § 753(f). ECF No. 54 (Entered 04/16/2026): Opinion & Order standardizing regional appeals under Consolidated Case No. 2025-90681 (NSR). ECF No. 58 (Entered 05/11/2026): Memorandum Endorsement Denying Motion for Reconsideration. Appellant respectfully reserves the right to supplement this Brief should additional matters become necessary for a complete and fair adjudication of the issues presented. Appellant is proceeding without counsel pro se/ Sui juris, and has made every effort to preserve and present the relevant issues, objections, and evidence available. Appellant further reserves the right to supplement the record or seek leave to present additional authorities, exhibits, attorney communications, or other evidence should the Court determine such materials are relevant to the constitutional, jurisdictional, due process, notice, voting, or fairness concerns raised herein. Nothing contained in this Brief shall be construed as a waiver of any right, remedy, objection, constitutional protection, jurisdictional challenge, or issue preserved for review. Appellant appears specially and continues to maintain that I am not acting as trustee, surety, or representative for any entity or estate, but solely on my own behalf as the injured claimant whose rights are directly affected by the

matters presented in this appeal.

I reserve the right to supplement this if needed. I am not a seasoned lawyer. I, as one of the people, invoke common law. Any presumed power of attorney is revoked nunc pro tunc ab initio.My fee schedule will also be enclosed for violations of my rights and/or trespass on my estate.

Signature/ autograph

/s/ Laurie Danielle: Pitts-Tillman

All rights reserved ucc 1-308

## MOTION TO PROCEED ON THE ORIGINAL RECORD

Pursuant to FRAP 30(a)(2) and due to Appellant's indigent status, Appellant respectfully requests that this Court dispense with the requirement to provide physical copies of the underlying orders. Appellant does not have financial access to PACER to download these documents. Because all referenced orders, transcripts, and dockets are already a matter of record in the underlying District Court Case (No. 2025-90681) (No.2025-10433) and Bankruptcy Court Case (No. 19-23649), Appellant respectfully requests this Court review the issues based on the original electronic record maintained by the lower tribunals

## CERTIFICATE OF COMPLIANCE

I certify that this brief was prepared in Times New Roman 12-point font and, according to word- processing software, contains approximately 9,803 words, including table of contents, table of authorities, caption, certificates, signature block, and special appendix.

I further certify that the brief is being submitted by a pro se sui juris Appellant and that Appellant respectfully requests liberal construction of any technical formatting defects.

/s/ Laurie Danielle: Pitts-Tillman

Laurie Danielle: Pitts-Tillman

All rights reserved UCC 1-308

Pro Se / Sui Juris Appellant

c/o 5116 Georgia Highway 99

Brunswick, Georgia [31525]

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that on June 7, 2026, I served a true and correct copy of the foregoing Appellant's Opening Brief, Special Appendix, and Motion to Proceed on the Original Record upon counsel for Debtors-Appellees by United States Mail and/or by email Service as permitted or directed by the Court.

Purdue Pharma L.P., et al.

c/o Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017

Prepared and signed/autographed this 7th day of June, 2026.

Respectfully presented,

/s/ Laurie Danielle: Pitts-Tillman

Laurie Danielle: Pitts-Tillman
All rights reserved
Pro Se / Sui Juris Appellant
c/o 5116 Georgia Highway 99
Brunswick, Georgia [31525]