# Exhibit B

**"Response to Debtor Brief" filed by Rosemary Walker**

SDNY US DISTRICT COURT
300 QUARROPAS STREET
WHITE PLAINS, NEW YORK 10601-4150

RE: ROSEMARY HELEN ZIZIROS WALKER VS PURDUE PHARMA

DISTRICT COURT CASE #25CV9681

RESPONSE TO DEBTOR BRIEF

MS WALKER IS A QUALIFIED DISABLED PAUPER WOMAN. IF WE CAN'T AFFORD THE BILLS TO ENFORCE OUR RIGHTS THE BILL OF RIGHTS IS A FRAUD.
WHAT AMENDMENT I, AMERICANS WITH DISABILITIES RIGHTS, VOTING RIGHTS, DUE PROCESS EQUAL PROTECTION ALL HAVE BEEN VIOLATED OR SIMPLY NON EXISTENT. HOW DOES A DISABLED PRO SE PAUPER HAVE DUE PROCESS WHEN MS WALKER CAN NOT EVEN ACCESS DOCUMENTS ONLINE IN HER OWN PETITION.
THE COURT TELLS US WRONG INFORMATION SO MS WALKER SIMPLY CAN NOT TRUST ANYTHING ANYONE SAYS OR TYPES. THIS ISNOT DUE NOR ANY PROCESS NOR EQUAL PROTECTION WHEN LAWYERS HAVE ACCESS ALAS MS WALKER DOESNOT.

## JURISDICTIONAL STATEMENT

MS WALKER IN FACT ON 11.17.25 FILED HER APPEAL AND STAY REQUEST PRIOR TO CONFIRMATION BECAUSE THIS PLAN NEVER SHOULD HAVE BEEN CONFIRMED DUE TO THE MANY ISSUES BROUGHT UP DURING 11.12, 13, & 14, 2025. DOC 8248 & THE INTERNET READ I HAD TO FILE BOTH AN APPEAL & STAY ALAS NO STAY WAS ORDERED AS MS WALKER WAS SILENCED AND TOLD AN APPEAL HAD TO COME AFTER AN ORDER AS MS WALKER UNDERSTANDS A STAY DOES NOT AND HAD A STAY BEEN ISSUED UNTIL ALL ISSUES FROM DURING THE CONFIRMATION WERE RESOLVED & BEEN FAIR EQUAL CONSISTENT & JUST THERE WOULD BE NO REASON TO APPEAL

RIGHT.


restructuring.ra.kroll.com/purduepharma/Home-DocketInfo

PRIME CLERK IS NOW KROLL RESTRUCTURING ADMINISTRATION. ALL PRIME CLERK URLS AND EMAIL ADDRESSES ARE AUTOMATICALLY REDIRECTED.

KROLL

Purdue Pharma L.P.

| | | |
|---|---|---|
| | Related: 8233 | |
| 8249 | Notice of Proposed Order/ Notice of Filing of Revised Proposed Order Regarding Application of the Ad Hoc Group of Individual Victims Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) for Allowance and Payment of Professional Fees and Expenses Incurred by White & Case LLP in Making a Substantial Contribution to These Cases<br>Attachments:<br>Related: | 11/17/2025 |
| 8248 | Notice of Appeal filed by Rosemary Helen Ziros Walker. Filing fee collected, receipt #FEENOTPAID.<br>Attachments:<br>Related: | 11/17/2025 |
| 8247 | Statement / Notice of Filing of Certain Exhibit Lists Provided to Court During Confirmation Hearing filed by Marc Joseph Tobak on behalf of Purdue Pharma L.P.<br>Attachments:<br>Related: | 11/17/2025 |
| 8246 | Notice of Appearance filed by Conor Mercadante on behalf of Gulf Underwriters Insurance Company, St. Paul Fire and Marine Insurance Company, The Travelers Indemnity Company.<br>Attachments:<br>Related: | 11/17/2025 |
| | Transcript regarding Hearing Held on 11/12/2025 At 10:06 AM RE: Confirmation Hearing.; Etc. Remote electronic access to the transcript is restricted until 2/17/2026. The transcript may be viewed at the Bankruptcy Court Clerks Office. (Transcription Service Agency: Veritext Legal Solutions.). (See the Courts Website for contact information for the Transcription Service Agency.) (RE: | |

Jul 26 6:48

11.20.25 DOC 8269 SHOWS MS WALKERS APPEAL WAS IN FACT UPLOADED TO THE BANKRUPTCY COURT & TIMELY OF THE NOTE **MODIFIED BENCH RULIING.


restructuring.ra.kroll.com/purduepharma/Home-DocketInfo

PRIME CLERK IS NOW KROLL RESTRUCTURING ADMINISTRATION. ALL PRIME CLERK URLS AND EMAIL ADDRESSES ARE AUTOMATICALLY REDIRECTED.

KROLL

Purdue Pharma L.P.

| | | |
|---|---|---|
| | Global.<br>Attachments:<br>Related: 8167, 8165, 8166 | |
| 8270 | MODIFIED BENCH RULING Signed On 11/20/2025, Granting Confirmation Of The Eighteenth Amended Joint Chapter 11 Plan Of Reorganization Of Purdue Pharma L.P. And Its Affiliated Debtors<br>Attachments:<br>Related: | 11/20/2025 |
| 8269 | Civil Cover Sheet from U.S. District Court, Case Number: 25-cv-9681 Judge Kenneth M. Karas (related document(s)8248) (No Underlying Document)<br>Attachments:<br>Related: 8248 | 11/20/2025 |
| 8268 | Letter Re: e-mail sent to Mrs. Walker; message filed, but blocked for public view Filed by Rosemary Walker.<br>Attachments:<br>Related: | 11/20/2025 |
| 8267 | Order Signed On 11/20/2025, Granting Motion To Withdraw Brian T. Edmunds And Sarah A. Zadrozny As Attorneys Of Record Pursuant To Local Bankruptcy Rule 2090-1(e) (Related Doc # 8101)<br>Attachments:<br>Related: 8101 | 11/20/2025 |
| | Order Signed On 11/20/2025, Granting Application Of The Ad Hoc Group Of Individual Victims Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) And 1129(a)(4) For Allowance And Payment Of Professional Fees And Expenses Incurred By White & Case LLP | |

Jul 26 6:53

HOW ON EARTH WAS THIS FAIR MS WALKER LITERALLY WAS SILENCED WHEN THE COURT WAS CLEARLY WHO WASNOT LISTENING TO MS WALKERS VERY CLEAR WORDS AS TO NOT THE APPEAL ISSUES BUT THE STAY TO HOLD THE COURT CASE RIGHT WHERE IT WAS SO IT COULD NOT MOVE FORWARD UNTIL ISSUES WERE RESOLVED & PER THE RECORDS PRIOR TO EFFECTIVE THAT NEVER HAPPENED BECAUSE THE DEBTORS AND COURTS WERE WHO DID NOT KEEP THEIR ON RECORD WORDS.



Purdue - Transcript of November 14, 2025 Hearing 4896-352...

MS. WALKER: I appreciate that.

THE COURT: And I appreciate Mr. Vonnegut's clarification. There's a deadline to make this decision. You've already done it because you filled out a ballot. But there is -- in your situation, the timeliness of your claim is going to be addressed before what is being referred to as emergence or the effective date. And that means if it is for some reason disallowed, you will not have given any

Veritext Legal Solutions
212-267-6868 www.veritext.com 516-608-2400

THE QUESTION IS WHAT ABOUT WHEN THE COURT AND DEBTORS DID NOT KEEP THEIR WORDS TO HEAR MS WALKERS LATE CLAIM ISSUES PRIOR TO EFFECTIVE PER THE RECORDS AND DEBTORS HERE STATE WHAT HAPPENS IF A CLAIM IS DISALLOWED PRIOR TO EMERGENCE NOT A WORD IN THE FRBP BUT AFTER EFFECTIVE AGAIN BECAUSE ELI VONNEGUT AND THE COURT DID NOT KEEP THEIR WORDS TO MS WALKER.



Page 58

THE COURT: Yes.

MR. VONNEGUT: And I see no reason that we can't address and resolve all of those prior to emergence.

THE COURT: All right. Thank you. And I can't -- I don't -- I can't think of any other category. Right? I think those are the categories that we've been talking about. We've been talking about timeliness consistently and then the other one, substantiation. So I think we're talked

AGAIN MS WALKERS & THE OTHER LATE CLAIMS WELL THESE CLAIMANTS WERE HEARD FOR THE FIRST TIME ON MY BIRTHDAY 9.17.25 THE SECOND TIME THE COURT INFRINGED ON MS WALKER AMENDMENT I WHY MS WALKER READ AMENDMENT I DURING MS WALKERS *TIME TO SPEAK ALAS WAS INTERRUPTED.

LOOK MS WALKER WAS EMAILING BOTH MARION COUNTY & THE SDNY BANKRUPTCY COURT WHEN DAVID POLK 'JOINED' MS WALKERS *23CV33935 * THAT NEITHER MY CLAIM CASE PETITION NUMBER WAS EVER CORRECTED EVEN AFTER CHRISTINE AZZARO REQUESTED ON MY BEHALF IT WAS TO BE CORRECTED FOR THE RECORD.

MS WALKER LATER NOTICED MS WALKERS CASE CAPTION WAS ALSO WRONG MS WALKER FILED HER CLAIMS AGAINST BOTH THE SACKLER & PURDUE PHARMA AS SOON AS I HEARD ABOUT THE CASE AFTER COVID SALEM OR FIRES THEN SALEM HAD ICENADO THAT TREE BRANCH CRASHED THROUGH MY ROOF DISPLACING ME THEN SOMEONE SET THE HOTEL I FLED TO WITH MY PUSSYCAT ON FIRE ALL DURING THE FIRST MOOT BAR DATE THAT IS BEYOND PIONEED EXCUSABLE NEGLIGENCE.....

ON TOP OF MS WALKER HAD BEEN ISSUED A TIER FROM EDGAR AND THE PURDUE PI TRUST TRANSMITTED FROM KROLL WELL BEFORE 30 DAYS PRIOR TO

EFFECTIVE....THE NOT I ARGUE DEFICIENCY WAS NEVER HEARD PRIOR TO EMERGENCE EFFECTIVE.

THIS HAS ALL BEEN SUPER CONFUSING IN AS THE COURT AND LAWYERS HAVE STATED AD NAUSEUM THE MOST COMPLEX BANKRUPTCY IN US HER STORY.

DEBTORS AND COMMITTEE EVEN WRITE MS WALKER WAS CONFUSED THIS IS IN FACT A TRUE STATEMENT QUASI MS WAKERS NEUROLOGICAL ISSUES DO NOT MESS WITH MS WALKER ENOUGH POSSIBLY CAUSED BY PURDUE PHARMA BRAND OPIOIDS PRESCRIBED TO MS WALKER AFTER HER MALFUNCTIONING ELEVATOR ACCIDENT WHILE GOING TO HER JOB PAIN ISSUES ASIDE.

'6. The Debtors and the Creditors' Committee note that, in addition to believing
that her 2023 lawsuit constituted a filing of a valid and timely proof of claim against the Debtors,
Ms. Walker appears to have confused the'

Dated: September 19, 2025
New York, New York
By: /s/ Arik Preis
AKIN GUMP STRAUSS HAUER
& FELD LLP
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Arik Preis
Mitchell Hurley
Sara L. Brauner
Counsel to the Official Committee of
Unsecured Creditors of Purdue Pharma
L.P., et al.
By: /s/ James I. McClammy
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017

Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Eli J. Vonnegut
Marc J. Tobak
Counsel to the Debtors and Debtors in
Possession

MS WALKER CAN NOT QUOTE CASES ALL MS WALKER HAS ARE THE WORDS ON RECORDS DURING HEARINGS TO HOLD COURT & LAWYERS TO THEIR WORDS AND THE PLAN THEY WROTE NOT MS WALKER AS MY PLAN WOULD NEVER HAVE BEEN REVERSED THE FIRST TIME & NONE OF THE SAME CONSENT ISSUES WOULD BE PRESENT AS MS WALKER HAD I BEEN THE COURT WOULD HAVE KEPT MY WORDS AND ENSURED NOT ONE SINGLE RIGHT WAS VIOLATED ALAS IN FACT HAS HAPPENED AS THE RECORD CLEARLY READS.

SO THE DEBTORS FIRST ARGUMENT MS WALKER DID NOT FILE ON TIME IS INCORRECT AS THE RECORDS SHOW SO MOOT.

## COUNTER-STATEMENT OF ISSUES ON APPEAL

> **Elect to Grant or Not Grant the Third-Party Releases:** You may, through your ballot or your participation in the applicable direct claims shareholder settlement (as described in the Disclosure Statement and the Plan), elect to grant or not to grant releases of any actual or potential claims that you have against Sackler family members, and certain other individuals and related entities, relating to Purdue Pharma L.P. and its affiliated debtors (i.e., the third-party releases). **Electing to grant or to not grant the third-party releases is completely voluntary, but you may receive less compensation if you do not elect to grant such third-party releases. The Debtors and the Creditors' Committee recommend that you elect to grant the third-party releases.**

DEBTORS AND COMMITTEE AS THE COURT STATED IT LIKE LAWYERS CAN NOT GIVE LEGAL ADVICE ALAS YES THEY DID ….DEBTORS & THE CREDITORS COMMITTEE RECOMMEND THAT YOU ELECT TO GRANT THE THIRD PARTY RELEASE IS BUT PREMATURE COERCED LEGAL ADVICE. WHERE DOES THIS DOCUMENT POSTED ON THE PURDUE PI WEBSITE READ THAT IF WE DID NOT OPT IN THAT ARE CLAIM ISNOT 'SETTLED' THEREFORE WE HAVE TO WAIT 18 MONTHS AND IF NO ONE OBJECTS WHEN WHO FROM PURDUE PHARMA THAT NO LONGER EXISTS GOING TO OBJECT AND WHY SHOULD PURDUE PI CLAIMANTS WITH EVIDENCE OF BEING PRESCRIBED THAT ANYONE WHO GETS 'OPIOID ABATEMENT' WILL NEVER HAVE TO SHOW AS

ACTUAL PURDUE PHARMA GET NO FUTURE MEDICAL REHAB SHRINK FOR OUR INJURIES AND DAMAGE TO OUR HEALTH SO HOW IS THAT FAIR…RIGHT. IT DOESNOT READ IT & THIS IS WHY MS WALKER LOST HER MIND DURING THE NOVEMBER 12, 13, 14 & 18 CONFIRMATION HEARINGS THAT BEING THE FIRST TIME I HEARD THESE MINUTIAE VERY IMPORTANT DETAILS. ARIK TOLD ME THAT I WOULD NEVER WIN OR COLLECT FROM MY LAW SUIT AGAINST THE SACKLERS THEN BOTH DEBTORS AND UCC ALL STATED THEY WOULD WIN AND ALL THE CRIMES THE NON DEBTOR SACKLERS HAVE DONE ALL ON RECORD,,,,'LOOTING THE COMPANY' 'FRAUDULENT WIRE TRANSFERS' THE SUPREME COURT CALLED THE SACKLER CRIMES 'MILKING PROGRAM' IN 2024 ALAS THE SACKLERS HAVE NEVER BEEN PUNISHED AND IN FACT WILL WRONGFULLY AND UNLAWFULLY BE PROVIDED THROUGH THE BANKRUPTCY COURT & PLAN AN IN PERPETUITY RELEASE IN EXCHANGE FOR CASH SO THE SACKLERS AVOID FUTURE LITIGATION WHEN PURDUE PHARMA PI CLAIMANTS HAVE NOT FILED A LAW SUIT AGAINST THE SACKLERS THAT YES MS WALKER DID WHY THE CONSENT WAS PREMATURE AND A NEW DEADLINE WAS CREATED TO CHANGE OUR OPT IN OR NOT OPT IN BY MARCH 1, 2026 A NOT HER MISSED MOOT DUE TO INACTION BY THE COURT DEBTORS ET AL.

IS MS WALKER OPTED IN OR NOT OPTED IN IS THE QUESTION WHEN MS WALKERS LATE CLAIM ISSUES AFTER GOING THROUGH THE TRUST ADMINISTRATION PROCESS AND AFTER VOTING AND CHECKING THE BOX PREMATURELY AS DISCUSSED THROUGHOUT MUCH OF THE CONFIRMATION HEARINGS.

SO MS WALKER VOTED …MS WALKER DID OPT IN AFTER BEING COERCED I WOULD NEVER COLLECT FROM THE SACKLERS GUESS BECAUSE THE GOVERNMENT TOOK ALL THEIR CASH BECAUSE $7,4 BILLION TO IF $900 MILLION TO ACTUAL PURDUE PHARMA VICTIMS WHO ALL PAID TAXES FOR MEDICARE THAT PAID PHARMACIES WHO FILLED OUR PRESCRIPTIONS THAT IS THE FRAUD HERE THAT MEDICARE IS TAXATION WITHOUT REPRESENTATION WHEN THAT IS WHO IS COLLECTING THE BILLIONS NOT US WE THE PURDUE PHARMA PEOPLE PATIENT VICTIMS.

SO TECHNICALLY AS THE OPT IN NOT OPT IN HEARING TO DATE STILL HASNOT BEEN SCHEDULED OR HEARD MS WALKER IN FACT HAS A BOX CHECKED MS WALKER IS OPTED IN WHICH GRANTS HER A 'TICKET' TO THE TRUST AND HAS A SETTLED CLAIM RIGHT or SINCE THE NEW DEADLINE WAS CREATED DUE TO THE PREMATURE SEPTEMBER VOTE WAS IN FACT NOT CONSENSUAL AS WE DID NOT HAVE ALL THE INFORMATION REQUIRED TO MAKE THAT PREMATURE DECISION THAT IS WASNOT ONLY MS WALKER WHO HAD OPT IN NOT OPT IN ISSUES.

THE COURT NEVER RULED THE 9.17.25 LATE CLAIMS.

MS WALKER AFTER THE JULY 28, 2025 PURDUE PI CLAIM FORM DEADLINE MS WALKER MET, MS WALKER ASKED ARIK PREIS FROM UCC 'IS THERE ANYTHING ELSE I HAVE TO DO FOR MY CLAIM TO COUNT' ARIK RESPONDED I HAD 'TO VOTE' WHICH IS WHEN YET

A NOT HER CLAIM NUMBER CAME INTO BEING REQUIRED….WHEN KROLL RESPONDED THEY NEEDED MY CLAIM NUMBER TO GET ME MY BALLOT. WHY I STARTED BUGGING ARIK THE UCC TO GET ME WHATEVER NUMBER THEY WERE ASKING FOR WHICH IS WHY MS WALKER WASNOT ISSUED THAT CLAIM NUMBER UNTIL WHATEVER IN 2025 & WHY THESE DOCUMENTS LIST TWO DATES IS FURTHER EVI EVI EVI DANCE OF HOW DISORGANIZED AND SLOPPY THIS BANKRUPTCY HAS BEEN HANDLED. AGAIN HARRINGTON WASNOT DECIDED UNTIL 6.27.24 MOOTING THE PLAN INCLUDING THE BAR DATE WHEN AMERICAN CITIZENS WERE STILL BEING HARMED AND DYING FROM PURDUE PHARMA BRAND OPIOIDS IN FACT UP UNTIL THE DAY BEFORE EFFECTIVE 5.1.26 THAT A BANKRUPTCY COURT CAN NOT DENY THE AMENDMENT I RIGHT TO PETITION FOR REDRESS WHICH IS IN FACT WHAT HAS HAPPENED.

SO MS WALKER PROVIDED THE PURDUE PI CLAIM FORM, VOTED ON THE PLAN & CHECKED THE BOX BEFORE THE 9.30.25, DEADLINE, HAS EVI EVI EVI DANCE OF PURDUE PHARMA BRAND DRUGS BEING PRESCRIBED BY MY DOCTOR & HAS BEEN WRITTEN TO BY THE TRUST ADMINISTRATOR.

THE ONLY OUTSTANDING ISSUE WAS EXCUSABLE NEGLIGENCE MS WALKER MET HER CLAIM WAS LATE MS WALKER HAS ARGUED SINCE IF SOME LATE CLAIMS WERE ALLOWED ALL LATE CLAIMS MUST BE ALLOWED AND SENT TO THE TRUST.
AGAIN EVERYONE IN THIS CASE WAS VERY AWARE AND HAD COMMUNICATED WITH MS WALKER. I WAS NO SECRET CLAIM THAT POPPED UP LAST MINUTE IN FACT MS WALKER HAD BEEN LITIGATING A GOOD YEAR OR MORE PRIOR TO OTHER LATE CLAIMANTS FILINGS AS THE RECORD READS.

SO SOME LATE CLAIMS WERE ACCEPTED ONLY FOUR WERE NOT WHICH IS ENTIRELY NOT FAIR.

THE QUESTIONS ARE DID THE LATE CLAIMS ACCEPTED 5.20.26 AFTER EFFECTIVE VOTE AND OPT IN OR NOT OPT IN ….OF COURSE THIS ANSWERS CONSENSAL RIGHT…IF THOSE ACCEPTED CLAIMS SOME ARE INCARCERATED PEOPLE THE COURT REPEATED THOSE CLAIMANTS HAVE NO EVI EVI EVI DANCE THEREFORE WILL NOT MEET THE VERY LOW EVIDENCE BAR RIGHT….DID THOSE LATE CLAIMANTS GET A BALLOT PER THE DISCLOSURE STATEMENT AND PLAN AND DID THEY VOTE AND OPT IN OR NOT OPT IN …..IF NOT THERE WAS NO CONSENT IN FACT THE ENTIRE PLAN VOTE & OPT IN NOT OPT IN ARE ALL MOOT AS THE VOTE AND OPT IN AGAIN WERE PREMATURE WHEN MANY CLAIMS HAD NOT BEEN ADJUDICATED.

MS LOJKO WAS ALLOWED TO VOTE AFTER THE 9.30.25 NOW ALSO MOOT DEADLINE.

I HAVE WRITTEN TO MR FUNKE IN PRISON TO ASK THEM IF THEY VOTED OR OPTED IN OR NOT I WILL LET THE COURT KNOW WHEN I GET A RESPONSE.

BY DEBTORS STATING IF WE VOTED & OPTED IN YET OUR CLAIM IS DENIED PRIOR TO EMERGENCE, NOT A WORD IN THE FRBP SO VERY CONFUSING TO NON LAWYERS MS WALIKER ALSO MENTIONS ON RECORD, OR EFFECTIVE THEN THE VOTE AND OPT IN WAS MOOT FROM THE START AND MEANT NO THING THEREFORE NON CONSENSUAL OMG THIS IS NOW A VOTING RIGHTS CASE.

SO WHAT ABOUT NOW THAT IT IS AFTER EFFECTIVE PURDUE NO LONGER EXISTS AS THE COURT DEBTORS UCC ET ALL ALL AFTER HOURS ON A FRIDAY NIGHT WITH NO NOTICE AT ALL WENT EFFECTIVE PRIOR TO RESOLVING THE VERY IMPORTANT MAYBE MOST IMPORTANT CONSENT ISSUE.

IF SOME LATE CLAIMS WITH A TORNADO WERE ACCEPTED YET I HAD A FIRE ICE STORM THAT DISPLACED ME THEN THE HOTEL SET ON FIRE MID COVID MY BEING A DISABLED PAUPER WASNOT HOW HAVE ALL CLAIMS BEEN TREATED CONSISTENTLY…RIGHT THEY HAVE NOT BEEN.

THE COURT SHOULD HAVE ACCEPTED ALL LATE CLAIMS PRIOR TO CONFIRMATION OR EFFECTIVE TO SEND TO EDGAR AT THE TRUST AS AS STATED JUST BECAUSE YOUR CLAIM HAD A TICKET LATE OR NOT TO THE TRUST PROCEDURE IT DID NOT GUARANTEE YOU HAVE THE EVIDENCE WHICH MS WALKER DID AND DOES.
AGAIN THAT WOULD HAVE PUT AN OFFICIAL END TO ALL LATE CLAIMS FOR THE PLAN TO GO EFFECTIVE ALAS THAT DID NOT HAPPEN SO YES RIGHTS HAVE IN FACT BEEN VIOLATED.

SO ARE THE ACCEPTED LATE CLAIMS OPTED IN OR NOT OPTED IN BACK TO NO CONSENT WHICH VIOLATES HARRINGTON.

2. I ARGUE NO THE PLAN WASNOT CONFIRMED ON THE BASIS OF AN EXTENSIVE AND NO NOT VIRTUALLY UNCONTESTED FACTUAL AND LEGAL RECORD.

MS WALKER CHANGED THE PLAN WHICH NEVER SHOULD HAVE BEEN CONFIRMED BUT STAYED PER MS WALKERS ALMOST YEAR OF REQUESTS.

## STANDARDS OF REVIEW ON APPEAL

MID CONFIRMATION THERE WERE STILL ONGOING SACKLER ISSUES WHO NEVER MET ANY DEADLINE IN THE SHAREHOLDER AGREEMENT IN FACT SACKLER ISSUES NOT PURDUE CONTINUE IN FACT THE COURT MADE MS WALKERS DUE PROCESS ARGUMENT MID THE 5.20.26 HEARING….

‘8 THE COURT: Yeah. Let's see if we can solve that 9 -- let us see if we can solve that problem right now. So 10 Ms. Penachio, why hasn't there been consent? How is the MDT 11 going to respond to something that they can't read?’

THIS IS THE NO PACER ACCESS PROBLEM MS WALKER HAS. COMMUNICATION.
MS WALKER HAS REQUESTED REPEATEDLY FOR ADA ACCOMMODATION RIGHTS TO EMAIL NOT USE E-FILE THAT DOESNOT LET ME UPLOAD A PDF I HAD TO LEARN TO DO FOR THE BANKRUPTCY COURT THAT IS HOW EVERY COURT SHOULD WORK….AN EASY ENTER THE CASE NUMBER AND OUR DATA HIT SEND BAM DONE.

NOT HAVING ACCESS FOR ANY REASON WHETHER DISABILITY NO CASH NOT BEING A LAWYER WHO DOES HAVE ACCESS IS NOT DUE PROCESS NOR EQUAL PROTECTION TO AMENDMENT I FAIRLY.

THERE ARE SO MUCH ‘CLEAR ERROR’ PROVEN WITH THE COURT HAVING TO ‘MODIFY’ THEIR BENCH RULING OF FINDINGS OF FACTS AND BECAUSE THE VOTE AND OPT IN NOT IN BOX CHECK WAS PREMATURE THAT IS A GIANT ERROR. MS WALKER EVEN SAID ON RECORD ‘THAT IS A BIG PROBLEM’

THIS PLAN NEVER SHOULD HAVE BEEN CONFIRMED JUST LIKE THE FIRST REVERSED REJECTED PLAN….IT IS WHY THEY ALL RUSHED WHEN THEY ARE THE CAUSE OF THE DELAYS NOT MS WALKER NOT ANY PURDUE PHARMA PATIENT VICTIM.

‘5 MR. HUEBNER: We'll accept notices from someone 6 saying hey, you know, now that I understand things better, I 7 previously opted either in or not opted in, I would like to 8 change that. So it's a last chance to change what we 9 already did. It's not a whole new process for giving people 10 a new election deadline. 11 THE COURT: All right. And I think it's important 12 to point out when talking about meritorious claim, people 13 who are not bankruptcy, people think meritorious, think 14 trial, think evidence, ultimate conclusion. That's not what 15 that term means here. There's a standard set forth in the 16 plan that is purposefully low so as to avoid having 17 extensive time and money spent. 18 So the idea here is to satisfy the "meritorious 19 claim" standard, the standard is exceedingly low. It is 20 evidence that you took the drugs in question, period, full 21 stop.’

| | Related Parties | Action Type | State | Underlying Plaintiff(s) (Last, First) | Case Caption | Court/Case Number |
|---|---|---|---|---|---|---|
| 561. | Richard S. Sackler; the Estate of Jonathan D. Sackler; Jonathan D. Sackler; Mortimer D.A. Sackler; Kathe A. Sackler; Ilene Sackler Lefcourt; the Estate of Beverly Sackler; Beverly Sackler; Theresa Sackler; David A. Sackler; Marianna Sackler; Estate of Mortimer Sackler; Estate of Raymond Sackler; Trust for the Benefit of Members of the Raymond Sackler Family; Raymond Sackler Trust; Beverly Sackler, Richard S. Sackler, and Jonathan D. Sackler, as Trustees Under Trust Agreement Dated November 5, 1964; Beverly Sackler, Richard S. Sackler, and Jonathan D. Sackler, as Trustees Under Trust Agreement Dated November 5, 1974 | Individual | Oregon | Walker, Rosemary | Walker v. Purdue Pharmaceuticals L.P., et al. | Or. Cir. Ct., Marion Cnty. 23CV3393 |
| 562. | The Purdue Frederick Company Inc. | Third Party Payor | Pennsylvania | AFSCME District Council 33 Health & Welfare Fund | AFSCME District Council 33 Health & Welfare Fund v. Purdue Pharma L.P., et al. | C.P. Philadelphia 180301569 |
| 563. | The Purdue Frederick Company Inc. | Third Party Payor | Pennsylvania | AFSCME District Council 47 Health & Welfare Fund | AFSCME District Council 47 Health & Welfare Fund v. Purdue Pharma L.P., et al. | C.P. Philadelphia 180302255 |
| 564. | The Purdue Frederick Company Inc. | Third Party Payor | Pennsylvania | Bricklayers and Allied Craftworkers Local Union No. 1 of PA/DE Health and Welfare | Bricklayers and Allied Craftworkers Local Union No. 1 of PA/DE Health and Welfare Fund v. Purdue Pharma L.P., et al. | C.P. Philadelphia 180302256 |



| | Related Parties | Action Type | State | Underlying Plaintiff(s) (Last, First) | Case Caption | Court/Case Number |
|---|---|---|---|---|---|---|
| 560. | Richard S. Sackler; the Estate of Jonathan D. Sackler; Jonathan D. Sackler; Mortimer D.A. Sackler; Kathe A. Sackler; Ilene Sackler Lefcourt; the Estate of Beverly Sackler; Beverly Sackler; Theresa Sackler; David A. Sackler; Marianna Sackler; Estate of Mortimer Sackler; Estate of Raymond Sackler; Trust for the Benefit of Members of the Raymond Sackler Family; Raymond Sackler Trust; Beverly Sackler, Richard S. Sackler, and Jonathan D. Sackler, as Trustees Under Trust Agreement Dated November 5, 1964; Beverly Sackler, Richard S. Sackler, and Jonathan D. Sackler, as Trustees Under Trust Agreement Dated November 5, 1974 | Individual | Oregon | Walker, Rosemary | Walker v. Purdue Pharmaceuticals L.P., et al. | Or. Cir. Ct., Marion Cnty. 23CV3393 |
| 561. | The Purdue Frederick Company Inc. | Third Party Payor | Pennsylvania | AFSCME District Council 33 Health & Welfare Fund | AFSCME District Council 33 Health & Welfare Fund v. Purdue Pharma L.P., et al. | C.P. Philadelphia 180302269 |
| 562. | The Purdue Frederick Company Inc. | Third Party Payor | Pennsylvania | AFSCME District Council 47 Health & Welfare Fund | AFSCME District Council 47 Health & Welfare Fund v. Purdue Pharma L.P., et al. | C.P. Philadelphia 180302255 |
| 563. | The Purdue Frederick Company Inc. | Third Party Payor | Pennsylvania | Bricklayers and Allied Craftworkers Local Union No. 1 of PA/DE Health and Welfare Fund | Bricklayers and Allied Craftworkers Local Union No. 1 of PA/DE Health and Welfare Fund v. Purdue Pharma L.P., et al. | C.P. Philadelphia 180302256 |

SHERIFF

# MARION COUNTY SHERIFF'S OFFICE

NICK HUNTER, SHERIFF

MARION COUNTY CIRCUIT COURT-AMENDED

| | | |
|---|---|---|
| STATE OF OREGON | ) | Court Case/DA # : 23CV33935 |
| County of Marion | ) ss. | CSP Case # : |
| | ) | Sheriff's Case #: S23003059 |

**Sheriff's Return of Service**

I hereby certify that I served the within SUMMONS AND COMPLAINT,JUDGE ASSIGNMENT within the said State and County at 2:11 PM on the 19th day of September 2023, on the within named PURDUE PHARMACEUTICALS AND THE SACKLER FAMILY, by delivering a true copy to EDEN TITUS with CT CORPORATION SYSTEM, REGISTERED AGENT at 780 COMMERCIAL ST SE 100, SALEM in the State of Oregon

I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.

