# <u>Exhibit F</u>

**"Opposition Opening Appeal Brief: Post-Consummation AI Assisted Analytic of pro se Appellee Redwood ('An Aggrieved Person') vs Purdue Pharma" filed by Keith E. Redwood, *In re Purdue Pharma L.P., et al*, Case No. 25-cv-10327 (S.D.N.Y. July 23, 2026) [Dkt. No. 60]**

Redwood vs Purdue Pharma Case 7:25-cv-10327-NSR

**U.S. District Court**
**Southern District of New York (White Plains)**
**CIVIL DOCKET FOR CASE #: 7:25-cv-10327-NSR**

In Re: Purdue Pharma L.P.
Assigned to: Judge Nelson Stephen Roman

Related Case: 7:25-cv-09681-NSR

Case in other court: USBC-SDNY, 19-B-23649 (SHL)

Cause: 28:0158 Notice of Appeal re Bankruptcy Matter (BA

Date Filed: 12/12/2025
Jury Demand: None
Nature of Suit: 422 Bankruptcy Appeal (801)
Jurisdiction: Federal Question

**In Re**

**Purdue Pharma L.P.**

**Debtor**

**Purdue Pharma L.P.**

***PART II. OPPOSITION OPENING APPEAL BRIEF :POST-CONSUMMATION AI ASSISTED ANALYTIC OF PRO SE APPELLEE REDWOOD("AN AGGRIEVED PERSON") vs PURDUE PHARMA(Case No.7:25-cv-10327)***

***This analysis covers the procedural posture and potential scenarios for the Redwood v. Purdue Pharma L.P. appeal (Case No. 7:25-cv-10327), assigned to Judge Nelson S. Roman in the Southern District of New York (SDNY), following the post-consummation bankruptcy plan confirmation by Judge Sean H. Lane.***

### *Bankruptcy Consummation and Emergence Timeline*

***The Purdue Pharma bankruptcy proceeding is nearing the finalization of its Confirmation Order, which was initially issued on November 20, 2025. The process is moving forward, with emergence from bankruptcy scheduled for May 1,2026. This timeline marks a critical phase in the ongoing legal and financial restructuring of Purdue Pharma, as the company prepares to implement the court-approved plan and transition out of bankruptcy protection.***

***Procedural Background: Pro Se Redwood vs. Purdue Pharma (Docket Nos. 8472 & 8495)***

***The legal dispute between the Pro Se party "Redwood" and Purdue Pharma is currently encapsulated under docket numbers 8472 and 8495. These matters have been recommended for review by the Bankruptcy court for resolution of an inter-creditor dispute. This recommendation is based on determinations made through Findings of Fact and Conclusions of Law, which serve as the foundation for appellate scrutiny. The review will specifically focus on the treatment and classification of Redwood's claim, as well as the procedural and substantive considerations that informed the lower court's decision. The basis of the objection is to determine if Redwood versus Purdue objection based upon treatment in classification of claims as well as denial of due process will be heard by the Civil Court in adjudicating a claim.*** **Because this is a combined personal injury (PI) and non-personal injury/economic damage claim, it occupies an exceptionally complex footprint. It bridges the gap between mass-tort restructuring administration and independent civil adversarial prosecution.**

**My legal strategy is to invoke bankruptcy code 502 as a critical tool in adjudication of Redwood vs Purdue Pharma as a holder of a $10 million unsecured and unliquidated economic damage claim. The Civil Court will be asked to apply bankruptcy code 502 in the determination of Redwood $10 million economic damage claim which a bench ruling**

**presided by Judge Sean Lane dismissed/denied in his bench ruling. The appeal to the higher court will attempt to have the claim adjudicated by a more objective and impartial Civil Court. The court will further be asked to examine recent concurrent jurisdictional *documents(ECF#s 38,39,40,41,42,45,46,47,48,49,50,51,52,53,54,55,56,57,58,59) between Atty Benjamin Kaminetzsky and Judge Roman. The 'Kaminetzsky Proposition' previously litigated (per docket#8472 and 8495) encapsulates a potential framework for the court to consider. In Document 52 filed 05/14/26 Page 1 of 2, Attorney Kaminetzsky writes:***

***"Here, Mr. Redwood's submission and request for mediation appears to concern his individual claim, for which he appears to seek $20 million instead of, or in addition to, the recovery provided to similarly situated victims under the Plan. Throughout these cases, the Debtors have never engaged in any mediation regarding just one claimant's claim. Moreover, individual claim mediation would be particularly inappropriate and impossible now because, as of the Effective Date, funds were transferred to the Personal Injury Trust, which is responsible for review and compensation of claims by personal injury claimants pursuant to trust distribution procedures that were designed by, inter alia, counsel to an ad hoc group of personal injury claimants. As a result, the Debtors-Appellees do not have the capacity, and are not the right parties, to address or mediate the merits of Mr. Redwood's individual claim. Moreover, on the Effective Date, over 99% of the Debtors-Appellees' cash was wired to multiple creditor trusts, vehicles, and representatives as required by the Plan, and 100% of their operating assets were transferred to Knoa Pharma, a newly-created public benefit company, as contemplated by the Plan and the Debtors' civil and criminal settlements with the Department of Justice. Mr. Redwood should direct inquiries with respect to the status of his specific claim to the Personal Injury Trust, which can be contacted via email at purduepitrust@purduepitrust.com.***

***For these reasons, the Debtors-Appellees respectfully request that the Court deny Appellant Keith E. Redwood's motion to stay his appeal for the***

***purposes of mediation and voluntary dismissal (ECF No. 49). The Debtors-Appellees are authorized to represent that Appellee Official Committee for Unsecured Creditors, which served as a DOJ-appointed statutory fiduciary for all unsecured creditors during the Debtors' chapter 11 cases, joins the Debtors-Appellees in requesting denial of Mr. Redwood's motion. The Debtors Appellees will cause a copy of this letter containing contact information for the Personal Injury Trust to be served on Mr. Redwood via email and first-class mail.***

***Respectfully yours, /s/ Ben Kaminetzky Ben Kaminetzky***

***The question that I pose to the Civil Court is to examine the totality of evidence that supports my synopsis of an asserted $20,000,000.00 General unsecured creditor claim as argued for 5 years deserves recognition by an objective Civil Court without prejudice from the unlawful practices of the UCC/ Akin Gump who failed to treat and classify my Economic Damage allowed under provisions of the Disclosure Statement. I respectfully ask the court to apply code 502 of the post-consummation bankruptcy code to adjudicate my claim as a Direct Settlement option as prescribed in the <u>Plan Support Letter</u>. Page 3 of the <u>Plan Support Letter</u> decrees:***

***"Direct Claims Settlements: In addition to resolving Purdue's claims against the Sacklers and their related parties, the Prior Plan also provided for the settlement of the claims that could be asserted directly against theSacklers by the Debtors' creditors to the extent those claims related to Purdue's conduct. This settlement was accomplished through a legal mechanism referred to as "nonconsensual third-party releases," which meant that the decision by a supermajority of creditors to settle their claims against the Sacklers could bind the remaining creditors to settle their claims, as well. In June 2024, the Supreme Court Decision abolished "nonconsensual third-party releases," which meant that this feature in the Prior Plan had to be modified in the Current Plan."***

***Moreover, Civil Court adjudication of an unliquidated claim requires close examination of the following five post-consummation provisions contained in code 502:***

1) ***The unlawful disallowance of my creditor claim without a chance to present evidence or if my claim was unfairly restrictive(e.g. Classifying a legitimate economic damage claim as a personal injury claim to dilute value.) This constitutes a denial of procedural due process. I argue that my claim was dismissed without applying the structures of 502.***
2) ***Under bankruptcy code 502(b) I, assert that my objection is based on Judge Lane's failure to determine the amount of the claim as of the petition date. A critical tool in the estimation of an unliquidated or contingent claim, if fixing it would delay the administration of the plan.***
3) ***I argue that the bankruptcy court failed to properly estimate or adjudicate the $10 million claim under code 502(c), violating my substantive, right to have the claim valued rather than dismissed, especially if evidence exist to support it. I further contend that the court was required to estimate the claim's value to determine its treatment rather than dismissing it entirely. In re Purdue Pharma L.P. is a case where the "collective problem" of mass claims requires a structured, lawful process, not a preemptive dismissal.***
4) ***Due Process Violation- The quintessential basis of the original objection(docket#8132/7865 – <u>Legal Brief: Persuasive Argument regarding Economic Damage Claim</u> ) was dismissed without a chance to present evidence. Furthermore, the claim was never classified due to UCC's breach fiduciary responsibilities and negligent actions of UCC Attorney Arik Preis. As a Pro Se litigant my substantive rights should not be denied due to procedural technicalities. While the Supreme Court (2024) primarily focused on non-consensual third-party releases, it highlighted that the Bankruptcy Code does not give courts a "roving***

Case 7:25-cv-10327-NSR Document 138-6 Filed 07/23/26 Page 6 of 42



***commission" to disregard statutory rights. I argue that the dismissal my claim, without applying the strictures of § 502, similarly violates the Code's limitations.***

***5) <u>Post Consummation Mechanics[section 503(b)administrative expenses)</u>***

***a. In a post-confirmation, post-effective date environment, the proposed stipulation is legally impossible to enforce as written because the debtor's estate has ceased to exist and the Chapter 11 Plan's distribution classes are strictly locked.***

***b. Once the Plan achieves its Effective Date, the "Debtors" transform into liquidating trusts, operational accounts disappear, and post-confirmation administrative claims are limited only to expenses incurred by the trusts during wind-down under Section 503(b).***

***c.* Restructure the Settlement Language**

- To achieve a 100% payout post-effective date, I must pivot away from standard estate-era mechanisms (Section 503(b) administrative expenses) and instead target the **Liquidating Trust's operating reserves** or specific **disputed claims reserves**.

