# Exhibit G

**"Appellant's Brief. Part I. Opposition Opening Appeal Brief: Post-Petition AI Assisted Analytic of pro se Appellee Redwood (An Aggrieved Person) vs Purdue Pharma," filed by Keith E. Redwood, *In re Purdue Pharma L.P., et al*, Case No. 25-cv-10327 (S.D.N.Y. July 22, 2026) [Dkt. No. 61]**

**U.S. District Court**
**Southern District of New York (White Plains)**
**CIVIL DOCKET FOR CASE #: 7:25-cv-10327-NSR**

In Re: Purdue Pharma L.P.
Assigned to: Judge Nelson Stephen Roman

Related Case: 7:25-cv-09681-NSR

Case in other court: USBC-SDNY, 19-B-23649 (SHL)

Cause: 28:0158 Notice of Appeal re Bankruptcy Matter (BA

Date Filed: 12/12/2025
Jury Demand: None
Nature of Suit: 422 Bankruptcy Appeal (801)
Jurisdiction: Federal Question

**In Re**

**Purdue Pharma L.P.**

**Debtor**

**Purdue Pharma L.P.**

***PART I. OPPOSITION OPENING APPEAL BRIEF: POST-PETITION AI ASSISTED ANALYTIC OF PRO SE APPELLEE REDWOOD("AN AGGRIEVED PERSON") vs PURDUE PHARMA(Case No.7:25-cv-10327)***

# *A Post-Petition Legal Argument In Support of a Structured Civil Court Settlement Revision of CV Doc#59(JUDICIAL LIQUIDATION AND ALLOWANCE OF CLAIM PURSUANT TO 11 U.S.C. § 502 AND PLAN SECTION 5.6(b)*

***MEMORANDUM OF LAW IN SUPPORT OF***
***MOTION FOR SUBSTITUTION AND/OR INTERVENTION PROMPTS*** **POST-PETITION ADMINISTRATIVE PRIORITY CLAIM ARGUMENT**

## Introductory Statement

**I respectfully submit this post-petition legal argument in support of a revised structured civil court settlement of Doc No. 59(NOTICE OF MOTON FOR JUDICIAL LIQUIDATION OF CLAIM PURSUIT TO 11 U.S.C. §502 AND PLAN SECTION 5.6(b). Drawing upon AI-assisted research tools coupled with my paralegal Elder Law background in Connecticut Medicaid eligibility investigations, including asset-transfer analysis and "follow-the-money" methodologies, I have closely reviewed the recent civil-court filings and motions concerning trust-fund transfers in this matter.**
**I contend that my proprietary interest in the hybrid economic-damage component of Claim No. 57858 is not merely a historical tort claim. Rather, the post-petition cost-of-care component functioned as a transaction or economic exchange that preserved value for the estate during the bankruptcy period(2019 to 2024). On that basis, I respectfully request that the Court consider whether the $900,000.00 post-petition economic-damage component qualifies for Administrative Expense Priority under § 503(b), or for equivalent priority treatment from applicable post-consummation reserves.**

## Post-Consummation Trust Structure

**Since Purdue Pharma's emergence from bankruptcy on May 1, 2026, I have monitored the post-petition developments relevant to the transfer, control, and administration of settlement assets. The Memorandum of Law in Support of Motion for Substitution and/or Intervention, entered on**

**the docket on June 10, 2026, reflects that the Ad Hoc Committee of Creditors was dissolved and replaced by the Knoa Pharma Master Distribution Trust ("MDT"). The Sackler Estate transferred substantial assets to the MDT, which is administered through a Delaware trust structure involving Wilmington Trust, N.A., as Delaware Resident Trustee.**

**<u>Relevant Memorandum Language</u>**

**The Memorandum states, in substance, that the Master Distribution Trust was formed pursuant to the Plan and Confirmation Order by trust agreement dated April 13, 2026, among the Debtors, the MDT Trustees, and Wilmington Trust, N.A., as Delaware Resident Trustee. It further identifies the MDT Transferred Assets as including, among other assets, the MDT Operating Reserve, MDT Causes of Action, MDT Insurance Rights, and MDT Shareholder Rights.**

**<u>Connection to Requested Settlement Relief</u>**

**The MDT's management by Wilmington Trust aligns with my appeal argument that Claim No. 57858 may be indemnified or satisfied from the MDT Operating Reserves or other unencumbered wind-down funds. Accordingly, I respectfully ask the Court to consider whether, to the extent direct cash funding is unavailable from the Liquidating Trust's Wind-Down Account, the Liquidating Trustee or MDT should stipulate to an order before the United States Bankruptcy Court for the Southern District of New York directing treatment of the settled amount consistent with the Plan and the available post-consummation reserve structure.**

**To achieve finality and avoid protracted litigation on remand before Judge Román, any agreed-upon settlement should be structured as a fixed, non-dilutable cash payment of $[900,000.00], payable directly from the Debtors' Post-Consummation Operating Reserves, Liquidating Trust Administrative Reserves, the MDT Operating Reserves, or other unencumbered wind-down funds.**

**<u>Post-Petition Economic Injury and Estate Benefit</u>**

**Debtor-in-Possession conduct during the post-petition period directly preserved assets for the bankruptcy estate. As the primary caregiver for my late wife, I provided clinical and daily care that prevented her placement in a Connecticut Medicaid long-term care facility.**

**<u>Claim No. 57858 and Economic-Damage Valuation</u>**

**I further affirm that the relevant post-petition period coincides with Claim No. 57858, submitted on June 28, 2020, which asserted both personal and non-personal injury components. That claim specifically identified my economic damages through a particularized "quantum economics" calculation based on the avoided cost of Connecticut long-term care Medicaid services.**

**<u>Cost-of-Care Calculation</u>**

**The total cost of care for the full 2006–2024 period is $3,285,000. For the post-petition bankruptcy period from 2019 through May 16, 2024, the date of Jane A. Redwood's death at Hartford Hospital, the long-term care valuation is approximately $900,000. This amount is calculated at a Connecticut LTC Medicaid per diem rate of $500, or $15,000 per month, resulting in $180,000 annually over sixty months.**

**Administrative Priority Theory**

**The timing of the inquiry and the alleged post-petition wrongful conduct provide a theoretically viable basis to seek administrative-priority treatment.**

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

## <u>POST-PETITION REVISION OF DOC#59 FOR THE POST-PETITION PERIOD 2019 TO 2024</u>

**NOTICE OF MOTION FOR JUDICIAL LIQUIDATION AND ALLOWANCE OF CLAIM PURSUANT TO 11 U.S.C. § 502 AND PLAN SECTION 5.6(b)**

**PLEASE TAKE NOTICE that upon the accompanying Opposition Opening Appeal Brief, the Statement of the Case, and all prior pleadings, records, and filings in this action,**

**including the *Memorandum of Law In Support of Motion for Substitution and/or Intervention* (ECF No. 57), Pro Se Appellee Keith E. Redwood Jr. will move this Court before the Honorable Nelson S. Roman, United States District Judge for the Southern District of New York, at the United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, for an Order:**

1. **Reversing the Bankruptcy Court's bench ruling that summarily dismissed Appellee's $10,000,000.00 unsecured, unliquidated economic damage claim under 11 U.S.C. § 502;**
2. **Allowing and Liquidating Appellee's claim with absolute finality as a fixed, non-dilutable cash sum of $900,000.00;**
3. **Ordering and Directing the Master Disbursement Trust ("MDT") Trustees or authorized Plan Administrators to satisfy this allowed amount via direct payment from the MDT Operating Reserves pursuant to Plan Section 5.6(b) or unencumbered wind-down funds within fourteen (14) calendar days of the entry of the Court's order; and**
4. **Granting such other and further relief as this Court deems just, equitable, and proper.**

**PLEASE TAKE FURTHER NOTICE that pursuant to the briefing schedule established by this Court, or alternatively Local Civil Rule 6.1, opposing answering papers, if any, must be served upon the undersigned Pro Se Appellee in accordance with the rules of this Court.**

**Dated: July,23 2026**
**White Plains, New York**

**Respectfully submitted,**

**By: /s/ Keith E. Redwood Jr.**
**Keith E. Redwood Jr.**
***Pro Se Appellee***
**51A Pratt Street**
**Rocky Hill, CT 06067**
**Email: kthredwood@gmail.com**

**TO:**
**Clerk of Court**
**United States District Court for the Southern District of New York**

**300 Quarropas Street**
**White Plains, NY 10601**

**Counsel for Appellants / Successor Entities**
**/s/ Rachael Ringer**

**Kenneth H. Eckstein**

**Rachael Ringer**

**David E. Blabey Jr.**

**HERBERT SMITH FREEHILLS KRAMER (US) LLP**

**1177 Avenue of the Americas New York, NY 10036**

**Telephone: (212) 715-9100**

**Email: Kenneth.Eckstein@hsfkramer.com Rachael.Ringer@hsfkramer.com David.Blabey@hsfkramer.com]**

## JURISDICTIONAL STATEMENT

**Pursuant to Federal Rule of Bankruptcy Procedure 8014(a)(2) and Local Civil Rules, Appellee (*Pro Se*) Keith E. Redwood Jr. respectfully submits this Jurisdictional Statement:**

### I. District Court Jurisdiction Over the Bankruptcy Appeal

**The United States District Court for the Southern District of New York has subject-matter jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). This statute grants district courts jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges entered in cases and proceedings referred to the bankruptcy courts under 28 U.S.C. § 157.**

The order subject to this appeal is a final order or bench ruling issued by United States Bankruptcy Judge Sean H. Lane, which dismissed Appellee's $10,000,000.00 unsecured economic damage claim asserted under 11 U.S.C. § 502. Because this ruling completely disposes of Appellee's rights regarding the claim, it constitutes a final, appealable order.

## II. Core Proceeding Status

The underlying matter is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(B), which explicitly includes the allowance or disallowance of claims against the bankruptcy estate. Accordingly, the Bankruptcy Court had original jurisdiction to enter a final order, and this Court possesses appellate jurisdiction to review it.

## III. Timeliness of Appeal

Appellee has satisfied all procedural prerequisites to vest jurisdiction in this Court:

1. Date of Entry: The final order/bench ruling by the Bankruptcy Court was entered on [11-20-2025 docket#8270].
2. Notice of Appeal: Appellee timely filed a Notice of Appeal pursuant to Federal Rule of Bankruptcy Procedure 8002(a)(1) within fourteen (14) days of the entry of the order, on [12-1-2025 Notice of Appeal docket#8320].
3. Docketing: The appeal was subsequently transmitted to and docketed by the Clerk of this Court under Case No. 7:25-cv-10327-NSR.

## IV. Post-Consummation Jurisdiction and Active Case or Controversy

Although Purdue Pharma reached its post-consummation emergence date on May 1, 2026, this Court retains active Article III jurisdiction

because a live case or controversy exists regarding the validity and liquidation of Appellee's claim.

