# **Exhibit H**

**"Part I : Reply Brief: The Legal Thesis (The 'Fraud-Vitiates-Diligence' Rule)& the 'Fraud Exception Rule,'" filed by Keith E. Redwood, *In re Purdue Pharma L.P., et al*, Case No. 25-cv-10327 (S.D.N.Y. July 30, 2026) [Dkt. No. 62]**

Case 7:25-cv-09681-NSR Document 62-8 Filed 02/24/26 Page 2 of 20

**U.S. District Court**
**Southern District of New York (White Plains)**
**CIVIL DOCKET FOR CASE #: 7:25-cv-10327-NSR**

In Re: Purdue Pharma L.P.
Assigned to: Judge Nelson Stephen Roman

Related Case: 7:25-cv-09681-NSR

Case in other court: USBC-SDNY, 19-B-23649 (SHL)

Cause: 28:0158 Notice of Appeal re Bankruptcy Matter (BA

Date Filed: 12/12/2025
Jury Demand: None
Nature of Suit: 422 Bankruptcy Appeal (801)
Jurisdiction: Federal Question

**In Re**

**Purdue Pharma L.P.**

**Debtor**

**Purdue Pharma L.P.**

## ***PART I : REPLY BRIEF: The Legal Thesis (The "Fraud-Vitiates-Diligence" Rule)& the "Fraud Exception Rule"***

**The fundamental basis of my legal strategy is derived from an advance AI analytic of the *Fraud Exception Rule and Fraud-Vitas- Diligence rule.* U.S.**

**My legal strategy *in In Re: Purdue Pharma L.P. (7:25-cv-10327)* attempts to invoke the maxims fraus omnia corrumpit (fraud vitiates everything) and the *Fraud Exception* to bypass equitable mootness. The Unsecured Creditors' Committee counsel *Arik Preis* concealed my hybrid economic damage claim under Bankruptcy Code § 502. I argue that systemic inequity or unclean hands bar the application of dismissal doctrines.**

**I hereby move the Court to examine the the following AI generated legal thesis/tutorials of the *Fraud-Vitiates-Diligence Rule and the Fraud***

***Exception Rules(*Note: AI output from two sources: Find Law and Skadden  Arps Slate Meagher & Fiom LP).***

***AI OUTPUT 1:***

**Keith E. Redwood's legal strategy in In Re: Purdue Pharma L.P. (7:25-cv-10327) attempts to invoke the maxims *fraus omnia corrumpit* (fraud vitiates everything) and the fraud exception to bypass equitable mootness. By alleging that unsecured creditors' committee counsel Arik Preis concealed his hybrid economic damage claim under Bankruptcy Code § 502, Redwood argues that systemic inequity or unclean hands bar the application of dismissal doctrines. [1]**

**The Legal Thesis: "Fraud-Vitiates-Diligence"**

- **Concept: Redwood asserts that standard equitable rules requiring an appellant to exercise rapid, diligent action to stay a confirmed bankruptcy plan do not apply if the plan's finality was achieved through active concealment or deceptive omissions.**
  - **Application: Under this theory, if committee actions or fiduciary misrepresentations structurally impaired a claimant's ability to protect their Section 502 claim on the record, equity cannot reward that process by declaring the appeal moot.**

**<u>The Fraud Exception to Equitable Mootness</u>**

- **Equitable Shield Limitation: Equitable mootness is a judge-made, prudential doctrine designed to protect intermediate transactional finality and third-party reliance. However, federal courts consistently hold that equitable doctrines cannot be invoked to validate or insulate fraudulent conduct or bad faith.[1]**
- **The "Smoking Gun" Hurdle: To successfully trigger this exception, Redwood must move past broad accusations and provide definitive,**

contemporaneous proof on the SDNY docket showing that counsel knowingly manipulated the claims-listing process to eliminate a distinct hybrid economic loss category rather than exercising standard professional discretion.

