# Exhibit I

**"Part II Reply Brief of Redwood v. Purdue Pharma L.P. 25-cv-10327 (NSR) : De Novo Proof of UCC Wrongful Conduct Under the Fraud-Vitiates-Diligence Rule/ Rebuttals & Counter Arguments to Modified Bench Ruling(docket#8270) /Objection To Improper Classification of Non-Personal Injury Claim(docket#7865)" filed by Keith E. Redwood, *In re Purdue Pharma L.P., et al*, Case No. 25-cv-10327 (S.D.N.Y. Aug. 3, 2026) [Dkt. No. 65]**

**U.S. District Court**
**Southern District of New York (White Plains)**
**CIVIL DOCKET FOR CASE #: 7:25-cv-10327-NSR**

| | |
|---|---|
| In Re: Purdue Pharma L.P.<br>Assigned to: Judge Nelson Stephen Roman<br>Related Case: 7:25-cv-09681-NSR<br>Case in other court: USBC-SDNY, 19-B-23649 (SHL)<br>Cause: 28:0158 Notice of Appeal re Bankruptcy Matter (BA | Date Filed: 12/12/2025<br>Jury Demand: None<br>Nature of Suit: 422 Bankruptcy Appeal (801)<br>Jurisdiction: Federal Question |

**In Re**

**Purdue Pharma L.P.**

**Debtor**

**Purdue Pharma L.P.**

# Part II Reply Brief of Redwood v. Purdue Pharma L.P. 25-cv-10327 (NSR) : De Novo Proof of UCC Wrongful Conduct Under the Fraud-Vitiates-Diligence Rule/ Rebuttals & Counter Arguments to Modified Bench Ruling(docket#8270) /Objection To Improper Classification of Non-Personal Injury Claim(docket#7865)

## ***TABLE OF CONTENT***


- Page 4 Jurisdictional Statement
- Page 6 “The Bankruptcy Court Erred as a Matter of Law”
- Page 7 Chapter 11 Bankruptcy Guidelines for Pro Se Appellees
- Page 9 Bifurcation of Two Appeal Objections
- Page 11 Validity of a Court Created Pro Se Economic Damage Class of Creditors
- Page 12 Chapter 11 Bankruptcy Provisions for Appeals
- Page 13 Guidelines for a SDNY District Cour Appeal
- Page 15 “Clearly Erroneous Standard”
- Pages 16 Modification of The Plan
- Page 17 Contractually Binding Terms(Docket# 7947)
- Page 18 Docket#7865 Improper Classification of Non-PI Claims
- Pages 23 June 28, 2020 Granular Examination Proof of Claim Form(part 5)
- Pages 24 Pro Se Economic Damage Class
- Page 26 Docket# 8078 “Granular Analysis of Code 1122(b)”
- Page 28 Modified Bench Ruling Dismissal(Docket# 8270)
- Page 29 Bench Ruling Attack Arguments
- Pages 34 Application of Rule 3013/Cour Determined Classification of Claims
- Page 35 Application of Quantum Economics
- Page 36 Pro Se Class Creditors as a Sub-Class per Bench Rulings
- Page 39 Docket# 8078 “GranularAnalysis”
- Page 40 Paralegal Analysis of 1122
- Page 42 Tangible Proof of Economic Damages
- Page 43 Rebuttal Arguments
- Page 44 Impact of the Harrington Rulings
- Page 46 Bench Rulings Rebuttals

- Page 48 Dr. Sylivia Knoploch and Dr. Richard Sackler
- Page 49 Judge Lane's False Premise
- Page 50 Specificity of Proof of Claim
- Pages 52 Claims, Interest and Disclosure Statement
- Page 53 Tutorial Notes for Appeals
- Page 54 Critical Analysis of Bench Ruling
- Page 56 Harrington Ruling on Proof of Claim Form
- Page 57 Amanda Morales Contempt of Court (Docket#8386)
- Page 61 Court Determined Pro Se Class of Creditor
- Page 62 Plan Support Letter
- Page 66 Disclosure Statement(page 194)
- Page 67 Source Material for Higher Court Review
- Page 69 Corruption and Racketeering Allegations
- Page 72 General Critique of Bench Ruling
- Page 74 Persuasive Argument of Economic Damage Claims (Docket#8132)
- Page 77 Email to Arik Preis dated 8/17/2025
- Page 85 Review of Code 1122
- Page 86 Email to Arik Preis dated 8/17/2025
- Page 87 Letter from Atty Lawrence Reich to Atty Preis dated 6/27/2025
- Page 90 Memorandum of Understanding to Atty Preis
- Page 91 Journal Notes on 1/21/2026
- Page 93 June 28,2020 Proof of Claim Form (page 5)
- Page 94 Agenda for 2/12/2026 Hearing "Motion to Stay Appeals"(Docket#8623)
- Page 95 AI Analysis of 2/12/2026 Hearing
- Page 96 Recap of Central Theme(Docket#8132)
- Page 104 The Preis Letter(Docket#8225)

## JURISDICTIONAL STATEMENT

1. **This Court has jurisdiction over this appeal under 28 U.S.C. § 158(d) to review final orders of the United States District Court, and potentially under 28 U.S.C. § 1292(b) or (a) if leave to appeal was granted for interlocutory orders, concerning the Purdue Pharma bankruptcy cases (Case No. 19-23649 (SHL)).**

2. **The Bankruptcy Court's Bench Ruling (Docket #8270), denying or limiting Movant/Claimant Keith Redwood's (Docket #8417) objections to his Economic Damage claim, constitutes a final order, or an order reviewable under collateral order doctrine, because it definitively disposes of Redwood's claim, preventing immediate and irreparable harm to his property rights as a creditor, necessitating appellate review by the District Court and subsequently this Court.**

3. **This appeal directly concerns the interpretation and application of the Bankruptcy Code (Title 11 U.S.C.) and the Confirmation Plan,**
**particularly regarding the valuation and allowance of Non-Personal Injury/Economic Damage claims, an area within the purview of this Circuit and federal bankruptcy law.**

- **: Reference 28 U.S.C. § 158(a), (b), or (d) for District Court/BAP jurisdiction, and 28 U.S.C. § 1291 (final decisions) or § 1292 (interlocutory).**

- **"Pro Se" Impact: Emphasize that the denial of his objections (Docket #8417) as a pro se claimant directly impacts his ability to receive a fair distribution, justifying appellate review.**
- **As part of the massive opioid crisis, requiring consistent interpretation of claim allowance rules for thousands, I respectfully ask the Judge Roman to exercise its persuasive authority in**

**examining the basis of my Objection Motion of the Confirmation Order in accordance with rudimentary jurisdictional standards. As a Pro Se appellee with a paralegal background in CT Elder Law, I rely on AI Lexology analytics in arguing extraordinary complexities of the most consequential Chapter 11 bankruptcy in U.S. history. The denial of my objections (Docket #8417) as a Pro Se claimant directly impacts my ability to receive a fair distribution, justifying appellate review. Therefore ,I ask the Court to objectively adjudicate four interrelated objections :**

**1.Treatment and Classification of Non-Personal Injury/Economic Damage Claims under relevant provisions of S.D.N.Y Bankruptcy code sections 1122 and 1123.**

**2. Denial of Due Process Regarding Opt-In/Opt-Out Provisions of the Harrington Ruling.**

**3. Post-Consummation Appellant review of Redwood versus Purdue Pharma Pursuit to Section 502(c)**

**4.Bifurcation and Combination of Interrelated Appeal Objections: The conundrum the court faces involves addressing two interconnected Appeal Objections:**

**a. Treatment and Classification of Economic Damage Claims**
**b. Combination or Separation of Claims for Appeal Purposes**
**These objections are intrinsically linked, requiring the court to consider not only how economic damage claims are treated and classified under the plan, but also the implications of their combination or separation within the appeal process. The bifurcation of these issues ensures**

that each objection is distinctly analyzed, while their combination recognizes the practical overlap and mutual influence on creditor rights and plan confirmation.

***<u>"The Bankruptcy Court Erred as a Matter of Law"</u>***

**The dispositive question presented to the Civil Court is whether the Bankruptcy Court erred as a matter of Law, or abused its discretion by dismissing my $10,000,000.00 unliquidated/ unsecured claim without complying with the estimation requirement of 11 U.S.C. . § 502(c), and by failing to provide adequate due process for the adjudication of my claim .I argue that the court was required to estimate the claim's value to determine its treatment, rather than dismissing it entirely. In re Purdue Pharma L.P. is a case where the "collective problem" of mass claims requires a structured, lawful process, not a preemptive blanket dismissal.**

**The substantive substance of this Brief will irrefutably apply deductive reasoning to show that the denial/dismissal was against the weight of evidence or based on a misapplication of law. The declarative dispositive question posed above is a legal AI analysis from California Lawyers Association used in my Jurisdictional Statement captioned :"**
**<u>10. Judicial Reasoning and the "Clearly Erroneous" Standard</u>:**
**The court faces the challenge of addressing objections related to both classification and due process. The legal brief advocates for the creation of a "special circumstance "or convenience class ,allowing the court to exercise its authority classifying general unsecured claims. My argument contends that Judge's Lane reasoning is**

**akin to sophistry and must withstand the "clearly erroneous" test. I will argue that the dismissal" strategy" was a pre-emptive blanket dismissal solely for the purpose of approving the Confirmation Order.( An now the Civil Court is engaged in the same summary application of Equitable Mootness to issue a blanket dismissal.) The specificity and actuarial details of my economic damage claim (such as calculation of long-term cost of care for Jane Redwood for the period 2006 to 2024 as stipulated on the 2020 Proof of Claim Form ) serves as proof to support recognition of a distinctive subclass ,rather than dismissing such claims as" overly particularized or impractical".**

**<u>Understanding the Bench Ruling Dismissal/Rejection process prompting a formal Appeal</u> :**

a) **The first step in the adjudicating a Pro Se objection is a Bench Ruling by Judge Lane to categorically issue a "blanket" dismissal/rejection ALL 20 movants Objections. The judge then waits for submission of Formal Appeals(14 days from 11/18).The objecting party has the initial "burden of putting forth evidence sufficient to refute the validity of the claim."By producing evidence equal in force to the prima facie case" an objector can negate a claims presumptive legal validity, thereby shifting the burden back to the claimant to ' prove by a preponderance of evidence that under applicable law the claim should be allowed". In other words "once the prima facie validity of a claim is rebutted , "it is for the claimant to prove his claim, not for the objector to disprove it."**

   **Rebuttal Arguments (pages 11 to 40) will highlight Judge Sean Lane's patented falsehoods which I aptly described as sophistry). The declarative probative question referenced above as posited by California Lawyers Association offers a definitive and highly significant "Dispositive Statement"proffered on page 3 of my Jurisdictional Statement , item #10 entitled "Judicial Reasoning and the 'Clearly Erroneous' Standard as revealed In the below legal hypothesis .**

**I respectfully ask the Court to exercise its persuasive authority in examining basis of my Objection Motion of the Confirmation Order in accordance with rudimentary jurisdictional standards. As a Pro Se appellee with a paralegal background in CT Elder Law I rely on AI Lexology analytics in arguing the extraordinary complexities of the most consequential Chapter 11 bankruptcy in U.S. history. I ask the court to review the following summation of my District Court Appeal.**

***Chapter 11 Bankruptcy guidelines for a Pro Se Appellees :***

1. **Directly Review the "Summary of Claims Treatment":** ***Review the specific document in the Kroll portal that lists how "Other General Unsecured Claims" versus "Personal Injury Claims" are treated, as referenced in the March 2025 filings.***
2. ***File an Objection/Motion for Reclassification:*** *Based on the 2025 plan's emphasis on voluntary consent and the inclusion of various injury-related claims, file a motion to classify your claim based on the 2020 proof of claim, arguing that the economic damages are derivative of the personal injury claim.*
3. **Use the "Solicitation Materials" for 2025:** Ensure you are using the voting instructions provided in the June 2025 approved Disclosure Statement and solicitation package.

**IMPORTANT*: ***The 2025 Plan relies on voluntary consent for third-party releases; if your claim is not allowed to vote, you may have grounds to argue that the plan's treatment of your claim is NON-CONSENUAL UNDER HARRINGTON.***

***4. Keith Redwood's Specific Viability/Standing for Second Circuit Review***

- ***Standing Analysis: To have standing in the Second Circuit, Mr. Redwood must demonstrate "Aggrieved Person" status, meaning the bankruptcy plan directly and adversely affects his financial interests.***

- ***Viability Factors:***
    - ***Opt-Out vs. Opt-In: If Mr. Redwood did not formally opt-out of the new settlement structure approved in late 2025, the Second Circuit may view his appeal as moot, as he is deemed to have accepted the new terms.***

## <u>The conundrum the court faces is the bifurcation/combination of two interrelated Appeal Objections</u>:

**A. Treatment and Classification Economic Damage claims**

**B. Denial of Due Process(with respect to Opt In/Opt Out consensual release provisions under Harrington rules). UCC failure to classify Economic Damage claims has resulted in the wrongful denial due process in violation of the Harrington ruling. The court, therefore must make a determination of the treatment and classification of my claim to decide if the "Pro Se Economic Damage Class of Creditors are in compliance with the Harrington Ruling.**

***I.ECONOMIC DAMAGE CLAIMS AND CHALLENGING UCC CLASSIFICATION***

**Based on the 2025 Thirteenth Amended Joint Chapter 11 Plan of Reorganization and associated Disclosure Statements, the Purdue Pharma bankruptcy, heavily influenced by the 2024 Supreme Court Harrington Decision, established a structure for voting that requires Non-Debtor release consent. The following provisions in the Disclosure Statement and 2025 plan documents are relevant to asserting ECONOMIC DAMAGE CLAIMS AND CHALLENGING UCC CLASSIFICATION:**

***<u>Definition of "Other General Unsecured Claims" and "PI Claims":</u> The Plan classifies claims, and the Disclosure Statement details the classification for voting purposes. If your economic damage claim is directly tied to the Proprietary Interest in your late wife's Personal Injury (PI) claim,***

***it may need to be aligned with a priority trust established under the plan, rather than general unsecured claims.***

***<u>Third-Party Releases (Harrington Compliance):</u> The 2025 plan explicitly complies with Harrington by allowing creditors to opt in or out of the releases of the Sacklers. The ballot voting rights are governed by whether you opt-in to these releases, which affects your standing in the Class 5A/5B voting structure.***

***<u>OPT-IN MECHANISM AS A VOTING RIGHT:</u> Pursuant to the Harrington ruling mandate, creditors have the right to choose whether to release the Sacklers. If your claim is not classified, you can argue that the failure to recognize the claim deprives you of the right to consent or withhold consent, which is central to the post-Harrington plan, as mentioned in the 2025 disclosure documents.***

**I respectfully ask the Court to exercise its persuasive authority in examining basis of my Objection Motion of the Confirmation Order in accordance with rudimentary jurisdictional standards.As a Pro Se appellee with a paralegal background in CT Elder Law I rely on AI Lexology analytics in arguing the extraordinary complexities of the most consequential Chapter 11 bankruptcy in U.S. history. I ask the court to review the following summation of my District Court Appeal.**

***Chapter 11 Bankruptcy guidelines for a Pro Se Appellees :***

> **>Directly Review the "Summary of Claims Treatment":** ***Review the specific document in the Kroll portal that lists how "Other General Unsecured Claims" versus "Personal Injury Claims" are treated, as referenced in the March 2025 filings.***
>
> **>File an Objection/Motion for Reclassification: Based on the 2025 plan's emphasis on voluntary consent and the inclusion of various injury-related claims, file a motion to classify your claim based on the 2020 proof of claim, arguing that the economic damages are derivative of the personal injury claim.**

**<u>**IMPORTANT**</u>: **The 2025 Plan relies on voluntary consent for third-party releases; if your claim is not allowed to vote, you may have grounds to***

***argue that the plan's treatment of your claim is NON-CONSENUAL UNDER HARRINGTON***

***. Keith Redwood's Specific Viability/Standing for Second Circuit Review***

- ***Standing Analysis: To have standing in the Second Circuit, Mr. Redwood must demonstrate "Aggrieved Person" status, meaning the bankruptcy plan directly and adversely affects his financial interests.***
- ***Viability Factors:***
  - ***Opt-Out vs. Opt-In: If Mr. Redwood did not formally opt-out of the new settlement structure approved in late 2025, the Second Circuit may view his appeal as moot, as he is deemed to have accepted the new terms.***
  - ***Nature of Claim: The court will evaluate if his specific claims are personal injury/wrongful death claims that are being discharged against his will.***
  - ***Impact of 8495: The docket #8495 filing must specifically articulate how the revised plan—which now focuses on "opt-in" releases—still violates the Supreme Court mandate from Harrington v. Purdue Pharma.***

***VALIDITY OF A COURT CREATED 'PRO SE ECONOMIC DAMAGE' CLASS OF CREDITOR***

**The uncommon complexity of the Confirmation Order warrants a higher court forensic examination of Economic Damage claims that have been**

**been barred by the UCC in violation of the Disclosure Statement. A " Group as in Class of Creditors)" of Pro Se movants objections to Confirmation Order was dismissed by Judge Lane which I conclude is prejudicial malfeasance. The Dismissal decree in effect disallowed a distinct group of claimants forming a class of creditors solely by the discoverable actions of my Pro Se objection as well as Economic Damage objections from Amanda Morales. This novel development consists of a group of Pro Se Economic Damage appellees which supports my pre-confirmation argument(docket#8132- *<u>Legal Brief: Persuasive Argument regarding Economic Damage Claim )</u>*.The economic damage class of creditors is based on discoverable evidence found on November 20, 2025 Modified Bench Ruling Granting Confirmation of the Eighteenth Amended Joint Chapter 11 Reorganization of PPLP. Judge Lane's bench ruling established a de facto class of creditors as defined by the dismissal ruling. In fact, the Bench Ruling on page 58 expressly categorized the Pro Se dismissal with subject line <u>"Objection Related Classification of Claims</u>". An unintended consequence of the dismissal in effect codified a class of creditors by virtue of a judicial ruling. Manifestations of the dismissal order ultimately led to Consolidation of Appeals mandate(ECF No.93).**

**These discoverable challenges brought forth by our Pro Se objection illustrate practices of the UCC that engaged in discriminatory and unfair treatment of economic damage claimants as further evidence of breach of fiduciary responsibilities. Actions of the UCC intentionally hinder, delay or impede economic damage creditors from being able to collect on their claims. Action of the UCC/Akin Gump were legitimized by Judge Lane's Confirmation Order which contravened basic tenants of fair and equitable treatment of all classes of creditors. The denial and disallowance of economic damage claims reveals an orchestrated pattern of malfeasance as argued in Memorandum of Understanding . I therefore ask the Court to repudiate the contemptible actions of Judge Lane's wrongful dismissal order.**

***Introductory Topics:* I. Creation of a Special Circumstance Pro Se Economic Damage Class of Other General Unsecured Creditors II.UCC's Breach of Fiduciary Responsibilities III. UCC/Akin Gump Fiscal Mismagement in Treatment and Classification of Claims**

## ***Chapter 11 Bankruptcy Provisions For The Appeal***

***> Disclosure Statement Article IV Page 320 of 644***

***"3. Objections to Classification of Claims Section 1122 of the Bankruptcy Code requires that the Plan classify Claims against, and Interests in, the Debtors. The Bankruptcy Code also provides that the Plan may place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests of such Class. The Debtors believe that all Claims and Interests have been appropriately classified in the Plan. To the extent that the Bankruptcy Court finds that a different classification is required for the Plan to be confirmed, the Debtors would seek (i) to modify the Plan to provide for whatever classification might be required for confirmation and (ii) to use the acceptances received from any holder of Claims pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such holder ultimately is deemed to be a member. Any such reclassification of Claims, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such holder was initially a member, or any other Class under the Plan, by changing the composition of such Class and the vote required for approval of the Plan. There can be no assurance that the Bankruptcy Court, after finding that a classification was inappropriate and requiring a reclassification, would approve the Plan based upon such reclassification. Except to the extent that modification of classification in the Plan requires resolicitation, the Debtors will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Bankruptcy Court that acceptance of the Plan by any holder of Claims pursuant to this solicitation will constitute a consent to the Plan's***

***treatment of such holder, regardless of the Class as to which such holder is ultimately deemed to be a member.***

## ***<u>Guidelines for a SDNY Bankruptcy District Court Appeal</u>***

- ***A pro se movant can appeal a bankruptcy judge's bench ruling dismissal of objections, but the appeal's success depends on demonstrating that the judge made a legal error or abused their discretion.***
- ***The specific grounds mentioned (disagreement with the UCC's actions/classification) would be reviewed by a higher court (likely the District Court), which has jurisdiction to hear such appeals.***
- ***Appealability of the Dismissal***

***Right to Appeal: A party has the right to appeal "final judgments, orders, or decrees of a bankruptcy judge" to the district court. An order that disposes of a discrete dispute, such as a claim objection, is generally considered "final" for the purposes of appeal, even if the larger bankruptcy case is ongoing.***

- ***Procedure: To appeal, the movant must typically file a notice of appeal within 14 days of the entry of the order being appealed, and then file a statement outlining the reasons for the appeal. The movant would argue that Judge Lane erred in dismissing their objection.***
- ***Standard of Review: On appeal, a district court generally reviews the bankruptcy judge's findings of fact for clear error and conclusions of law de novo (meaning it reviews the legal issues with a fresh eye).***
- ***Grounds for Appeal: The movant's grounds are that they were "unfairly treated by the UCC" and their claim was "prejudicially and unfairly classified".***
  - ***Legal Error vs. Factual Dispute: The appeal would need to frame these complaints as a legal error by the judge, such as a misinterpretation of the Bankruptcy Code regarding claim classification or a violation of due process, rather than just a general disagreement with the UCC's business decisions or a simple factual dispute.***
  - ***Inter-creditor Disputes: Bankruptcy courts do have jurisdiction over disputes that arise within the case, including the classification and treatment of claims, to ensure the plan is "fair and equitable" and does not "discriminate unfairly" among similar creditors. The judge's decision to dismiss the objection implies***

*they found the UCC's actions and the resulting plan provisions legally acceptable or that the objection was procedurally deficient. The appeal would challenge that finding.*

***Likelihood of Success***

***The success of the appeal would depend on the specific legal arguments presented:***

- ***Merits of the Claim: The movant must show a genuine legal basis for challenging the classification, not merely dissatisfaction with the outcome or the general process.***
- ***Burden of Proof: The movant would need to prove that the bankruptcy judge committed an error in applying the law or procedure which substantially harmed their rights.***
- ***Due Process: The movant's ability to show they were denied due process might be a strong argument, as recent Supreme Court decisions in the Purdue case emphasize the importance of due process in bankruptcy proceedings.***

## *The "Clearly Erroneous Standard"*

***Ultimately, an appellate court reviews the specific record of the bankruptcy court proceedings to determine if the judge's decision to dismiss the objection was legally sound.***

***The standard for reviewing whether claims are "substantially similar" is indeed the "clearly erroneous" standard. This standard is highly deferential to the bankruptcy court's Finding of Fact. Meaning that a finding can only be "clearly erroneous" when the reviewing court is certain that a mistake has been made. The district court in the case of Burcam Capitol reinforced , emphasizing that separate classification of otherwise similar claims for the sole purpose of manipulating voting on a plan is prohibited. The court's decision is a sharp rebuke of the bankruptcy's endorsement of impermissible gerrymandering, highlighting the importance of the "clearly erroneous" standard in bankruptcy law.***

Greenberg Traurig, LLP

Greenberg Traurig, LLP(Modification of 2021 Prior Plan and 2025 New Plan)

***NOTE:*** ***Cross Reference Binding Contractual Elements of the 2021 Disclosure Statement (*cite docket#7865'Modification of Plans Rule')in context of below snippet from page 3 of Plan Support Letter>>>***

***MODIFICATION OF A PLAN RULES***

****Yes, creditor classifications in a Chapter 11 bankruptcy can be modified, even after the initial classification has been established, but only under specific circumstances and with court approval. The Bankruptcy Code allows for modifications to a plan of reorganization both before and after confirmation, but these modifications must comply with certain requirements, including the proper classification of claims.***

***Here's a more detailed explanation:***

- ***Modifications Before Confirmation:***

***The plan proponent can modify the plan at any time before confirmation, but the modification must still comply with the requirements of Chapter 11, including the proper classification of claims. This means that any changes to the classification of creditors must be justified and not violate the rules regarding classification and treatment of claims.***

***Modifications After Confirmation:***

***After a plan has been confirmed, modifications are still possible, but only under certain conditions. Generally, modifications are allowed before substantial consummation of the plan, meaning before the plan has been fully implemented. The proponent must seek court approval for the modifications after providing notice and a hearing.***

***Requirements for Modification:***

***Any modification, whether before or after confirmation, must comply with the requirements of the Bankruptcy Code regarding the classification and treatment of claims. This includes ensuring that the plan, as modified, is fair and equitable to all classes of creditors and does not unfairly discriminate against any particular class.***

***Impact on Creditors:***

***If a modification affects the rights of creditors, they may have the opportunity to vote on the modified plan or object to the modification. The court will consider these objections when deciding whether to approve the modification.***

-

***In summary, while creditor classifications in a Chapter 11 bankruptcy can be modified, it's not a simple process. It requires careful consideration of the Bankruptcy Code's requirements, potential impact on creditors, and court approval.***

***<u>CONTRACTUALLY BINDING DOCKET#7947</u>***

Case 7:25-cv-01632-NSR Document 185-9 Filed 08/13/26 Page 19 of 145

Contractually binding terms of 2020 Proof of Claim Form

From: kred28@aol.com (kred28@aol.com)

To: kred28@aol.com

Date: Monday, August 25, 2025 at 09:17 AM EDT

The contractually binding terms and conditions of the original Proof of Claim Form allows non-personal injury claimant to assert economic damage caused by the Debtor. The framework of the claim form in the prior plan allows for the claimant to assert a tangible value caused by products of the debtor. Language of the form allows for a reasonable person to believe that the assertion of a non-personal injury claim (as the result of economic damages caused by the Debtor) would receive valuable consideration from the Administrator, Prime Clerk.

