# **Exhibit L**

**"Appellants Reply Brief" filed by Amanda Morales, *In re Purdue Pharma L.P., et al*, Case No. 25-cv-10158 (S.D.N.Y. Aug. 11, 2026) [Dkt. No. 66]**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

AMANDA MORALES

V.

Purdue Pharma L.P.,st al. Chapter 11

PURDUE PHARMA L.P., P.F. LABORATORIES, INC.,

PURDUE PHARMACEUTICALS L.P., PURDUE PHARMA TECHNOLOGIES, INC., and RHODES TECHNOLOGIES,

CASE NO. 25-CV-10158

On Appeal Southern District Bankruptcy Court NY

APPELLANTS REPLY BRIEF

The Debtors' proposed Plan contains provisions that impermissibly seek to discharge, extinguish, or permanently enjoin direct claims—specifically causes of action rooted in fraud and fraudulent transfers—against non-debtor third parties. This attempt to obtain a nonconsensual third-party release directly violates the statutory limitations of the Bankruptcy Code as articulated by the Supreme Court of the United States in *Harrington v. Purdue Pharma L.P.*. Furthermore, because the fraudulent transfer claims at issue constitute "non-core" proceedings under 28 U.S.C. § 157, this Court lacks the constitutional authority to enter a final order extinguishing or releasing these claims without the express consent of the Objector. Accordingly, the creditor debt cannot be discharged.

In re Adelphia Commc'ns Corp., 342 B.R. 122, 126 (S.D.N.Y. 2006) A district court abuses its discretion when it bases its ruling "on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot

be located within the range of permissible decisions." In re Sims, 534 F.3d 117, 132 (2d Cir. 2008) (citations and internal quotation marks omitted);("[a] ruling is an abuse of discretion only if the bankruptcy court bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact.")

"A district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Margulies v. Hough (In re Margulies), 566 B.R. 318, 328 (S.D.N.Y. 2017) (citation omitted).

## TABLE OF CONTENTS

**JURISDICTION……………………………………………………1**

**AUTHORITIES……………………………………………………3**

**APPELLANTS ASSIGNMENT OF ERROR…………………….4**

**ARGUMENT………………………………………………………4**

**OBJECTION TO DISCHARABILTY OF DEBT 11 U.S.C. Section 523(a) and Section 1192 of the Bankruptcy Code……4**

**DISTINCTIONS BETWEEN CLAIMS…………………………6**

**PLAINTIFF'S SEROTONIN SYNDROME CLAIMS ALTER THE FUNDAMENTAL LEGAL BASIS OF THE LITIGATION BY REQUIRING DISTINCT PROOF OF FAILURE TO WARN………………………………8**

**THE MECHANISM OF PROXIMATE CAUSATION FOR ACUTE SEROTONIN SYNDROME IS LEGALLY AND FACTUALLY DISCONNECTED FROM CHRONIC ADDICTION…………………………………9**

**DUE PROCESS…………………………………………………10**

**CONCLUSION…………………………………………………12**

## AUTHORITIES


Adelphia Commc'ns Corp.,
342 B.R. 122, 126 (S.D.N.Y. 2006)..............................................1

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 253 (1986)...........................................11

*Avion Funding, L.L.C. v. GFS Industries, L.L.C.*
*99 F.4th 813 (5th Cir. 2024)........................................6*

*BenShot, LLC v. 2 Monkey Trading, LLC*
*142 F.4th 1323 (11th Cir. 2025)*..........................................6

*Contreras v. Bos. Sci. Corp.*,
No. 2:12-cv03745, 2016 WL 1436682, at *4......................11

*Kane v. Johns-Manville Corp.*,
843 F.2d 636 (2d Cir. 1988)........................................ 7

*Little v PPG Industries, Inc.*,
19 Wn.App. 812, 818 n.3 (1978).................................11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
475 U.S. 574, 586 (1986)..........................................11

*Matter of Jersey City Medical Center*
*817 F. 2d 1055 (3d Cir 1987)......................................7*

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999)................................................10

*Terhune v. A.H. Robins Co.*,
90 Wn.2d 9, 13 (1978)..............................................11

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)...........................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)................................. ...............9

