UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
In re: PURDUE PHARMA L.P., et al.
ROSEMARY HELEN ZIZIROS WALKER, Appellant, v. PURDUE PHARMA L.P., et al., Appellees
Case No. 7:25-cv-09681 (NSR)

**EMERGENCY SUPPLEMENT CONCERNING BANKRUPTCY DKT. 9555; NOTICE OF SEPTEMBER 10 HEARING AND AUGUST 25 ATTEMPTED OBJECTION; RENEWED REQUEST FOR IMMEDIATE EMERGENCY STAY; CHALLENGE TO MATERIAL POST-VOTE PLAN CHANGES; AND RENEWED REQUEST FOR ALL MATERIAL HEARING TRANSCRIPTS SINCE 2023**

ROSEMARY HELEN ZIZIROS WALKER, a QUALIFIED DISABLED PRO SE PAUPER, supplements her August 25 protective filing concerning Bankruptcy Dkt. 9555 and again requests an immediate emergency stay sufficient to preserve meaningful appellate review.

THE SEPTEMBER 10 PROCEEDING MAKES THE STAY URGENT

The Bankruptcy Court is scheduled to consider Dkt. 9555 on September 10 while Walker's confirmation and late-claim issues remain in appellate proceedings. The agenda characterizes Dkt. 9555 as uncontested even though Walker attempted to submit an objection on August 25, received a 404 error from the pro se portal, and then emailed the filing to court personnel and counsel. The absence of a Bankruptcy Court docket entry should not be used as waiver, consent, abandonment, or failure to object.

AN IMMEDIATE EMERGENCY STAY IS NECESSARY

Walker requests an IMMEDIATE EMERGENCY STAY sufficient to preserve the status quo before Dkt. 9555 or related implementation materially changes the factual or legal landscape. Continued implementation should not be permitted to manufacture equitable-mootness, substantial-consummation, third-party-prejudice, administrative-impracticability, or inability-to-grant-effective-relief arguments against a litigant who repeatedly sought a stay.

THE SEPTEMBER 30, 2025 VOTE CANNOT BE USED AS A BLANK CHECK FOR MATERIAL TERMS CREATED AFTER THE VOTE

Walker voted on September 30, 2025 based on the Plan, Disclosure Statement, solicitation materials, treatment provisions, claim procedures, release structure, and representations then presented to creditors. A ballot can evidence acceptance of the Plan actually submitted for acceptance; it cannot supply advance consent to materially different substantive treatment created months later.

The Disclosure Statement instructed creditors to review the Plan and Plan□related documents in their entirety before casting a ballot. The confirmation record later justified proceeding without resolicitation on the finding that post-solicitation

changes were non-material and that none affected creditor treatment or recovery. That finding is the controlling benchmark. If later changes now affect claim allowance, excusable-neglect standards, evidentiary burdens, deadlines, objection rights, eligibility, distributions, releases, or other substantive creditor treatment, the premise for relying on the September 30 vote must be reexamined.

The Court cannot simultaneously rely on the proposition that later changes did not require a new vote because they were non-material, permit materially different creditor treatment after confirmation and the Effective Date, and then treat the September 30 ballots as acceptance of the later-created terms.

Section 1127 confirms the distinction between implementation and modification. After confirmation, a non-individual Chapter 11 plan may be modified by the plan proponent or reorganized debtor only before substantial consummation, and the modified plan becomes operative only if circumstances warrant and the court confirms it after notice and a hearing. Section 1127(c) also requires compliance with section 1125 as to the modified plan. A September 30 ballot is not perpetual prospective consent to material terms that did not exist when the vote was cast.

This is especially consequential to Walker because her ballot was expressly described at confirmation as provisional because her late-filed claim had not yet been allowed. The Court recognized the sequencing problem and stated that Walker's timeliness issue would be addressed before the Effective Date. Yet the Plan became effective May 1, 2026 and Walker's late-claim hearing occurred afterward. PAT now seeks additional late-claim procedures in Dkt. 9555.

If Dkt. 9555 merely implements authority already fixed by the confirmed Plan, PAT should identify the precise Plan provision authorizing each procedure. If it changes substantive treatment, the Court must address section 1127 and cannot avoid that inquiry merely by calling the change a 'procedure.'

WALKER AGAIN REQUESTS EVERY MATERIAL HEARING TRANSCRIPT AND RECORDING SINCE JANUARY 1, 2023

Walker again requests immediate electronic access, without charge to the extent legally authorized, to every available Purdue hearing transcript and recording from January 1, 2023 through the present that is material to her claim, Plan, confirmation, stay, ballot, release, late-claim, PI Trust, PAT, implementation, and appellate issues.

Walker states that she has repeatedly requested these materials and that Davis Polk has not provided the complete set to her. Walker does not ask the Court to assume that opposing counsel has an automatic duty to purchase transcripts for her. She asks the Court to ensure that lack of money and lack of access to the record do not defeat meaningful participation or appellate review.

To the extent Davis Polk, the Debtors, PAT, or their agents already possess responsive transcripts obtained in these proceedings, Walker requests an order directing electronic provision of those copies without charge to the extent authorized. Walker also requests any relief available under 28 U.S.C. §§ 1915 and 753(f), FRAP 10 where applicable, and any other lawful record-access procedure.

No court should treat Walker's inability to quote, cite, or answer transcript material she has repeatedly sought but has not received as waiver, abandonment, inadequate briefing, or consent. Deciding her rights on a record she cannot practically obtain raises a serious due-process concern because meaningful notice and an opportunity to be heard require a practical opportunity to know and address the record used against her.

RELIEF REQUESTED

1. Accept this emergency supplement and recognize Walker's August 25 attempted objection to Bankruptcy Dkt. 9555.
2. ENTER AN IMMEDIATE EMERGENCY STAY sufficient to preserve the status quo and meaningful appellate review before materially consequential action on Dkt. 9555.
3. Preserve and determine, to the extent within this Court's jurisdiction, whether Dkt. 9555 merely implements the confirmed Plan or materially modifies treatment after the Effective Date.
4. Determine that Walker's September 30, 2025 ballot cannot supply acceptance or consent to material substantive terms created after the vote that were not contained in the Plan and disclosure materials upon which she voted.
5. Preserve the issue whether later material changes required additional disclosure, an opportunity to change a prior vote, or other relief under 11 U.S.C. § 1127 and applicable law.
6. Prohibit the absence of a Bankruptcy Court docket entry for Walker's August 25 attempted objection from being treated as waiver or consent.
7. Order preparation, supplementation, production, or legally authorized no-cost access to every material Purdue hearing transcript and recording from January 1, 2023 through the present.
8. To the extent authorized, direct Davis Polk, the Debtors, PAT, or their agents to provide electronically responsive transcripts already in their possession.
9. Prohibit adverse procedural consequences arising from Walker's inability to obtain the transcript record she has repeatedly requested.
10. Preserve all previously asserted Plan, Disclosure Statement, § 1127, Rule 9006(b)(1), Pioneer, Harrington, ballot, release, direct-claim, constitutional, stay, and appellate rights.
11. Grant all additional relief necessary to preserve meaningful appellate review.

YOUR PRO SE UPLOAD IS STILL NOT FUNCTIONING.




rosemary helen ziziros walker 9.9.2026 4:08pm