**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

**IN RE: PURDUE PHARMA L.P., et al.**

**ROSEMARY HELEN ZIZIROS WALKER,**
Appellant, Pro Se,

v.

**PURDUE PHARMA L.P., et al.,**
Appellees.

**Case No. 7:25-cv-09681 (NSR)**

# EMERGENCY REQUEST FOR LEAVE TO FILE; NOTICE OF MATERIAL POST-APPEAL BANKRUPTCY DEVELOPMENTS; RENEWED MOTION FOR IMMEDIATE STAY; REQUEST FOR PRESERVATION OF APPELLATE RIGHTS; NOTICE OF UNRESOLVED THIRD-PARTY RELEASE CONSENT AND REVOCATION; NOTICE CONCERNING CLAIM NO. 634787 AND TRUST ADMINISTRATIVE APPEAL; RENEWED PIONEER AND RULE 9006(b)(1) ISSUES; HEALTH-CARE-BUSINESS ISSUE; REQUEST FOR ACCOUNTING; AND MOTION FOR FURTHER RELIEF

Appellant **ROSEMARY HELEN ZIZIROS WALKER**, a **DISABLED PRO SE PAUPER**, respectfully requests leave to file this submission because material matters affecting her pending appeal and her ability to obtain effective judicial review have continued to develop in the underlying Purdue Pharma bankruptcy.

Walker is subject to this Court's requirement that she first obtain leave before further motions will be considered. Walker therefore expressly requests **LEAVE TO FILE THIS DOCUMENT AND THE MOTIONS AND NOTICES CONTAINED IN IT.**

This filing does not abandon any previously presented issue. It provides the District Court with the continuing procedural record necessary to determine Walker's pending rights and requests for preservation.

Walker has again requested stay and preservation relief in the Bankruptcy Court. Walker renews and re-requests that relief in this Court because this Court is hearing her bankruptcy appeal and because Walker seeks to preserve effective appellate review. This renewed request does not replace or withdraw the relief requested in the Bankruptcy Court.

## I. LEAVE SHOULD BE GRANTED BECAUSE THE UNDERLYING PROCEEDINGS HAVE CONTINUED TO CHANGE

Walker has repeatedly sought stays and adjudication of her claim, ballot, Third-Party Release, consent, revocation, compensation, constitutional, disability-access, Oregon, and appellate rights.

Those issues did not cease merely because the Plan became effective on May 1, 2026.

> "in your situation, the timeliness of your claim is going to be addressed before what is being referred to as emergence or the effective date."

That did not occur. The Plan became effective May 1, 2026. Walker's late-claim hearing occurred May 20, 2026.

Walker had also requested an emergency hearing before the March 1, 2026 election-change deadline. No hearing determining Walker's consent/revocation issue occurred before that deadline.

> "there is still an issue about this opt-in, opt-out"

> "needs to be addressed."

Walker therefore requests leave because subsequent events are directly material to the rights and issues she has continuously sought to preserve.

## II. WALKER'S THIRD-PARTY RELEASE CONSENT AND REVOCATION REMAIN UNRESOLVED

Walker **did vote for the Plan and initially opted in to the Third-Party Release.**

Walker's position has never been that she simply failed to make an election. Her issue is what happened to that election, her requested revocation, and the relationship among claim allowance, compensation, the release, the changed election procedure, and the subsequent treatment of her claim.

> "And that means if it is for some reason disallowed, you will not have given any release. And if it is allowed, then the release and your compensation will track. Okay?"

> "How do I know if I want to give this up if I don't know if it actually gets me anything?"

> "Well, I would like it in an amendment and so that we do have -- you know, claimants do have the right to revoke release."

> "We'll accept notices from someone saying hey, you know, now that I understand things better, I previously opted either in or not opted in, I would like to change that. So it's a last chance to change what we already did."

> "And a new fixed deadline."

> "And a new fixed deadline."

> "So she changed the plan."

Walker requested adjudication before that new deadline. That adjudication did not occur before March 1, 2026.

The question of Walker's actual Third-Party Release consent and revocation therefore remains central to the appellate controversy.