NICK HUNTER, SHERIFF
MARION COUNTY, Oregon

By CORY BREITBACH

By /S/

Fee: $0.00

COPY
Original Returned to Court

IN THE UCC BRIEF THEY LITERALLY CUT AND PASTED THE SAME INCORRECT NUMBER FROM THE BANKRUPTCY COURT DOCS BECAUSE NEITHER THE COURT NOR REAL LAWYERS CARE ABOUT THEIR OWN LEGAL SLOP & INCOMPENTENCE TO ENSURE MS WALKERS RECORD IS CORRECT.

ON SEVERAL TRANSCRIPTS MS WALKER WAS ASSIGNED TO MS ECKE AND MS ECKE TO MS WALKER AS TO THE COURT ALL WOMENS VOICES BEGGING TO BE HEARD MUST SOUND THE SAME RAH RAH RAH RAH RAH….OUR RIGHTS OUR RIGHTS.

MS WALKER ISNOT A LAWYER. MS WALKER IS A QUALIFIED DISABLED AMERICAN PAUPER PRO SE WHY WE MUST AMEND THE ADA SO AMERICANS WITH DISABILITIES RIGHTS ARE ENFORCED WHILE IN ANY COURT AND QUALIFIED DISABLED AMERICANS ARE PROVIDED THE SAME EQUAL PROTECTION OF LAWS THAT BOTH NON (QUESTIONABLE) AND AMERICAN CRIMINALS ARE PROVIDED A LAWYER TO AGAIN ENSURE ADA RIGHTS ARE ENFORCED AND DISABLED AMERICANS WHO DO NOT SPEAK OR TYPE LEGAL ARE HEARD AND HAVE ACCESS WHEN 'LIMITED RESOURCES' AND BEING INCARCERATED WAS ENOUGH FOR DEBTORS THE PAT THAT MARIA CHRISTINA RICARTE NEVER APPEARED TO BE CROSS EXAMINED ABOUT HER NOT FACTUAL CLAIMS MADE DURING THE 5.20.26 SECOND FOR FOUR LATE CLAIMANTS HEARING. 19 20 Re Doc. #7736 Notice Of Hearing Regarding Late Claim Motions 21 By Travis Funke, Travis Stewart, British Moss and Janice 22 Lojko ALAS MS WALKER WASNOT INCLUDED IN WHEN MS WALKER AGAIN THOUGHT MY CLAIM WAS ACCEPTED WHEN DAVIS POLK JOINED MY OREGON PETITION CLAIMS.

that can happen. So let me be very precise, Your Honor. So as I say, if you grant the release, your claim is deemed allowed. But that allowance is deemed to occur at emergence.

So if you grant the release, if you tick the box on your ballot, your claim is therefore deemed allowed --

THE COURT: So it's more like a provisional allowance than an actual allowance. All right.

MR. VONNEGUT: Correct. Correct. But again, it

THE COURT: So it's more like a provisional allowance than an actual allowance. All right.

MR. VONNEGUT: Correct. Correct. But again, it only occurs at emergence. So if your claim gets disallowed prior to emergence, you're not bound to the release, you're not treated as a claimant in the case.

If you grant the release, your claim is deemed allowed at emergence. You then go to the PI claims trust for processing of your claim and it is possible that the trust distribution procedures on the basis of your specific claim then say you do not get a recovery from the personal

Purdue - Transcript of November 14, 2025 Hearing 4896-352...

for some reason disallowed, you will not have given any





release. And if it is allowed, then the release and your compensation will track. Okay?

MS. WALKER: Okay.

be able to participate in a claim against the Sacklers for exactly the same reason. So that -- I get that. And that sort of dovetails.

So the timeliness claims are the ones that are a little different that way.

MR. VONNEGUT: Yes.

THE COURT: And so given that those are teed up to be addressed before the effective date allows us to I think handle that particular situation.



the trust and you don't have an ability to establish and clear the very modest hurdle of substantiation here, while you theoretically might have a claim, as a practical matter, you really don't. You're not going to be able to go forward. So I'm not so worried about that situation because I don't think you're going to be in a position of making -- having somebody giving up a meaningful right or a right that -- to say well, I have it here and this is unfair. If you can't -- if you want to participate in the trust and you just don't have the documents, you really are not going to be able to participate in a claim against the Sacklers for

HOW MANY FROM PURDUE PHARMA BRAND OPIOIDS AS THIS IS A PURDUE PHARMA CASE NOT A GENERAL ANY OLD ‘OPIOID’ CASE WHY ABATEMENT ISNOT FAIR AT ALL WHEN THESE LAWYERS NEVER EVEN GAVE A THOUGHT ABOUT THE FUTURE HEALTH OF PURDUE VICTIMS WHO GET ZERO ABATEMENT AT ALL FUNDAMENTALLY NOT FAIR AND EVERY OPIOID CASE THAT GOT AWAY WITH THIS NONSENSE MUST BE REVIEWED AS EVERY CASE INVOLVING THESE REJECTED NON CONSENSAL OPT INS MUST BE REVIEWED.

MR PREIS PAGE 130 11.14.25
‘Close to a million people have died of 21 opioid overdose’

Page 131
‘at least 15 companies have been sued for their part in 2 exacerbating the opioid epidemic.’

‘Defendants have paid in court and out of court settlements 4 and judgments is more than $50 billion.’

‘There's no end 7 in sight for the opioid crisis’

ARIK STATES:

5 There are bigger issues, like whether the Sacklers 6 should be criminally prosecuted, how the states should use 7 the money they receive in this plan and other settlements. 8 Should the laws about moving money abroad be modified to 9 protect against what the Sacklers did? And should the 10 federal government be forced to use the Sackler money 11 (indiscernible) abatement?

YET THE BANKRUPTCY COURT UCC DEBTORS HAVE EXCUSED THE SACKLERS CRIMES WITH AN IN PERPETUITY NON DEBTOR SACKLER CASH BRIBE IN EXCHANGE FOR AN IN PERPETUITY RELEASE SO THE NON DEBTOR SACKLERS AVOID FUTURE LITIGATION WHICH ISNOT THE JOB OF THE BANKRUPTCY COURT TO PROVIDE A MECHANISM TO AVOID PROSECUTION FROM PURDUE PI VICTIMS WITH NO LAW SUIT OR CLAIMS TO RELEASE THE NON DEBTORS FOR MS WALKER IN FACT DOES HAVE A LAW SUIT TO SETTLE WITH THE SACKLERS WHO ALAS HAVE NOT RESPONDED TO MS WALKER BUT FOR INCOMPETENCE SOMEONE FROM A LAW FIRM SENT ME WHAT THEY FORWARDED TO A NOT HER LAWYER I KNEW WAS HUMAN ERROR RIGHT AWAY…I JOKED ABOUT IT. TO ERR IS HUMAN NO MATTER HOW MUCH LAWYERS AND COURT SAY ‘THIS IS CONSENSUAL’ MEANS NO THING. PEOPLE CAN REPEAT SOME THING OVER AND OVER WHICH STILL DOESNOT MAKE IT TRUE TAKE MY OREGON PETITION CLAIM NUMBER ….I HAVE REPEATEDLY ASKED TO CORRECT MY VERY IMPORTANT NUMBER ALAS IN THESE BRIEFS UCC JUST CUT AND PASTED THE SAME INCORRECT DATA ABOUT MS WALKER WHICH IS NOT FAIR AND A ‘CLEAR ERROR’.

INTERESTING MARSHALL HUEBNER SIGNED THIS DOCUMENT SINCE MR HUBNER IS WHO IS ON RECORD THAT MS WALKERS LATE CLAIM WOULD BE HEARD ALONG WITH THE COURT PRIOR TO EFFECTIVE AND NEVER STATED WHAT HAPPENS IF CLAIMS WERE NOT RESOLVED PRIOR TO EFFECTIVE ….NOW WHAT…WHY THIS ALL MUST BE STAYED REVERSED REJECTED DUE TO YES CLEAR ON RECORDS ERRORS.

## PRELIMINARY STATEMENT

DID THEY WRITE THE SAME EXACT WORDS PRIOR TO THE FIRST REJECTED BY THE SUPREME COURT PLAN…..& WHOSE FAULT IS IT THAT THIS HAS TAKEN NOW 7 YEARS…RIGHT THE COURT THE DEBTORS THE UCC ET ALL NOT MS WALKERS OR ANY PURDUE PHARMA PATIENT VICTIMS.

IT IS THE COURT ET AL WHO HAS CAUSED DELAY OF MONETARY RECOVERY.

QUESTION TO THE COURT HOW MANY TIER I TIER 2 AND NAS CLAIMS ARE THERE EDGAR COULD NOT EVEN ANSWER ON RECORD…SO HOW MANY OF THE PURDUE PI CLAIMANTS HAVE GOTTEN THEIR CASH…..TO DATE PLEASE...AGAIN THE JUDGE MODIFIED THE PERFECTED CONSUMMATED EFFECTIVE PLAN WHICH ONCE EFFECTIVE MUST BE ENFORCED NOT MODIFIED OR CHANGED…THIS IS A TOTAL PROCEDURAL CLEAR ERROR AS IS NOT KEEPING WORDS ON RECORDS WHICH IS ***falsus in uno, falsus in omnibus*** MS WALKERS ISSUES WOULD BE HEARD PRIOR TO EFFECTIVE A CLEAR ERROR.

THE LAWYERS LOVE TO REPEAT 99% VOTED FOR THE PLAN BIG WHOOP…THAT ISNOT THE ISSUE THE ISSUE IS THE PREMATURE OPT IN NOT OPT IN OF CONSENT WAS NEVER RESOLVED AND IN FACT IT IS THE COURT AND LAWYERS CLEAR ERROR THAT HAS CAUSED THE ISSUE BY NOT DOING THINGS IN AN ORDER THAT MADE SENSE TO THE PLAN …FUNNY DEBTORS WROTE THIS ENTIRE ONE SIDED PLAN THAT HAD MS WALKER HEARD ABOUT THE CASES IN 2020 NEVER WOULD HAVE BEEN REVERSED BECAUSE MS WALKER NEVER WOULD HAVE AGREED AND WOULD HAVE ARGUED MOST EVERYTHING ABOUT THE PLAN EVEN THOUGH MS WALKER HAS YET TO BE EVEN PROVIDED A COPY OF THE ENTIRE COMPLETE PLAN THAT APPARENTLY DOESNOT EXIST SO HOW CAN A COURT CONFIRM SOMETHING THAT NONE OF US HAVE SEEN IN ONE DOCUMENT…I HAVE REQUESTED AS MOST OF MY MOTIONS HAVE BEEN ALL IGNORED…WHERE IS THE PATIENT CARE OMBUDSMAN PER RULE 2015.1 NO ONE HAS ANSWERED WHEN MS WALKER IS A PATIENT AND NEEDS HER OMBUDSMAN SINCE MS WALKERS ADA RIGHTS HAVE BEEN IGNORED AND ADA RIGHTS ARE CIVIL RIGHTS WHILE MS WALKER CAN ARGUE THE ADA IS ALSO A FRAUD LIKE THE BILL OF RIGHTS IF WE THE DISABLED PAUPER WOMEN PEOPLE CAN NOT AFFORD THE BILLS TO ENFORCE OUR RIGHTS WHICH CAN NOT BE A THING IN AMERICA.





XIV CONTENTS

PART II. OFFICERS AND ADMINISTRATION; NOTICES; MEETINGS; EXAMINATIONS; ELECTIONS AND APPOINTMENTS; FINAL REPORT; COMPENSATION—Continued

Page

Rule 2007.2. Appointing a Patient-Care Ombudsman in a Health Care Business Case ..... 31
Rule 2008. Notice to the Person Selected as Trustee ..... 32
Rule 2009. Trustees for Jointly Administered Estates ..... 32
Rule 2010. Blanket Bond; Proceedings on the Bond ..... 33
Rule 2011. Evidence That a Debtor Is a Debtor in Possession or That a Trustee Has Qualified ..... 33
Rule 2012. Substituting a Trustee in a Chapter 11 or 12 Case; Successor Trustee in a Pending Proceeding ..... 33
Rule 2013. Keeping a Public Record of Compensation Awarded by the Court to Examiners, Trustees, and Professionals ..... 34
Rule 2014. Employing Professionals ..... 34
Rule 2015. Duty to Keep Records, Make Reports, and Give Notices ..... 35
Rule 2015.1. Patient-Care Ombudsman ..... 37
Rule 2015.2. Transferring a Patient in a Health Care Business Case ..... 37
Rule 2015.3. Reporting Financial Information About Entities in Which a Chapter 11 Estate Holds a Substantial or Controlling Interest ..... 38
Rule 2016. Compensation for Services Rendered; Reimbursing Expenses ..... 39
Rule 2017. Examining Transactions Between a Debtor and the Debtor's Attorney ..... 40
Rule 2018. Intervention by an Interested Entity; Right to Be Heard ..... 40
Rule 2019. Disclosures by Groups, Committees, and Other Entities in a Chapter 9 or 11 Case ..... 41
Rule 2020. Reviewing an Act by a United States Trustee ..... 42

PART III. CLAIMS; PLANS; DISTRIBUTIONS TO CREDITORS AND EQUITY SECURITY HOLDERS

Rule 3001. Proof of Claim ..... 42
Rule 3002. Filing a Proof of Claim or Interest ..... 45
Rule 3002.1. Chapter 13—Claim Secured by a Security Interest in the Debtor's Principal Residence ..... 47
Rule 3003. Chapter 9 or 11—Filing a Proof of Claim or Equity Interest ..... 49

MS WALKER STRONGLY DISAGREES WITH THE RECORD MS WALKER CHANGED THE PLAN ALAS THE CHANGE WAS MOOTED BY THOSE WHO CREATED IT WHO DID NOT KEEP THEIR WORDS AND IN FACT DID VIOLATED HARRINGTON WITH THEIR NOT MS WALKERS ACTIONS.

INTERESTING WHY WOULD THERE BE SO MUCH JUDICIAL SCRUTINY BUT NOT FOR LEGAL INCOMPETENCE BY THOSE INVOLVED IN WRITING AND RE WRITING THE PLAN THAT CONTAIN CLEAR ERRORS.

LOOK FOR THESE LAWYERS TO ARGUE ABOUT THEIR INCOMPETENT LEGAL WORK FROM BEFORE HARRINGTON 6.27.24 IS ALL MOOT. THEY WROTE REJECTED LEGAL AGAIN FOR WHICH 50% OF THEIR FEES FROM 2019-6.27.24 SHOULD BE REVOKED AND PLACED INTO THE PURDUE PHARMA PI ACCEPTED CLAIMS TRUST TO BE EQUALLY DISTRIBUTED SEE THAT CAN HAPPEN LONG AFTER EFFECTIVE OR HOW EVER LONG IT TAKES FOR THIS CASE TO GET BACK TO THE SUPREME COURT THAT MS WALKERS MOTIONS I DUNNO I GUESS LIKE MS WALKER HAS BEEN MOOTED QUASI I DO NOT EVEN EXIST NOR DOES MS WALKERS ENTIRE HER STORY OF THIS CASE SINCE FILING IN 2023 AS SOON AS I HEARD ABOUT AFTER GETTING INTERNET & TV AGAIN. THEN I WATCHED PAINKILLER I HAD NOT SEEN EITHER AT MY AUNTS SINCE I DID NOT HAVE NETFLIX. DID YOU ALL SEE IT....

WHY WHEN ALL OF US PAY TAXES FOR MEDICARE IS MEDICARE INCLUDING IN RECOUPING DOUBLE OR EVEN TRIPLE.....THAT IS TAXATION WITHOUT

REPRESENTATION AND ACCORDING TO THE FACEBOOK PURDUE PHARMA CLAIMANTS GROUP THE PEOPLE WHO GOT CASH WHO HAD LAWYERS THAT IS ASK THE AD HOC BECAUSE THOSE PEOPLE SEEMINGLY DID NOT PROVIDE A PIECE OF PAPER THAT READ OXYCONTIN BUT SIGNED A HIPAA RELEASE THAT MS WALKER ALSO SIGNED WITH EDGAR THAT ACCESSED DEA & PHARMACY RECORDS WHICH IS HOW PURDUE PHARMA PATIENT VICTIMS SHOULD HAVE BEEN 'NOTIFIED' SINCE THE DEA AND PHARMACIES ARE WHO HAS ALL THE TRIPLICATE RECORDS SINCE SO MANY MORE PURDUE VICTIM PATIENTS EXIST SINCE 6.27.24 & BEFORE 5.1.26 SO WILL THIS COURT SAY THAT THOSE AMERICANS HAVE NO AMENDMENT I RIGHT TO PETITION…..DUE TO A MOOT REVERSED BAR DATE INCLUDED IN THE UNCONSTITUTIONAL PLAN…..?

BLAH BLAH A BUNCH OF LAWYERS ALL BEING BITCHED ABOUT ON FACEBOOK AGREED TO A NOT FAIR TO ANY ACTUAL PURDUE PHARMA PI PATIENT VICTIMS BIG SURPRISE TO ALL OF US NOT LAWYERS…..

WE VOTED PREMATURELY FOR THE PLAN PRIOR TO HEARING WHAT EXACTLY WAS IN THE PLAN MS WALKER HEARD DURING CONFIRMATION…..DAHH.

AGAIN HOW COULD ANYONE AGREE TO A PLAN NONE OF US EVER SAW IN SEPTEMBER OF 2025 WHEN THE PLAN HAS SINCE BEEN CHANGED MODIFIED AFTER EFFECTIVE …SO WHAT THERE IS NO NEW VOTE AFTER MS WALKER ARGUES MAJOR NOT MINOR CHANGES …SO EVERYONE VOTED PREMATURELY TO A PLAN THAT SINCE CHANGED FOR BEING NOT CONSENSUAL TO BEGIN WITH…FIGURES ALL THE LAWYER THAT W#ERE INVOLVED IN THE WRITING OF THE FIRST REVERSED PLAN WOULD ALL AGREE…THEY ARE WHO MADE ALL THE CASH AND WILL CONTINUE TO…AT THIS POINT THE COURT HAS RIPPED OF $8,147 USD THAT IN REALITY DUE TO MY DOCTOR CHECKING THE 'NO CHANGE IN MEDICATIONS' BOX LIKE THE OPT IN FOR THE 6-7 YEARS OF PROGRESS REPORTS NOT DESTROYED BY WATER FROM THE TREE THROUGH MY ROOF THAT HIT RIGHT WHERE ALL MY DOCUMENTS WERE STORED MANY OF WHICH WERE DESTROYED.

AGAIN JUST BECAUSE SOMEONE REPEATS SOMETHING OVER & OVER & OVER DOESNOT MAKE IT TRUE. LIKELY FOR EVERY SINGLE BANKRUPTCY CASE THAT THESE LAWYERS HAVE BEEN INVOLVED IN WERE USING THE SAME FLAWED NON CONSENSUAL RELEASE AND ONLY UNTIL SOME ONE PERSON DID THE RIGHT THING AND SAY THIS ISNOT FAIR DID WHAT THESE LAWYERS HAVE GOTTEN AWAY WITH WHICH IS VIOLATING THE FRBP THAT LIKE JUDGE JUDY TAUGHT ME IF IT ISNOT WITHIN THE FOUR CORNER OF THE PAGES IT DOESNOT EXIST LIKE 'CRAMDOWN' & 'EMERGENCE'

UM IT ISNOT IN THE BEST INTEREST OF CREDITOR MS WALKER TO HAVE A PROVERBIAL GUN TO HER HEAD TO OPT IN BUT LOSE MY RIGHT TO PURSUE MY ALREADY FILED SACKLER LAW SUIT. THAT IS VIOLATING AMENDMENT I TO PETITION FOR REDRESS A CLEAR ERROR.

FUNNY DEBTORS MENTION 'PURDUE HAS BEEN CRIMINALLY SENTENCED' AND VIA THIS PLAN THE NON DEBTOR SACKLER WILL BE VERY MUCH IN CLEAR ERROR PROVIDED AN IN PERPETUITY RELEASE TO AVOID FUTURE LITIGATION FROM PURDUE PHARMA VICTIMS WHEN THE SACKLERS ARE NOT A DEBTOR IN 19-23649.

AGAIN DID THE DEBTORS UCC MDT ALL ARGUE THE FIRST PLAN WAS LEGAL WHEN NO NO IT WASNOT. DID THE WORLD FALL APART WHEN REVERSED AND REJECTED BY THE SUPREME COURT FOR ANY ONE BUT THE ACTUAL PURDUE PHARMA PI PATIENT VICTIMS....THE LAWYERS ALL STILL HAD JOBS THEY GOT NO PENALTY THEY ARE NOT STILL WAITING FOR THEIR MONATORY RECOVERY WE ARE & THOSE RIPPED OFF ARE ALL NOT HAPPY ON FACEBOOK AT ALL AND HOPEFULLY WILL ALL BE BOMBARDING THE COURTS WITH LETTERS OF THEIR UPSETNESS.

UHHHH DEBTORS MENTION 'FRUSTRATE THE ONGOING DISTRIBUTION OF URGENTLY NEEDED FUNDS' WHY...THE TRUST IS FULLY FUNDED PER EDGAR AND HIS LAWYER HOWARD IN DOC 9378 6.19.26.

SO WHO IS PAYING ALL THE KNOA PERSONAL INJURY CLAIMS THE PUBLIC WHO IS IN NO WAY BENEFITING WHEN THE SAME EXACT DRUG IS BEING MANUFACTURED DISTRIBUTED WAIT BUT NOW THEY CAN KEEP VICTIMS ALIVE WITH THE ANTI OVERDOSE MEDICINE.



THERE WERE NO CHANGES MADE TO ABATE LIKE ONLY PRESCRIBING OXYCONTIN FROM A HOSPITAL OR CREATING PACKAGING SO PEOPLE CAN NOT ACCESS THE MEDICINES UNTIL THE APPROPRIATE TIME AND ONE AND TIME ALAS NO ONE INVOLVED CARED TO ACTUALLY ABATE ANYTHING.

CUTE…. ‘IT IS IMPOSSIBLE TO RESTORE THE STATUS QUO ANTE’

WHY MS WALKER VERY CLEARLY MOTIONED FOR A STAY NOT APPEAL MID CONFIRMATION TO STOP HALT PAUSE HOLD THE CASE UNTIL THE CONSENT OPT IN NOT OPT IN WAS RESOLVED ALONG WITH EVERY LATE CLAIM.

## STATEMENT OF THE CASE

‘OWNED BY TRUSTS’ HOW IS THAT LEGAL

AGAIN ….SEVEN YEARS AGO DEBTORS FILED FOR BANKRUPTCY NOT THE NON DEBTOR SACKLERS ….I ARGUE EVERYTHING IN THE BEFORE 6.27.24 ALL MOOT DUE TO LEGAL INCOMPETENCE.

‘SHAREHOLDER SETTLEMENT AGREEMENT’

WAIT WHAT ‘DEBTORS-APPELLEES SOUGHT TO RESOLVE POTENTIAL LIABILITY TO THE UNITED STATES GOVERNMENT’ THE GOVERNMENT IS WHO ALLOWED PURDUE & THE SACKLERS TO LIE TO MS WALKER.

HOW IS THIS NOT A CONFLICT?

‘(h) The non-Debtor Released Parties and non-Debtor Exculpated Parties assisted the Debtors with negotiating and developing the Plan and the transactions and settlements contemplated thereby, or have agreed to forgo certain rights, make certain concessions, or incur certain obligations to permit recoveries for the Estates’ creditors set forth in the Plan which might not otherwise have been achievable.’

(c) There can be no modification,

NONE OF THESE DATES WERE MET BY THE SACKLERS PER THE SHAREHOLDER AGREEMENT…MS WALKER BRINGS UP EACH HEARING….

(c) Finalization of Certain Documents by Certain Sackler Payment Parties by December 19, 2025. All relevant parties, including each Sackler Payment Party that is subject thereto, the Creditors’ Committee, the Debtors, the Ad Hoc Committee and the States AG Negotiating Group, are further directed and ordered to negotiate in good faith to finalize by no later than December 19, 2025, Annex E and Annex F, which shall be consistent with (x) the applicable term sheets set forth

on Exhibits A-32 and A-33 to the Notice of Filing of Fifth Plan Supplement Pursuant to the Fifteenth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors [D.I. 8201] and (y) the Settlement Stipulation, as applicable, and, in each case, shall otherwise be in form and substance reasonably acceptable to a supermajority of Sackler Payment Parties subject thereto.

(d) Finalization of All Documents by January 30, 2026. It is further directed and ordered that all other remaining documentation necessary or appropriate to implement the Plan and Shareholder Settlement Agreements and the transactions contemplated thereby, including, without limitation, the remaining exhibits, annexes, collateral documents and ancillary documents to the Shareholder Settlement Agreements, shall be finalized no later than January 30, 2026.

(e) Negotiation and Execution by Richard S. Sackler of Certain Documents by December 19, 2025. In addition, and without limiting the foregoing, Richard S. Sackler is directed and ordered to: (I) negotiate in good faith and finalize Annex G to the Master Shareholder Settlement Agreement, and (II) complete and irrevocably execute each of the following documents (collectively, the “Specified Settlement Documents”) once such documents have been agreed to by a supermajority of the Sackler Payment Parties that are party thereto, and deliver the Specified Settlement Documents to the Debtors, the Creditors’ Committee, the Ad Hoc Committee, and the State AG Negotiating Committee as soon as reasonably practicable, and in any event no later than December 19, 2025, or such later date as such documents have been finalized (the “Specified Settlement Document Deadline”): (A) the Master Shareholder Settlement Agreement; and (B) each of the following exhibits and



annexes to the Master Shareholder Settlement Agreement: (i) Exhibit Y (Confessions of Judgment); (ii) Exhibit P-2 (Form of Further Assurances Undertaking of an Assuring Party with respect to the JDS Estate or a Trust that is part of the B-Side Payment Group); and (iii) the applicable pledge and security agreements contemplated by Annex E and Annex G. All executed Specified Settlement Documents shall be held in escrow by the Debtors and released automatically on the Effective Date of the Plan without any further action by the RSS Parties.

(f) Further Assurances by the RSS Parties. In addition, and without limiting the foregoing, the RSS Parties are further directed and ordered to timely execute, deliver, and perform all other documentation necessary or appropriate to effectuate the Plan and the Shareholder Settlement Agreements (including but not limited to documentation in connection with any Permitted Trust Restructurings as contemplated by Exhibits A-32 and A-33).

(g) Further Assurances by the B-1 Payment Group Parties other than the RSS Parties. In addition, and without limiting the foregoing, the B-1 Payment Group Parties other than the RSS Parties are further directed and ordered to timely execute,

deliver, and perform all other documentation necessary or appropriate to effectuate the Plan and the Shareholder Settlement Agreements (including but not limited to documentation in connection with any Permitted Trust Restructurings as contemplated by Exhibits A-32 and A-33).

(h) December 12 Status Conference. A status conference shall be held before the Bankruptcy Court on December 12, 2025, at which Richard S. Sackler, Richard S. Sackler's counsel, trustees of other members of the B1 Payment Group and counsel for such trustees shall appear before the Bankruptcy Court to report on, and demonstrate compliance with, the obligations and provisions set forth herein.

(i) Compelling Performance. The Bankruptcy Court, pursuant to sections 105(a) and 1142(b) of the Bankruptcy Code, may compel compliance with this Order, including but not limited to appointing an independent representative or other fiduciary with full authority to act on behalf of Richard S. Sackler in any and all capacities in which he is required to act (whether individually, as trustee, or in any other fiduciary capacity), to execute, deliver, or otherwise effectuate any documents required with respect to the payment obligations of the B-1 Payment Group Parties, including Richard S. Sackler.

(j) Bankruptcy Court Jurisdiction/Sanctions. The Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to the obligations set forth herein, including to resolve any dispute or failure of performance by Richard S. Sackler or any other party, and to impose sanctions, including, without limitation, findings of contempt, monetary sanctions, or such other relief as the Bankruptcy Court determines appropriate for any failure to negotiate in good faith or otherwise comply with any obligation set forth herein.

19-23649-shl Doc 8263 Filed 11/18/25 Entered 11/18/25 20:

15 MS. WALKER: Well, it just seems that this is 16 nowhere near done. I mean, the whole time yesterday -- oh, 17 holdbacks. What is a holdback? Oh, everyone keeps 18 mentioning opt-in or opt-out. However, until -- they 19 brought up claims for this whole thing. And it's part of 20 the plan. So it kind of should be resolved. There's --

13 Were the issues about the rider with Richard 14 Sackler resolved? That was also brought up yesterday. And 15 if they are not resolved, then that is a reason for this not 16 to go through. 17 Then I could not find the word emergent, like, 18 anywhere in the bankruptcy code. What is emergent versus 19 discharge versus if -- you know, again, if money is going to 20 be going out over 15 years -- 21 THE COURT: Well, maybe I can help on that. And 22 I'll make a comment and maybe somebody on the Debtors can 23 help. I think what you've heard most often is the effective 24 date. And that's when certain things are contemplated to 25 happen under the plan happens so that you take the steps Page 101 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 that are contemplated by the plan. And so that's what's 2 generally used, the effective date. It has a very technical

I think effective date means that the things that are 10 contemplated by the plan have gone forward in terms of the 11 substantial steps to make the plan move forward. It doesn't 12 mean that everything is done in the case by any stretch of 13 the imagination.