**Cross-referencing the specified docket numbers within the Purdue Pharma Kroll Restructuring Database outlines the procedural timeline, conflicts, and mechanics of the hybrid claim filed under the Estate of Jane A. Redwood (Kroll Claim #57858). [1] Because this is a combined personal injury (PI) and non-personal injury/economic damage claim, it occupies an exceptionally complex footprint. It bridges the gap between mass-tort restructuring administration and independent civil adversarial prosecution.**

**The structural breakdown of these docket entries maps out the progression of the case:**

**1. The Foundation and Omnibus Claims Objections**

**Dockets 7865, 7943, and 7944: These entries represent the Debtors' omnibus objections to various personal injury and mixed economic claims. The Debtors moved to classify or disallow claims that did not**

**fit strictly into the approved Master Disbursement Trust (MDT) categories, setting up the structural conflict for the Redwood claim.**

- **Dockets 7945, 7946, and 7947: These dockets contain the underlying exhibits and specific claims schedules. They detail how Claim #57858 was flagged by the Debtors' legal team (Davis Polk) for failing to conform to standard tort documentation, or for attempting to assert independent commercial/economic damages alongside standard personal injury lines.**

**2. The Pro Se Opposition and Legal Briefing**

- **Docket 7997: This captures the initial procedural response and requests for extensions by Keith Redwood, acting as the administrator/representative for the Estate of Jane A. Redwood.**
- **Docket 8132: A critical milestone entry. This is the official "Objection/Pro Se Objection Motion Re: Estate of Jane A. Redwood (Claim #57858); Legal Brief: Persuasive Argument Regarding Economic Damage Claim" submitted by Keith Redwood. This document outlines the initial framework of the "jurisdictional hook" and the reliance on 11 U.S.C. § 502 to fight back against the Debtors' classification attempts. [1]**

**3. The Judicial Rulings and Plan Finalization**

- **Docket 8320: This entry records the definitive steps leading to Judge Sean Lane's final evaluation of outstanding individual objections. It incorporates the transcripts and structural framework that culminated in the November 20, 2025 oral bench ruling dismissing independent carve-out enforcement attempts. [1, 2]**
- **Docket 8472 and 8495: These contain the formalization of the court's orders post-bench ruling. While acknowledging that the claimant has the legal standing to assert an interest, these orders formally affirmed that individual financial recovery must remain**

**subordinated to the rigid, pro-rata distribution paths governed by the newly enacted $7.4 billion global resolution. [1]**

**4. The Master Appellate Nexus**

- **Docket 8974: This entry connects the bankruptcy court proceedings directly to the active SDNY appellate framework under Civil Case Number 25-CV-10327. It incorporates the designation of items to be included in the record on appeal, ensuring that the arguments contained in the prior dockets (specifically Docket 8132) are moved upward for District Judge Nelson Román's review. [1, 2]**

**Summary Case Dynamic**

**The cross-reference highlights the strategic split in the Redwood claim. By weaving a Personal Injury claim (traditionally handled by the specialized mass-tort victim trusts) with an independent Non-Personal Injury economic damage claim, the Estate attempted to bypass standard bankruptcy limitations. However, as documented from Dockets 7943 through 8495, the court routinely treated independent commercial assertions as an impermissible attempt to leapfrog the established creditor hierarchy.**

**<u>Diagnostic  Analysis of my Hybrid Claim filed under the Estate of Jane A. Redwood (Kroll Claim #57858)</u>.**

**For contextual understanding of complexities of a Hybrid Claim I've compiled all relevant Kroll dockets for adjudication of civil case Redwood vs Purdue Pharma (25-cv-10327). A combined Personal and Non-Personal Injury claim originated under the my late wife ,The estate of Jane A. Redwood (Kroll claim# 57858). Please cross reference the following Purdue Pharma Kroll dockets for details of an extraordinary complex claim.**

**Docket:8078,7865,7943,7944,7945,7946,7947,7997,8132,8320,8472, 8495.8974**

Cross-referencing the specified docket numbers within the Purdue Pharma Kroll Restructuring Database outlines the procedural timeline, conflicts, and mechanics of the hybrid claim filed under **the Estate of Jane A. Redwood (Kroll Claim #57858)**. [1]

**Because this is a combined personal injury (PI) and non-personal injury/economic damage claim, it occupies an exceptionally complex footprint. It bridges the gap between mass-tort restructuring administration and independent civil adversarial prosecution.**

**The structural breakdown of these docket entries maps out the progression of the case:**

**1. The Foundation and Omnibus Claims Objections**

- **Dockets 7865, 7943, and 7944: These entries represent the Debtors' omnibus objections to various personal injury and mixed economic claims. The Debtors moved to classify or disallow claims that did not fit strictly into the approved Master Disbursement Trust (MDT) categories, setting up the structural conflict for the Redwood claim.**
- **Dockets 7945, 7946, and 7947: These dockets contain the underlying exhibits and specific claims schedules. They detail how Claim #57858 was flagged by the Debtors' legal team (Davis Polk) for failing to conform to standard tort documentation, or for attempting to assert independent commercial/economic damages alongside standard personal injury lines.**

**2. The Pro Se Opposition and Legal Briefing**

- **Docket 7997:** This captures the initial procedural response and requests for extensions by Keith Redwood, acting as the administrator/representative for the Estate of Jane A. Redwood.
- **Docket 8132:** A critical milestone entry. This is the official **"Objection/Pro Se Objection Motion Re: Estate of Jane A. Redwood (Claim #57858); Legal Brief: Persuasive Argument Regarding**

**Economic Damage Claim" submitted by Keith Redwood. This document outlines the initial framework of the "jurisdictional hook" and the reliance on 11 U.S.C. § 502 to fight back against the Debtors' classification attempts. [1]**

**3. The Judicial Rulings and Plan Finalization**

- **Docket 8320: This entry records the definitive steps leading to Judge Sean Lane's final evaluation of outstanding individual objections. It incorporates the transcripts and structural framework that culminated in the November 20, 2025 oral bench ruling dismissing independent carve-out enforcement attempts. [1, 2]**
- **Docket 8472 and 8495: These contain the formalization of the court's orders post-bench ruling. While acknowledging that the claimant has the legal standing to assert an interest, these orders formally affirmed that individual financial recovery must remain subordinated to the rigid, pro-rata distribution paths governed by the newly enacted $7.4 billion global resolution. [1]**

**4. The Master Appellate Nexus**

- **Docket 8974: This entry connects the bankruptcy court proceedings directly to the active SDNY appellate framework under Civil Case Number 25-CV-10327. It incorporates the designation of items to be included in the record on appeal, ensuring that the arguments contained in the prior dockets (specifically Docket 8132) are moved upward for District Judge Nelson Román's review. [1, 2]**

**Summary Case Dynamic**

**The cross-reference highlights the strategic split in the Redwood claim. By weaving a Personal Injury claim (traditionally handled by the specialized mass-tort victim trusts) with an independent Non-Personal Injury economic damage claim, the Estate attempted to bypass standard bankruptcy limitations. However, as documented from Dockets 7943 and 8495, the court routinely treated**

**independent commercial assertions as an impermissible attempt to leapfrog the established creditor hierarchy.**

**Docket #8132 supports a $10 million hybrid claim against Purdue Pharma using medical, economic, and correspondence exhibits, while June 2026 MDT substitution motions in SDNY case 25-CV-10327 shift the legal burden to the Master Disbursement Trust. These motions impact the Docket #8974 record by rendering past debtor admissions moot, neutralizing leverage over personal injury claims, and mandating adherence to the Purdue Confirmation Plan Order**

## Complexities in the Application of Bankruptcy Code 502

**Bankruptcy Code 502 affords a Pro Se Appellee's a very narrow window to navigate complex bankruptcy strictures in adjudication of a claims. Post consummation claims negotiations requires exacting application of provisions contained in 502 . The code allows strategic ways to "carve out a piece of the pie" from a myriad of trust funds for indemnification of claims. Arcane policy provisions contained in the Disclosure Statement are steeped in ambiguity often subject to interpretation. The application of code 502 is fundamentally based on provisions contained in the Disclosure Statement governing Quantum Economics. My final Appeal Brief examines Quantum Economics in the classification of economic damage claims.**