Furthermore, pursuant to Section 5.6(b) of the Confirmed Chapter 11 Plan, the Master Disbursement Trust ("MDT") explicitly holds transferred assets within the MDT Operating Reserve. Because Document 57 establishes that indemnification and claim satisfaction pathing are available through these active reserves, this appeal is not moot, and this Court has the specific authority to adjudicate, modify, or direct settlement distributions to resolve this dispute with finality.

---

## ISSUES PRESENTED

**Issue 1: Erroneous Dismissal of the Economic Damage Claim Under 11 U.S.C. § 502**

Whether the Bankruptcy Court committed reversible legal and factual error in its bench ruling dismissing Appellee's $10,000,000.00 unsecured and unliquidated economic damage claim, where Appellee presented prima facie evidence satisfying the elements of an allowable claim under 11 U.S.C. § 502, and whether the lower court improperly failed to evaluate the claim under the liberal pleading standards afforded to *pro se* litigants.

**Issue 2: Authority of the District Court to Fixedly Liquidate a Claim to Achieve Finality**

- Whether this Court, in exercising its appellate and concurrent jurisdiction over a post-consummation Chapter 11 estate, has the authority to bypass a protracted remand and directly enter an order liquidating Appellee's contested $10,000,000.00 claim into a fixed, non-dilutable cash sum of $900,000.00 in order to achieve judicial

**economy and finality for all parties. Most importantly, the proverbial "Jurisdictional Hook" allows the Civil Court to frame Section 5.6(b) of the Plan as a mechanism that gives Judge Roman the authority to bypass a remand. I argue that because the Plan explicitly defines the "MDT Operating Reserve" assets, the Court can resolve the $10M economic damage dispute immediately via this $900,000.00 fixed-cash settlement structure.** [1, 2, 3]

**Issue 3: Sourcing of Settled Claims from the MDT Operating Reserves Pursuant to Plan Section 5.6(b)**

- **Whether, pursuant to Section 5.6(b) of the Confirmed Chapter 11 Plan and the explicit terms of the *Memorandum of Law In Support of Motion for Substitution and/or Intervention* (ECF No. 57), the MDT Operating Reserves and unencumbered post-consummation wind-down funds constitute the proper, legally binding source of assets available to directly satisfy and fund a finalized, non-dilutable cash settlement of an actively litigated claim under judicial review. I further argue that since my claim is under active judicial review, the Non-Dilution clause liquidating it into a fixed cash asset from the Operating Reserves prevents it from being subjected to the standard, heavily diluted pro-rata trust distributions meant for generalized unsecured pools.**

**Footnote:** ***Order of Presentation: These issues are ordered chronologically to build my narrative: first, proving the lower court made a mistake; second, establishing Judge Roman's power to fix it; and third, identifying the exact bucket of money (MDT Operating Reserves) available to pay you. A jurisdictional hook is a specific statutory provision or contract clause that brings a dispute within a court's legal authority, enabling a judge to act. In the Redwood v. Purdue Pharma case, the debtor utilizes Section 5.6(b) of the Chapter 11 Plan as a mechanism to empower the District Court to***

***directly liquidate a contested $10M claim for $900,000.00, aiming to bypass a remand to the bankruptcy court [1, 2, 3]. [1, 2, 3, 4, 5]***

**XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX**

**STANDARD OF REVIEW**

**Pursuant to Federal Rule of Bankruptcy Procedure 8014(a)(5), the District Court sits as an appellate court when reviewing orders issued by the Bankruptcy Court. The applicable standards of review are well-established and applied as follows:**

**I. De Novo Review of Legal Conclusions**

**This Court reviews the Bankruptcy Court's conclusions of law, legal interpretations, and ultimate application of the law to facts under a de novo standard. *See In re MarketXT Holdings Corp.*, 347 B.R. 156, 158 (S.D.N.Y. 2006); *In re Bayshore Wire Products Corp.*, 209 F.3d 100, 103 (2d Cir. 2000).**

**A de novo review requires this Court to consider the legal questions independently, giving no deference whatsoever to the Bankruptcy Court's legal reasoning, oral conclusions, or ultimate bench ruling. The determination of whether a proof of claim asserts a legally cognizable and valid economic damage claim under 11 U.S.C. § 502 is a question of law subject to plenary, de novo review by this Court.**

**II. Clear Error Review of Factual Findings**

**The Bankruptcy Court's findings of fact are reviewed under the clearly erroneous standard. Fed. R. Bankr. P. 8013; *In re Applied Theory Corp.*, 493 F.3d 82, 85 (2d Cir. 2007). A factual finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court on the entire**

evidence is left with the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

To the extent that the Bankruptcy Court made factual findings regarding the unliquidated status or valuation of Appellee's $10,000,000.00 claim, this Court must reverse those findings if they lack a sound evidentiary basis in the record.

**III. Special Solicitous Review for Pro Se Litigants**

Because Appellee is proceeding *pro se*, this Court must apply a well-recognized standard of leniency, construing Appellee's pleadings and arguments with "special solicitude." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006). This requires the Court to interpret Appellee's submissions to raise the strongest arguments they suggest.

The Bankruptcy Court's failure to afford Appellee this required standard of liberal construction when reviewing the sufficiency of the $10,000,000.00 claim under 11 U.S.C. § 502 constitutes a fatal legal error subject to immediate reversal.

***Footnote:** The Standard of Review section tells Judge Roman exactly what legal yardstick he must use to evaluate Judge Lane's bench ruling. In a bankruptcy appeal, the District Court reviews the lower court's legal conclusions de novo (with zero deference, starting entirely fresh), and its factual findings for clear error. Because a dismissal under Bankruptcy Code § 502 is fundamentally a question of law, you want to emphasize the strict de novo standard to your benefit.*

## *STATEMENT OF THE CASE*

Appellee (Pro Se) Keith E. Redwood Jr. submits this Statement of the Case to clarify the procedural mechanism and factual background leading to this appeal, highlighting the intersection between the dismissal of his

**claim under 11 U.S.C. § 502 and the post-consummation administrative assets available for resolution.**

**I. Nature of the Case and Original Claim**

**This appeal arises from the Chapter 11 bankruptcy proceedings of Purdue Pharma L.P. and its affiliated debtors (collectively, the "Debtors"). Prior to the confirmation of the Debtors' Chapter 11 Plan, Appellee timely asserted a valid, unsecured, and unliquidated economic damage claim against the Debtors' estate in the amount of $10,000,000.00. The claim was brought pursuant to 11 U.S.C. § 502 to seek lawful compensation for economic injuries directly tied to the Debtors' post-petition conduct.**

**II. The Lower Court's Bench Ruling**

**The allowance and liquidation of Appellee’s claim were subjected to a claims objection proceeding before United States Bankruptcy Judge Sean H. Lane. During those proceedings, the Debtors sought the wholesale disallowance of the claim. In a subsequent bench ruling, Judge Lane granted the Debtors' objection and dismissed Appellee’s $10,000,000.00 economic damage claim in its entirety. Appellee timely and properly appealed that final adverse determination to this Court under Docket No. 7:25-cv-10327-NSR to preserve his statutory rights under Code § 502.**

**III. Post-Consummation Emergence and Trust Formation**

**On May 1, 2026, the Debtors' Second Amended Chapter 11 Plan of Reorganization (the "Plan") achieved consummation, and the Debtors officially emerged from bankruptcy. Pursuant to the explicit terms of the confirmed Plan, the Debtors' remaining operational infrastructure and designated assets were transferred to successor entities, specifically including the Master Disbursement Trust ("MDT").**

## IV. The Intervening Motion and Sourcing of Settlement Funds

On June 10, 2026, a Memorandum of Law In Support of Motion for Substitution and/or Intervention was formally filed in this appellate action (Case 7:25-cv-10327-NSR, Document No. 57). Document No. 57 explicitly outlines the post-consummation transfer of assets and establishes the definitive pathing for entity substitution, indemnification, and liability management.

Critically, Document No. 57 stipulates and confirms that the assets transferred to the successor trust include distinct operational allocations. Specifically, Plan Section 5.6(b) states: "The MDT transferred assets include the MDT operating reserve." Document No. 57 further affirms that indemnification obligations and administrative claims resolution are fully attainable directly from these operational reserves.

## V. The Current Posture and Objective of the Appellee

This appeal is currently active and pending judicial review before the Honorable Nelson S. Roman. To avoid the substantial expenditures, severe delays, and systemic inefficiencies associated with an eventual remand to the bankruptcy court, Appellee seeks absolute finality through this Opposition.

The operational reality established by Document No. 57 confirms that the MDT Operating Reserves possess the unencumbered liquidity necessary to resolve this dispute. Accordingly, Appellee presents a structured, compromised settlement demanding a fixed, non-dilutable cash payment of $900,000.00 payable directly from the post-consummation MDT operating reserves or wind-down funds, fully liquidating the underlying § 502 claim and terminating this litigation with prejudice.

**Footnote:** ***The Statement of the Case establishes the procedural history and the facts of your dispute. It shows Judge Roman how your $10,000,000 claim arose, how Judge Lane dismissed it, and why the recent post-consummation filings (specifically ECF No. 57) legally connect your settlement objective to the MDT Operating Reserves.***

---

---

## SUMMARY OF ARGUMENT

**Appellee Keith Redwood's appeal of the Bankruptcy Court's bench ruling centers on three interconnected legal pillars: 1) The validity of his claims under the Bankruptcy Code. 2) The explicit post-consummation funding structures created by the Debtors' own reorganization plan. 3)The clear path to judicial economy through an immediate, fixed settlement.**

### I. The Bankruptcy Court Erred in Dismissing the Claim Under 11 U.S.C. § 502

**The Bankruptcy Court committed reversible error by summarily dismissing Appellee's $10,000,000.00 unsecured and unliquidated economic damage claim. Under 11 U.S.C. § 502, a proof of claim is deemed allowed unless a party in interest objects with sufficient evidence to overcome its prima facie validity. Appellee presented viable evidence of substantive post-petition economic injury. The lower court failed to apply the mandatory "special solicitude" required when evaluating pleadings submitted by *pro se* litigants. Reviewed *de novo*, the record demonstrates that Appellee's claim is legally cognizable and satisfies the threshold requirements for allowance.**

**II. Document No. 57 and Plan Section 5.6(b) Establish an Active, Accountable Funding Sourcing**

**The Debtors' emergence from bankruptcy on May 1, 2026, does not render this dispute moot, nor does it insulate the post-consummation estate from liability. As explicitly set forth in the *Memorandum of Law In Support of Motion for Substitution and/or Intervention* (ECF No. 57) filed on June 10, 2026, the newly formed Master Disbursement Trust ("MDT") remains fully accountable for unresolved claims under active judicial review. Pursuant to Section 5.6(b) of the Confirmed Plan, the MDT's transferred assets explicitly include the "MDT operating reserve." Document No. 57 stipulates that indemnification and claim satisfaction mechanisms are active, unencumbered, and directly available within these reserves to absorb liabilities arising from ongoing appellate litigation.**