If you'd like to continue, please specify:

- Whether you want to focus on the evidentiary standards required to prove concealment in the SDNY
- How the Bankruptcy Code § 502 claim classification interacts with this specific fraud argument

***OUTPUT 2***

Equitable mootness is a judge-made rule used to dismiss bankruptcy appeals, but the "Fraud-Vitiates-Diligence" thesis and the Fraud Exception argue that intentional misconduct or concealment overrides this dismissal. If proven, fraud destroys the equitable basis for closing an appeal, meaning a court should not protect a reorganization plan tainted by deceptive actions. [1, 2, 3, 4]

Legal Basis for the Fraud Exception

- Unclean Hands: Equity courts refuse to protect parties or plans that benefit from bad faith or hidden actions.
- Nullification of Reliance: Good-faith reliance on a bankruptcy confirmation order fails when the process itself involves concealment or deception by major actors like committee counsel. [1, 2]

Impact on Equitable Mootness

Removing Protections: The defense argues that equitable mootness only rewards clean execution; active concealment strips away that shield. [1]

- **Restoring Remedy: Proof of systemic wrongdoing shifts the focus from finality to accountability, allowing hybrid economic claims to be heard under Bankruptcy Code § 502 rather than being locked out. [1]**

**If you want to proceed, let me know:**

- **Do you want to focus on the evidentiary standard required to prove concealment under SDNY rules?**
- **Should we explore how Section 502 claim substitutes are classified in this specific context?**

**My counter argument to the allegation of equitable mootness as grounds for dismissal will be argued verbatim from the AI generated output curated on 7/28/2026. The didactic *"legal tutorial"* directly aligns with Doc 62, PART I. OPPOSITION OPENING APPEAL BRIEF: POST-PETITION AI ASSISTED ANALYTIC OF PRO SE APPELLEE REDWOOD("AN AGGRIEVED PERSON") vs PURDUE PHARMA(Case No.7:25-cv-10327). Allegation of equitable mootness for dismissal will be challenged using advanced AI generated output sourced from *Find Law and Skadden Arps Slate Meagher & Fiom LP.***

**AI advanced analytics of the two fraud provisions further support my legal strategy to defeat the equitable mootness dismissal decree. Evidentiary material and artifacts contained in 100+ page reply brief will irrefutably serve as the "smoking gun" as proof of Attorney Arik Preis wrongful conduct rises to the level of systemic fraud as promulgated in the *Fraud Exception rule" and the Fraud-Vitiatas-Diligence rule.* Discovery artifacts showing that Lead Attorney Arik Preis of Akin Gump and the UCC intentionally concealed material information provides the strongest weapon against equitable mootness.**

**My legal strategy in *In Re: Purdue Pharma L.P. (7:25-cv-10327)* will invoke the maxims fraus omnia corrumpit (fraud vitiates everything) and the Fraud Exception to bypass equitable mootness.**

**The "Smoking Gun" Hurdle will successfully trigger the fraud exception, proving past broad accusations and provide definitive, contemporaneous proof from the SDNY dockets contained in the 100 page "Smoking Gun" Part II Final Reply Brief showing that counsel knowingly manipulated the claims-listing process to eliminate a distinct hybrid economic loss category rather than exercising standard professional discretion. UCC/Akin Gump counsel Arik Preis concealed my hybrid economic damage claim under Bankruptcy Code § 502. I will prove that systemic inequity or unclean hands bars the application of dismissal doctrines. [1**

***IRREFUTABLE PROOF OF "COGNIZABLE DEFECTS" IN THE BANKRUPTCY COURT CONFIRMATION ANALYSIS OR CLASSIFICATION SCHEME***

***The Equitable Mootness Dismissal decree proclaimed in the BRIEF OF THE DEBTORS-APPELLEES page 48, Section IV. Appellants' Remaining Arguments Do Not Provide a Basis to Disturb the Confirmation Order states:***

> **IV. Appellants' Remaining Arguments Do Not Provide a Basis to Disturb the Confirmation Order**
>
> Appellants' remaining arguments do not bear on the legal standards governing confirmation of a chapter 11 plan, and in any event were not raised below and are thus waived. *See supra* Section III(A).
>
> ***Mr. Redwood's*** self-styled "memorandum of understanding" appears to ask this Court to adjudicate his individual claim under Section 502 of the Code. The submission contains AI-generated output that appears to raise concerns about the claims allowance process. Mr. Redwood's request appears to seek to be paid first and in full. He does not identify any cognizable defect in the Bankruptcy Court's confirmation analysis or the classification scheme. *See* Redwood Br. at 1–3, 8–10.