**Allocation Settlement:** The Chapter 11 Cases arose against the backdrop of the opioid crisis, and of related litigation by a wide variety of parties against Purdue. These litigation claims do not have a judicially-determined value. Rather, each claimant believes fervently in the value of its own claim and may have skepticism regarding the claims of others. Because the goal of chapter 11 is to determine an equitable allocation of money where full payment of claims is not possible, these differing opinions were a challenge to the progress of the Chapter 11 Cases. To address these disputes, the UCC supported a long but ultimately successful mediation process in 2020-2021, which eventually led to a series of intercreditor settlements. ***With some adjustments (see Section III below) in total dollars, timing of payment and recipients of funds, the allocation settlements reached in connection with the Prior Plan continue to govern allocation among claimant classes in the Current Plan.***

***NOTE: Bold typed highlight of above>>> Allocation Settlement: The Chapter 11 Cases arose against the backdrop of the opioid crisis, and of related litigation by wide variety of parties against Purdue. These litigation claims do not have a judicially-determined value. Rather, each claimant believes fervently in the value of its own claim and may have skepticism regarding the claims of others. Because the goal of Chapter 11 is to determine an equitable allocation of money where full payments of claim is not possible, these differing opinions were a challenge to the progress of Chapter 11 cases. To address these disputes, the UCC supported a long but ultimately successful Mediation process in 2020- 2021, which eventually led to a series of intercreditor settlements. With some adjustments( see Section III below) in total dollar amounts, timing of payments and recipients of funds, the allocation settlements reached in connection with the prior plan continue***

***to govern allocation among claimants classes in the Current Plan.***

***<u>CONTEXTUAL SNIPPETS FROM DOCKET#7865 "IMPROPER CLASSIFICATION OF NON-PERSONAL INJURY CLAIMS</u>***

# Objection to Improper Classification of Non-Personal Injury Claim

## Background and Purpose of the Motion

The purpose of this Motion is to object to the Improper Classification of my Non-Personal Injury claim by the Unsecured Creditors Committee (UCC). I am contesting Akin Gump/UCC's failure to acknowledge my 2020 Non-Personal Injury Claim(claim#57858), which is required for ballot voting prior to the September 30, 2025 deadline. A ***Memorandum of Understanding (MOU)*** was sent on

---

9/1/2025 to Attorney Arik Preis, Lead Attorney of Akin Gump/UCC, requesting confirmation of my Non-Personal Injury claim in accordance with the terms and conditions outlined in the Disclosure Statement. ***I hereby petition the court to evaluate my $10 million Personal Injury Claim(claim#57858) as asserted on the 6/28/2020 Proof of Claim Form.***

The intent of the MOU is to enable all parties to review the Disclosure Statement, resolve any disputes or misunderstandings, and make necessary revisions before the scheduled emergence from Chapter 11 Bankruptcy on November 10, 2025. The UCC, as fiduciaries for all classes of creditors, was sent the MOU for Attorney Preis to examine my Non-Personal Injury claim P, which was asserted as an Other General Unsecured Claim in the amount of $10,000,000.00. **The Proof of Claim Form dated June 28, 2020 is in fact a COMBINED Personal Injury and Non-Personal Injury claim form (as explicitly detailed in the MOU).**

---

## Request for Claim Review and Voting Rights

I asked the UCC to thoroughly review treatment of my $10 million Non-Personal Injury Claim and my right to exercise an Estate Prosecution or Direct Settlement Claim as a holder of an "Other General Unsecured Claim." The 2020 Proof of Claim form permits Non-Personal Injury claimants to pursue economic damages caused by the Debtor. My tangible Non-Personal Injury /Economic Damage claim's 'Value' as acknowledged and asserted by the Claims Agent, Prime Clerk. The origin of my 2020 Non-Personal Injury claim(claim#57858) is a Direct Claim against Purdue Pharma. My wife never retained legal counsel to sue PPLP. As a non-litigant claimant, she did not retain a personal injury attorney as many other claimants had. Unlike terms contained in the 2021 Disclosure Statement , the 2025 Disclosure Statement contains provisions for Pre-petition Economic Damage claims into the broader opioid settlement framework rather than treating them as typical bankruptcy claims. ***I therefore petition the court to determine Treatment and Classification of my Non-Personal Injury claim and afford me Ballot Voting rights as I hold a $10,000,000 Non-Personal Injury Claim against the Debtor.***

## Bankruptcy Code Section 1122

According to ***Bankruptcy Code section 1122, the Plan may establish a separate Other General Unsecured Creditor ("Convenience Class") if the UCC finds it reasonable and necessary for administrative purposes.*** I am requesting confirmation of this creditor classification before the Ballot/Vote Bar Date of September 30, 2025, to determine my eligibility to Opt-In or Opt-Out of Third-Party Releases. As a result, my Non-Personal Injury claim (as permitted by the Harrington Ruling), would allow for Ballot Voting Rights to Opt-In for the Direct Claims Settlement option or Opt-Out for an Estate Prosecution Claim.

# Classification and Voting Rights for Non-Personal Injury Claims

Based on the guidelines established in the Harrington Ruling, claimants with Non-Personal Injury claims are entitled to voting rights regarding the available settlement options. Specifically, my Non-Personal Injury claim should be eligible for participation in the Direct Claims Settlement by opting in, or for an Estate Prosecution Claim by opting out. This classification ensures fair treatment and preserves my right as a claimant under the revised bankruptcy plan.

# Breach of Fiduciary Duties and Related Objections

This motion objects to the UCC's treatment of my Non-Personal Injury claim and their failure to extend Ballot Voting rights in accordance with provisions contained in the Disclosure Statement. I contend that I should be accorded Standing and given Creditor rights under the terms of the Disclosure Statement. ***I contend that UCC's failure to classify my claim constitutes a breach of their fiduciary responsibilities in an effort to extinguish my Non-Personal Injury claim.***

***In light of the imminent ballot vote deadline of September 30, I respectfully guidance from the Honorable Judge Lane.***

## UCC's Neglectful Treatment and Classification of Claim

Denial of ballot voting rights in accordance with the Disclosure Statement is a significant concern. Over the past four years, ongoing legal disputes have overshadowed the basic merits of my claim. The 2020 Proof of Claim form combined BOTH Personal and Non-Personal Injury claims (generically 'Economic Damage Claims'). The **2025 Non-NAS PI Claim Form** is exclusively for personal injury claims. For the past four years, I have repeatedly asked the UCC to clarify how they treat Non-Personal Injury claims asserted on *the* ***'2020 Personal Injury Claimant Proof of Claim Form'*** .The 2020 form combined BOTH Personal and Non- Personal Injury claims. **The 2020 form page 3 ,section 10 states** ***" Describe the basis for Your, including all alleged causes of action ,sources of damages, etc., You are asserting against the Debtors ."*** Then on page 5,Part 5 section 15 reads:"***Other (Non-Personal Injury)Opioid-Related Claims 15. Do You believe You have any other claims against the Debtors based on or involving the Debtors' production, marketing and sale of Purdue Opioids that are not based on a personal injury?*** (*see below screen shot of ***2020 Personal Injury Claimant Proof of Claim Form.***

The UCC to date has failed to determine the treatment of my Non-Personal Injury and has failed to extend Ballot Vote rights under the terms of the Disclosure Statement. These failures I believe constitute breach of their fiduciary responsibilities. ***I hereby request that the Court determine treatment and classification of my Non-Personal Injury claim under the New Plan pursuit to the Harrington Ruling.***

## Delayed Response by Akin Gump/UCC

Until recently, Akin Gump (UCC) has demonstrated willful neglect in examining this complex claim. Recent communication with Attorney Preis (***See below email dated 8/20/2025)*** myopically focused only on my spouse's Personal Injury claim and categorically dismissed my Non-Personal Injury/Economic Damage claim as asserted on the 2020 Proof of Claim Form(****NOTE:2020 Proof of Claim Form was a combined Personal and Non-Personal Injury claim that formed the basis of the MOU)***. UCC has prevented me from mounting a legal challenge (in the form of an Inter-Creditor dispute)therefore deprives me of due process. UCC/Akin Gump Attorney Alan Carrillio in 2022 failed to examine the 2020 Proof of Claim.(***Note; see emails from Akin Atty Carrillio dated 3/10 and 3/11/2022 ).*** For four years, Console to my late wife- Attorney Lawrence Reich( Reich Reich& Reich of White Plains NY)- and I have repeatedly tried to secure confirmation of my Non- Personal Injury claim ***.(*Note: see below as well as attachment letter from Atty Reich's to Atty Preis dated 6/27/2025***)

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
Bank of America Tower
New York, NY 10036
Attn: Arik Preis, Esq.

Re: Claim of Jane A. Redwood in the Chapter 11 Case of Purdue Pharma L.P., et al.

Dear Mr. Preis:

Our firm is counsel to the estate of the late Jane A. Redwood ("Claimant") as a

***I believe their delay in recognizing this complex claim has deprived me of due process to a Ballot Vote as well as their witting or unwitting disregard in classifying my Non- Personal Injury claim as further evidence of neglect.***

## Application of the Harrington Ruling

The Harrington ruling established a framework for the treatment of Non-Personal Injury claims—such as Economic Damage Claims—under the new Plan. According to the revised Purdue Pharma Chapter 11 plan, pre-petition economic damage claims are categorized as "Estate Claims" and "Direct Claims." Claimants who participate in the settlement and grant releases against the Sackler family receive distributions from both the Estate Claims Settlement and the Direct Claims

Settlement, both funded by the Sackler's. Those who do not provide releases may litigate against the Sackler's but are only eligible for distributions from the Purdue Pharma estate.

***Based on this framework, I believe my Non-Personal Injury claim should be classified as a Other General Unsecured Creditor (11C), 'Convenience Class'.***

# Modifications to a Plan of Reorganization

The probative questions which I wish the Court to consider with respect to treatment of my 2020 Non-Personal Injury Claim rests in rules governing Modification of a Plan.

How have manifestation of the Harrington ruling affected treatment of my Non-Personal Injury claim? Would allowance of such claim substantially change the treatment of other creditors claim in the same class?

***Modifications to a Plan of Reorganization***

It is imperative for the Court to assess how modifications to the Plan of Reorganization impact the classification and treatment of 2020 Non-Personal Injury claims. Any changes to the Plan must be guided by the principles established in the Harrington Ruling and the language of the original Proof of Claim forms, ensuring that claimants are neither precluded from their rights nor deprived of due process. The Harrington provisions that resulted in modification of the plan has categorically effected Treatment and Classification of claims. ***I believe the complexity of my 2020 Non-Personal Injury claim commands the Court to uphold the integrity of the claims process and protect the interests of those with Non-Personal Injury/Economic Damage claims under the revised Plan***.

The Prior Plan did not allow for economic damage claims against the Debtor whereas the new plan ALLOWS for economic damage claims against the Debtor. Since I hold a $10 million Non-Personal Injury claim from the old plan, I respectfully ask the court to determine my Creditor Classification as per terms of the current Disclosure Statement. I hold that my claim meets the definition for administrative purposes. Based on bankruptcy of rules governing Modification of a Plan, I hold that my claim meets the definition of General Other Unsecured Claims "Convenience Claims" if the UCC finds it reasonable and necessary for administrative purposes. ***The*** court, therefore, must decide if such a claim will be allowed based Modification of a Plan rules.

**Part 5:** **Other (Non-Personal Injury) Opioid-Related Claims**

| | |
|---|---|
| 15. **Do You believe You have any other claims against the Debtors based on or involving the Debtors' production, marketing and sale of Purdue Opioids that are not based on a personal injury?** | ☐ No.<br>☑ Yes. If yes, please describe the nature of the claim(s) (Attach additional sheets if necessary).<br>Jane A . Redwood hereby seeks remuneration for compensatory damage resultant from abusive pain management regimen under the authority/care of Dr. Sylvia Knoploch(Rehabilitation Consultants of Norwalk CT/CT license#027889). Protracted dosing of OxyContin 10 MG, Morphine Sulfate 5 MG, Trazaodone 100 MG,Zolpiem 10 MG, Benzodialipans for treatment of RSD since 2007 to present. Be advised of Hartford Hospital ED admission on 6/19/2020. Safe discharge planning to The Institute of Living for bevavioral health/titration detoxification treatment for opiod induced psychosis. Notably, PCP Dr. Martin Perlin of Westport CT was complicit with Dr. Knoploch pain management regimen prior to 2007. Present catatonic condition requires dual modality of care;Hartford Hospital/ Institute of case management includes probable LTC placement. Admission to LTC Apple Rehab of Rocky Hill CT pending. |
| 16. **How much is the claim?** | $ $10,000,000.00 or<br>☑ Unknown. |

The above 2020 Proof of Claim Form (Part 5, page 5) allows for Non-Personal Injury claims. In your email dated August 20, 2025, you referenced the "current version of the Non-NAS PI TDP." However, the 2025 claim form is solely a personal injury form and titled "Non-NAS PI Claim Form For Purdue PI Trust Distribution Procedures." The 2020 plan, however, permitted "Other (Non-Personal Injury) Opioid-Related Claims."

***Important Critique of the UCC:***

**As detailed in my docket(#7865) regarding the Harrington Ruling effect on the 2021 Proof of Claim would have categorically extinguished economic damage claims had it not been for the Harrington ruling. This had a de facto effect of precluding broad class of economic damage creditors who asserted specific values on the 2020 proof of claim form. I argued this point on docket number 8132, Written Legal Brief. The below of the Page 3 of the Plan Support Letter states;**

> **Direct Claims Settlements:** In addition to resolving ***Purdue's*** claims against the Sacklers and their related parties, the Prior Plan also provided for the settlement of the claims that could be asserted ***directly*** against the Sacklers by the Debtors' creditors to the extent those claims related to Purdue's conduct. This settlement was accomplished through a legal mechanism referred to as "nonconsensual third-party releases," which meant that the decision by a supermajority of creditors to settle their claims against the Sacklers could bind the remaining creditors to settle their claims, as well. ***In June 2024, the Supreme Court Decision abolished "nonconsensual third-party releases," which meant that this feature in the Prior Plan had to be modified in the Current Plan.***
>
> **All-in Approach:** Because the Prior Plan relied on nonconsensual third-party releases, the Prior Plan contemplated funds from the Sacklers without separating those funds between the Estate Claims Settlement and the Direct Claims Settlements. ***The Current Plan had to address this as a result of the Supreme Court Decision.***

***Respectfully asked the Court for guidance in adjudicating Pro Se Economic Damage claims in accordance to provisions set forth on Page 6 of the Plan Support Letter(*Direct Settlement Option) stating the following:***

**A. *The Sackler & Debtor Contributions***

As noted, the Plan provides for the settlement (the "Estate Claims Settlement") of the Debtors' claims against the Sacklers (the "Estate Causes of Action").[14] Separately, the settlement provides that claimants may ***voluntarily*** settle the direct claims they may have against the Sacklers (the "Direct Claims Settlements"). The Sacklers will provide cash distributions to Public and Private Claimants who elect to participate in the Direct Claims Settlements and grant releases of their direct claims (the "Third-Party Releases"). The total value of the two settlements with the Sacklers could be up to $6.5 billion. The settlements are described as "up to" because the actual amount that will be contributed depends on the number of participants in each class.

Importantly, because the Sacklers are paying direct settlement amounts only to creditors who provide releases, the settlement authorizes three separate types of reserves to be established using money that would otherwise form part of the value that would be available for distribution to creditors, some of which is designated to serve as funding for the Sacklers' litigation costs (including judgments and settlements). Each of these reserves, which are described in greater detail in Section III.CC.3.(i) of the Disclosure Statement, will serve to limit the money that is made available to creditors under the settlements, both across the board and for the specific claimants that do not grant the releases.

***If you do not grant the release, and you sue the Sacklers—which you will be free to do if you do not grant the release, but only when the Court lifts the injunction currently in place—the first dollars that the Sacklers use to defend themselves will come directly from funds that you would have received if you had agreed to the settlement.***

**B. *Treatment of Participating and Non-Participating Claims***

The Plan contemplates that private claims against the Debtors will be channeled to "Creditor Trusts" for processing in accordance with Trust Distribution Procedures or "TDPs." Each class of such claims will be covered by its own trust, with different standards for claim processing under the applicable TDP. In addition, for any claimant who elects to participate in the Third-Party Releases (see next paragraph), the relevant Creditor Trust will also process compensation for the claims against the Sacklers subject to the Third-Party Releases.[15]

The Plan provides each claimant with an individual choice as to whether they will provide the Third-Party Releases. Different classes of claims will effectuate the Third-Party Releases by mechanisms specific to the class.

- The consent of States, subdivisions, Tribes and other public entities in Classes 4 and 5 has been or will be sought by means of an out-of-court process similar to that used in non-bankruptcy opioid settlements. ***If your claim is subject to this process, the UCC recommends that you grant the release.***

- The consent of Third-Party Payors in Class 8 and Personal Injury claimants in Classes 10(a) and 10(b) is being sought on the ballots you are being given to vote on the Plan. ***If you hold a claim in one of these classes, the UCC recommends that you check the box on your ballot indicating that you grant the Third-Party Releases.***

According to bankruptcy law, litigation claims are generally treated as "disputed," so that claimants are required to prove that they are entitled to relief from debtors. As part of the settlement in the Plan, however, ***the Debtors have agreed to treat as "allowed" (and therefore entitled to their distribution under the applicable TDP, if any) the claims of any claimants who grant the Third-Party Releases***. This means that if (i) your claim is supported by evidence that assigns it a value under the TDP for the Creditor Trust handling your claim and (ii) you participate in the Third-Party Releases, you will not be required to engage in a court process to prove the legitimacy of your claim.

**Proof of Smoking Gun Allegation of Fraud**

**Attorney priest knowingly concealed material evidence in an effort to channel the claim as a general unsecured creditor class to intentionally devalue its net worth under the Priority Rule. I contend that this subversion constitutes fraud. Knowing manipulation in his role as the Lead Attorney of the UCC it's not merely a breach of fiduciary responsibilities, but an active case of concealment of evidentiary material in the determination/estimation of a claims value under 502.As the chief architect of the Plan Support Letter Attorney Preis engineered the "Scam/scheme" in the creation of a deceptively complex Plan Support Letter. The Direct Settlement option *He* touted expressly allowed claims to be *directly* asserted by the Debtor's creditors to the extent those claims(including economic damage claims)related to Purdue's unlawful conduct.**

**I asked the court that if a Pro Se Economic Damage class was created, would it meet conditions of eligibility for the Direct Settlement option? IF this predicate is affirmed and a Pro Se Economic Damage Class is codified then the Confirmation Order must include Economic Damage claims. Furthermore, this novel class of creditors would be enjoined from Opt-In/Opt-Out voting rights in violation of the Harrington Ruling. Hence modification to the Confirmation Order must be amended due to Denial of Due Process Voting rights for Pro Se Economic Damage claimants. This legal proposition is irrefutably supported by the following Plan Support Letter provisions of the Disclosure Statement:**

**Disclosure Statement page 34of 644**

**<u>Summary of Classification and Treatment of Claims and Interests in the Debtors</u>**

***3. Objections to Classification of Claims Section 1122 of the Bankruptcy Code requires that the Plan classify Claims against, and Interests in, the Debtors. The***

***Bankruptcy Code also provides that the Plan may place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests of such Class. The Debtors believe that all Claims and Interests have been appropriately classified in the Plan. To the extent that the Bankruptcy Court finds that a different classification is required for the Plan to be confirmed, the Debtors would seek (i) to modify the Plan to provide for whatever classification might be required for confirmation and (ii) to use the acceptances received from any holder of Claims pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such holder ultimately is deemed to be a member. Any such reclassification of Claims, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such holder was initially a member, or any other Class under the Plan, by changing the composition of such Class and the vote required for approval of the Plan. There can be no assurance that the Bankruptcy Court, after finding that a classification was inappropriate and requiring a reclassification, would approve the Plan based upon such reclassification. Except to the extent that modification of classification in the Plan requires resolicitation, the Debtors will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Bankruptcy Court that acceptance of the Plan by any holder of Claims pursuant to this solicitation will constitute a consent to the Plan's treatment of such holder, regardless of the Class as to which such holder is ultimately deemed to be a member.***

## ****IMPORTANT FINDING FROM 'GRANULAR ANALYSIS'( DOCKET#8078) RELATED TO ABOVE NARRATIVE:***

***UPDATED 10/21/2025 :Granular Analysis of Bankruptcy Codes 1122(a) "Substantially Similar Rule" and 1122(b) The"administrative convenience" Exception Provision Under Chapter 11 Section 1122 that governs the classification of claims and interests in an organization plan. This provision is foundational to the confirmation of a Chapter 11 plan, as it dictates how creditors are grouped for voting and treatment purposes.***

***<u>Section 1122(a): The "substantially similar" rule.</u>***

**• Codification of case law: The "substantially similar" requirement is a codification of pre-existing case law and requires claims to be classified based on their legal nature and character.**

**Interpretation and analysis:**

**• Legal nature and character: Courts evaluate whether claims are substantially similar by**

**considering their legal nature in relation to the debtor's assets. For example, secured**

**claims generally cannot be classified with unsecured claims, and common stock interests**

**cannot be grouped with bond debt.**

**• Separate classification of similar claims: While similar claims must be placed in the**

**same class, the law does not explicitly state whether substantially similar claims may be**

**separately classified. This ambiguity has led to extensive case law, and courts generally permit separate classification only if there is a legitimate business or economic reason to do so, independent of manipulating the vote.**

**• Example from case law: <u>The Ninth Circuit</u> has held that an unsecured claim may be dissimilar from other unsecured claims if the creditor has recourse against a third party. This provides a legitimate, non-manipulative reason for separate classification.**

***<u>IMPORTANT:</u>*** **The 9th circuit ruling is most notable as it evokes precepts of the Harrington ruling's non-consensual release of a third party. Nullification of an economic damage class of creditors as supported by the bench ruling would effectively**

**preclude a group of creditors from seeking recourse against a third party. In fact barring such a group of creditors would effectively disenfranchise "The Group" from seeking recourse against that third party.**

*__*IMPORTANT*__* **I ask the court to evaluate this legal reasoning as evidence of Denial of Due Process AND Unfair Treatment of the class of creditors, specifically Economic Damage claimants.**

******NOTE: Section 1122(b):*** **The "administrative convenience" exception Provision:**

**Section 1122(b) provides an exception to the "substantially similar" rule, allowing a plan to create a separate class for small, unsecured claims. This "administrative convenience"class may consist only of unsecured claims that are less than or reduced to approved by the court as"reasonable and necessary".**

**Purpose:**

**• Administrative efficiency: The provision aims to streamline the reorganization process by reducing the number of small creditors who must vote on the plan. This saves time and expense in soliciting acceptances and disbursing small payments.**

**• Encourages acceptance: Often, creditors in a convenience class receive 100% payment on their claims, which encourages their acceptance and simplifies the process.**

**Interpretation and analysis:**

**Reasonable and necessary: The dollar amount threshold for a convenience class is subject to court approval. It must be a reasonable and necessary measure for administrative efficiency, not a tool to unfairly favor one group of creditors over another.**

• Exclusions: A convenience class may not include secured claims or large unsecured claims. This maintains the principle of equal treatment for all other similarly situated creditors.