28 U.S.C. § 158(a)...................................... .......................1

**APPELLANT'S ASSIGNMENT OF ERROR**

Bankruptcy Court erred in dismissing the Creditor's nondischargeability complaint by holding that the phrase 'debts of the kind specified in section 523(a)' in Section 1192(2) excludes corporate debtors, despite the Fourth, Fifth, and Eleventh Circuits holding that the phrase refers to the *category of the debt* rather than the capacity of the *debtor.*

Bankruptcy court committed reversible legal error by holding that the distinctions between personal injury claims based on **chronic opioid addiction** and claims based on **acute serotonin syndrome** do not "meaningfully alter the legal bases" of the claims, where the latter requires proving distinct statutory and common law elements of products liability, including an inadequate warning regarding a specific drug-to-drug interaction and a distinct mechanism of proximate causation.

**ARGUMENT**

A. **OBJECTION TO DISCHARABILTY OF DEBT 11 U.S.C. Section 523(a) and Section 1192 of the Bankruptcy Code**

Confirmation hearing oral argument

"Amanda Morales, pro se. So my objection was the plan violates 11 U.S.C. Section 523(a) because it discharges non dischargeable claims. The Debtor's response was that this objection should be overruled because Section 523 of the Bankruptcy Code only applies to individual debtors, which the Debtors here are not. My argument for that is Section 1192 of the Bankruptcy Code refers to debts of the kind specified in Section 523(a) as being nondischargeable in a non-consensual plan. And I referenced that in page five of the motion on the docket, which is number 781. So the majority court of appeals view in the fourth, fifth, and eleventh circuits is these

circuits have ruled that the type of debt is what is incorporated from Section 523(a) and thus these debts are non-dischargeable for both individual and corporate debtors."

**Confirmation hearing page 92 transcript 11/18/2025**

Judge Lane "But as pointed out by the Debtors, Section 523 permits the discharge of certain debts obtained through actual fraud for "an individual Debtor", not as the case here for corporate Debtors. And Ms. Morales' invocation similarly under Section 727 is likewise inapplicable because that provision applies to Chapter 7 bankruptcies, and does not apply to this Chapter 11 bankruptcy. See Amanda Morales objection number 7818.

At the confirmation hearing, Ms. Morales cited to a different statute in support of the same argument, in this occasion citing to 11 U.S.C. Section 1192. But Section 1192 is equally inapplicable. It is a provision of Subchapter V, a procedure that involves a streamlined version of Chapter 11 for certain small business Debtors, and that clearly does not apply to these cases. See Avion Funding LLC v. GFS Industries LLC, 99 F.4th 223 at 225, 226, Fifth Circuit, 2024."

**Modified Bench ruling confirmation [Docket No. 8270]** "Some objections argue that the Plan improperly purports to discharge debts in violation of 11 U.S.C. §§ 523 and 727. See Morales Obj. [ECF Nos. 7818, 7819]; McGaha Obj. [ECF Nos. 7432, 7451]. Specifically, these parties contend that the Debtors are not entitled to a discharge for fraud-related conduct. See, e.g., Morales Obj. [ECF Nos. 7818, 7819]; McGaha Obj. [ECF Nos. 7432, 7451]. But as pointed out by the Debtors, Section 523 prohibits the discharge of certain debts obtained through actual fraud for "an individual debtor"—not, as is the case here, for corporate debtor."

The phrase *"debts of the kind"* grammatically modifies the word *"debt,"* which is entirely agnostic to the identity or legal capacity of the debtor. The cross-reference to Section 523(a) acts purely as a shorthand ledger to import the 21 categories of

Case 7:25-cv-09681-NSR Document 136 Filed 03/11/26 Page 6 of 15

bad-behavior debts (e.g., fraud, willful and malicious injury) to save statutory space, intentionally bypassing the "individual debtor" limitation found in Section 523(a)'s preamble. Congress used the word *"debtor"* broadly in Section 1192, rather than specifying *"individual debtor"* as it frequently does elsewhere in the Bankruptcy Code when it intends to restrict a provision's scope. Because Subchapter V allows small business corporations to confirm non-consensual cramdown plans without satisfying the traditional absolute priority rule, expanding nondischargeability to corporations serves as a legislative counterbalance protecting creditors from corporate misconduct.