## III. THE PLAN WALKER VOTED UPON AND THE PLAN ULTIMATELY CONFIRMED MUST NOT BE CONFLATED

Walker voted before the September 30, 2025 voting deadline.

Her ballot stated that it could be used to vote on the **Thirteenth Amended Joint Chapter 11 Plan**.

The **Eighteenth Amended Joint Chapter 11 Plan** was subsequently confirmed in November 2025 and became effective May 1, 2026.

Walker requests that her Plan vote and her separate Third-Party Release election remain analytically distinct.

Walker further requests review of what changed between the Plan upon which she voted and the Plan ultimately confirmed and implemented, particularly where her consent, claim allowance, compensation, and revocation rights remained unresolved while the restructuring continued.

## IV. HARRINGTON CONSENT REMAINS MATERIAL

Walker preserves her rights under *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024) concerning nonconsensual releases of claims against nondebtor third parties.

Walker had already filed her Oregon action against **PURDUE PHARMACEUTICALS AND THE SACKLER FAMILY** in Marion County Circuit Court, Case No. **23CV33935**, on August 21, 2023.

Walker therefore is not asserting merely a hypothetical future right to sue the Sacklers. She seeks preservation and adjudication concerning claims that she had already asserted.

The post-*Harrington* process cannot make Walker's actual consent immaterial where the record itself continued to recognize an unresolved opt-in/opt-out issue after the Plan became effective.

## V. WALKER'S CLAIM NO. 634787 AND TRUST ADMINISTRATIVE APPEAL REMAIN ACTIVE ISSUES

Walker preserves her rights concerning **Claim No. 634787**, including her Trust administrative appeal and Tier determination.

Walker disputes Tier 2 treatment and seeks Tier 1 treatment.

Walker's May 22, 2026 communication entitled **"special master appeal"** requested review involving Kenneth Simon after Edgar Gentle issued the Tier determination.

> "the standard is exceedingly low. It is evidence that you took the drugs in question, period, full stop."
>
> "if you could show you took the drugs, you will have a meritorious claim. That's the way it's defined."

Walker maintains that her treating-pain-management-physician evidence identifies Purdue-brand OxyContin following her malfunctioning-elevator accident.

Walker therefore preserves the Trust administrative appeal, Tier determination, Claim No. 634787, compensation, and related appellate issues.

## VI. WALKER TIMELY COMPLETED THE SEPARATE JULY 28, 2025 PI TRUST CLAIM-FORM PROCESS

The July 28, 2025 PI Trust Claim Form is separate from the earlier bankruptcy Proof-of-Claim bar date.

Walker completed and submitted the separate PI Trust Claim Form by the July 28, 2025 deadline.

The July 27, 2025 Trust communication identified July 28, 2025 at 11:59 p.m. Eastern Time as the deadline.

"Received."

The Claim Form instructions identify **EDGAR C. GENTLE, III, ESQ.** as **CLAIMS ADMINISTRATOR**.

Walker relies upon this separate timely compliance as evidence of diligence in connection with her *Pioneer* and Rule 9006(b)(1) issues.

## VII. PIONEER AND RULE 9006(b)(1) RECONSIDERATION REMAIN MATERIAL

Walker continues to request reconsideration under *Pioneer* and Federal Rule of Bankruptcy Procedure **9006(b)(1)**.

Walker's circumstances include the COVID-19 lockdown, Oregon fires, an ice storm and tree through her roof causing displacement, the Howard Johnson fire while she was displaced, disability, indigency, lack of counsel, lack of meaningful internet access during relevant periods, and her continuing attempts to participate and preserve her rights.

Walker did **not** have COVID.

Walker also relies upon the treatment of other late claims and upon the fact that the claims process continued to change and operate after the original bar date.

Walker requests individualized adjudication under the applicable standard rather than forfeiture based upon circumstances she has repeatedly placed before the courts.

## VIII. OFFICIAL FORM 201 — "NONE OF THE ABOVE" AND HEALTH CARE BUSINESS

Walker further preserves a foundational issue arising from Purdue's September 15, 2019 bankruptcy filing.

Official Form 201, Item 7, offered:

**"Health Care Business (as defined in 11 U.S.C. § 101(27A))"**

but the Debtors selected:

**"None of the above."**

Walker requests substantive review of Purdue's actual operations under the governing health-care-business definition rather than treating the checked box itself as dispositive.