Oh, everyone keeps 18 mentioning opt-in or opt-out. However, until -- they 19 brought up claims for this whole thing. And it's part of 20 the plan. So it kind of should be resolved. There's -- 21 THE COURT: Well, it's very clear, ma'am -- and I 22 just finished explaining that. It's very clear that this 23 plan when it comes to your rights against the Sacklers is an 24 opt-in plan. 25 MS. WALKER: Right. But I can revoke. Because I Page 102 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 opted in and approved the plan. But that doesn't mean that 2 that's going to stay that way if my claim is not approved. 3 Then I'm going to revoke my release of the Sacklers. 4 And then will we be punished? Because yesterday 5 they were mentioning two years -- like if you don't release, 6 then they can wait up to two years. And why would the 7 Sacklers get paid lawyers' fees for defending what lawsuits 8 will be done against them when -- if we revoke our release. 9 I mean, again, that just doesn't seem like it's really 10 written in, and it should be amended along with -- 11 THE COURT: All right. So let me see if I can get 12 you information on one of those things.

MS WALKER ARGUES THE PLEA ENTERED INTO 11.18.2020 IS MOOT OH NOW IT MAKES SENSE WHY THE DEBTORS UCC ET AL WERE SO FREE WITH CRIMES THAT TOOK PLACE ‘LOOTING THE COMPANY’ ‘FRAUDULENT WIRE TRANSFERS’ ‘MILKING PROGRAM’ NO ONE HAS BEEN HELD ACCOUNTABLE FOR….YET.

IF ALL THESE LAWYERS & UCC DID SO GREAT FOR US UNSECURED CREDITORS WHY WAS THE FIRST SETTLEMENT NOT $7.4 BILLION USD….WHY HAS IT TAKEN 6 YEARS TO REACH THIS AMOUNT OF RECOVERY YET NO ONE IS GETTING THE INITIAL $48K WHEN THERE IS THIS GIANT NEW POOL OF CASH FOR EVERYONE RIGHT….MORE LEGAL INCOMPETENCE.

A VERY SMART MAN RON BASS TOLD ME YESTERDAY OF A NOT HER VERY SMART MAN BARACK OBAMA WHO SAID TO THE EFFECT OF JUST BECAUSE PEOPLE HAVE A COLLEGE DEGREE OR HOLD HIGH POSITIONS DOESNOT MAKE THEM ANY BETTER OR SMARTER THAN THE REST OF US..

MS WALKER HAS PROVEN ON RECORD BEING A DISABLED PRO SE PAUPER WHO ‘CHANGED THE PLAN’ BECAUSE THE PLAN IS STILL NOT CONSENSUAL AND THIS TIME VIOLATES HARRINGTON.

WHAT DOES THIS HAVE TO DO WITH THE PURDUE PHARMA CHAPTER 11 BANKRUPTCY AND WHY WOULD THE UCC MOVE TO PROSECUTE THE SACKLERS IN A BANKRUPTCY CASE…MAKES NO LEGAL SENSE AT ALL & SEEMS SUPER NOT KOSHER.

‘In July 2024, the UCC—with the consent of the Debtors-Appellees and the AHC—moved for authority to commence and prosecute Estate causes of action against the Sacklers and related entities.

SO WHY DID UCC AKIN GUMP NOT PROSECUTE MS WALKERS CAUSES OF ACTION AGAINST THE SACKLERS……

‘On December 2, 2024, the Bankruptcy Court granted the UCC sole standing to commence and prosecute estate causes of action.’

HOW CAN A BANKRUPTCY COURT GRANT STANDING TO LAWYERS YET ALAS MS WALKER MOTIONED THAT THE COURT ISSUE AN ORDER THAT ALL DISALLOWED PURDUE PHARMA PI PATIENT VICTIM CLAIMANTS HAVE STANDING TO SUE THE SACKLERS TO AVOID THE STATUTE OF LIMITATION ISSUES AFTER ALL THESE YEARS OF LEGAL INCOMPETENCE AND PEOPLE JUST RECENTLY LEARNING THEIR CLAIMS ARE REJECTED LIKE THE FIRST PLAN AND THIS PLAN TOO MUST BE….NOW JUDGE LANE THE COURT IN FACT DID PROTECT MS WALKERS RIGHTS WHICH WAS GEE SUPER BIG OF HIM AFTER HONESTLY SHITTING ON MS WALKERS HEAD SO BIG OF A SHIT THAT IT COVERS MS WALKERS ENTIRE BODY NOT KEEPING HIS WORDS TO MS WALKER MY LATE CLAIM WOULD BE HEARD PRIOR TO EFFECTIVE WHICH WAS A LIE.

‘As the Bankruptcy Court found, “[a] claimant’s vote on the Plan is independent of whether they elect to grant the Third-Party Releases in exchange for an increased recovery.” MBR at 653.’

THAT IS EXACTLY RIGHT. WHY IT IS NOT A FAIR STATEMENT THAT 99% OF LAWYERS STATES AND GOVERNMENT AGREED TO THE PLAN THEY ALL BENEFITED FROM.

HAD ALL OF US BEEN ABLE TO READ THE PLAN NOT HEARD ABOUT WHAT WAS IN THE PLAN AND HOW THE OPT IN OR NOT OPT IN WORKED THAT WE DID NOT HAVE ALL THE INFORMATION TO MAKE AN INFORMED DECISION 9.30.25 WHICH WAS PREMATURE & AS THE RECORD SHOWS NOT CONSENSUAL AND NOT FAIR WHEN THE VOTE DEADLINE HAD LONG PASSED DURING CONFIRMATION THAT NEVER SHOULD HAVE HAPPENED & LIKE THE FIRST TIME THE DEBTORS COURT ET ALL WROTE A REVERSED REJECTED AS NOT CONSTITUTIONAL PLAN WHILE I IMAGINE STATING IT WAS ALL TOTALLY LEGAL & KOSHER LIKE NOW WHEN NO NO IT WASNOT.

**‘Under the Shareholder Settlements, the Sacklers agreed to contribute up to $7 billion.’**

PFFFFHHHH THE SACKLERS ARE STILL INTER BICKERING AS THE COURT STATED ON RECORD 5.20.26 AND RICHARD SACKLER HAS YET TO SIGN THE DOCUMENTS TO MS WALKERS KNOWLEDGE AS THE ISSUE CONTINUES TO BE A SUBJECT OF HEARINGS AFTER CONFIRMATION & EFFECTIVE WHEN THE SACKERS ARE NOT EVEN A DEBTOR IN THIS BANKRUPTCY AS JUDGE LANE CLEARLY STATES.

2:27
2 of 9

Restraining Order [ECF No. 9231]; (17) Motion to Allow [ECF No. 9240]; (18) Motion for Immediate Hold [ECF No. 9241]; (19) Motion to Approve [ECF No. 9255]; (20) Motion for Immediate TRO Stay [ECF No. 9256]; (21) Motion [illegible]ons [ECF No. 9268]; (22) Motion to Approve [ECF No. 9269]; (23) Motion [illegible] Immediate TRO [ECF No. 9273]; (24) Response to Doc 9359 & Motion for Sanctions [ECF No. 9368]; (25) Objection to Doc 9357 & Motion for Sanctions [ECF No. 9370]; (26) Response & Objection [ECF No. 9381]; (27) Response to Doc 9378 & Motions [ECF No. 9383]; (28) Amended Response to Doc 9378 & Motions [ECF No. 9384]; (29) Emergency Motion [ECF No. 9385]; (30) New Motions & Sanctions Request [ECF No. 9386]; (31) Ms. [illegible] Amanda Morales Motion [ECF No. 9394]; (32) Motions & Objections to Fees Requested [ECF No. [illegible]s & Stay Request [ECF No. 9396]; (34) Objection to Motion for Admission Pro Hac Vice [ECF [illegible]tion American Laws & Rights Must Matter [ECF No. 9403]; (36) Motion to Explain & [illegible] ECF No. 9415]; (37) Counter to Doc 9197 [ECF No. 9425]; (38) Motion pursuant to 9006(b)(1) [ECF No. 9426].



Ms. Walker's pleadings seek a wide variety of requested relief. These requests include: inquiries related to the claim that she filed against the Debtors in these cases; requests regarding her decision on whether or not to opt into the Sackler settlement that is part of these cases; requests to stay actions authorized by the confirmed plan of reorganization in these cases; requests seeking modifications of the confirmed plan of reorganization; and requests for relief unrelated to the Bankruptcy Code.

It is important to consider these requests in context. The Court has recently determined that Ms. Walker is not a claimant in these bankruptcy cases. *In re Purdue Pharma L.P.*, 2026 WL 1905691 (Bankr. S.D.N.Y. July 1, 2026). As explained in that decision, the Court has concluded that Ms. Walker's late filed claim is not permitted because it was filed years after the Bar Date and she does not satisfy the standard for excusable neglect. *Id.* Given that ruling, any further questions about the validity of her claim are moot. Moreover, any request by Ms. Walker to revoke her opt-in election to participate in the related Sackler settlement is similarly moot, because Ms. Walker does not have the right to participate in the Sackler settlement if she is not a claimant in these bankruptcy cases.[3] *See Purdue Pharma*, 675 B.R. at 666 (explaining that the third-party releases only apply to holders of claims who affirmatively consent to the releases). Well before the Court's recent ruling on the timeliness of her claim, the Court had previously addressed numerous requests for relief filed by Ms. Walker. *See e.g.*, Walker Confirmation Objections [ECF Nos. 7771, 7825, 7835, 7855]; *In re Purdue Pharma L.P.*, 675 B.R. at 673-74 (addressing Ms. Walker's confirmation objections); Order Denying Motions for Stays Pending Appeal [ECF No. 8727] (addressing Ms. Walker's motion for a stay pending appeal); Order

---

[3] As explained in the Court's decision on her late filed claim motion, Ms. Walker retains any rights that she has to sue the Sacklers, who are not debtors in these bankruptcy cases. *In re Purdue Pharma L.P.*, 2026 WL 1905691 (Bankr. S.D.N.Y. July 1, 2026) n.6 (noting that only claimants can participate in the Sackler settlement).





restructuring.ra.kroll.com

WAIT WHAT SO RECOVERY FROM THE OTHER LITIGATION GOES INTO THE MDT WHO IS ARGUING AGAINST MS WALKER SO THOSE MONIES WILL BE EQUALLY DISTRIBUTED TO PURDUE PHARMA PI PATIENT VICTIMS?

‘(plus any recoveries from insurance and other litigation claims transferred to the master disbursement trust (the “MDT”)).’

WAIT WHAT THE SACKLERS CAN NOT PAY THE $1.775 BILLION FORFEITURE JUDGEMENT SO THIS CASH HASNOT BEEN PAID YET SINCE THE CRIMINAL HEARING DURING WHICH THE JUDGE WAS VERY CONCERNED ABOUT HOW MANY REJECTED CLAIMS DEBTORS REJECTED FOR NOT BEING ABLE TO PROVIDE A DOCTOR RECORD SINCE THE LAWYERS CHANGED THE RULES OF THE CURRENT PLAN AND COULD NOT GET DECADES OLD RECORDS WHILE THE COURT ET AL KEEP REPEATING HOW MUCH EASIER EVI EVI EVI DANCE IS WITH SUCH A LOW BAR OF SHOWING A PRESCRIPTION OR DOCTOR NOTES FROM AGAIN DECADES AGO MS WALKER IN FACT DID A FOIA REQUEST WAIT THE GOVERNMENT DURING HEARINGS STATED THEY HAD TO FOIA REQUEST DOCUMENTS FROM THEMSELVES THE GOVERNMENT AND THEY CAN’T GET DOCUMENTS SO HOW IS A DISABLED PRO SE PAUPER GOING TO OR ANYONE LUCKILY AGAIN MS WALKER IN FACT HAS.

BY REJECTING IT WAS LIKE OVER 50 PAGES OF MAYBE 15-20 PER PAGE OF CLAIMS FOR NOT BEING ABLE TO PROVIDE DOCUMENTATION LONG AFTER 6.27.24 HARRINGTON WHICH IS SUPER NOT FAIR AND IN FACT DID CREATE THE RUSH TO THE COURTHOUSE TO SUE THE SACKLERS WHAT THE COURT ET AL ALL STATED THEY WORKED TO PREVENT ALAS THAT IS EXACTLY WHAT HAPPENED…..A NOW RUSH TO THE COURTHOUSE BECAUSE IN FACT BY THE DELAY OF MANY YEARS DUE TO NO FAULT OF ANY PURDUE PHARMA PATIENT VICTIMS AND BECAUSE THE COURT STATED ON RECORD ‘NO ONE IS GIVING UP A MEANINGFUL RIGHT’ WHEN IF THE STATUTE OF LIMITATIONS IS OVER YES YES EVERYONE DID UNLESS PER MS WALKERS MOTION JUDGE LANE ISSUED AN ORDER TO EVERY COURT IN THE LAND THAT ALL PURDUE PHARMA PI PATIENT VICTIMS HAVE STANDING TO PURSUE THE SACKLERS IN COURT LIKE WELL I DID NOT NEED THE COURTS PERMISSION MS WALKER DID FILE HER CLAIMS IN MARION COUNTY COURT BECAUSE MS WALKER STILL DID NOT KNOW THE CASE IN THE SUPREME COURT WAS A BANKRUPTCY NOR ABOUT KROLL OR ANY OTHER CASE FACTS. I HEARD ABOUT THE CASE RIGHT BEFORE I FILED IN OREGON COURT.

### ‘B. The Renewed Plan of Reorganization Builds on the Successes of the 2021 Plan’

WOW TYPE ABOUT BLOWING THEIR OWN INCOMPENT LAWYERING HORN OVER A REVERSED REJECTED AS NOT CONSTITUTIONAL HORN

AS A SUCCESS. MS WALKER ARGUES REVERSED ISNOT SUCCESS IN FACT THE OPPOSITE IT WAS A TOTAL FAILURE.

GLAD THEY BRING UP PAT AS HOW IS SOMETHING HEARD IF MARIA CHRISTINA RICARTE FROM PAT WHO WROTE NOT FACTUAL STATEMENTS IN DOC 9143 5.4.26 AND NEVER APPEARED TO BE CROSS EXAMINED WHICH IS A TOTAL DENIAL OF DUE PROCESS ON TOP OF THE DOCUMENT READ WE MUST REACH OUT TO MARIA CHRISTINA RICARTS YET THE DOCUMENT ALAS PROVIDED NO WAY TO CONTACT MARIA CHRISTINA RICARTE OR PAT MS WALKER SENT NUMEROUS EMAILS TO EVERYONE TO GET MY PIONEER EXCUSABLE NEGLIGENCE EVI EVI EVI DANCE TO HER EDGAR ET AL ALREADY HAD.

‘the PAT encourages Mr. Hall, as well as each of the Movants as to whose Late Claim Motions the PAT currently objects (i.e., Ms. Walker, Ms. Lojko, Ms. Cates, and Ms. Torres Herrera), to submit supplemental briefing prior to the May 20, 2026 hearing on the Late Claim Motions to provide any additional information such individuals can offer as to why they were unable to file their Late Claim Motions and/or proofs of claim earlier. The deadlin to submit such supplemental briefing is May 18, 2026 at 12:00 p.m. (Prevailing Eastern Time).’

‘Accordingly, under the Court-approved trust distribution procedures governing the administration of personal injury claims, any personal injury proof of claim (other than personal injury proof of claims related to opioid exposure in utero) filed on or before September 21, 2021 is considered timely, even if the claimant did not file a motion seeking to have their late proof of claim deemed timely.’

**THE BAR DATE IS MOOT SINCE HARRINGTON WASNOT DECIDED UNTIL 6.27.24 AGAIN A BANKRUPTCY COURT CAN NOT VIOLATED AMENDMENT I FOR ANY AMERICAN TO PETITION FOR REDRESS WHEN INJURED OR SOMEONE BECOMES POSTHUMOUS LEGAL.**

AGAIN IF SOME LATE CLAIMS WERE ALLOWED THEY ALL MUST BE ALLOWED TO BE SENT TO THE TRUST ADMINISTRATOR TO DETERMINE WHICH MS WALKERS CLAIM WAS IF THERE WAS THE VERY LOW EVIDENCE BAR MET MS WALKER MEETS ALONG WITH EXCUSABLE NEGLIGENCE.

LOOK MS WALKER 5.20.26 AFTER EFFECTIVE HAD BEEN TO THE EYE DOCTOR WHO DILATED MY EYES AND I COULD NOT SEE EVEN MORE SO THAN NORMAL DUE TO MY DISABLING MEDICAL CONDITIONS WHY MS WALKER IS A QUALIFIED DISABLED AMERICAN MINUS THE ADA RIGHTS OR ACCOMMADATIONS COURTS IN FACT DO NOT EVEN CARE ABOUT I HAVE LEARNED OR THERE WOULD BE AN ADA LAWYER IN EVERY COURTROOM WITH A DISABLED AMERICAN TO ENSURE OUR RIGHTS WERE NOT VIOLATED …DURING SHUTDOWN & CONFIRMATION THERE WAS NO ONE TO ASSIST

MR PINKAKOV INTO THE COURTCOURT ARIK OFFERED TO HELP HIM THAT ISNOT ACCESSIBILITY LIKE THIS COURTS WEBSITE BEING NOT FUNCTIONAL SINCE SOMEONE UPDATED THE PRO SE FILING SECTION SEE I JUST DID IT. THIS IS NOT ACCESSIBILITY & YES VIOLATES DUE PROCESS. FIX YOUR STUPID WEBSITE COURT. HOW MANY TIMES AND HOW LONG LIKE CORRECTING WRONG DATE ON RECORD I HAVE NO IDEA IF THE TRANSCRIPTS HAVE BEEN CORRECTED WHEN SOMETHING MS WALKER DID NOT SAY WAS ASSIGNED TO ME WHEN I NEVER SAID IT SOMEONE ELSE DID. THAT ISNOT AN ACCURATE RECORD.




MS WALKER SEES NO REASON TO REHASH OLD REVERSED REJECTED DATA THAT APPARENTLY DEBTORS WANT TO REPEAT THAT IN NO WAY HELPS.

Oooooo **III. The Parties Reengage in Mediation After Harrington** perfect timing… DEBTORS HAD JOINED MS WALKER CLAIMS TO THIS BANKRUPTCY ALAS THE PURDUE PHARMA PI PRO SE PATIENT VICTIMS WERE NOT A PART OF ANY MEDIATION WHY?

IF I HEAR OR READ 'GOOD FAITH' ONE MORE TIME I AM GOING TO SCREAM WHEN NONE OF THIS HAS BEEN 'GOOD'.

WAIT WHAT…..THE PURDUE PHARMA PI CLAIMANTS ARE CHOPPED LIVER AND GET PART OF A PRIVATE & PUBLIC-SCHOOL TRUST YET HAVE TOTALLY DIFFERENT RULES AND REQUIREMENTS…OK AGAIN IF THERE IS $865.8 MILLION DOLLARS AND THERE ARE SOMEWHERE WELL NO ONE KNOWS EDGAR DIDN'T KEEP TRACK HOW MANY CLAIMS IN EACH TIER THERE ARE …WHEN EDGAR WAS GOING THROUGH CLAIMS PRIOR TO CONFIRMATION 11.25 AND WAS ON DEFICIENT CLAIMS I PROVIDED THE EMAILS IN MY UCC BRIEF RESPONSE….THEN HOW ON EARTH WHEN HIS OFFICE HAS CLAIMS YOU CHECK EVIDENCE YEP THIS HAS EVIDENCE IT GOES INTO THIS PILE AND THIS DATA BASE AS ALLOWED THIS CLAIM HAS NO EVIDENCE SO A NOT HER PILE AND DATABASE YET NO ONE CAN PROVIDE HOW MANY OF EACH TIER CLAIM THERE WERE DURING THE HEARING MS WALKER ASKED ON RECORD.

**'The private creditor trusts and public-school trust are projected to receive in excess of $1.5 billion in value under the Plan, approximately $865.8 million of which will be used to compensate PI Claimants.'**

IF WE GO WITH 140,000 CLAIMS AT THE LOWEST AMOUNT PER EDGAR $8147 X 100000 = 1,140,580,000 SO DID THEY HAVE TO DISALLOW CLAIMS TO FIT THE LEFTOVER BUDGET FOR ACTUAL PURDUE PHARMA PATIENT VICTIMS….IF THE TRUST IS FULLY FUNDED WHY HAS NO CASH GONE OUT……WHEN IT WAS MY UNDERSTANDING WE WERE WAITING FOR EFFECTIVE FOR OUR MONETARY COMPENSATION THEN SUDDENLY IT IS FOURTH QUARTER A LETTER WILL GO OUT WHICH IS STILL NOT CASH AND WHO CARES ABOUT A QUARTER WHEN PURDUE PHARMA NO LONGER EXISTS…BUT ALAS CLAIMANTS STILL HAVE NO MONEY OR THOSE WITH LAWYERS ARE SUPER UPSET THEIR CASH IS $10000 LITE WITH FEES….PER FACEBOOK POSTS.

I AM STILL CONFUSED IS ASK THE AD HOC BECAUSE THEIR CLIENTS ARE NOT HAPPY WITH THEM & I AM NOT THEIR CLIENT YET THEY NEGOTIATED FOR ME WHICH ISNOT COOL NOR KOSHER….THEN HOW IS THIS NOT A CONFLICT.
'The trust distribution procedures governing this allocation were designed representatives of the Ad Hoc PI Group and'







HOW IS THIS POSSIBLE WHEN THE INITIAL AMOUNT HIGH WAS $48K NOW DOWN TO NON NAS $16,294 & NAS $25,653 AND THEY DON'T EVEN GET THE FULL AMOUNT ALL AT ONCE THEN WHEN TURNING OF AGE HAVE TO RE LITIGATE WHICH IS SUPER NO FAIR TO NAS CLAIMANTS. AGAIN NO CLAIMS HAVE OR ARE BEING TREATED CONSISTENTLY A NOT HER TERM EVERYONE REPEATS TO CONVINCE THEMSELVES I GUESS.....THEN THERE ARE WAY FEWER CLAIMS BECAUSE THEY REJECTED SO MANY SO HOW CAN THERE NOT BE MORE CASH FOR ACTUAL VICTIMS NOT THE GOVERNMENT WHO IS ALSO AT FAULT FOR ALLOWING PURDUE TO GET AWAY WITH ALL THIS & DID NOT PROTECT MS WALKER.

'The amount allocated to PI claimants under the Plan is greater than the allocation in the 2021 Twelfth Amended Plan.'

THE MATH DOESNOT ADD UP. WHY THERE MUST BE AN ACCURATE REPORTING OF HOW MANY CLAIMS ARE IN EACH TIER AGAIN THE ANSWER TO MS WALKERS VERY IMPORTANT QUESTION WAS 'WE DON'T KNOW' .

THE COURT ET AL HAD BEEN REPEATING THIS 'FLOODGATE' NONSENSE WHEN OBVIOUSLY WITH ONLY 17 LATE CLAIM ISSUES MS WALKER ARGUES THERE WERE NO FLOODGATES BUT THE GATES THE DEBTORS OPENED BY DENYING SO MANY CLAIMS WHEN THE COURT TOLD EVERYONE NO ONE WAS GIVING UP A MEANINGFUL RIGHT WHEN YES YES MEANINGFUL RIGHTS HAVE IN FACT BEEN ABUSED.
'allowing the Late Claims as timely would open the floodgates to additional late claims against the Debtors and prejudice the estates." '

5.20.26 AFTER EFFECTIVE 2nd FOR SOME LATE CLAIM HEARING AFTER NO FLOOD GATES OPENED NO HUNDREDS OF THOUSANDS OF NEW CLAIMS AFTER HARRINGTON ….ONLY 17 OUTSTANDING LATE CLAIMS ONLY FOUR WERE DENIED WRONGFULLY IN MS WALKERS CASE WHO YES MET PIONEER AGAIN I FILED THIS DOCUMENT BEFORE THE HEARING AND HIT THE WRONG PDF TO THE COURT BUT SERVED THE RIGHT ONE TO DEBTORS ET AL….SO I BEGAN READING MY AI RESPONSE TO PIONEER I REALIZED THE NIGHT BEFORE WAS WHAT I HAD TO ARGUE THEN THE JUDGE RAISED HIS VOICE AT ME THAT WAS ALL I COULD DISCUSS THEN YET AGAIN MS WALKER WAS INTERRUPTED AND SILENCED DURING MY TIME TO SPEAK WHEN I WAS ON THE AGENDA ALAS THE COURT ALLOWED THOSE NOT ON THE AGENDA TO BLAH BLAH…..SO WHEN I READ HIS DEVASTATING TO MS WALKER HONESTLY I AM STILL IN SHOCK WHEN YES I DARED THE COURT TO DISALLOW MY CLAIM KNOWING MY CLAIM IS IN FACT VALID IN DOC 9438

THE JUDGE DID NOT EVEN DOCKET MY TWO RESPONSES SINCE BANISHING MS WALKER AGAIN FROM AMENDMENT I WHICH IS UNCONSTITUTIONAL.

LOOK IF WE DON'T RESPOND TO A DOCUMENT THE DEBTORS ET AL SAY NO ONE FILED AN OBJECTION EVEN IF WE DID ….WHICH IS WHY JUST LIKE A REAL LAWYER LITIGATING YES MS WALKER HAS TO FILE MANY DOCUMENTS YET THE COURT HAS CHASTISED MS WALKER FOR NOT ALLOWING HER AMERICAN RIGHTS TO BE VIOLATED WHICH THEY IN FACT HAVE BEEN DURING THIS CASE.

'17 individuals who have motions that are on for today. We are only objecting to the motions filed by four of them.'

Debtors endeavored to strike the right balance between treating all similarly situated creditors consistently, while also being mindful of the potentially large volume of late claimants, which additional claims could prejudice the rights of claimants

MS WALKER STRONGLY DISAGREES WITH CONSISTENT WHEN ONLY FOUR LATE CLAIMS WERE WRONGFULLY DISALLOWED.









SO DECLARED DISASTERS FROM THE SANTIAM FIRES, AN ICENADO THAT CUT POWER TO SALEM TO SOME RESIDENTS FOR A MONTH, A HOTEL I FLED TO BEING SET ON FIRE ALL MID COVID FOR A DISABLED PAUPER ARE NOT EXCUSABLE NEGLIGENCE ....SO INCARCERATED PEOPLE HAVE MORE RIGHTS THAN DISABLED NOT INCARCERATED DISABLED AMERICAN PAUPER WOMEN....HOW IS THAT CONSISTENT. AGAIN MARIA CHRISTINA RICARTE NEVER APPEARED TO BE CROSS EXAMINED WHICH ISNOT DUE PROCESS AT ALL AS WAS NOT HAVING ANY WAY TO CONTACT PAT IN DOC 9143.

AGAIN MS WALKER SHOULD NOT BE DENIED PRESUMPTION OF INNOCENCE I NEVER HEARD ABOUT THE CASE UNTIL RIGHT BEFORE I FILED MY PETITION THAT CONTAIN MY CLAIMS IN 23CV33935.

I HAVE HAD NO INTERNET AT TIMES SO NO TV....AND BY NATURE OF DISABILITY WHY THERE SHOULD BE AN ADA LAWYER IN EVERY COURTROOM WITH A DISABLED AMERICAN TO ENSURE ADA RIGHTS ARE ACCOMMODATED MUST BE A THING OR WHAT IS THE POINT OF THE ADA OR ANY LAWS OR RIGHTS IF NOT ENFORCED.....THIS IS OUTRAGEOUS. EVERY ONE IN THIS CASE IN FACT IT WAS THE DEBTORS WHO 'JOINED' MS WALKERS CASE TO THIS BANKRUPTCY NOT MS WALKER.

https://youtu.be/W6m-MXk1M0I?si=uTKV1iWGeJhXOaQT

THAT IS XFINITY COMCAST IN MY APARTMENT WHEN AFTER THEY DUG UP EVERY STREET IN MY NEIGHBORHOOD MY INTERNET WENT HAYWIRE AND STOPPED WORKING FOR AGES AS MS WALKER LOST HER MIND AS AT&T WAS BILLING $!5 EVERY 15 MINUTES THEN DURING THE FIRES PAYMENT PROCESSING WAS DOWN AND THEY TURNED OFF MY PHONE MID A DECLARED FIRE DISASTER SO NO MS WALKER NEVER SAW THE NOTICE WITH SO MANY REASONS..THEN AFTER ALL THAT MS WALKER HAD A BREAST CANCER SCARE AND UNDERWENT A BIOPSY. 2019-2023 THE PROVERBIAL SHIT HIT THE ENTIRE WORLD FAN ESPECIALLY MS WALKERS.

‘incarcerated individuals, who alleged that they received limited information and had limited access to resources leading up to and following the General Bar Date due to their incarceration and the attendant restrictions caused by the COVID-19 pandemic. See Dkt. Nos. 1664, 2057, 2069, 2071, 2086, 2088, 2193, 2458, 2834, 3058, 3342, 3526, 3764, 3894, 3895, 4230, 4231, 4262, 4275, 4294, 4415, 4617, 4633, 4646, 4653, 4711, 4728. This group also included individuals, who were not incarcerated, but who otherwise made sufficient individualized showings regarding the reason for the untimely filing. For example, one such individual’s proof of claim was deemed timely after she asserted that an Act of God—a tornado hitting her home—prevented her from filing her proof of claim
19-23649-shl Doc 9143 Filed 05/04/26 Entered 05/04/26 14:57:32 Main Document
Pg 6 of 25 6 earlier (Dkt. No. 4481) (late claim motion heard during the April 2022 omnibus hearing); (see also April 27, 2022 Hr’g Tr. 31:9–34:4), while others who asserted that medical issues
hindered their ability to file a proof of claim by the deadline and filed their motions within just a few months of September 21, 2021

APPARENTLY INCARCERATED PEOPLE CAN NOT COLLECT LAW SUIT CASH PLUS JUDGE LANE MENTIONED ONE STATED THEY HAD NO ACCESS TO MEDICAL RECORDS SO IF THE CLAIM WAS ALLOWED IT IS MOOT AND THEY CAN’T COLLECT REGARDLESS SO NO LOSS TO CASH RIGHT THEN IF THEY DO HAVE EVI EVI EVI DANCE THE PRISON WILL TAKE ANY CASH FOR RESTITUTION FINES OR WHATEVER COSTS THEY BILL INCARCERATED PEOPLE RIGHT. AGAIN IT CAN NOT BE A THING THAT CRIMINALS HAVE MORE PROTECTIONS OF LAW THAN NON CRIMINAL DISABLED PAUPER PRO SE WOMEN. THAT ISNOT CONSISTENT NOR EQUAL PROTECTION.

‘the Court also recently stated that it intends to consider all pending Late Claim Motions together “[t]o promote efficiency and consistency” and “to issue one decision on all pending motions related to late filed claims.”’

THIS TOO NEVER HAPPENED AS THE 9.17.25 HEARING PROVES. AGAIN MS LOJKO, MR FUNKE, MR MOSS & STEWART ALL HAD TWO LATE CLAIM HEARINGS BECAUSE THE COURT FORGOT TO RULE OR INCLUDE ALL LATE CLAIMS IN THE HEARING PRIOR TO CONFIRMATION OR EFFECTIVE. SO THIS ALSO NEVER HAPPENED AND IS NOT A FACTUAL STATEMENT AND A NOT HER VERY CLEAR NOT CONSISTENT NOR FAIR ERROR.