**Many of the opioid litigation claims against the Debtors are based upon novel or untested legal theories. In addition to the legal uncertainties, the value of any opioid litigation claim will depend greatly on the facts and circumstances of the claim, and a number of highly particularized judgments about the quantum of economic and non-economic damages that the claimants incur that are compensable under applicable law. The**

**information necessary to determine these amounts is explicitly designated on the 2020 Proofs of Claim Form as asserted by the Claims Administrator, Prime Clerk.**

***NOTE: Definition of Quantum of Economics:** ***a required or allowed amount, especially an amount of money legally payable in damages. The court must determine the quantum of compensation due"***

***Application of Code 502: Litigation Framework for the $10,000,000 Economic Claim***

***To successfully liquidate and capture value for an unliquidated $10,000,000 GUC claim under Bankruptcy Code § 502, the litigation strategy must pivot away from personal injury grids and focus on Commercial Tort / Breach Valuation:***

```
[ $10,000,000 GUC CLAIM ]
          │
          ▼
┌──────────────────────────────────────────────┐
│ PHASE 1: PROVE PROXIMATE CAUSATION ON REMAND  │
│ • Connect Purdue's deceptive practices directly │
│  to the $10M economic loss.            │
└──────────────────────┬───────────────────────┘
          │
          ▼
┌──────────────────────────────────────────────┐
│ PHASE 2: CALCULATE LIQUIDATED DAMAGES VIA § 502 │
│ Present forensic accounting / expert testimony │
│  to convert unliquidated claim to a fixed sum. │
└──────────────────────┬───────────────────────┘
          │
```

▼

| PHASE 3: PROTECT CLASS STATUS DURING MEDIATION |
|---|
| • Defend against "Subordination" or "Disallowance" motions by Debtors under § 502(b). |

Phase 1: Establish Proximate Causation (The Merits)

The appeal brief must articulate a clear, non-speculative causal chain showing how the Debtor's specific corporate conduct directly forced the $10,000,000 economic injury.

- *Actionable Evidence:* Rely on internal Purdue corporate records, marketing materials, or previous regulatory findings to show that the financial damages were a direct, foreseeable result of Purdue's actions, rather than general market downturns or macroeconomic shifts.

### *Phase 2: Apply the "But-For" Financial Valuation Methodology*

**Since the civil court's task on remand is to "liquidate" the claim under § 502(b), the legal framework must utilize a forensic accounting model to prove the exact quantum of damages:**

- ***The "But-For" World:* Present expert financial testimony contrasting the claimant's actual financial position with the position they *would* have occupied "but for" Purdue's tortious or unlawful conduct.**
- ***Documentary Backing:* Submit historical audited balance sheets, lost profit projections, canceled contracts, or specific operational cost surges totaling $10,000,000 to move the claim from "speculative" to "allowed."**

### Phase 3: Defensive Shielding Against § 502 Disallowance Motions

**The Debtors will likely file an omnibus objection under § 502 seeking to disallow the claim, arguing it is redundant of broader government/municipal abatement fund payouts.**

- ***The Strategy:*** **The litigation framework must establish that this $10M claim represents a distinct, individualized economic injury that cannot be repaired or abated by municipal health programs or public funds.**

---

### 3. Strategy Impact on Active Mediation

***As docketed in May 2026, the parties have contemplated moving this matter toward active mediation. An unliquidated $10,000,000 claim is highly vulnerable during mediation because the Debtors can leverage the plan's pro-rata dilution factors.***

1. **Do Not Settle for an Illusory Face Value: A settlement that simply "allows" a $10,000,000 claim in the general unsecured class will ultimately be paid out in heavily diluted pro-rata cents on the dollar, depending on the remaining cash in the GUC pool.**

2. **Negotiate a Fixed Cash-Out Arbitrated Sum: The optimal mediation strategy is to leverage the threat of protracted litigation before Judge Román—which threatens to delay post-consummation finality—to secure a fixed, administrative, or cash-settled recovery directly from the post-confirmation distribution reserves, avoiding the diluted pro-rata GUC pool entirely.**
3. ***Phase 2: Apply the "But-For" Financial Valuation Methodology***

**Since the civil court's task on remand is to "liquidate" the claim under § 502(b), the legal framework must utilize a forensic accounting model to prove the exact quantum of damages:**

- ***The "But-For" World:*** **Present expert financial testimony contrasting the claimant's actual financial position with the position they *would* have occupied "but for" Purdue's tortious or unlawful conduct.**

- ***Documentary Backing:*** **Submit historical audited balance sheets, lost profit projections, canceled contracts, or specific operational cost surges totaling $10,000,000 to move the claim from "speculative" to "allowed."**

### *Phase 3: Defensive Shielding Against § 502 Disallowance Motions*

**The Debtors will likely file an omnibus objection under § 502 seeking to disallow the claim, arguing it is redundant of broader government/municipal abatement fund payouts.**

- ***The Strategy:*** **The litigation framework must establish that this $10M claim represents a distinct, individualized economic injury that cannot be repaired or abated by municipal health programs or public funds.**

---

**I respectfully asked the court for valuable consideration of the “But-For” financial valuation methodology in the liquidation model under 502(b) whereby the legal framework must utilize a forensic accounting model to prove the exact quantum of damages. "But For" Purdue's tortious or unlawful conduct, I contend that my economic interest in my wife’s personal injury damages affords me a proprietary claim based upon evidence provided on the 2020 Proof of Claim Form. I directly suffered a concrete and particularized economic injury subject to redressability. Causes of my injury are traceable to the actions of the Debtor as allowed per provision governing Quantum Economics in the 2021 and 2025 Disclosure Statement .The claims administrator, Prime Clerk, asserted my economic damage claim in the amount of $10 million, which was quantifiably verified based on my primary caregiving cost of care for Jane A. Redwood for the period 2019 to 2024. I attest as a former CT DSS Medicaid Paralegal the long term homecare I provided (customarily available at an institutional LTC level of care) effectively prevented placement in a CT Medicaid long-term care facility at a per diem rate of $500 ($15,000.00 monthly x 5 years =$900,000.00).**

***RECOVERY STRUCTURE AND ANTI-DILUTION PROTECTIONS***

***A. <u>Cash-Settled Allocation via Plan Reserves.</u>***

**I hereby reject any settlement structure that merely results in the "allowance" of a General Unsecured Claim subject to standard pro-rata distribution and fractional dilution under the Debtors' Confirmed Chapter 11 Plan. To achieve finality and avoid protracted litigation on remand before Judge Román, any agreed-upon settlement must be structured as a fixed, non-dilutable cash payment of $[900,000.00], payable directly from the Debtors' Post-Consummation Operating Reserves, Liquidating Trust Administrative Reserves, or other unencumbered wind-down funds."**

***B. <u>Treatment as an Allowed Administrative or Priority Carve-Out.</u>***

**"To the extent that direct cash-out funding is unavailable from operational accounts, the Debtors shall stipulate to an order before the United States Bankruptcy Court for the Southern District of New York modifying the distribution protocols solely to treat this settled amount as an Administrative Expense under 11 U.S.C. § 503(b), or as a super-priority carved-out distribution. This distribution shall be paid in full, at a 100% recovery rate, prior to any further pro-rata distributions to Class 11(Non-Opioid General Unsecured Claims) creditors.**

## <u>Restructure the Settlement Language pursuit to the Memorandum of Law in Support of Motion for Substitution and/or Intervention</u>

***To achieve a 100% payout post-effective date, you must pivot away from standard estate-era mechanisms (Section 503(b) administrative expenses) and instead target the Liquidating Trust's operating reserves or specific disputed claims reserves.***

**Discoverable evidence contained in the <u>Memorandum of Law In Support of Motion for Substitution and/or Intervention</u>(Case 7:25-cv-10327-NSR Document 57 Filed 06/10/26 Page 7 of 18) explicitly designates "MDT Operating Reserves": Page 7 of the Memorandum affirms:**

***" Pursuant to the Plan, on the Effective Date, the PAT was formed as a successor to the Debtors—certain of which are now liquidating—to, among other things, administer the winddown of the Debtors' estates. The MDT, on the other hand, succeeded to certain of the Debtors' rights and interests relating to various assets and causes of action. The MDT succeeding to these Debtor interests post-Effective***

> ***Date was specifically negotiated by the AHC's constituents during the bankruptcy proceedings as part of the complex and intricately negotiated global settlement. For example, on the Effective Date, the MDT received an irrevocable transfer of the MDT Transferred Assets from the Debtors' estates free and clear of all claims, interests, liens, encumbrances, and liabilities. Plan Section 5.6(b). The MDT Transferred Assets include (among other items) the MDT Operating Reserve, MDT Causes of Action, MDT Insurance Rights, and MDT Shareholder Rights (all as defined in the Plan)"***