**III. Judicial Economy Mandates the Immediate Liquidation of the Claim via a Non-Dilutable Settlement**

**To protect the judicial resources of this Court and bypass a protracted, costly remand before Judge Sean H. Lane, Appellee proposes a definitive, compromised resolution. Rather than pursuing the full $10,000,000.00 claim through extended litigation, Appellee seeks a fixed, non-dilutable cash payment of $900,000.00 paid directly from the MDT operating reserves or unencumbered wind-down funds. Because this Court possesses concurrent and appellate authority to review and approve settlements modifying active claims under § 502, entering an order liquidating this claim achieves absolute finality, cuts off administrative drainage of the estate, and concludes this specific appellate controversy with prejudice.**

**Footnote:** ***The Summary of Argument provides a concise, high-impact overview of your core legal positioning. It serves as an executive summary for Judge Roman,***

***distilling your complex bankruptcy appeal into clear, actionable points before he reads the deeper, technical arguments in your brief.***

**XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX**

## **ARGUMENT**

### **I. THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW BY DISMISSING APPELLEE'S VALID ECONOMIC DAMAGE CLAIM UNDER 11 U.S.C. § 502 AND FAILING TO ACCORD MANDATORY PRO SE SOLICITUDE**

**The Bankruptcy Court's bench ruling summarily dismissing Appellee's $10,000,000.00 unsecured, unliquidated economic damage claim constitutes a reversible error of law. Under 11 U.S.C. § 502(a), a proof of claim is deemed allowed unless a party in interest objects. When an objection is filed, the bankruptcy court must determine the amount of the claim as of the petition date and allow it, unless it falls under specific statutory exclusions listed in § 502(b).**

**The Second Circuit has long established that a timely filed proof of claim is prima facie evidence of its validity and amount. *In re Spiegel, Inc.*, 385 B.R. 35, 38 (S.D.N.Y. 2008). The initial burden rests on the objecting debtor to produce evidence of equal probative force to rebut the claim. *In re Kahn*, 114 B.R. 40, 44 (Bankr. S.D.N.Y. 1990). In this matter, Appellee presented concrete, prima facie evidence of extensive pre-petition and post-petition economic injury flowing directly from the Debtors' tortious actions and operational conduct. The Bankruptcy Court improperly shifted the burden of proof entirely onto Appellee, treating a summary claims objection as an insurmountable trial-level evidentiary hurdle.**

**Furthermore, the Bankruptcy Court failed to apply the mandatory standard of liberal construction required for unrepresented litigants. The**

**Second Circuit consistently mandates that pleadings and arguments presented by *pro se* parties must be construed with "special solicitude," interpreted to raise the strongest arguments they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). By hyper-technical application of pleading standards to defeat Appellee's $10,000,000.00 economic damage claim, Judge Lane committed a clear legal error. Reviewed *de novo*, Appellee's underlying claim possesses a sound statutory foundation under § 502 and must be sustained.**

## II. PLAN SECTION 5.6(b) AND DOCUMENT NO. 57 EXPLICITLY DESIGNATE THE MDT OPERATING RESERVES AS AN ACTIVE ASSET POOL AVAILABLE TO SATISFY LITIGATED LIABILITIES

**The Debtors' post-consummation emergence from Chapter 11 bankruptcy on May 1, 2026, does not extinguish or render this appeal moot. On June 10, 2026, the successor entities formally filed a *Memorandum of Law In Support of Motion for Substitution and/or Intervention* (Case 7:25-cv-10327-NSR, Document No. 57). This document confirms that active, non-released appellate claims remain live liabilities that travel directly to the newly established Master Disbursement Trust ("MDT").**

**Crucially, Document No. 57 provides the precise administrative roadmap and asset allocations governing post-emergence claims resolution. Pursuant to Section 5.6(b) of the Debtors' Confirmed Plan, as explicitly cited and incorporated into Document No. 57:**

***"The MDT transferred assets include the MDT operating reserve."***

**This statutory and contractual architecture establishes that the MDT Operating Reserves were deliberately carved out and funded to handle active litigation overhead, successor indemnification, and unresolved claim resolutions. Because my claim remains under active judicial review before Judge Roman, it is a preserved pre-emergence liability. Document**

**No. 57 explicitly stipulates that the pathing for indemnification and liquidation is attainable directly from these transferred assets. Consequently, the MDT Operating Reserves represent an available, liquid, and legally bound asset pool capable of satisfying this dispute.**

## III. JUDICIAL ECONOMY EMPOWERS THIS COURT TO DIRECTLY LIQUIDATE THE CONTROVERSY INTO A FIXED, NON-DILUTABLE CASH PAYMENT OF $900,000.00 TO ACHIEVE ABSOLUTE FINALITY

**In exercising its appellate jurisdiction under 28 U.S.C. § 158(a), a district court has the concurrent authority to affirm, modify, or reverse a bankruptcy court's judgment, or to enter appropriate orders that advance judicial economy. Rather than subjecting the parties, the post-consummation estate, and the judiciary to a protracted, expensive, and redundant remand before Judge Sean H. Lane, this Court should utilize its powers to resolve the dispute with absolute finality.**

**Appellee proposes a structured, compromise liquidation of his $10,000,000.00 claim into a fixed, non-dilutable cash payment of $900,000.00. This proposed figure represents a significant compromise designed to completely cut off the ongoing administrative drainage of the estate caused by protracted appellate litigation.**

**To ensure finality, this payment must be structured as a direct, non-dilutable cash pull from the MDT Operating Reserves or unencumbered wind-down funds. Because the claim is currently undergoing active judicial review, it sits outside the generalized, pro-rata distribution pools meant for passive, unchallenged unsecured creditors. Liquidating the claim at this fixed amount prevents future dilution, completely waives any further remand proceedings, and permits the immediate dismissal of Case No. 7:25-cv-10327-NSR with prejudice, fulfilling the core tenets of judicial efficiency and equity.**

**Footnote*: The Main Body Argument forms the core intellectual engine of your appeal brief. It is divided into three distinct, technically rigorous sections that align with the Issues Presented and the Summary of Argument. It uses statutory authorities, controlling Second Circuit case law, and the explicit terms of Plan Section 5.6(b) to demonstrate that Judge Roman should intervene, liquidate your claim, and order its satisfaction from the trust reserves.***

**I respectfully asked the court for valuable consideration of the "But-For" financial valuation methodology in the liquidation model under 502(b) whereby the legal framework must utilize a forensic accounting model to prove the exact quantum of damages. *"But For" Purdue's tortious or unlawful conduct*, I contend that my economic interest in my late wife's personal injury damages affords me a proprietary claim based upon evidence provided on the 2020 Proof of Claim Form. I directly suffered a concrete and particularized economic injury subject to redressability. Causes of my injury are traceable to the actions of the Debtor as allowed per provision governing Quantum Economics in the 2021 and 2025 Disclosure Statement .The claims administrator, Prime Clerk, asserted my economic damage claim in the amount of $10 million, which was quantifiably verified based on my primary caregiving cost of care for Jane A. Redwood for the period 2019 to 2024. I attest as a former CT DSS Medicaid Paralegal the homecare I provided (customarily available at an institutional LTC level of care) effectively prevented placement in a CT Medicaid long-term care facility at a per diem rate of $500 (5 years x 365 days=$900,000.00).**

## RECOVERY STRUCTURE AND ANTI-DILUTION PROTECTIONS

### A. <u>Cash-Settled Allocation via Plan Reserves.</u>

**I hereby reject any settlement structure that merely results in the "allowance" of a General Unsecured Claim subject to standard pro-rata distribution and fractional dilution under the Debtors' Confirmed Chapter 11 Plan. To achieve finality and avoid protracted litigation on remand before Judge Román, any agreed-upon settlement must be structured as a fixed, non-dilutable cash payment of $[900,000.00], payable directly from the Debtors' Post-Consummation Operating Reserves, Liquidating Trust Administrative Reserves, or other unencumbered wind-down funds."**

**Restructure the Settlement Language pursuit to the Memorandum of Law in Support of Motion for Substitution and/or Intervention**

**Discoverable evidence contained in the Memorandum of Law In Support of Motion for Substitution and/or Intervention(Case 7:25-cv-10327-NSR Document 57 Filed 06/10/26 Page 7 of 18) explicitly designates: "MDT Operating Reserves": Page 7 of the Memorandum affirms:**

***" Pursuant to the Plan, on the Effective Date, the PAT was formed as a successor to the Debtors—certain of which are now liquidating—to, among other things, administer the winddown of the Debtors' estates. The MDT, on the other hand, succeeded to certain of the Debtors' rights and interests relating to various assets and causes of action. The MDT succeeding to these Debtor interests post-Effective Date was specifically negotiated by the AHC's constituents during the bankruptcy proceedings as part of the complex and intricately negotiated global settlement. For example, on the Effective Date, the MDT received an irrevocable transfer of the MDT Transferred Assets from the Debtors' estates free and clear of all claims,***

*interests, liens, encumbrances, and liabilities. Plan Section 5.6(b). The MDT Transferred Assets include (among other items) the MDT Operating Reserve, MDT Causes of Action, MDT Insurance Rights, and MDT Shareholder Rights (all as defined in the Plan)"*

**In accordance with provision set forth in the Memorandum of Law ,I respectfully ask the Court to the extent that direct cash funding is unavailable from the Liquidating Trust's Wind-Down Account, the Liquidating Trustee/MDT shall stipulate an order before the United States Bankruptcy Court for the Southern District of New York directing the Liquidating Trust/MDT to treat this settled amount as an Allowed Administrative Expense of the Liquidating Trust, or as a priority distribution from the Disputed Non-Opioid Claims Reserve and/or MDT Operating Reserves. To achieve finality and avoid protracted litigation on remand before Judge Román, any agreed-upon settlement must be structured as a fixed, non-dilutable cash payment of [$900,000.00], payable directly from the Debtors' Post-Consummation Operating Reserves and/ or other unencumbered wind-down funds .**

## CONCLUSION AND RELIEF SOUGHT

**For the foregoing reasons, Appellee Keith E. Redwood Jr. respectfully requests that this Court REVERSE the Bankruptcy Court's bench ruling dismissing his $10,000,000.00 economic damage claim under 11 U.S.C. § 502.**

**To achieve absolute finality, maximize judicial economy, and prevent a protracted and costly remand, Appellee respectfully requests that this Court enter an Order granting the following specific relief:**

1. **ALLOW AND LIQUIDATE Appellee's claim pursuant to 11 U.S.C. § 502**

as a fixed, fully compromised, and non-dilutable cash sum of $900,000.00;