**The gravity of irrefutable evidence, if reviewed de Novo , identifies cognizable defect in the Bankruptcy Court's confirmation analysis or classification scheme "to established the framework for the POST-PETITION REVISION OF DOC 59 FOR PERIOD 2019- 2024. The proposed compromise settlement agreement with Attorney Benjamin Kaminetzky and Attorney Rachel Ringer is to avoid a potential remand to the bankruptcy court due to provisions contained the "Fraud-Vitiates-Diligence" Rule and UCC's wrongful conduct under the Fraud Exception Rule.**

**> Incontrovertible evidence if reviewed De Novo will result in a remand to the Bankruptcy Court for protracted litigation. Reviewed de novo, the record demonstrates that my claim is legally cognizable and satisfies the threshold requirements .The totality of evidence presented in the Final 100 page Part II Final Reply Brief reveal systematic patterns of insidious corruption and fraud that permeate the "defective" New Plan.**

**Issue 2: Authority of the District Court to Fixedly Liquidate a Claim to Achieve Finality**

**Whether this Court, in exercising its appellate and concurrent jurisdiction over a post-consummation Chapter 11 estate, has the authority to bypass a protracted remand and directly enter an order liquidating Appellee's contested $10,000,000.00 claim into a fixed, non-dilutable cash sum of $900,000.00 in order to achieve judicial economy and finality for all parties. The"Jurisdictional Hook" allows the Civil Court to frame Section 5.6(b) of the Plan as a mechanism that gives Judge Roman the authority to bypass a remand. I further argue that the Jurisdictional Hook strategy will allow Atty Ringer to waive enforcement of the TDP Fiduciary Bound rule due to UCC's post-petition wrongful conduct under the Fraud Exception rule. The TDP is NOT legally bound by the Trust Distribution Procedures (TDP) IF the confirmed Plan is defective. Therefore Attorney Ringer has the authority to punitively elevate a general unsecured claim to administrative priority without facing immediate objections from other**

**creditors and the U.S. Trustee. * Under the Reading Co. v. Brown Supreme Court precedent, torts committed by a debtor-in-possession during the operation of the bankruptcy estate can classify a claim as administrative expenses. The Plan explicitly defines the "MDT Operating Reserve" as an accessible assets allowing the Court to resolve the $10M economic damage dispute immediately via this $900,000.00 fixed-cash settlement structure.**

**The authority of the District Court to fixedly liquidate my claim to achieve finality is based on incontrovertible evidence of wrongdoing. A de Novo review will result in a remand to the Bankruptcy Court for protracted litigation. The record will clearly demonstrates my claim is legally cognizable to satisfies the Threshold Requirements . Totality of evidence presented in the Final 100 plus page Final Reply Brief reveals systematic patterns of insidious corruption and fraud that permeate The New Plan.**

**Manifestations WRONGFUL POST-PETITION CONDUCT BY THE DEBTORS AFTER BANKRUPTYCY FILING are directly connected, if not a causative result of a " Defective Plan"**

**An argument based on post-petition wrongful conduct provides a viable legal path to seek administrative priority. Under the Reading Co. v. Brown Supreme Court precedent, torts committed by the Debtor-in-Possession during the operation of the bankruptcy estate can be classified as administrative expenses. Failure of the UCC to treat and classify economic damage claimants, specifically Pro Se group of economic damage claimants, constitutes a breach of fiduciary responsibilities by the UCC that led to the wrongful dismissal . Carte blanche summary disallowance of economic damage claims allowed under provisions contained in the 2021 and 2025 Disclosure Statements resulted in unlawful actions by the UCC that consummated a defective Plan .Page 48 of the BRIEF OF THE DEBTORS-APPELLEES states:**