• Limits on multiple classes: While courts generally permit more than one convenience class if reasonable and necessary, they closely scrutinize such arrangements to ensure they are not used to gerrymander voting results.

***MODIFIED BENCH RULING Dismissal (docket#8270) Objections Related to Classification of Claims(page 58) dated 11/20/2025***

***DOCKET#8270***

---

D. Objections Related to Classification of Claims

Other objections relate to classification of claims under the Plan. Certain *pro se* objectors oppose the Plan's classification scheme, arguing that their claims are fundamentally different from others based on the nature of the injury or the damages sought. *See, e.g.*, *Morales Obj.* [ECF. No. 7355 at 8-11]; *Redwood Obj.* [ECF Nos. 7865, 7944, 7945, 7947, 7997, 8078]. But these distinctions do not meaningfully alter the priority or legal bases of these claims. Moreover, any attempt to divide the creditor body in the granular way suggested by objectors would result in an unworkably complex classification scheme. Keith Redwood objects that the claim form does not permit him to address the economic damages he suffered as a personal injury claimant. *See Redwood Obj.* [ECF No. 8132; 7946]. But this objection ignores the conscious and reasonable decision in the Plan to avoid a compensation program for economic damages that would "require extensive documentation, individualized analysis, and would generate substantial administrative costs—thereby depleting the funds and causing delay in compensation." *See* JX-3621 (Amended Report of Deborah E. Greenspan) at 36 n.33. And it is this version of the Plan

*___BENCH RULING COUNTER ARGUMENT ATTACK#1___

My counter argument is that the above reference “extensive documentation and analysis“ with respect to my claim was provided explicitly on the 2020 proof of claim form page 3 and five. Therefore the bench ruling assertion is a false premise. The ineptitude directly attributable to UCC/Akin Gump, who received court approved professional fees/ compensation of @$2 million a month(since 2019) yet failed to disposition my $10 million economic damage claim demonstrates mismanagement of trust funds for “usury fees” which further demonstrates breach of fiduciary responsibilities in representing the interest of ALL creditors. Emails/correspondences confirmed that Akin Gump(UCC) and Atty Allen Carillio were repeatedly notified of complexities of claim # 57858. Misallocation of trust funds unjustly enriched Akin Gump at the expense of opioid victims whom they were responsible as stewards to represent the “interest of all creditors”. This court-approved racketeering and fraudulent transfer of trust funds attributed to UCC’s inept inability to evaluate complex “Combined” Personal and Non-Personal Injury claims asserted by the Claims Administrator, Prime Clerk.

## ***Bench Ruling ATTACK#***2

***A NOVEL PROPOSITION DEFINING PRO SE ECONOMIC DAMAGE ‘CLASS OF CREDITOR’ AS A DISTINCT COURT DETERMINED SUB-CLASS IN RESPONSE TO AN OBJECTION MOTIONS(e.g.Redwood and Morales Economic Damage claims)***

**Basis for a Pro Se Economic Damage Creditor Class**

**My economic-damage litigation claim depends on the specific facts and circumstances supporting the claim, including particularized judgments about quantum economics and the economic injuries or losses that are compensable under the Disclosure Statement.**

**For that reason, I respectfully ask the Court to recognize and create a *Pro Se Economic Damage Creditor Class*—a class that Judge Lane’s November 22 Bench Ruling categorically dismissed. The Bankruptcy Code permits a Plan to place a Claim or Interest in a particular Class only when**

**that Claim or Interest is substantially similar to the other Claims or Interests in that Class.**

**Request for Court Determination**

**To the extent the Bankruptcy Court finds that a different classification is required for the Plan to be confirmed, I ask the Court to determine that the Pro Se economic-damage claim asserted by me, together with the Pro Se economic-damage claim asserted by Appellee Amanda Morales as cited in the Dismissal Ruling, may constitute a potential "special circumstance" class of creditors based on the Court's own determination and treatment of those claims.**

**Grounds for Separate Classification**

- **The claims are Pro Se objection claims arising from economic-damage allegations dismissed under the same Bench Ruling category.**
- **The claims present atypical, particularized economic-damage issues that warrant individualized consideration under Bankruptcy Code § 1122.**
- **SDNY guidelines permit the Court to exercise persuasive authority in determining whether a separate creditor class is appropriate where special circumstances justify that treatment.**

**Accordingly, the creation of a separate Pro Se Economic Damage Creditor Class should be evaluated through a particularized examination of the asserted economic-damage claims and the special-circumstance classification requested in Docket #8132, "Persuasive Authority."**

**To recap, excerpt from the Legal Brief(docket#8132,pg 5)"**

- Specifically the 2020 Proof of Claim Form which was used for Non-Personal Injury claims. This evidence is essential for extrapolating if other claimants asserted "verifiable" economic damage values. Late discovery of claims data for classification and treatment purposes is highly unlikely unless a claimant presented a similar Pro Se Motion. A data extraction to algorithmically determine the number of potential nonpersonal injury/economic damage claimants from the 2020 proof of claim form who stipulated a "tangible compensatory dollar amount" is practically impossible. Therefore, I ask the Court to recognize my claim as a "special circumstance, Convience Class" and waive the "fair and equitable "treatment standard. They too would have economic claims had they designated a tangible claim amount. Presumably, a non-personal injury filer would firstly have to demonstrate an astute understanding of complexities of such a claim. There is no mechanism in place to identify such claims unless from the 2020 Proof of Claim Forms are ALL examined. The court must evaluate my claim related to the priority rule in terms of application of provisions contained in Section 1122. The court has the authority to exercise an individualized ranking of a claim if it's unable to identify other economic damage claims from 2020

***<u>Incidental comment of Bench Ruling Fallacy</u>***

**The Bench Ruling's wrongful assertion that my "atypical claim" does not warrant close analysis because** *"…this objection ignores the conscious and reasonable decision in the Plan to avoid a compensation program for economic damages that would require "extensive documentation, individualized analysis and would generate substantial administrative costs- thereby depleting the funds and causing delay in compensation."* **This false narrative perpetrated by the UCC as justification for depriving individual victims just compensation in favor of their own monetary gains.**

**<u>Bench Ruling Counter-Argument w/commentary</u>**

**Since claims and interest are inherently different and cannot be lumped together in the same class. A claim is defined in section 101 of the code whereas interest is not defined in the code. Therefore interest amounts to a proprietary right, such as common stock or some other equity connection. Hence claims do not necessarily have to be precisely the same. In fact, a plan proponent can choose to create other classes of claims based on reasonable distinctions between claims. This reasoning**

**supports my argument that my $10 million nonpersonal injury/economic damage claim should be considered as a valid claim by the UCC, which to date have neglected in an effort to extinguish the claim.**

**Secondly the reasoning proffered in the Bench Ruling regarding 'granular and costly impracticality of individualized determination '. The Judge Lane's bench ruling states:** *"Other objections relate to classification of claims under the Plan. Certain Pro Se objectors oppose the Plan's classification scheme, arguing that their claims are fundamentally different from others based on the nature of the injury or the damages sought. See, e.g., Morales Obj.[ECF. No. 7355 at 8-11]; Redwood Obj. [ECF Nos. 7865, 7944, 7945, 7947, 7997, 8078]. But these distinctions do not meaningfully alter the priority or legal bases of these claims. Moreover, any attempt to divide the creditor body in the granular way suggested by objectors would result in an unworkably complex classification scheme. Keith Redwood objects that the claim form does not permit him to address the economic damages he suffered as a personal injury claimant.See Redwood Obj. [ECF No. 8132; 7946]. But this objection ignores the conscious and reasonable decision in the Plan to avoid a compensation program for economic damages that to avoid a compensation program for economic damages that would "require extensive documentation, individualized analysis, and would generate substantial administrative costs—thereby depleting the funds and causing delay in compensation." See JX- 3621 (Amended Report of Deborah E. Greenspan) at 36 n.33. And it is this version of the Plan that received over 99% of the vote in favor by personal injury claimants who voted on* the Plan."

***My counter-argument to the above reference "extensive documentation and analysis"** .

**This is a categorically false assertion. On the contrary, my 2020 Proof of Claim form page 3 and 5 explicitly detailed compensatory personal and non-personal injury values directly debunking Judge Lane's allegations of "extensive documentation and analysis" . The ineptitude of the UCC/Akin Gump, who receive compensation of $2 million a month yet failed to**

**disposition my $10 million economic damage claim in a fair and equitable manner further demonstrates breach of fiduciary responsibilities in representing the interest of ALL creditors. Communications (MOU, letters emails ) from 2022 to 2025 reveal Akin Gump(UCC) attorneys Alan Carillio and Arik Preis were repeatedly notified of complexities of claim number 57858. UCC's derelict mismanagement as overpaid " administrative overseers" supposedly representing the interests of ALL creditor further demonstrates breach of fiduciary responsibilities in an effort to fraudulently divert trust fund intended for victim compensation.**

**I respectfully ask the Court to exercise persuasive authority in examining my deductive reasoning for rebutting assertions challenging the Bench Ruling Dismissal. My argument rests on the interpretive language contained in Disclosure Statement covering "claims and interests". Provisions in the Disclosure Statement provides the framework for the Consummation Order. Rudimentary examination of economics damage claims caused by the Debtor is critical in treatment and classification of claims. The classification of claims and interests in a Chapter 11 bankruptcy case is governed by Section 1122 of the Bankruptcy Code. The ability of a plan proponent to group certain claims in certain categories is a powerful tool in the confirmation process, since it can have a direct effect on the voting and objection process.**

***While claims and interests are supposed to be "substantially similar" to each other in theory, in practice this standard can present many complexities. Most all claims of the same type be placed in the same class? When can substantially similar claims be placed in separate classes? Should legal, or factual, standards be controlling?***

***Plans are also required to provide the same treatment for each claim or interest within each class, unless the holder agrees to different treatment of its claim or interest. Being able to treat different creditors may in some cases be related to the ability to classify them differently. As a general***

***rule stated above, claims and interests within a class must be "substantially similar" to each other. This does not mean—and the Code does not address this issue—that all substantially similar claims must be placed in the same class. In Re Dow Corning Corp., 280 F.3d 648, 661 (6th Cir. 2002).***

**I argue that Courts generally do not require this. Deductive legal reasoning therefore would conclude my Non-Personal Injury claim/Economic damage would meet the preponderance of evidence test for the Court classify the claim per "special circumstance" rules in 1122. Therefore my situation as presented meets the ' reasonable' justification for such separately classified claims that are substantially similar. In Re Armstrong World Industries Inc., 348 B.R. 136 159 (Bankr. D. Del. 2006).**

***Since Claims and Interests are inherently different, and cannot be lumped together in the same class. A "claim" is defined in Section 101 of the Code. "Interest" is not defined in the Code, but it amounts to a proprietary right, such as common stock or some other equity interest. Therefore as a general rule, classification should be based on the legal nature of the claim or interest. The claims do not need to be precisely the same.***

***In fact, a plan proponent can choose to create other classes of claims based on reasonable distinctions between claims.***

***<u>KEY POINTS FOR EXAMINATION BY THE COURT:APPLICATION OF RULE 3013></u>***

***Whether claims are "substantially similar" is normally reviewed under the "clearly erroneous" standard. The court should look at the reasons behind the classification and make sure that such reasons comport with the primary functions of the Bankruptcy Code. The Federal Rules of Bankruptcy Procedure here provide some guidance on the matter. Rule***

***3013 states that on motion, the Court may determine the appropriate classification of a claim.***

***<u>CRITICAL POINT OF CONTENTION: APPLICATION OF QUANTUM ECONOMICS(Disclosure Statement page 34 of 644)</u>***

***Many of the opioid litigation claims against the Debtors are based upon novel or untested legal theories. In addition to the legal uncertainties, the value of any opioid litigation claim will depend greatly on the facts and circumstances of the claim, and a number of highly particularized judgments about the quantum of economic and non-economic damages that the claimant has incurred and that <u>are compensable</u> under applicable law. The information necessary to determine these amounts is explicitly detailed on the Proofs of Claim as asserted by the Claims Administrator, Prime Clerk.***

***NOTE: Definition of Quantum of Economics:** ***a required or allowed amount, especially an amount of money legally payable in damages."The court must determine the quantum of compensation due"***

****Text Notes:***

***A. Bankruptcy code1122: Court ordered classification of Non Personal Injury/economic damage claims asserted in response proprietary interest of the Personal Injury Claimant. In accordance with the definition of quantum economics as cited on page 34 of 644 pages disclosure statement."2. it required or allowed amount, especially in amount of money, legally payable, and damages." in effect the court must determine the quantum of compensation due.***

****Text Notes re: Quantum Economics***

**** Classification of creditor claim as adjudicated by the court determination of a distinct subclass of other general unsecured creditor, in response to a pro se movant's appeal. A court determined" Pro Se Other General Creditor Class would comport with bankruptcy code 1122***

***by allowing the Court to exercise discretion since the bankruptcy code does not define interest, but only defines class. Interest as in proprietary interest of an economic damage claim it's not codified in chapter 11 bankruptcy policy.***

***The basis of my argument hinges on the definition of quantum economics since this highly particularized economic damage claim is supported by c-sections discussed in Treatment of Claims Disclosure Statement article one, article 3, article 4,5 and 6 Which cover definition, classification, treatment, implementation, and distribution of claim and 'Interest'.***

***I ask for the courts forensic interpretation of "Interest" due to ambiguity in the language covering treatment of Economic damage interest (as in proprietary interest )***

## ***<u>NOTE:HEADER BREAK</u> :PRO SE CLASS OF CREDITOR AS A DISTINCT COURT DETERMINED SUB-CLASS IN RESPONSE TO AN OBJECTION MOTION OF THE BENCH RULING:A NOVEL PROPOSITION***

**I respectfully ask the Second Circuit Court to exercise its persuasive authority to create a 'Pro Se Economic Damage Creditor Class' which Judge Lane's , November 20TH Bench Ruling categorically dismissed. The Bankruptcy Code provides that the Plan may place a Claim or Interest in a particular Class only if such Claim or Interest is**

Case 7:25-cv-09632-NSR Document 133-9 Filed 03/24/26 Page 39 of 145

**substantially similar to the other Claims or Interests of such Class. To the extent that the Bankruptcy Court finds that a different classification is required for the Plan to be confirmed, I ask that my Pro Se Economic damage claim as well as Pro Se Appellee Amanda Morales (as cited in the Dismissal Ruling) constitutes a potential 'special circumstance class of creditor' based upon the courts determination and treatment .A Pro Se Objection class of creditor as an "atypical class of creditor as per bankruptcy rule 1122. SDNY guidelines, governing courts ability to exercise, persuasive authority in of creation of our separate class of creditors is based on a particularized examination in terms special circumstance classification. (*NOTE: see docket#8132 ,'Persuasive Authority)**

***Excerpt from the Legal Brief(docket#8132,pg 5)"***

***Excerpts from my Legal Breaf(docket# 8132,pg 5) refences "astute creditor understanding of complexities of such a claim" supports my argument that the preponderance of 'evidence based discovery' of non-personal injury claims as designated on page 5 of the proof of claim form. I reject Judge Lane's bench ruling assertion proclaiming(page 58 of Bench Ruling) :***

these distinctions do not meaningfully alter the priority or legal bases of these claims. Moreover, any attempt to divide the creditor body in the granular way suggested by objectors would result in an unworkably complex classification scheme. Keith Redwood objects that the claim form does not permit him to address the economic damages he suffered as a personal injury claimant. *See Redwood Obj.* [ECF No. 8132; 7946]. But this objection ignores the conscious and reasonable decision in the Plan to avoid a compensation program for economic damages that would "require extensive documentation, individualized analysis, and would generate substantial administrative costs—thereby depleting the funds and causing delay in compensation." *See* JX-

***Rebutting Falsehood inferring "generally not available from proof of claim form"***

***NEXT insert my draft counter argument to Judge Lane bench ruling reference of "granular" false premise(See below Docket#8078 'Granular' as quoted in Judge Lane's Bench Ruling page 58)***

Re: Estate of Jane A. Redwood
(Claim#57858)

***<u>Cover Letter</u>***

Analysis of Estate of Jane A. Redwood Claim Under SDNY Bankruptcy Code 1122

Overview of Estate of Jane A. Redwood Claim

The Estate of Jane A. Redwood has submitted a claim in the bankruptcy proceedings, which is being analyzed under the relevant provisions of the Southern District of New York (SDNY) Bankruptcy Code section 1122. The claim comprises both Personal Injury and Non-Personal Injury Economic Damage components, totaling $20,000,000.00. These claims were filed and classified together as an Other General Unsecured claim, with the original Proof of Claim (claim #57858) submitted on 6/28/2020 by Prime Clerk Claim administration.

***Request for Analysis of Non-Personal Injury/Economic Damage Claim***

A formal request has been made to the Court to specifically analyze the asserted $10,000,000.00 Non-Personal Economic Damage claim. This request seeks application of the "Substantially Similar" rule under SDNY Bankruptcy Code 1122, which allows for the creation of a "convenience class" as a separate subset of the General Unsecured Creditor class.

***<u>UPDATED 10/21/2025</u> :Granular Analysis of Bankruptcy Codes 1122(a) "Substantially Similar Rule" and 1122(b) The"administrative convenience" Exception Provision Under Chapter 11 Section 1122 that governs the classification of claims and interests in a***

***reorganization plan***. This provision is foundational to the confirmation of a Chapter 11 plan, as it dictates how creditors are grouped for voting and treatment purposes.Section 1122(a): ***The "substantially similar" rule.***

Provision:

Section 1122(a) states that a plan may place a claim or interest in a particular class only if it is "substantially similar" to the other claims or interests within that class.

Purpose:

• Equal treatment: This provision ensures that creditors with similar legal rights against the debtor are treated equitably. It prevents a debtor from manipulating the voting process by creating separate classes to garner the necessary votes for plan confirmation.

• Codification of case law: The "substantially similar" requirement is a codification of pre-existing case law and requires claims to be classified based on their legal nature and character.

***Interpretation and analysis:***

• Legal nature and character: Courts evaluate whether claims are substantially similar by considering their legal nature in relation to the debtor's assets. For example, secured claims generally cannot be classified with unsecured claims, and common stock interests cannot be grouped with bond debt.

• Separate classification of similar claims: While similar claims must be placed in the same class, the law does not explicitly state whether substantially similar claims may be separately classified. This ambiguity has led to extensive case law, and courts generally permit separate classification only if there is a legitimate business or economic reason to do so, independent of manipulating the vote.

• Example from case law: The Ninth Circuit has held that an unsecured claim may be dissimilar from other unsecured claims if the creditor has recourse against a third party. This provides a legitimate, non-manipulative reason for separate classification.

Section 1122(b): The "administrative convenience" exception

Provision:

Section 1122(b) provides an exception to the "substantially similar" rule, allowing a plan to create a separate class for small, unsecured claims. This "administrative convenience" class may consist only of unsecured claims that are less than or reduced to an amount approved by the court as"reasonable and necessary".

Purpose:

• Administrative efficiency: The provision aims to streamline the reorganization process by reducing the number of small creditors who must vote on the plan. This saves time and expense in soliciting acceptances and disbursing small payments.

• Encourages acceptance: Often, creditors in a convenience class receive 100% payment on their claims, which encourages their acceptance and simplifies the process.

Interpretation and analysis:

• Reason able and necessary: The dollar amount threshold for a convenience class is subject to court approval. It must be a reasonable and necessary measure for administrative efficiency, not a tool to unfairly favor one group of creditors over another.

• Exclusions: A convenience class may not include secured claims or large unsecured claims. This maintains the principle of equal treatment for all other similarly situated creditors.

• Limits on multiple classes: While courts generally permit more than one convenience class if reasonable and necessary, they closely scrutinize such arrangements to ensure they are not used to gerrymander voting results.

## *MY PARALEGAL ANALYSIS OF BANKRUPTCY CODE 1122*

***A. Bankruptcy code 1122 affords the Court its preeminent authority to treat and classify Non- Personal Injury/Economic Damage claims that have been asserted in response to a claimant's proprietary interest in a COMBINED Personal Injury claim. " In accordance with the definition of quantum economics as cited on page 34 of 644 pages disclosure statement."2. A required or allowed amount, especially an amount of money, legally payable in damages." In effect," the court must determine the quantum of compensation due." Consequently,*** **classification of an atypical claim ,as adjudicated by the court could**

**create a distinct sub-class of Other General Unsecured Creditor in response to a Pro Se movant's appeal. A court determined Pro Se Other General Creditor class would comport with bankruptcy code 1122 by allowing a judge to exercise his persuasive authority since bankruptcy codes does not define' Interest', but only defines Class. Interest as in proprietary interest of an economic damage claim that is NOT codified in chapter 11 bankruptcy policy. The basis of my argument hinges on the definition of quantum economics since my highly particularized Economic Damage claim as supported by C-sections discussed in treatment of claims Disclosure Statement Article I, Article III, Article IV,V and VI which covers definition, classification, treatment, implementation, and distribution of claim and 'Interest'.**

**I hereby ask the courts to apply deductive reasoning in dispositioning Economic Damage claims. Due to ambiguity in the language in the definition , classification, treatment, implementation and distribution of Economic damage claims in terms of proprietary interest.**

***Tangible Proof of Economic Damage Asserted on 6/28/2020 Proof of Claim Form***

**Loss of earned income directly resulted from caregiving as confirmed by proof of Social Security wage verification for the period 2013 to 2024, which coincides with the period of uncompensated primary care giving from 2013 to 2024 >>*Draft Text Notes:**

***> Provisions contained in the Disclosure Statement dated June 3, 2021 related plan documents, do not explicitly reference "economic damage claims" as a defined term. However, the substance of such claims is addressed within the provisions for Public Entity Claims and General Unsecured Claims, which may encompass "economic loss claims" or "non-personal injury claims". SEE THE FOLLOWING:***

***DISCLOSURE STATEMENT ORDER THIRTEENTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF PURDUE PHARMA***

***19-23649-shl Doc 8503 Filed 01/13/26*** ***Entered 01/13/26 13:43:05 Main Document***

***Pg 56 of 973***

Over 614,000 Proofs of Claim were filed in these Chapter 11 Cases by the July 30, 2020 General Bar Date. More than 550,000 of those Proofs of Claim, approximately 90% of the total, did not state a claim amount. The approximately 10% of the Proofs of Claim that did state an amount asserted, in the aggregate, claims of over $140 trillion. Even if the single proof of claim asserting $100 trillion in damages is excluded, the approximately 10% of Proofs of Claim that state claim amounts assert, in the aggregate, claims of over $40 trillion. For comparison, the gross domestic product of the United States for 2020 is estimated at approximately $20.93 trillion,[35] and the gross domestic product of the entire world for 2019 is estimated at approximately $87.80 trillion.[36]

The vast majority of the filed Proofs of Claim assert unsecured opioid litigation claims, including the claims in the following classes: Non-Federal Domestic Governmental Claims (Class 4); Tribe Claims (Class 5); Hospital Claims (Class 6); Third-Party Payor Claims (Class 7); Ratepayer Claims (Class 8); NAS Monitoring Claims (Class 9); and PI Claims (Classes 10(a) and 10(b)). Many of the opioid litigation claims against the Debtors are based upon novel or untested legal theories. In addition to the legal uncertainties, the value of any opioid litigation claim will depend greatly on the facts and circumstances of the claim, and a number of highly particularized judgments about the quantum of economic and non-economic damages that the claimant has incurred and that are compensable under applicable law. The information necessary to determine these amounts is also generally not available from the Proofs of Claim, and, in litigation, would be learned through fact and expert discovery. Any estimate of the aggregate value of opioid litigation claims, and any estimate of the aggregate percentage recovery of a class of opioid litigation claims, would be so uncertain as not to provide claimants with information useful to make judgments about the proposed Plan.