In *BenShot, LLC v. 2 Monkey Trading, LLC,* 142 F.4th 1323 (11th Cir. 2025). Directly reversing a Middle District of Florida Bankruptcy Court dismissal order, the Eleventh Circuit held that the term "debtor" throughout the Bankruptcy Code encompasses entities, while the cross-reference strictly singles out "debts" of a fraudulent or malicious nature

*Avion Funding, L.L.C. v. GFS Industries, L.L.C. (In re GFS Industries, L.L.C.)*, 99 F.4th 813 (5th Cir. 2024). Reversing a lower bankruptcy court on direct appeal, the Fifth Circuit held that the most natural reading of § 1192(2) subjects both corporate and individual Subchapter V debtors to the discharge exceptions. It ruled that § 523(a) serves merely as a storage house defining the *nature* of the debt.

The phrase *"of the kind"* in § 1192(2) grammatically modifies the noun "debt", not the noun "debtor". Because § 523(a) contains a list of debts (e.g., debt *for* fraud, debt *for* willful injury), it is the nature of the *liability* that controls nondischargeability, not the corporate capacity of the entity that holds it.

## B. DISTINCTIONS BETWEEN CLAIMS

Wrongful death failure to warn OxyContin acute interactions antidepressants causing serotonin syndrome and death. Warning label changed years later, they

knew or should have known and failed to warn. (Father died when I was 16 and his autopsy says oxycodone (OxyContin) combined action with citalopram and amitriptyline caused his death. FDA safety announcement when warning label was changed has both of those on the list that interact with OxyContin and can cause serotonin syndrome and be fatal.

**Modified Bench Ruling Docket 8270** "Certain pro se objectors oppose the Plan's classification scheme, arguing that their claims are fundamentally different from others based on the nature of the injury or the damages sought. See, e.g., Morales Obj. [ECF. No. 7355 at 8-11]; Redwood Obj. [ECF Nos. 7865, 7944, 7945, 7947, 7997, 8078]. But these distinctions do not meaningfully alter the priority or legal bases of these claims. Moreover, any attempt to divide the creditor body in the granular way suggested by objectors would result in an unworkably complex classification scheme."

The distinctions between chronic opioid addiction claims and acute serotonin syndrome claims do meaningfully alter their legal bases because they rely on fundamentally different factual elements, warning deficiencies, and mechanisms of proximate causation. In products liability, claims are governed by the specific risk profile of the drug and the precise medical mechanism of harm, meaning a court cannot treat them as legally interchangeable.

*Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988), This foundational asbestos bankruptcy established that present tort claimants and future tort claimants (those exposed but not yet showing symptoms) have inherently different interests and legal bases. Case law dictates they must be categorized carefully, often requiring the appointment of a Future Claimants Representative (FCR) to ensure future claims are prioritized and funded properly.

Matter of Jersey City Medical Center, 817 F.2d 1055 (3d Cir. 1987): The Third Circuit noted that a Chapter 11 plan could separately classify different sub-

segments of general unsecured claims—such as physicians' indemnification tort claims versus commercial trade claims—because they arose from different contexts and carried distinct legal implications for the debtor's ongoing operations.

1. **PLAINTIFF'S SEROTONIN SYNDROME CLAIMS ALTER THE FUNDAMENTAL LEGAL BASIS OF THE LITIGATION BY REQUIRING DISTINCT PROOF OF FAILURE TO WARN**

Plaintiff's contention that the transition from a chronic opioid addiction theory to an acute serotonin syndrome theory does not alter the legal basis of the claim misinterprets established products liability law. Under both statutory and common law products liability frameworks, a failure-to-warn claim is not a generalized grievance about a product's safety; it is strictly bound to the specific risk quantified in the pleadings.

A claim based on chronic opioid addiction focuses on the failure to warn of a drug's long-term, progressive, and behavioral risks—specifically, its highly addictive properties and potential for abuse. In stark contrast, a claim based on serotonin syndrome requires proof that the manufacturer failed to warn of a specific drug-to-drug interaction (e.g., the simultaneous ingestion of the subject drug with an SSRI or MAOI). The "learned intermediary" doctrine must therefore be applied to an entirely different set of clinical facts. The knowledge of the prescribing physician regarding a specific chemical counter-indication involves a completely separate risk profile than their awareness of a drug's general addictive nature

In the world of corporate restructurings and mass torts, introducing clear **distinctions** between how a claim is categorized completely alters the **legal bases** (the underlying statutes and theories used to validate it) and the **priority** (the order and amount of payment) of those claims.