Walker further preserves the related patient-protection and patient-care-ombudsman issues under **11 U.S.C. § 333 and Bankruptcy Rule 2007.2**.

Walker's May 4, 2026 filing, Dkt. 9139, was expressly entitled:

**"MOTION FOR STAY UNTIL INCORRECT RECORDS ARE CORRECTED & EMERGENCY STAY AGAIN"**

and again raised the patient-ombudsman issue while asserting that Walker's opt-in issue had not been heard.

## IX. FORM CANNOT REPLACE SUBSTANCE ON ONE SIDE OF THE RECORD BUT NOT THE OTHER

Walker requests consistent treatment of the two distinct checkbox issues.

The Debtors' selection of "None of the above" on Official Form 201 does not itself determine the substantive statutory Health Care Business issue.

Likewise, a ballot or release-election checkbox does not eliminate the need to determine Walker's actual consent where the Plan, Disclosure Statement, confirmation proceedings, changed-election procedure, claim allowance, compensation, and revocation record must be considered together.

Each issue must be determined upon its governing law and complete factual record.

## X. WALKER REQUESTS CLAIMANT-WIDE RELIEF CONCERNING VALID PURDUE PI CLAIM NUMBERS

Walker requests relief beyond monetary compensation for delay.

Walker requests restoration and protection of rights affected while the Purdue restructuring and claims process continued to change.

**THEREFORE, MS. WALKER MOVES FOR AN ORDER PROVIDING THAT ALL PURDUE PHARMA PI VICTIM CLAIMANTS WITH A VALID CLAIM NUMBER ISSUED AT ANY TIME FROM THE ORIGINAL BAR-DATE PROCESS THROUGH MAY 1, 2026, AS REFLECTED IN THE RECORDS OF KROLL, THE PURDUE PI TRUST, AND THE TRUST ADMINISTRATOR, SHALL HAVE THEIR CLAIMS DEEMED ALLOWED AND NOT SUBJECT TO OBJECTION.**

Walker contends that Purdue Pharma PI victims should not lose claims or rights because the bankruptcy process changed while those claims and rights remained subject to continuing proceedings.

## XI. WALKER REQUESTS A COMPLETE ACCOUNTING

The Debtors-Appellees stated in their District Court briefing:

> "The roughly $880 million provided by the Debtors-Appellees was disbursed to the various creditor trusts together with approximately $1.1 billion in Sackler payments, and there is no practical way to trace current location of all dollars contributed by the Debtors-Appellees."

Walker requests a complete accounting sufficient to identify the source, recipient, transfer, distribution, reserve, administrative charge, present balance, and ultimate disposition of the funds relevant to the Purdue restructuring and PI claims process.

Continued movement of assets should not eliminate meaningful judicial or appellate relief.

## XII. DUE PROCESS, ACCESS TO THE COURTS, AND DISABILITY ACCESS

Walker is a disabled pro se pauper.

Walker has repeatedly attempted to participate in proceedings affecting her claim, release, compensation, Oregon claims, and appellate rights.

**A PARTY MUST HAVE ACCESS TO THE DOCUMENTS, FILINGS, ORDERS, EVIDENCE, AND RECORD MATERIAL THAT A COURT OR REVIEWING COURT IS READING, CONSIDERING, OR RELYING UPON TO DECIDE THAT PARTY'S RIGHTS.**

**DUE PROCESS CANNOT MEAN THAT EVERYONE DECIDING WALKER'S RIGHTS MAY READ THE RECORD EXCEPT WALKER.**

At the September 10, 2026 Bankruptcy Court hearing, Walker was present when identifying references were made concerning a party pursuing Oregon state-court litigation and an emergency Second Circuit filing. Walker stated:

> "I object. I object."

Walker maintains that she was not then permitted a meaningful contemporaneous opportunity to answer the assertions being made about her.

Walker preserves her Due Process, access-to-courts, disability-access, First Amendment Petition, and related constitutional rights.