**Second, ……from the brief….**

‘for PI Claimants, utilizing opt-in check boxes on the applicable form of ballot or other forms of affirmative consent, triggering releases governed by Sections 10.6(b) and 10.7(b) of the Plan (See A.008131; A.008243–45; A.008249–53 (Plan §§ 1.1, 10.6(b), 10.7(b))).’

WELL IF THIS WERE ALL KOSHER THE ENTIRE CONFIRMATION WOULD NOT HAVE REVOLVED AROUND MS WALKERS CONSENT OPT IN NOT OPT IN ISSUE DAHHHH.

**11.14.25**

‘13 There are three ways under the plan that a 14 personal injury claim can become allowed. One is the 15 claimant grants the third-party release by opting in on 16 their ballot and sends that ballot in. The other is if the 17 claimant does not grant the release but then nobody objects 18 to the claim for 18 months after emergence, it automatically 19 becomes allowed at that time. Or if somebody does object to 20 the claim because the claimant didn't grant the release, 21 they can then litigate that objection.’

What I understood Ms. Walker to be asking 2 just a minute ago was what happens with her release and her 3 release and her opt-in if her claim isn't allowed. 4 MS. WALKER: Right. 5 THE COURT: Yeah. So let me see if I can get 6 somebody here in the courtroom to answer that question. 7 We're all about trying to get information to people if we 8 can. And that seems to be a fair question. 9 MS. WALKER: And, Judge -- 10 THE COURT: Hold on. Hold on. Ma'am, I'm going 11 to try to get -- 12 MS. WALKER: Okay, sorry. Sorry. 13 THE COURT: You need to wait. Because I'm going 14 to try to get an answer to your question. But you've got to 15 hang with me for a minute. 16 MS. WALKER: Okay, sorry. 17 THE COURT: All right. No worries. No worries. 18 MR. HUEBNER: So, Your Honor, I will do my best to 19 answer on the fly and I'll look to Mr. Preis and others to 20 help where they can. 21 So Ms. Walker's situation is one of the few that 22 is relatively unique, although one should never modify the 23 word unique. She filed her claim late and is currently the 24 subject of an adjourned late claim objection. And so 25 possibility number one is that the Court rules that she Page 104 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 doesn't have a cognizable claim at all because she missed 2 the bar date and it's being stricken as being late. 3 Possibility number two is that that motion is settled or 4 otherwise resolved in her favor and she is allowed to 5 proceed with the claim. She then has to go through the TDP 6 process we've described before, including, as Mr. Preis and 7 others have described, you know, proving really a base that 8 she at one point (indiscernible) took a Purdue product 9 because -- one thing that I think has confused many people 10 is that --

NO MS WALKER WASNOT CONFUSED MS WALKER HAS EVIDENCE DEBTORS CHANGED THE SUBJECT.

13 MR. HUEBNER: One thing that has confused many 14 people over the years is that very often the phrase Oxy does 15 not refer to OxyContin. It refers to Oxycodone, which is 16 just a generic form of morphine, along with hydrocodone and 17 others and the like. And so a great many people actually 18 never took a product made by Purdue. And that's one of the 19 things that the TDP administrator will have to --

14 MR. VONNEGUT: And so again, if you are a third15 party payer, or a personal injury claimant, you'd do that by 16 ticking a box on your ballot and submitting it. And so the 17 procedures for doing that are laid out in our disclosure 18 statement. 19 And I'll just offer on the record, if anybody has 20 questions, they can reach out to Davis Polk, to me 21 personally, or to Mr. Price -- 22 THE COURT: Right. 23 MR. VONNEGUT: -- for the creditors committee, and 24 we're happy to help. For folks -- 25 THE COURT: So what if somebody had exercised Page 41 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 that, filled it out, the effective date has not arrived -- 2 MR. VONNEGUT: Yes. 3 THE COURT: -- and they have a change 4 (indiscernible)? 5 MR. VONNEGUT: And they would like to withdraw -- 6 THE COURT: Yes. 7 MR. VONNEGUT: -- their election to opt into the 8 release. 9 THE COURT: Yes. 10 MR. VONNEGUT: So with Your Honor's permission -- 11 THE COURT: Please. 12 MR. VONNEGUT: -- I'll talk with one of my 13 colleagues. So Your Honor, just -- apologies for the delay 14 there. 15 THE COURT: No, no. Not at all. 16 MR. VONNEGUT: I've confirmed. So folks who did 17 not give the release and changed their mind and want to opt 18 in, they can send in the ballot. 19 THE COURT: Right. 20 MR. VONNEGUT: People who do give the release -- 21 THE COURT: Right. 22 MR. VONNEGUT: -- there is not a mechanism for 23 them to then withdraw that release. 24 THE COURT: All right. 25 MR. VONNEGUT: So giving the release results in Page 42 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 the claim being allowed, which means they get to go to the 2 relevant creditor trust. Have their claim processed under 3 the relevant trust distribution procedures, and get whatever 4 distribution those provide for.

## THIRD…from the brief….

‘Third, the Plan delivered on a commitment made at the very outset of the Debtors-Appellees’ chapter 11 cases: the creation of a public document repository containing over 100 million of pages of material.’

SO ONE OF MS WALKERS PLAN ISSUES WAS WHO IS PAYING FOR THE DATA STORAGE & ELECTRICITY BILL FOR THE HUGEST REPOSITORY IN HER STORY BECAUSE IT SHOULD NOT BE WE THE PEOPLE BUT PURDUE PHARMA OR NOW KNOA.

FOURTH…RIGHT THEY WENT EFFECTIVE LATE AFTER HOURS ON A FRIDAY NIGHT WITH NO NOTICE AT ALL AND PRIOR TO PER DEBTORS & COURTS WORDS HEARING MS WALKERS LATE CLAIM PRIOR TO GOING EFFECTIVE THAT NEVER SHOULD HAVE HAPPENED AS THIS PLAN NEVER SHOULD HAVE BEEN CONFIRMED.

‘Knoa is a private company owned by a 501(c)(4)’

HOW IS A PRIVATE COMPANY A PUBLIC BENEFIT? THIS IS SOME REAL LEGAL FINAGELING.

## V. The Bankruptcy Court Confirms the Renewed Plan of Reorganization, Which Becomes Effective on May 1, 2026

## A. Solicitation of the Revised Plan and Voting

On March 19, 2025, the Debtors-Appellees filed the Thirteenth Amended Plan of Reorganization and corresponding Disclosure Statement, which, among other things, incorporated the terms of the Shareholder Settlements.

Pursuant to the Solicitation/Voting Procedures approved by the Court (A.004855 (Disclosure Statement Order, Ex. 1)), the Debtors-Appellees' Solicitation Agent, Kroll Restructuring Administration LLC ("Kroll"), mailed a solicitation package to each holder of Claims in the Voting Classes by July 11, 2025.

WAIT SO LAWYERS CAN URGE RECOMMEND OR ADVISE CREDITORS
THAT IS LEGAL ADVICE LAWYERS ARE NOT SUPPOSED OR CAN'T DO ALAS THEY HAVE

included (i) a notice of the Confirmation Hearing; (ii) the applicable Ballot; (iii) a cover letter from the Debtors-Appellees urging creditors to accept the Plan and a cover letter from the UCC recommending acceptance of the Plan; (iv) the Solicitation/Voting Procedures; and (v) a flash drive containing the Disclosure Statement Order, the Disclosure Statement, and the Plan.

THE VOTE FOR THE PLAN THAT 99% OF LAWYERS ACCEPTED HAS NO THING TO DO WITH THE OPT IN OR NOT OPT IN BEING CONSENSUAL.

'THIS STATES AFTER THE VOTING DEADLINES HAD PASSED KROLL TABULATED THE VALID BALLOTS'

After the distribution of the solicitation packages, voting commenced. When the applicable voting deadlines had passed, Kroll tabulated the valid ballots in accordance with the Solicitation/Voting Procedures. (See A.010036, A.010038–39 (Johnson Decl.).) The voting results confirmed historic consensus in support of the Plan. Across all classes of voting creditors, more than 99% of the ballots cast and more than 99% of the amount of total voting dollars voted to accept the Plan.

THE VOTING DEADLINE WAS 9.30.35 YET MS LOJKO WAS ALLOWED TO VOTE AFTER THE DEADLINE SO AGAIN NOT CONSISTENT. THEN WAS MS WALKER PROVISIONAL ON TIME BALLOT 'VALID' & COUNTED OR NOT….AND NOW THAT THE PREMATURE VOTING & OPTING IN OR NOT HAS LONG PASSED ARE THE 14 LATE ALLOWED CLAIMS VOTE AND OPT IN OR NOT OPT IN WHICH IS WHY THIS IS BACK TO NOT CONSENSUAL

BECAUSE ALL LATE CLAIMS WERE NOT HEARD AT ONCE PRIOR TO CONFIRMATION OR EFFECTIVE WHEN DURING CONFIRMATION THE OPT IN NOT OPT IN CONSENT WAS THE ISSUE OF THE ENTIRE CONFIRMATION THAT MS WALKER HAD TO CHANGE THE PLAN BUT ALAS EVEN THOUGH A NEW MARCH 1, 2026 DEADLINE WAS CREATED ALAS IT TOO LIKE THE BAR VOTING SHAREHOLDER AGREEMENTS ALL MOOT DATES.

## B. The Bankruptcy Court Holds the Confirmation Hearing and Confirms the Plan

'A three-day trial was held before the Bankruptcy Court on the Debtors-Appellees' Plan from November 12 through November 14, 2025'

MS WALKER WAS NOT INFORMED BY ARIK DURING THE ZOOMS WE WERE ALLOWED TO OBJECT WHICH DURING THOSE THREE DAYS MS WALKER IN FACT YES WAS OBJECTING WHAT ALL THE DISCUSSION ABOUT THE OPT IN NOT OPT IN WERE ABOUT EXCUSE ME.

'However, 19 pro se litigants, including eight of the Appellants in these Appeals, filed papers that could reasonably be construed as objections to the Plan.'

RIGHT BECAUSE THE PLAN TURNED OUT MS WALKER LEARNED DURING THOSE THREE DAYS WASNOT WHAT MS WALKER UNDERSTOOD AT ALL.

WOW DEBTORS MAKE NO MENTION OF MS WALKER CHANGING THE PLAN MID CONFIRMATION AND THE NEW MARCH 1ST DEADLINE BEING CREATED…INTERESTING OMISSION BEING THE ENTIRE CONSENT & HARRINGTON ISSUE.

11.14.25

22 THE COURT: All right. Thank you. And again, I 23 appreciate it. I know we've been peeling the layers of this 24 back. I think it's worthwhile. It's an important issue. 25 And so I just want it to be very clear. And I appreciate Page 102 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 the education. 2 And so Mr. Walker's question spurred some very 3 useful information on the record. 4 MR. HUEBNER: And a new fixed deadline. 5 THE COURT: And a new fixed deadline. 6 MR. HUEBNER: So she changed the plan.

THAT NEVER SHOULD HAVE BEEN CONFIRMED WHEN A NOT LAWYER DISABLED PAUPER WOMAN FOUND THE HOLE IN THE PLAN BECAUSE THE PREMATURE CONSENT PRIOR TO UNDERSTANDING THE RAMIFICATIONS THAT WERE NOT POSTED IN THE DEBTOR CREDITOR COMMITTEE DOCUMENT THAT IF WE DID NOT OPT IN WE HAD TO WAIT 18 MONTHS AND AGAIN WHEN PURDUE NO LONGER EXISTS WHO WOULD BE OBJECTING…WHY THERE WAS NO REASON WHY THE FOUR LAST LATE CLAIMS SHOULD NOT HAVE ALSO BEEN ACCEPTED ESPECIALLY MS WALKER WHO THE DAYS BEFORE 5.20.26 DEBTORS ET AL WERE AGAIN GOING TO ACCEPT MS

WALKERS CLAIM AS TIMELY ONLY IF MS WALKER GAVE UP HER APPEAL RIGHTS. THEN EVEN THOUGH TECHNICALLY MS WALKER DID CHECK THE BOX PREMATURELY DUE TO THE WELL LIES ON RECORD BY THE COURT AND DEBTORS THAT MS WALKERS LATE CLAIM WOULD BE HEARD PRIOR TO EFFECTIVE MS WALKER BEFORE THE NEW DEADLINE CHANGED HER OPT IN SO SINCE MS WALKER HAS YET TO BE HEARD AND BANISHED FROM THE COURT NOW WHAT…IT IS INTERESTING DEBTORS WANT TO HOLD MS WALKER TO HER REVOKED OPT IN THEY REFUSED TO ACKNOWLEDGE SO MS WALKERS WOULD NOT GET HER CASH RIGHT AWAY LIKE OPTED IN CLAIMS WHICH ISNOT CONSISTENT TREATMENT AND AGAIN WHERE DOES THAT LEAVE THE LATE CLAIMS ALLOWED WHO DID NOT VOTE AT ALL NOR OPT IN OR NOT….SO NO BACK TO NO CONSENT…ALL BECAUSE DEBTORS DID NOT KEEP THEIR WORDS ON RECORD NEITHER DID THE COURT TO YES MS WALKER SPECIFICALLY.

TOTALLY NOT COOL AT ALL AND VIOLATES HARRINGTON.

### C. Purdue Pharma is Sentenced Pursuant to the Court-approved Resolution with the Department of Justice

UM THE SACKLERS HOWEVER HAVE NEVER BEEN HELD ACCOUNTABLE FOR ‘MILKING PROGRAM’ ALAS THE NON DEBTOR SACKLERS ARE GETTING IN AN PERPETUITY RELEASE TO AVOID FUTURE LITIGATION I CAN’T IMAGINE THE SUPREME COURT WILL BE HAPPY WITH RIGHT….FROM PURDUE PHARMA PATIENT VICTIMS WHO HAVE NO THING TO RELEASE THE NON DEBTOR SACKLERS FOR THEY HAVE NO LAW SUIT FILED AGAINST THEM TO RELEASE THEM FOR WHICH IS YES WHY MS WALKER IS MORE SPECIFICALLY DAMAGED THAN OTHERS IN HER VERY UNIQUE THE DEBTORS CALLED ME.




The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See United States v. Detroit Timber & Lumber Co., 200 U. S. 321, 337.

SUPREME COURT OF THE UNITED STATES

Syllabus

HARRINGTON, UNITED STATES TRUSTEE, REGION 2 v. PURDUE PHARMA L. P. ET AL.

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 23–124. Argued December 4, 2023—Decided June 27, 2024

Between 1999 and 2019, approximately 247,000 people in the United States died from prescription-opioid overdoses. Respondent Purdue Pharma sits at the center of that crisis. Owned and controlled by the Sackler family, Purdue began marketing OxyContin, an opioid prescription pain reliever, in the mid-1990s. After Purdue earned billions of dollars in sales on the drug, in 2007 one of its affiliates pleaded guilty to a federal felony for misbranding OxyContin as a less-addictive, less-abusable alternative to other pain medications. Thousands of lawsuits followed. Fearful that the litigation would eventually impact them directly, the Sacklers initiated a "milking program," withdrawing from Purdue approximately $11 billion—roughly 75% of the firm's total assets—over the next decade.

Those withdrawals left Purdue in a significantly weakened financial state. And in 2019, Purdue filed for Chapter 11 bankruptcy. During that process, the Sacklers proposed to return approximately $4.3 billion to Purdue's bankruptcy estate. In exchange, the Sackers sought a judicial order releasing the family from all opioid-related claims and enjoining victims from bringing such claims against them in the future. The bankruptcy court approved Purdue's proposed reorganization plan, including its provisions concerning the Sackler discharge. But the district court vacated that decision, holding that nothing in

**D. The Plan Becomes Effective and is Consummated on May 1, 2026, Ending Purdue's Operations and Commencing Knoa Pharma's Public Health Efforts**

'the Debtors-Appellees emerged'

MS WALKER IS GOING TO LOSE HER MIND RIGHT NOW.
DEBTORS CONTINUE TO USE EVEN IN THIS BRIEF LIKE COPY & PASTING THE WRONG PETITION CLAIM NUMBER & CAPTION....TO USE THE WORD EMERGENCE WHICH ISNOT IN THE FEDERAL RULES OF BANKRUPTCY PROCEDURE BECAUSE LAWYERS HAVE GOTTEN AWAY WITH AGAIN GOING OUTSIDE OF THE FOUR CORNERS OF THE PAGES CREATED BY THE JUDICIARY RULES BY ARTICLE 4 I BELIEVE IT IS NOT BEING A LAWYER....WHY THIS IS CONSTITUTIONAL & WHY JUDGES AND LAWYERS HAVE BEEN MODIFYING CHANGING IGNORING THE RULES LAWS AND RIGHTS WHICH MS WALKER CAN ARGUE IS WHY THIS COUNTRY IS A NIGHTMARE...

ON A SIDE ISSUE....LIKE 'PRIOR TO EFFECTIVE'....

WHAT DO THE ARTICLE II SECTION 3 WORDS

**'HE SHALL TAKE CARE THAT THE LAWS BE FAITHFULLY EXECUTED'**
MEAN BUT NOT TO DISQUALIFY FELONS WHO BY NATURE OF BEING FELONS TOOK NO

CARE TO FAITHFULLY EXECUTE ANY LAWS ALAS THE TWICE IMPEACHED PUSSY GRABBER WHO ADMITTED GUILT TO RIPPING OFF CHARITY WHO MSHANDLED OUR NO LONGER TOP SECRETS STORED IN A MAR A SHIT HOLE TOILET FELON DONALD J TRUMP HAS NOT YET BEEN REMOVED FOR BEING DISQUALIFIED PER THE CONSTITUTION. OR WHY DID THE FOUNDERS PUT THAT LINE IN ARTICLE 2?

I DIGRESS…AND IF THAT IS PROFANITY I CAN QUOTE JUSTICE HARLAN ROSEMARYS VULGARITY IS ROSEMARYS LYRIC COHEN VS CALIFORNIA. THERE ARE NO BAD FIRST AMENDMENT WORDS ESPECIALLY DURING THE REIGN OF A SELF PROCLAIMED PUSSY GRABBER.

THE SACKLERS EMERGE SCOTT FREE WITHOUT PUNISHMENT FOR THEIR CRIMES SHOULD NOT BE A SENTENCE.

WAIT WHAT ….

‘The roughly $880 million provided by the Debtors-Appellees was disbursed to the various creditor trusts together with approximately $1.1 billion in Sackler payments, and there is no practical way to trace current location of all dollars contributed by the Debtors-Appellees.’

SO MORE INCOMPETENCE SO THE LAWYERS WRITE A REVERSED PLAN EDGAR THE TRUST ADMINISTRATOR HAS NO IDEA HOW MANY OF EACH TIER CLAIMS THERE ARE AND NO ONE IS ACCOUNTING FOR ALL THE CASH BECAUSE THAT IS EXACTLY HOW THE PLAN IS SET UP TO BE AS CONFUSING AS HUMANLY POSSIBLY.

WHY WOULD NOT AN ACCOUNTING FIRM HAVE BEEN IN CHARGE OF ALL THE MONEY NOT TRUSTS WHERE NO ONE IS KEEPING TRACK…..THIS IS NOT ONLY THE MOST CORRUPT BANKRUPTCY IN US HER STORY THIS IS THE MOST INCOMPETENT BANKRUPTCY IN US HER STORY.

SO THE DEBTORS HAVE NO ASSETS BUT THE SACKLERS STILL DO WHICH IS SUPER PROBLEMATIC.

### VI. Nine Individuals Proceeding Pro Se Appeal the Confirmation Order

‘Mr.Williams, who did not object to confirmation of the Plan, filed his notice of appeal’
WHAT DOES VOTING FOR THE PLAN HAVE TO DO WITH THE PRICE OF FISH I TOO VOTED FOR THE PLAN UNTIL I HEARD WHAT WAS IN THE PLAN.

THE ISSUE ISNOT THE PLAN VOTE BUT THE OPT IN NOT OPT IN CONSENT ISSUE.

‘CONSTRUED AS’ SO RUDE ABOUT IN MY CASE A QUALIFIED DISABLED PRO SE PAUPER WHO IS DOING THE VERY BEST I CAN UNDER ABSURD CIRCUMSTANCES & ALMOST IMPOSSIBLE DEADLINES FOR ME TO MEET, THAT I HAVE.

YES MS WALKER IS SEEKING VACATUR…A STAY TRO HALT PAUSE HOLD ALL OF THE ABOVE PER MS WALKERS NUMEROUS REQUESTS…..WAIT TO BE CLEAR THERE IS NO LIMIT TO AMENDMENT I IN AMENDMENT I IN THE US CONSTITUTION AS TO HOW MANY PETITION FILINGS AN AMERICAN CAN FILE TO ENFORCE THEIR RIGHTS…RIGHT.




DURING MY TIME TO SPEAK ALAS MS WALKER WAS INTERRUPTED AND CHASTISED FOR READING AMENDMENT I ON RECORD…OUTRAGEOUS QUASI IT DOESNOT MATTER.

'So you just cited the First Amendment, 18 but you didn't explain how in your view the First Amendment 19 was affected by any of this. So if you cite legal 20 authority, that would be helpful.'

AND AFTER DOC 6257 & 7858 FOR DARING TO REQUEST TO BE IN THE LATE CLAIM HEARING SINCE MR LOJKO CONTACTED ME & WE HAVE BECOME FRIENDS SO I WANTED TO LISTEN….UH MS WALKER WAS MENTIONED DURING THAT HEARING TOO. FOR MY BIRTHDAY I HAD MY AMENDMENT I ADA AND TITLE RIGHTS DUE PROCESS & EQUAL PROTECTIONS VIOLATED….YEAH NOT A GREAT AMERICAN PRESENT.

UM MS WALKER CAN NOT SEE THE DOC 93 at 5 AND ARGUED NO MY CASE SHOULD NOT BE CONSOLIDATED 'BASED ON A SINGLE FACTUAL RECORD' THE RECORD ISNOT TOTALLY FACTUAL.

SO AGAIN IS MS WALKER OPTED IN OR NOT OPTED IN.....WHEN DID THE RELEASES HAPPEN PRIOR TO THE NEW MARCH 1ST DEADLINE & PRIOR OR AFTER TO THE OPT IN NOT OPT IN ISSUE BEING HEARD WHICH ALAS HASNOT HAPPENED.

'this Court found that Appellants likely lacked standing to challenge the Plan's nondebtor releases because neither Appellant had consented to release their own claims against the Sacklers. (Pitts-Tillman Appeal, Dkt. No. 44 at 2.) The Court also found that delaying emergence'

THE NO PUBLIC BENEFIT COMPANY MS WALKER ARGUES..UHH IF KNOA IS A PUBLIC BENEFIT WHY IS IT A DOT COM NOT DOT ORG OR NET OR PB FOR PUBLIC BENEFIT



## ARGUMENT

NO THE CONFIRMATION SHOULD NOT BE AFFIRMED.

'as a factual matter, releases of third-parties under the Plan were
granted only by creditors who affirmatively consented to settle such claims.'

SEE THIS IS WHERE CONSOLIDATION WASNOT FAIR. SO IF THE COURT DENIES ONE APPEAL THE COURT DENIES US ALL…THAT IS WHAT ISNOT FAIR WHEN PER THE DEBTORS MS WALKER IS A 'UNIQUE' CASE THE HANGING CHAD THE CATCH 22.

'MR. HUEBNER: So, Your Honor, I will do my best to 19 answer on the fly and I'll look to Mr. Preis and others to 20 help where they can. 21 So Ms. Walker's situation is one of the few that 22 is relatively unique, although one should never modify the 23 word unique'

YES MS WALKER IS UNIQUE & UNLIKE ANY OTHER HUMAN ON EARTH.
'sua sponte' SO NOT FAIR WHEN THE COURT AND DEBTORS ARE ***FALSUS IN UNO, FALSUS IN OMNIBUS*** nah nah nah nah nah.



Page 58

THE COURT: Yes.

MR. VONNEGUT: And I see no reason that we can't address and resolve all of those prior to emergence.

THE COURT: All right. Thank you. And I can't -- I don't -- I can't think of any other category. Right? I think those are the categories that we've been talking about. We've been talking about timeliness consistently and then the other one, substantiation. So I think we've talked

ALAS DEBTORS ET AL DID NOT SO THERE HAS BEEN NO RESOLUTION TO MS WALKER VERY MOST IMPORTANT CONSENT OPT IN NOT OPT IN ISSUE IN THE BANKRUPTCY COURT. WHICH HAS TAKEN MS WALERS 'MEANINGFUL RIGHTS' THE JUDGE ASSURED MS WALKER WOULD NOT HAPPEN YET HAS.

FOR COURTS TO EXPECT DISABLED PRO SE PAUPERS TO UNDERSTAND & MEET AGAIN RIDICULOUS DEADLINES WHEN MS WALKER JUST HAD SURGERY HAS ZERO

BILLS NO STAMPS NO ACCESS TO SEE DOCUMENTS ON MY OWN PETITION WHICH ISNOT DUE NOR ANY PROCESS, WHERE IS AN ADA LAWYER TO ENSURE MS WALKERS ADA RIGHTS ARE ENFORCED THE COURT IS BLOCKING ACCESS TO MY FINE REQUESTS LIKE THE TRANSCRIPTS ARE NOT AVAILABLE FOR PUBLIC VIEW WHEN IT READS THEY WOULD BE IN FEB 26…SO WHY HAVE THEY NOT BEEN RELEASED?

## I. The Bankruptcy Court Correctly Determined that the Releases Under the Plan are Fully Consensual

WRONGFULLY

THIS IS FALSUS IN UNO FALSUS IN OMNIBUS

MS WALKER IN FACT CHECKED THE BOX PREMATURELY BEFORE UNDERSTANDING THE REPERCUSSIONS.

11.14.25

2 THE COURT: These things happen. So for this 3 particular issue of opt outs, remind me what there is that 4 would govern that. Just it's probably worth putting on the 5 record. 6 MR. VONNEGUT: Sure. So folks who did not opt in 7 to give the releases. 8 THE COURT: Right. 9 MR. VONNEGUT: If they change their minds and 10 decide that they would prefer the higher plan distribution 11 and they want to opt in, they can do so up to 30 days prior 12 to the effective date. 13 THE COURT: All right. 14 MR. VONNEGUT: And so again, if you are a third15 party payer, or a personal injury claimant, you'd do that by 16 ticking a box on your ballot and submitting it. And so the 17 procedures for doing that are laid out in our disclosure 18 statement.

THERE WAS NO THING TO GOVERN THIS WHY THE PLAN SHOULD NOT BE CONFIRMED UNTIL THE CONSENT OPT IN NOT OPT IN IS RESOLVED THAT SHOULD HAVE BEEN PRIOR TO CONFIRMATION & EFFECTIVE WHY MS WALKER HAS BEEN DEMANDING MOTIONING REQUESTING A STAY TRO PAUSE HALT HOLD AND IS STILL DEMANDING A STAY.

THE SACKLERS WHO THE SUPREME COURT 'Fearful that the litigation would eventually impact them directly, the Sacklers initiated a "milking program," withdrawing from Purdue approximately $11 billion—roughly 75% of the firm's total assets—over the next decade.'

Held: The bankruptcy code does not authorize a release and injunction HARRINGTON v. PURDUE PHARMA L.P. Syllabus that, as part of a plan of reorganization under Chapter 11, effectively seek to discharge claims against a nondebtor without the consent of affected claimants. Pp. 7–19. (a) When a debtor files for bankruptcy, it "creates an estate" that includes virtually all the debtor's assets. 11 U. S. C. §541(a)

THIS BRINGS UP A MAJOR ISSUE WITH THE CONNECTICUT PROBATE COURT AND LIVING SACKLERS BEING FIDUCIARIES FOR DEAD SACKLERS WHEN MS WALKER IS SUING BOTH LIVING & DEAD SACKLERS PER DEBTORS DOC WITH MS WALKER STILL WRONG AND NOW REPEATED WRONG CASE NUMBER 23CV33935, ONE HOW CAN NON DEBTORS WHO DID 'LOOTING' 'FRAUDULANT WIRE TRANSFERS' LIED TO THE GOVERNMENT BE FIDUCIARIES AND BECAUSE THE BANKRUPTCY JOINED LIKE MY CASE THE ESTATES THIS IS A CONFLICT OF INTEREST AND AN EGREGIOUS CLEAR ERROR PLUS THOSE ESTATES BELONG TO THE BANKRUPTCY TRUSTS NOT THE SACKLERS PER 11 USC SQUIGGLY THING 541 (a) PER THE SUPREME COURT.
I HAVE WRITTEN THE PROBATE COURTS AS ALAS THE LAWYERS

**THE BRIEF…**

'every Appellant who argues the releases are nonconsensual chose not
to grant and is thus not bound by the third-party releases at all, was not "forced" to
release anyone,
AGAIN THIS ISNOT FACTUAL. WE WERE PREMATURELY FORCED TO VOTE

RIGHT SO IF THE OPT IN NOT OPT IN WAS PREMATURE 9.30.25 AND MS WALKER DID NOT UNDERSTAND THE RAMIFICATIONS THAT MS WALKER WOULD BE GIVING UP HER PETITION RIGHT IN MARION COUNTY 23CV33935 PRIOR TO HER LATE CLAIM BEING HEARD & HAVE TO WAIT 18 MONTHS IF I DID NOT OPT IN I DID NOT UNDERSTAND UNTIL HEARING IT MID CONFIRMATION DAYS AND SOME LATE CLAIMANTS NEVER VOTED OR OPTED IN OR NOT PER THE DISCLOSURE STATEMENT & PLAN THIS IS A CONSENT HARRINGTON ISSUE.

MS WALKER STILL FINDS IT OUTRAGEOUS A BANKRUPTCY COURT COULD OFFER A RELEASE IN WELL NO CIVIL CASES AS PURDUE PHARMA PI PATIENT VICTIMS HAVE NOT FILED ANY LAW SUIT AGAINST THE NOT DEBTOR SACKLERS SO WHY EVEN WITH A RELEASE THIS IS ACCEPTABLE IS MIND BOGGLING WRONG. SO THE SACKERS FEAR IS BEING ALLEVIATED BY THE BANKRUPTCY COURT WHICH ISNOT FAIR AND DENIES THE RIGHT TO PETITION FOR REDRESS IN EXCHANGE FOR CASH WHICH YES IS A BRIBE

11.14.25
25 THE COURT: So what if somebody had exercised Page 41 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 that, filled it out, the effective date has not arrived -- 2 MR. VONNEGUT: Yes. 3 THE COURT: -- and they have a change 4 (indiscernible)? 5 MR. VONNEGUT: And they would like to withdraw -- 6 THE COURT: Yes. 7 MR. VONNEGUT: -- their election to opt into the 8 release. 9 THE COURT: Yes. 10 MR. VONNEGUT: So with Your Honor's permission -- 11 THE COURT: Please. 12 MR. VONNEGUT: -- I'll talk with one of my 13 colleagues. So Your Honor, just -- apologies for the delay 14 there. 15 THE COURT: No, no. Not at all. 16 MR. VONNEGUT: I've confirmed. So folks who did 17 not give the release and changed their mind and want to opt 18 in, they can send in the ballot. 19 THE COURT: Right. 20

MR. VONNEGUT: People who do give the release -- 21 THE COURT: Right. 22 MR. VONNEGUT: -- there is not a mechanism for 23 them to then withdraw that release. 24 THE COURT: All right. 25 MR. VONNEGUT: So giving the release results in Page 42 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 the claim being allowed, which means they get to go to the 2 relevant creditor trust. Have their claim processed under 3 the relevant trust distribution procedures, and get whatever 4 distribution those provide for.