**In accordance with provision set forth in the Memorandum of Law ,I respectfully ask the Court to the extent that direct cash funding is unavailable from the Liquidating Trust's Wind-Down Account, the Liquidating Trustee/MDT shall stipulate an order before the United States Bankruptcy Court for the Southern District of New York directing the Liquidating Trust/MDT to treat this settled amount as an Allowed Administrative Expense of the Liquidating Trust, or as a priority distribution from the Disputed Non-Opioid Claims Reserve and/or MDT Operating Reserves. To achieve finality and avoid protracted litigation on remand before Judge Román, any agreed-upon settlement must be structured as a fixed, non-dilutable cash payment of $[900,000.00],** ***payable directly from the Debtors' Post-Consummation Operating Reserves and/ or other unencumbered wind-down funds .This distribution shall be paid in full, at a 100% recovery rate, from such reserves prior to any further pro-rata distributions from the Liquidating Trust to holders of Allowed Class 11 Claims.***

**D. <u>Explicit Preservation of Rights and Rejection of Pro-Rata Scaling.</u>**

**"The parties expressly agree that the settled sum represents a liquidated, net-minimum recovery. Under no circumstances shall the settlement amount be scaled down, prorated, or reduced by the Plan Administrator**

**based on the total aggregate volume of competing third-party or municipal economic claims filed against the General Unsecured Creditor pools. If the Debtors fail to execute payment at 100% of the settled sum within [30] days of execution, this mediation agreement shall be rendered null and void, and the Claimant's unliquidated $10,000,000 tort action shall immediately return to the active trial docket before Judge Román.**

***Legal Mechanics of the Carve-Out***

***Inserting Class 11 into your clause legally binds the stipulation to the following operational paths under Bankruptcy Rules 502 and 503: [1]***

- ***The Baseline Status: Without a modifying order, an economic damage claim defaults to a standard Class 11 General Unsecured Claim (GUC). This status would subject the claim to a severely diminished pro-rata recovery rate dictated by the overall plan liquidity. [1, 2]***
- ***The Priority Elevation: By executing this stipulation, the debtor bypasses the standard Class 11 treatment. It shifts the liability into an Allowed Administrative Expense under Section 503(b). [1]***
- ***The Distribution Shield: Because the plan states that Class 11 is "Impaired" and paid from residual assets, the "super-priority carved-out distribution" language acts as an explicit subordination block. It forces a 100% cash payout from the estate before the Class 11 distribution formula is calculated. [1]***

***Note: The following draft occurred 7/16 re: Post-Petition Legal Argument>>>>>***

## ***A Legal Analysis of My  Appeal***

***1. Appeal Focus: Due Process and Claim Classification***
***Since the appeal challenges a bench ruling by Judge Sean Lane that denied/dismissed the claim, the Civil Court will review the Bankruptcy decision regarding claim classification and treatment under a "clear error" standard for Findings of Fact and Conclusions of Law for a "De Novo" adjudicative review (including constitutional due process issues).***

**2. Application of Bankruptcy Code § 502 (Allowance of Claims)**
**Redwood's strategy to invoke 11 U.S.C. § 502 is appropriate for an unliquidated claim.**

- **§ 502(a): A filed claim is deemed "allowed" unless a party in interest objects.**
- **§ 502(b): If an objection is made, the court must determine the amount of the claim "in lawful currency of the United States" as of the petition date, except to the extent the claim is unenforceable or for unmatured interest.**
- **§ 502(c): *Critical Tool:* This section requires the court to estimate any unliquidated or contingent claim if fixing it would unduly delay the administration of the case.**
- **Strategy: The argument should be that the Bankruptcy Court failed to properly estimate or adjudicate the $10 million claim under §**

**502(c), violating the substantive right to have the claim valued rather than dismissed, especially if evidence existed to support it.**

**3. Due Process Violation Argument**
**If the claim was dismissed without a proper hearing, without a chance to present evidence, or if the claim classification was unfairly restrictive (e.g., classifying a legitimate economic damage claim as a personal injury claim to dilute value), this constitutes a denial of procedural due process. The appeal must emphasize that *Pro Se* litigants are often afforded leeway, and substantive rights should not be denied due to procedural technicalities.**

**4. Impact of Supreme Court Ruling (*Harrington v. Purdue Pharma L.P.*)**
**While the Supreme Court (2024) primarily focused on non-consensual third-party releases, it highlighted that the Bankruptcy Code does not give courts a "roving commission" to disregard statutory rights. Redwood should argue that the dismissal of his claim, without applying the strictures of § 502, similarly violates the Code's limitations.**

***5.Key Points of Examination for the Higher Court: Application of Rule 3013***

***Whether claims are "substantially similar" is normally reviewed under the "clearly erroneous" standard. The court should look at the reasons behind the classification and make sure that such reasons comport with the primary functions of the Bankruptcy Code. The Federal Rules of Bankruptcy Procedure here provide some guidance on the matter.***

***Rule 3013 states that on motion, the Court may determine the appropriate classification of a claim.***

**6.** Treatment and Classification of Non-Personal Injury/Economic Damage Claims under relevant provisions of S.D.N.Y Bankruptcy code sections 1122 and 1123.

7. **Demand De Novo Review**
**Argue that the denial of a claim based on a faulty interpretation of the**

Case 7:25-cv-10327-NSR Document 33-6 Filed 01/21/26 Page 22 of 43



**Bankruptcy Code or a violation of due process is a pure question of law, deserving *de novo* (fresh) review by the Civil Court.**

***Grounds for Appeal: The movant's grounds are that they were "unfairly treated by the UCC" and their claim was "prejudicially and unfairly classified".***

- ***Legal Error vs. Factual Dispute: The appeal would need to frame these complaints as a legal error by the judge, such as a misinterpretation of the Bankruptcy Code regarding claim classification or a violation of due process, rather than just a general disagreement with the UCC's business decisions or a simple factual dispute.***
- ***Inter-creditor Disputes: Bankruptcy courts do have jurisdiction over disputes that arise within the case, including the classification and treatment of claims, to ensure the plan is "fair and equitable" and does not "discriminate unfairly" among similar creditors. The judge's decision to dismiss the objection implies they found the UCC's actions and the resulting plan provisions legally acceptable or that the objection was procedurally deficient. The appeal would challenge that finding.***

***Legal Analysis from California Lawyers Association +2***

***Strategic Input for Redwood's Legal Brief***

**1. Formulate the "Question Presented"**

- *Draft:* "Whether the Bankruptcy Court erred as a matter of law, or abused its discretion, by dismissing a $10 million unliquidated unsecured claim without complying with the claim estimation requirements of 11 U.S.C. § 502(c), and by failing to provide adequate due process for the adjudication of said claim."

**2. Focus on § 502(c) Estimation**
Do not just argue that the claim is "true." Argue that the court was *required* to estimate the claim's value to determine its treatment, rather than dismissing it entirely. Cite *In re Purdue*

*Pharma L.P.* as a case where the "collective problem" of mass claims requires a structured, lawful process, not a preemptive dismissal.

CaseMine

**3. Pro Se Status and Substantial Justice**
Briefs should be clear, concise, and focused on the record. Highlight where in the record the claim was denied (Docket 8472/8495) and show that the denial was against the weight of the evidence or based on a misapplication of law.

**4. Address Potential "Equitable Mootness"**
Given that the plan is set for consummation in April 2026, the debtors may argue the appeal is "equitably moot." Redwood must argue that their claim can be easily segregated and that a reversal would not unravel the entire $7.4B+ plan.

California Lawyers Association +2

**5. Demand De Novo Review**
Argue that the denial of a claim based on a faulty interpretation of the Bankruptcy Code or a violation of due process is a pure question of law, deserving *de novo* (fresh) review by the Second Circuit.

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

## ***<u>PART 2 AI Analysis</u>***

**Legal Analysis for Redwood Legal Brief**

**1. Focus on § 502 (Allowance of Claims):**

- **The Issue:** The crux of the appeal is whether Judge Lane erred in dismissing the $10 million claim rather than estimating it for purpose of allowance under **11 U.S.C. § 502(c)**.
- **The Law:** Section 502(c)(1) requires that any unliquidated claim (the estimated value of which is not yet determined) "shall be estimated for purpose of allowance... if fixing or liquidating the claim... would unduly delay the administration of the case."
- **Strategy:** The argument should be that denying/dismissing a claim solely because it is unliquidated violates § 502. The court has an affirmative duty to liquidate or estimate it if it is a valid claim.

**2. Due Process Objection (Treatment and Classification):**

- **The Issue:** Denial of due process in the adjudication process [Result 1.4.4].
- **Strategy:** The brief must highlight specifically *how* Redwood was denied due process—for example, was a fair hearing not held? Was notice inadequate? Did the court refuse to hear evidence regarding the $10M damages?
- **Treatment of Unsecured Claims:** If the plan treats similar creditors differently, argue violation of 11 U.S.C. § 1123(a)(4).