2. **DIRECT AND ORDER** that the Master Disbursement Trust ("MDT") Trustees or Plan Administrators satisfy this allowed amount in full via a direct cash payment from the MDT Operating Reserves (pursuant to Plan Section 5.6(b) and the mechanics set forth in Document No. 57) or unencumbered post-consummation wind-down funds within fourteen (14) calendar days of the Court's order;
3. **DECLARE** that this liquidated payment is entirely exempt from any pro-rata trust distribution caps, scaling, or subsequent administrative adjustments; and
4. **DISMISS** this appellate action under Docket No. 7:25-cv-10327-NSR with prejudice immediately upon Appellee's written verification of the receipt and clearance of the full $900,000.00 settlement funding.
5. ***SETTLEMENT AND RELEASE STIPULATION LANGUAGE:***

*WHEREAS,* Pro Se Appellee Keith E. Redwood Jr.("Appellee") is the holder of an unliquidated, disputed unsecured economic damage claim originally asserted in the amount of $10,000,000.00 under Bankruptcy Code § 502, currently subject to judicial review before the United States District Court for the Southern District of New York in In re: Purdue Pharma L.P., Case No. 7:25-cv-10327-NSR (presided over by the Hon. Nelson S. Roman); and [1, 2]

*WHEREAS,* the Appellee has timely opposed the Memorandum of Law In Support of Motion for Substitution and/or Intervention (ECF No. 57), noting that pursuant to Section 5.6(b) of the Debtors' Confirmed Chapter 11 Plan (the "Plan"), "The MDT transferred assets include the MDT operating reserve"; and [1]

*WHEREAS*, the parties desire to achieve absolute finality, completely avoid the costs, risks, and protracted nature of further litigation, and entirely bypass a remand of this matter to the District Court or Bankruptcy Court;

***NOW, THEREFORE, IT IS STIPULATED, AGREED, AND CONTRACTED BY AND BETWEEN THE PARTIES AS FOLLOWS:***

**Liquidation and Allowance of Claim**

**Pursuant to Bankruptcy Code § 502, Appellee's claim is hereby deemed allowed, liquidated, and fixed at the absolute compromise amount of Three Million Two Hundred Eighty-Five Thousand Dollars ($900,000.00) (the "Settlement Amount"). This Settlement Amount is non-dilutable, non-reducible, and represents a final, liquidated sum not subject to pro-rata distribution caps, scaling, or subsequent adjustment based on other claim allowances. [1]**

**2. Source of Payment and Indemnification Path**

- **Direct Funding Sourcing: In accordance with Plan Section 5.6(b) and the administrative mechanics detailed in ECF No. 57, the Settlement Amount shall be paid directly from the Master Disbursement Trust ("MDT") Operating Reserves, or alternatively, from the Debtors' post-consummation Wind-Down Funds. [1]**
- ***Indemnification and Carve-Out: To the extent that any post-emergence debtor entity or administrative successor requires indemnification, the MDT Operating Reserve is designated as the primary indemnifying fund to satisfy this cash obligation in full.***

**3. Payment Terms and Timetable**

**The MDT Trustees (or authorized Plan Administrators) shall remit the full Settlement Amount via wire transfer or certified check directly to Keith E. Redwood Jr. within fourteen (14) calendar days of the entry of an order approving this Stipulation by Judge Nelson S. Roman.**

***4. Absolute Finality and Release of Rights***

**No Dilution: This payment is carved out explicitly from operational overhead or wind-down allocation pools and must be paid in full prior to any final distribution of remaining operating reserves.**

***5.<u>Dismissal with Prejudice</u>:***

**Upon verification of receipt of the cleared Settlement Amount, Appellee agrees to voluntarily dismiss the appeal docketed at 7:25-cv-10327-NSR with prejudice, with each party bearing its own legal fees and costs. []**

***6.<u>Waiver of Remand</u>*: Both parties expressly waive any right to demand a remand to United States Bankruptcy Judge Sean H. Lane or further bench rulings regarding the validity or valuation of the underlying claim under 11 U.S.C. § 502. [1]**

***Dated: June 21, 2026***
***Respectfully submitted,***

***By: /s/ Keith E. Redwood Jr.***
***Keith E. Redwood Jr.***
***Pro Se Appellee***
***51A Pratt Street Rocky Hill, CT 06067***
***Cell#(860)997-9322***

***Email: kthredwood@gmail.com***

**<u>CERTIFICATE OF SERVICE</u>**

I, Keith E. Redwood Jr., hereby certify under penalty of perjury pursuant to 28 U.S.C. § 1746 that on this 21st day of June, 2026, I caused a true and correct copy of the foregoing Notice of Motion, Opposition Opening Appeal Brief (containing the Jurisdictional Statement, Issues Presented, Standard of Review, Statement of the Case, Summary of Argument, Argument, and Conclusion), and Settlement Stipulation Language to be served upon the following parties in the manner indicated below:

BY CM/ECF ELECTRONIC FILING:
I certify that the aforementioned documents were filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send email notifications of such filing to all registered attorneys of record listed on the docket for Case No. 7:25-cv-10327-NSR.

BY FIRST CLASS U.S. MAIL (IF APPLICABLE):
In addition, for any party or counsel listed below who may not be fully registered for electronic notifications, a copy was enclosed in a postpaid, properly addressed wrapper and deposited into an official depository under the exclusive care and custody of the United States Postal Service, addressed as follows:

/s/ Rachael Ringer

Kenneth H. Eckstein

Rachael Ringer

David E. Blabey Jr.

HERBERT SMITH FREEHILLS KRAMER (US) LLP

1177 Avenue of the Americas New York, NY 10036

Telephone: (212) 715-9100

Email: Kenneth.Eckstein@hsfkramer.com Rachael.Ringer@hsfkramer.com David.Blabey@hsfkramer.com]

Dated: July 23, 2026
White Plains, New York

Respectfully submitted,

**By: /s/ Keith E. Redwood Jr.**
**Keith E. Redwood Jr.**
***Pro Se Appellee***
**51A Pratt Street Rocky Hill, CT 06067**
**Email Address: kthredwood@gmail.com**

**I respectfully ask the Court to consider whether the $900,000 post-petition caregiving valuation should receive administrative-priority treatment, or equivalent priority treatment, because the caregiving services provided during the post-petition period allegedly preserved economic value and reduced costs that otherwise may have been borne by the estate, Medicaid, or related settlement mechanisms (e.g. 2022 NOAT and SOAT Nine State Agreement. Connecticut received up to $64 million for Opioid Treatment and Prevention, and Direct Support to Victims and Their Families)**

**This request is limited to the post-petition caregiving component and does not seek to disturb the broader classification of all personal-injury or non-personal-injury claims.**

**I further ask the Court to exercise its judicial authority in the adjudication of this multi-dimensional cross jurisdictional claim. The below legal strategies encapsulate core elements of my argument to pre-emptively overcome an equitable mootness challenge in the Second Circuit. To defeat an equitable mootness challenge I must defeat a powerful legal presumption. Because the Purdue Pharma plan was consummated on May 1, 2026, the appellate court will presume the appeal is moot. Therefore I must convincingly demonstrate that Judge Nelson Roman has judicial discretion to grant effective relief without unraveling the entire Purdue Pharma restructuring. Under Second Circuit law, an appeal is not equitably moot if I satisfy the below Four Factors Test. I must prove that Judge Nelson Román can grant effective relief without unraveling the**

**entire Purdue Pharma restructuring. Under Second Circuit law, an appeal is not equitably moot if I satisfy these four factors:**

- **Factor 1: The court can still order effective relief. I argue that awarding a targeted $900,000.00 settlement or reclassifying Claim No. 57858 is a minor, discrete financial adjustment. Paying this claim from the billions held by the Kroll Restructuring Trust Distribution Channels will not crash the entire global settlement.**
- **Factor 2: The relief will not knock the pillars out from under the plan. My claim does not require dismantling the corporate dissolution of Purdue or the creation of Knoa Pharma. The relief is a localized remedy for fraud, rather than an attempt to nullify the entire multi-billion-dollar framework.**
- **Factor 3: The parties have not progressed to a point where reversal is impossible. Because the trusts are actively distributing funds, the operational infrastructure to evaluate and pay claims is fully functional. A court order redirecting a specific slice of trust funds to a hybrid economic claim is completely feasible.**
- **Factor 4: Since I diligently sought a stay of the confirmation order (Critical Vulnerability) the Second Circuit places immense weight on whether the appellant sought a formal stay before the plan was consummated. It was impossible to secure a stay due to UCC's active concealment of discovery artifacts which prevented me from recognizing the fraud in time to block consummation.**

**XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX**

**The evaluation of this specific reclassification strategy involves several strict legal hurdles:**

- **Timing of the Injury: Administrative expense priority under Bankruptcy Code § 503(b)(1)(A) is strictly reserved for the actual, necessary costs of *preserving the estate* after the bankruptcy petition is filed. Because the underlying**

personal and non-personal injury claims under the Estate of Jane Redwood stem from pre-petition conduct, they legally cannot be elevated to administrative status.

- **No Benefit to the Estate:** **To qualify for priority, the debt must arise from a transaction with the debtor-in-possession that directly benefits the bankruptcy estate. A tort claim or historical economic damage claim does not provide a post-petition business benefit to the Purdue Pharma estate.**
- **Precedent Against Reclassification:** **Courts uniformly reject attempts by individual tort claimants to reclassify their claims as administrative expenses. Allowing this would create an impermissible "bypassing" of the multi-billion-dollar global trust distribution system, violating the principle of equal distribution among victims.**
- **The TDP Fiduciary Bound: Even if Attorney Rachael Ringer or the Trust distribution personnel look favorably on the economic merits, they are legally bound by the Trust Distribution Procedures (TDP) confirmed in the plan. They cannot arbitrarily elevate a general unsecured claim to administrative priority without facing immediate objections from other creditors and the U.S. Trustee.**

>>>>>>>> SUBMISSION of PROFF of RECURRENT LTC 1) Apple rehabilitation of Rocky Hill, CT 2) Mapleview nursing home Rocky Hill 3) Reservoir LTC West Hartford CT 4) Masonicare Hospice 5) Compassus Hospice 6) Holiday by Atria Assisted Living >>> note Kathy Barnett transfer of $104,000 in January 2024 covering cost of care at Holiday by Atria . Ensure that copies of deposit is attached as evidentiary exhibit 7) submit PDF Hartford Hospital historic period of coverage 8) include 6/28/2020 part five nonpersonal injury $10 million claim

## ***AI ANALYSIS OF POST-PETTION PERIOD***

***AI Query:*** **Redwood seeks a $900,000 settlement in *Redwood v. Purdue Pharma*, Case No. 25-cv-10327, before Judge Nelson Román. He argues that judicial economy supports resolving the claim in the civil appeal rather than remanding to bankruptcy court, and that the settlement should be considered for administrative-priority or equivalent priority treatment.**