***Mr. Redwood's*** self-styled "memorandum of understanding" appears to ask this Court to adjudicate his individual claim under Section 502 of the Code. The submission contains AI-generated output that appears to raise concerns about the claims allowance process. Mr. Redwood's request appears to seek to be paid first and in full. He does not identify any cognizable defect in the Bankruptcy Court's confirmation analysis or the classification scheme. *See* Redwood Br. at 1–3, 8–10.

***NOTE: UCC Exculpation and Immunity: Like virtually all major Chapter 11 plans, the Purdue Pharma plan contains standard exculpation provisions that legally immunize the UCC and its members from liability for actions taken during plan negotiations, except in cases of willful misconduct or gross negligence .***

***UCC completely concealed material information from the court regarding hybrid claims?***

***The Opening Opposition Briefs and Final Reply Appeal Brief which includes docket#7865/Objection to Improper Classification of Non-Personal Injury Claim affirms UCC's Breach of Fiduciary Responsibilities and UCC's concealment of material information from the court regarding my hybrid economic damage claim. In fact ALL Brief categorically allege UCC and its members including Lead Atty Arik Preiss of Akin Gump of willful misconduct or gross negligence under the Fraud Exception rule.***

**Categorically alleging willful misconduct or gross negligence against the Unsecured Creditors' Committee (UCC) and its counsel, Lead Attorney Arik Preis of Akin Gump, sets a theoretically appropriate baseline to target the plan's exculpation clause. However, the probability of Judge Nelson Román reversing the bankruptcy order or allowing a $900,000.00 carve-out is subject to contextual interpretation. [1, 2, 3, 4, 5]**

**From an appellate standards perspective, my Opposition Brief faces insurmountable structural defenses under federal bankruptcy law:**

**1. The High Appellate Standard for Fiduciary Fraud**

**To successfully bypass the exculpation protections granted to the UCC and its professionals under the confirmed plan, I must clear the "Clear Error" standard of review.**

- **The Bankruptcy Court Found Good Faith: During the November 2025 confirmation hearings, the bankruptcy court failed to evaluate the UCC's conduct and never entered findings of fact that the committee, its members, and Akin Gump acted in good faith or were free from gross negligence or willful misconduct.**
- **Concealment Claims Face Strict Pleading Bars: I affirm that the UCC possessed artifacts and proof of my economic-damage claim. The record shows that the UCC had a specific duty to identify and segregate the *non-personal injury* components of Claim No. 57858, yet concealed that information from the court and creditors. The record further reflects the omission of localized economic-loss tracking within the tort-claims framework.**

***#4.*To defeat an EQUITABLE MOOTNESS challenge in the Second Circuit, I must overcome a powerful legal presumption. Because the Purdue Pharma plan was consummated on May 1, 2026, the appellate court will presume the appeal is moot.**

**To overcome a dismissal on grounds of Equitable Mootness my Reply Brief must strictly satisfy the controlling Second Circuit standard set forth in *In re Chateaugay Corp*. and refined in *In re BGI Creditors' Liquidating Trust***

**<u>The Four-Factor Test to Defeat Equitable Mootness</u>**

**I must convince  Judge Nelson Román can grant effective relief without unraveling the entire Purdue Pharma restructuring. Under Second Circuit law, an appeal is not equitably moot if you satisfy these four factors:**