*Note: The following are highlights from above to support my rebuttal>>>>>

**The following highlight from the above paragraph directly refutes Bench Ruling's false premise regarding 'impracticality, verifiability argument'. Page 56 of Disclosure Statement states:**

***"Many of the opioid litigation claims against the Debtors are based upon novel or untested legal theories. In addition to the legal uncertainties, the value of any opioid litigation claim will depend greatly on the facts and circumstances of the claim, and a number of highly particularized judgments about the Quantum of Economic and losses*** **" I incurred losses that are compensable under the Disclosure Statement. The information necessary to determine the amount of the claim are EXPLICITLY detailed on the 6/28/2020 Proofs of Claim form. Had the UCC exercised there fiduciary duties and examined my atypical**

claim they would have recognized the merits of the Economic Damage claim and treated and classified the claim in accordance with provisions of 1122.

What is especially notable about UCC's breach of fiduciary responsibilities , are the actions/inactions of Attorney Preis and Attorney Carrillo. Painstaking efforts since 2022 to secure clarification of complexities of a COMBINED Personal and Non-Personal Injury as asserted by the Claims Administrator, Prime Clerk were maliciously ignored. Had they examined claim#57858 (as repeatedly requested) and collaborated with Prime Clerk they would have learned through fact and expert discovery the validity of the Non-Personal Injury damages as asserted on the 2020 Proof of Claim form.

I ask the Court to exercise its discretion in applying its Persuasive Authority in adjudicating my claim as allowed by the definition of Quantum Economics*:*

1.Definition of Quantum of Economics: 2.

a required or allowed amount, especially an amount of money legally payable in damages."The court must determine the quantum of compensation due"

***Note:*** ***"Economic Damage" references are located in the Disclosure Statement>>>***

***The treatment of economic damage claims in the Purdue Pharma Chapter 11 case is detailed across various sections of the Disclosure Statement, rather than a single location or page number.***

## *IMPACT OF THE HARRINGTON RULING*

Prior to the Harrington Ruling, non-consensual releases of a third party debtor was permissible therefore would have precluded non-personal injury claim specifically Economic Damage claims(which prompted the Harrington Ruling). Moreover, treatment of my Non-Personal Injury

**Claim(claim#57858) should firstly be afforded voting rights in accordance with terms and conditions of the current Disclosure Statement. Secondly, pursuit to the Debtors Plan of Reorganization and election with respect to Third-Party Releases, I should have been afforded ballot voting rights to Accept or Reject the Amended Chapter 11 Plan of Reorganization. As the fiduciary for all classes of Creditors, I repeatly requested the UCC thoroughly evaluate the treatment of my asserted $10,000,000.00 Non-Personal Injury Claim in consideration of my rights to exercise an Estate Prosecution or a Direct Settlement Claim as a holder of an "Other General Unsecured Claim".**

**NOTE>>>The contractually binding terms and conditions of the original 2020 Proof of Claim form allows Non-Personal injury claimant to assert economic damage caused by the Debtor. The framework of the claim form in the Prior Plan allows for the claimant to assert a tangible value caused by products of the debtor. The language of the claim form allows for a reasonable person to believe that the assertion of a Non-Personal injury claim (as the result of economic damages caused by the Debtor) which received valuable consideration from Prime Clerk.**

***IMPORTANT* The genesis of the 2020 nonpersonal injury claim began as a claim DIRECTLY against the debtor, Purdue Pharma, NOT as a personal injury lawsuit. As a non-litigant holder of an asserted other general unsecured creditor claim ,my late wife NEVER retained representation from a personal injury attorney . Evaluation of this assertion will reveal that we never sued Purdue Pharma validating the structure of my Non-Personal injury claim as a Direct Claim against the Debtor in the form of an asserted $10,000,000.00 value. Since my economic damage claim is directly tied to the Proprietary Interest of my late wife's** Personal **Injury (PI) claim, it may need to be aligned with the PI Trust established under the plan, rather than general unsecured claims. Again I ask the Court to determine treatment and classification of my claim within the framework of the New Plan as allowed within provisions of the Disclosure Statement .The Debtors and the actions of Purdue Pharma caused irreparable**

**suffering on my late wife. The proprietary economic damage of 18 years of uncompensated primary caregiving was in fact asserted by Prime Clerk in the amount of $10,000,000.00. For 4 years I repeatedly requested a fact-intensive examination of the 2020 Proof of Claim Form which was flagrantly ignored if not dismissed by the UCC.**

## ***Rebutting Judge Lane's Falsehoods stating "generally not available from proof of claim form"***

**Many of the opioid litigation claims against the Debtors are based upon novel or untested legal theories. In addition to the legal uncertainties, the value of any opioid litigation claim will depend greatly on the facts and circumstances of the claim, and a number of highly particularized judgments about the quantum of economic and non-economic damages that I have incurred and that are compensable under applicable law. The information necessary to determine these amounts is available on the Proofs of Claim, and, in litigation, would be learned through fact and expert discovery. Any estimate of the aggregate value of opioid litigation claims, and any estimate of the aggregate percentage recovery of a class of opioid litigation claims, would be so uncertain as not to provide claimants with information useful to make judgments about the proposed Plan.**

**NOTE: See below screen shot of Modified Bench Ruling docket#8270:**

Case 7:25-cv-01632-NSR Document 1-35 Filed 02/24/26 Page 48 of 114

D. Objections Related to Classification of Claims

Other objections relate to classification of claims under the Plan. Certain *pro se* objectors oppose the Plan's classification scheme, arguing that their claims are fundamentally different from others based on the nature of the injury or the damages sought. *See, e.g.*, *Morales Obj.* [ECF. No. 7355 at 8-11]; *Redwood Obj.* [ECF Nos. 7865, 7944, 7945, 7947, 7997, 8078]. But these distinctions do not meaningfully alter the priority or legal bases of these claims. Moreover, any attempt to divide the creditor body in the granular way suggested by objectors would result in an unworkably complex classification scheme. Keith Redwood objects that the claim form does not permit him to address the economic damages he suffered as a personal injury claimant. *See Redwood Obj.* [ECF No. 8132; 7946]. But this objection ignores the conscious and reasonable decision in the Plan to avoid a compensation program for economic damages that would "require extensive documentation, individualized analysis, and would generate substantial administrative costs—thereby depleting the funds and causing delay in compensation." *See* JX-3621 (Amended Report of Deborah E. Greenspan) at 36 n.33. And it is this version of the Plan that received over 99% of the vote in favor by personal injury claimants who voted on the Plan.

***NOTE: RECAP from page 29 above***

**Therefore, my argument is that the above reference "extensive documentation and analysis" with respect to my claim was provided explicitly on the 2020 proof of claim form page 3 and 5. Therefore the bench ruling assertion is a false premise. The ineptitude of the UCC/Akin Gump, who received usury rates for professional fees approximating $2 million monthly (since 2019) grossly failed to disposition my $10 million economic damage claim in a fair and equitable manner which further demonstrates breach of fiduciary responsibilities in representing the interest of ALL creditors. Records confirmed that Akin Gump(UCC) Attorney Allen Carillo were repeatedly notified of complexities of claim# 57858 .Yet this overpaid "administrative overseer" representing the interests of ALL woefully mismanaged my claim. My counter-argument to Judge Lane's false premise stating (page 58 of Bench Ruling) *D.***

***Objections Related To Classification of Claims . Judge Lane's Bench Ruling proclaimed:** "But this objection ignores the conscious and reasonable decision in the Plan to avoid a compensation program for economic damages that would "require extensive doucumentation , individualized analysis,and would generate substantial administrative costs-thereby depleting the funds and causing delay in compensation."*

**I ask the Court to further review the below rebuttal debunking Judge Lane's false premise** stating "***D. Objection Related to Classification of Claims Re: Explicit Documentation of Prescription Opioid Use "***

***I further ask the Court to examine my the below testimony adjudicating the validity my economic damage claim under the Direct Settlement option against the Debtor:***

**Mismanagement of excess opiod dosing from Jane A. Redwood's Primary Pain Management Provider, Dr. Silvia Knoploch of Rehabilitaion Consultant of Norwalk CT( pain management from 2006 to 2024 date of death) . Due to the malpractice actions of Dr. Silvia Knoploch, who directly facilitated the illicit and excessive usage of opiates at the behest of pharmaceutical Reps from Purdue Pharma. Rehabilitation Consultants of Norwalk CT had a direct relationship with Dr. Richard Sackler( of Stamford CT) at the beginning of the opioid crisis. My wife was in the care of Dr. Knoploch from 2006 to 2024. My late wife's (combined)Personal and Non-Personal Injury claim # 57858 is distinctly particularized due to the close relationship between Dr. Silvia Knoploch and Dr. Richard Sackler at very beginning of the opioid crisis. State of Connecticut department of health public records confirmed that Dr. Knoploch(CT DPH license#027889) "hyper-charged" administration of Purdue Pharma opioid prescriptions from 2006 to 2024. In addition, prescription opioids prescribed by Dr. Knoploch simultaneously coincide with prescription opioids from Dr. Martin Perlin of Westport CT who concomitantly authorized opiate prescriptions from 2004 to 2017. Both of the aforementioned medical providers colluded directly with the owner of Purdue Pharma, Dr. Richard Sackler.**

**My proof of claim form explicitly indicated that due to the actions of Dr. Silvia Knoploch (Pain Management Provider) of Rehabilitation Consultants of Norwalk CT criminally over prescribed OxyContin/oxycodone whilst under under her care directly responsible for her opioid related disabilities and ultimate death in 2024. The actions of this one medical provider who had a direct relationship with Dr. Richard Sackler as one of the first providers of OxyContin abuse related to false marketing and medication mismanagement . As Fairfield County CT residence, we were at the epicenter of the opioid crisis. The claim form submitted on 6/28/2020 explicitly provides irrefutable evidence of the actions of the debtor, namely, Dr. Richard Sackler colluded directly with Dr. Silvia Knoploch of Norwalk CT. The claim form further stipulated that, her pain mismanagement with Dr.Knoploch continuously over prescribed opioids for the period 2006 to 2024. Again, this is completely contrary to the bench rulings fallacious assertion that "extensive research would be required..." In fact, 2020 proof of claim form, listed Silvia Knoploch state of Connecticut Department of Public health pharmaceutical ID number on the proof of claim form. Evidence based discovery details this one pain management provider's direct criminal culpability with Dr. Richard Sackler inextricably tied to the actions of the Debtor, Purdue Pharma LLC. The evidence based nature of the 2020 proof of claim form flatly contradicts Judge Lane's broad characterization that "extensive ....". UCC's flagrant disregard of my Memorandum of Understanding sent to Atty Preis(MOU was emailed to Atty Preis 9/1/2025-see below exhibit) further supports UCC breach of fiduciary responsibilities in the furtherance of the Dismissal decree. Proprietary interest of my late wife's personal injury claim diametrically counters the false premise of the Bench Ruling. In the ruling it claims >> ** note: direct past the ruling then insert the following Claims and interests are inherently different, and CANNOT be lumped together in the same class. A "claim" is defined in Section 101 of the Code. "Interest" is NOT defined in the Code, but it amounts to a proprietary right, such as common stock**

**or some other equity interest. As a general rule, classification should be based on the legal nature of the claim or interest. Claims do not need to be precisely the same. In fact, a plan proponent can choose to create other classes of claims based on reasonable distinctions between claims.**

***Additional Counter argument comments***

**In order to mount a successful challenge to the Bench Ruling it is necessary to to compare the explicit nature of the personal and nonpersonal injury combined claim on Pages 5 and 7 of the 2020 proof of claim form as asserted by Prime Clerk. The false premise state that :"extensive research... Ignores the reality UCC lack of oversight in managing claims with asserted values which represent only 10% of all claims submitted. The other 90% asserted no value to their claims. Most significantly the 10% who had asserted values were widely over inflated attributing to the Plan Support Letter proclamation, that it would be impossible to meet the *"trillions of dollars in claims"*.**

**I hope that I have provided the preponderance of evidence necessary for the appellate process to examine the validity of my economic damage argument, which was categorically dismissed.** ****EMPHATICALLY IMPORTANT NON-PERSONAL INJURY DESIGNATION ON 2020 PROOF OF CLAIM FORM (SEE BELOW pg5)***

****"Specificity of Claim"*** ***C.See above pdf "Electronic Proof of Claim" and the following sections of Proof of Claim Form}***

****10. Describe the basis for your claim, including all alleged causes of action, sources of damage, etc., You are asserting against the Debtors.
Attach additional sheets if necessary.(see the following narrative) "Jane A. Redwood hereby seeks remuneration for compensatory damage resultant from abusive pain management regimen under the authority/care of Dr. Sylvia Knoploch(Rehabilitation Consultants of Norwalk CT/CT license#027889). Protracted dosing of OxyContin 60MG/180 tablets, Morphine Sulfate 5 MG, Trazodone MG 100, Zolpiem 10MG, Benzodialipans for treatment of RSP/Pain***

***Management Syndrome since 2007 to present. Be advised of Hartford Hospital ED admission on 6/19/2020; Safe discharge planning to The Institute of Living for behavioral health/titration detoxification treatment for opioid-induced psychosis. Notably, PCP Dr. Martin Perlin of Westport CT was complicit with Dr. Knoploch's pain management regimen prior to 2007. The present catatonic condition requires a dual modality of care; Hartford Hospital/Institute of Living safe discharge plan includes probable LTC placement. Admission to LTC Apple Rehab of Rocky Hill CT is pending.***

****I, Keith E. Redwood Jr., opted for early retirement from State of CT DSS(May 2013)due to primary caregiving responsibilities for Jane A. Redwood."***

to Purdue

***Attention: Purdue Pharma Info Supervisor, Earl:Re: Jane A. Redwood Claim#57858***

**Part 5: Other (Non-Personal Injury) Opioid-Related Claims**

| | |
|---|---|
| 15. **Do You believe You have any other claims against the Debtors based on or involving the Debtors' production, marketing and sale of Purdue Opioids that are not based on a personal injury?** | ☐ No.<br>☑ Yes. If yes, please describe the nature of the claim(s) (Attach additional sheets if necessary).<br>Jane A . Redwood hereby seeks remuneration for compensatory damage resultant from abusive pain management regimen under the authority/care of Dr. Sylvia Knoploch(Rehabilitation Consultants of Norwalk CT/CT license#027889). Protracted dosing of OxyContin 10 MG, Morphine Sulfate 5 MG, Trazaodone 100 MG,Zolpiem 10 MG, Benzodialipans for treatment of RSD since 2007 to present. Be advised of Hartford Hospital ED admission on 6/19/2020. Safe discharge planning to The Institute of Living for bevavioral health/titration detoxification treatment for opiod induced psychosis. Notably, PCP Dr. Martin Perlin of Westport CT was complicit with Dr. Knoploch pain management regimen prior to 2007. Present catatonic condition requires dual modality of care;Hartford Hospital/ Institute of case management includes probable LTC placement. Admission to LTC Apple Rehab of Rocky Hill CT pending. |
| 16. **How much is the claim?** | $ $10,000,000.00 or<br>☑ Unknown. |

## Claims vs Interest, Jane's Etiology

**Claims and interests are inherently different, and cannot be lumped together in the same class. A "claim" is defined in Section 101 of the Code. "Interest" is not defined in the Code, but it amounts to a proprietary right, such as common stock or some other equity interest. As a general rule, classification should be based on the legal nature of the**

**claim or interest. The claims do not need to be precisely the same. In fact, a plan proponent can choose to create other classes of claims based on reasonable distinctions between claims.**

**I contend that my economic interest in my wife's personal injury damage affords me a proprietary claim based upon evidence provided on the 2020 Proof of Claim Form. The claims administrator, Prime Clerk, acknowledged the economic damage claim in the amount of $10 million, which was quantifiably verified based on my primary caregiving for the period 2006 to 2024. As a former CT DSS Medicaid Paralegal the care I provided effectively prevented placement in a long-term care facility at a Per Diem Cost of Care $500 . The proof claim form submitted on 6/28/2020 explicitly detailed my wife's opioid induced comorbidities, which I seek compensatory remuneration as asserted by Prime Clerk. On page 67 of the Bench Ruling docket #8270.The court proclaimed : "See Redwood Obj. [ECF No. 8132; 7946]. But this objection ignores the conscious and reasonable decision in the Plan to avoid a compensation program for economic damages that would "require extensive documentation, individualized analysis, and would generate substantial administrative costs—thereby depleting the funds and causing delay in compensation." This characterization by the Court is patently false as evidenced on page 5 on the Proof of Claim form dated 6/28/2020. (Note transcribe my draft notes regarding UCC overpaid ineptitude in examining the validity of my claim in 2020.) Futhermore,** the **Bench ruling's carte blanche dismissal of economic damage claims contending determination of such claims would require" require extensive documentation, individualized analysis and would generate substantial administrative cost, thereby depleting funds, causing delay in compensation". This statement posits the basis of my counter argument. The structure of the 2020 proof of claim form explicitly allows claimants to assert compensatory damage values for nonpersonal injury harms caused by the Debtor. The claims administrator, Prime Clerk, combined the$ 10 million Personal Injury and $10 million Non-Personal Injury claim**

**as a $20 million Oher General Unsecured creditor claim based upon "substantially similar" nature of the claim as per bankruptcy policy 1122. An economic injury value was provided on the Proof of Claim form which explicitly designated a $10 million value for uncompensated primary care giving for my late wife whilst in pain management with Dr. Silvia Knoploch for the period 2006 to 2024. The quantifiable value in the assered amount of $10 million was supported by clinical proof of her opioid injuries on the 6/28/2020 proof of claim form. Therefore the $10 million tangible value represents Primary Caregiving cost of care for 18 years. In the Bench Ruling on page 57, Judge Lane stated" require extensive documentation, individualized analysis, and generate substantial administrative cost – thereby depleting the funds and causing delay in compensation". Again had UCC/Akin Gump(UCC) examined the claim in 2022 as exhaustively demanded the claims validity would have been confirmed. Consequently treatment and classification determination of the claim would have been rendered as a "Special Circumstances" per provisions contained in 1122. Again, the UCC was remiss in their failure as representatives of all classes of creditors to timely recognize of my economic damage claim as promulgated in the Disclosure Statement.**

**<u>Note B. Classification of Claims and Interests(Disclosure Statement, Article IV page 194 of 644)</u>**

***Section 1123 of the Bankruptcy Code provides that a plan must classify the claims and interests of a debtor's creditors and equity interest holders. In accordance with section 1123 of the Bankruptcy Code, the Plan divides Claims and Interests into Classes and sets forth the treatment for each Class (other than Administrative Expense Claims and Priority Tax Claims,which pursuant to section 1123(a)(1) of the Bankruptcy Code need not be and have not been classified). The Debtors also are required, under section 1122 of the Bankruptcy Code, to classify Claims against and Interests in the Debtors (except for certain claims classified for administrative convenience) into Classes that contain Claims and Interests that are substantially similar to the other Claims and Interests in such Class.***

***The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the claim holder or interest holder agrees***

***to a less favorable treatment of its claim or interest. The Debtors believe that they have complied with such standard. If the Bankruptcy Court finds otherwise, however, it could deny confirmation of the Plan if the holders of Claims and Interests affected do not consent to the treatment afforded them under the Plan.***

***A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation and Distributions under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest is classified in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent any portion of the Claim or Interest qualifies within the description of such other Classes; provided that, to the extent any Claim satisfies the definition of a Shareholder Claim, a Co-Defendant Claim or an Other Subordinated Claim, such Claim shall be classified as such, notwithstanding that such Claim may satisfy the definition of another type of Claim. A Claim or Interest is also classified in a particular Class for the purpose of receiving Distributions under the Plan only to the extent such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released or otherwise settled prior to the Effective Date. In no event shall any Holder of an Allowed Claim be entitled to receive payments under the Plan that, in the aggregate, exceed the Allowed amount of such Holder's Claim.***

***The Debtors believe that the Plan has classified all Claims and Interests in compliance with the provisions of section 1122 of the Bankruptcy Code and applicable case law. It is possible that a holder of a Claim or Interest may challenge the Debtors' classification of Claims and Interests and that the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed. If such a situation develops, the Debtors intend, in accordance with the terms of the Plan, to make such permissible modifications to the Plan as may be necessary to permit its confirmation. Any such reclassification could adversely affect holders of Claims by changing the composition of one or more Classes and the vote required of such Class or Classes for approval of the Plan. EXCEPT AS SET FORTH IN THE PLAN, UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RESOLICITATION,ACCEPTANCE OF THE PLAN BY ANY HOLDER OF A CLAIM OR INTEREST PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO***

***THE PLAN'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.***

## Tutorial Notes on Appeals Process

**Understanding the Bench Ruling Dismissal/Rejection process prompting a formal Appeal a) The first step in the adjudicating a Pro Se objection is a Bench Ruling by Judge Lane to categorically issue a "blanket" dismissal/rejection ALL 20 movants Objections. The judge then waits for submission of Formal Appeals(14 days from 11/18).The objecting party has the initial "burden of putting forth evidence sufficient to refute the validity of the claim."By producing evidence equal in force to the prima facie case" an objector can negate a claims presumptive legal validity, thereby shifting the burden back to the claimant to ' prove by a preponderance of evidence that under applicable law the claim should be allowed". in other words "once the prima facie validity of a claim is rebutted , "it is for the claimant to prove his claim, not for the objector to disprove it." The Appeal then goes to the Second Circuit as a prelude to Writ of Certiorari(SCOTUS)**