In *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), This is the ultimate authority on commonality. The Supreme Court ruled that class members must show they suffered the **"same injury,"** meaning their claims must depend on a single,

Case 7:25-cv-00181-NSR Document 136 Filed 03/12/26 Page 9 of 15

common contention capable of class-wide resolution in one stroke. Merely suffering a violation of the same law is not enough if the factual nature of each individual's harm varies.

If the court must hear separate expert medical testimony or distinct technical engineering reports for different segments of the plaintiffs, individual questions override the shared questions.

## *2.* THE MECHANISM OF PROXIMATE CAUSATION FOR ACUTE SEROTONIN SYNDROME IS LEGALLY AND FACTUALLY DISCONNECTED FROM CHRONIC ADDICTION

To establish products liability, a plaintiff must prove that the specific warning defect was the proximate cause of the specific injury. Plaintiff cannot establish proximate causation for acute serotonin syndrome using the legal or factual infrastructure of an opioid addiction claim.

1. Chronic Opioid Addiction Causation: Involves a longitudinal analysis of the patient's medical history, psychological vulnerabilities, long-term prescribing patterns, and potential misuse or diversion of the medication over months or years.
2. Acute Serotonin Syndrome Causation: Involves a discrete, immediate biological mechanism—the toxic accumulation of serotonin in the central nervous system. This requires proof of a specific pharmacological event: the concurrent ingestion of two interacting agents causing an immediate adverse reaction.

Because the mechanisms of harm share no overlapping medical, factual, or expert testimony, the legal basis of the claims is fundamentally transformed. Plaintiff's new claims fail to satisfy relation-back doctrines or commonality requirements because they rely on an entirely separate nexus of causation.

Case 7:25-cv-09681-NSR Document 138612 Filed 01/12/26 Page 11 of 16

In *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) The Supreme Court again blocked an asbestos class settlement. The court held that a single class cannot group together plaintiffs with wildly different levels of physical injuries, differing durations of exposure, and completely different future medical risks.

### C. DUE PROCESS

Procedural due process" concerns the procedures that the government must follow before it deprives an individual of life, liberty, or property. The key questions are: What procedures satisfy due process? And what constitutes "life, liberty, or property"? Thee Court has determined that due process requires, at a minimum:
(1) notice; (2) an opportunity to be heard; and (3) an impartial tribunal.

**CONFIRMATION HEARING PRO SEE WERE GIVEN 5-8 MINUTES AND NOT ALLOWED TO SPEAK ON MERITS**

Confirmation hearing  Individual claimants were given around 5-8 minutes for oral argument although some pro se claimants went over that amount of time

"NOTICE TO PRO SE CLAIMANTS WHO HAVE FILED OBJECTIONS TO THE PLAN REGARDING THEIR PARTICIPATION IN THE HEARING TO CONSIDER CONFIRMATION OF THE FIFTEENTH AMENDED CHAPTER 11 PLAN FILED BY THE DEBTORS Docket" #8202 Filed on 11/07/2025

page 2 "Pro Se Claimant Objections.  The Bankruptcy Court has reserved time for Pro Se Claimants to appear and present their objections to confirmation of the Plan (but not to address unrelated issues, such as issues with respect to your specific claim including timeliness of your claim or allowance of your claim) on Thursday, November 13, 2025, at 11:00 a.m. (EST)."

We were told repeatedly not to talk about our specific claims at confirmation hearing. We didn't have much time and judge Sean Lane refused to ever decide any

claims on the merits. He would not consider any evidence and allow anyone to speak on their individual claims.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply “some metaphysical doubt”). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Recovery “if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was . . . not reasonably safe because adequate warnings or instructions were not provided.” RCW 7.72.030(1). To prevail on a failure to warn claim, a plaintiff must show that (1) the defendant failed to sufficiently warn, (2) the plaintiff suffered damages, and (3) the defendant's failure to sufficiently warn of the dangers was a proximate cause of the plaintiff's damages. *See, e.g.*, *Little v PPG Industries, Inc.*, 19 Wn.App. 812, 818 n.3 (1978) (approving the Restatement of Torts' recitation of the elements). However, in the context of medical failure to warn claims, the duty of the manufacturer to warn is satisfied if the manufacturer gives adequate warning to the physician who prescribes or implants the product. *Terhune v. A.H. Robins Co.*, 90 Wn.2d 9, 13 (1978).They must also show that her physician would have acted differently had he been given an adequate warning. *See Contreras v. Bos. Sci. Corp.*, No. 2:12-cv03745, 2016 WL 1436682, at *4 (S.D. W.Va. Apr. 11, 2016).