## XIII. WALKER'S INDIVIDUAL APPEAL WAS ALREADY BEING PROSECUTED BEFORE CONSOLIDATION, AND THE CHANGING PROCEDURAL TRACK CREATED MATERIAL CONFUSION AND DELAY

Walker requests that the Court consider the procedural history of **her individual appeal before consolidation** when evaluating diligence, delay, preservation, and meaningful access to appellate review.

Walker had already commenced and was actively prosecuting her District Court appeal before the later consolidation process. The District Court record recognized that Walker had **"also filed a brief to support her anticipated motion to stay."**

The Debtors subsequently sought consolidation while the appeals were proceeding separately.

The resulting procedural history contained different briefing tracks. The Debtors proposed a merits schedule under which appellants' opening merits briefs were due February 5, 2026, appellees' responsive merits briefs March 9, 2026, and appellants' replies March 23, 2026.

The Court's December 17, 2025 Memorandum Endorsement separately established a consolidation-motion schedule requiring Appellees to serve their opening brief February 6, Walker and the other appellants to serve opposition March 10, and Appellees to serve their reply March 24, with the motion papers then filed on March 24.

This chronology is significant because **March 1, 2026 was the new deadline affecting Walker's Third-Party Release election**, yet the consolidation briefing schedule extended beyond March 1.

Walker had already requested an emergency hearing concerning her release/election rights before that deadline. No adjudication of Walker's consent/revocation issue occurred before March 1.

Walker requests that this chronology be considered when evaluating whether she diligently sought adjudication before the deadline affecting the rights she was attempting to preserve.

## XIV. CONSOLIDATION SHOULD NOT ERASE WALKER'S EARLIER INDIVIDUAL APPELLATE HISTORY

Walker's appeal existed and was being prosecuted before the later consolidation request.

Walker requests that the Court not measure her diligence or procedural history solely from events occurring after consolidation.

Her individual filings, stay request, supporting brief, and efforts to obtain adjudication preceded the consolidated briefing structure.

The record distinguishes Walker's individual appeal and earlier briefing activity from the Debtors' later proposed consolidated merits schedule and the Court's separate consolidation-motion schedule.

Walker therefore requests that conduct, timing, procedural defaults, arguments, or litigation decisions attributable to other appellants not be imputed to Walker or used to obscure Walker's individual appellate record.

## XV. THE MAY 27, 2026 ASSIGNMENT/REASSIGNMENT NOTICE ADDED A DIFFERENT CASE NUMBER AND A DIFFERENT JUDGE TO WALKER'S ALREADY-PENDING APPELLATE RECORD

On **May 27, 2026**, Walker received a District Court notice concerning separately numbered proceeding **1:26-cv-03711-AS**.

The notice identified that case number and informed Walker that a **Notice of Assignment/Reassignment** had been entered assigning the matter to **Judge Arun Subramanian**.

Walker's District Court appeal was **25-CV-9681**.

Walker did respond to Judge Subramanian while continuing to identify her District Court appeal as **25-CV-9681** and her Second Circuit appeal as **26-1235**.

Walker later documented the discrepancy in her own words:

> **"JUDGE RAMON OR ARUN I STILL HAVE NO IDEA WHY I GOT THIS CHANGE OF JUDGE THAT AI REALIZED IS A DIFFERENT CASE NUMBER…."**

Walker therefore requests that the Court consider the documented existence of the separate **1:26-cv-03711-AS** proceeding and the May 27, 2026 assignment/reassignment notice when evaluating her procedural history.

Walker requests that her failure to understand the significance of the separate case number not be converted into waiver, abandonment, neglect, or procedural default where she continued responding and attempting to preserve her rights.

## XVI. THE LENGTH AND SEQUENCE OF THE PROCEEDINGS HAVE PREJUDICED WALKER'S ABILITY TO OBTAIN EFFECTIVE REVIEW

Walker's appellate efforts must be considered together with the timing of the underlying proceedings.

While Walker sought review, the September 30, 2025 voting deadline passed; confirmation proceedings occurred; the March 1, 2026 election-change deadline was established; Walker's requested adjudication did not occur before that deadline; the Plan became effective May 1, 2026; Walker's late-claim hearing occurred May 20, 2026; and her consent/revocation issue remained unresolved after effectiveness.