AND WHOOP HERE IS THE CONSENT OPT IN NOT OPT IN PROBLEM THERE WAS NO WAY TO CHANGE OUR OPT IN IF OUR CLAIMS WERE NOT HEARD PRIOR TO CONFIRMATION OR EFFECTIVE WHY EVERY LATE CLAIM SHOULD HAVE BEEN HEARD ON MY BIRTHDAY 9.17.25 BUT ALAS SOME CLAIMANTS GOT TWO HEARINGS ALAS THE JUDGE NEVER RULES AND MS WALKER WHO WAS INVOLVED FAR LONGER SINCE EARLY 2024 IN THE BANKRUPTCY WHEN DEBTORS JOINED MY CASE PRIOR TO HARRINGTON BEING DECIDED AND WHEN THE BAR DATE BECAME MORE MOOT AGAIN A BANKRUPTCY COURT CAN NOT DENY AMERICANS THE AMENDMENT I RIGHT TO PETITION FOR REDRESS THAT TOO IS UNCONSTITUTIONAL WHEN ON RECORDS UCC DEBTORS STATED MILLIONS OF AMERICANS ARE DEAD AND WILL CONTINUE TO DIE UNDER A NOW PUBLIC BENEFIT WITH NO PUBLIC BENEFIT AT ALL SINCE NO LIMITATIONS OR PACKAGING WERE PUT IN PLACE TO STOP THE DEATHS.

AGAIN PER THE RECORD MS WALKER DID OPT IN AND AS IT STANDS NOW MY OPT IN STANDS UNTIL THE OPT IN NOT OPT IN ISSUE IS HEARD WHY THE PLAN NEVER SHOULD HAVE BEEN CONFIRMED AND MUST BE REVERSED IF ANYONE WASNOT PROVIDED THE RIGHT TO CONSENT THE OPT IN NOT OPT IN IS MOOT ESPECIALLY FOR MS WALKER & YES MS WALKERS RIGHTS MUST COUNT.

11.14.25

1 opted in and approved the plan. But that doesn't mean that 2 that's going to stay that way if my claim is not approved. 3 Then I'm going to revoke my release of the Sacklers. 4 And then will we be punished? Because yesterday 5 they were mentioning two years -- like if you don't release, 6 then they can wait up to two years. And why would the 7 Sacklers get paid lawyers' fees for defending what lawsuits 8 will be done against them when -- if we revoke our release. 9 I mean, again, that just doesn't seem like it's really 10 written in, and it should be amended along with -- 11 THE COURT: All right. So let me see if I can get 12 you information on one of those things.

NO IT DOESNOT DISPOSE OF APPEALS I BEG DEBTORS PARDON

## A. The Plan’s Third-Party Releases Are Fully Consensual

IF THERE WAS CONFUSION THAT IS A PROBLEM. THERE WAS NO MEETING OF THE MINDS. LAWYERS SURE LIKE TO BLAME EVERYONE BUT THEMSELVES FOR NOT KEEPING THEIR WORDS AND WRITING REVERSED REJECTED LEGAL…..

UM ARE VOTES NOT PRIVATE…WHY ARE THEY POSTING THIS & WHERE IS HOW EVERYONE VOTED AND HOW MANY CHANGED THEIR OPT IN OR NOT OPT IN PRIOR TO MARCH 1 2026…IS THE QUESTION…

Appellant Vote on Plan Granted Third-Party
Releases?
Ronald Bass Reject No (Blank)
Maria Ecke Reject No
Ellen Isaacs Reject No
Mary Janotta No Ballot Returned No (No Ballot Returned)
Amanda Morales Reject No
Laurie Danielle Pitts-
Tillman
Accept No

Keith Redwood Accept Yes (Opt-In to Releases)
Rosemary Walker Claim disallowed No (claim disallowed)17

AHHHH AND WHOOP HERE IS THE MAJOR CONSENT OPT IN NOT OPT IN ISSUE BECAUSE COURT DEBTORS ARE ***FALSUS IN UNO, FALSUS IN OMNIBUS*** SINCE MS WALKER PER THE RECORDS LATE CLAIM WASNOT HEARD PRIOR TO EFFECTIVE NOR WAS THE OPT IN NOT OPT IN ISSUE EVEN HEARD YET EVEN FURTHER DELAYING CONSENT & MS WALKER RIGHTS.

SO AGAIN IS MS WALKER OPTED IN OR NOT OPTED IN BECAUSE DEBTORS SAID IF I OPTED IN I HAVE A TICKET TO THE TRUST AND A PRESCRIPTION OR DOCUMENT PROVING WE WERE PRESCRIBED A PURDUE BRAND DRUG WE HAD A CLAIM PERIOD FULL STOP I BELIEVE WERE THE COURTS EXACT WORDS.

MY CLAIM NEVER SHOULD HAVE BEEN DISALLOWED AGAIN MS WALKER IS STILL IN SHOCK WHEN LEGALLY THE COURT HAD NOT A LEGAL LEG TO STAND ON TO DENY MY PIONEER EXCUSABLE NEGLIGENCE CLAIM WHEN EVERY PARTY HAS KNOWN AND COMMUNICATED WITH MS WALKER AND EDGAR & THE PURDUE PI TRUST ISSUED MS WALKER A TIER 2 CLAIM.

THIS IS THE ENTIRE PROBLEM…DEBTORS SO FAR HAVE NOT EVEN MENTIONED THE DEADLINE THEY HAD TO CREATE THEY THEN MOOTED BY NOT HEARING MS WALKERS LATE CLAIM UNTIL AFTER EFFECTIVE AGAIN ***FALSUS IN UNO, FALSUS IN OMNIBUS***.

17 Only a “person aggrieved” has standing to appeal an order from the bankruptcy court. Gordon v. Gazes (In re 22 Fiske Place, LLC), 2022 WL 2819093, at *7 (S.D.N.Y. July 18, 2022). This test is more demanding than standing under Article

III; the injury must be direct and financial. Id. Ms. Walker does not meet these stringent standards because her claim has been disallowed by the Bankruptcy Court,

****WRONGFULLY DISALLOWED & YES MS WALKER IS AGGRIEVED BIGLY AND MEANINGFULLY SINCE MS WALKERS RIGHTS HAVE BEEN WELL NON EXISTENT.

"any third party release is effective only with respect to those who affirmatively consent to it . . .");

SO THIS IS A NOT RECIPROCAL RELEASE TO SAY IT IS ONE SIDED RELEASE OR BE EVEN MORE DELAYED & EVEN THOUGH PURDUE PHARMA NO LONGER EVEN IS A THING I THINK WHY THIS COURT ALLOWED THE AD HOC TO NOT BE A PARTY WHICH IS WRONG WRONG WRONG WRONG WRONG WHO WILL OBJECT TO CLAIMS...AND WHY WOULD ANY CLAIMANT NOT ALL CLAIMANTS HAVE TO WAIT 18 MORE MONTHS...THIS IS SO BEYOND NOT FAIR NOT CONSENSAL AND AGAIN WHERE IN THE DOCUMENT DOES THIS READ IF WE DID NOT OPT IN WE HAD TO WAIT 18 MONTHS AND THE CLAIM COULD BE DENIED EVEN IF WE HAVE THE TICKET TO THE TRUST....?

> **Elect to Grant or Not Grant the Third-Party Releases:** You may, through your ballot or your participation in the applicable direct claims shareholder settlement (as described in the Disclosure Statement and the Plan), elect to grant or not to grant releases of any actual or potential claims that you have against Sackler family members, and certain other individuals and related entities, relating to Purdue Pharma L.P. and its affiliated debtors (i.e., the third-party releases). **Electing to grant or to not grant the third-party releases is completely voluntary, but you may receive less compensation if you do not elect to grant such third-party releases.** The Debtors and the Creditors' Committee recommend that you elect to grant the third-party releases.

RIGHT THIS RECOMMENDATION SO COERCED LEGAL ADVICE DOES NOT...IT DOES READ MAY RECEIVE LESS COMPENSATION WHICH IS ALSO NOT CONSISTENT NOR FAIR.

OOOOOO COERCION....MS WALKER IS psyCHIC....

## B. The Plan Did Not "Coerce" Creditors to Opt-In by Providing Third-Party Settlement Consideration Only to Those Creditors That Elected to Participate in the Third-Party Settlements

THE ABOVE DOCUMENT PROVES OTHERWISE....

OMG I AM GOING TO LOSE MY MIND WITH THIS ENTIRE BULL SECTION

As an initial matter, it appears some Appellants remain confused about the Plan, and argue—incorrectly—that creditors must opt in to the third-party releases to receive distributions on account of their claims against the Debtors. This is simply wrong (see A.008131; A.008243–45; A.008249–53 (Plan §§ 1.1, 10.6(b), 10.7(b)),

and the Bankruptcy Court correctly explained as much: creditors who did not release their direct claims against the Sacklers are still entitled to "receive pro-rata distributions from the Estate Claims Settlement and other estate value (if they meet the applicable trust distribution procedures)" on any allowed claims. (MBR at 54.) No creditors' eligibility to receive distributions on account of claims against the Debtors was conditioned on their decision to grant or withhold the third-party Releases. On the other hand, because non-settling creditors did not release their direct claims against the Sacklers, they, of course, do not receive additional distributions and rights18 in consideration for a settlement they decided not to become party to—

18 As the UCC explains in paragraph 14 of its brief, claimants who elected to give a release also had their claims immediately deemed "allowed," (see also supra note 6) and the Debtors, Sacklers, and other Plan proponents agreed to waive any legal objections to their claims.

EVEN THE NOTATION IS A LIE IN MS WALKERS CASE…

i.e. they do not receive consideration on account of a contract they declined to enter into. (See id.) Instead, such creditors "will be able to pursue litigation of their direct claims against the Shareholder Released Parties" irrespective of whether their claims are allowed in the bankruptcy.

WAIT SO THE SACKLER RIGHT THE 'SHAREHOLDER RELEASED PARTIES' WHO HAVE TO MS WALKERS KNOWLEDGE TO DATE NOT SIGNED THE DOCUMENTS AS SACKLERS A & B AND PODS ARE ALL STILL ARGUING BETWEEN THEMSELVES AND NEVER MET THE DEADLINES MS WALKER MOTIONED FOR THE COURT TO ISSUE SANCTIONS BUT ALAS….NO SANCTIONS BECAUSE EVERY ONE IS KISSING SACKLER ASS WHO LIKE THE FELON DONALD J TRUMP WHO ALSO HAS BEEN ABOVE LAW & THE CONSTITUTION ARTICLE 2 SECTION 3 TYPING OF ARTICLES AS THE WEALTHY ARE IN FACT ABOVE LAW AS DISABLED AMERICAN PRO SE PAUPERS ARE HELD TO LAWYER STANDARDS WHEN CLEARLY MS WALKER PER ARIK ET AL HAVE ALL AND CONTINUE TO STATE THERE IS STILL CONFUSION WHICH ISNOT A MEETING OF THE MINDS.

WHY SHOULD MS WALKER HAVE TO GIVE UP ONE RIGHT IN ONE COURT BECAUSE OF A NOT HER COURT THAT IS FUNDAMENTALLY NOT FAIR WHY THE OPT IN NOT OPT IN IS MORE UNFAIR TO MS WALKER AGAIN WHAT LITIGATION NO OTHER PURDUE PI CLAIMANT TO MY KNOWLEDGE HAS A LAW SUIT PENDING AGAINST THE SACKLERS PLUS AGAIN THE COURTS UNTIL SOMEONE ISSUES AN ORDER JUDGE LANE DID FOR MS WALKER THAT WELL AGAIN I DON'T NEED THE COURTS PERMISSION TO PURSUE MY LAW SUIT YET SINCE PURDUE NO LONGER EXISTS THERE ARE NO 'SHAREHOLDERS TO PURSUE' AND COURTS WILL SAY STATUTE OF LIMITATIONS IS UP BECAUSE OF THE INCOMPETENT LAWYERING THAT WAS ONLY REJECTED REVERSED DISALLOWED ILLEGAL UNCONSTITUTIONAL 6.27.24 YET THIS ALL HAPPENED DECADES AGO NOW.

AGAIN SO THIS TOO ISNOT FACTUAL IN REALITY.

SEE MY CLAIM IN PURDUE MUST BE ALLOWED AND I SHOULD NOT HAVE TO WAIT FOR MY MONETARY RECOVERY FOR 18 MONTHS DURING IMAGINARY PURDUE PHARMA PEOPLE WILL COME OUT OF THE WOODWORKS TO OBJECT SO WHAT THIS CASE IN REALITY NEVER ENDS …HOWARD EDGARS NEW LAWYER STATED ANY DENIED CLAIMANT HAS THE RIGHT TO APPEAL SO TO SAY MY CLAIM IS DISALLOWED IS A FALSE STATEMENT PLUS TOTALLY WRONGFULLY DISALLOWED….AGAIN SO UNLESS MS WALKER AGREED TO GIVE UP HER RIGHTS TO AMENDMENT I DEBTORS WERE TWICE GOING TO ALLOW MY CLAIM AS TIMELY THE TRUST HAD ALREADY ISSUED ME A TIER 2. NOW MY SACKLER LAWSUIT ISNOT OFF INJUNCTION DUE TO MS WALKERS OPT IN NOT OPT IN ISSUE NOT EVEN HAVING BEEN HEARD YET.

WHY THIS HAS BEEN TOTALLY UNFAIR AND YES IN FACT HAS TAKEN MS WALKERS VERY MEANINGFUL RIGHTS WRONGFULLY.

## C. Appellants that Did Not Grant the Third Party Releases Lack Standing To Challenge Releases That They Did Not Give and That Do Not Bind Them

The Appellants who did not grant the third-party releases—i.e., every Appellant other than Mr. Redwood—are not party to the settlement, and thus lack standing to challenge the third-party releases.19 To satisfy the "injury in fact" requirement of Article III standing, a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."

WELL DAHHHH THIS IS EXACTLY WHY IS WAS WRONG TO CONSOLIDATE OUR APPEALS WHEN MS WALKERS 'UNIQUE' HANGING CHAD IS HER OWN NO ONE ELSES & MS WALKERS RECORDS HAVE NO THING TO DO WITH AMANDAS OR RONS OR ANYONES. THEN WHY ARE THIRD FOURTH FIFTH PARTY RELEASES EVEN ALLOWED OK SO AFTER I FILED MY PETITION CLAIMS IN OREGON I FOUND PAUL SCHWARTBERGS THE US TRUSTEES NAME WHO I CALLED & WHO GAVE ME ARIKS NUMBERS I ALSO CALLED… PRETTY MUCH THAT I WAS ALREADY ARGUING NOT FAIR TO HIM AND PAUL SAID 'WELL YOU NOW WHO WROTE THE BANKRUPTCY LAW' AND I SAID 'THE GOVERNMENT' AND HE SAID RIGHT SO I SAID SO I WILL HAVE TO ARGUE BANKRUPTCY LAW AND LOOK YEARS LATER MS WALKER IS IN FACT ARGUING BANKRUPTCY LAW.

9 MR. VONNEGUT: Correct. Correct. But again, it 10 only occurs at emergence. So if your claim gets disallowed 11 prior to emergence, you're not bound to the release, you're 12 not treated as a claimant in the case. 13 If you grant the release, your claim is deemed 14 allowed at emergence. You then go to the PI claims trust 15 for processing of your claim and it is possible that the 16 trust distribution procedures on the basis of your specific 17 claim then say you do not get a recovery from the personal 18 injury trust. 19 However, it's important to note the ballots

that 20 everybody signed to opt into the releases, and those are on 21 file for PIs and I believe third-party payors as well, those 22 are on file at 7611 filed June 20th. And I just have the 23 language here. 24 So what it says is if you grant the release, such 25 holder's claim will be considered allowed and therefore such Page 52 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 holder may be entitled to compensation at the value 2 established under the plan and the PI trust distribution 3 procedures through a streamlined and expedited process. 4 So effectively if you grant the release, your 5 consideration is the opportunity to have your claim treated 6 by the trust. It's not necessarily a guarantee that you 7 will receive a recovery. 8 THE COURT: All right. But I guess am I right in 9 saying that people don't really have a choice as to the 10 timing, right? I mean, whether something -- whether this 11 issue comes to the fore before emergence or the effective 12 date or not is not necessarily within their control.

AGAIN I DID OPT IN BECAUSE I WAS PREMATURELY COERCED TO DO SO THAT I WOULD NEVER COLLECT AND ARIK EVEN SAID THE SACKLERS CASH IS ALL OFF SHORE SO WHY HAS NO ONE GONE AFTER IT IS THE QUESTION RIGHT.

‘Similarly, arguments concerning “coercion” or “bribery” by Appellants that did not grant the releases are both baseless and irrelevant in this context.’

MS WALKER DID GRANT THE RELEASE PRIOR TO UNDERSTANDING I WOULD LOSE MY RIGHTS IN MY LAW SUIT AGAINST THE SACKLERS WHICH ISNOT FAIR TO MS WALKER SO TOTALLY RELEVANT I AGAIN BEG DEBTORS PARDON.

5.20.26 AFTER EFFECTIVE LATE CLAIM PAGE 61-62

18 First is that the claims administrator wants to 19 make clear that just because an untimely proof of claim may 20 be deemed as timely, that the claim still will be subject to 21 the TDP and may not be entitled to payment from the trust 22 subject to -- 23 THE COURT: And that means that people need to 24 submit their documentation, their information to you, and 25 it'll be addressed like any other claim that was timely Page 62 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 filed. Yep. 2 MR. ISRAEL: That is correct, Your Honor. And the 3 trust does provide certain appeal rights through the trust 4 process. And with respect to that, Section 2.6 of the trust 5 agreement provides that the trustee may engage an appeals 6 special master whose responsibility it is to review and 7 decide appeals from the decision of a claim's administrator. 8 Mr. Gentle has appointed Kenneth Simon, a retired Alabama 9 Circuit Court Judge and an attorney licensed to practice in 10 the state of Alabama as an appeals special master.

ARE DEBTORS STATING MS WALKER WHO HAS BEEN THROUGH THE TRUST PRIOR TO THE COURT WRONGFULLY DISALLOWING MY CLAIM AND EVEN THOUGH MS WALKER IMMEDIATELY MOTIONED TO APPEAL TO THE SPECIAL MASTER OMG LAW IS SO KINKY SUBMIT MASTERS …..GAGGED GIGGLE…IT HAS BEEN A VERY VERY LONG FEW DAYS

OF TYPING AFTER MS WALKERS MONDAY SURGERY MS WALKER IS EXHAUSTED BUT LEGAL DEADLINES AND RESPONSES TO WRITE RIGHT….

I LOVE THEY DID THE REVERSE OF MS WALKERS ISSUES MS WALKER MEETS THE EVIDENCE OPTED IN YET ALAS NO TICKET AND NO ONE KEPT THEIR ON RECORD WORDS THAT NOW THEY ARE THROWING TO ADD INSULT TO MS WALKERS PURDUE PHARMA INJURIES BACK IN MY FACE WHEN IT IS THEIR ALL THEIR FAULTS.

MS WALKERS CLAIM STILL SHOWS ON KROLL AS IT WAS TRANSMITTED 30 DAYS PRIOR TO EFFECTIVE OR CONFIRMATION PER THE PLAN WORDS…BUT ALAS …MS WALKER IS DISALLOWED AND HER RIGHTS NON EXISTENT.

11.14.26
11 THE COURT: All right. But I guess it doesn't 12 matter whether the -- necessarily whether the issues teed up 13 before emergence, because it's going to be a question of 14 whether -- or it's decided before emergence.

WHAT HAPPENED TO ‘SO IF YOU GRANT THE RELEASE IF YOU TICK THE BOX ON YOUR BALLOT YOUR CLAIM IS THEREFORE DEEMED ALLOWED…?



allowed. But that allowance is deemed to occur at emergence.

So if you grant the release, if you tick the box on your ballot, your claim is therefore deemed allowed --

THE COURT: So it's more like a provisional allowance than an actual allowance. All right.

MR. VONNEGUT: Correct. Correct. But again, it only occurs at emergence. So if your claim gets disallowed prior to emergence, you're not bound to the release, you're not treated as a claimant in the case.

MORE FALSUS IN UNO FALSUS IN OMNIBUS…..

3:08

PRIME CLERK IS NOW KROLL RE
ADMINISTRATION. ALL PRIME CLER
ADDRESSES ARE AUTOMATICAL

KROLL

Page 1

| | |
|---|---|
| Schedule | |
| Claim # | 634787 |
| Filed Date | 08/04/2025 |
| Creditor Name | Name and addres |
| Debtor Name | Purdue Pharma L. |
| Claim Value | $100,000,000.00 |

p

Mon, Jul 28, 2025, 8:40 AM

**purduepitrust** <purduepitrust@purduepitrust.com>

to me, Purdue, Arik,
Paul

Good morning Ms. Walker,

Confirming the Purdue PI Trust receipt of your Non-NAS Claim submission.

Best,

Purdue PI Trust

SO MY PURDUE PI CLAIM FORM WAS RECEIVED ON TIME.

Mon, Aug 11, 2025, 10:44 AM

**Preis, Arik**
**<apreis@akingump.com>**

to me, Purdue,
Pharma, Purdue

Kroll Team:

Rosemary did not receive her voting package.  Can you please send to her?

Thanks,

Arik

**Arik Preis**

**Akin**

One Bryant Park | New York, NY 10036-6745 | USA | Direct: +1 212.872.7418

Fax: +1 212.872.1002 | apreis@akingump.com | akingump.com | Bio

AGAIN THERE HAVE BEEN SO MANY NUMBERS & MS WALKER WAS MOSTLY CONCERNED ABOUT HER STILL WRONG PETITION CLAIM NUMBER 23CV33935. SO ARIK REQUESTS MY VOTING BALLOT.

Wed, Sep 10, 2025,
5:20 AM

**Preis, Arik**
**<apreis@akingump.com>**

to me, Arik, Purdue

As we talked about a few weeks ago, the vote is less important than giving you the right to make a decision about whether to grant the release or not. I believe there will be sufficient votes for the plan to be approved.

**Arik Preis**

**Akin**

Direct: +1 212.872.7418

Fri, Sep 26, 2025,
7:54 AM

**Preis, Arik**
**<apreis@akingump.com>**

to me, Purdue, Paul,
Edgar, Marc, Purdue,

Mitchell, Katherine,
Jillian, Patrick, Erin,
Harris, Michael

To the extent you want the opportunity to receive a payout on your claim (to the extent your claim is valid and qualifies), in order to give yourself the best opportunity to do so you should also check the box to opt in to granting the release. In other words, there are two boxes to check – first is voting for the plan, second is granting the release. You do not have to grant the release (in other words, you can decide to retain the right to sue the Sacklers after Purdue emerges from chapter 11) but if you do not grant the release you will not have the opportunity (to the extent your claim is valid and qualifies) to receive any money under the settlement from your direct claims against the Sacklers, and you will need to prove your claim should be Allowed (and then it will need to qualify under the TDP) in order to receive any money from Purdue.

Of course, and to be clear, by checking these boxes it does not mean that your claim is valid or was timely filed, as Mr. Tobak previously emailed you.

Thank you,

Arik

**Arik Preis**

**Akin**

Direct: +1 212.872.741

AFTER THE CONFIRMATION DAYS MS WALKER FELT VERY COERCED.

Sat, Sep 27, 2025,
1:31 PM

**Purdue Pharma Ballots**
**<purduepharmaballots@primeclerk.com>**

to me, Purdue, Arik, Marc, Edgar, Paul, Gabriel, Solicitation, Joseph, Esther, Eli

Rosemary:

Receipt of your email is acknowledged. Although you have not cast your ballot in the proper format, given your circumstances we are provisionally accepting it for now, pending the outcome of your motion to file a late claim. If it is later determined that you were permitted to file a late claim, at that time we will ask you – for good housekeeping – to submit your ballot in the proper format, and will work with you to make sure it gets done correctly. But for now, there is nothing more you need to do with regard to your ballot nor your decision to grant the third party release

---

**Alex Orchowski**

Director, Solicitation, Kroll Restructuring Administration

T +1 212 257 5837 | M +1 847 809 9512

Sun, Sep 28, 2025, 3:03 PM

**Purdue Pharma Ballots**
**<purduepharmaballots@primeclerk.com>**

to me, Purdue, Arik,
Marc, Edgar, Paul,
Gabriel, Solicitation,
Joseph, Esther, Eli

Thank you Rosemary – confirming we received your electronic ballot submission.

Enjoy the rest of your weekend.

**Alex Orchowski**

Director, Solicitation, Kroll Restructuring Administration

T +1 212 257 5837 | M +1 847 809 9512

NOW FIRST I COULDN'T FIGURE OUT THE VOTING THING THEN I FIGURED IT OUT.

Tue, Oct 28, 2025, 7:51 AM

**purduepitrust <purduepitrust@purduepitrust.com>**

to me, Edgar, Arik,
Marc, Paul

Good morning Ms. Walker,

Please be advised that the Purdue PI Trust is still processing claims at this time, and we are now moving into the deficiency notification period. We cannot confirm whether your claim is Qualified under the claims review procedures at this time.

If we need any additional information on your claim, you will receive mailed correspondence from the Purdue PI Trust.

Best,

Purdue PI Trust

Aug 11, 2025, 11:52 AM

**Purdue Pharma Ballots <purduepharmaballots@primeclerk.com>**

to Arik, me, Purdue, Purdue, Purdue, Purdue

Arik/Rosemary:

Can you please provide the claim number associated with this request?

Best,

Zach

**Zach Steinberg**

Senior Consultant, Solicitation, Kroll Restructuring Administration

T +1 212 983 2603 | M +1 973 349 6729

SO WHY WAS MS WALKER NOT ISSUED A CLAIM NUMBER SOONER IS A GREAT QUESTION RIGHT....

Fri, Nov 7, 2025, 12:17 PM

**Edgar C. Gentle III <egentle@gtandslaw.com>**

to me, purduepitrust, Arik, Marc, Paul

The hearing on the Plan is next week. Thanks Ed

Sent from my iPhone

E

Fri, Nov 7, 2025, 12:17 PM

**Edgar C. Gentle III <egentle@gtandslaw.com>**

to me, purduepitrust, Arik, Marc, Paul

The hearing on the Plan is next week. Thanks Ed

Sent from my iPhone

Fri, Nov 7, 2025,
12:28 PM

**Edgar C. Gentle III**
**<egentle@gtandslaw.com>**

to me, purduepitrust,
Arik, Marc, Paul

We will by sending you a letter thanks Ed

Sent from my iPhone

Wed, Nov 12,
2025, 4:01 PM

**Preis, Arik**
**<apreis@akingump.com>**

to me

Emergence is when the plan actually becomes effective.

A “rider” is a term used to describe some additional paragraphs added to a document. Like it “rides along” with the main document.

If someone doesn’t give a release, Sacklers/others have two years to object to their claim against Purdue (18 months for PI).

Yes, as part of the deal, there is a resreve for Sackler defense costs/settlement costs for any party that doesn't agree to the deal. (I am generalization). If it doesn't get used, creditors get it back.

Yes, we believe Fraudulent transfers occurred 2008-2017

Look forward to your comments tomorrow.

Arik Preis

Akin

Direct: +1 212.872.7418

Mon, Mar 2, 1:17 PM

**purduepitrust** <purduepitrust@purduepitrust.com>

to me, Edgar, Arik, Marc

Good afternoon Ms. Walker,

Please be advised that your deficiency letter does not state that you did not file a claim with the Purdue PI Trust.

As stated in your letter, your deficiencies are for Proof of Use and Proof of Claim.

The evidence that you provided to the Purdue PI Trust does indicate that you were prescribed a qualifying Purdue opioid. However, the evidence does not meet the requirements for a Tier 1 claim. The evidence provided does not demonstrate that you were prescribed a qualifying Purdue opioid for 6 months as required under the PI TDP for a Tier 1 claim. We note that the evidence meets the requirements for a Tier 2 claim.

As noted in your deficiency letter, you will need to provide the Trust with additional evidence that demonstrates prescribed Purdue opioid use. This letter is letting you know that we need additional evidence.

For the Proof of Claim deficiency, under the terms of the Court-approved PI TDP, claimants must have timely filed Proof of Claims in the Chapter 11 proceedings to be eligible for compensation under the PI TDP. Because timely filed Proof of Claims are required under the PI TDP, potential deficiencies can be related to the Proof of Claim number. Under the PI TDP, a Proof of Claim must have been timely filed before September 21, 2021.

The Trust is not asserting that no Proof of Claim was filed on your behalf in the bankruptcy proceedings. However, based on the data provided by Kroll, the Proof of Claim that you included on your Purdue PI Trust Claim Form was not timely filed by the September 21, 2021 deadline outlined above.

Best,

Purdue PI Trust

AGAIN THIS TO IS WRONG WHEN MS WALKER HAS 6 YEARS OF NOT DAMAGED BY THE TREE THROUGH MY ROOF ICE WATER CAME IN THROUGH WHEN MY DOCTOR OFFICE CHECKED THE NO CHANGE IN MEDICATIONS BOX LIKE THE OPT IN NOT OPT IN.

AGAIN MS WALKER VERY SPECIFICALLY ASKED IF EDGAR ISSUES ME A TIER THEN DOES THE COURT LISTEN TO EDGAR OR THE OTHER WAY AROUND…EITHER WAY NONE OF THIS HAS BEEN CONSISTENT NOR FAIR TO MS WALKER.

11.13.25

3 MS. WALKER: Okay, so you've mentioned that the 4 Trust first goes through the deficiencies, so if Edgar 5 decides that I have a valid claim, then does Edgar's 6 decision count with your decision, or is your decision, your 7 decision comes before Edgar's?

THE COURT AND DEBTORS HAD TO MAKE IT UP MID CONFIRMATION & THEN STILL MOOTED MS WALKERS ENTIRE OPT IN NOT OPT IN PREMATURE CONSENT ISSUE.

THE COURT 11.14.25

'So I'm not so worried about that situation because 7 I don't think you're going to be in a position of making -- 8 having somebody giving up a meaningful right or a right that 9 -- to say well, I have it here and this is unfair. If you 10 can't -- if you want to participate in the trust and you 11 just don't have the documents, you really are not going to 12 be able to participate in a claim against the Sacklers for 13 exactly the same reason. So that -- I get that. And that 14 sort of dovetails. 15 So the timeliness claims are the ones that are a 16 little different that way. 17 MR. VONNEGUT: Yes. 18 THE COURT: And so given that those are teed up to 19 be addressed before the effective date allows us to I think 20 handle that particular situation.'

11.13.25
4 MR. PREIS: Ms. Walker has discussed this with me 5 before. There is a lot of misunderstanding about how the 6 plan works and what it means to give the release.