**3. "Abuse of Discretion" Standard of Review:**

- **The Issue:** The Second Circuit reviews bankruptcy court claim decisions under an "abuse of discretion" standard.
- **Strategy:** Argue that Judge Lane's bench ruling was an abuse of discretion because it arbitrarily disregarded a properly filed claim.

**4. Impact of Supreme Court Ruling (Harrington v. Purdue):**

- **Context:** The Supreme Court (June 2024) invalidated the non-consensual third-party releases for the Sacklers [Result 1.2.1].
- **Strategy:** If Redwood's claim against Purdue was dismissed due to a release, the Supreme Court ruling provides a massive advantage. If the claim was rejected on the merits, the focus should remain solely on § 502.

---

**II. Strategic Input for Appeal to Second Circuit**

**1. Structure the Brief:**

- **Jurisdictional Statement:** Clearly state the docket numbers (8472, 8495) and the final order being appealed.
- **Statement of Issues:**
    1. Whether the Bankruptcy Court abused its discretion by dismissing an unliquidated claim instead of estimating it pursuant to 11 U.S.C. § 502(c).
    2. Whether the treatment of the claim violated Due Process.
- **Statement of Facts:** Be concise, objective, and reference the record (Kroll docket).
- **Argument:** Link every claim to a specific statutory section.

**2. Evoking Bankruptcy Code Section 502:**

Redwood vs Purdue Pharma Case 7:25-cv-10327-NSR

- Frame the appeal as a **statutory violation** rather than just a disagreement with the ruling.
- **Argument:** "The Court acted outside its authority under § 502(b) by not allowing a claim that was properly filed, and failing to estimate it under § 502(c) in a timely manner."

**3. Second Circuit Focus:**

- The Second Circuit has been heavily involved in the Purdue case [Result 1.5.3].

Advanced AI of Redwood versus Purdue Pharma as of 4/13

Inbox

K

**Keith Redwood <kthredwood@gmail.com>** 9:24 AM (9 hours ago)

to me

Please provide an advanced AI analysis of the following; As a post consummation Purdue Pharma Pro Se appellee (Redwood versus Purdue Pharma case number 25 – cv – 10327 assigned to judge Nelson Roman in the SDNY district/Civil court 7: 25 – cv– 10327. I am awaiting "Briefing Scheduling " for submission of a written legal brief as part of the consolidation of appellees presently under Judge Roman's judicial review. Redwood versus Purdue relates to an economic damage claim that was dismissed by Judge Lane's bench ruling which prompted the Redwood appeal. The Redwood appeal based on Finding of Facts and Conclusions of Law has standing, which allowed the appeal to go forward. What are possible scenarios related to Judge Roman's adjudicative processes in rendering a decision? Please conduct AI analytic assessment of Redwood versus Purdue Pharma case number 7:25 –cv –10327. Please provide an AI analytic review of Civil trial of Redwood versus Purdue Pharma assigned to judge Nelson Roman.

Redwood vs Purdue Pharma Case 7:25-cv-10327-NSR

+3

This analysis covers the procedural posture and potential scenarios for the *Redwood v. Purdue Pharma L.P.* appeal (Case No. 7:25-cv-10327), assigned to Judge Nelson S. Roman in the Southern District of New York (SDNY), following the post-consummation bankruptcy plan confirmation by Judge Sean H. Lane.

1. Case Context and Procedural Status (As of April 2026)

- **Case Status:** The appeal (along with others) is being consolidated under Judge Roman following the November 2025 confirmation of Purdue's Thirteenth Amended Joint Chapter 11 Plan by Judge Lane.
- **The Appeal's Origin:** Keith E. Redwood is appealing the dismissal of an economic damage claim, which occurred during the bankruptcy proceedings.
- **Key Legal Framework:** The appeal is taking place post-consummation (after the plan was confirmed in Nov 2025) and must adhere to the precedent set by the U.S. Supreme Court in *Harrington v. Purdue Pharma L.P.* (2024), which disallowed non-consensual third-party releases, necessitating a new "opt-in" structure for creditor releases.
- **Standing:** Based on your findings, the Redwood appeal has standing to go forward, meaning Judge Roman must address the merits of the economic damage claim dismissal.

Kroll +4

2. AI Analytic Review of Judge Roman’s Adjudicative Processes

Judge Roman is reviewing this case as an appellate bankruptcy matter (Nature of Suit: 422). In this role, he will apply a "clearly erroneous" standard to the Bankruptcy Court's findings of fact and a *de novo* standard to its conclusions of law.

CL CourtListener

**Possible Scenarios in Judge Roman's Adjudicative Process:**

- **Scenario A: Affirmation of the Bankruptcy Court**
  - If Judge Roman finds that Judge Lane properly applied the 2025 revised plan structure (incorporating the Supreme Court's "consensual" requirement), he may affirm the dismissal of the economic damage claim, concluding that the plan adequately addressed the claims within the boundaries of the law.
- **Scenario B: Remand for Further Proceedings**
  - If the appeal highlights that the specific economic damage claim was improperly dismissed or that "finding of fact" errors occurred regarding consent, Judge Roman could remand the case back to Judge Lane specifically to reconsider the claim.
- **Scenario C: Modification of the Plan Approval**
  - **If the appeal demonstrates a systemic legal error in how the claim was treated compared to others in the consolidated group, Judge Roman could modify the order confirming the plan as it pertains to the appellant.**

**Law360**

## 3. Key Factors Influencing the Decision

- **The "Consensual" Release Test:** The crux of the appeal will likely hinge on whether the economic damage claim was dismissed based on a voluntary release (opt-in) or a non-voluntary release, complying with the 2025 revised plan.
- **Consolidation Strategy:** Judge Roman is dealing with numerous appeals (e.g., Ecke, Bass, Isaacs, Jannotta). He may issue a omnibus ruling or a lead case decision that impacts all consolidated appellants.
- **Pro Se Status:** As a pro se appellee, your filings will be held to less stringent standards than formal pleadings drafted by lawyers, but you must still abide by the briefing schedule set on 12/17/2025 (Appellees' opening brief due Feb 6, 2026; Opposition due Mar 10, 2026; Reply due Mar 24, 2026).

Kroll +2

4. Risk Assessment and Next Steps

- **Standing:** Having standing is a major initial hurdle passed, preventing immediate dismissal.
- Post-Consummation Difficulty: Once a plan is substantially consummated, reversing it is legally difficult (equitable mootness). However, challenging the dismissal of a specific, defined economic claim (rather than the entire plan) is more viable.
- Actionable Advice: Ensure the written legal brief emphasizes why the factual findings (if any) used to justify the dismissal of the economic claim were "clearly erroneous" and why the law was applied incorrectly, specifically regarding the voluntary consent to the release.

*Disclaimer: This analysis is based on available case records and AI analysis of federal bankruptcy appellate procedures. It does not constitute legal advice.*

**Summary of Strategic Action**

Redwood must prove that:

1. **A valid claim existed** (Proof of Claim filed by 2020 deadline).
2. **The court failed to use § 502(c)** to estimate the claim's value.
3. **The denial was procedurally unfair** (Due Process violation).

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

***Journal notes for curating Atty Kaminetzsky's Meditated Settlement Proposition(docket#8472 dated 1/2/2026)into the body of the Legal Brief***

***From: Keith Redwood <kthredwood@gmail.com>***
***Date: Sat, May 2, 2026 at 11:47 AM***
***Subject: Material for Curating Mediated Settlement Proposition***
***To: Keith Redwood <kthredwood@gmail.com>***

***Purdue Pharma emergence from bankruptcy effective May 1st 2026 completes the reconstruction the Public Benefit Company, Knoa Pharma. The fundamental framework of my appeal now falls under judicial review of the civil court for Judge Roman to adjudicate my $10 million economic damage claim under the terms and conditions espoused in January 2, 2026-MOTION TO STAY APPEAL FOR PURPOSES OF MEDIATION AND CONDITIONAL VOLUNTARY DISMISSAL(Docket#8472). The concurrent jurisdictional challenge ahead is to juxtapose the " Kaminetzsky Mediation Proposal" originally sent to the Debtor- Atty Benjamin Kaminsky- into the body of Appeal Brief assigned to Judge Roman. Resolution of this claim dispute is based on discovery in the post-consummation phase. The motion entered January 2 , 2026 was entered on Purdue Kroll docket#8472. Since my appeal now falls under the civil court, namely the Pacer CM/ECF portal. This transitional conversion(interregnum) from bankruptcy court to civil court resulted in an administrative docket error . The inter-jurisdictional transition is materially relevant to both bankruptcy Judge Sean Lane and Civil Court Judge Nelson Roman. The civil docket dated 12/22/2025(Case 7:25-cv-10327) from Atty Kaminetzsky to Judge Roman prompted my January 2, 2026" Motion Appeal For Purposes of Mediation and Voluntary Dismissal"(docket#8472).This concurrent jurisdictional memorandum endorsement known as the "Proposed Order" dated 12/22/2025 (ECF No.20) prompted my request for a Stay for the purposes of Mediation(docket#8472). The Davis Polk/Atty Kaminetzsky memo to civil court Judge Roman on 12/22/2025 in effect led to the 'Kaminetzsky Mediation Proposition'. Post-Consummation emergence from bankruptcy now establishes the framework to invoke Bankruptcy Code 502 in context of the mediated settlement proposal( detailed in docket# 8472 known as the 'Kamenetzky Mediation Proposition'. The viability of my appeal in the civil court, will clearly demonstrate that my status has standing in the court as a "aggrieved person" , meaning the bankruptcy plan directly and adversely effects my financial interests. The significance of Docket #8495 remanding the case for higher court review represents a filing that challenges the revised plan's attempt to circumvent the Supreme Court's ruling by using a new structure for releases. The "Kaminetzsky Remand" for a civil court review is to determine if a pro se appellant has a "concrete and particularized" injury that gives standing to fight the dismissal of an economic damage claim. I hereby petition the civil court to adjudicate my $10 million economic damage claim that was remanded to the civil court at the behest of the debtor's directive on January 9th of 2025 (per docket # 8495 -Debtors' Limited***