***RESPONSE>Redwood's probability of securing a successful judgment or a negotiated $900,000 settlement through the civil court is low, as civil judges generally cannot override the exclusive jurisdiction of the bankruptcy court to award discrete tort or**

**administrative claims outside of the established restructuring distribution channels. [1, 2, 3]**

**Redwood's probability of securing a successful judgment or a negotiated $900,000.00 settlement through the civil court is moderate, as civil judges generally cannot override the exclusive jurisdiction of the bankruptcy court to award discrete tort or administrative claims outside of the established restructuring distribution channels. [1, 2, 3]**

### The evaluation of this strategy involves several critical points:

- **Bankruptcy Remand Risk: The "judicial economy" hook is difficult to sustain. Federal courts presiding over bankruptcy appeals usually remand cases back to the bankruptcy court to prevent piecemeal litigation, especially when a global reorganization plan has been confirmed to restructure all claims. [1, 2]**
- **Fiduciary Limitations: Attorneys and fiduciaries for the Trust (like Rachael Ringer) are bound by strict trust distribution procedures (TDP). They lack the unilateral authority to offer a direct settlement to a single creditor, as that would violate the priority scheme and the principle of equal treatment among similarly situated creditors. [1]**
- **Approval by the Bankruptcy Judge: Even if Redwood and a fiduciary tentatively agreed on the $900,000.00 amount, it ultimately requires approval from the bankruptcy judge overseeing the estate, not just the civil District Judge (Judge Nelson Roman). [1, 2]**
- **Debtor's Affirmation Value: While the debtor or its counsel (Davis Polk) may have affirmed the *merits* of the underlying economic damages, acknowledging a valid claim does not mean they can bypass the bankruptcy estate to pay it in full in cash. Instead, it typically means the claim holds a valid place in line for pro-rata distribution. [1]**

**To better assess Redwood's legal positioning, could you tell me:**

- **What specific legal precedents or case law are you citing in the brief to support bypassing the bankruptcy court?**
- **Is the claim filed as a priority administrative claim or an unsecured general claim?**

**I can provide a more precise risk-assessment based on this information.**

***__AI QUERY QUESTION:__ Redwood is attempting to have the claim considered as a Priority Administrative claim rather than the current hybrid combination of personal and nonpersonal injury claim asserted under the Estate of Jane Redwood claim # 57858 which again is asserted as a General Other Unsecured creditor claim in the amount of $20 million as designated under the Kroll bankruptcy filing***

***__Response:__***

**Redwood's probability of successfully reclassifying the $20 million general unsecured claim (Claim No. 57858) into a priority administrative claim—and thus securing the $900,000.00 settlement is moderate.**

**To help narrow down the legal viability of this upcoming brief, could you clarify:**

- **Does Redwood allege any post-petition wrongful conduct by the debtor after the bankruptcy filing date?**
- **Is Redwood arguing collateral estoppel or a specific regulatory carve-out to bypass § 503(b)?**

**I can help evaluate the strength of those specific arguments for the July 23 opposition brief.**

***__#2. AI QUESTION: Does Redwood allege any POST PETITION WRONGFUL CONDUCT BY THE DEBTOR AFTER FILING DATE__***

**An argument based on post-petition wrongful conduct provides a theoretically viable legal path to seek administrative priority, but its success in this specific scenario remains low to moderate due to the rigid structure of the Purdue Pharma Chapter 11 plan.**

**Under the *Reading Co. v. Brown* Supreme Court precedent, torts committed by a debtor-in-possession during the operation of the bankruptcy estate can be classified as administrative expenses. For Redwood to successfully leverage this strategy in the opposition brief before Judge Román, the argument must clear several high bars:**

- **Direct Post-Petition Action Required: Redwood must prove that the specific economic or personal harm was caused directly by the actions of Purdue Pharma *after* its bankruptcy petition was filed. If the harm is merely a continuation or secondary effect of pre-petition conduct (e.g., historical marketing or pre-bankruptcy sales), courts will reject the classification.**
- **The "Reading" Exception Limitation: Courts apply the *Reading* doctrine narrowly. Redwood must show that the post-petition operation of the debtor's business inherently created an unfair risk or directly inflicted the $900,000.00 in economic damages outside the scope of normal historical tort claims.**
- **Trust Distribution Procedures (TDP) Preclusion: Because the Purdue Pharma reorganization plan heavily channels all personal and related non-personal injury claims into specific trusts, Judge Román and the trust fiduciary (Rachael Ringer) are constrained. If the post-petition conduct falls within the broad definitions of channeled claims, it cannot be paid out separately as an administrative expense.*NOTE: Pursuit to the above "Reading" Exception Limitation claims CAN BE PAID if claimant demonstrates post-petition operation of the debtor's business inherently created an unfair risk or directly inflicted the $900,000.00 in economic damages outside the scope of normal historical tort claims.**
- **Administrative Claim Bar Date: Most Chapter 11 plans establish a strict post-petition deadline (bar date) for filing administrative expense claims. Redwood's brief must demonstrate that this specific post-petition claim was timely asserted or that cause exists to allow it.**

**To evaluate the exact strength of this argument for the upcoming July 23 brief, let me know:**

- **What is the exact nature of the post-petition conduct (e.g., misrepresentation, breach of a post-petition agreement, or continuous operational harm)?**
- **Did this conduct occur before or after the confirmation of the Purdue Pharma reorganization plan?**

**AI QUERY: Analyze how bankruptcy courts typically rule on that specific type of post-petition injury. The exact nature of this post petition conduct was Purdue Pharma's unlawful and egregious administration and deceptive marketing of oxyContin/oxycodone by Jane Redwood's Pain Management provider Dr. Silvia Knoploch Norwalk CT.**

<u>**ARGUMENT #1: POST PETION LEGAL ARGUMENT FOR PRIORITY CLASSIFIED CLAIM**</u>

- ***TIMING OF THE INJURY*** **: Administrative expense priority under Bankruptcy Code § 503(b)(1)(A) is strictly reserved for the actual, necessary costs of *preserving the estate* after the bankruptcy petition is filed. Because the underlying personal and non-personal injury claims under the Estate of Jane Redwood stem from pre-petition conduct, they legally cannot be elevated to administrative status.*Note: Continuous wrongful conduct occurred from 2006 to 2024.**

<u>**Post-Petition Economic Injury and Request for Priority Classification**</u>

**Administrative-Priority Standard**

**Administrative expense priority under Bankruptcy Code § 503(b)(1)(A) is generally reserved for the actual and necessary costs of preserving the bankruptcy estate after the petition date. I respectfully ask the Court to evaluate whether the post-petition economic injury satisfies that standard because the alleged injury occurred during the 2019–2024 post-petition period and conferred a direct economic benefit on the Debtor-in-Possession's bankruptcy estate.**

<u>**Post-Petition Caregiving Benefit to the Estate**</u>

**From 2019 through 2024, I served as the primary caregiver for Jane A. Redwood. During that period, the care I provided prevented or delayed the need for Connecticut Medicaid-funded long-term institutional care. I contend that this caregiving function preserved economic value by avoiding a long-term care cost that otherwise could have implicated estate-related reimbursement, third-party liability, or opioid-settlement recovery mechanisms.**

<u>**Quantum Economics Valuation**</u>

**Using the Disclosure Statement's treatment of claims and interests, including the concept of "quantum economics," I value the post-petition component of this economic injury at $900,000.00. The calculation is based on a Connecticut long-term-care Medicaid per diem rate of $500, or**

**approximately $15,000.00 per month. Over sixty months, that amount equals $900,000.00.**

**Basis for Priority Classification**

**I contend that my proprietary interest in the hybrid economic-damage component of Claim No. 57858 is not merely a historical tort claim. Rather, the post-petition cost-of-care component functioned as a transaction or economic exchange that preserved value for the estate during the bankruptcy period. On that basis, I respectfully request that the Court consider whether the $900,000.00 post-petition economic-damage component qualifies for administrative-expense priority under § 503(b), or for equivalent priority treatment from applicable post-consummation reserves.**

**Connection to Opioid-Related Medical Need**

**The personal injuries sustained by my late wife involved opioid-related comorbidities, including opioid-induced constipation and repeated emergency-room admissions for metabolic encephalopathy. I contend that these conditions supported eligibility for long-term institutional care customarily provided in a Medicaid nursing facility. By providing primary care during the post-petition period, I assert that I absorbed costs that otherwise could have been shifted to Connecticut Medicaid and potentially pursued through third-party liability, the State Opioid Abatement Trust, the Supplemental Opioid Abatement Trust, or a related hospital classification. Accordingly, the post-petition caregiving cost should be treated as an estate-preserving economic benefit in the amount of $900,000.00.**

*FOOTNOTE*: Asserting that the post-petition conduct consists of Purdue Pharma's deceptive marketing and administration of OxyContin via a regional physician—specifically Dr. Silvia Knoploch in Norwalk, CT—leaves Redwood's probability of securing a successful civil court judgment or administrative priority reclassification at **moderate**. [1, 2, 3, 4] From a bankruptcy and federal litigation standpoint, this argument faces catastrophic structural and factual hurdles: [1] **Purdue Pharma Has Dissolved:** As of May 1, 2026, Purdue*

Case 7:25-cv-09681-NSR Document 133-7 Filed 03/24/26 Page 34 of 52

*Pharma officially **ceased all operations and dissolved** under its Chapter 11 bankruptcy plan, transferring remaining assets to a public-benefit entity named Knoa Pharma. There is no ongoing corporate operations estate left to commit fresh post-petition marketing torts. [1, 2, 3]*

? **The "Reading" Exception Fails on Timeline:** For a claim to qualify as a post-petition administrative expense under *Reading Co. v. Brown*, the wrongful marketing conduct must have occurred *after* Purdue filed for bankruptcy (September 2019) and *before* its operational dissolution. Purdue's deceptive marketing infrastructure was dismantled years ago under regulatory monitoring, meaning any local prescription issues during this window would likely be attributed to individual medical malpractice or historical pre-petition marketing echoes, rather than an active, unauthorized post-petition marketing campaign by the debtor. [1]*The chronic personal and non-personal opioid sustained injuries cannot be segregated by legal constructs of pre or post Petion timelines

? **Absolute Channeling Injunction:** The Purdue bankruptcy framework features an absolute channeling injunction. All claims alleging injury from the "marketing, administration, or manufacturing" of Purdue opioids—regardless of when the effect was realized—are legally forced into the designated Kroll Restructuring Trust Distribution Channels. *Judge Nelson Román's authority to bypass this global injunction to carve out a discrete $900,000.00 cash payment for an individual claimant is an untested novel proposition [1, 2]

? **Fiduciary Mandate:** Because the claim originates from OxyContin exposure, trust fiduciary Rachael Ringer is legally prohibited from treating Claim No. 57858 as an administrative expense. Doing so would violate the Trust Distribution Procedures (TDP) and invite an immediate sanction or objection from the U.S. Trustee for favoring one unsecured claim over millions of others. [1, 2]*Fiduciary Mandate would not apply for Administrative Expense Priority Class.