- **Factor 1: The court can still order effective relief. I argue that awarding a targeted $900,000.00 settlement or reclassifying Claim No. 57858 is a minor, discrete financial adjustment. Paying this claim from the billions held by the Kroll Restructuring Trust Distribution Channels will not crash the entire global settlement.**
- **Factor 2: The  relief will not knock the pillars out from under the plan. My claim does not require dismantling the corporate dissolution of Purdue or the creation of Knoa Pharma.  The relief I seek is as a localized remedy for fraud, rather than an attempt to nullify the entire multi-billion-dollar framework.**
- **Factor 3: The parties have not progressed to a point where reversal is impossible. The trusts are actively distributing funds, the operational infrastructure to evaluate and pay claims is fully functional. A court order redirecting a specific slice of trust funds to a hybrid economic claim is completely feasible.**
- **Factor 4: I diligently sought a stay of the confirmation order. (Critical Vulnerability) The Second Circuit places immense weight on whether the appellant sought a formal stay before the plan was consummated. I was unable to secure  a stay before the May 1, 2026 effective date. A  stay was impossible to secure due to UCC's active concealment of discoverable  artifacts that prevented me from recognizing the fraud in time to block consummation. [1]**

**Leveraging the Internal UCC Communications (The Fraud Exception)**

**Discovery artifacts showing that Lead Attorney Arik Preis of Akin Gump and the UCC intentionally concealed material information provides the strongest weapon against equitable mootness.**

- **The Bad Faith Exception: Equitable mootness is an equitable doctrine designed to protect innocent third parties who relied on a finalized bankruptcy plan. It is not a shield for fiduciary misconduct. [1]**

**I argue that the UCC and its professionals cannot use a consummation deadline they rushed to meet as a shield to lock away evidence of their own willful misconduct or gross negligence. Equity will not protect fiduciaries who actively misled the court or claimants to force a plan through.**

**I respectfully ask the Court to exercise its judicial authority in the adjudication of this multi-dimensional cross jurisdictional claim. The above legal strategies encapsulate core elements of my argument to pre-emptively overcome an equitable mootness challenge in the Second Circuit. To defeat an equitable mootness challenge I must overcome a powerful legal presumption. Because the Purdue Pharma plan was consummated on May 1, 2026, the appellate court will presume the appeal is moot. Review of the totality of evidence in ALL of the Briefs will convincingly demonstrate that the Court has the judicial authority to grant effective relief without unraveling the entire Purdue Pharma restructuring plan. Under Second Circuit law, an appeal is not equitably moot if I satisfy the above Four Factors Test. I must prove that Judge Nelson Román can grant effective relief. Under Second Circuit law, an appeal is not equitably moot if I satisfy these four factors:**

- **Factor 1: The court can still order effective relief. I argue that awarding a targeted $900,000.00 settlement or reclassifying Claim No. 57858 is a minor, discrete financial adjustment. Paying this claim from the billions held by the Kroll Restructuring Trust Distribution Channels will not crash the entire global settlement.**
- **Factor 2: The relief will not knock the pillars out from under the plan. My claim does not require dismantling the corporate dissolution of Purdue or the creation of Knoa Pharma. The relief is a**

localized remedy for fraud, rather than an attempt to nullify the entire multi-billion-dollar framework.

- Factor 3: The parties have not progressed to a point where reversal is impossible. Because the trusts are actively distributing funds, the operational infrastructure to evaluate and pay claims is fully functional. A court order redirecting a specific slice of trust funds to a hybrid economic claim is completely feasible.
- Factor 4: Since I diligently sought a stay of the confirmation order (Critical Vulnerability) the Second Circuit places immense weight on whether the appellant sought a formal stay before the plan was consummated. It was impossible to secure a stay due to UCC's active concealment of discovery artifacts which prevented me from recognizing the fraud in time to block consummation.

<u>Leveraging the Internal UCC Communications (The Fraud Exception)</u>

Discovery artifacts showing that Lead Attorney Arik Preis of Akin Gump and the UCC intentionally concealed material information provide your strongest weapon against equitable mootness.