***Secondary Argument related to UCC Dereliction as the Fiduciary***

**A. Treatment of claims by the claims administrator, Prime Clerk/Kroll ,establishes the framework for the UCC to adjudicate inter-creditor disputes.This critical relationship affords the UCC fiduciary responsibilities in representing the interest for ALL classes of creditors(Including nonpersonal injury claimants). The fundamental basis of my appeal to the court relates to the role of the UCC in the adjudication and classification process for all classes of creditors in the Purdue Pharma bankruptcy proceedings. I contend that a dispute over classification of a claim and attendant treatment of a claim in which a dispute should resolved within the confines of the Committee(as an inter-creditor dispute) and NOT by a presiding judges' judicial ruling**

**.Regretfully, the derelict actions of the UCC has resulted in Pro Se Appellant proceedings .**

***<u>Critical Analysis of Bench Ruling</u>***

**The Adjudicative process in the resolution of Pro Se objection Motion in the forum of a Bench Ruling resulted in categoric rejection of all Pro Se movants. The bench ruling divided Pro Se objectors into four categories. All of which were categorically dismissed. My specific motion was placed in the treatment in classification of claims as per 1122. The complexities of my atypical claim I contend rests within the deliberative processes in treatment and classification of claims by the UCC and not a part of the Bench Ruling process required for Consummation of The Plan. I contend that adjudication of my claim rest with the UCC/Akin Gump as the fiduciary for inter-creditor disputes. Claims administration falls under the purview of Prime Clerk/Kroll and as such falls under the control of the UCC. Prime Clerk/Kroll asserted my $10 million non-personal injury/economic damage claim based upon the 6/28/2020 proof of claim form. In the Bench Ruling , Judge Lane argued that due to my atypical particularized claim would've warranted, excessive administrative cost associated with such claims and under the bankruptcy process would be unmanageable and impractical, therefore precluded/extinguished. The original claims agent Prime Clerk asserted a $20 million value as an other general unsecured creditor claim. Again, the 2020 claim form allowed for submission of non-personal injury claims.**

***IMPORTANT:*** **My claim in 2022 was brought to the attention of Akin Gump(UCC), Alan Carillo for examination of claim # 57858.** ***(*NOTE: See docket#7865 for details of Atty Carrillo communications*** **) For four years there was no response from Akin Gump until Attorney Preis acknowledge the economic damage claim in August 2025 .At that point, he prejudicially " extinguished" all economic damage claims as confirmed by the Preis Letter*(See Docket#8225 entered 11/12/2025 as the 'Preis Letter )*. The UCC simply ignored my MOU prompting the Pro Se Objection Motion which I maintain is the incorrect forum for Inter-Creditor disputes.**

***<u>Harrington Effect on 2020 vs 2025 Claim Form</u>***

**The de facto exclusion of economic damage claims is a direct violation of the provisions of the Harrington Ruling. Examination of the 2020 proof of claim form assertion of a $10 million non-personal injury claim under the terms of the 2021 Disclosure Statement would categorically release nonconsensual third-party release of a Non-Debtor claim. The Old plan in effect precluded non-economic damage claims until the 2024 Harrington Rule leading up to November 14 Confirmation Order.**

***<u>Broad Critique of Dismissal</u>***

**The' Dismissal decision'with respect to my economic damage claim subverts foundational principles of bankruptcy as a fair arbiter of the rights of creditors. UCC failures have now been codified by the rulings by Judge Sean Lane. Prime Clerk assertion of claim # 57858 as an Other General Unsecured Creditor represents as a COMBINED Personal and Non-Personal injury value of $20 million. In 2022 Purdue Kroll became the claim administrator(previously y Prime Clerk) validated the "substantially similar" composition of claim in the accord with provisions of bankruptcy code 1122. On 9/18/2025(docket# 7865"Improper Classification of Non-Personal Injury Claims") the Court was then asked to examine the 2020 proof of claim form listing $10 million personal injury and $10 million non-personal injury components of the claim. My docket covering " granular analysis of the claim" regarding to the UCC authority as fiduciaries for all creditors. In August 2025, I sent Attorney Arik Preis a Memorandum of Understanding, MOU explicitly requesting examination of this complex claim months before the November 2025 Confirmation Hearing in anticipation of my legal challenges leading up to the November Confirmation Hearing. UCC in effect abrogated their responsibilities to manage and resolve an Inter-Creditor Disputes instead deferring the task to Judge Lane to resolve at the Confirmation Hearing. Again the claim should have been examined by the UCC BEFORE the Confirmation Hearing. AGAIN breach of their fiduciary responsibility. As the arbiter for all stakeholders, UCC/Akin Gump fiscally mismanaged the interest of ALL creditors . The "Preis Letter docket sent to the court**

**on 11/12/2025(docket#8225) serves as demonstrable proof of the UCC's incompetence in claims management. Consequently , the prejudicial actions of Akin Gump by deferring Treatment of Creditors claim for the Court to decide in response to a Pro Se Objection conflates my disagreement with the UCC as 'general' objection to the Confirmation Order. Dereliction and general incompetencies of the UCC/Akin Gump namely Atty Preis categorically extinguished economic damage claims ALLOWED per provisions of the Disclosure Statement. I believe the prejudicial actions of the UCC must be subject to the US Trustee/DOJ oversight committee.**

***IMPORTANT* The 2025 "Harrington Ruling" PROOF OF CLAIM FORM***

**The language contained in the Disclosure Statement allows for economic damage claims to be asserted with the terms and conditions described on the Proof of Claim form submitted on 6/28 /2020. Subsequently the 2025 proof of claim form is EXCLUSIVELY a Personal Injury claim form and does not allow nonpersonal injury/economic damage claims to be asserted on th e proof of claim form. The modified existing plan excludes nonpersonal injury claims yet the Disclosure Statement allows for economic damage claims. This inconsistency is inferred in the Bench Ruling: "But that this objection ignores...." The 2020 proof of claim forms allows claimants to assert an economic damage value to a claim. I hold that the predicate proffered by Judge Lane presupposes that the terms of the 2020/2021 Prior Plan ARE NOT contractually binding under the terms of the New Plan. I contend that the Disclosure Statement of 2021 AND the Disclosure Statement of 2025 ALLOWS economic damage claims yet the 2025 Proof of claim form excludes Non-Personal Injury entries.**

--

**Docket#8386(filed 12/10/2025) Amanda Morales' Amended Motion for Contempt of Court***

**Be advised that as the ONLY Pro Se Economic Damage movants holding tangible/quantifiable values asserted on the 2020 Proof of Claim Form defines the fundamentaL basis of my cohesive appeal to the Higher Court. I ask the court to exercise their "Persuasive Authority' to create a sub-set class of Other General Unsecured Creditors as allowed in the Disclosure Statement per provisions of 1122(the principal argument of my appeal).**

***Notes from my journal on 3/17/2026 supporting Pro Se Economic Damage class of creditors >>>***

**The specificity of the Morales economic damage claim lists on her Proof of Claim Form a quantifiable value of $826,638**.00. **Claims have been asserted under range of legal theories. Comparatively, my Economic Damage claim is predicated on the interpretation of Quantum Economics. The derivative damage I suffered in terms of proprietary interest in my wife's personal injury claim is the basis of my asserted $10 million other general unsecured creditor claim. Very importantly, provisions promulgated in the Disclosure Statement allow claimants to show a rational legal basis that justifies a separate classification of similar claims.**

- **Proof of Claim Forms: Claimants are instructed to fill out "General Opioid Proof of Claim" forms, where they describe the injury and provide supporting documentation for the economic damages. While some individual personal injury claims are "fixed" (e.g., $3,500 to $48,000 range in early plans), the revised 2025 Plan approved by the Bankruptcy Court allows for specific quantification of claims, including those involving specific economic damages related to addiction treatment or the death of a family member.**

**--*Note: Amanda Morales Contempt of Court Motion (Docket#8365)12/10/2025>>>**

AMANDA MORALES

PLANTIFF

Amended Motion for Contempt Of Court SECTION 727(a)(6)(A)

Refusal to comply with a court order both the bankruptcy court and the debtors Section 727(a)(6)(A) of the Bankruptcy Code provides in relevant part that “[t]he court shall grant the debtor a discharge, unless, the debtor has rise to the question what does it mean to refuse to obey a lawful order of the court? Courts have come to different conclusions

## *Comprehensive Damage Analysis*

**Economic Damages**

**$826,638**

Quantifiable financial losses

**Non-Economic Damages**

**$2,000,000**

Pain, suffering, loss of companionship

**Lost Income**

$624,337

**Lost Benefits**

$187,301

**Medical Expenses**

$5,000

**Funeral Costs**

$10,000

**Non-Economic Damages**

**Non-Economic Damages**

Loss of Love, Comfort, Care, Assistance, Protection and Emotional Support

$70,000 x 20 years =$ 2,000,000

**Grand Total $3,306,552 + punitive damages**

**My calculations are based off a 20 year period had my father not died would have been 57 I do believe he would have lived to at least the age of 65 but my calculations were done based on 20 additional years of lost economic damages and non economical damages. If the court wants to make changes to these amounts to reflect compensation for 25 years the court should do that if the court finds this to reflect a more accurate and fair amount owed to me the victim.**

***<u>VIOLATIONS OF HARRINGTON RULING</u>***

**I contend that the plan violates provisions contained in the Disclosure Statement which permits economic damage claims(ie Holders of Equity Interest) recognizing that it would not be able to confirm the plan if it included economic damage claimants as an impaired class. The plan was confirmed, despite inclusion of economic damage creditors which is a violation of its fair and equitable treatment standard. The bench ruling delivered by Judge Lane(docket#8270,page 58) states:" Keith Redwood objects that the claim form does not permit him to address the economic damages he suffered as a personal injury claimant.See Redwood Obj. [ECF No. 8132; 7946]. But this objection ignores the conscious and reasonable decision in the Plan to avoid a compensation program for economic damages that would "require extensive documentation, individualized analysis, and would generate substantial administrative costs—thereby depleting the funds and causing delay in compensation"**

**NOTE >> See the following text draft notes regarding Amanda Morales contempt motion. The objections raised by Pro Se movant, Amanda Morales, closely parallels (in terms of substance and legal reasoning ) the basic predicate of my economic damage motions.**

**I asked the court to closely analyze the Morales dockets in the determination of a distinct class of creditors as a group, (as in class)of Pro Se movants as we were categorized in Judge Lane Bench Ruling page 58(e.g. "D. Objections Related to Classification of Claims"). I believe such classification comports with the definition of Special Circumstance class of creditor.**

**Journal Notes 12/11/2025 at 4:56am>> The Amanda Morales, contempt of court filing is a legal strategy, which potentially could to derail the Confirmation Order. Having read the motion it is clearly designed by a very clever Attorney(contrary to amateurism of a Pro Se movant)who cites bankruptcy codes and provisions as evidence by 5 counts of contempt of court.The account that pertains to Economic Damage claims is of especial interest to me since I'm composing an appeal summary attempting to have the Court create a class of creditors solely based**

**upon a "Pro Se Special Circumstance Group of Creditors " . The framework of my appeal will incorporate elements of Amanda economic damage strategy in an effort to convince the court that the "undefined class of creditors" would be conditioned on a claimants astute ability and understanding of provisions contained in Disclosure Statement covering treatment of Economic Damage claims.It is unclear if the Morales 2020 Proof of Claim forms explicitly designated an Economic Damage amount of $826,638.00 as referenced in docket#8386. I ask the Court to exercise its persuasive authority using evidenced based discovery standards in evaluating the merits of the Morales claim .The Court has the authority to determine if the Morales economic damage claim constitutes a 'special circumstance class of creditor' based my substantially similar economic damages as referenced in Judge Lane's Bench Ruling(*docket#8270"Objections Related To Classification of Claims").The court can make a *"novel" determination in creating Pro Se Economic Damage Class of Creditor as a distinctly "*atypical class of creditor as per substantially similar bankruptcy rules** *1122(a) 1122 (b)*,[**see below Phillips Classification of Claims and interest for the other bankruptcy codes**].

**Our joint economic damage claims and the attendant harm caused by the actions of the debtor directly aligns with Pro Se Appellee Amanda Morales which meets the basic tenets of a "group" as in Class of Creditor with "substantially similar" proprietary interest. The class therefore is solely defined in principle and in practice by effectuation of a Pro Se Objections Motion to Confirmation of the Plan. The unique makeup of this group of creditors with substantially similar interests is only possible by their Pro Se appellant actions. Therefore, the Court has the authority to determine appropriate treatment and classification as a '"Group"(i.e. class of creditor).**

**Central to my argument, which exposes the structural flaws of the plan is failure to recognize the treatment and classification of economic damage claims as argued by movant Amanda Morales as the principal theme of**

**docket # 8270. The framework of the New Plan unfairly prejudices an entire class of creditors as wittingly engineered by the UCC/Akin Gump(UCC). Their actions systematically extinguished economic damage claims resulting violations of due process and illicit gerrymandering.**

**On September 2, 2025 lead Attorney for the UCC Arik Preis telephoned me directly regarding my MOU emailed to him on 9/1/2025(see below exhibit). The purpose of the call was to reinforce Plan Support Letter.**

***--COMBINATION of TEXTNOTES from 12/7 /2025 >>>>***

***Keith Redwood <kthredwood@gmail.com>*** ***Sun, Dec 7, 5:08 PM (5 days ago)***

***to me***

**I respectfully asked the Court to exercise its persuasive authority in consideration all pro se movants economic damage claims which Judge Lane, November Bench Ruling categorically dismissed. My Pro Se Economic damage claim as well as Pro Se Amanda Morales as cited in the dismissal ruling constitutes a potential 'special circumstance class of creditor' based upon the courts determination and treatment 'Pro Se Objection class of creditor' as a distinctly "atypical class of creditor as per bankruptcy rule 1122. SDNY guidelines, governing courts ability to exercise persuasive authority in creation of our separate class of creditors, based on a particularized examination of a special circumstance classification. * Next insert docket related to my discussion discussing "astute creditor ability to submit a claim which was designated on the 2020 proof of claim form. This will support the courts preponderance of evidence based discovery of non-personal injury claims as designated on page 5 of the proof of claim form.**

**<u>Tangible Proof of $10,000,000 Economic Damage</u>**

**Loss of earned income directly resulted from caregiving is verifiable by proof of Social Security wage verification for the period 2013 to 2024, which coincides with the period of uncompensated primary care giving from 2013 to 2024 >>*Draft Text Notes: >>>> The publicly available excerpts of the Purdue Pharma Disclosure Statement dated June 3, 2021, and related plan documents, do not explicitly reference "economic damage claims" as a defined term. However, the substance of such claims is addressed within the provisions for Public Entity Claims and General Unsecured Claims, which may encompass "economic loss claims" or "non-personal injury claims".**

***<u>NOTE: Additional comments supporting "Special Circumstances"</u>***

**A.Most significant challenge, I face in arguing the technical eligibility for treatment of claim- equitable treatment of all creditors in a specific/respective class of creditors. Per bankruptcy policies, provisions of 1122.A counter-analysis that addresses and refutes the Court's promulgation of equitable treatment of all creditors within a specific class.**

**B. The improbability of a data extraction to algorithmically determine the number of potential nonpersonal injury/economic damage claimants from the 2020 proof of claim form particularly those who stipulated a " tangible dollar amount"is practically impossible. Consequently, this potential 11 C General Unsecured Creditor, "special circumstance" claimant would also have to demonstrate recognition of their claim akin to my Pro Se motion objection. I ask the court to evaluate my claim related to the Priority Rule in terms of application of provisions contained in 1122. The Court has the authority to exercise an individualized ranking**

**of a claim if it's unable to determine other potential Economic Damage creditors.**

***EMAIL NOTES from 12/7/2025"Meteoric Revelation", THE PLAN SUPPORT LETTER*>>>>>>**

**Classification of creditor claim as adjudicated by a court determination of a distinct subclass of other general unsecured creditor, in response to a pro se movant's appeal. A court determined pro se other general creditor class would comport with bankruptcy code 1122 by allowing a judge to exercise his authority as the bankruptcy code does not define interest, but only defines class. Interest as in proprietary interest of an economic damage claim it's not codified in chapter 11 bankruptcy policy. The basis of my argument hinges on the definition of Quantum Economics since this highly particularized economic damage claims as supported by C-sections discussed in Treatment of Claims, Disclosure Statement Article 1,3,4,5 and 6 which cover Definition, Classification, Treatment, Implementation, and Distribution of claim and 'Interest'. I ask for the Courts for a forensic interpretation of "Interest" due to ambiguity in the language covering treatment of Economic damage interest (as in proprietary interest ).**

***EMAIL NOTES from 12/7 *VERY IMPORTANT*>>>>***

***Article V Draft Notes(page 309 of 644 of Disclosure Statement)***

***Inbox***

K

***Keith Redwood <kthredwood@gmail.com>*** ***Sun, Dec 7, 4:08 PM (5 days ago)***

*to me*

***>VOTING REQUIREMENTS; ACCEPTANCE AND CONFIRMATION OF THE PLAN***

***General AI Tutorial (Lexology) on Plan Confirmation Process***
***The following is a brief summary of the Plan confirmation process. Holders of Claims and Interests are encouraged to review the relevant provisions of the Bankruptcy Code and/or consult their own attorneys.***

A. ***Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a confirmation hearing. Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan.***

B. ***Section 1129 of the Bankruptcy Code requires that, in order to confirm the Plan, the Bankruptcy Court must make a series of findings concerning the Plan and the Debtors, including that (i) the Plan has classified Claims in a permissible manner; (ii) the Plan complies with applicable provisions of the Bankruptcy Code; (iii) the Plan has been proposed in good faith and not by any means forbidden by law; (iv) the disclosure required by section 1125 of the Bankruptcy Code has been made; (v) the Plan has been accepted by the requisite votes of holders of Claims (except to the extent that cramdown is available under section 1129(b) of the Bankruptcy Code); (vi) the Plan is feasible and confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors unless such liquidation or reorganization is proposed in the Plan; (vii) the Plan is in the "best interests" of all holders of Claims in an impaired Class by providing to such holders on account of their Claims property of a value, as of***

*the Effective Date, that is not less than the amount that such holders would receive or retain in a chapter 7 liquidation, unless*

***EMAIL NOTES FROM 12/7 "DISCLOSURE STATEMENT page 194 of 644***

***B. Classification of Claims and Interests(Disclosure Statement,Article IV page 194 of 644)***

***Section 1123 of the Bankruptcy Code provides that a plan must classify the claims and interests of a debtor's creditors and equity interest holders. In accordance with section 1123 of the Bankruptcy Code, the Plan divides Claims and Interests into Classes and sets forth the treatment for each Class (other than Administrative Expense Claims and Priority Tax Claims,which pursuant to section 1123(a)(1) of the Bankruptcy Code need not be and have not been classified). The Debtors also are required, under section 1122 of the Bankruptcy Code, to classify Claims against and Interests in the Debtors (except for certain claims classified for administrative convenience) into Classes that contain Claims and Interests that are substantially similar to the other Claims and Interests in such Class.***

***The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the claim holder or interest holder agrees to a less favorable treatment of its claim or interest. The Debtors believe that they have complied with such standard. If the Bankruptcy Court finds otherwise, however, it could deny confirmation of the Plan if the holders of Claims and Interests affected do not consent to the treatment afforded them under the Plan.***

***A claim or interest is placed in a particular Class for all purposes, including voting,***
***confirmation and Distributions under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest is classified in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent any portion of the Claim or Interest qualifies within the description of such other Classes; provided that, to the extent any Claim satisfies the definition of a Shareholder Claim, a Co-Defendant Claim or an Other Subordinated Claim, such Claim shall be classified as such, notwithstanding that such Claim may satisfy the definition of another***

*type of Claim. A Claim or Interest is also classified in a particular Class for the purpose of receiving Distributions under the Plan only to the extent such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released or otherwise settled prior to the Effective Date. In no event shall any Holder of an Allowed Claim be entitled to receive payments under the Plan that, in the aggregate, exceed the Allowed amount of such Holder's Claim.*

*The Debtors believe that the Plan has classified all Claims and Interests in compliance with the provisions of section 1122 of the Bankruptcy Code and applicable case law. It is possible that a holder of a Claim or Interest may challenge the Debtors' classification of Claims and Interests and that the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed. If such a situation develops, the Debtors intend, in accordance with the terms of the Plan, to make such permissible modifications to the Plan as may be necessary to permit its confirmation. Any such reclassification could adversely affect holders of Claims by*

*changing the composition of one or more Classes and the vote required of such Class or Classes for approval of the Plan. EXCEPT AS SET FORTH IN THE PLAN, UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RESOLICITATION,ACCEPTANCE OF THE PLAN BY ANY HOLDER OF A CLAIM OR INTEREST PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE PLAN'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.*

***EMAIL NOTES FROM 11/29 "QUANTUM ECONOMICS"***

**Definition of Quantum of Economics**

1. *2. a required or allowed amount, especially an amount of money legally payable in damages."the court must determine the quantum of compensation due"*

***The classification of claims and interests in a Chapter 11 bankruptcy case is governed by Section 1122 of the Bankruptcy Code. The ability of a plan proponent to group certain claims in certain categories is a powerful tool in the confirmation process, since it can have a direct effect on the voting and objection process.***

***While claims and interests are supposed to be "substantially similar" to each other in theory, in practice this standard can present many complexities. Must all claims of the same type be placed in the same class? When can substantially similar claims be placed in separate classes? Should legal, or factual, standards be controlling?***

***Plan are also required to provide the same treatment for each claim or interest within each class, unless the holder agrees to different treatment of its claim or interest. Being able to treat different creditors may in some cases be related to the ability to classify them differently. As a general rule stated above, claims and interests within a class must be "substantially similar" to each other. This does not mean—and the Code does not address this issue—that all substantially similar claims must be placed in the same class. In Re Dow Corning Corp., 280 F.3d 648, 661 (6th Cir. 2002).***

***Courts generally do not require this. However, a plan proponent in this situation must present a reasonable justification for such separately classifying claims that are substantially similar. In Re Armstrong World Industries Inc., 348 B.R. 136 159 (Bankr. D. Del. 2006).***

***Claims and interests are inherently different, and cannot be lumped together in the same class. A "claim" is defined in Section 101 of the Code. "Interest" is not defined in the Code, but it amounts to a proprietary right, such as common stock or some other equity interest. As a general rule, classification should be based on the legal nature of the claim or interest. The claims do not need to be precisely the same. In fact, a plan proponent can choose to create other classes of claims based on reasonable distinctions between claims.***

*>>> Whether claims are "substantially similar" is normally reviewed under the "clearly erroneous" standard. The court will look at the reasons behind the classification and make sure that such reasons comport with the primary functions of the Bankruptcy Code. The Federal Rules of Bankruptcy Procedure here provide some guidance on the matter. Rule 3013 states that on motion, the Court may determine the appropriate classification of a claim.*

**I respectfully ask the Court to exercise its persuasive authority in adjudicating Economic Damage claims dismissed by Judge Lane The November 22 Bench Ruling categorically dismissed m y Pro Se Economic damage claim as well as Pro Se appellee Amanda Morales (as cited in the dismissal ruling) constitutes a potential 'special circumstance class of creditor' based on the courts' determination of our "group as in two" as a distinct, atypical class of creditor as per bankruptcy rule 1122. SDNY guidelines, governing courts ability to exercise, persuasive authority in creation of our separate class of creditors is based on a particularized examination of a special circumstance classification. (*Note: See docket#8132 entered 10/31/2025"Persuasive Argument regarding Economic Damage Claim").*As discussed in docket#8132 the Court holds the power to adjudicate a claims based on a claimants' "astute ability" to detail tangible monetary damages caused by the Debtor. The 2020 Proof of Claim form allows specificity of actual Non-Personal injury damage amounts as direct claims against the Debtors per provisions in the Disclosure Statement.Docket#8078-"Granular Analysis of Codes 1122(a) and 1122(b)"-supports the Court's authority to use the preponderance of 'evidence based discovery' listed on page 5 of the 2020 Proof of Claim form (asserted by Prime Clerk, Claims Administrator).**