Failure to consider the merits and denial to consider the claims differences was a due process denial and these distinctions *do matter and these distinctions do alter the claims priority and legal bases on how to treat the claims.* My claims should have been transferred to district because my claims are non-core claims that exist independently outside of the bankruptcy court.

Following the landmark Supreme Court decision in *Stern v. Marshall*, a bankruptcy court cannot enter a final order on a non-core claim even if the Bankruptcy Code labels it as core, unless both parties consent. Instead, the bankruptcy judge must submit proposed findings of fact and conclusions of law to the U.S. District Court, which reviews them fresh (*de novo*) before entering a final judgment.

The bankruptcy court cannot discharge, release, or permanently enjoin direct claims (like fraud) against non-debtor third parties without express, affirmative consent from the affected creditors.

A fraudulent transfer action against a third party is a non-core proceeding, the bankruptcy court cannot definitively extinguish or resolve those claims via a plan confirmation order. The final adjudication belongs inherently to the Article III District Court.

A key tenet of bankruptcy law is providing a fresh start to the "honest debtor." Under 11 U.S.C. §§ 523(a)(2) and 1141, debts resulting from fraud, misrepresentation, or willful and malicious injury are strictly excepted from discharge.

The Debtors' Plan attempts an impermissible end-run around this statutory mandate by using the Chapter 11 vehicle to award a total liability shield to non-debtor entities accused of fraudulent transfers and direct corporate fraud. Extending the benefits of a bankruptcy discharge to non-debtor wrongdoers while blocking access to the federal district courts turns equity on its head and violates the core spirit of the Bankruptcy Code.

## CONCLUSION

WHEREFORE, Appellant respectfully requests that this Court to

**Order the striking or modification** to explicitly exclude non-consensual third-party releases of direct fraud or fraudulent transfer claims;

- **Clarify** that the pending non-core actions before the U.S. District Court may proceed unhindered; and

- Grant such other and further relief as this Court deems just and proper.

Amanda Morales
205 Calle Del Banco
Bernalillo, NM 87004
(505)318-2400



CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this August 11, 2026 a copy

Of the document(s) entitled Appellants Reply brief

To Defendants was/were emailed to.

Marshall Huebner marshall.huebner@davispolk.com

**Ad Hoc Committee of governmental creditors**

Kane, Wendy • wendy.kane@hsfkramer.com

**Committee of unsecured creditors**

PurdueAkinFR@akingump.com

ECF numbers 7818, 7819, objection of Karen McGehee, ECF 7432 and 7451. Specifically, these parties contend that the Debtors are not entitled to a discharge for fraud-related conduct. See again Ms. Morales and Ms. McGehee's objections. But as pointed out by the Debtors, Section 523 permits the discharge of certain debts obtained through actual fraud for "an individual Debtor", not as the case here for corporate Debtors. And Ms. Morales' invocation similarly under Section 727 is likewise inapplicable because that provision applies to Chapter 7 bankruptcies, and does not apply to this Chapter 11 bankruptcy. See Amanda Morales objection number 7818.

At the confirmation hearing, Ms. Morales cited to a different statute in support of the same argument, in this occasion citing to 11 U.S.C. Section 1192. But Section 1192 is equally inapplicable. It is a provision of Subchapter V, a procedure that involves a streamlined version of Chapter 11 for certain small business Debtors, and that clearly does not apply to these cases. See Avion Funding LLC v. GFS Industries LLC, 99 F.4th 223 at 225, 226, Fifth Circuit, 2024.

A seventh category of objections relate to the newly-created company Knoa. Ms. Giannotta argues that the creation of Knoa is improper because the company has no binding commitment to help victims, lacks appropriate