Walker requests that the Court consider this complete chronology when determining leave, stay relief, preservation, and the need for prompt written rulings.

Walker contends that continued delay while challenged deadlines pass, implementation proceeds, and assets move threatens the availability of meaningful judicial review.

## XVII. WALKER HAS CONTINUOUSLY SOUGHT PRESERVATION

Walker has sought preservation and stay relief in the Bankruptcy Court, District Court, Second Circuit, Oregon proceedings, and in connection with Supreme Court review.

She has not acquiesced in implementation as applied to her unresolved rights.

The fact that implementation continued while her requests remained unresolved cannot itself become the mechanism by which meaningful review disappears.

## XVIII. WALKER IS PREPARING AND PRESERVING HER APPELLATE RECORD

Walker is preparing and preserving the appellate record necessary for further review of the unresolved issues identified above.

Walker therefore requests written rulings on the motions and issues properly before this Court so that the appellate record accurately reflects what relief was requested, what issues were presented, and the Court's disposition of those requests.

Walker requests preservation of her ability to seek further review in the United States Court of Appeals for the Second Circuit and, when procedurally available, the Supreme Court of the United States.

## XIX. RELIEF REQUESTED

**WHEREFORE**, Rosemary Helen Ziziros Walker respectfully requests that this Court:

1. **GRANT LEAVE** to file and consider this submission;
2. grant an **IMMEDIATE STAY** sufficient to preserve meaningful District Court and appellate review;
3. preserve and adjudicate Walker's Third-Party Release consent and revocation issues;
4. preserve Walker's Claim No. 634787, Trust administrative appeal, Tier, compensation, and related rights;
5. reconsider and preserve Walker's *Pioneer*/Rule 9006(b)(1) issues;
6. adjudicate the Official Form 201 **"None of the above" / Health Care Business / patient-care-ombudsman issues**;
7. preserve the distinction between Walker's Plan vote and Third-Party Release election and between the Plan voted upon and the Plan ultimately confirmed;
8. preserve Walker's Oregon claims against **PURDUE PHARMACEUTICALS AND THE SACKLER FAMILY**;
9. preserve and adjudicate Walker's Due Process, access-to-courts, disability-access, and constitutional issues;

10. consider Walker's individual pre-consolidation appellate history, the consolidation-related briefing chronology, and the March 1, 2026 deadline when evaluating diligence, preservation, and delay;
11. consider the May 27, 2026 notice concerning separately numbered proceeding **1:26-cv-03711-AS** and its assignment to **Judge Arun Subramanian** as part of the procedural record affecting Walker;
12. prevent conduct, procedural defaults, litigation decisions, or omissions attributable to other appellants from being imputed to Walker;
13. require the requested complete accounting;
14. determine compliance with applicable Shareholder Settlement Document requirements;
15. provide a meaningful hearing and written orders determining Walker's unresolved rights;
16. enter an order providing that **all Purdue Pharma PI victim claimants with a valid claim number issued at any time from the original bar-date process through May 1, 2026, as reflected in the records of Kroll, the Purdue PI Trust, and the Trust Administrator, shall have their claims deemed ALLOWED AND NOT SUBJECT TO OBJECTION**;
17. preserve Walker's right to seek further review in the United States Court of Appeals for the Second Circuit and, when procedurally available, the Supreme Court of the United States; and
18. grant such further relief as is necessary to preserve Walker's rights and meaningful judicial review.

Respectfully submitted,

**ROSEMARY HELEN ZIZIROS WALKER**
Appellant, Pro Se
**DISABLED PRO SE PAUPER**

Dated: **September 19, 2026**

## CERTIFICATE OF SERVICE

I, **ROSEMARY HELEN ZIZIROS WALKER**, certify that on September 19, 2026, I served a true and correct copy of the foregoing **by email, pursuant to email-service permission**, upon counsel for the parties at:

**DAVIS POLK & WARDWELL LLP**

**AKIN GUMP STRAUSS HAUER & FELD LLP**

**HERBERT SMITH FREEHILLS KRAMER (US) LLP**

Dated: **September 19, 2026**

**ROSEMARY HELEN ZIZIROS WALKER**
Appellant, Pro Se
**DISABLED PRO SE PAUPER**