### .II. The Plan Was Properly Confirmed Pursuant to Section 1129 of the Code

MS WALKER STRONGLY DISAGREES FOR ALL THE REASONS MENTIONED SO FAR. MS WALKER HAD TO AGAIN CHANGE THE PLAN AND THEN THE CHANGE WAS MOOTED SO THERE IS STILL AN OUTSTANDING CONSENT OPT IN NOT OPT IN ISSUE & I DISAGREE WITH ONLY TWO ISSUES ARE BEING CHALLENGED.

### A. Appellants' Personal Injury Claims are Properly Classified withOther Personal Injury Claims

"two straight-forward rules: Dissimilar claims may not be classified together; similar claims may be classified separately only for a legitimate reason."

THIS IS PROBLEMATIC AGAIN FOR MS WALKER WHO HAS A PENDING LAW SUIT AGAINST THE SACKLERS AGAIN OTHER PURDUE PI CLAIMANTS DO NOT HAVE WHY IT ISNOT FAIR TO FORCE MS WALKER TO PICK WELL NO LONGER PURDUE BANKRUPTCY OR GIVE UP MY RIGHT TO PETITION THE SACKLERS…THE BIG PROBLEM.

'Different classes of opioid claimants have different rights and causes of action against the Debtors:'

KEY WORDS AGAINST THE DEBTORS….NOT NON DEBTOR SACKLERS.

### B. The Bankruptcy Court Correctly Determined that Creditors Receive Far More than They Stand to Receive in a Liquidation, Satisfying the "Best Interests" Test of 11 U.S.C. § 1129(a)(7)

'in the event of liquidation under chapter 7,"

THIS ISNOT A CHAPTER 7 SO THIS IS MOOT IN A CHAPTER 11

### III. The Plan is Constitutional

MS WALKER STRONGLY DISAGREES & NEITHER HAS BEEN THE PROCESS FOR DISABLED PRO SE PAUPER MS WALKER.

'vitiate any jury trial rights protected by the Seventh Amendment. Nor was the process for confirmation of the Plan inconsistent with the Due Process Clause.'

IT DOES MS WALKERS IN HER 23CV33935 UNTIL MY OPT IN NOT OPT IN CONSENT ISSUE IS RESOLVED.

### A. The Plan's Claims Allowance Procedures Do Not Violate the Seventh Amendment

'meritless because the Plan does not dispose of non-core claims or otherwise vitiate any creditor's right to a jury trial under the Seventh Amendment.'

IT DOES FOR MS WALKER IS FORCED TO CHOOSE ONE PETITION OR THE OTHER THAT MS WALKER SHOULD NOT HAVE TO.

'Under the Plan, channeled claims for alleged opioid-related personal injury to a neonatal abstinence syndrome child ("NAS PI Claims") or to persons who do not hold a NAS PI Claim ("Non-NAS PI Claims") are channeled to the Personal Injury Trust, which has its own procedures for adjudicating allowed claims.'

AGAIN THE COURT AFTER EFFECTIVE CONSUMMATED PERFECTED MODIFIED THE PLAN BY MODIFYING NAS CLAIMS IN DOC 8406 WHEN THE COURT IS NOW SUPPOSED TO ENFORCE THE CONFIRMED EFFECTIVE PLAN NOT CHANGE IT.

'("Because [the creditor] voluntarily presented these claims to the bankruptcy court . . . we conclude that his conduct establishes implicit consent.")

THIS IS NOT FACTUAL DAVIS POLK JOINED MY CASE TO THE BANKRUPTCY I DID NOT CONSENT I DID NOT EVEN UNDERSTAND WHY THIS HAPPENED AND THOUGHT THEY JOINED MY CASE TO THE BANKRUPTCY SO MY CLAIM COUNTED…PER WHAT ARIK WROTE….YES MS WALKER HAS BEEN CONFUSED WITH SUPER GOOD REASONS.

‘allowance and disallowance of claims,’

NOT WRONGFULLY I ARGUE.

(“[H]e who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure.” (citing

WOW FROM 66…MS WALKER ISNOT A HE SO THIS IS MOOT.

## B. Appellants Were Provided Process Far Exceeding the Constitutional Minimum

‘The confirmation proceedings provided Appellants with far more than the constitutional minimum process due.’

AGAIN MS WALKER STRONGLY DISAGREES.

‘The bedrock of due process is notice and the opportunity to be heard’

MS WALKER AGAIN STRONGLY DISAGREES MS WALKER HAS BEEN HEARD PRIOR TO EFFECTIVE WHICH ISNOT DUE NOR ANY PROCESS.

I ALSO ARGUE NOTICE WAS ADEQUATE WHEN THE DEA COULD HAVE NOTIFIED EVERY SINGLE PURDUE PHARMA VICTIM AS THEY HAVE A COPY OF EVERY PRESCRIPTION FOR OXYCONTIN EVER WRITTEN WHY I HAD TO GO TO MY DOCTOR SO OFTEN TO IN PERSON GET THE TRIPLICATE PRESCRIPTIONS THEN THE COURT DARED TO USE ‘IMPRESSIONS’ WHICH MEAN NO THING BUT HOW MANY BANNER ADS RAN ON A WEBSITE PAGE IMPRESSIONS HAVE NO THING TO DO WITH INTERACTIONS NOR HOW MANY CLAIM FORMS WERE FILLED OUT FUNNY HE DARED BRING UP ADVERTISING TO SOMEONE WHO WAS IN ADVERTISING AND MY NOW POSTHUMOUS LEGAL MOM WAS ALSO IN ADVERTISING. I INCLUDED IN MY FILING THAT JUDGE LANE REFUSES TO DOCKET THERE ARE TWO TO DATE.

I WILL POST IT HERE ….AS THIS IS THE DOCUMENT I NOT BEING ABLE TO SEE HIT THE WRONG PDF THAT WHEN LAWYERS ERR NO ONE CARES MY CASE NUMBER STILL HAS NOT BEEN CORRECTED AND NOW HAS BEEN COPIED AND PASTED WRONG AND LIKE THIS I DON’T EVEN KNOW IF ANYONE BOTHERED TO CORRECT THE INCORRECT RECORDS I EMAILED THE LAW FIRMS ET AL ABOUT.

2:17

THE COURT: We've said that. So you need to really pay attention because I have a lot of folks on the line who are directly affected by this motion, and I need to get to them. So anyone else who has a question about their --

MR. TALLES: Your Honor, this is Robert Talles. I did not --

THE COURT: Mr. Talles, we already addressed your circumstances and you're not covered --

MR. TALLES: I didn't hear the answer. He said to my claim. Either way, I didn't hear it. Sorry.

THE COURT: Okay. Well, you have to listen carefully. Mr. Salwen, would you repeat what you said to about Mr. Talles's claim earlier?

MR. SALWEN: Certainly, Your Honor. Mr. Talles's claim has -- will be withdrawn. It was not on the schedule yet.

THE COURT: Okay. So, Mr. Talles, this motion will not affect your rights.

MR. TALLES: Okay. Yes, sir. Thank you.

THE COURT: All right. Thank you.

MS. WALKER: Your Honor?

THE COURT: Yes.

NOT MS WALKER

Veritext Legal Solutions
212-267-6868 www.veritext.com 516-608-2400

Page 82

MS. WALKER: Your Honor, I have just a quick question. I think that probably everybody on the line is kind of wondering about. And that's today, I understand what that means, but going forward, does that mean we can be denied again or is this the end of the line?

THE COURT: So that's a very legitimate question. So under the Bankruptcy Code, there are -- and it's true, in a case like this, it's so large. There are often multiple sets of objections filed over time. We are at sort of the intermediate stage, I think, in terms of how claims are being addressed. It doesn't -- it is possible that there might be another claim objection filed in the future. If it

go back quite a ways. We now have a confirmed plan. It is

2:19

Veritext Legal Solutions
212-267-6868 www.veritext.com 516-608-2400

Page 83

going to go effective. That's the bankruptcy terminology that people use when the transactions relating to this start happening. And the plan provides for payments to be made to claimants, personal injury claimants, much earlier than it does for the 50 states and municipalities who will get paid over time.

So we are not at the beginning of this process. I know that that's not exactly the most -- that's probably not the news people want to hear, but we're certainly -- we're working towards it and there might be future objections. If there are, people will have to get notice of them. They'll be sent to them, and you have a right to be heard in court.

MS. WALKER: Okay. And my only other question is, I read somewhere in all this paperwork that if a creditor decides to opt out, they have until March 1st to opt out. But how would you know when it -- how would you know if you wanted to opt out or not when you don't know if you're included in, you're going to be included in the end. That's kind of a weird date, March 1st, because that's just been a couple of days.

THE COURT: All right. So let me ask Mr. Tobak or Mr. Salwen, whoever would want to take the laboring oar on the opt out question, which did come up at one of the other pleadings that I did see, at least one other, in terms of timing.

NOT MS WALKER

Veritext Legal Solutions
212-267-6868 www.veritext.com 516-608-2400

Page 84

MR. TOBAK: Absolutely. So opt out is actually, sometimes we use that colloquially, but it's incorrect in this case, as Your Honor well knows. At the time of voting,

MS WALKERS WRONG PDF THAT WAS SERVED RIGHT UPLOADED PRIOR TO JUDGE LANES RULING AGAINST ME AFTER I WAS INTERRUPTED THEN DISCONNECTED MID MY TIME TO SPEAK WHILE I WAS READING MY PIONEER RESPONSE THE COURT LOST ITS MIND WHEN I GOT TO THE OPT IN NOT OPT IN ISSUE.

SDNY BANKRUPTCY COURT

RE: PURDUE PHARMA LP, 19-23649

RE: ROSEMARY HELEN ZIZIROS WALKER CASE #23CV33935
CLAIM #634787 & district case 25-9681 & 2nd circuit 26-1235

PER 9006 (b) (1) MS WALKER MUST BE GRANTED EXCUSABLE NEGLIGENCE IN THE WORDS AND NAME OF CONSISTENT FAIR EQUITABLE TREATMENT OF LATE OR ALL CLAIMS PRIOR TO EFFECTIVE MOTION

to be clear ms walker is in a 'spiral' over this judge lane…people who know me call it ms walker is so beyond shocked and upset. THERE ARE NO FLOOD GATES YOU MADE SURE OF THAT THE PLAN THAT NEVER SHOULD HAVE WENT EFFECTIVE.

I don't know what you want from me not being a lawyer stressing out over an upcoming surgical procedure ms walker would be prefer never to have needed any surgeries thank you very much would have been great….not getting smashed at the elevator floor gratefully the safety caught and bounced me up until the doors opened and i crawled out as security was running to me & alarms were ringing.

I thought courts would prefer ai typed stuff versus my voice no one likes which is a all of you problem not a me problem. right.

I just RE uploaded the 5192026 document again, again ms walker not being able to see well…hit the wrong pdf one of ms walkers neurological & other related health issues protected by hipaa and already litigated and ms walker is **very self conscious about judge lane like her voice.
I uploaded two documents with doc 9415 but alas it doesnot appear.

So here it is

SDNY BANKRUPTCY COURT

RE: PURDUE PHARMA LP, 19-23649
RE: ROSEMARY HELEN ZIZIROS WALKER CASE #23CV33935
CLAIM #634787 & district case 25-9681 & 2nd circuit 26-1235

COUNTER TO DOC 9197 i just got after 6 pm 5.18.26 not enough notice to respond.

Judge i do not feel well. I was at the eye doctor yesterday not funny funny i had not been for 6 years….since covid, the salem fires marion county was declared a disaster as terrified californians are dealing with right now, ice storm…..tree through my section 8 rental roof…not home….someone set the hotel i fled to on FIRE MID MULTIPLE DISASTERS AT ONCE JUDGE LANE ON TOP OF HOW MANY TIMES WILL I BE DISCRIMINATED FOR BEING A DISABLED

AMERICAN PAUPER BY COURTS WHEN THE US SOCIAL SECURITY DISABILITY OFFICE IS WHO ZAPS MY DISABILITY MONEY EVERY MONTH BECAUSE I AM A QUALIFIED PAUPER DISABLED AMERICAN WOMAN WHO HAS HIPAA PRIVACY THAT MARIA CHRISTINA RICARTE & PAT WHAT ARE DENYING I WAS DROPPED IN A MALFUNCTIONING ELEVATOR THE ENTIRE REASON HOW I WAS PRESCRIBED PURDUE PHARMA BRAND OXYCONTIN FOR WHICH THIS COURT HAS MY MEDICAL RECORDS AS DOES EDGAR GENTLE WHO ISSUED ME A TIER 2 AS MY CLAIM WAS IN FACT TRANSMITTED WAY BEFORE 14 BEFORE EFFECTIVE JUDGE LANE. MARIA CHRISTINA RICARTE FAILS TO MENTION THE IMPORTANCE OF VOTING. AND MARIA CHRISTINA RICARTE CAN NOT KNOW WHAT I KNEW OR DID NOT KNOW.

DID I UNDERSTAND WHAT I HEARD WAS IN SUPREME COURT WAS A 'BANKRUPTCY' CASE, NO I DID NOT. DID I AT SOME POINT YES….MY PETITION THAT IS THE VESSEL FOR MY CLAIMS IN 23CV33935 THIS COURT HAS BEEN AWARE OF AS HAVE EVERYONE INVOLVED & YEP MARIA CHRISTINA RICARTE WHO I AM MOTIONING FOR MAX ADA FINES FOR DISCRIMINATION AGAINST ME A QUALIFIED DISABLED AMERICAN WOMAN PAUPER WITH NO RESOURCES JUST LIKE AN INMATE HOWEVER MS WALKER DID NOT GET BUSTED FOR CRIMES…..YET ALAS….MS WALKERS EXCUSABLE NEGLECT APPARENTLY DOESNOT COUNT WHEN MS WALKER CAN PROVIDE DOCUMENTATION FOR MOST EVERY SINGLE EVENT THAT HAS HAPPENED DURING MS WALKERS LIVING TIME THAT MS WALKER DOESNOT HAVE MUCH LIVING TIME LEFT.

THIS COURT MUST ALLOW MS WALKERS CLAIM,  MS WALKER HAS HAD OUD.

After my attempt to resolve this again last night via emails to the lawyers…..it is so clear why ms walkers issues were ALL so important AT THE TIMES MS WALKER BROUGHT THEM ALL UP ON RECORD JUDGE LANE. THE OPT-IN ISNOT FAIR. no one should have to wait ANY LONGER & CASH SHOULD HAVE GONE OUT TO EVERY ACCEPTED CLAIMANT PER EDGAR ON 'EFFECTIVE'.

Time sure flies one global pandemic, then disaster after provided evidence disaster during disasters….while disabled with no resources at all……& it's six years since you've been to your eye doctor. ADA, Excusable neglect.



EYE CARE
physicians & surgeons

**ECPS - Salem**
1309 Liberty St SE
Salem, OR 97302-4245
Phone: (503) 585-2022
Fax: (503) 378-0797

05/19/2026

Rosemary Walker
1111 Walker St SE
Salem, OR 97302-

To whom it may concern,

Rosemary walker was seen in our clinic today. She has not been seen by our office since 2019.

Sincerely,

**Provider**
Russell B Warner, MD 05/19/2026 10:22 AM

Document generated by: Jana Sandver 05/19/2026

Rosemary helen ziziros walker 5.20.26 7:44am hearing time soon……so not fair.

Cert of service i promise i emailed this is davis polk akin gump edgar g purdue pi trust paul s

Here is the google search result ……

Yes, in a legal context, a petition often contains the specific legal claims that initiate a lawsuit. While they serve slightly different purposes depending on the situation, they frequently overlap: [1, 2, 3, 4]

- The Petition (The Document): This is the formal written document filed with a court to start a legal case. It establishes jurisdiction and outlines what you are asking the court to do.
- The Claim (The Grievance): This is the specific legal right, injury, or demand you are asserting against the opposing party within that document. [1, 2, 3, 4, 5]

In civil litigation, a petition outlines one or more legal claims, the facts supporting them, and the relief being sought (such as damages or a court order). [1, 2]

The exact terminology varies depending on jurisdiction and case type:

- Civil Suits: In many states, a petition functions similarly to a complaint. It acts as the vessel that holds your claims.
- Specialized Proceedings: In family law (divorce) or probate, cases are typically started with a "petition" rather than a complaint, where you are asking the court for a specific official action or status rather than suing for damages.
- Workers' Compensation: In some states, an injured worker files a "claim petition" directly to formally assert their right to benefits. [1, 2, 3, 4, 5, 6, 7, 8]

To file a petition in your area or review local legal requirements, you can check the Oregon Judicial Department for local civil procedure rules. [1, 2]

'THE VESSEL THAT HOLDS MS WALKERS CLAIMS' so poetic right.

AS NOT TO BE FORCED TO USE MY VOICE HERE ARE MY INTERROGATORY QUESTIONS FOR MARIA CHRISTINA RICARTE:

'THE PAT SUBMITS THAT MS WALKER….' WAIT SO MARIA IS A PSYCHIC….TO CONTINUE WHAT MARIA WROTE ABOUT ME, ' THE PAT SUBMITS THAT MS WALKER WAS AWARE OF THE BANKRUPTCY' sure at some point….not when i heard about the supreme court case when i filed…no ms walker did not understand that.

MARIA CHRISTINA RICARTE ARE YOU CURRENTLY ON THE BOARD OF KNOA, YES OR NO:

HOW LONG HAVE YOU BEEN A PAT TRUSTEE MARIA CHRISTINA RICARTE?

MARIA THE ONE DOCUMENT OF MS WALKERS MANY IS SOMETHING MS WALKER SENT TWICE LIKE THE FIRST CLAIM FORM FROM THE COURT WEBSITE THAT NEVER ARRIVED I RESENT PRIOR TO LEARNING ABOUT THE PURDUE PHARMA NEW CLAIM FORM DEADLINE OF 7.28.25 HERE….SEE

p

Sun, Jul 27, 2025, 10:27 AM

**purduepitrust**
**<purduepitrust@purduepitrust.com>**

to me,
Purdue,
Arik,
Paul

Good afternoon Ms. Walker,

Please be advised that as previously stated, the deadline to file claims with the PI Trust is tomorrow, July 28th at 11:59 EST, as outlined in the Court Order.

For your convenience we have attached the claim form to this email. Any deficiencies will be addressed during the deficiency process.

Best,

Purdue PI Trust

Which was provided in time per the email acknowledgment.




9006(B)

129 FEDERAL RULES OF BANKRUPTCY PROCEDURE Rule 9006 (Added Apr. 30, 2007, eff. Dec. 1, 2007; amended Apr. 2, 2024, eff. Dec. 1, 2024.) Rule 9006. Computing and Extending Time; Motions (a) COMPUTING TIME. The following rules apply in computing any time period specified in these rules, in the Federal Rules of Civil Procedure, in any local rule or court order, or in any statute that does not specify a method of computing time. (1) Period Stated in Days or a Longer Unit. When the period is stated in days or a longer unit of time: (A) exclude the day of the event that triggers the period; (B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and (C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday. (2) Period Stated in Hours. When the period is stated in hours: (A) begin counting immediately on the occurrence of the event that triggers the period; (B) count every hour, including hours during intermediate Saturdays, Sundays, and legal holidays; and (C) if the period would end on a Saturday, Sunday, or legal holiday, then continue the period until the same time on the next day that is not a Saturday, Sunday, or legal holiday. (3) Inaccessibility of the Clerk's Office When a Filing Is Due. Unless the court orders otherwise, if the clerk's office is inaccessible: (A) on the last day for filing under (1), then the time for filing is extended to the first accessible day that is not a Saturday,

Sunday, or legal holiday; or (B) during the last hour for filing under (2), then the time for filing is extended to the same time on the first accessible day that is not a Saturday, Sunday, or legal holiday. (4) "Last Day" Defined. Unless a different time is set by statute, local rule, or order in a case, the last day ends: (A) for electronic filing, at midnight in the court's time zone; and (B) for filing by other means, when the clerk's office is scheduled to close. (5) "Next Day" Defined. The "next day" is determined by continuing to count forward when the period is measured after an event, and backward when measured before an event. (6) "Legal Holiday" Defined. "Legal holiday" means: (A) the day set aside by statute for observing New Year's Day, Birthday of Martin Luther King Jr., Washington's Birthday, Memorial Day, Juneteenth National Independence Day, Independence Day, Labor Day, Columbus Day, Veteran's Day, Thanksgiving Day, or Christmas Day; (B) any day declared a holiday by the President or Congress; and (C) for periods that are measured after an event, any other day declared a holiday by the state where the district court is located. (In this rule, "state" includes the Rule 9006 FEDERAL RULES OF BANKRUPTCY PROCEDURE 130 District of Columbia and any United States commonwealth or territory.) (b) EXTENDING TIME. (1) In General. This paragraph (1) applies when these rules, a notice given under these rules, or a court order requires or allows an act to be performed at or within a specified period. Except as provided in (2) and (3), the court may—at any time and for cause—extend the time to act if: (A) with or without a motion or notice, a request to extend is made before the period (or a previously extended period) expires; or (B) on motion made after the specified period expires, the failure to act within that period resulted from excusable neglect. (2) Exceptions. The court must not extend the time to act under Rules 1007(d), 2003(a) and (d), 7052, 9023, and 9024. (3) Extensions Governed by Other Rules. The court may extend the time to: (A) act under Rules 1006(b)(2), 1017(e), 3002(c), 4003(b), 4004(a), 4007(c), 4008(a), 8002, and 9033—but only as permitted by those rules; and (B) file the certificate required by Rule 1007(b)(7), and the schedules and statements in a small business case under § 1116(3)—but only as permitted by Rule 1007(c). (c) REDUCING TIME. (1) When Permitted. When a rule, notice given under a rule, or court order requires or allows an act to be done within a specified time, the court may—for cause and with or without a motion or notice—reduce the time. (2) When Not Permitted. The court may not reduce the time to act under Rule 2002(a)(7), 2003(a), 3002(c), 3014, 3015, 4001(b)(2) or (c)(2), 4003(a), 4004(a), 4007(c), 4008(a), 8002, or 9033(b). Also, the court may not reduce the time set by Rule 1007(c) to file the certificate required by Rule 1007(b)(7). (d) TIME TO SERVE A MOTION AND A RESPONSE. (1) In General. A written motion (other than one that may be heard ex parte) and notice of any hearing must be served at least 7 days before the hearing date, unless the court or these rules set a different period. Any affidavit supporting the motion must be served with it. An order to change the period may be granted for cause on ex parte application. (2) Response. Except as

provided in Rule 9023, any written response must be served at least 1 day before the hearing, unless the court allows otherwise. (e) SERVICE COMPLETE ON MAILING. Service by mail of process, any other document, or notice is complete upon mailing. (f) ADDITIONAL TIME AFTER CERTAIN SERVICE. When a party may or must act within a specified time after being served and service is made by mail or under Fed. R. Civ. P. 5(b)(2)(D) (leaving with the clerk) or (F) (other means consented to), 3 days are added after the period would otherwise expire under (a). (g) GRAIN-STORAGE FACILITY. This rule does not limit the court's authority under § 557 to issue an order governing procedures in a case in which the debtor owns or operates a grain-storage facility. 131 FEDERAL RULES OF BANKRUPTCY PROCEDURE Rule 9010 (As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 25, 1989, eff. Aug. 1, 1989; Apr. 30, 1991, eff. Aug. 1, 1991; Apr. 23, 1996, eff. Dec. 1, 1996; Apr. 26, 1999, eff. Dec. 1, 1999; Apr. 23, 2001, eff. Dec. 1, 2001; Apr. 25, 2005, eff. Dec. 1, 2005; Apr. 23, 2008, eff. Dec. 1, 2008; Mar. 26, 2009, eff. Dec. 1, 2009; Apr. 16, 2013, eff. Dec. 1, 2013; Apr. 28, 2016, eff. Dec. 1, 2016; Apr. 24, 2023, eff. Dec. 1, 2023; Apr. 2, 2024, eff. Dec. 1, 2024.

This is a bad riddle……

WHAT (B) MARIA CHRISTINA RICARTE?

technically the fact maria christina ricarte

PAGE 3 MARIA CHRISTINA RICARTE TYPED 'DAMAGE TO HER HOME' QUASI MS WALKER OWNS A HOME WHAT WOULD BE FACTUAL IS 'MS WALKERS SECTION 8 HOUSING RENTAL WAS DAMAGED WHEN DURING THE ICE STORM A TREE BRANCH CAME CRASHING THROUGH MS WALKERS ROOF TERRIFYING MS WALKER AND CAUSING MORE PTSD'

REALLY WHAT DIFFERENCE MARIA CHRISTINA RICARTE THAT I MOVED FROM CALIFORNIA TO OREGON IN 2008 WELL BEFORE 2020.

JUDGE LANE HOW MANY TIMES HAVE YOU ALL STATED ON RECORD HOW COMPLICATED THIS BANKRUPTCY CASE HAS BEEN OVER MANY YEARS WHY AFTER HARRINGTON WHICH WAS see:

SUPREME COURT OF THE UNITED STATES Syllabus HARRINGTON, UNITED STATES TRUSTEE, REGION 2 v. PURDUE PHARMA L. P. ET AL. CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT No. 23–124. Argued December 4, 2023—Decided June 27, 2024

DECIDED JUNE 27,2024. THE BAR DATE SHOULD HAVE BEEN MOVED TO INCLUDE MORE CLAIMS AS AMERICANS CONTINUE RIGHT NOW JUDGE LANE TO BE HARMED

BY THE EXACT SAME DRUG MARIA CHRISTINA RICARTE NOW REPRESENTS AS A BOARD MEMBER OR WHATEVER I AM BANISHED FROM LINKEDIN TOO.

**Maria christine Ricarte never mentions the voting irregularities equally as important as the also not mentioned by maria christine ricarte's legal representation davis polk stated on record that they accepted 'some late claims' i argue since harrington found the plan illegal the bar date was not only mooted by davis polk akin gump et al but also mooted by harrington that deemed the plan unconstitutional & illegal.

New york constitution:

[Damages for injuries causing death] §16. The right of action now existing to recover damages for injuries resulting in death, shall never be abrogated; and the amount recoverable shall not be subject to any statutory limitation. (Formerly §18. Renumbered by Constitutional Convention of 1938 and approved by vote of the people November 8, 1938.)

## The *Pioneer* Standard

Courts determine whether neglect is "excusable" by applying a four-factor balancing test established by the U.S. Supreme Court in *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*: [1, 2]

1. Prejudice: The danger of prejudice to the debtor or opposing party.
2. Delay Impact: The length of the delay and its potential impact on the judicial proceedings.
3. Reason for Delay: The reason for the delay, particularly whether it was within the reasonable control of the filing party.
4. Good Faith: Whether the moving party acted in good faith. [1, 2, 3, 4, 5]

See ai response below.....

Page 3

the PAT does not believe that

settlement discussions related to Ms. Walker's appeal are relevant to the inquiry into whether Ms.

Walker's circumstances meet the standard for excusable neglect.

Page 4

Ms. Walker did not file her proof of

claim until years later in August 2025

FALSE THAT IS WHEN ARIK ASKED FOR MS WALKERS CLAIM NUMBER FROM KROLL THAT HAD NOT PREVIOUSLY BEEN ISSUED TO MS WALKER TO BE CLEAR.

PLUS PER PROOF OF CLAIM RECEIPT FROM PURDUE PI TRUST BEFORE 7.28.25 DEADLINE see

p

Mon, Jul 28, 2025, 8:45 AM

**purduepitrust** <purduepitrust@purduepitrust.com>

to me, Purdue

Good morning,

Received.

Best,

Purdue PI Trust

Page 4, 4

he was able to file other

documents in both this case in January 2024 and at least one other court as early as 2023 after she

saw that the Harrington appeal was before the Supreme Court.

So while maria christina ricarte clearly quoted marc tobaks first email response after getting my service of 23cv33935 my petition the vessel of my claims that davis polk 'joined' to the bankruptcy....did i understand any of that no...not even a little.

I thought my claim was joined to the bankruptcy which it was. THERE HAS BEEN NO MEETING OF THE MINDS FOR ANY OF THIS MY NOT BEING A LAWYER.

Page 5

This statement counters maria christina ricarte's own statement that 'THE PAT SUBMITS THAT MS WALKER WAS AWARE OF THE BANKRUPTCY'

in any event, even if Ms. Walker was not aware of these cases until January 2024,

So now maria christina ricarte no longer believes her own made up statements about ms walker & what ms walker knew & did not know or when.....uh huh.....

4 continued.....

whether her Oregon action against certain related parties was "joined" with

this case such that it would be deemed to be a proof of claim asserted against the Debtors (R. Walker Suppl. at 23)—is insufficient to meet the standard for excusable neglect. In re Motors Liquidation Co., 599 B.R. 706, 716 (S.D.N.Y. 2019) (noting that a mistake of law does not constitute "excusable neglect"). Yet it is ok to make slop errors on my very important petition that holds my claims numbers….to date i still do not has been corrected.

Page 6

5

was that incarcerated individuals
may not have received the same high level of notice of these cases and the General Bar Date provided to other personal injury claimants.

Page 7 at the end under my name:

Rosemary Walker Dkt. Nos.
7825, 7853
8/25/2025,
9/15/2025 Dkt. Nos.
9160, 9163
5/5/2026,
5/6/2026
N/A
To be first heard
at
May 20, 2026
Omnibus Hearing
N/A
Ms. Walker filed proofs of claim on August 25, 2025
and September 15, 2025. Her general assertions have
been that she is an American with disabilities. She
also references in other filings a lawsuit she filed
against Sackler entities in Oregon that was enjoined.
(See, e.g., Dkt. No. 8858).
Ms. Walker filed supplemental briefing on May N/A Oppose 5,
2026. In this briefing she cites (1) an ice storm; (2)
damage to her home; (3) fires; (4) the COVID-19
pandemic; (5) moving out of state; (6) intermittent
lack of internet; (7) disability; and (8) inability to
access certain social media platforms as accounting
for her untimeliness. Dkt. No. 9160 at 2–3, 9–11, 13–
14, 23–24.

INCORRECT THE CLAIM DATE BEING REFERENCED WAS PROVIDED AFTER ARIK ASKED FOR MY CLAIM NUMBER I KEPT ASKING HIM ABOUT KROLL FINALLY PROVIDED AFTER THE 7.28.2025 CLAIM FILING DEADLINE.

Here is evidence of lack of internet connectivity during 2020.

https://youtu.be/3h9FVr1vHJ0?si=cHhE5FUTFSjFZbLh

Here is xfinity comcast in my apartment after they dug up every street & my internet all went haywire.

https://youtu.be/W6m-MXk1M0I?si=9G7TYF4q9rHle3YS

Courts recognize that disabilities may affect a litigant intermittently and unevenly. The fact that Ms. Walker managed to submit certain filings during limited periods does not establish sustained capacity to investigate and comply with sophisticated bankruptcy deadlines involving constitutional releases, injunctions, and mass tort claims administration.

## Meaningful Notice / Due Process Argument

This may be one of the strongest legal themes.

The PAT admits:

- Ms. Walker may not have fully understood the need to file a proof of claim,
- communications allegedly occurred in October 2023,
- she was pro se,
- she believed related litigation may have preserved her rights.