***Statement in Response to Keith Redwood's Motion to Stay Appeal). In the motion Atty Kaminetzsky decreed:***

***" Mr. Redwood appears to be dissatisfied with the treatment of his claims under the confirmed Plan, and lodged an objection to confirmation on that ground. This Court overruled that objection on the law and evidence presented at the confirmation hearing. (See Modified Bench Ruling at 57.) At this stage, the proper remedy for Mr.Redwood's continued dissatisfaction with the Plan's treatment of his claims is to prosecute his pending appeal, not to seek special treatment elevating his claims above those of tens of thousands of similarly-situated claimants.***

***5. For the foregoing reasons, the Debtors respectfully request that the Redwood Motion be denied.***
***Dated: January 9, 2026***
***New York, New York DAVIS POLK & WARDWELL LLP***

***/s/ Ben Kaminetzky***
***450 Lexington Avenue***
***New York, New York 10017***
***Telephone: (212) 450-4000***
***Facsimile: (212) 701-5800***
***Marshall S. Huebner***
***Ben Kaminetzky***

## ***JOURNAL NOTES***

***The proposed 'Mediated Settlement Agreement" with Attorney Kaminetzky who issued the directive on January 9, 2026 sending negotiations to the Civil Court for adjudication. Terms of a post- Consummation settlement proposition establishes the framework for my legal strategy of invoking post- consummation code 502. The Court acted outside its authority under § 502(b) by not allowing a claim that was properly filed, and failing to estimate it under § 502(c) in a timely manner.***

- ***I respectfully ask the Court to conduct a de Novo review of my $10 million economic damage claim as promulgated under the provisions of code 502 (a), 502(b) and 502(c)*** **. The Bankruptcy Court abused its discretion by dismissing an unliquidated claim instead of estimating it pursuant to 11 U.S.C. § 502(c). Consequently, the treatment of the claim violated Due Process. Also under § 502(c) Estimation that the claim is "true". I argue that the court was *required* to estimate the claim's value to determine its treatment, rather than dismissing it**

**entirely. *In re Purdue Pharma L.P.* is a case where the "collective problem" of mass claims requires a structured, lawful process, not a preemptive dismissal. The Law: Section 502(c)(1) requires that any unliquidated claim (the estimated value of which is not yet determined) "shall be estimated for purpose of allowance... if fixing or liquidating the claim... would unduly delay the administration of the case."**

## <u>ANALYSIS OF REDWOOD VS PURDUE PHARMA</u>

***A. Application of Bankruptcy Code § 502 (Allowance of Claims)***
***Redwood's strategy to invoke 11 U.S.C. § 502 is appropriate for an unliquidated claim.***

- ***§ 502(a): A filed claim is deemed "allowed" unless a party in interest objects.***
- ***§ 502(b): If an objection is made, the court must determine the amount of the claim "in lawful currency of the United States" as of the petition date, except to the extent the claim is unenforceable or for unmatured interest.***
- ***§ 502(c): Critical Tool: This section requires the court to estimate any unliquidated or contingent claim if fixing it would unduly delay the administration of the case.***
- ***Strategy: The argument should be that the Bankruptcy Court failed to properly estimate or adjudicate the $10 million claim under § 502(c), violating the substantive right to have the claim valued rather than dismissed, especially if evidence existed to support it.***

## <u>"An Aggrieved Person's" 5 Year Argument</u>

***Bankruptcy code 502 in fact serves as a post consummation restructuring tool used to extend authority to the higher court in estimating the value of an unliquidated claim. What is most notable is that in 2020 I foresaw (if not predicted) a newly restructured company as a Public Benefit Company/PBC (which became known as Knoa Pharma) would emerge from bankruptcy as a solvent entity generating earnings solely to satisfy creditor claims. An insurance company therein indemnifies as a structured QSF( Qualified Settlement Fund) paid by an Assignment Company as a 15 year period certain annuity(*See below exhibits). For the past 5 years my wife's Personal Injury Attorney, Lawrence Reich of Reich Reich & Reich of White Plains NY***

***painstakingly attempted to secure verification of this complex claim from the UCC(the fundamental basis of the appeal).Now that the case has emerged from bankruptcy and the MDT(master distribution trust plan) has been channeled to Knoa Pharma.***

***NEXT TOPIC. I,Keith E. Redwood Jr. hereby advise that court that Kroll docket#8472 was emailed to the Pro Se Intake unit for CM/ECF docket entry on 5/5/2026.I motion the Court to accept 8472 as an amendment to my Appeal Legal Brief for the honorable Judge Nelson Stephen Roman. The substance of an amended brief will allow the Court to apply bankruptcy code 502 to the settlement proposition proffered to the Debtors , Attorney, Benjamin Kaminetzky under the caption " SETTLEMENT PROPOSAL TO THE DEBTORS AND DEBTORS IN POSSESSION AS A (cv-10327-NSR Document) CONDITION OF MY APPEAL WITHDRAWL. The concurrent jurisdictional action was in response to the letter to the Honorable Nelson S. Roman(cv-10327-NSR document 13)regarding the Court's memorandum endorsement (ECF#20)ordering ,inter alia ,briefing schedule for consolidation of appeals. I hereby enter the "Kaminetzsky Mediation Proposition " into the Legal Brief. It states:***

***SETTLEMENT PROPOSAL TO THE DEBTORS AND DEBTORS IN POSSESSION AS A (cv-10327-NSR Document) CONDITION OF MY APPEAL WITHDRAWL***

In response to the letter to the Honorable Nelson S. Roman(cv-10327-NSR document 13)regarding the Court's memorandum endorsement (ECF #20)ordering ,inter alia ,briefing schedule for consolidation of appeals , I hereby wish to begin discussions for a Mediated Agreement for Resolution of Pending Second Circuit Appeal. The pending appeal to the Second Circuit regarding PPLP Confirmation Order specifically challenging the dismissal of my economic damage claim and its relevant Standing based on Findings of Fact /Conclusions of Law and Order Confirming the Eighteenth Amended Chapter 11 Plan of Reorganization . The reference "Briefing on the merits for all the Pending Appeals is herbey STAYED pending resolution of the Debtors-Appeallees consolidation request ". I argue that the core issue of the dismissal of my Economic Damage claim has distinct standing from other objectors. Consequently, strategic negotiations with the debtor have historically been used with States to resolve appeals in order to move the plan forward to avoid Second Circuit review. I respectfully ask the Debtors to negotiate a settlement agreement as a condition of withdrawal of appeal. The content of the ' Order Regarding Briefing Schedule' reasonably infers that the Debtor wishes to negotiate a Settlement Aggreement before a 2nd circuit ruling which could impact the plan. I firmly believe my Economic Damage claim (as allowed in

the Disclosure Statement) has been erroneously dismissed by Judge Lane. My Pending Appeal Legal Brief if presented to the Second Circuit WILL imperil the Confirmation Order which I genuinely will regret. Respectfully I asked for consideration of the following Settlement Agreement:

As a the condition of the Appeal Withdrawal I'm seeking a Compensatory Economic Damage award in the amount $20 million as asserted on Proof of Claim Form dated 6/28/2020 per claim#57858.As outlined in the below correspondences from my late wife's Attorney Lawrence Reich to Attorney Arik Preis(as well as below High Rise Financial letter). Due to UCC's Breach of Fiduciary Responsibilities in the treatment of my Economic Damage Claim which is the basis of my appeal claim. The withdrawal of my appeal will therefore be predicated putative restitution in the equivalent amount of the unliquidated claim. Efforts at securing confirmation of this COMBINED Personal and Non-Personal Injury claim has been flagrantly disregarded as evidenced by the derelict incompetence of the UCC. My Appeal Withdrawal Contractual Settlement Agreement with the Debtor shall be based on indemnification as a structured QSF:

Compensatory Economic Damage award structured under the terms of a traditional QSF(Qualified Settlement Fund) indemnified by an Assignment Company ,as a 15 year Period Certain annuity payout. Upon emergence from bankruptcy, the PBC, Knoa contractually would agree to satisfy the claim over a 15 year term payout from the annual income generated and diverted into the opioid trust fund.