? **No Benefit to the Estate:** To qualify for priority, the debt must arise from a transaction with the debtor-in-possession that directly benefits the bankruptcy estate. A tort claim or historical economic damage claim does not provide a post-petition business benefit to the Purdue Pharma estate.

? **Precedent Against Reclassification:** Courts uniformly reject attempts by individual tort claimants to reclassify their claims as administrative expenses. Allowing this

would create an impermissible "bypassing" of the multi-billion-dollar global trust distribution system, violating the principle of equal distribution among victims.

▯ **The TDP Fiduciary Bound:** Even if Attorney Rachael Ringer or the Trust distribution personnel look favorably on the economic merits, they are legally bound by the Trust Distribution Procedures (TDP) confirmed in the plan. They cannot arbitrarily elevate a general unsecured claim to administrative priority without facing immediate objections from other creditors and the U.S. Trustee. ***UCC Post-Petition Wrongful Conduct/Neglience under "The Fraud Exception" precludes enforcement of the TDP Fiduciary Bound.**

## *ARGUMENT #2:WRONGFUL POST-PETITION CONDUCT*

**AI QUESTION:** ***DOES REDWOOD ALLEGE ANY POST-PETITION WRONGFUL CONDUCT BY THE DEBTORS AFTER BANKRUPTYCY FILING?***

***AI RESPONSE: An argument based on post-petition wrongful conduct provides a theoretically viable legal path to seek administrative priority, but its success in this specific scenario remains moderate due to the rigid structure of the Purdue Pharma Chapter 11 plan.***

***Under the Reading Co. v. Brown Supreme Court precedent, torts committed by a debtor-in-possession during the operation of the bankruptcy estate can be classified as administrative expenses. For Redwood to successfully leverage this strategy in the opposition brief before Judge Román, the argument must clear several high bars:***

1) ***Direct Post-Petition Action Required: Redwood must prove that the specific economic or personal harm was caused directly by the actions of Purdue Pharma after its bankruptcy petition was filed. If the harm is merely a continuation or secondary effect of pre-petition conduct (e.g., historical marketing or pre-bankruptcy sales), courts will reject the classification.***

2) ***The "Reading" Exception Limitation: Courts apply the Reading doctrine narrowly. Redwood must show that the post-petition operation of the debtor's business inherently created an unfair risk or directly inflicted the $900,000.00 in economic damages outside the scope of normal historical tort claims.***

3) ***Trust Distribution Procedures (TDP) Preclusion: Because the Purdue Pharma reorganization plan heavily channels all personal and related non-personal injury claims into specific trusts, Judge Román and the trust fiduciary***

***(Rachael Ringer) are constrained. If the post-petition conduct falls within the broad definitions of channeled claims, it cannot be paid out separately as an administrative expense.***

***4) Administrative Claim Bar Date: Most Chapter 11 plans establish a strict post-petition deadline (bar date) for filing administrative expense claims. Redwood's brief must demonstrate that this specific post-petition claim was timely asserted or that cause exists to allow it.***

***AI QUERY: What is the exact nature of the post-petition conduct (e.g., misrepresentation, breach of a post-petition agreement, or continuous operational harm)?Did this conduct occur before or after the confirmation of the Purdue Pharma reorganization plan?***

***RESPONSE:*** **The exact nature of this post petition conduct was Purdue Pharma's unlawful and egregious administration and deceptive marketing of OxyContin/Oxycodone for Jane Redwood's Pain Management provider Dr. Silvia Knoploch Norwalk CT.**

**Asserting that the post-petition conduct consists of Purdue Pharma's deceptive marketing and administration of OxyContin via a regional physician—specifically Dr. Silvia Knoploch in Norwalk, CT—leaves Redwood's probability of securing a successful civil court judgment or administrative priority reclassification as moderate. [1, 2, 3, 4]**

**From a bankruptcy and federal litigation standpoint, this argument faces catastrophic structural and factual hurdles: [1]**

- **Purdue Pharma Has Dissolved: As of May 1, 2026, Purdue Pharma officially ceased all operations and dissolved under its Chapter 11 bankruptcy plan, transferring remaining assets to a public-benefit entity named Knoa Pharma. There is no ongoing corporate operations estate left to commit fresh post-petition marketing torts. [1, 2, 3]**
- **The "Reading" Exception Fails on Timeline: For a claim to qualify as a post-petition administrative expense under *Reading Co. v. Brown*, the wrongful marketing conduct must have occurred *after* Purdue filed for bankruptcy (September 2019) and *before* its operational dissolution. Purdue's deceptive marketing infrastructure was dismantled years ago under regulatory monitoring, meaning any local prescription issues during this window would**

likely be attributed to individual medical malpractice or historical pre-petition marketing echoes, rather than an active, unauthorized post-petition marketing campaign by the debtor. [1]

- Absolute Channeling Injunction: The Purdue bankruptcy framework features an absolute channeling injunction. All claims alleging injury from the "marketing, administration, or manufacturing" of Purdue opioids—regardless of when the effect was realized—are legally forced into the designated Kroll Restructuring Trust Distribution Channels. Judge Nelson Román cannot bypass this global injunction to carve out a discrete $3,285,000 cash payment for an individual claimant. [1, 2]

Fiduciary Mandate: Because the claim originates from OxyContin exposure, trust fiduciary Rachael Ringer is legally prohibited from treating Claim No. 57858 as an administrative expense. Doing so would violate the Trust Distribution Procedures (TDP) and invite an immediate sanction or objection from the U.S. Trustee for favoring one unsecured claim over millions of others. [1, 2] *UCC Post-Petition Wrongful Conduct/Negligence under "The Fraud Exception" precludes enforcement of the TDP Fiduciary Bound.

## Strategic Outlook for the July 23 Brief

If the opening opposition brief relies on this specific argument to prevent a remand or force a settlement, Judge Román will almost certainly remand the case to the bankruptcy court or dismiss the request. The civil court lacks the jurisdiction to alter a claim's status from a General Unsecured Claim (as designated in the Kroll Restructuring Administration filings) to an Administrative Priority claim based on historical regional physician prescribing habits. [1]

You said: Purdue Pharma deceptive marketing continued from 2019 to 2024 the year in the of Jane A Redwood cause of death from OxyContin opioid usage for the period 2019 to 2024. The Purdue's wrongful marketing to repeat, continued from 2019 to 2024.

Even with the specific factual expansion that Purdue Pharma's deceptive marketing directly continued from 2019 to 2024—overlapping with Jane A. Redwood's fatal OxyContin usage—the probability of successfully reclassifying the $20 million claim into an administrative priority claim to secure the $3,285,000 settlement is moderate.

**While the timeline establishes a devastating personal tragedy during the post-petition window, the argument cannot survive the rigid structural realities of federal bankruptcy law and the finalized Purdue Pharma estate closure:**

**1. Factual and Corporate Dissolution Preclusion**

- **Purdue Pharma Ceased to Exist: On [May 1, 2026, Purdue Pharma officially dissolved and shut down all operations] under its court-approved Chapter 11 plan. Its assets were fully absorbed by a public-benefit corporation named Knoa Pharma, LLC. [1, 2]**
- **No Ongoing Estate to Sue: Because the operating debtor estate has been completely dismantled and its [initial funding distributed to the Trusts], there is no ongoing, active corporate debtor estate left for Judge Nelson Román to penalize or extract a discrete cash settlement from. [1, 2, 3]**

**2. Failure to Meet the Administrative Priority Standard**

**To qualify as an administrative priority expense under Bankruptcy Code § 503(b)(1)(A), a claimant must satisfy a strict two-part test: the debt must arise from a transaction with the debtor-in-possession, and it must directly benefit the preservation of the bankruptcy estate.**

- **The Injury Did Not Benefit the Estate: Even if Redwood proves that Purdue's marketing infrastructure continuously caused harm through Dr. Silvia Knoploch up until 2024, a continuous tort injury or marketing malpractice does not constitute a "necessary cost of preserving the estate." [1]**
- **Pre-Petition Echoes vs. Operational Costs: Federal courts routinely rule that injury claims resulting from a product that a company marketed pre-petition—even if the usage and death occurred post-petition—cannot be elevated to administrative status. They remain categorized as general unsecured claims because the operational "root" of the corporate wrongdoing was set in motion prior to the September 2019 bankruptcy filing. [1]**

**3. Legal Confinement of the Fiduciary and Civil Court**

- **The Absolute Channeling Injunction: The [$7.4 billion global settlement] that went into effect on May 1, 2026, includes an absolute channeling injunction. This mandate legally forces all opioid-related injuries, wrongful deaths, and marketing claims out of the civil court system and directly into the [Kroll Restructuring Trust Distribution Channels]. [1, 2, 3]**

Case 7:25-cv-10327-NSR Document 1-7 Filed 10/22/25 Page 39 of 53

- **Rachael Ringer Lacks Authority: As a fiduciary, Attorney Rachael Ringer is strictly bound by the Purdue Personal Injury Trust Procedures. Even if she acknowledges the merits of the economic damage claim, she cannot legally execute a carved-out $900,000.00 settlement. Doing so would violate her fiduciary duties to the millions of other victims and would be immediately blocked by the U.S. Trustee. [1]*NOTE: Subject to Judge Roman's determinations of UCC's neglience and willful misconduct under the Fraudulent Exception rule.**

***ARGUMENT#3: JUDICIAL ECONOMY ARGUMENT***

**AI QUERY: I contend the since Claim#57858 has been deemed a "Hybrid Combined Personal Injury and Non-Personal Injury Economic damage claim, the civil court can utilize "judicial economy" to override a finalized, multi-billion-dollar bankruptcy plan's channeling injunction, meaning Claim No. 57858 will be reexamined by the Civil Court since the Unsecured Creditor committee(UCC) breached their fiduciary responsibilities in failing to treat and classify the non-personal economic claim in the asserted amount of $10,000,00 as argued by husband Keith Redwood in the ongoing civil trial Redwood vs Purdue Pharma(case# 25-cv-10327).**

**RESPONSE:**

***The probability of the District Court using "judicial economy" to override the confirmed channeling injunction based on the Unsecured Creditors Committee's (UCC) alleged breach of fiduciary duty is near zero.***

***While husband Keith Redwood's argument identifies a core frustration regarding the plan's conscious choice to omit individual economic damage tracking, the legal framework of a confirmed Chapter 11 bankruptcy prevents a civil court from granting this relief. [1]***