- The Bad Faith Exception: Equitable mootness is an equitable doctrine designed to protect innocent third parties who relied on a finalized bankruptcy plan. It is not a shield for fiduciary misconduct. [1]
- The Argument: Argue that the UCC and its professionals cannot use a consummation deadline they rushed to meet as a shield to lock away evidence of their own willful misconduct or gross negligence. Equity will not protect fiduciaries who actively misled the court or claimants to force a plan through.
- To maximize the impact of your internal UCC discovery artifacts on Factor 4 (Diligence / Justifiable Failure to Obtain a Stay) and defeat equitable mootness, my brief will frame the "smoking gun" communication not just as a general grievance, but as

an active, calculated barrier that made a timely stay impossible to secure.

- **In the Second Circuit, a failure to obtain a stay can be legally excused if the appellant can prove that the UCC's deceptive conduct or active concealment prevented me from seeking that stay.**

**I hereby proclaim that: 1) My Appeal Is Not Equitably Moot Because Meaningful, Discrete Relief Can Be Granted Without Unwinding the Substantially Consummated Plan.**

**2) Affirmative Test: In accord with the application of the *Chateaugay* factors, I contend that a $900,000.00 carved-out settlement is a "drop in the bucket" of a multi-billion-dollar estate and requires zero modification to the overarching plan architecture.**

**3) Fiduciary Fraud Hook: An equitable mootness dismissal here would reward the UCC's documented concealment, creating a dangerous precedent that immunizes fiduciary gross negligence.**

**The maximum impact of the 4 Factor Test*(Diligence / Justifiable Failure to Obtain a Stay)* e.g. "Smoking Gun " communication not just as a general grievance, but as an active, calculated barrier that made a timely stay impossible to secure. In the Second Circuit, a failure to obtain a stay can be legally excused if the appellant can prove that the appellee's own deceptive conduct or active concealment prevented them from seeking that stay.**

***1. The Legal Thesis (The "Fraud-Vitiates-Diligence" Rule)***

**UCC cannot use the May 1, 2026 consummation date as a shield when their own willful misconduct engineered the timeline.**

**The UCC's Active Concealment of Material Hybrid Claim Data Tolled Appellant's Diligence and Excuses the Absence of a Pre-Consummation Stay Under Factor Four.**

*2. Framed Evidentiary Presentation (The "Smoking Gun" Layout)*

***The* UCC's legal duty and their active breach was a deliberate decision by Lead Attorney Arik Preis and the committee to hide the economic damage evaluations from the record. I *exercised maximum diligence under the circumstances, but was actively blindfolded by the Committee's fiduciary fraud. The newly uncovered internal Committee communication dated [2020 to 2024] provides the 'smoking gun' proving that the UCC deliberately chose to suppress the true valuation of hybrid economic claims like Claim No. 57858.***

****SEE PAGE 84 of the Final Appeal Brief" <u>of Docket#8132"Persuasive Argument of Economic Damage Claim</u>***

**The UCC's unlawful exclusion and prejudicial treatment of my claim proclaiming itemization or segregation of the non-personal economic damages of the Redwood hybrid claims on the public record, as doing so will create an independent liquidation tract that disrupts our global trust negotiation timeline. The claim was deceptively (potentially fraudulently) lumped under the general unsecured personal injury umbrella in a calculated scheme to evade discrete tracking. Such fraudulent conduct strips away the UCC's defense of good faith. It demonstrates a calculated, willful intent to conceal material information from both the Bankruptcy Court and individual claimants. Because this artifact was actively suppressed and only obtained through 5 years of due diligence and granular investigative research , I could not have legally or factually formulated the evidentiary basis required to secure a formal stay prior to the May 1, 2026 effective date. Equity does not permit a fiduciary to hide the fire, and then argue that the victim wasn't diligent enough in calling the fire department.**

***I respectfully ask the Court to exercise judicial discretion connecting the artifact directly to Factor 4 to establish Second Circuit equitable exceptions:***