***Source Material for a Higher Court Review***

***Phillips and Thomas LLC, Attorneys At Law(Article posted 9/17/2025)***

***Classification Of Claims And Interests In Chapter 11 Bankruptcy Cases***

***Posted on September 17, 2014***



***The classification of claims and interests in a Chapter 11 bankruptcy case is governed by Section 1122 of the Bankruptcy Code. The ability of a plan proponent to group certain claims in certain categories is a powerful tool in the confirmation process, since it can have a direct effect on the voting and objection process.***

***While claims and interests are supposed to be "substantially similar" to each other in theory, in practice this standard can present many complexities. Must all claims of the same type be placed in the same class? When can substantially similar claims be placed in separate classes? Should legal, or factual, standards be controlling?***

***Plan are also required to provide the same treatment for each claim or interest within each class, unless the holder agrees to different treatment of its claim or interest. Being able to treat different creditors may in some cases be related to the ability to classify them differently. As a general rule stated above, claims and interests within a class must be "substantially similar" to each other. This does not mean—and the Code does not address this issue—that all substantially similar claims must be placed in the same class. In Re Dow Corning Corp., 280 F.3d 648, 661 (6th Cir. 2002).***

***Courts generally do not require this. However, a plan proponent in this situation must present a reasonable justification for such separately classifying claims that are substantially similar. In Re Armstrong World Industries Inc., 348 B.R. 136 159 (Bankr. D. Del. 2006).***

***Claims and interests are inherently different, and cannot be lumped together in the same class. A "claim" is defined in Section 101 of the Code. "Interest" is not defined in the Code, but it amounts to a proprietary right, such as common stock or some other equity interest. As a general rule, classification should be based on the legal nature of the claim or interest. The claims do not need to be precisely the same. In fact, a plan proponent can choose to create other classes of claims based on reasonable distinctions between claims.***



***A plan must classify Section 507(a) priority claims other than administrative expense claims, involuntary gap claims, and unsecured tax and customs duties claims (i.e., Sections 507(a)(2), (a)(3), and (a)(8)). Priority claims should be separately classed because such claims are normally very similar in nature. Regarding secured claims, the analysis will generally revolve around: the nature of the collateral, priority, and the agreements among creditors regarding subordination, if any.***

***Administrative convenience classes are an issue of some note. Section 1122(b) permits a plan proponent to designate a separate class for unsecured claims that happen to be less than a specified dollar amount, provided that a court approves this as being reasonable and necessary. Section 1122(b) does not forbid the creation of more than one convenience class. As long as such a scheme is reasonable and necessary, it is permitted.***

***One interesting issue is whether an unsecured deficiency claim created by Section 1111(b) should be classified with other unsecured claims. A majority of courts has held that an unsecured deficiency claim created under Section 1111(b) cannot be classified separately from other unsecured claims. There is a minority view that holds differently, for reasons that are not altogether convincing.***

***Whether claims are "substantially similar" is normally reviewed under the "clearly erroneous" standard. The court will look at the reasons behind the classification and make sure that such reasons comport with the primary functions of the Bankruptcy Code. The Federal Rules of Bankruptcy Procedure here provide some guidance on the matter. Rule 3013 states that on motion, the Court may determine the appropriate classification of a claim.***

## "Clearly Erroneous Rule"

*Whether claims are "substantially similar"is normally reviewed under the "clearly erroneous standard. eg*

*The standard of review for claims being "substantially similar" is typically under the clearly erroneous" standard. This means that if a court finds that a claim is not substantially similar, it will not be placed in the same class as claims that are substantially similar. However, if there is a reasonable distinction that justifies the legal separation claims, they may be placed in different classes. The court will review the issue under the "clearly erroneous" standard, which means that the court will not reverse a decision unless it finds that the decision was made on unreasonable grounds or without proper consideration of the circumstances.*

## *CORRUPTION AND RACKETEERING BY UCC/AKIN GUMP AND DEBTOR/DAVIS POLK*

**The illicit and potentially fraudulent transfer funds intended for victim trust funds including economic damage claimants is an elaborate kickback scheme orchestrated by the Debtors/Polk Wardwell and the UCC/ Akin Gump(UCC) to pilfer funds earmarked for economic damage claimants. This deliberative effort to reallocate funds was perpetrated under the guise of "professional fees"approved monthly by the presiding judge, the Honorable Judge Sean Lane. I asked the Court to conduct an audit of total amount of professional fees paid to: Wardwell Davis and Akin Gump/UCC since 2019. Estimates surpass $2 billion in excessive and illicit usuary fees, which constitutes a violation and breach of fiduciary responsibilities entrusted to principally to Akin Gump. It demonstrates a degree of willful misconduct akin to a racketeering enterprise which has resulted in denuding and extinguishing entire class of creditors, antithetic to the basic tenants chapter 11 bankruptcy. I respectfully ask the Court to exercise there authority in adjudicating**

these injustices brought to your attention which can aptly described as a revictimization Pro Se objectors Keith Redwood and Amanda Morales. The ubiquity of this insidious, corporate maleficence permeates the entire opioid settlement domain as evidenced in the Endo Inc. bankruptcy sceme. Unsettling commonality between Purdue Pharma and Endo Inc. is the connection between Akin Gump and the Claims Administration Trustee, Attorney Edgar Gentle. Akin Gump and the Claims Administrator Trustee ,Attorney Edgar Gentle perpetrated similar kickback scheme systematically using exorbitant usury professional/administrative fees to divert funds from the MDT Personal Injury Trust prompting DOJ civil and criminal penalties in the Endo Inc sceme.(see the below ProPublica expose" The Endo End Around". What is most notable in the Endo scheme are the players involved namely Attorney Edgar Gentle and co-conspirator Attorney Arik Preis who similarly orchestrated a diversion of funds and transfers away from the Purdue Personal Injury Trust for exorbitant usury "professional fees". This pattern of corporate maleficence is highlighted in the ProPublica exposé article "Endo End around 2024 ".The 2024 article as refenced below highlights:

"• Winners and Losers: Endo is still selling narcotics. Lawyers made $350 million. A few executives shared $95 million in bonuses. Thousands of opioid victims are to share $40 million."

I discovered that the two lawyers directly involved in the Endo scheme/scam are also prominent members in the Purdue Pharma team namely Attorney Arik Preis and Attorney Edgar Gentle. The level of profiteering at the expense of victims is appalling. This harkins to my telephone communication with Attorney Preis on September 2 ,2025 discussing why economic damage claims are impermissible. During the telephone call Attorney Preis repeatedly stated "there is not enough money for economic damage claims"( see the Preis Letter.) I respectfully ask the Court to investigate the insidious practice of excess usury professional fees that deplete/divert funds away from economic

**damage claimants brought forth in response to Pro Se Objections to confirmation of the plan. My investigation into this uncanny practice of exorbitant attorney usury fees began when I submitted a personal injury claim to Endo Inc. I investigated the background both of Attorney Edgar Gentle and Attorney Arik Preis to discovered both were integral players in opioid bankruptcy restructuring plans.**

**Conspiratorial and systematic elimination of an entire class of creditors as perpetrated by the actions of attorneys for the Debtors and Creditors under the tutelage of presiding Judge Sean Lane(as well as former Judge Robert Drain). Pro Se objection motion to the Confirmation Order broadly exposes the ubiquitous level of corruption.**

**Corruption of the SDNY Chapter 11 Restructuring Process/Misappropriation and Diversion of Victim Trust Funds/ Court Sanctioned Racketeering Engineered by co-conspirators Akin Gump , Debtors Davis Polk Wardwell and the Claims Trustee, Attorney Edgar Gentle(Lead actors in the Endo Inc Restructuring Scam)**

***IMPORTANT CROSS REFERENCE* ProPublica article "Endo's End Around: How One of the Nation's Largest Opioid Makers Escaped a $7 Billion Federal Penalty "by Bob Fernandez and Craig R. McCoy for the Philadelphia Inquirer Dec.17, 2024.See the following highlights of this revelatory expose. *See below exhibit a bottom of page.***

***Reporting Highlights of ProPublica article below:***

- ***Delayed Justice: After a whistleblower exposed the criminal behavior of Endo, a drug manufacturer, the Justice Department waited more than a decade to bring charges against the company.***
- ***A Steep Discount: Federal agencies said Endo owed up to $7 billion in criminal fines, back taxes and other charges. The government settled this year for just $200 million.***
- ***Winners and Losers: Endo is still selling narcotics. Lawyers made $350 million. A few executives shared $95 million in bonuses. Thousands of opioid victims are to share $40 million.***

***These highlights were written by the reporters and editors who worked on this story.***

***TEXT DRAFT NOTES 12/14/2025***

Draft Notes in Context of ProPublica Article

Inbox

Sun, Dec 14, 5:38 AM (2 days ago)

**The following cut and paste snippet is from ProPublica 2024 article on Attorney Usury Fees:" Hundreds of lawyers, paralegals and financial advisers litigated Endo's bankruptcy, billing more than $350 million. Some lawyers charged more than $2,000 an hour. Paul Leake, Endo's lead attorney, said in a court filing that the bankruptcy plan "extinguished" Endo's liabilities for "a fraction of the debtors' total criminal and civil exposure."**

**Individual opioid victims didn't fare as well. They got just $40 million from Endo — a sum that works out to about $1,000 per victim. In comparison, people hurt by bankrupt Purdue, the poster firm for the U.S. painkiller trauma, were to share up to $750 million. Purdue victims are to receive sums ranging from $3,500 to $48,000.**

***NOTE:GENERAL CRITIQUE OF BENCH RULING per VOICE TRANSCRIPTION(on 12/16/2025)***

**On page 58 of the Modified Bench Ruling Judge Lane proclaims to avoid a compensation program for economic damages he states " require extensive documentation, individualized analysis and would generate substantial administrative costs thereby depleting the funds and causing delay in compensation." Rhetorically speaking, how can the plan proponents in good faith proclaim that the administrative cost of examining non personal injury/ economic damage claims " require extensive documentation... Judge lanes assertion that economic damage creditors/ claimants" complex claim would require extensive documentation and an individualized analysis and would generate substantial administrative costs". Judge Lane's aphorism is a complete fallacy. The assertion that my non personal injury claim, as allowed by provisions in the Disclosure Statement, places the onus of responsibility for examining the atypical claim rests with the UCC. Economic damage claimants according to Judge Lane's ruling are not afforded creditor rights presumably because " this objection ignores the conscious and reasonable in the plan to avoid compensation programs for economic damage that would require extensive... " The hypocrisy of Judge Lanes statement that my claim would require costly and extensive research is categorically and patently false. The apocryphal suggestion that a claim such as non personal injury claims asserted on the 2020 proof of claim form would require enhanced levels of administrative expertise is another falsehood . Hypocritically ,Judge Lanes approval of monthly fees for Aiken Gump console to the UCC approximates $2,000,000 monthly "professional fees"since 2019. This further demonstrates a breach of fiduciary responsibilities and woeful neglect in the management victim trust funds. Inter-creditor allocation of funds, based upon fairness and equity ,are fundamental tenants of the Disclosure Statement. The UCC's diminutive and prejudicial disregard of the interests of a class of creditors (Including those creditors holding proprietary claims against the Debtor)**

is a flagrant violation of their fiduciary role as arbiters for all classes of creditors. Judge lanes dismissive and cavalier proclivity of allowing the "UCC status quo fiscal mismanagement" underscores the systemic corruption which characterizes the practice of "Venue Shopping" in the Second Circuit. His bench ruling assertion claiming "causing delays in compensation"are grossly at odds with monthly approval of exorbitant professional fees garnered by Akin Gump. This pattern of fiscal abuse undermines the goal of the Restructuring order.

***NOTE:See below footnote from Plan Support Letter re: UCC MissionStatement***

---

[1] The UCC is an independent fiduciary for and represents the interests of all creditors in the Chapter 11 Cases and consists of the following eight members: (i) a third party payor and trade association for 35 independent health insurance companies; (ii) a trade creditor and co-defendant in opioid litigation that has asserted indemnification claims; (iii) the mother of two children who died of an opioid overdose; (iv) the mother of a child diagnosed upon birth with Neonatal Abstinence Syndrome ("NAS") due to fetal opioid exposure; (v) a trade creditor; (vi) Pension Benefit Guaranty Corporation, the federal entity responsible for insuring defined benefit pension plans; (vii) the grandfather of a child diagnosed upon birth with NAS due to fetal opioid exposure; and (viii) a hospital. These unpaid and volunteer members have worked tirelessly and committed an immeasurable amount of time over the last almost six years to ensuring the interests of all creditors were advanced.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[3] The UCC sent you a letter (the "Prior UCC Letter") in 2021 encouraging you to vote in support of the Prior Plan. That letter is available at https://restructuring.ra.kroll.com/purduepharma/Home-DownloadPDF?id1=MTI3NzU4NQ==&id2=-1, and the

**Affirmation of the dismissal would effectively delegitimize and extinguish an entire class of creditors specifically holders' of General Unsecured Creditor claims as allowed per provisions set forth in the Disclosure Statement. The dismissal ruling undermines the credibility of the court as impartial arbiters in adjudicating creditor disputes arising from the corruption that permeates the Second Circuit bankruptcy 'forum'. Economic Damage motion serves as an example for the Court to address. Allegations of " venue and judge shopping" have long plagued this venerable institution. This ruling further taints the Second Circuit as a place favored by corporate entities seeking favorable decisions .**

**Commentary:**

**Reaffirmation of the dismissal would send a message that the status quo of corruption continues in the Second Circuit as alleged in the ProPublica expose' "Endo's End Around ". Lessons from the Endo Scheme continues to permeate the fabric of the judicial system. The question arises then**

**how can basic tenants of Chapter 11 bankruptcy under the guise of "Fair and equitable treatment "of all creditors be upheld if the stewarts judicial system are complicit in the corruption. These countervailing constructs diminish the credulity of judges as being fair arbiters. In order to consummate the New Plan Judge Lane was forced to issue a blanket dismissal of ALL Pro Se objections deferring the matter for the Appellate review. Pressure to consummate the New Plan (with all of its imperfections) purportedly for the greater good. My Economic claim as asserted on Proof of Claim form dated 6/ 28/ 2020 was repeatedly been brought to the attention of the UCC(from 2021 to 2025).The dismissive ineptitude of UCC/Akin Gump specifically Attorneys Preis and Attorney Alan Carillo failed to examine the 2020 Proof of Claim Form .The terms and conditions of my Memorandum of Understanding (See docket #7865 Letter/Pro Se Objection Motion filed 9/18/2025) sent attorney Arik Preis in July 2025 was flatly ignored leading up to the Confirmation Hearing November 2025. Incompetance in terms of dereliction of duty to treat all creditors with fairness and equitability(including economic damage claimants) was a concerted effort to nullify/extinguish a class of creditors . Failure of the UCC to negotiate the terms and conditions as set forth in my MOU was relegated to Judge Lane for resolution of an Inter-Creditor dispute. Ultimately, a blanket dismissal of an Inter-Creditor disputes has been "punted" to Higher Court to decide . Had Atty Preis engaged in good faith negotiations as detailed in my Memorandum of Understanding ,the inter creditor conflict would have been resolved within the confines of the bankruptcy court not at the appellate level. UCC's failure to address the inter creditor dispute that escalated into a inter-jurisdictional quagmire. I hold that the finality of Judge Lane's blanket dismissal undermines the fundamental pillars of fair and equitable treatment of ALL creditors. UCC's failures and their subversive actions to nullify a class of creditors claims warrants broad condemnation from the Court.**

***<u>Review of Docket#8132"Persuasive Argument of Economic Damage Claim</u>***

**Docket#8132 examination of the particularized nature of the atypical claim as a "Standalone Class of Creditors" determined by submission of a Pro Se Objection motion similar to the motion submitted by Amanda Morales.I ask the Court to create a Class of Creditors due to UCC/ Akin Gump orchestrated mismanagement of economic damage claims. My objection to The Plan is from aggregating manifestations of neglect in violation of provisions contained in the Disclosure Statement. A determination of an "Atypical Convenience Class" by the Court does not fundamentally alter the equitable and fair treatment of a class of creditors in accordance with the Priority Rule. My Written Brief(docket#8132) posits the following argument for the Court to deliberate:**

***Legal Standing of the Objection***

***Creditor rights: Bankruptcy law generally requires a plan of reorganization to treat creditors within the same class equally. If the current plan or claim forms treat similarly situated creditors differently—for example, by allowing some economic damage claims but not others—it could violate the "fair and equitable" standard under the Bankruptcy Code.***

**Impact of prior rulings: The legal validity of my objection also depends on how the current plan handles claims that were acknowledged under the prior, now-vacated 2021 Confirmation Order. If the claim was "channeled" to the trust under the prior *order, the new plan must honor that prior allowance unless there is a new, overriding legal basis for disallowing it.-***

**II. Adjudication of Claim per Persuasive Authority**

**I ask the Court to exercise Persuasive Authority(docket#8132 entered 10-31-2025) in examining if my Economic Damage claims re: violations of**

**"fair and equitable" standard under the Bankruptcy Code. A counter-analysis that addresses and refutes the Court's potential enforcement of the" equitable treatment "standard must also apply legal requirements of Evidence Based Discovery. Therefore I ask the Court to:**

**1)Request for Individualized Evaluation of Economic Damage Claim Under Persuasive Authority**
**2)Application of the "Fair and Equitable" Standard**
**I respectfully request that the Court apply its Persuasive Authority to determine whether my Economic Damage claims could potentially contravene the "fair and equitable" standardas outlined in the Bankruptcy Code. In considering this, it is important that any analysis including those arguments that might oppose the enforcement of the "equitable treatment"standard—be subject to the legal standards governing Evidence-Based Discovery. This means relying only on facts that can be objectively verified and substantiated through reliable means, such as documented data on the Proof of Claim Form.-**

**Written Brief: Persuasive Argument Regarding Economic Damage Claim(docket#8132)**

Case 7:25-cv-01632-NSR Document 136-9 Filed 08/02/26 Page 83 of 114

12/23/25, 3:26 AM b2b46852-0b9e-4023-b9c4-a4871ea612a3.png

### Evidence for Economic Damage Claims

Central to this examination is the 2020 Proof of Claim Form, which was specifically utilized for Non-Personal Injury claims. This document provides critical evidence for assessing whether other claimants asserted "verifiable" economic damage values. However, discovering new information about the classification and treatment of such claims at this stage is highly unlikely unless another claimant has independently filed a similar Pro Se Motion.

### Challenges in Identifying Comparable Claims

It is virtually impossible to extract data algorithmically to determine the number of potential non-personal injury or economic damage claimants who indicated a "tangible compensatory dollar amount" on the 2020 Proof of Claim Form. As a result, the Court should recognize my situation as a "special circumstance" and consider my claim for inclusion in a Convenience Class, effectively waiving the "fair and equitable" treatment standard.

12/23/25, 3:32 AM image.png

- Specifically the 2020 Proof of Claim Form which was used for Non-Personal Injury claims. This evidence is essential for extrapolating if other claimants asserted "verifiable" economic damage values. Late discovery of claims data for classification and treatment purposes is highly unlikely unless a claimant presented a similar Pro Se Motion. A data extraction to algorithmically determine the number of potential nonpersonal injury/economic damage claimants from the 2020 proof of claim form who stipulated a "tangible compensatory dollar amount" is practically impossible. Therefore, I ask the Court to recognize my claim as a "special circumstance, Convience Class" and waive the "fair and equitable "treatment standard. They too would have economic claims had they designated a tangible claim amount. Presumably, a non-personal injury filer would firstly have to demonstrate an astute understanding of complexities of such a claim. There is no mechanism in place to identify such claims unless from the 2020 Proof of Claim Forms are ALL examined. The court must evaluate my claim related to the priority rule in terms of application of provisions contained in Section 1122. The court has the authority to exercise an individualized ranking of a claim if it's unable to identify other economic damage claims from 2020

12/23/25, 3:43 AM image.png

Other claimants might have economic claims of their own had they stated a specific dollar amount. For a non-personal injury filer, an in-depth understanding of the complexities inherent in such claims would be essential. Currently, there is no available mechanism to identify these claims unless every 2020 Proof of Claim Form is thoroughly reviewed.

### Individualized Ranking and Section 1122

Given these limitations, I respectfully ask the Court to assess my claim in relation to the priority rule, specifically referencing the provisions contained in Section 1122. The Court holds the authority to apply an individualized ranking to my claim, particularly if it is unable to identify other economic damage claims from the 2020 filings.

***<u>Artifacts/Exhibits from APPELLANT'S LOCAL CIVIL RULE 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT</u>***

***<u>SEE BELOW EMAIL SENT TO ATTY PREIS ON 8/19/2025(REQUEST FOR CLARIFICATION OF CLAIM#57858</u>***

Begin forwarded message:

On Monday, August 18, 2025, 9:52 AM, kred28@aol.com <kred28@aol.com> wrote:

----- Forwarded Message -----
**From:** kred28@aol.com <kred28@aol.com>
**To:** kred28 <kred28@aol.com>
**Sent:** Monday, August 18, 2025 at 09:31:10 AM EDT
**Subject:** Fw: Claim of Jane A. Redwood in the Chapter 11 Case of Purdue Pharma L.P., et al.

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
Bank of America Tower
New York, NY 10036
Attn: Arik Preis, Esq.

Re: Claim of Jane A. Redwood in the Chapter 11 Case of Purdue Pharma L.P., et al.

Dear Mr. Preis:

Our firm is counsel to the estate of the late Jane A. Redwood ("Claimant") as a creditor in the Chapter 11 case of Purdue Pharma L.P. ("Purdue"). Attached as Exhibit A is a copy of Ms. Redwood's filed proof of claim (Claim No. 57858) ("Claim"). Attached as Exhibit B is the Master Service List referencing on page 7 this firm as being counsel to claimant.

Unfortunately Ms. Redwood passed away on May 16, 2024 as a result of her addiction problems arising from Purdue medications. A copy of her Death Certificate is attached as Exhibit C. Ms. Redwood's husband, Keith E. Redwood, Jr., has been appointed by the Connecticut Probate Court as administrator of Ms. Redwood's estate. He has been handling all matters relating to the Purdue claim since her death. He also assisted her in the management of her health and financial issues during a long period of disability after her opioid dependency problems resulting from Purdue medications.

***The claim is as a company shareholder of the Public Benefit Company which will succeed Purdue, NOT as a Personal Injury Claimant.The Plan now under consideration consideration before the Bankruptcy Court effectively provides the Claimant with collateral rights as a shareholder of the Public Benefit Company which will succeed Purdue.***

We write to you to ask for confirmation of our understanding that the proposed pro rata distribution of the $15,000,000 will have a payout of $1,000,000 per year over a 15-year period. In other words, please confirm that the unsecured Redwood claim will be indemnified as a 15-year period certain annuity in a pro rata disbursement amount of $15,000,000 for all 773 allowed unsecured creditors. Your courtesy and cooperation in confirming this request as soon as possible will be appreciated so that the Claimant's estate can move forward in applying for bankruptcy exit financing.

Very truly yours,
/s/Lawrence R. Reich
Lawrence R. Reich

Re: Purdue

Aol/Sent

**kred28@aol.com**

Wed, Aug 20, 2025 at 2:36 PM

From: kred28@aol.com
To: Preis, Arik
Cc: Preis, Arik, Edgar C. Gentle III, Kip Harbison, Purdue Akin FR, Purduepitrust and 2 more...

Thank you.

Sent from the all new AOL app for iOS

On Wednesday, August 20, 2025, 9:35 AM, Preis, Arik <apreis@akingump.com> wrote:

Good Morning,

We are sending this to you even though you seem to be represented by counsel. If we should send this to your counsel as well, we can do

First, please know that we are very sorry for everything that has happened to you and your late wife. There are simply no words to describ

With regard to your question:

As explained in more detail below, any claim you may have based on having provided "uncompensated caregiving" to your wife relating to l Non-NAS PI TDP because it is for opioid-related economic damages (as opposed to pain and suffering).