Possible argument:

> Due process requires notice reasonably calculated to apprise interested parties of the need to act. Technical awareness of a bankruptcy proceeding is not equivalent to meaningful understanding of the consequences of failing to file a proof of claim.

Additional argument:

> Ms. Walker was not represented by counsel and reasonably believed that her pending litigation and objections relating to Purdue-affiliated parties preserved or asserted her claims.

Another point:

> The complexity of the Purdue proceedings, third-party releases, injunction litigation, and overlapping litigation structures created understandable confusion for a pro se disabled claimant.
>
> This case does not involve an ordinary represented litigant missing a straightforward deadline. Rather, it involves a disabled pro se claimant attempting to navigate one of the largest and most legally complex bankruptcy proceedings in U.S. history amid extraordinary personal hardship.

And:

> The confusion here arose from overlapping injunction proceedings, related litigation, and evolving bankruptcy structures—not from mere carelessness.

1. Provide comprehensive wrap-around services to individuals with OUD
2. Provide the full continuum of care of treatment and recovery services for OUD

Provide community support services, including social and legal services

Ms. Walker's delay was not the result of bad faith, indifference, or strategic gamesmanship. It arose from a convergence of disability, disaster-related disruption, technological barriers, medical concerns, housing instability, and the extraordinary procedural complexity of these proceedings. Equity favors adjudicating claims on their merits where no meaningful prejudice exists, particularly when dealing with a vulnerable pro se claimant attempting to navigate unprecedented bankruptcy litigation.

Page 36 nov 13, 25

is that most bankruptcy cases, I think the 3 Court itself has noted on multiple occasions, are about 4 money.

22 As Your Honor has seen since that time, there have 23 been a number of claimants that have filed claims late and 24 have asked for permission to have their claims accepted 25 late. We did accept a number of them right around 2020 and Page 46 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 into 2021. And then we stopped and we said, okay, we're 2 going to put all of these off until the end of the case 3 post-confirmation and then we'll start going through the 4 late claims.

Page 103 nov 13th during my pro se time

**21 THE COURT: Well, it's very clear, ma'am -- and I 22 just finished explaining that. It's very clear that this 23 plan when it comes to your rights against the Sacklers is an 24 opt-in plan. 25 MS. WALKER: Right. But I can revoke. Because I Page 102 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 opted in and approved the plan. But that doesn't mean that 2 that's going to stay that way if my claim is not approved. 3 Then I'm going to revoke my release of the Sacklers. 4 And then will we be punished? Because yesterday 5 they wWhat I understood Ms. Walker to be asking 2 just a minute ago was what happens with her release and her 3 release and her opt-in if her claim isn't allowed. 4 MS. WALKER: Right. 5 THE COURT: Yeah. So let me see if I can get 6 somebody here in the courtroom to answer that question. 7 We're all about trying to get information to people if we 8 can. And that seems to be a fair question. 9 MS. WALKER: And, Judge -- 10 THE COURT: Hold on. Hold on. Ma'am, I'm going 11 to try to get -- 12 MS. WALKER: Okay, sorry. Sorry. 13 THE COURT: You need to wait. Because I'm going 14 to try to get an answer to your question. But you've got to 15 hang with me for a minute. 16 MS. WALKER: Okay, sorry. 17 THE COURT: All right. No worries. No worries. 18 MR. HUEBNER: So, Your Honor, I will do my best to 19 answer on the fly and I'll look to Mr. Preis and others to 20 help where they can. 21 So Ms. Walker's situation is one of the few that 22 is relatively unique, although one should never modify the 23 word unique. She filed her claim late and is currently the 24 subject of an adjourned late claim objection. And so 25 possibility number one is that the Court rules that she Page 104 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 doesn't have a cognizable claim at all because she missed 2 the bar date and it's being stricken as being late. 3 Possibility number two is that that motion is settled or 4 otherwise resolved in her favor and she is allowed to 5 proceed with the claim. She then has to go through the TDP 6 process we've described before, including, as Mr. Preis and 7 others have described, you know, proving really a base that 8 she at one point (indiscernible) took a Purdue product 9 because -- one thing**

**that I think has confused many people 10 is that --ere mentioning two years -- like if you don't release, 6 then they can wait up to two years.**

******4 MR. PREIS: Ms. Walker has discussed this with me 5 before. There is a lot of misunderstanding about how the 6 plan works and what it means to give the release. 7 When you give the release, it opens up the 8 opportunity to participate in the settlement. It allows 9 your claim. Right?**

**arik you and mcclammy wrote and signed this document correct.  YES OR NO?

'6. The Debtors and the Creditors' Committee note that, in addition to believing
that her 2023 lawsuit constituted a filing of a valid and timely proof of claim against the Debtors,
Ms. Walker appears to have confused the'

Dated: September 19, 2025
New York, New York
By: /s/ Arik Preis
AKIN GUMP STRAUSS HAUER
& FELD LLP
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Arik Preis
Mitchell Hurley
Sara L. Brauner
Counsel to the Official Committee of
Unsecured Creditors of Purdue Pharma

L.P., et al.
By: /s/ James I. McClammy
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Eli J. Vonnegut
Marc J. Tobak
Counsel to the Debtors and Debtors in Possession

**16 MS. WALKER: Everybody filed a petition in court 17 against the Sackler family. So to say that this is why I 18 felt that claims could be resolved. And that's it, the end 19 of claims. No more late claims. They can't change the 20 dates and approve some late claims and not others, and why 21 it needs to be resolved, exactly for the reasons that the 22 lawyers are arguing, so that everybody knows how much money 23 is going into each thing, what they're classified as. 24 Again, not everybody sued the Sacklers and filed a 25 petition, a claim, against both Purdue and the Sacklers. So Page 109 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 if my claim is not approved, I need to be able to revoke my 2 right to do the release and pursue my claim if you don't 3 rule that my claim is joined, you know, whatever. That I 4 don't understand. Again, I filed in 2023 as soon as I 5 heard. So, again, this is why I feel it needs to be 6 resolved. And, yes, I need to have the right to reserve -- 7 to revoke my release if they don't approve my claim. 8 THE COURT: I understand your argument.**

**19 THE COURT: And that's the party that we can have 20 a discussion about the bankruptcy discharge. But that 21 really has to do with the debtor. The Sacklers, the only 22 thing that is implicated here is not a bankruptcy discharge. 23 It's a release by virtue of the opt-in that we've already 24 discussed. 25 MS. WALKER: Which I think is unconstitutional and Page 111 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 what the Supreme Court ruled on. I agree with the other pro 2 se claimants.**

**8 MS. WALKER: Well, I would like it in an amendment 9 and so that we do have -- you know, claimants do have the 10 right to revoke release. 11 THE COURT: All right. All right.**

**5 But just to be clear to folks who have anxiety 6 about that, it is normal in a very complicated case such as 7 this one**

**MR. VONNEGUT:**

**The goals of the plan are to collect billions 15 of dollars from the Sackler family**

**21 THE COURT: That's important, too, because to the 22 extent that people don't release their claims, they don't 23 want something here to somehow prejudice their ability to 24 proceed with those claims or any party to defend those 25 claims that are in a court in another jurisdiction.**

**that is a claim that if you have not opted into the 9 settlement, there's a bright line day. The day our plan 10 goes effective, if you did not opt into the third-party 11 release settlement, you are free to sue anyone you want on 12 claims that you actually own. So –**

**25 MS. WALKER: There still needs to be a revocation. Page 181 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 THE COURT: Okay, please mute.**

**p54nov13**
**9 Today is about confirmation of the plan, that is 10 the big picture structure involving the amount of recovery**

# 1. PREJUDICE TO THE DEBTOR

**This factor strongly favors Ms. Walker.**

**The PAT never demonstrated actual material prejudice from allowing Ms. Walker's late claim. Instead, it relied almost entirely on attacking the reasons for delay. Under Pioneer, however, prejudice is a separate mandatory inquiry.**

**Key arguments:**

- **Purdue already administered hundreds of thousands of claims through a mass tort trust structure.**
- **Ms. Walker was not an unknown claimant suddenly appearing after distributions.**

- **The Debtors, Davis Polk, PAT, and the Court were already actively litigating issues involving Ms. Walker.**
- **Ms. Walker filed objections, appeals, injunction responses, and participated in proceedings beginning no later than 2023–2024.**
- **The estate therefore had actual knowledge of her asserted interests well before her formal late claim filing.**

**The PAT itself admitted that counsel communicated directly with Ms. Walker in October 2023 concerning the bankruptcy and claim process.**

**That fact is devastating to any prejudice argument because:**

- **the estate cannot claim surprise,**
- **evidence preservation concerns are minimal,**
- **and Ms. Walker's existence and assertions were already integrated into ongoing litigation.**

**Additionally:**

- **no showing was made that allowing her claim would delay distributions,**
- **alter plan feasibility,**
- **or materially impair creditor recoveries.**

**Under Pioneer, minimal prejudice weighs heavily toward relief.**

---

# 2. LENGTH OF DELAY & IMPACT ON PROCEEDINGS

**This factor is more nuanced, but still supports Ms. Walker when viewed equitably.**

**The PAT improperly treats the delay as a simple unexplained passage of time. Pioneer requires courts to examine both:**

- **length of delay,**
- **and actual impact on proceedings.**

**Important counterarguments:**

## A. Ongoing Participation Reduced Any Disruptive Effect

**Ms. Walker was actively involved in litigation during the relevant years:**

- **Oregon litigation,**
- **bankruptcy filings,**
- **injunction objections,**
- **appeals,**
- **and hearing participation.**

**Thus, her eventual claim filing did not suddenly inject a wholly new dispute into the case.**

## B. The Proceedings Already Continued Long After Bar Dates

**The Purdue bankruptcy remained highly active for years after the 2020 bar date:**

- **appeals,**
- **mediation,**
- **revised plans,**
- **injunction disputes,**
- **voting controversies,**
- **Supreme Court proceedings,**
- **and post-confirmation litigation.**

**Allowing one additional claimant already known to the parties would have minimal practical impact.**

## C. The November 2025 Hearings Show the Matter Was Still Active

**You indicated the November 12, 13, 14, and 18, 2025 hearing transcripts show:**

- **Ms. Walker's opt-in/voting issues were actively discussed,**
- **special deadlines/frameworks were created,**
- **and her status remained under active consideration.**

**That is critical because it demonstrates:**

- **the proceedings themselves were still evolving,**
- **and Ms. Walker's participation issues remained live controversies.**

**That weakens any claim that the delay fatally disrupted finality.**

---

# 3. REASON FOR DELAY

**This is where the PAT focused its attack, but Ms. Walker still has substantial equitable arguments.**

**The PAT's core error was evaluating each hardship separately instead of cumulatively.**

**Under Pioneer, courts must consider "all relevant circumstances," not isolate disasters one-by-one.**

**Ms. Walker presented overlapping hardships including:**

- **disability,**
- **COVID-era disruption,**
- **property damage,**
- **natural disasters,**
- **fires,**
- **interstate relocation,**
- **intermittent internet loss,**
- **inability to access online systems,**
- **social media restrictions,**
- **medical fear involving possible breast cancer,**
- **and pro se status in extraordinarily complex litigation.**

**The strongest legal framing is cumulative impairment.**

**The question is not:**
**"Did one isolated event completely prevent filing?"**

**The proper question is:**
**"Did the totality of overlapping hardships reasonably impair**

**the ability of a disabled pro se claimant to timely navigate a uniquely complex mass tort bankruptcy?”**

**That framing is much stronger under Pioneer.**

---

## Disability + Access Issues

**The PAT dismisses disability because Ms. Walker filed other documents.**

**But disability law and equitable jurisprudence recognize that:**

- **limited legal activity does not prove full functional capacity,**
- **sporadic filings do not negate impairment,**
- **and partial participation is consistent with substantial disability-related obstacles.**

**A disabled litigant may:**

- **manage occasional emergency filings,**
- **while still lacking capacity to understand or complete a formal bankruptcy claims process.**

**That is especially true in:**

- **a nationwide opioid bankruptcy,**
- **involving injunctions,**
- **appellate proceedings,**
- **opt-in systems,**
- **voting classifications,**
- **and evolving settlement structures.**

---

## Due Process and Notice Problems

**Another strong argument is that:**

- **electronic notice systems,**
- **Kroll postings,**
- **internet-based dissemination,**
- **and online claim procedures**

**were not reasonably accessible to Ms. Walker under her alleged circumstances.**

**The PAT admits:**

- **internet interruptions,**
- **displacement,**
- **and platform access issues were asserted.**

**This strengthens a constitutional due process argument under Mullane v. Central Hanover Bank & Trust Co..**

---

## Mistake of Law Argument Is Weak Against a Pro Se Litigant

**The PAT argues Ms. Walker's misunderstanding of how her Oregon litigation interacted with the bankruptcy is merely a "mistake of law."**

**But courts are often more forgiving toward:**

- **pro se litigants,**

- **disabled litigants,**
- **and parties navigating unusually complex proceedings.**

**This was not a simple missed deadline in ordinary litigation.**

**This was one of the largest and most legally complex bankruptcy proceedings in U.S. history.**

**That matters.**

---

# 4. GOOD FAITH

**This factor strongly favors Ms. Walker.**

**There is no evidence whatsoever of:**

- **bad faith,**
- **concealment,**
- **tactical delay,**
- **fraud,**
- **or intentional manipulation.**

**Instead, the record shows persistent participation:**

- **objections,**
- **filings,**
- **appeals,**
- **litigation activity,**
- **and continued attempts to assert rights.**

**That conduct is inconsistent with abandonment or gamesmanship.**

**Most importantly:**
**Ms. Walker continued litigating despite enormous procedural obstacles, which strongly evidences sincere intent to preserve her rights.**

---

# WHY THE VOTING / OPT-IN ISSUE MATTERS

**This may be one of the strongest equitable arguments.**

**If the November 2025 transcripts show:**

- **Ms. Walker's voting status was debated,**
- **provisional treatment occurred,**
- **negotiations occurred concerning Tier 2 treatment,**
- **and claim participation remained actively discussed,**

**then the estate effectively acknowledged her claimant status while simultaneously opposing her formal late claim.**

**That inconsistency matters because:**

- **voting rights generally derive from recognized creditor interests,**
- **and parties cannot fairly treat someone as a participant when seeking plan confirmation legitimacy but deny standing later when rights are asserted.**

**You can argue:**

- **the estate treated Ms. Walker as substantively involved,**

- **negotiated around her participation,**
- **acknowledged her interests,**
- **and litigated against her directly.**

**That substantially weakens later arguments portraying her as an outsider with an untimely claim.**

---

# THE MOST IMPORTANT OVERALL ARGUMENT

**The equitable heart of Pioneer is fairness.**

**Ms. Walker's strongest position is that:**

- **she was a disabled pro se claimant,**
- **facing overlapping disasters and access barriers,**
- **during COVID-era disruptions,**
- **in one of the most complex bankruptcy proceedings in American history,**
- **while actively participating in litigation,**
- **and while the estate itself acknowledged and negotiated around her involvement.**

**Under those circumstances, rigid procedural forfeiture would undermine:**

- **equity,**
- **due process,**
- **and the fundamental preference for resolving claims on their merits.**

That document ms walker incorrectly uploaded PDF to court just before the hearing started 5.20.26 was *not created after the hearing. It existed *before the hearing, was the document Ms. Walker intended to file, was served on counsel before the hearing, and was the document from which Ms. Walker read during her presentation because she believed it was uploaded to the Court.

The cumulative effect of a declared documented wildfire emergency in 2020 then a severe winter ICE storm damage all documented rendering Ms. Walker's residence uninhabitable, displacement from her home, documented insurance claims, temporary lodging someone SET ON FIRE, and continuing disability created substantial obstacles to ms walker who was busy with surviving natural disasters during disaster mid disasters mid global COVID…ms walker being high risk was totally freaked out over that equals

.EXTREME SEVERE MULTIPLE EXCUSABLE NEGLIGENCES

quasi ms walker NEVER SAW THE ADS and AS SOON AS MS WALKER HEARD A NEWS REPORT ON PURDUE PHARMA & SUPREME COURT I SCHLEPPED TO MARION COUNTY COURT AND I FILED MY PETITIONS THAT CONTAIN CLAIMS MENTIONED AND JOINED TO THIS BANKRUPTCY AS THE RECORDS ALL SHOW IN THIS VERY COMPLICATED BANKRUPTCY JUDGE LANE. AGAIN 2023 WAS PRIOR TO HARRINGTON BEING DECIDED ISNOT ENOUGH.

HERE IS THE DOCUMENT THAT INCLUDED PIONEER RESPONSES YES I LOOKED UP IN AI I HAVE GOTTEN BETTER AT PROMPTING EVEN SINCE 5.20.26 THEN EDITING.

WAY TOO MUCH WORK FOR SOMEONE WITH ARTHRITIS SO PAINFUL SOMETIMES I CAN'T USE MY HANDS JUDGE LANE…NOT THAT YOU CARE PLUS MY MEDICAL CONDITIONS THAT CAUSED MY DISABILITY IS PROTECTED BY PRIVACY RIGHTS NOT THAT MS WALKER HAS NOT PROVIDED DURING THIS CASE ISSUES MS WALKER EXPERIENCES INCLUDING BEING DIZZY NOT BEING ABLE TO THINK MS WALKERS UPCOMING SURGICAL PROCEDURE ON MY LEFT LEG TO HOPEFULLY STOP THE EXTREME PAIN JUDGE LANE ON TOP OF HER BACK, NECK, KNEE, HANDS, PSYCHE DAMAGE IN THE COURT STIPULATED DOCUMENTS FROM MS WALKERS ELEVATOR ACCIDENT.

SINCE MS WALKER HAS HAD OTHER MEDICAL ISSUES LIKE DIABETES, BELLS PALSY, RAMSEYS HUNT SYNDROME, TENDONITIS, NERVE DAMAGE, ARTHRITIS, VERTIGO OTHER DIAGNOSED ISSUES PTSD ANXIETY & YOU JUDGE LANE HAVE ASSIGNED PURDUE PHARMA VICTIMS WITH 'OPIOID USE DISORDER'.

here in salem again from 2020 fires that is MY APARTMENTS WINDOW. IT WAS SO SCARY.







to a century ice storm within months, again ALL WELL DOCUMENTED and provided by ms walker. THIS WAS EVEN SCARIER. TREES AND ACORNS AND BRANCHES WERE CRASHING ALL OVER THE ROOF ALL OVER MY APARTMENT. THERE WAS NO SAFE PLACE JUDGE LANE. NO POWER. WATER AND ICE RAINING IN THE HOLE IN THE ROOF FROM A GIANT TREE BRANCH. I WILL NEVER BE THE SAME AGAIN AFTER THESE EVENTS.










Then someone set the howard johnson ms walker fled to with her pussycat & EMERGENCY BELONGINGS ONLY ON FIRE.


Service
6:36 PM
February 24, 2021
6:27 AM
Edit


MARKETPLACE
statesman journal
SUBSCRIBE NOW
News
Sports
Politics
Outdoors
Real Estate
Advertise
Obituaries
eNewspaper
Legals
Subscribe
NEWS
Man cited for allegedly causing fire at Salem hotel
Virginia Barreda
Salem Statesman Journal
One World. One Cup.
Preview Series
$4.99
Washington Launches New Rule for Cars Used Less Than 50...
sj

all during covid a GLOBAL EPIDEMIC




ms walker also had no resources, plus the last thing from ms walkers mind was thinking about anything but staying living judge lane and where my pussycat & i would be safe.

i had no idea about until again i saw on tv purdue was in the supreme court. AT&T TURNED OFF MY PHONE MID FIRE DISASTER BECAUSE PAYMENT PROCESSING WAS DOWN I TRIED FOR THREE DAYS TO MAKE THE PAYMENT SO MS WALKER HAD NO PHONE.

# FW: TREE THROUGH ROOF

L

Sat, Feb 13, 2021, 6:19 PM

**Lynette Brown** <lbrown@salemhousingor.com>

to me, Sara

Hello Rosemary,

Oh my goodness…I can understand how that would be very scary! I am so sorry this happened and I am glad you are safe.

# RE: FIRE IN THE HOTEL

L

Wed, Feb 24, 2021, 8:57 AM

**Lynette Brown** <lbrown@salemhousingor.com>

to me, Sara, Tracy

Rosemary,

Oh my heavens…this is unbelievable. How can we help?

The Court therefore evaluated Ms. Walker's motion without considering the legal argument she believed had been filed and that she attempted to present during her allotted time.

The Court expressly defines an "impression" as the number of times the Publication Notice Plan was **displayed** across social media, display, and search platforms. An impression is not a unique individual. It is not proof that a person saw the notice. It is not proof that a person read the notice. It is not proof that an opioid victim understood that the advertisement concerned a bankruptcy bar date. And it is certainly not proof that a disabled pro se American understood that failure to file a particular proof-of-claim form by July 30, 2020 would extinguish substantial legal rights.

The mathematics demonstrate the distinction.

The Debtors spent more than $20 million to generate more than 1.5 billion impressions, at an approximate cost of only **1.33 cents per impression**. Yet only approximately 130,000 individual opioid-related claims were filed. Comparing those numbers produces approximately **11,538 advertising impressions for every filed claim**.

Using a population figure of 360 million Americans, 130,000 filed claims represent approximately **0.0361% of the American population—or approximately one claimant for every 2,769 Americans**.

More importantly, the record cited by the Court does not establish that the 130,000 claimants filed claims **because of the Publication Notice Plan**. The Court's Decision identifies no conversion data demonstrating how many claimants saw an advertisement, understood the advertisement, and filed a proof of claim as a direct result of that advertisement.

Accordingly, **1.5 billion impressions cannot mathematically or factually be treated as 1.5 billion people receiving notice**.

Indeed, 1.5 billion impressions divided by a population of 360 million equals approximately **4.17 impressions for every American in the country**. Yet Ms. Walker states she never saw the notice, and the Court's own Decision acknowledges her evidence concerning COVID-19, natural disasters, displacement, lack of internet access at times, and suspension from social media. The Court nevertheless relied heavily upon the aggregate impression count when determining that constructive notice was constitutionally sufficient.

**Ms. Walker submits that the relevant constitutional inquiry under *Mullane* is whether the method of notice was "reasonably calculated, under all the circumstances," to apprise interested persons—not whether an advertising company accumulated an enormous number of low-cost digital display events.**

**An impression is an advertising metric. Due process is a constitutional right. The two are not synonymous.**

Where is the conversion evidence? Of the 1.5 billion impressions, how many unique Americans actually saw the notice, how many understood it, and how many of the 130,000 claims were attributable to the $20 million campaign? Judge Lane's decision does not answer those questions.

**The PAT repeatedly encouraged claimants to provide additional information, yet the document did not provide any direct contact information for Trustee Maria Christina Ricarte. If the Trustee expected claimants to communicate directly with her or her office outside of formal Court filings, the document did not explain how such communication could occur. A pro se, disabled litigant cannot reasonably be expected to contact an individual when no email address, telephone number, or direct mailing address for that individual is provided in the notice itself. See doc 9143.**

**PAT compared cumulative circumstances for incarcerated claimants, but isolated and discounted Ms. Walker's circumstances one by one. *Pioneer* permits no such unequal methodology where the Court has repeatedly required consistent treatment of claims.**

**Unlike ordinary neglect, Ms. Walker's circumstances involved documented natural disasters, property loss, displacement, disability, financial hardship, and acknowledged confusion concerning the bankruptcy claims process. The Debtors themselves recognized that Ms. Walker misunderstood the claims process, stating that she appeared to believe her 2023 lawsuit constituted a timely proof of claim.**

**Under these circumstances, denying one of the few remaining disputed late claims does not advance the equitable purposes of Rule 9006(b)(1). The Plan has already become effective, Purdue Pharma has transferred its assets to the Trust structure, and allowing Ms. Walker's claim would not reopen confirmation or disrupt implementation of the confirmed Plan.**

**The interests of justice therefore favor reconsideration and permitting Ms. Walker's claim to proceed on its merits.**

**The Court has already recognized that extraordinary natural disasters may constitute excusable neglect under Rule 9006(b)(1). Ms. Walker's documented circumstances likewise involved extraordinary natural disasters and their consequences. The equitable standard should therefore be applied consistently.**

Sun, Jul 27, 2025, 3:18 PM

**Purdue Pharma Info** <purduepharmainfo@ra.kroll.com>

to me

Rosemary,

Thank you for contacting Kroll, the appointed claims and noticing agent for Purdue Pharma L.P.'s chapter 11 case.

Certain personal injury claims were channeled to the Purdue Personal Injury Trust. For questions regarding the Purdue Personal Injury Trust, please contact the Trust directly. You may find contact information and information about the Non-NAS and NAS PI claims filing process at purduepitrust.com. Please note a copy of your claim, filed through Kroll, is not required to file a Purdue Personal Injury claim.

If you are requesting conformed copies of your claim or supp14

orting documents in relation to the upcoming PI Trust deadline, please call on Monday, July 28, 2025, so we can assist you before the deadline.

he Court allowed confirmation and effectiveness to overtake unresolved questions concerning Ms. Walker's claimant status, voting rights, consent, opt-in/non-opt-in election, and PI Trust participation—and then used the resulting procedural status to deny the very rights that had never been finally resolved before effectiveness.

# MS. WALKER'S CLAIM MUST BE ALLOWED FOR EXCUSABLE NEGLECT, PROCESSED FOR PAYMENT, AND THE UNRESOLVED OPT-IN/NON-OPT-IN ISSUE MUST BE HEARD

Ms. Walker's claim should be allowed under **Pioneer excusable neglect** because the Court's analysis improperly isolates her delay from the entire equitable record. Rule 9006(b)(1) permits a late act where failure resulted from excusable neglect, and the Court itself recognizes that the inquiry is equitable and must consider **"all the relevant circumstances surrounding the party's omissions."**

Ms. Walker did not abandon her Purdue claim. She filed suit when she learned of the Purdue matter, participated in this bankruptcy, filed a PI Trust claim after Kroll specifically directed her to the Purdue Personal Injury Trust and warned her of the upcoming PI Trust deadline, voted on the Plan, and was given a provisional ballot because Purdue expressly acknowledged that her

late claim had not yet been adjudicated. The confirmation record states that Purdue did not yet know whether Ms. Walker's claim would be allowed or whether the lateness would be excused.

The Court nevertheless allowed the Plan to proceed to emergence and the May 1, 2026 Effective Date before deciding Ms. Walker's late claim. That sequencing matters. The confirmation record expressly represented that claim disallowance **"prior to emergence"** would determine whether the provisional ballot was discarded, while a claimant granting the release would be deemed allowed **at emergence** and then proceed to the PI Trust for claim processing.

**Ms. Walker's claim was not disallowed prior to emergence.**

Instead, the Plan became effective, Purdue Pharma ceased to exist in its pre-effective form, the post-effective Trust structure assumed administration, and Edgar C. Gentle, Trustee and Claims Administrator of the Purdue Personal Injury Trust, had already processed Ms. Walker's PI claim sufficiently to assign a tier. Ms. Walker disputes the assigned tier, but the tier assignment itself is evidence that her claim entered the PI Trust's substantive claim-administration process. Edgar Gentle's role as Trustee and Claims Administrator is expressly identified in the hearing record.

The Court should not permit the Purdue system to **process Ms. Walker as a PI claimant, assign her a tier, accept her Plan participation and provisional vote, postpone final adjudication through emergence, and then deny the underlying claim after effectiveness as though none of that administration occurred.**

That is precisely why excusable neglect is equitable. Ms. Walker's documented disability-related limitations, interstate relocation, COVID circumstances, fire disaster, ice disaster, displacement, hotel fire, periods without internet, and social-media exclusion were expressly presented to the Court. Those circumstances must be considered together with Kroll's actual communication with Ms. Walker, her PI Trust filing, her provisional ballot, the PI Trust's tier assignment, and Purdue's own unresolved treatment of her claim through the Effective Date.

**Consistent treatment of claims requires allowance of Ms. Walker's claim.** Other late claimants were excused and processed. Ms. Walker actively participated, complied with the PI Trust process presented to her, and her claim was substantively processed by the PI Trust. Denying her now elevates the 2020 Bar Date over the later Purdue-created PI Trust process that Kroll itself directed her to use.

The Court must also hear Ms. Walker's unresolved **Opt-In/Non-Opt-In issue**. This is not merely Ms. Walker's private dispute. It concerns the legal validity of the Plan's consent mechanism for **every Purdue personal-injury claimant whose rights were transferred from Purdue Pharma into the post-effective Trust structure.**

The Court itself understood Ms. Walker's sequencing objection before confirmation:

> "How do I know if I want to give this up if I don't know if it actually gets me anything?"

Purdue's counsel then expressly stated that Ms. Walker had voted on a provisional ballot.

The July 1 Decision now holds that only a claimant may opt into the Sackler settlement and that Ms. Walker cannot participate because her claim was ultimately denied as untimely. But that determination came **after the Effective Date**. The Court therefore allowed the Plan's consent deadline to pass before deciding the threshold issue that controlled whether Ms. Walker possessed the right to opt in or not opt in.

**That hearing should have occurred before effectiveness.**

After *Harrington v. Purdue Pharma*, the Plan cannot use unresolved claimant status to manufacture a consent result. A claimant cannot meaningfully decide whether to surrender rights before knowing whether the Plan recognizes her claim, what the PI Trust has assigned to that claim, and what she receives in exchange. The Court itself identified that exact sequencing problem.

Accordingly, **Ms. Walker's late claim should be allowed under excusable neglect; the Purdue Personal Injury Trust should be directed to complete review of Ms. Walker's already-tiered claim, including her challenge to the assigned tier, and issue the distribution due under the correct tier; and the Court must hear and decide the Opt-In/Non-Opt-In issue because that unresolved consent question existed before the Effective Date and implicates the validity and operation of the Plan's consent structure for Purdue personal-injury claimants generally.**

**The Plan cannot take effect first, eliminate Purdue Pharma, transfer PI claims into a Trust, allow that Trust to tier Ms. Walker's claim, and only afterward decide that Ms. Walker was never a claimant. The sequence is the defect. Excusable neglect is the equitable remedy. Allowance, correct tier determination, and payment are the required result.**

**RIGHT NOW A FED EX JUST ARRIVED ABOUT THE SACKLER FAMILY BICKERING I WILL OPEN AFTER AMERICAS 250 THAT THE ENTIRE BILL OF RIGHTS HAS AN ENTIRELY NEW MEANING FOR MS WALKER DESPERATELY SEEKING JUST ONE SINGLE RIGHT JUDGE LANE.**

**MS WALKER WILL ENSURE TO ENFORCE HER AMERICAN PROVIDED RIGHTS.**

rosemary helen ziziros walker 7.3.26 11:30am

CERT OF SERVICE i promise to enforce the constitution of the USA and that i email served hopefully the correct pdf to davis polk, akin gump, purdue pi trust, edgar g, paul s & howard israel now.

AGAIN NOT FAIR NOT CONSISTENT TO A DISABLED PRO SE PAUPER WOMAN DOING THE BEST SHE CAN TO FIGHT FOR HER AMERICAN RIGHTS.