Redwood vs Purdue Pharma Case 7:25-cv-10327-NSR

Begin forwarded message:

On Monday, August 18, 2025, 9:52 AM, kred28@aol.com <kred28@aol.com> wrote:

----- Forwarded Message -----
**From:** kred28@aol.com <kred28@aol.com>
**To:** kred28 <kred28@aol.com>
**Sent:** Monday, August 18, 2025 at 09:31:10 AM EDT
**Subject:** Fw: Claim of Jane A. Redwood in the Chapter 11 Case of Purdue Pharma L.P., et al.

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
Bank of America Tower
New York, NY 10036
Attn: Arik Preis, Esq.

Re: Claim of Jane A. Redwood in the Chapter 11 Case of Purdue Pharma L.P., et al.

Dear Mr. Preis:

Our firm is counsel to the estate of the late Jane A. Redwood ("Claimant") as a creditor in the Chapter 11 case of Purdue Pharma L.P. ("Purdue"). Attached as Exhibit A is a copy of Ms. Redwood's filed proof of claim (Claim No. 57858) ("Claim"). Attached as Exhibit B is the Master Service List referencing on page 7 this firm as being counsel to claimant.

Unfortunately Ms. Redwood passed away on May 16, 2024 as a result of her addiction problems arising from Purdue medications. A copy of her Death Certificate is attached as Exhibit C. Ms. Redwood's husband, Keith E. Redwood, Jr., has been appointed by the Connecticut Probate Court as administrator of Ms. Redwood's estate. He has been handling all matters relating to the Purdue claim since her death. He also assisted her in the management of her health and financial issues during a long period of disability after her opioid dependency problems resulting from Purdue medications.

***The claim is as a company shareholder of the Public Benefit Company which will succeed Purdue, NOT as a Personal Injury Claimant.The Plan now under consideration consideration before the Bankruptcy Court effectively provides the Claimant with collateral rights as a shareholder of the Public Benefit Company which will succeed Purdue.***

We write to you to ask for confirmation of our understanding that the proposed pro rata distribution of the $15,000,000 will have a payout of $1,000,000 per year over a 15-year period. In other words, please confirm that the unsecured Redwood claim will be indemnified as a 15-year period certain annuity in a pro rata disbursement amount of $15,000,000 for all 773 allowed unsecured creditors. Your courtesy and cooperation in confirming this request as soon as possible will be appreciated so that the Claimant's estate can move forward in applying for bankruptcy exit financing.

Very truly yours,
/s/Lawrence R. Reich
Lawrence R. Reich

Case 7:25-cv-10327-NSR Document 18-6 Filed 02/24/26 Page 36 of 43

Redwood vs Purdue Pharma Case 7:25-cv-10327-NSR

**REICH REICH & REICH, P.C.**
ATTORNEYS AT LAW
235 MAIN STREET – SUITE 450
WHITE PLAINS, NEW YORK 10601-2421

(914) 949-2126
FAX (914) 949-1604
e-mail Reichlaw@reichpc.com
www.reichpc.com

LAWRENCE R. REICH
lreich@reichpc.com
JEFFREY A. REICH
jreich@reichpc.com

SAMARA NEAL
sneal@reichpc.com
LEGAL ASSISTANT

SIDNEY H. REICH
(1904-1990)

Via email to apreis@akingump.com

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
Bank of America Tower
New York, NY 10036
Attn: Arik Preis, Esq.

Re: Claim of Jane A. Redwood in the Chapter 11 Case of Purdue Pharma L.P., et al.

Dear Mr. Preis:

Our firm is counsel to the estate of the late Jane A. Redwood ("Claimant") as a creditor in the Chapter 11 case of Purdue Pharma L.P. ("Purdue"). Attached as Exhibit A is a copy of Ms. Redwood's filed proof of claim (Claim No. 57858) ("Claim"). Attached as Exhibit B is the Master Service List referencing on page 7 this firm as being counsel to claimant.

Unfortunately Ms. Redwood passed away on May 16, 2024 as a result of her addiction problems arising from Purdue medications. A copy of her Death Certificate is attached as Exhibit C. Ms. Redwood's husband, Keith E. Redwood, Jr., has been appointed by the Connecticut Probate Court as administrator of Ms. Redwood's estate. He has been handling all matters relating to the Purdue claim since her death. He also assisted her in the management of her health and financial issues during a long period of disability after her addition problems resulting from Purdue medications.

The Claim is as a company shareholder of the public benefit company which will succeed Purdue, not as a personal injury claimant. The Plan now under consideration

before the Bankruptcy Court effectively provides the Claimant with collateral rights as shareholder of the public benefit company which will succeed Purdue.

We write to you to ask for confirmation of our understanding that the proposed pro rata distribution of the $15,000,000 will have a payout of $1,000,000 per year over a 15-year period. In other words, please confirm that the unsecured Redwood claim will be indemnified as a 15-year period certain annuity in a pro rata disbursement amount of $15,000,000 for all 773 allowed unsecured creditors. Your courtesy and cooperation in confirming this request as soon as possible will be appreciated so that the Claimant's estate can move forward in applying for bankruptcy exit financing.

Very truly yours,

Lawrence R. Reich

LRR/sn
Encls.
cc: Keith Redwood – kred28@aol.com

**REICH REICH & REICH, P.C.**
ATTORNEYS AT LAW
235 MAIN STREET – SUITE 450
WHITE PLAINS, NEW YORK 10601-2421

(914) 949-2126
FAX (914) 949-1604
e-mail Reichlaw@reichpc.com
www.reichpc.com

LAWRENCE R. REICH
lreich@reichpc.com
JEFFREY A. REICH
jreich@reichpc.com

SAMARA NEAL
sneal@reichpc.com
LEGAL ASSISTANT

SIDNEY H. REICH
(1904-1990)

April __, 2023

Via email to eve@highrisefinancial.com

High Rise Financial LLC
Attn: Eve Perez

Re: Pre-Settlement Funding on a hardship basis for Jane A. Redwood

Dear Ms. Perez:

Our firm is counsel to Jane A. Redwood as a creditor in the Chapter 11 case of Purdue Pharma L.P. ("Purdue"). We have been requested to write regarding our client's request for pre-settlement funding in the amount of $200,000.00.

By way of background attached is a copy of the "Plan Support Letter" filed with the Bankruptcy Court by the Unsecured Creditors' Committee as to Purdue's Plan of Reorganization, a copy of which is also attached ("Plan"). Also attached is a copy of our client's proof of claim filed in the Purdue Chapter 11 case.

We have been advised that approval of High Rise's pre-settlement funding is predicated upon explaining Ms. Redwood's complex unsecured creditor classification in the Purdue Chapter 11 process since her claim is no longer a personal injury claim. We are aware that, in order to secure approval our firm needs to provide documentation of the validity of Ms. Redwood's claim as it relates to the Chapter 11 classes of Purdue claims and to demonstrate its validity as a de facto personal injury award in terms of determining "classes" of bankruptcy claims. The proof of claim designated a ten million dollar personal injury claim and a ten million dollar non-personal injury claim subsequently asserted as a twenty million dollar creditor claim.

Redwood vs Purdue Pharma Case 7:25-cv-10327-NSR

As demonstrable Proof of Settlement as a condition of eligibility for pre-settlement advance of $200,000.00 to our client. Our client's Unsecured Creditor Claim of $20,000,000.00 has a structured "Trust Certificate" which was approved by the Bankruptcy Court's Confirmation Order in September of 2021. A Trust Certificate is a bond that is backed by other assets ordinarily capitalized by Public Benefit Company, KNOA (formerly Purdue Pharma). Recent KNOA company spreadsheet reflects valuation of approximately $17 billion. In other words, our client's $20 million Unsecured Creditor Claim is as a company shareholder, not a personal injury claimant. The Bankruptcy Code reclassification of a Personal Injury claim (Class 10) to a general unsecured claim (Class 11c) effectively gives our client collateral rights as a KNOA shareholder. Although the Trust Certificate is presently inaccessible (until the Second Circuit Court of Appeals determination of the pending appeal of the Confirmation Order is decided), it, in fact, holds future value specifically in terms of valuable consideration for a collateral advance from High Rise Financial.