***1. Fiduciary Breach Claims Cannot Subvert Confirmation***

***The contention that the UCC breached its fiduciary duties by failing to properly classify the non-personal economic portion of Claim No. 57858 cannot be used to unravel the plan.***

- ***The Plan is Already Binding: The Eighteenth Amended Plan was confirmed in November 2025 and became fully effective and substantially consummated on May 1, 2026. Under Bankruptcy Code § 1141(a), a confirmed plan binds all***

*creditors, regardless of whether they objected to their classification during the case. [1]*

- ***UCC Exculpation and Immunity:** Like virtually all major Chapter 11 plans, the Purdue Pharma plan contains standard exculpation provisions that legally immunize the UCC and its members from liability for actions taken during plan negotiations, except in cases of willful misconduct or gross negligence. A disagreement over claim formatting does not meet this high standard. [1]*

***2. The Bankruptcy Court Already Addressed the Economic Damage Omission***

*The Southern District of New York Bankruptcy Court explicitly reviewed and overruled Keith Redwood's formal objections (ECF No. 8132; 7946) regarding this exact issue. [1]*

- *The court noted that the decision not to build an individualized compensation program for economic damages within personal injury claims was a deliberate and reasonable compromise. [1]*
- *The court concluded that tracking individual economic loss would require extensive, prolonged documentation and individualized analysis, draining the estate's limited resources. Because the bankruptcy court already ruled that this exclusion was legal and necessary to preserve the estate, the Civil District Court cannot treat it as an actionable breach of duty. [1]*

***3. Judicial Economy Dictates Remand, Not Reexamination***

*The argument that "judicial economy" allows Judge Nelson Román to bypass the injunction reverses standard federal practice:*

- ***Anti-Piecemeal Litigation Rule:** In bankruptcy appeals like In Re: Purdue Pharma L.P. (7:25-cv-10327-NSR), "judicial economy" is almost exclusively invoked to remand or dismiss outside civil lawsuits. [1, 2]*
- ***The Exclusive Remedy:** Allowing a civil court to independently liquidate an individual's hybrid claim at a preferred value of $3,285,000 would cause chaos across the mass-tort framework. Federal courts uniformly rule that allowing a single claimant to bypass a multi-billion-dollar global trust distribution system destroys judicial economy by encouraging thousands of other creditors to file parallel civil suits.*

***Impact on the July 23 Opposition Brief***

*If the upcoming brief relies on the UCC's alleged structural failures to justify a civil liquidation, Judge Román will strictly enforce the channeling injunction. Claim No.*

***57858 cannot be re-sorted by a civil court; it remains bound to its treatment under the Kroll Restructuring Administration and the established Purdue Personal Injury Trust Procedures. [1, 2]***

***To pinpoint any remaining narrow appellate arguments for the brief, let me know:***

- ***Is Keith Redwood arguing that he never received constitutionally adequate notice of the plan's claim bar dates?***
- ***Does the brief assert that the UCC completely concealed material information from the court regarding hybrid claims?***

***I can assess if those specific procedural arguments have any leverage on appeal.***

***AI QUERY: All Briefs ( both Opening Opposition Brief and Final Appeal Brief which includes docket#7865/Objection to Improper Classification of Non-Personal Injury Claim affirms UCC's Breach of Fiduciary Responsibilities and UCC's concealment of material information from the court regarding my hybrid economic damage claim. In fact both the Oppositional Opening Brief and the Final Appeal brief categorically allege UCC and its members including Lead Atty Arik Preiss of Akin Gump of willful misconduct or gross negligence under the Fraud Exception rule.***

***AI RESPONSE:***

**Categorically alleging willful misconduct or gross negligence against the Unsecured Creditors' Committee (UCC) and its counsel, Lead Attorney Arik Preis of Akin Gump, sets a theoretically appropriate baseline to target the plan's exculpation clause. However, the probability of Judge Nelson Román reversing the bankruptcy order or allowing a $900,000.00 carve-out is subject to contextual interpretation. [1, 2, 3, 4, 5]**

**From an appellate standards perspective, the upcoming July 23, 2026 Opposition Brief faces insurmountable structural defenses under federal bankruptcy law:**

**1. The High Appellate Standard for Fiduciary Fraud**

**To successfully bypass the exculpation protections granted to the UCC and its professionals under the confirmed plan, Keith Redwood must clear the "Clear Error" standard of review.**

- **The Bankruptcy Court Found Good Faith: During the November 2025 confirmation hearings, the bankruptcy court failed to evaluate the UCC's conduct and never entered findings of fact that the committee, its members,**

and Akin Gump acted in good faith or were free from gross negligence or willful misconduct.

- **Concealment Claims Face Strict Pleading Bars:** I affirm that the UCC possessed artifacts and proof of my economic-damage claim. The record shows that the UCC had a specific duty to identify and segregate the *non-personal injury* components of Claim No. 57858, yet concealed that information from the court and creditors. The record further reflects the omission of localized economic-loss tracking within the tort-claims framework.

## 2. Failure to Show "Particularized Injury"

Even if Keith Redwood could prove that the UCC acted with gross negligence regarding hybrid classification, the remedy cannot be an independent financial judgment in Civil Court. [1]

- Derivative vs. Direct Claims: Alleged breaches of fiduciary duty by a UCC belong to the *entire estate*, not to an individual creditor. If a committee fails in its duties, the remedy is an estate-wide sanction or a restructuring of the distribution trust.

- No Authority to Liquidate Separately: An individual appellant cannot use a committee's structural omission to claim a personalized $900,000.00 cash payout ahead of other unsecured claimants. Doing so violates the core bankruptcy tenet of pro-rata distribution for similarly situated losses. [1]

## 3. Equitable Mootness Defeats Re-examination

Because the Purdue Pharma restructuring plan was substantially consummated on May 1, 2026—with corporate dissolution finalized and billions transferred to operating trusts—the doctrine of equitable mootness heavily protects the status quo.

- Judge Román cannot grant the requested relief because undoing the claim classification systems at this late stage would threaten to unravel the multi-billion-dollar global trust framework. [1, 2]

- Federal appellate courts consistently invoke equitable mootness to dismiss appeals that seek to pull a thread that could dismantle an operational, court-implemented mass-tort settlement. [1]

If you are finalizing the brief's structure, let me know:

- Are you citing any specific internal UCC communications or discovery artifacts to demonstrate active intent to conceal?

- **Have you formulated an argument to counter the equitable mootness doctrine regarding the May 1 consummation?**

**I can outline the specific legal standards required to defeat a mootness challenge on appeal.**

***AI QUERY:*** ***I am finalizing the brief's structure and will be citing specific internal UCC communications or discovery artifacts to demonstrate active intent to conceal. I have not formulated an argument to counter the equitable mootness doctrine regarding the May 1 consummation? Please outline the specific legal standards required to defeat a mootness challenge on appeal.***

***RESPONSE:***

***#4.*****To defeat an EQUITABLE MOOTNESS challenge in the Second Circuit, you must overcome a powerful legal presumption. Because the Purdue Pharma plan was consummated on May 1, 2026, the appellate court will presume the appeal is moot.**

**To overcome this, your July 23 opposition brief must strictly satisfy the controlling Second Circuit standard set forth in *In re Chateaugay Corp*. and refined in *In re BGI Creditors' Liquidating Trust***

.

**The Four-Factor Test to Defeat Equitable Mootness**

**You must prove that Judge Nelson Román can grant effective relief without unraveling the entire Purdue Pharma restructuring. Under Second Circuit law, an appeal is not equitably moot if you satisfy these four factors:**

- **Factor 1: The court can still order effective relief. You must argue that awarding Redwood's targeted $900,000.00 settlement or reclassifying Claim No. 57858 is a minor, discrete financial adjustment. Prove that paying this claim from the billions held by the Kroll Restructuring Trust Distribution Channels will not crash the entire global settlement.**

- **Factor 2: The relief will not knock the pillars out from under the plan. Show that your claim does not require dismantling the corporate dissolution of Purdue or the creation of Knoa Pharma. Frame the relief as a localized remedy for fraud, rather than an attempt to nullify the entire multi-billion-dollar framework.**
- **Factor 3: The parties have not progressed to a point where reversal is impossible. Argue that because the trusts are actively distributing funds, the operational infrastructure to evaluate and pay claims is fully functional. A court order redirecting a specific slice of trust funds to a hybrid economic claim is completely feasible.**
- **Factor 4: You diligently sought a stay of the confirmation order. (Critical Vulnerability) The Second Circuit places immense weight on whether the appellant sought a formal stay before the plan was consummated. If Keith Redwood failed to seek or obtain a stay before the May 1, 2026 effective date, you must argue that a stay was impossible to secure or that the UCC's active concealment of discovery artifacts prevented you from recognizing the fraud in time to block consummation. [1]**

**Leveraging the Internal UCC Communications (The Fraud Exception)**

**Your discovery artifacts showing that Lead Attorney Arik Preis of Akin Gump and the UCC intentionally concealed material information provide your strongest weapon against equitable mootness.**

- **The Bad Faith Exception: Equitable mootness is an equitable doctrine designed to protect innocent third parties who relied on a finalized bankruptcy plan. It is not a shield for fiduciary misconduct. [1]**
- **The Argument: Argue that the UCC and its professionals cannot use a consummation deadline they rushed to meet as a shield to lock away evidence of their own willful misconduct or gross negligence.**

**Equity will not protect fiduciaries who actively misled the court or claimants to force a plan through.**

**I respectfully ask the Court to exercise its judicial authority in the adjudication of this multi-dimensional cross jurisdictional claim. The above legal strategies encapsulate core elements of my argument to pre-emptively overcome an equitable mootness challenge in the Second Circuit. To defeat an equitable mootness challenge I must overcome a powerful legal presumption. Because the Purdue Pharma plan was consummated on May 1, 2026, the appellate court will presume the appeal is moot. Therefore I must convincingly demonstrate that the Court has the judicial discretion to grant effective relief without unraveling the entire Purdue Pharma restructuring. Under Second Circuit law, an appeal is not equitably moot if I satisfy the above Four Factors Test. I must prove that Judge Nelson Román can grant effective relief without unraveling the entire Purdue Pharma restructuring. Under Second Circuit law, an appeal is not equitably moot if you satisfy these four factors:**

- **Factor 1: The court can still order effective relief. I argue that awarding a targeted $900,000.00 settlement or reclassifying Claim No. 57858 is a minor, discrete financial adjustment. Paying this claim from the billions held by the Kroll Restructuring Trust Distribution Channels will not crash the entire global settlement.**
- **Factor 2: The relief will not knock the pillars out from under the plan. My claim does not require dismantling the corporate dissolution of Purdue or the creation of Knoa Pharma. The relief is a localized remedy for fraud, rather than an attempt to nullify the entire multi-billion-dollar framework.**
- **Factor 3: The parties have not progressed to a point where reversal is impossible. Because the trusts are actively distributing funds, the operational infrastructure to evaluate and pay claims is fully functional. A court order redirecting a specific slice of trust funds to a hybrid economic claim is completely feasible.**

- Factor 4: Since I diligently sought a stay of the confirmation order (Critical Vulnerability) the Second Circuit places immense weight on whether the appellant sought a formal stay before the plan was consummated. It was impossible to secure a stay due to UCC's active concealment of discovery artifacts which prevented me from recognizing the fraud in time to block consummation.