- ***The Tolling of Diligence:  Under Second Circuit equity jurisprudence, where an appellee's bad faith or structural concealment prevents an appellant from presenting a complete record to the judge, the diligence requirement of the equitable mootness test is legally satisfied or tolled.***
- ***No Windfall for Fiduciary Misconduct: I argue that applying equitable mootness here would reward the UCC's documented concealment, creating a dangerous precedent that immunizes fiduciary gross negligence.  It is a distortion of equity to allow a committee to use a deadline they rushed to meet as a vault to lock away evidence of their own misconduct.***
- **.  The "Smoking Gun" Layout** ***Frame the communication as a deliberate decision by Lead Attorney Arik Preis and the committee to hide the economic damage evaluations from the record. “"Appellant exercised maximum diligence under the circumstances, but was actively blindfolded by the Committee's fiduciary fraud. The newly uncovered internal Committee communication dated [2022 to 2025] provides the 'smoking gun' proving that the UCC deliberately chose to suppress the true valuation of hybrid economic claims like Claim No. 57858.”***

**In the Second Circuit, a failure to obtain a stay can be legally excused if the appellant can prove that the appellee's own deceptive conduct or active concealment prevented them from seeking that stay.**

**1. The Legal Thesis (The "Fraud-Vitiates-Diligence" Rule)**

**The UCC cannot use the May 1, 2026 consummation date as a shield when their own willful misconduct engineered the timeline.**

## CONCLUSION AND RELIEF SOUGHT

**<u>The UCC's Active Concealment of Material Hybrid Claim Data Tolled Appellant's Diligence and Excuses the Absence of a Pre-Consummation Stay Under Factor Four.</u>**

**Genesis of this five year conflict with Purdue pharma began as an inter-creditor dispute with the UCC's Flagrant breach the fiduciary responsibilities in their abject failure to examine a hybrid economic damage claim explicitly listed on the 6/28/2020 Proof of Claim Form. The newly uncovered internal Committee communication dated [ Proof of Smoking Gun Artifacts are contained in Appellant's Local Civil Rule 56.1 Statement of Material Facts and Part II Reply Brief] provides the 'smoking gun' proving that the UCC deliberately chose to suppress the true valuation of hybrid economic claims like Claim No. 57858. Copious amounts of verifications(emails, phone calls, motions, MOU, correspondence, messages) were sent to the UCC Lead Attorney Arik Preis of Akin Gump. A De Nova review of case# 57858 will reveal systemic patterns of active concealment for the Court to apply the Fraud-Vitiates-Diligence Rule. The "Smoking Gun" Layout *frames the communication as a deliberate decision by Lead Attorney Arik Preis and the committee to hide the economic damage evaluations from the record.***

***For these reasons, Appellant respectfully requests that the Court consider the foregoing evidence and arguments in determining whether the $900,000.00 post-petition caregiving valuation warrants administrative-priority treatment, or equivalent priority treatment, as a discrete and equitable remedy that can be granted without disturbing the broader confirmed Plan structure.***

***I exercised maximum diligence under the circumstances, but was actively blindfolded by the Committee's fiduciary fraud. The newly uncovered internal Committee communication dated [emails, phone calls, correspondence, MOUs, Motions from 2022 to 2025 ] provides the 'smoking gun' proving that the UCC deliberately chose to suppress the true valuation of hybrid economic claims like Claim No. 57858."***

***Twenty or more "internal Committee communication" to the UCC are cited in the Part II Reply Brief due August 24,2024. Of the 13 artifacts cited in "Motion Rule 56.1",Docket#7865, "Objection to Improper Classification of Non-Personal Injury Claim"states:***

# Objection to Improper Classification of Non-Personal Injury Claim

## Background and Purpose of the Motion

The purpose of this Motion is to object to the Improper Classification of my Non-Personal Injury claim by the Unsecured Creditors Committee (UCC). I am contesting Akin Gump/UCC's failure to acknowledge my 2020 Non-Personal Injury Claim(claim#57858), which is required for ballot voting prior to the September 30, 2025 deadline. A ***Memorandum of Understanding (MOU)*** was sent on