The Purdue debtors' proposed plan defines a "Non-NAS PI Claim" to include "any Claim against any Debtor that is for alleged opioid-relatec appears to be based on your wife's opioid-related personal injury or an opioid-related cause of action against a Debtor and therefore, would definition of that term excludes Non-NAS PI Claims and other channeled claims, meaning the opportunity to receive a recovery on your clai

The Purdue debtors' disclosure statement and the current version of the Non-NAS PI TDP (see attached) both indicate that, with respect to suffering." Accordingly, while your wife's claim for her pain and suffering relating to her use of OxyContin may be compensable under the N "uncompensated caregiving" to her would constitute economic damages that are not compensable under the Non-NAS PI TDP.

Thanks,
Arik

Arik Preis
Akin Gump Strauss Hauer & Feld
One Bryant Park
NY, NY 10036
Office: 212-872-7418
Cell: 646-483-2957
apreis@akingump.com

---

**From:** Preis, Arik <apreis@akingump.com>

**To:** kred28@aol.com <kred28@aol.com>

**Cc:** Edgar C. Gentle III <egentle@gtandslaw.com>; Kip Harbison <kharbison@gtandslaw.com>; Purdue Akin FR <purdueakinfr@akingump.com>; Purdue Pharma Info <purduepharmainfo@ra.kroll.com>; Purdue Pharma Team <purduepharmateam@ra.kroll.com>; Brown, Joseph W. <joseph.w.brown@davispolk.com>; Preis, Arik <apreis@akingump.com>

**Sent:** Tuesday, September 2, 2025 at 08:56:36 AM EDT

**Subject:** RE: Memorandum of Understanding

Mr. Redwood,

We received your three emails yesterday (as far as I can tell, they are all the same, but if they are different, please let me know).

I am not sure what it is your are looking for.

I will call you later today.

Arik

**Arik Preis**

**Akin**

Direct: +1 212.872.7418

**From:** kred28@aol.com <kred28@aol.com>
**Sent:** Monday, September 1, 2025 1:37 PM
**To:** Preis, Arik <apreis@akingump.com>
**Cc:** Edgar C. Gentle III <egentle@gtandslaw.com>; Kip Harbison <kharbison@gtandslaw.com>; Purdue Akin FR <PurdueAkinFR@akingump.com>; Purdue Pharma Info <purduepharmainfo@ra.kroll.com>; Purdue Pharma Team <purduepharmateam@ra.kroll.com>
**Subject:** Fw: Memorandum of Understanding

*EXTERNAL Email**

***AUGUST 2025 CHAIN EMAIL COMMUNICATIONS WITH:***

***from:*** ***Preis, Arik <apreis@akingump.com>***

***to:*** ***"kred28@aol.com" <kred28@aol.com>***

***cc:***
***"Preis, Arik" <apreis@akingump.com>,***
***"Edgar C. Gentle III" <egentle@gtandslaw.com>,***
***Kip Harbison <kharbison@gtandslaw.com>,***
***Purdue Akin FR <PurdueAkinFR@akingump.com>,***
***Purduepitrust <purduepitrust@purduepitrust.com>,***
***Purdue Pharma Info <purduepharmainfo@ra.kroll.com>,***
***Purdue Pharma Team <purduepharmateam@ra.kroll.com>***

***date:*** ***Aug 20, 2025, 9:35 AM***

***subject:*** ***Purdue***

Purdue Inbox × kred28@aol.com × kred28@aol.com/Draft × kred28@aol.com/Sent ×

**Preis, Arik** <apreis@akingump.com> Aug 20, 2025, 9:35 AM
to kred28@aol.com, Arik, Edgar, Kip, Purdue, Purduepitrust, Purdue, Purdue

Good Morning,

We are sending this to you even though you seem to be represented by counsel. If we should send this to your counsel as well, we can do that.

First, please know that we are very sorry for everything that has happened to you and your late wife. There are simply no words to describe the devastation that has been wrought by Purdue and the opioid crisis. There is also simply no money that will ever be sufficient to compensate and abate.

With regard to your question:

As explained in more detail below, any claim you may have based on having provided "uncompensated caregiving" to your wife relating to her use of one of the Purdue debtors' opioids does not appear to qualify as (i) an "Other General Unsecured Claim" in Class 11(c) or (ii) a compensable claim under the Non-NAS PI TDP because it is for opioid-related economic damages (as opposed to pain and suffering).

The Purdue debtors' proposed plan defines a "Non-NAS PI Claim" to include "any Claim against any Debtor that is for alleged opioid-related personal injury or other similar opioid-related Cause of Action against any Debtor." Based on the description provided in your below email, your separate claim appears to be based on your wife's opioid-related personal injury or an opioid-related cause of action against a Debtor and therefore, would be categorized under the plan as a Non-NAS PI Claim. Your claim would not be classified as an "Other General Unsecured Claim" in Class 11(c) because the plan's definition of that term excludes Non-NAS PI Claims and other channeled claims, meaning the opportunity to receive a recovery on your claim would be determined under the trust distribution procedures applicable to Non-NAS PI Claims (the "Non-NAS PI TDP").

---

The Purdue debtors' disclosure statement and the current version of the Non-NAS PI TDP (see attached) both indicate that, with respect to Non-NAS PI Claims, "because of limited funds, economic damages are not compensable" and awards under the Non-NAS PI TDP will only be for "general pain and suffering." Accordingly, while your wife's claim for her pain and suffering relating to her use of OxyContin may be compensable under the Non-NAS PI TDP, your separate claim would not be compensable under the Non-NAS PI TDP because any recovery you would otherwise receive for providing "uncompensated caregiving" to her would constitute economic damages that are not compensable under the Non-NAS PI TDP.

Thanks,
Arik

Arik Preis
Akin Gump Strauss Hauer & Feld
One Bryant Park
NY, NY 10036
Office: 212-872-7418
Cell: 646-483-2957
apreis@akingump.com

---

**From:** kred28@aol.com <kred28@aol.com>
**Sent:** Saturday, August 16, 2025 3:28 PM
**To:** Preis, Arik <apreis@akingump.com>; PURDUE CREDITOR INFO <PURDUECREDITORINFO@akingump.com>; Edgar C. Gentle III <egentle@gtandslaw.com>; Kip Harbison <kharbison@gtandslaw.com>
**Cc:** purduepitrust <purduepitrust@purduepitrust.com>; Purdue Pharma Info <purduepharmainfo@ra.kroll.com>; Purdue Pharma Team <purduepharmateam@ra.kroll.com>; Purdue Akin FR <PurdueAkinFR@akingump.com>
**Subject:** Re: Claim of Jane A. Redwood in the Chapter 11 Case of Purdue Pharma L.P., et al.

Good afternoon, attorney Preis , close inspection of the proof of claim form dated 6/28/2020 is a combined personal injury and non-personal injury claim. The $10 million personal injury represents is for compensatory damage for Jane's pain and suffering from use of OxyContin oxycodone. The non-personal $10 million relates to my uncompensated caregiving for my wife for 15 years plus I took an early retirement in May 2013 from State of CT DSS due to primary caregiving responsibilities for my disabled spouse. Theoretically her $10 million portion is a Personal injury which comports with the Purdue Pharma personal injury claim requirements. My non-personal injury $10 million claim theoretically meets the conditions of eligibility as an other general unsecured credit class of 11 C. Please cross reference pdf correspondence from attorney Lawrence Reich for elucidation of this extraordinary complex claims. Perhaps you may want to personally communicate directly with attorney Lawrence Reich regarding the aforementioned . Also, I'm in the process of preparing a comprehensive statement related to my late wife's claim

Sent from the all new AOL app for iOS

On Saturday, August 16, 2025, 1:25 PM, Preis, Arik <apreis@akingump.com> wrote:

> Are you disputing that you have a personal injury claim in class 10? Are you saying you want to be classified in a different class?

---

Sent from the all new AOL app for iOS

On Saturday, August 16, 2025, 1:25 PM, Preis, Arik <apreis@akingump.com> wrote:

> Are you disputing that you have a personal injury claim in class 10? Are you saying you want to be classified in a different class?

> **Arik Preis**
>
> **Akin**
>
> Direct: +1 212.872.7418

**From:** kred28@aol.com <kred28@aol.com>
**Sent:** Friday, August 15, 2025 9:21 AM
**To:** Preis, Arik <apreis@akingump.com>; PURDUE CREDITOR INFO <PURDUECREDITORINFO@akingump.com>; Edgar C. Gentle III <egentle@gtandslaw.com>; Kip Harbison <kharbison@gtandslaw.com>
**Cc:** purduepitrust <purduepitrust@purduepitrust.com>; Purdue Pharma Info <purduepharmainfo@ra.kroll.com>; Purdue Pharma Team <purduepharmateam@ra.kroll.com>; Purdue Akin FR <PurdueAkinFR@akingump.com>
**Subject:** Re: Claim of Jane A. Redwood in the Chapter 11 Case of Purdue Pharma L.P., et al.

Good morning Atty Preis : The original(Prior Plan)Personal Injury Claimant Proof of Claim Form dated 6/28/2020 allowed both personal injury claims AND Non-Personal Injury claims. Close examination of this said claim form provides instructions on page 1. Please see screenshots that were emailed to you as well As to Kroll). An asserted claim value of $10 million represents a personal injury claim. An asserted value of $10 million represents a non-personal injury claim. Prime Clerk claims Administrator therefore combined the personal injury and non-personal injury value of $20 million as a General Unsecured Claim(presumably as an 11 C class of creditor). Consequently, the September 2021 confirmation order reflects an Unliquidated $20 million asserted value for claim#57858(see Kroll Creditor Data Details-Claim#57858).Go to Kroll case info to "Claims". Please contact me directly for additional clarification of this rather complex matter. Thanks! Keith (860)997-9322

Sent from the all new AOL app for iOS

---

On Friday, August 15, 2025, 7:12 AM, Preis, Arik <apreis@akingump.com> wrote:

Good Morning,

Thank you for your email.

I do not understand what you are asking – I spoke to your lawyer previously, I believe.

These types of claims are personal injury claims.

Are you seeking something else?

I apologize for not understanding your email.

I have copied into this email the claims processor (Kroll) and the Claims Administrator (the PI Trust) so that they are aware of your inquiry and please keep them copied on this correspondence.

Arik

**Arik Preis**

---

***I. The purpose of this MOU is for each party to review the terms and conditions of the Disclosure Statement and resolve any disputes or miscommunications and make changes before the 11/10/2025 Confirmation Order. As the fiduciary for ALL Classes of Creditors, I hereby request critical analysis my 'Atypical' asserted $10,000,000.00 Non-***

***Personal Injury "Economic Damage" claim pursuit to provisions contained in Bankruptcy code 1122.Specifically a Plan can create a separate "Convenience Class if the UCC deems it reasonable and necessary for administrative purposes. I further request confirmation of this undetermined creditor classification prior to the 9/30/2025 Ballot/Vote Bar Date for my right to Opt-In or Opt-Out to grant Third-Party Releases. Consequently, my $10 million asserted claim(as allowed by the Harrington Ruling) be adjudicated as a Direct Claims Settlement or Estate Prosecution Claim. In light of the Sept.30 Voting bar date, I respectfully request your immediate attention.***

**//. Key provisions contained in the Harrington ruling effectively established the framework for the Non-Personal injury which constitutes an Economic Damage be dispositioned under the terms of the New Plan. Therefore, treatment of Economic Damage claims contained in the New Plan provides for settlement of the debtors claims against the Sackler's.(i.e. Estate Claim Settlement/Estate Causes of Action). Separately, the settlement provides that claimants may voluntarily settle the direct claims they may have against the Sackler's(i.e. Direct Claims Settlements option).**

III.**Based upon evidence presented, I believe my Non-Personal Injury claim falls under a Class of Creditors consistent with Other General Unsecured Claims(11C)in terms of 'Convenience Class'.**

***Kindly,***

***Keith E. Redwood Jr.***

***cell# (860)997-9322***

***email: kred28@aol.com***

Begin forwarded message:

On Tuesday, August 19, 2025, 1:00 PM, kred28@aol.com <kred28@aol.com> wrote:

Sent from the all new AOL app for iOS

Begin forwarded message:

On Thursday, August 14, 2025, 3:17 PM, kred28@aol.com <kred28@aol.com> wrote:

In the Purdue Pharma bankruptcy case, will Non-Personal Injury claims be classified as General Unsecured Claims(Class 11C)specific to the bankruptcy provisions of 1122 treatment of claims

Yes, it's highly likely that non-personal injury claims in the Purdue Pharma bankruptcy case will be classified as General Unsecured Claims, and their treatment will be subject to the provisions of 11 U.S.C. § 1122

.

Here's why:

- Bankruptcy Code § 1122 and Classification of Claims: Section 1122 of the Bankruptcy Code dictates the classification of claims in a Chapter 11 reorganization plan. It mandates that a plan can only place a claim in a particular class if it's "substantially similar" to other claims in that class. Unsecured claims are typically categorized based on their legal nature and priority.

- Non-Personal Injury Claims as Unsecured: Non-personal injury claims, such as those from states and municipalities seeking reimbursement, or Medicare claims, generally fall into the category of unsecured claims, meaning they are not backed by specific collateral or assets.
- "General Unsecured Claims" and Treatment in Bankruptcy: In bankruptcy cases, a common classification for a wide range of unsecured claims is "General Unsecured Claims". A Chapter 11 plan then outlines how each class of claims will be treated, including the extent of payment or other resolution.
- Substantial Similarity for Classification under § 1122: For non-personal injury claims to be grouped together in a single class like Class 11C, they would need to be considered "substantially similar" in legal character and their relationship to the debtor, according to Cowles Thompson. This often involves evaluating whether their rights to payment are similar and whether their treatment under the plan would be consistent.

Therefore, given the nature of non-personal injury claims in the Purdue Pharma case, it's reasonable to expect their inclusion in a classification such as "General Unsecured Claims" and their treatment to adhere to the requirements of Section 1122 concerning claim similarity and appropriate classification.

AI responses may include mistakes. Learn more

***NOTE:ANOTHER EMAIL SENT TO ATTY PREIS ON 8/17/2025***

| | |
|---|---|
| **kred28@aol.com <kred28@aol.com>** | Aug 17, 2025, 4:01 PM |

to kred28

Hello again Atty Preis

As an addendum to our last email, as detailed in Attorney's  Reich's pdf letter dated 7/16/2025, the fundamental question will the UCC confirm claim#57858 as an 11C Unsecured Creditor Claim?  My extensive paralegal research over the past 4 1/2 years

based on bankruptcy policy provision 1122 classifies this claim as an unsecured creditor 11 C claim similar to a trade claim. If so, would it be indemnified by Knoa in accordance with the $15 million Pro Rata Distribution as an Other General Unsecured Creditor. Since the Harrington ruling, creditors are allowed under the New Plan to exercise Direct Settlement Claim option previously impermissable under the Prior Plan.

***EMAIL SENT TO AKIN GUMP ATTY ALAN CARRILLO 3/11/2022***

-----Original Message-----
From: kred28@aol.com
To: carrillo@akingump.com <carrillo@akingump.com>
Sent: Fri, Mar 11, 2022 4:21 am
Subject: Fwd: Treatment of $20 million Claim as a General Unsecured Creditor Claim vs $10 million Non-Personal Injury Claim

Good Morning Alan,

Please evaluate the treatment of Jane's $20,000,000.00 Unsecured Creditor Claim and indemnification/payout as a 468B Trust/QSF. Please see below reforwarded email transmittal from 7/25/2021 to Attorney Lawrence Reich as well as supporting QSF/Structured Settlement emails. Thanks again!

Kindly,

Keith

***LETTER SENT TO ATTY PREIS ON 6/27/2025 FOR CLARICATION OF CLAIM#57858***

**REICH REICH & REICH, P.C.**
ATTORNEYS AT LAW
235 MAIN STREET – SUITE 450
WHITE PLAINS, NEW YORK 10601-2421

(914) 949-2126
FAX (914) 949-1604
e-mail Reichlaw@reichpc.com
www.reichpc.com

LAWRENCE R. REICH
lreich@reichpc.com
JEFFREY A. REICH
jreich@reichpc.com

SIDNEY H. REICH
(1904-1990)

SAMARA NEAL
sneal@reichpc.com
LEGAL ASSISTANT

Via email to apreis@akingump.com

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
Bank of America Tower
New York, NY 10036
Attn: Arik Preis, Esq.

Re: Claim of Jane A. Redwood in the Chapter 11 Case of Purdue Pharma L.P., et al.

Dear Mr. Preis:

Our firm is counsel to the estate of the late Jane A. Redwood ("Claimant") as a creditor in the Chapter 11 case of Purdue Pharma L.P. ("Purdue"). Attached as Exhibit A is a copy of Ms. Redwood's filed proof of claim (Claim No. 57858) ("Claim"). Attached as Exhibit B is the Master Service List referencing on page 7 this firm as being counsel to claimant.

Unfortunately Ms. Redwood passed away on May 16, 2024 as a result of her addiction problems arising from Purdue medications. A copy of her Death Certificate is attached as Exhibit C. Ms. Redwood's husband, Keith E. Redwood, Jr., has been appointed by the Connecticut Probate Court as administrator of Ms. Redwood's estate. He has been handling all matters relating to the Purdue claim since her death. He also assisted her in the management of her health and financial issues during a long period of disability after her addition problems resulting from Purdue medications.

The Claim is as a company shareholder of the public benefit company which will succeed Purdue, not as a personal injury claimant. The Plan now under consideration

before the Bankruptcy Court effectively provides the Claimant with collateral rights as shareholder of the public benefit company which will succeed Purdue.

We write to you to ask for confirmation of our understanding that the proposed pro rata distribution of the $15,000,000 will have a payout of $1,000,000 per year over a 15-year period. In other words, please confirm that the unsecured Redwood claim will be indemnified as a 15-year period certain annuity in a pro rata disbursement amount of $15,000,000 for all 773 allowed unsecured creditors. Your courtesy and cooperation in confirming this request as soon as possible will be appreciated so that the Claimant's estate can move forward in applying for bankruptcy exit financing.

Very truly yours,

Lawrence R. Reich

LRR/sn
Encls.
cc: Keith Redwood – kred28@aol.com

***<u>EXHIBIT : MEMORANDUM OF UNDERSTANDING TO ATTY PREIS ON 9/1/2025</u>***

Fw: Memorandum of Understanding

Aol/Sent

**kred28@aol.com**
From: kred28@aol.com
To: Arik Preis
Cc: Edgar C. Gentle III, Kip Harbison, Purdue Akin FR, Purdue Pharma Info, Purdue Pharma Team
Bcc: kred28

Mon, Sep 1, 2025 at 1:36 PM

***Memorandum Of Understanding***

***I. The purpose of this MOU is for each party to review the terms and conditions of the Disclosure Statement and resolve any disputes or miscommunications and make changes before the 11/10/2025 emergence from Chapter 11 Bankruptcy. As the fiduciary for ALL Classes of Creditors, I hereby request critical analysis my 'Atypical' asserted $10,000,000.00 Non-Personal Injury "Economic Damage" claim pursuit to provisions contained in Bankruptcy code 1122.Specifically a Plan can create a separate "Convenience Class if the UCC deems it reasonable and necessary for administrative purposes. I further request confirmation of this undetermined creditor classification prior to the 9/30/2025 Ballot/Vote Bar Date for my right to Opt-In or Opt-Out to grant Third-Party Releases. Consequently, my $10 million asserted claim(as allowed by the Harrington Ruling) be adjudicated as a Direct Claims Settlement or Estate Prosecution Claim. In light of the Sept.30 Voting bar date, I respectfully request your immediate attention.***

***II.*** **Key provisions contained in the Harrington ruling effectively established the framework for the Non-Personal injury which constitutes an Economic Damage be dispositioned under the terms of the New Plan. Therefore, treatment of Economic Damage claims contained in the New Plan provides for settlement of the debtors claims against the Sackler's.(i.e. Estate Claim Settlement/Estate Causes of Action). Separately, the settlement provides that claimants may voluntarily settle the direct claims they may have against the Sackler's(i.e. Direct Claims Settlements option).**

III.**Based upon evidence presented, I believe my Non-Personal Injury claim falls under a Class of Creditors consistent with Other General Unsecured Claims(11C)in terms of 'Convenience Class'.**

***Kindly,***
***Keith E. Redwood Jr.***
***cell# (860)997-9322***
***email: kred28@aol.com***

***XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX***

**JOURNAL NOTES ON 1/14/2026 RE: Docket# 8495 "Debtors Limited Statement in Response to Keith Redwood's Motion to Stay Appeal"**

**January 9th decision remanding jurisdictional mediations to the higher court opens up a broader discussion of the Harrington rulings ongoing impact on confirmability of the plan. Complexities of the Harrington ruling must be reevaluated granularly as conditions in the 2025 New Plan parallel those of the 2021 confirmation order.**

**There are Economic Damage claims that have been "lost in the weeds"**

**obscured due to the passage of time. The court has ordered that my claim be adjudicated by a higher court.**

***JOURNAL NOTES ON 1/18/2026:***

**January 9th decision remanding mediations for higher court review opens up a broader discussion out the Harrington rulings ongoing impact on confirmability of the plan. Complexities of the Harrington ruling must be reevaluated granularly as conditions in the 2025 new plan parallel those of the 2021 confirmation order. Economic damage claims that have been "lost in the weeds" get obscured due to the passage of time. The court has ordered that my claim be remanded to the higher court.**

**JOURNAL NOTES ON 1/21/202**

**The basis of my Economic Damage claim is solely based on the application of Quantum Economics as promulgated in Article I. It states"…" Consequently claims are defined yet interest is not defined making it subject to the discretion of the court to determine my proprietary interest in the Estate of Jane Redwood personal injury claim. Ambiguity in the language contained the Disclosure Statement covering "interest" allows the court to exercise their discretion in adjudicating my claim which should've been determined by the UCC prior to the Confirmation Order. As repeatedly argued in the MOU, UCC's inaction and dereliction of fiduciary responsibilities in remediating this inter-creditor dispute has resulted in an appellant review.**

**JOURNAL NOTES ON 1/21/2026**

- **Judge Lanes Bench Ruling is largely pretextual, based upon creation of an argument for the purposes of a blanket dismissal in an effort to consummate the plan without further addeau . To move the plan forward, Judge Lanes pretextual argument is a strategically predetermined position solely to dismiss economic damage claimants as a means confirming the plan. Judge Lane's engineered argument is debunked by simply reviewing**

Case 7:25-cv-09683-NSR Document 13-9 Filed 03/04/26 Page 91 of 114

page 3 and 5 of the 6/28/2020 Proof of Claim Form. Had the UCC examined this claim form as requested for 4 1/2 years they would've resolved this inter-creditor conflict which they wittingly or unwittingly disallowed. Most significantly, UCC denial of my due process to participate in election of opt in/opt out voting privileges as evidence by failure to notify me of my right to participate in the plan. They extinguished my economic damage claim blocking participation in the vote: *," Notice of Deadline to Opt-in to Third-Party Release by Means of a Ballot Schedule for March 1, 2026*. Please see the following cut and paste "bar date"Notice >>> *Based on information from Kroll Restructuring Administration, the deadline for creditors to opt into the voluntary third-party releases in the Purdue Pharma bankruptcy plan is March 1, 2026, at 11:59 p.m. (prevailing Eastern Time).*

This deadline is specifically referred to as the Voluntary Third-Party Releases Election Deadline.

• Bar Date: March 1, 2026 (11:59 p.m. ET).