‘directed that plain language notices’

YET ALAS THE LAWYERS ALL CONTINUE THEIR BAD HABITS OF USING TERMS NOT IN THE FEDERAL RULES OF BANKRUPTCY PROCEDURES EVEN IN THESE DOCUMENTS. AGAIN MS WALKER HAS REQUESTED AS AN ADA ACCOMMODATION A TRANSLATOR TO TRANSLATE THE LANGUAGE OF LAW IN READING AND WRITING FOR MS WALKER….ALAS…..

11.14.25

5 MS. WALKER: Yes. I just felt like the sentence, 6 the Sacklers emergence from their fraudulent wires and 7 milking schemes with a new company are, like, Scott free. I 8 just don't like the word. (indiscernible). That's all. 9 THE COURT: Yeah, well, I know. It's a word 10 that's used as a synonym for other words. You've heard 11 emergence, effective date. 12 MS. WALKER: Well, it complicates it for people 13 who don't understand bankruptcy law. And we're trying to 14 read things, and that word is not -- words like -- 15 THE COURT: I understand that. 16 MS. WALKER: Okay. I appreciate it. 17 THE COURT: I will tell you the shocking news that 18 I hear a lot of lingo that's not in the Bankruptcy Code. 19 MS. WALKER: I know.

‘the only person to cross-examine any witness was a pro se claimant.’

HAD ARIK TOLD ME I WAS ALLOWED DURING THE ZOOMS I WOULD HAVE, NOT THAT THE COURT WOULD NOT HAVE SILENCED MS WALKER AS HE DID AFTER I READ AMENDMENT I…..DURING MY TIME TO SPEAK SO NO I DO NOT AGREE MS WALKER WAS HEARD ENOUGH…& MS WALKER TAKES BACK HER APOLGIES FOR ATTEMPTING TO SPEAK ON A PHONE NOT ZOOM WITH NO WAY TO RAISE A HAND ASSUMING WHEN I UN MUTED THE COURT WOULD ACKNOWLEDGE ME IT DID NOT SO MS WALKER WAITED BEST I COULD FOR A BREAK TO SPEAK DURING A HEARING SAID ‘I OBJECT’ AND THE COURT TOLD ME I WASNOT ALLOWED THEN THE LAWYERS OBJECTED RIGHT AFTER SO HOW IS THAT EQUAL FAIR OR JUST ….RIGHT IT WASNOT..

## IV. Appellants’ Remaining Arguments Do Not Provide a Basis to Disturb the Confirmation Order

THE GALL….

Ms. Walker: The Court need not consider Ms. Walker’s various assertions regarding privacy, defamation, the ADA, or the Plan’s use of the term “cramdown.” Ms. Walker lacks standing to appeal because her claim has been disallowed21 (it was filed over five years after the bar date) and she therefore is not a “person aggrieved” by the Confirmation Order nor a party in interest. In re 22 Fiske Place, LLC, 2022 WL 2819093, at *7. Ms. Walker’s many repetitive filings concerning perceived personal grievances and terminology have resulted in both this Court and the Bankruptcy Court barring Ms. Walker from filing submissions without leave. (See

Dkt. No. 104; A.008854–55 (Order Denying Submissions by Rosemary Walker) (barring Ms. Walker from additional filings other than notices of appeal in light of her “increasingly abusive” interactions with the Court, including because “her pleadings also often contain wildly inappropriate material”).)

MS WALKER STRONGLY DISAGREES. MS WALKER THOUGHT MY CLAIM WAS JOINED TO THE BANKRUPTCY PLUS MS WALKER SENT TWO BECAUSE THE COURT DID NOT GET THE FIRST ONE I FOUND ON THE COURT WEBSITE ONE JUST BEFORE THE LEARNING OF THE PURDUE PI CLAIM FORM DEADLINE MS WALKER MET.

DOC 7723 CONTAINS THE SECOND CLAIM FORM FORM USELESS FORM FROM THE COURT WEBSITE I MAILED PRIOR TO GETTING THE PURDUE PI CLAIM FORM THEN THIS WAS AND STILL IS AN ISSUE THAT OUR PRO SE FILINGS SOMETIMES TAKES DAYS TO BE DOCKETED WHY I NOW DATE AND TIME ALL MY DOCUMENTS WHEN I TYPED THEM WHEN LAWYERS FILE ON WEEKENDS AFTER HOURS LATE FRIDAY NIGHTS WHICH IS FUNDAMENTALLY NOT FAIR NOR EQUAL WHEN LAWYERS THEN GO NAH NAH NAH NAH HER DOCUMENT WAS NOT DOCKETED UNTIL X WHEN IT WAS UPLOADED DAYS BEFORE THEN DOESN’T COUNT LAWYERS ARGUE SO NOT COOL EQUAL FAIR NOR JUST. AND MS WALKER ARGUES BEING CALLED ABUSIVE WHILE ENFORCING HER RIGHTS. SO WHAT WE CAN HAVE A PUSSY GRABBER PRESIDENT BUT NOT TYPE IT….SO WHAT FREE SPEECH WHERE……AMERICA.

11:23

| | | |
|---|---|---|
| 10. Is this claim based on a lease? | ☒ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition. | $ |
| 11. Is this claim subject to a right of setoff? | ☒ No<br>☐ Yes. Identify the property: ___ | |

5 of 11





**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** ?

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $___ |
| ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $___ |
| ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $___ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $___ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $___ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $___ |

* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

**Part 3: Sign Below**

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☒ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 7·26·2025 (MM / DD / YYYY) IF COURT DID NOT GET MY OTHER PREVIOUS CLAIM FORM

[signature]
Signature

**Print the name of the person who is completing and signing this claim:**

Name: ROSEMARY (First name) H (Middle name) WALKER (Last name)

Title: ___

Company: ___
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 1111 WALLER ST SE SALEM OR 97302
Number Street
City State ZIP Code

Contact phone: 503-9901172 Email: bigrosemary@gmail.com

Claim Number: 6?????
11:23
COVER


①

2 of 11

Christine Li Judge,

Please find another* claim form as I do not know if court got my first one I mailed a long time ago now.

I have also enclosed a document I found online about 'BANKRUPCY' that bankruptcy is to give 'HONEST DEBTORS' a fresh start that neither PURDUE NOR THE SACKLERS are 'HONEST' why I motion NO PURDUE SHOULD NOT GET BANKRUPTCY PROTECTION as The Sacklers should not. The case precedent is Alex Jones (see 'EVIDENCE' 1-2).

Paul Swartzberg wrote the document with the case # ERROR is not a UST document & Clerk has not responded. Again if an error was made on my data EVERY CASE should be reviewed I motion.

Thank you Have a great day.

Rosemary [signature] 7-25-2025
1111 Waller St SE Salem OR 97302
bigrosemary@gmail.com 503-990-1172



Fill in this information to identify the case:

Debtor 1 ______

Debtor 2 (Spouse, if filing) ______

United States Bankruptcy Court for the: ______ District of ______

Case number ______

Official Form 410

## Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents:** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

**Part 1: Identify the Claim**

1. **Who is the current creditor?** PURDUE PHARMA & THE SACKLERS
Name of the current creditor (the person or entity to be paid for this claim)
Other names the creditor used with the debtor ______

2. **Has this claim been acquired from someone else?** ? ☒ No ☐ Yes. From whom? ______

3. **Where should** ... **and payments** ... **creditor be se**... ...be sent? (if
Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)
ROSEMARY WALKER
Number Street ... Number Street

restructuring.ra.kroll.com

GUESS THIS WOULD NOT HAVE COUNTED HAD I NOT BEEN TOLD ABOUT THE CLAIM FORM BEING DUE RIGHT…AND IF I NEVER ASKED ARIK WAS THERE ANY THING ELSE I HAD TO DO TO I NEVER WOULD HAVE KNOWN I HAD TO VOTE…BECAUSE LAW IS LIKE A BIG SECRET THAT BY THE TIME WE GET TO THE 'THING' THERE IS NO WAY TO PREPARE NOT BEING LAWYERS SO I HAVE NO IDEA WHAT TO EXPECT OR WHAT IS EXPECTED OF ME WHICH IS RIDICULOUS….HONESTLY MY PRETEND LAWYERING SURE HAS OPENED ALL OF OUR PRO SE EYES HOW TOTALLY UNFAIR THE ENTIRE NO JUSTICE AND LEGAL SYSTEMS ARE.

## VI. The Appeals Are Equitably Moot

MS WALKER STRONGLY DISAGREES MS WALKER ISNOT EQUITABLY MOOT.

'Because finality in bankruptcy "is essential to the fashioning of effective remedies,"'

AGAIN THE GALL WHEN THE PLAN HAD TO BE CHANGED BECAUSE THE OPT IN NOT OPT IN ISSUES HAS NEVER BEEN HEARD AND AGAIN ***FALSUS IN UNO FALSUS IN OMNIBUS*** NO ONE KEPT THEIR WORDS TO MS WALKER. IF EFFECTIVE WAS CONSUMMATED THEREFORE PERFECTED THERE COULD BE NO CHANGES WHICH IS WHY THE PLAN NEVER SHOULD HAVE BEEN CONFIRMED AND FOR SURE NEVER SHOULD HAVE GONE EFFECTIVE A STAY SHOULD HAVE BEEN ISSUED ALMOST A YEAR AGO AND NONE OF WOULD BE HERE AND HAD MS WALKER BEEN HEARD AND FAIRLY AND CONSISTENTLY TREATED TO BEGIN WITH MS WALKER WOULD NOT HAVE TO CONTINUE TO FIGHT FOR HER RIGHTS. IF FINALTY IS THE GOAL WELL THAT CAN NOT HAPPEN FOR 15 YEARS AGAIN WHY KNOA SHOULD NOT BE A THING UNTIL EVERY CENT WAS PAID IN 15 YEARS.

WITH ALL THE APPEALS FROM REJECTED PURDUE PI CLAIMANTS WILL ENSURE THIS CASE IS A NEVER ENDING SOAP OPERA…THE NAS KIDS ARE FORCED TO PROVIDE MORE EVIDENCE WHEN THEY BECOME LEGAL AGE…THIS ENTIRE BANKRUPTCY FROM THE START HAS BEEN A MESS AND CONTINUES TO BE A MESS.

'Consummated."'

AGAIN MEANING PERFECTED, DONE FINISHED THAT THIS CASE ISNOT. AGAIN HOW CAN A COURT MODIFY CONSUMMATED……

PLUS MS WALKER WASNOT HEARD PRIOR TO EFFECTIVE SO NOW WHAT HAPPENS WITH MY RIGHTS…..AND IF I AM OPTED IN OR NOT OPTED IN……

after emergence.

THERE IS NO SUCH WORD IN THE BANKRUPTCY LAWS SO LAWYERS SHOULD NOT BE ALLOWED TO USE THEM LIKE COURT DOESNOT LIKE POTTY FINGER TYPING TOTALLY

LEGAL IN AMERICA. MS WALKER MAY NOT BE EVERYONES CUP OF TEA AND AT ALMOST SIX DECADES OLD MS WALKER IS VERY AWARE THAT MOSTLY MEN CAN NOT STAND THE PITCH TONE ATTITUDE OF MS WALKERS VOICE SPOKEN OR TYPED ESPECIALLY WHEN MS WALKER IS RIGHT LIKE IN THIS CASE.

AGAIN JUST BECAUSE DEBTORS REPEAT SOMETHING DOESNOT MAKE IT TRUE.

“to not only restart an already complicated bankruptcy process, but
also somehow craft a system for Debtors to claw back billions in assets from
thousands of creditors”);

SO JUST LIKE THE FIRST TIME….AGAIN MS WALKER SUGGESTED ISSUES BE HANDLED WHEN I SUGGESTED THE HOW ALAS….NOW WE ARE HERE BECAUSE NO ONE KEPT THEIR WORDS EVEN THE SACKLERS ARE CLAIMING THE PLAN ISNOT BEING MET….MS WALKER HAS STOCKHOLM SYNDROME.

EQUITABLY MOOT IS WHY DEBTORS RUSHED TO EFFECTIVE TO CLAIM THIS AFTER THEY DID FALSUS IN UNO FALSUS IN OMNIBUS TO MS WALKER NOT HEARING HER OPT IN OPT OUT CONSENT OR LATE CLAIM PRIOR TO EFFECTIVE AND WHY MARC TOBAC SUGGESTED ‘IF MY CLAIM WAS DEEMED TIMELY WOULD I DROP ALL MY APPEAL ISSUES’ I DECIDED TO ENTERTAIN…..TWICE BUT NOT IF I HAVE TO GIVE UP MY RIGHT AND DROP MY LAW SUIT CLAIMS AGAINST THE SACKLERS.

With respect to the fifth factor—whether appellants diligently sought a stay—

MS WALKER DILIGENTLY SOUGHT ENOUGH STAYS TROS PAUSES HALTS STOPS TO COVER ALL OF US I IMAGINE.

8 MR. HUEBNER: But there is not a mechanic for 9 saying for how I will affirmatively choose to opt into the 10 releases on my ballot, I don't want to sue the Sacklers, I 11 want to get the enhanced distribution. But then if I don't 12 like the outcome with the TDP, I then get to withdraw my 13 opt-in in X months or a year and then have a different set 14 of rights. And so the election I think within the extended 15 window that has been provided does have to be made. And 16 it's irrevocable. You don't get sort of a do-over based on 17 what happens with the trust distribution procedures with 18 your claim with respect to, you know, revoking essentially 19 the affirmative opt-in that you previously gave on your 20 ballot to participate and be a releasing party. 21 Let me just check with Mr. Preis since I am 22 looking at the Court not sideways. Let the record reflect 23 that Mr. Preis, who knows more about this than I do, nodded 24 his head, which in this country means agreement. 25 THE COURT: Let me ask -- hold on one second, Page 106 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 ma'am. Let me ask Mr. Preis if he has anything else that he 2 wants to add that would illuminate the situation for Ms. 3 Walker. 4 MR. PREIS: Ms. Walker has discussed this with me 5 before. There is a lot of misunderstanding about how the 6 plan works and what it means to give the release. 7 When you give the release, it opens up the 8 opportunity to participate in the settlement. It allows 9

your clai10 THE COURT: And then appropriately notice it in 11 the way you get information out. And so maybe -- I'm trying 12 to figure out how to appropriately button that up. Because 13 the disclosure statement is the disclosure mechanism. But 14 this is an important detail. So what would you propose? 15 MR. HUEBNER: Your Honor, what we can do is -- 16 this is obviously all a relatively new accommodation to get 17 people even more time than they had before. So it's an 18 enhancement of people's rights. 19 THE COURT: Right. 20 MR. HUEBNER: We can just put a notice on the 21 docket next week that says notice of final election date 22 that explains it, and then I think we are done. 23 THE COURT: Okay, great. And you'll put it in the 24 confirmation order as well. 25 MR. HUEBNER: Yeah. Page 46 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 THE COURT: Fantastic. All right. 2 MR. VONNEGUT: Okay. So, Your Honor, that covers 3 the confirmation order. I had planned to address a couple 4 of the questions that were raised by pro se claimants about 5 exactly how claim allowance and release elections work if 6 that would be helpful. 7 THE COURT: Please. 8 MR. VONNEGUT: Because that did seem to generate a 9 fair bit of confusion yesterday. Okay. 10 So just to start with the basics. And I'll kind 11 of walk through this using a personal injury claim as an 12 example. 13 There are three ways under the plan that a 14 personal injury claim can become allowed. One is the 15 claimant grants the third-party release by opting in on 16 their ballot and sends that ballot in. The other is if the 17 claimant does not grant the release but then nobody objects 18 to the claim for 18 months after emergence, it automatically 19 becomes allowed at that time. Or if somebody does object to 20 the claim because the claimant didn't grant the release, 21 they can then litigate that objection. And if they prevail, 22 the claim would be allowed at that time. 23 However, allowance in this case means that what 24 the Claimant has is a right to go to the personal injury 25 trust and have their claim treated under those trust Page 47 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 distribution procedures. So allowance doesn't necessarily 2 mean you are hereby guaranteed a certain amount of money, it 3 means that you have a ticket to go to the personal injury 4 trust and to have your claim processed pursuant to those 5 trust distribution procedures. And so it is possible after 6 the claim is allowed if the claimant goes to the personal 7 injury trust, and under the rules that govern that trust, if 8 for instance they have no records regarding use of a Purdue 9 product, the trust distribution procedures could dictate 10 that they do not receive a recovery from that trust. 11 Let me just pause and ask if that generally made 12 sense.m. Right? That's the way -- that's the bargain 10 that was made.

16 MR. VONNEGUT: Exactly right. So I'll walk 17 through how Ms. Walker's claim will be treated and then also 18 how your claim would be treated if it is disputed prior to 19 emergence. 20 THE COURT: Right. 21 MR. VONNEGUT: So Ms. Walker has a late-filed 22 claim. So when she voted on the plan, she voted on a 23 provisional ballot because we don't yet know whether that 24 late-filed claim will be allowed, whether the lateness of 25 the filing will be excuse or not. Page 50 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 THE COURT: Right. 2 MR. VONNEGUT: And so with respect to Ms. Walker, 3 if she granted the release on her provisional ballot but 4 then her claim is disallowed because it was late-filed, she 5 will not be bound to that release anymore because the 6 provisional ballot will effectively just

be torn up, thrown 7 in the garbage. She will be treated as though she does not 8 have a claim in the bankruptcy and therefore could not be 9 bound to the release. 10 THE COURT: All right. 11 MR. VONNEGUT: Now, the other population for whom 12 that might apply is folks who had timely-filed claims and 13 elected to grant the release on their ballot, sent that in. 14 But then they also have no supporting evidence. And so an 15 objection to their claim is filed prior to emergence based 16 on the grounds that they have no supporting evidence. If 17 their claims are disallowed prior to emergence, they would 18 be treated exactly the same way. So they don't have a claim 19 in the case. Therefore, their ballot would no longer be 20 binding upon them. 21 THE COURT: All right. So there won't be a 22 circumstance where someone says I gave up this release. I 23 thought I was getting something. I'm not getting anything, 24 but I am being held to the release. 25 MR. VONNEGUT: There is one fact pattern where Page 51 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 that can happen. So let me be very precise, Your Honor. So 2 as I say, if you grant the release, your claim is deemed 3 allowed. But that allowance is deemed to occur at 4 emergence. 5 So if you grant the release, if you tick the box 6 on your ballot, your claim is therefore deemed allowed –

25 THE COURT: And if there's a circumstance where Page 54 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 equities would suggest that you leave something open for an 2 individual claimant because it's been discussed but it 3 hasn't been decided, I suppose that could be addressed in 4 connection with that specific claim. In other words -- 5 hypotheticals are awful things to do to people, but let me 6 try this. So if the emergence -- and we used March 1st as a 7 date without committing to it, but used it as a deadline. 8 But assuming it's somewhere in that neighborhood and we end 9 up having a hearing in February and we say, well, there's 10 still an issue, there needs further factual development on 11 this claim objection, and someone comes in and says, well I 12 don't -- if I don't succeed here, I really don't want to 13 grant the release to the Sacklers. Is that something to be 14 dealt with as a one-off by the court at the time to say we 15 should be able to address that issue for relief, or is that 16 going to be something that's precluded by the plan? 17 MR. VONNEGUT: Sure. 18 THE COURT: Because it's sort of the claims 19 allowance or disallowance process and how that exactly plays 20 in here. And I don't want to have an exception this follows 21 the rule, because you need to have the plan work 22 appropriately. So this may be something you want to chew 23 over and think about and get back to me. 24 MR. VONNEGUT: Sure. 25 THE COURT: I don't want to put you unduly on the Page 55 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 spot. So I'm just trying to wrestle with that aspect of it 2 to try to figure things out. 3 MR. VONNEGUT: Great. So, Your Honor, I'll take a 4 crack at it and then I'll ask Mr. Preis and Mr. Shore and 5 anybody else if they disagree with me to chime in. 6 I think in that fact pattern it could just be 7 resolved on a on-off basis with each individual claimant. I 8 think the simplest way to do that, frankly, is if it looks 9 very likely that the claim will not be compensable and that 10 claimant wants to retain their claims against the Sacklers. 11 If they're not going to get money from the PI trust, they 12 could just withdraw the claim at that time, right? That 13 could be done on a stipulated basis. 14 If they want to maintain that dispute and keep 15 arguing about the validity of the claim, I think we'd have 16 to negotiate on a one-off basis how that is handled. 17 THE COURT: That's fair.

And I realize the -- the 18 reason I ask about the timeliness is the timeliness actually 19 presents the most challenge, right? Because somebody might 20 have an untimely claim here for whatever reason, but somehow 21 a claim is perfectly timely against the Sacklers. And they 22 might have plenty of substantiation. So you can imagine 23 saying, well, that seems off.

19 THE COURT: All right. Let me just look at I and 20 J. All right. So one question about this is we had talked 21 yesterday about whether this was -- (indiscernible) going to 22 be in the confirmation order. 23 But whether there was going to be confirmation on 24 the record from the Richard Sackler parties about their 25 agreement to this language. Whether it's some separate Page 38 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 document or on the record today. How did you want to handle 2 that? 3 MR. VONNEGUT: Sure, Your Honor. So Mr. Sackler's 4 counsel did confirm on the record yesterday, their agreement 5 to this language. I'm not 100 percent sure, but I believe 6 they're on again today.

MR SACKLER GOES THROUGH LAWYERS LIKE WATER THEY APPEAR ONCE AGREE TO THINGS THEN WITHDRAW THE RECORD SHOWS UH MS WALKER WOULD LOVE AN ANSWER HAS RICHARD SACKLER SIGNED WHATEVER DOCUMENTS STILL WERE UNSIGNED YET.

BIG IF….

If 17 their claims are disallowed prior to emergence, they would 18 be treated exactly the same way. So they don't have a claim 19 in the case. Therefore, their ballot would no longer be 20 binding upon them. 21 THE COURT: All right. So there won't be a 22 circumstance where someone says I gave up this release. I 23 thought I was getting something. I'm not getting anything, 24 but I am being held to the release. 25 MR. VONNEGUT: There is one fact pattern where Page 51 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 that can happen. So let me be very precise, Your Honor. So 2 as I say, if you grant the release, your claim is deemed 3 allowed. But that allowance is deemed to occur at 4 emergence. 5 So if you grant the release, if you tick the box 6 on your ballot, your claim is therefore deemed allowed --

19 However, it's important to note the ballots that 20 everybody signed to opt into the releases, and those are on 21 file for PIs and I believe third-party payors as well, those 22 are on file at 7611 filed June 20th. And I just have the 23 language here. 24 So what it says is if you grant the release, such 25 holder's claim will be considered allowed and therefore such Page 52 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 holder may be entitled to compensation at the value 2 established under the plan and the PI trust distribution 3 procedures through a streamlined and expedited process. 4 So effectively if you grant the release, your 5 consideration is the opportunity to have your claim treated 6 by the trust. It's not necessarily a guarantee that you 7 will receive a recovery. 8 THE COURT: All right. But I guess am I right in 9 saying that people don't really have a choice as to the 10 timing, right? I mean, whether something -- whether this 11 issue comes to the fore before emergence or the effective 12 date or not is not necessarily within their control.

2 MR. VONNEGUT: Okay. So, Your Honor, that covers 3 the confirmation order. I had planned to address a couple 4 of the questions that were raised by pro se claimants about 5 exactly how claim allowance and release elections work if 6 that would be helpful. 7 THE COURT: Please. 8 MR. VONNEGUT: Because that did seem to generate a 9 fair bit of confusion yesterday. Okay. 10 So just to start with the basics. And I'll kind 11 of walk through this using a personal injury claim as an 12 example. 13 There are three ways under the plan that a 14 personal injury claim can become allowed. One is the 15 claimant grants the third-party release by opting in on 16 their ballot and sends that ballot in. The other is if the 17 claimant does not grant the release but then nobody objects 18 to the claim for 18 months after emergence, it automatically 19 becomes allowed at that time. Or if somebody does object to 20 the claim because the claimant didn't grant the release, 21 they can then litigate that objection. And if they prevail, 22 the claim would be allowed at that time. 23 However, allowance in this case means that what 24 the Claimant has is a right to go to the personal injury 25 trust and have their claim treated under those trust Page 47 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 distribution procedures. So allowance doesn't necessarily 2 mean you are hereby guaranteed a certain amount of money, it 3 means that you have a ticket to go to the personal injury 4 trust and to have your claim processed pursuant to those 5 trust distribution procedures.

AGAIN TOTALLY NOT FAIR TO MS WALKER AND INVALIDATES THE ENTIRE PLAN DISCLOSURE VOTE OPT IN OR NOT OPT IN….

‘16 MS. WALKER: Everybody filed a petition in court 17 against the Sackler family. So to say that this is why I 18 felt that claims could be resolved. And that's it, the end 19 of claims. No more late claims. They can't change the 20 dates and approve some late claims and not others, and why 21 it needs to be resolved, exactly for the reasons that the 22 lawyers are arguing, so that everybody knows how much money 23 is going into each thing, what they're classified as. 24 Again, not everybody sued the Sacklers and filed a 25 petition, a claim, against both Purdue and the Sacklers. So Page 109 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 if my claim is not approved, I need to be able to revoke my 2 right to do the release and pursue my claim if you don't 3 rule that my claim is joined, you know, whatever. That I 4 don't understand. Again, I filed in 2023 as soon as I 5 heard. So, again, this is why I feel it needs to be 6 resolved. And, yes, I need to have the right to reserve -- 7 to revoke my release if they don't approve my claim. 8 THE COURT: I understand your argument.’

23

included (i) a notice of the Confirmation Hearing; (ii) the applicable Ballot; (iii) a cover letter from the Debtors-Appellees urging creditors to accept the Plan and a cover letter from the UCC recommending acceptance of the Plan; (iv) the Solicitation/Voting Procedures; and (v) a flash drive containing the Disclosure Statement Order, the Disclosure Statement, and the Plan. (See A.004857 (Disclosure Statement Order, Ex. 1).)

I NEVER GOT A FLASH DRIVE WITH THE DISCLOSURE STATEMENT OR THE PLAN I STILL HAVE NEVER SEEN AND BROOKS BARKER REFERRED ME TO THE PLAN &

DISCLOSURE STATEMENT AREA ON KROLL THAT IS NO HELP AT ALL….SO MS WALKER WOULD LOVE TO SEE THE ENTIRE PLAN IN ONE PLACE I HAVE REQUESTED BUT ALAS.

1 So nothing that's happening at this confirmation 2 hearing affects anybody's rights as to timeliness, to make 3 whatever arguments they want to make on that issue at all. 4 It will be addressed at the appropriate time and we'll start 5 from square one and see where we are. And I'll look at the 6 facts and circumstances of each circumstance and look at the 7 applicable caselaw. This is an issue that comes up from 8 time to time in bankruptcies, including very large 9 bankruptcies. But it's not an issue for today. 10 Again, nothing about today waives anybody's rights 11 as to their individual claim including issues about 12 timeliness of their claim.

YES YES MS WALKERS RIGHTS WERE BEYOND WAIVED THEY WERE OBLITERATED.

11.13.25

16 One of them is after confirmation but before 17 substantial consummation, which is telling you that 18 substantial consummation is well understood among we -- sort 19 of we sort of weeny practitioners as being sort of the end 20 date after which you're out of bankruptcy, and then it's a 21 new phase where the Debtor is no longer fundamentally under 22 the jurisdiction of the Court. There are still plenty of 23 things that go on, in many cases, for years; the Lehman plan 24 went effective maybe ten years ago, and there are still 25 things happening in that case all the time, but the Page 176 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 effective date occurred. 2 MS. WALKER: That's a pretty big deal.

25 MR. VONNEGUT: Sure. So Ms. Walker specifically Page 49 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 is a very specific fact pattern. I'll walk through exactly 2 what -- 3 THE COURT: Well, that's a late-filed claim, 4 right. 5 MR. VONNEGUT: Exactly, Your Honor. 6 THE COURT: But I don't know at the end of the day 7 it makes a difference. If you have a late-filed claim or if 8 you have a claim that is a challenge because there's not the 9 sufficient substantiation –

I thought 17 long and hard about it yesterday. 18 MS. WALKER: I appreciate that. 19 THE COURT: And I appreciate Mr. Vonnegut's 20 clarification. There's a deadline to make this decision. 21 You've already done it because you filled out a ballot. But 22 there is -- in your situation, the timeliness of your claim 23 is going to be addressed before what is being referred to as 24 emergence or the effective date. And that means if it is 25 for some reason disallowed, you will not have given any Page 61 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 release. And if it is allowed, then the release and your 2 compensation will track. Okay? 3 MS. WALKER: Okay.

25 MS. WALKER: No, I appreciate it. And I don't Page 62 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 think that all of the -- because it came up several times, I 2 don't think that everybody understood what the release 3 actually meant and -- 4 THE COURT: All right. But, Ms. Walker, we are 5 segueing back into argument from yesterday. 6 MS.

WALKER: I appreciate your time in looking and 7 bringing up my issue. Thank you very much. 8 THE COURT: Absolutely. Happy to do it. Happy to 9 do it

18 THE COURT: It took me awhile to understand why 19 Ms. Walker was so intent on the sequencing of things. And I 20 think that was ultimately her point. How do I know if I 21 want to give this up if I don't know if it actually gets me 22 anything?

MS. WALKER: Well, I would like it in an amendment 9 and so that we do have -- you know, claimants do have the 10 right to revoke release. 11 THE COURT: All right. All right. 12 MS. WALKER: Okay.

MAY 20, 2026 THE COURT

‘15 I will ask the folks from the plan administrator 16 as you can see, there is still an issue about this opt-in, 17 opt-out about Ms. Walker feels very strongly, was on my list 18 to talk about, to say, when are we going to schedule a 19 hearing on that issue? and so let me ask folks for their 20 wisdom on that procedurally whether it's going to be handled 21 at a later hearing. But probably frankly, sometime soon 22 because it needs to be addressed.’

## CONCLUSION

THANK GOODNESS THIS HAS TAKEN MS WALKER WAIT GOING INTO DAY TWO IN 5 MINUTES WHICH WILL BE MIDNIGHT.

DEBTORS AND THE COURT DID FALSUS IN UNO FALSUS IN OMNIBUS THEREFORE IT IS DEBTORS WHO ARE EQUITABLY MOOT NOT MS WALKER.

## 2 And so Mr. Walker's question spurred some very 3 useful information on the record. 4 MR. HUEBNER: And a new fixed deadline. 5 THE COURT: And a new fixed deadline. 6 MR. HUEBNER: So she changed the plan

THE PLAN VIOLATES CONSENT & HARRINGTON AND THE COURT DEBTORS UCC MDT AD HOC ET AL INVOLVED MUST BE HELD LIKE THE FIRST REVERSED PLAN RESPONSIBLE AND ACCOUNTABLE FOR YES MS WALKERS VERY IMPORTANT MEANINGFUL RIGHTS BEING TAKEN FROM HER WRONGFULLY CAUSING MS WALKER EVEN FURTHER EMOTIONAL PHYSICAL & FINANCIAL PAIN & SUFFERING.

THE PLAN NEVER SHOULD HAVE BEEN CONFIRMED NOR EFFECTIVE.

JUSTICE DELAYED IS JUSTICE DENIED. IS FAR MORE APPROPRIATE.

rosemary helen ziziros walker 7.27.26 12:00 am