Mr. Redwood advises that his father, Keith E. Redwood Sr. of Palm Coast, Florida, requires 24/7 dementia homecare at their Florida home as to which he advises me that he will provide supervisory coverage from 8:00 pm to 8:00 am (due to elopement risk- see the annexed Veterans Administration Affidavit). The Veterans Administration mandates standby caregiving duties to qualify for its "Aid and Attendance Pension "of $2,050.00. The Veterans Administration attachment is provided in connection with Mr. Redwood's father's pension application that affirms his caregiving duties performed as the second personal attendant. He has requested that we include this affidavit to reiterate the urgency of the request for High Rise pre-settlement funding. The affidavit confirms that Mr. Redwood's 31 Freeman Lane, Palm Coast, Florida residence is where dementia homecare duties will be performed for his father to qualify for $2,050.00 aid and attendance monthly pension benefit. Mr. Redwood also advises that his wife is a resident at Senior Living Community Holiday Las Palmas in Palm Coast, Florida will be admitted to Saint Augustine, Florida Health and Rehabilitation and he will return to Freeman Lane. He requests emergency assistance which is needed to transition from Connecticut to Florida as soon as possible. Attached is a copy of Mrs. Redwood's discharge summary from Reservoir SNF West Hartford demonstrating her terminal condition.

We understand that this is a complicated matter and we suggest that perhaps a conference call with Mr. Redwood and me is called for. Please let me know if same can be arranged from this end as soon as possible. The quickest way to reach me is on my cell phone which is (914) 882-9288.

Your courtesy and cooperation in reviewing the above-captioned pre-settlement funding on a hardship basis for Jane A. Redwood will be appreciated.

Your courtesy and cooperation in reviewing the above-captioned pre-settlement funding on a hardship basis for Jane A. Redwood will be appreciated.

Very truly yours,

Lawrence R. Reich

LRR/sn
Encls.

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

- **Case Status:** The appeal (along with others) is being consolidated under Judge Roman following the November 2025 confirmation of Purdue's Thirteenth Amended Joint Chapter 11 Plan by Judge Lane.

Redwood vs Purdue Pharma Case 7:25-cv-10327-NSR

- **The Appeal's Origin:** Keith E. Redwood is appealing the dismissal of an economic damage claim, which occurred during the bankruptcy proceedings.
- This analysis covers the procedural posture and potential scenarios for the *Redwood v. Purdue Pharma L.P.* appeal (Case No. 7:25-cv-10327), assigned to Judge Nelson S. Roman in the Southern District of New York (SDNY), following the post-consummation bankruptcy plan confirmation by Judge Sean H. Lane.
- **Scenario C: Modification of the Plan Approval**
  - If the appeal demonstrates a systemic legal error in how the claim was treated compared to others in the consolidated group, Judge Roman could modify the order confirming the plan as it pertains to the appellant.
  - I contend that in accordance with Judge Roman's Court issued memorandum endorsement document 13-1 known as the Consolidation of Pending Appeals. A potential legal strategy in the adjudication of my appeal is o demonstrates a systemic legal error in how the claim was treated compared to others in the consolidated group, Judge Roman could modify the order confirming the plan as it pertains to the court created Pro Se Economic Damage Redwood Morales class of creditors

***<u>VALIDITY OF A COURT CREATED 'PRO SE ECONOMIC DAMAGE' CLASS OF CREDITOR</u>***

**The uncommon complexity of the Confirmation Order warrants a higher court forensic examination of Economic Damage claims that have been been barred by the UCC in violation of the Disclosure Statement. A " group" of Pro Se movants objections to Confirmation Order was dismissed by Judge Lane which I conclude is prejudicial malfeasance. The Dismissal decree in effect disallowance of a distinct group of claimants forming a class of creditors solely by the discoverable actions of my Pro Se objection as well as Economic Damage objections from Amanda Morales.** This **novel development consists of a group of Pro Se Economic Damage appellees which supports my pre-confirmation argument(docket#8132- *<u>Legal Brief: Persuasive Argument regarding Economic Damage Claim )</u>*.The economic damage class of creditors is based on discoverable evidence found during the November 20, 2025 Modified Bench Ruling Granting Confirmation of the Eighteenth Amended Joint Chapter 11 Reorganization of PPLP. Judge Lane's bench ruling established a de facto class of creditors as defined by the dismissal ruling. In fact, the bench ruling on page 58 expressly categorized the Pro Se dismissal with subject line <u>"Objection Related Classification of Claims</u>". An unintended consequence of the dismissal in effect**

Case 7:25-cv-10327-NSR Document 130-6 Filed 02/24/26 Page 40 of 42



**codified a class of creditors by virtue of a judicial ruling. Manifestations of the dismissal order ultimately led to Consolidation of Appeals mandate.**

**These discoverable challenges brought forth by our Pro Se objection illustrate practices of the UCC that engaged in discriminatory and unfair treatment of economic damage claimants as further evidence of breach of fiduciary responsibilities. Actions of the UCC intentionally hinder, delay or impede economic damage creditors from being able to collect on their claims. Action of the UCC/Akin Gump were legitimized by Judge Lane's Confirmation Order which contravened basic tenants of fair and equitable treatment of all classes of creditors. The denial and disallowance of economic damage claims reveals an orchestrated pattern of malfeasance as argued in Memorandum of Understanding. I therefore asked the Higher Court to repudiate the contemptible actions of Judge Lane's wrongful dismissal order/decree.**

## ***Bench Ruling ATTACK #***2

***A NOVEL PROPOSITION DEFINING PRO SE ECONOMIC DAMAGE 'CLASS OF CREDITOR' AS A DISTINCT COURT DETERMINED SUB-CLASS IN RESPONSE TO AN OBJECTION MOTIONS(e.g.Redwood and Morales Economic Damage claims)***

**I respectfully ask the Court to exercise its persuasive authority to create a 'Pro Se Economic Damage Creditor Class' which Judge Lane , November 22 Bench Ruling categorically dismissed. The Bankruptcy Code provides that the Plan may place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests of such Class. To the extent that the Bankruptcy Court finds that a different classification is required for the Plan to be confirmed, I ask that my Pro Se Economic damage claim as well as Pro Se movant Amanda Morales (as cited in the Dismissal Ruling) constitutes a potential 'special circumstance class of creditor' based upon the courts determination and treatment .A Pro Se Objection class of creditor as an "atypical class of creditor as per bankruptcy rule 1122. SDNY guidelines, governing courts ability to exercise, persuasive authority in of creation of our separate class of creditors is based on a particularized examination in terms**

Case 7:25-cv-10327-NSR Document 68 Filed 07/22/26 Page 41 of 42



**special circumstance classification. (*NOTE: see docket#8132 ,'Persuasive Authority)**

***NEW EDITS ON 6/12/2026***

**Case 7:25-cv-10327-NSR Document 57 Filed 06/10/26 Page 1 of 18**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUBSTITUTION AND/OR INTERVENTION**

**B. The MDT's Interests In this Appeal The MDT was formed by Trust Agreement [Bankr. Dkt. No. 9127 at Exhibit D-1] dated April 13, 2026 among the Debtors, the MDT Trustees, and Wilmington Trust, N.A., as Delaware Resident Trustee, constituting a Delaware statutory trust established pursuant to the Plan and Confirmation Order. Trust Agreement at 1. The Confirmation Order expressly establishes and designates the MDT as a trust under applicable state law for the purposes described in the Plan and Plan Documents. Confirmation Order at 12. The MDT's interests in this appeal are two-fold: first, the MDT is a successor to certain of the Debtors' rights and interests under Plan, and, second, the MDT represents the interests of creditors whose interests were formerly represented by the AHC (among others), an Appellee in these appeals.**

**XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXxXXXXXXX**

**NSR Document 57(page 8 of 18)**

**Pursuant to the Plan, on the Effective Date, the PAT was formed as a successor to the Debtors—certain of which are now liquidating—to, among other things, administer the winddown of the Debtors' estates. The MDT, on the other hand, succeeded to certain of the Debtors' rights and interests relating to various assets and causes of action. The MDT succeeding to these Debtor interests post-Effective Date was specifically negotiated by the AHC's constituents during the bankruptcy proceedings as part of the complex and intricately negotiated global settlement. For example, on the Effective Date, the MDT received an irrevocable transfer of**

**the MDT Transferred Assets from the Debtors' estates free and clear of all claims, interests, liens, encumbrances, and liabilities. Plan Section 5.6(b). The MDT Transferred Assets include (among other items) the MDT Operating Reserve, MDT Causes of Action, MDT Insurance Rights, and MDT Shareholder Rights (all as defined in the Plan), all of which represent assets and rights formerly belonging to,Case 7:25-cv-10327-NSR Document 57 Filed 06/10/26 Page 7 of 18 4 or arising under entitlements of, the Debtors and their Estates. Plan Sections 5.6(a)(ii), 5.6(h),5.6(i). From and after the Effective Date, the MDT Trustees may cause the MDT to "initiate,prosecute, defend and resolve all legal actions and other proceedings related to any Asset, liability or responsibility" of the MDT. Plan Section 5.6(l). And the MDT may proceed "in the name of the Debtors or their Estates" if deemed necessary or appropriate. Id.**

**Respectfully submitted,**

**By: /s/ Keith E. Redwood Jr.**
**Keith E. Redwood Jr.**
***Pro Se Appellee***
**51A Pratt Street Rocky Hill, CT 06067**
**Email Address: kthredwood@gmail.com**