**Leveraging the Internal UCC Communications (The Fraud Exception)**

Discovery artifacts showing that Lead Attorney Arik Preis of Akin Gump and the UCC intentionally concealed material information provide your strongest weapon against equitable mootness.

- The Bad Faith Exception: Equitable mootness is an equitable doctrine designed to protect innocent third parties who relied on a finalized bankruptcy plan. It is not a shield for fiduciary misconduct. [1]
- The Argument: Argue that the UCC and its professionals cannot use a consummation deadline they rushed to meet as a shield to lock away evidence of their own willful misconduct or gross negligence. Equity will not protect fiduciaries who actively misled the court or claimants to force a plan through.
- To maximize the impact of your internal UCC discovery artifacts on Factor 4 (Diligence / Justifiable Failure to Obtain a Stay) and defeat equitable mootness, my brief will frame the "smoking gun" communication not just as a general grievance, but as an active, calculated barrier that made a timely stay impossible to secure.
- In the Second Circuit, a failure to obtain a stay can be legally excused if the appellant can prove that the UCC's deceptive conduct or active concealment prevented me from seeking that stay.

**I hereby proclaim that: 1) My Appeal Is Not Equitably Moot Because Meaningful, Discrete Relief Can Be Granted Without Unwinding the Substantially Consummated Plan.**

**2) Affirmative Test: In accord with the application of the *Chateaugay* factors, I contend that a $900,000.00 carved-out settlement is a "drop in the bucket" of a multi-billion-dollar estate and requires zero modification to the overarching plan architecture.**

**3) Fiduciary Fraud Hook: An equitable mootness dismissal here would reward the UCC's documented concealment, creating a dangerous precedent that immunizes fiduciary gross negligence.**

**The maximum impact of the 4 Factor Test*(Diligence / Justifiable Failure to Obtain a Stay)* e.g. "Smoking Gun " communication not just as a general grievance, but as an active, calculated barrier that made a timely stay impossible to secure. In the Second Circuit, a failure to obtain a stay can be legally excused if the appellant can prove that the appellee's own deceptive conduct or active concealment prevented them from seeking that stay.**

***1. The Legal Thesis (The "Fraud-Vitiates-Diligence" Rule)***

**UCC cannot use the May 1, 2026 consummation date as a shield when their own willful misconduct engineered the timeline.**

**The UCC's Active Concealment of Material Hybrid Claim Data Tolled Appellant's Diligence and Excuses the Absence of a Pre-Consummation Stay Under Factor Four.**

***2. Framed Evidentiary Presentation (The "Smoking Gun" Layout)***

***The* UCC's legal duty and their active breach was a deliberate decision by Lead Attorney Arik Preis and the committee to hide the economic damage evaluations from the record. I *exercised maximum diligence under the circumstances, but was actively blindfolded by the Committee's fiduciary fraud. The newly uncovered internal Committee communication dated***

*[2020 to 2024] provides the 'smoking gun' proving that the UCC deliberately chose to suppress the true valuation of hybrid economic claims like Claim No. 57858.*

***SEE PAGE 84 of the Final Appeal Brief"** ***<u>of Docket#8132"Persuasive Argument of Economic Damage Claim</u>***

**The UCC's unlawful exclusion and prejudicial treatment of my claim proclaiming itemization or segregation of the non-personal economic damages of the Redwood hybrid claims on the public record, as doing so will create an independent liquidation tract that disrupts our global trust negotiation timeline. The claim was deceptively (potentially fraudulently) lumped under the general unsecured personal injury umbrella in a calculated scheme to evade discrete tracking. Such fraudulent conduct strips away the UCC's defense of good faith. It demonstrates a calculated, willful intent to conceal material information from both the Bankruptcy Court and individual claimants. Because this artifact was actively suppressed and only obtained through 5 years of due diligence and granular investigative research , I could not have legally or factually formulated the evidentiary basis required to secure a formal stay prior to the May 1, 2026 effective date. Equity does not permit a fiduciary to hide the fire, and then argue that the victim wasn't diligent enough in calling the fire department.**

***I respectfully ask the Court to exercise judicial discretion connecting the artifact directly to Factor 4 to establish Second Circuit equitable exceptions:***

- ***The Tolling of Diligence: Under Second Circuit equity jurisprudence, where an appellee's bad faith or structural concealment prevents an appellant from presenting a complete record to the judge, the diligence requirement of the equitable mootness test is legally satisfied or tolled.***

- *No Windfall for Fiduciary Misconduct: I argue that applying equitable mootness here would reward the UCC's documented concealment, creating a dangerous precedent that immunizes fiduciary gross negligence. It is a distortion of equity to allow a committee to use a deadline they rushed to meet as a vault to lock away evidence of their own misconduct.*
- **. The "Smoking Gun" Layout** ***Frame the communication as a deliberate decision by Lead Attorney Arik Preis and the committee to hide the economic damage evaluations from the record. “"Appellant exercised maximum diligence under the circumstances, but was actively blindfolded by the Committee’s fiduciary fraud. The newly uncovered internal Committee communication dated [2022 to 2025] provides the 'smoking gun' proving that the UCC deliberately chose to suppress the true valuation of hybrid economic claims like Claim No. 57858.”***

**In the Second Circuit, a failure to obtain a stay can be legally excused if the appellant can prove that the appellee's own deceptive conduct or active concealment prevented them from seeking that stay.**

**1. The Legal Thesis (The "Fraud-Vitiates-Diligence" Rule)**

**The UCC cannot use the May 1, 2026 consummation date as a shield when their own willful misconduct engineered the timeline.**

## CONCLUSION AND RELIEF SOUGHT

**The UCC’s Active Concealment of Material Hybrid Claim Data Tolled Appellant’s Diligence and Excuses the Absence of a Pre-Consummation Stay Under Factor Four.**

**Genesis of this five year conflict with Purdue pharma began as an inter-creditor dispute with the UCC’s Flagrant breach the fiduciary**

**responsibilities in their abject failure to examine a hybrid economic damage claim explicitly listed on the 6/28/2020 Proof of Claim Form. The newly uncovered internal Committee communication dated [2022 to 2025] provides the 'smoking gun' proving that the UCC deliberately chose to suppress the true valuation of hybrid economic claims like Claim No. 57858. Copious amounts of verifications(emails, phone calls, motions, MOU, correspondence, messages) were sent to the UCC Lead Attorney Arik Preis of Akin Gump. A De Nova review of case# 57858 will reveal systemic patterns of active concealment for the Court to apply the Fraud-Vitiates-Diligence Rule. The "Smoking Gun" Layout *frames the communication as a deliberate decision by Lead Attorney Arik Preis and the committee to hide the economic damage evaluations from the record.***

***For these reasons, Appellant respectfully requests that the Court consider the foregoing evidence and arguments in determining whether the $900,000.00 post-petition caregiving valuation warrants administrative-priority treatment, or equivalent priority treatment, as a discrete and equitable remedy that can be granted without disturbing the broader confirmed Plan structure.***

***“"Appellant exercised maximum diligence under the circumstances, but was actively blindfolded by the Committee’s fiduciary fraud. The newly uncovered internal Committee communication dated [emails, phone calls, correspondence, MOUs, Motions from 2022 to 2025 ] provides the 'smoking gun' proving that the UCC deliberately chose to suppress the true valuation of hybrid economic claims like Claim No. 57858.”***

***Twenty or more “internal Committee communication” to the UCC are cited in the Final Appeal Brief due August 24,2024. Docket#7865, “Objection to Improper Classification of Non-Personal Injury Claim”states:***

Case 7:25-cv-09632-NSR Document 131-7 Filed 07/22/26 Page 52 of 53

# Objection to Improper Classification of Non-Personal Injury Claim

## Background and Purpose of the Motion

The purpose of this Motion is to object to the Improper Classification of my Non-Personal Injury claim by the Unsecured Creditors Committee (UCC). I am contesting Akin Gump/UCC's failure to acknowledge my 2020 Non-Personal Injury Claim(claim#57858), which is required for ballot voting prior to the September 30, 2025 deadline. A ***Memorandum of Understanding (MOU)*** was sent on

9/1/2025 to Attorney Arik Preis, Lead Attorney of Akin Gump/UCC, requesting confirmation of my Non-Personal Injury claim in accordance with the terms and conditions outlined in the Disclosure Statement. ***I hereby petition the court to evaluate my $10 million Personal Injury Claim(claim#57858) as asserted on the 6/28/2020 Proof of Claim Form.***

The intent of the MOU is to enable all parties to review the Disclosure Statement, resolve any disputes or misunderstandings, and make necessary revisions before the scheduled emergence from Chapter 11 Bankruptcy on November 10, 2025. The UCC, as fiduciaries for all classes of creditors, was sent the MOU for Attorney Preis to examine my Non-Personal Injury claim P, which was asserted as an Other General Unsecured Claim in the amount of $10,000,000.00. **The Proof of Claim Form dated June 28, 2020 is in fact a COMBINED Personal Injury and Non-Personal Injury claim form (as explicitly detailed in the MOU).**

## Request for Claim Review and Voting Rights

I asked the UCC to thoroughly review treatment of my $10 million Non-Personal Injury Claim and my right to exercise an Estate Prosecution or Direct Settlement Claim as a holder of an "Other General Unsecured Claim." The 2020 Proof of Claim form permits Non-Personal Injury claimants to pursue economic damages caused by the Debtor. My tangible Non-Personal Injury /Economic Damage claim's 'Value' as acknowledged and asserted by the Claims Agent, Prime Clerk. The origin of my 2020 Non-Personal Injury claim(claim#57858) is a Direct Claim against Purdue Pharma. My wife never retained legal counsel to sue PPLP. As a non-litigant claimant, she did not retain a personal injury attorney as many other claimants had. Unlike terms contained in the 2021 Disclosure Statement , the 2025 Disclosure Statement contains provisions for Pre-petition Economic Damage claims into the broader opioid settlement framework rather than treating them as typical bankruptcy claims. ***I therefore petition the court to determine Treatment and Classification of my Non-Personal Injury claim and afford me Ballot Voting rights as I hold a $10,000,000 Non-Personal Injury Claim against the Debtor.***

**Respectfully submitted,**

**By: /s/ Keith E. Redwood Jr.**
**Keith E. Redwood Jr.**
***Pro Se Appellee***
**51A Pratt Street Rocky Hill, CT 06067**
**Email Address: kthredwood@gmail.com**