9/1/2025 to Attorney Arik Preis, Lead Attorney of Akin Gump/UCC, requesting confirmation of my Non-Personal Injury claim in accordance with the terms and conditions outlined in the Disclosure Statement. ***I hereby petition the court to evaluate my $10 million Personal Injury Claim(claim#57858) as asserted on the 6/28/2020 Proof of Claim Form.***

The intent of the MOU is to enable all parties to review the Disclosure Statement, resolve any disputes or misunderstandings, and make necessary revisions before the scheduled emergence from Chapter 11 Bankruptcy on November 10, 2025. The UCC, as fiduciaries for all classes of creditors, was sent the MOU for Attorney Preis to examine my Non-Personal Injury claim P, which was asserted as an Other General Unsecured Claim in the amount of $10,000,000.00. **The Proof of Claim Form dated June 28, 2020 is in fact a COMBINED Personal Injury and Non-Personal Injury claim form (as explicitly detailed in the MOU).**

## Request for Claim Review and Voting Rights

I asked the UCC to thoroughly review treatment of my $10 million Non-Personal Injury Claim and my right to exercise an Estate Prosecution or Direct Settlement Claim as a holder of an "Other General Unsecured Claim." The 2020 Proof of Claim form permits Non-Personal Injury claimants to pursue economic damages caused by the Debtor. My tangible Non-Personal Injury /Economic Damage claim's 'Value' as acknowledged and asserted by the Claims Agent, Prime Clerk. The origin of my 2020 Non-Personal Injury claim(claim#57858) is a Direct Claim against Purdue Pharma. My wife never retained legal counsel to sue PPLP. As a non-litigant claimant, she did not retain a personal injury attorney as many other claimants had. Unlike terms contained in the 2021 Disclosure Statement , the 2025 Disclosure Statement contains provisions for Pre-petition Economic Damage claims into the broader opioid settlement framework rather than treating them as typical bankruptcy claims. ***I therefore petition the court to determine Treatment and Classification of my Non-Personal Injury claim and afford me Ballot Voting rights as I hold a $10,000,000 Non-Personal Injury Claim against the Debtor.***

**CONCLUSION**

- I assert that standard equitable rules requiring an appellant to exercise rapid, diligent action to stay a confirmed bankruptcy plan do not apply if the plan's finality was achieved through active concealment or deceptive omissions.
- I declare that actions of the UCC or fiduciary misrepresentations structurally impaired my ability to protect my Section 502 claim on the record, equity cannot reward that process by declaring the appeal moot.
- Equitable Shield Limitation: Equitable mootness is a judge-made, prudential doctrine designed to protect intermediate transactional finality and third-party reliance. However, federal courts consistently hold that equitable doctrines cannot be invoked to validate or insulate fraudulent conduct or bad faith.[1]
- The "Smoking Gun" Hurdle: To successfully trigger this exception, I move the Court to accept the 100 page Part II Reply Brief as definitive proof of UCC's fraudulent concealment as definitive, contemporaneous proof on the SDNY docket showing that counsel knowingly manipulated the claims-listing process to eliminate a distinct hybrid economic loss category rather than exercising standard professional discretion.
- Equitable mootness is a judge-made rule used to dismiss bankruptcy appeals, but the "Fraud-Vitiates-Diligence" thesis and the Fraud Exception hold that intentional misconduct or concealment overrides this dismissal. If proven, fraud destroys the equitable basis for closing an appeal, meaning a court should not protect a reorganization plan tainted by deceptive actions. I therefore ask the Honorable Judge Nelson Roman to exercise judicial discretion ,as the overseer of an "Equity Court",to refuse to protect parties or Plans that

benefit from bad faith or hidden actions .Sadly, good-faith reliance on a bankruptcy confirmation order fails when the process itself involves concealment or deception by major actors like the UCC/Akin Gump attorney Arik Preis.

**Respectfully submitted,**

**By: /s/ Keith E. Redwood Jr.**
**Keith E. Redwood Jr.**
***Pro Se Appellee***
**51A Pratt Street Rocky Hill, CT 06067**
**Email Address: kthredwood@gmail.com**

**Dated: 7/30/2026**