• Context: This follows the 2025 revised plan, which requires creditors to affirmatively "opt-in" to grant releases to the Sackler family, rather than the previously rejected "opt-out" structure.

- Journal notes on 1/272026>>The conundrum the court faces is the bifurcation of my two objections, economic damage claim and denial of due process(with respect to Opt In/Opt Out consensual release provisions under the Harrington rules. UCC failure to classify my claim has resulted in the wrongful denial of Due Process in violation of the Harrington ruling. The court, therefore must make a determination of the Treatment and classification of my claim to be in compliance with the Harrington Ruling.

<u>Closing Critique of Bench Ruling</u>

**My legal briefs irrefutably supports the creation of a special circumstance, “Convenience Class”, in accordance with all the provisions substantiating a novel Pro Se Other General Unsecured Creditor class. As a debate strategy, Judge Lane’s bench ruling rests upon professorial legal reasoning using standard principles of the “clearly erroneous rule“ and the “burden of proof test”. It is predicated on the strength of the appealees counter argument. Lane’s states “over particularized, Administrative, costly, impracticality … “.This is a categorical falsehood and an intentional mischaracterizations of our collective claims(Redwood and Morales Appealees).Our claims in effect meets the standards for classification of a claim under the “novel“ Treatment of Claims per the 1122 rule. High level of specificity and exacting details lists damage values (in terms of actuarial projections) are common elements of our respective claims. These common variables warrants valuable consideration as a distinctive subclass of Other General Unsecured Creditor prototyped as Pro Se Economic Damage Class defined by the Court.**

## ***EXHIBITS***

> ***ProPublica article “Endo’s End Around: How One of the Nation’s Largest Opioid Makers Escaped a $7 Billion Federal Penalty “by Bob Fernandez and Craig R. McCoy for the Philadelphia Inquirer Dec.17, 2024.See the following highlights of this revelatory expose: https://www.propublica.org/article/endo-settlement-opioids-justice-department***

***>6/28/2020 PROOF OF CLAIM FORM(page 5)***

***C.See above pdf "Electronic Proof of Claim" and the following sections of Proof of Claim Form}***

****10. Describe the basis for your claim, including all alleged causes of action, sources of damage, etc., You are asserting against the Debtors. Attach additional sheets if necessary.(see the following narrative) "Jane A. Redwood hereby seeks remuneration for compensatory damage resultant from abusive pain management regimen under the authority/care of Dr. Sylvia Knoploch(Rehabilitation Consultants of Norwalk CT/CT license#027889). Protracted dosing of OxyContin 60MG/180 tablets, Morphine Sulfate 5 MG, Trazodone MG 100, Zolpiem 10MG, Benzodialipans for treatment of RSP/Pain Management Syndrome since 2007 to present. Be advised of Hartford Hospital ED admission on 6/19/2020; Safe discharge planning to The Institute of Living for behavioral health/titration detoxification treatment for opioid-induced psychosis. Notably, PCP Dr. Martin Perlin of Westport CT was complicit with Dr. Knoploch's pain management regimen prior to 2007. The present catatonic condition requires a dual modality of care; Hartford Hospital/Institute of Living safe discharge plan includes probable LTC placement. Admission to LTC Apple Rehab of Rocky Hill CT is pending.***

****I, Keith E. Redwood Jr., opted for early retirement from State of CT DSS(May 2013)due to primary caregiving responsibilities for Jane A. Redwood."***

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

- 2/13/2026 Journal Note Updates Re: **Agenda for February 12, 2026 Hearing Regarding Motions for Stay Pending Appeal** **[Docket No. 8623**

**Today's Bench Ruling regarding Motion for Stay pending appeal by the presiding Judge Lane was primarily procedural naming all "Frivolous" Pro Se Appellees subject to imminent dismissal of their objections. The frivolous Pro Se objectors are Ellen Isaacs, Amanda Morales, Maria Eckie, Mary Janotta, Rosemary Walker, Cornelius Bay, Pittman- Tillman, Mr. Bass. The Judge cited bankruptcy policy supporting dismissal of their appeals. Largely procedural, the judge, detailed reasons for denying their appeal objections based upon lack of "Finding a Fact and Conclusions of Law "precluding ongoing appeal measures. My name and associated docket number was not mentioned in today's bench ruling. Basically the hearing today was a mere formality. Next crucial date is March 10th. As per court order received December 24, I was directed to submit "Opposition Papers" on or before March 10th. The civil order directed"Appellants in the above listed**

Case 7:25-cv-10327-NSR Document 38 Filed 03/02/26 Page 102 of 114

**appeals shall serve but not file, on counsel to the Appellants any opposition (the Opposition Papers) on or before March 10TH".**

***XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX***

***See below recapitulation of my central theme arguing Treatment and Classification of the $10,000,000.00 Economic Damage Claim.***

# Pro Se Objection Motion Regarding Claim #57858: Estate of Jane A. Redwood

## Introduction: Examination of the 'Preis Letter' and Written Brief(docket#8132)

This motion is submitted to the United States Bankruptcy Court for the Southern District of New York regarding the estate of Jane A. Redwood (Claim #57858) in the matter of Purdue Pharma L.P., et al., Debtors, Case No. 19-23649 (SHL), Chapter 11, Jointly Administered. The purpose of this motion is to request a critical examination of the Unsecured Creditors Committee (UCC) and Attorney Arik Preis's correspondence dated August 20, 2025, which initiated the framework for the Memorandum of Understanding (MOU) as a tool for understanding treatment of my $10,000,000.00 Economic Damage claim. ***I strongly urge the Court to review my Written Brief (Docket #8132 entered on November 3, 2025), which provides a counterargument to the Preis letter.***

## Introduction

In a legal context, a persuasive argument essay is most commonly referred to as a **brief**. This term refers to a structured, written document submitted to a court that presents the arguments, legal reasoning, and supporting evidence intended to persuade the court of the validity of my $10,000,000.00 Economic Damage claim as an 11C Other General Unsecured Creditor, thereby meeting conditions of eligibility. Under section 1122, debtors may create a "convenience class" for small, general unsecured claims, providing an exception to the requirement that all claims in a class be "substantially similar." This practice is adopted for administrative convenience and is commonly utilized in SDNY bankruptcy proceedings.

***SUMMARY: APPEAL of above Bench Ruling***

***Dismissal (docket#8270) of Treatment and***

***Classification of Economic Damage Claims***

***Case 7:25-cv-10327-NSR Document 18 Filed 12/23/25 Page 2 of 6***

***8132 Attachments:***

***Related:***

# *Legal Brief: Persuasive Argument Regarding Economic Damage Claim(Docket#8132)*

D. Objections Related to Classification of Claims

Other objections relate to classification of claims under the Plan. Certain *pro se* objectors oppose the Plan's classification scheme, arguing that their claims are fundamentally different from others based on the nature of the injury or the damages sought. *See, e.g.*, *Morales Obj.* [ECF. No. 7355 at 8-11]; *Redwood Obj.* [ECF Nos. 7865, 7944, 7945, 7947, 7997, 8078]. But these distinctions do not meaningfully alter the priority or legal bases of these claims. Moreover, any attempt to divide the creditor body in the granular way suggested by objectors would result in an unworkably complex classification scheme. Keith Redwood objects that the claim form does not permit him to address the economic damages he suffered as a personal injury claimant. *See Redwood Obj.* [ECF No. 8132; 7946]. But this objection ignores the conscious and reasonable decision in the Plan to avoid a compensation program for economic damages that would "require extensive documentation, individualized analysis, and would generate substantial administrative costs—thereby depleting the funds and causing delay in compensation." *See* JX-3621 (Amended Report of Deborah E. Greenspan) at 36 n.33. And it is this version of the Plan

*[Caption as in Form 16A, 16B, or 16D, as appropriate]*

**NOTICE OF APPEAL AND STATEMENT OF ELECTION**

**Part 1: Identify the appellant(s)**

1. Name(s) of appellant(s):
__Keith E. Redwood Jr.(Estate of Jane A. Redwood)____

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

For appeals in an adversary proceeding.
❑X Plaintiff
❑ Defendant
❑ Other (describe)________

For appeals in a bankruptcy case and not in an adversary proceeding.
❑ Debtor
X❑ Creditor
❑ Trustee
❑ Other (describe)________

**Part 2: Identify the subject of this appeal**

***Docket#8270 Modified Bench Ruling (signed on 11/20/2025) granting Confirmation of the Eighteen Amended Joint Chapter 11 Plan of Reorganization of PPLP and It's Affliated Debtors***

2. State the date on which the judgment, order, or decree was entered: __11/20/2025________

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Party: __________ Attorney: ________________ Purdue Transdermal Technologies L.P.
2. Party: ______________ Attorney: ________________

Purdue Pharma Manufacturing L.P
Purdue Pharmaceuticals L.P.
Imbrium Therapeutics L.P.
Adlon Therapeutics L.P.
Greenfield BioVentures L.P.
Seven Seas Hill Corp.
Ophir Green Corp
Purdue Products L.P. (f/k/a Avrio Health L.P.)
Purdue Pharmaceutical Products L.P
Purdue Neuroscience Company
Nayatt Cove Lifescience Inc.
Button Land L.P.
Rhodes Associates L.P.
Rhodes Pharmaceuticals L.P.
Rhodes Technologies
UDF LP
SVC Pharma LP
SVC Pharma Inc.
Purdue Pharma L.P.
Purdue Pharma Inc

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

***Comprehensive AI Lexology Examination of Redwood vs Purdue on 3/19/2026***

***Question to Lexology >The Purdue Pharma bankruptcy proceeding is approaching consummation of the confirmation order from November 20 25 and is scheduled for emergence in April 2026. A Pro Se Redwood versus Purdue Pharma, docket number is 8472 and docket number 8495***

***has been recommended based upon Finding of Facts and Conclusions of Law for a Second Circuit/Higher Court review. The basis of the objection is to determine if Redwood versus Purdue objection based upon treatment in classification of claims as well as denial of due process will be heard by the higher court in adjudicating Redwood $10 million economic damage claim as a holder of an unsecured unliquidated creditor claim. Legal strategy being used by Redwood is to evoke bankruptcy code 502 as a critical tool in adjudicating the Redwood claim. The higher court will be asked to apply bankruptcy code 502 in the determination of Redwood $10 million economic damage claim which a bench ruling presided by Judge Sean Lane dismissed/denied in his bench ruling. The Redwood appeal to the higher court attempt to have his claim adjudicated by a more objective and impartial second circuit panel of judges. The question to the second circuit will ask if they could apply code section 502 for an objective adjudication of the Redwood claim. Please provide legal analysis and strategic input for Redwood legal brief appeal.***

***RESPONSE***> ***Based on the information provided regarding the Purdue Pharma bankruptcy proceeding and the proposed appeal by the Pro Se party "Redwood," here is a legal analysis and strategic input for the appeal to the Second Circuit Court of Appeals regarding docket numbers 8472 and 8495 (relating to the treatment of a $10 million economic damage claim).***

## *I. Legal Analysis for Appeal*

**1. Appeal Focus: Due Process and Claim Classification**
Since the appeal challenges a bench ruling by Judge Sean Lane that denied/dismissed the claim, the Second Circuit will review the lower court's decisions regarding claim classification and treatment under a **"clear error" standard for findings of fact** and a **"de novo" standard for conclusions of law** (including constitutional due process issues).

**2. Application of Bankruptcy Code § 502 (Allowance of Claims)**
Redwood's strategy to invoke 11 U.S.C. § 502 is appropriate for an unliquidated claim.

- **§ 502(a):** A filed claim is deemed "allowed" unless a party in interest objects.

- **§ 502(b):** If an objection is made, the court must determine the amount of the claim "in lawful currency of the United States" as of the petition date, except to the extent the claim is unenforceable or for unmatured interest.
- **§ 502(c):** *Critical Tool:* This section requires the court to estimate any unliquidated or contingent claim if fixing it would unduly delay the administration of the case.
- **Strategy:** The argument should be that the Bankruptcy Court failed to properly estimate or adjudicate the $10 million claim under § 502(c), violating the substantive right to have the claim valued rather than dismissed, especially if evidence existed to support it.

**3. Due Process Violation Argument**
If the claim was dismissed without a proper hearing, without a chance to present evidence, or if the claim classification was unfairly restrictive (e.g., classifying a legitimate economic damage claim as a personal injury claim to dilute value), this constitutes a denial of procedural due process. The appeal must emphasize that *Pro Se* litigants are often afforded leeway, and substantive rights should not be denied due to procedural technicalities.

**4. Impact of Supreme Court Ruling (*Harrington v. Purdue Pharma L.P.*)**
While the Supreme Court (2024) primarily focused on non-consensual third-party releases, it highlighted that the Bankruptcy Code does not give courts a "roving commission" to disregard statutory rights. Redwood should argue that the dismissal of their claim, without applying the strictures of § 502, similarly violates the Code's limitations.

California Lawyers Association +2

II. Strategic Input for Redwood's Legal Brief

**1. Formulate the "Question Presented"**

- *Draft:* "Whether the Bankruptcy Court erred as a matter of law, or abused its discretion, by dismissing a $10 million unliquidated unsecured claim without complying with the claim estimation requirements of 11 U.S.C. § 502(c), and by failing to provide adequate due process for the adjudication of said claim."

**2. Focus on § 502(c) Estimation**
Do not just argue that the claim is "true." Argue that the court was *required* to estimate the claim's value to determine its treatment, rather than dismissing it entirely. Cite *In re Purdue Pharma L.P.* as a case where the "collective problem" of mass claims requires a structured, lawful process, not a preemptive dismissal.

CaseMine

**3. Pro Se Status and Substantial Justice**
Briefs should be clear, concise, and focused on the record. Highlight where in the record the claim was denied (Docket 8472/8495) and show that the denial was against the weight of the evidence or based on a misapplication of law.

**4. Address Potential "Equitable Mootness"**
Given that the plan is set for consummation in April 2026, the debtors may argue the appeal is "equitably moot." Redwood must argue that their claim can be easily segregated and that a reversal would not unravel the entire $7.4B+ plan.

California Lawyers Association +2

**5. Demand De Novo Review**
Argue that the denial of a claim based on a faulty interpretation of the Bankruptcy Code or a violation of due process is a pure question of law, deserving *de novo* (fresh) review by the Second Circuit.

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

## ***PART 2 AI Analysis***

**. Legal Analysis for Redwood Legal Brief**

**1. Focus on § 502 (Allowance of Claims):**

- **The Issue:** The crux of the appeal is whether Judge Lane erred in dismissing the $10 million claim rather than estimating it for purpose of allowance under **11 U.S.C. § 502(c)**.
- **The Law:** Section 502(c)(1) requires that any unliquidated claim (the estimated value of which is not yet determined) "shall be estimated for purpose of allowance... if fixing or liquidating the claim... would unduly delay the administration of the case."
- **Strategy:** The argument should be that denying/dismissing a claim solely because it is unliquidated violates § 502. The court has an affirmative duty to liquidate or estimate it if it is a valid claim.

**2. Due Process Objection (Treatment and Classification):**

- **The Issue:** Denial of due process in the adjudication process [Result 1.4.4].

- **Strategy:** The brief must highlight specifically *how* Redwood was denied due process—for example, was a fair hearing not held? Was notice inadequate? Did the court refuse to hear evidence regarding the $10M damages?
- **Treatment of Unsecured Claims:** If the plan treats similar creditors differently, argue violation of 11 U.S.C. § 1123(a)(4).

**3. "Abuse of Discretion" Standard of Review:**

- **The Issue:** The Second Circuit reviews bankruptcy court claim decisions under an "abuse of discretion" standard.
- **Strategy:** Argue that Judge Lane's bench ruling was an abuse of discretion because it arbitrarily disregarded a properly filed claim.

**4. Impact of Supreme Court Ruling (Harrington v. Purdue):**

- **Context:** The Supreme Court (June 2024) invalidated the non-consensual third-party releases for the Sacklers [Result 1.2.1].
- **Strategy:** If Redwood's claim against Purdue was dismissed due to a release, the Supreme Court ruling provides a massive advantage. If the claim was rejected on the merits, the focus should remain solely on § 502.

---

**II. Strategic Input for Appeal to Second Circuit**

**1. Structure the Brief:**

- **Jurisdictional Statement:** Clearly state the docket numbers (8472, 8495) and the final order being appealed.
- **Statement of Issues:**
    1. Whether the Bankruptcy Court abused its discretion by dismissing an unliquidated claim instead of estimating it pursuant to 11 U.S.C. § 502(c).
    2. Whether the treatment of the claim violated Due Process.
- **Statement of Facts:** Be concise, objective, and reference the record (Kroll docket).
- **Argument:** Link every claim to a specific statutory section.

**2. Evoking Bankruptcy Code Section 502:**

- Frame the appeal as a **statutory violation** rather than just a disagreement with the ruling.
- **Argument:** "The Court acted outside its authority under § 502(b) by not allowing a claim that was properly filed, and failing to estimate it under § 502(c) in a timely manner."

**3. Second Circuit Focus:**

- The Second Circuit has been heavily involved in the Purdue case [Result 1.5.3].
- The appeal should highlight the need for a de novo review of the legal interpretation of the claim's status.

**4. Pro Se Guidance:**

- Keep arguments focused strictly on the law and the record. Avoid emotional language.
- Utilize the Kroll Restructuring site for the record of the bench ruling.

**III. Key Dates & Considerations**

- **Emergence/Confirmation:** The plan is moving toward finality with a 2026 emergence schedule [Result 1.3.6]. The appeal must be fast-tracked to prevent the claim from being mooted by plan consummation.
- **PI Trust:** If the $10 million claim is a Personal Injury (PI) claim, it likely needs to go through the PI Trust established in the settlement, rather than through direct litigation against the debtor, unless the objection is to the classification within that trust [Result 1.3.8].

**Summary of Strategic Action**

Redwood must prove that:

1. **A valid claim existed** (Proof of Claim filed by 2020 deadline).
2. **The court failed to use § 502(c)** to estimate the claim's value.
3. **The denial was procedurally unfair** (Due Process violation).

***XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX***

## CONCLUSION

**Disclosure Statement and Proof of Claim Inconsistency**

**The Disclosure Statement permits economic-damage claims to be asserted under the terms and conditions reflected in the Proof of Claim form submitted on June 28, 2020. By contrast, the 2025 Proof of Claim form is limited exclusively to Personal Injury claims and does not provide a mechanism for asserting Non-Personal Injury or Economic Damage claims.**

**This creates a material inconsistency: the modified plan appears to enjoin or exclude Non-Personal Injury claims, while the Disclosure Statements from both 2021 and 2025 continue to recognize the ability to assert economic-damage claims. Judge Lane's bench ruling appears to rest on the premise that this objection "ignores" the Plan's treatment of economic damages; however, the 2020 Proof of Claim form expressly allowed claimants to assign an economic-damage value to their claims.**

**Contractual Effect of the Prior Plan and New Plan**

**I contend that Judge Lane's reasoning improperly presupposes that the terms of the 2021 Prior Plan are not contractually binding under the New Plan. In my view, both the 2021 Disclosure Statement and the 2025 Disclosure Statement allow economic-damage claims, even though the 2025 Proof of Claim form excludes Non-Personal Injury and Economic Damage categories.**

**Effect of the Harrington Ruling**

**With the application of the Harrington ruling, the New Plan's Opt-In/Opt-Out provisions should allow economic-damage claims to be asserted through the Direct Settlement option referenced in the Plan Support Letter. For these reasons, I respectfully ask the Court to examine whether the exclusion of Non-Personal Injury and Economic Damage claims from the 2025 Proof of Claim process conflicts with the Disclosure Statement,**

**the Prior Plan, the New Plan, and the creditor protections recognized under Harrington.**

***<u>REVIEW  THE BELOW 'PREIS LETTER'(DOCKET#8225)</u>***

# Pro Se Objection Motion Regarding Claim #57858: Estate of Jane A. Redwood

## Introduction: Examination of the 'Preis Letter' and Written Brief(docket#8132)

This motion is submitted to the United States Bankruptcy Court for the Southern District of New York regarding the estate of Jane A. Redwood (Claim #57858) in the matter of Purdue Pharma L.P., et al., Debtors, Case No. 19-23649 (SHL), Chapter 11, Jointly Administered. The purpose of this motion is to request a critical examination of the Unsecured Creditors Committee (UCC) and Attorney Arik Preis's correspondence dated August 20, 2025, which initiated the framework for the Memorandum of Understanding (MOU) as a tool for understanding treatment of my $10,000,000.00 Economic Damage claim. ***I strongly urge the Court to review my Written Brief (Docket #8132 entered on November 3, 2025), which provides a counterargument to the Preis letter.***

## Conclusion

In light of the above, I respectfully request that the Court critically examine the correspondence from Attorney Preis, the UCC's handling of my claim, and the relevant documents submitted, including most importantly my ***Written Brief(docket#8132)*** and Memorandum of Understanding. The fair and equitable treatment of all creditors, including those asserting economic damages and non-personal injury claims, is imperative for the integrity of the bankruptcy proceedings.

***Letter/Email from Atty Preis(received 8/20/2025)***

Letter from Atty Arik Preis(received 8/20/2025

Inbox

kred28@aol.com

kred28@aol.com/Sent

---

kred28@aol.com <kred28@aol.com> Aug 24, 2025, 7:36 AM

to kred28

Preis, Arik

From:apreis@akingump.com

To:kred28@aol.com

Cc:Preis, Arik,Edgar C. Gentle III,Kip Harbison,Purdue Akin FR,Purduepitrust

Wed, Aug 20 at 9:35 AM

Good Morning,

We are sending this to you even though you seem to be represented by counsel. If we should send this to your counsel as well, we can do that.

First, please know that we are very sorry for everything that has happened to you and your late wife. There are simply no words to describe the devastation that has been wrought by Purdue and the opioid crisis. There is also simply no money that will ever be sufficient to compensate and abate.

With regard to your question:

As explained in more detail below, any claim you may have based on having provided "uncompensated caregiving" to your wife relating to her use of one of the Purdue debtors' opioids does not appear to qualify as (i) an "Other General Unsecured Claim" in Class 11(c) or (ii) a compensable claim under the Non-NAS PI TDP because it is for opioid-related economic damages (as opposed to pain and suffering).

The Purdue debtors' proposed plan defines a "Non-NAS PI Claim" to include "any Claim against any Debtor that is for alleged opioid-related personal injury or other similar opioid-related Cause of Action against any Debtor." Based on the description provided in your below email, your separate claim appears to be based on your wife's opioid-related personal injury or an opioid-related cause of action against a Debtor and therefore, would be categorized under the plan as a Non-NAS PI Claim. Your claim would not be classified as an "Other General Unsecured Claim" in Class 11(c) because the plan's definition of that term excludes Non-NAS PI Claims and other channeled claims, meaning the opportunity to receive a recovery on your claim would be determined under the trust distribution procedures applicable to Non-NAS PI Claims (the "Non-NAS PI TDP").

Case 7:25-cv-01632-NSR Document 135-9 Filed 08/03/26 Page 114 of 114

The Purdue debtors' disclosure statement and the current version of the Non-NAS PI TDP (see attached) both indicate that, with respect to Non-NAS PI Claims, "because of limited funds, economic damages are not compensable" and awards under the Non-NAS PI TDP will only be for "general pain and suffering." Accordingly, while your wife's claim for her

pain and suffering relating to her use of OxyContin may be compensable under the Non-NAS PI TDP, your separate claim would not be compensable under the Non-NAS PI TDP

because any recovery you would otherwise receive for providing "uncompensated caregiving" to her would constitute economic damages that are not compensable under the Non-NAS PI TDP.

Thanks,

Arik

**Respectfully Submitted,**

**Keith E. Redwood Jr.**

**Dated: 8/2/2026**